**UNITED STATES BANKRUPTCY COURT** INTAKE- USBC
**MIDDLE DISTRICT OF FLORIDA** JUN 2026 PM 12:45
**ORLANDO DIVISION**

In re:                                                  Case No. 6:25-bk-02685-GER (Chapter 11)

Homemakers Real Estate, LLC,          Case No. 6:25-bk-05570-GER (Involuntary

Chapter 11)

      Debtor.

---

### MOTION TO DISQUALIFY PEDIXON AND ZPD FROM FURTHER PARTICIPATION IN THESE BANKRUPTCIES FOR WANT OF SUBJECT-MATTER JURISDICTION OVER THE CLAIMS

I move this court to dismiss the claims of PEDixon LLC and ZPD LLC and to overrule their objection to the Rule 60 motions and disqualify them from participating in the proceeding. This court lacks subject-matter jurisdiction to enforce the PEDixon or ZPD claims. Florida Statute § 687.071(7) withdraws from every court of this state the power to enforce an extension of credit made in violation of Florida Statute § 687.071. Governing precedent, the principles of comity, Florida's usury statute, and 11 U.S.C. § 502(b)(1) carry that withdrawal into this court. Stated otherwise, PEDixon and ZPD ask this court to act in a manner the law does not allow because the Florida Legislature forbade any tribunal in Florida to take those actions. *See* Fla. Stat. § 687.071(7).

**PEDixon and ZPD sat out the involuntary case and have reentered only to oppose the Rule 60 motions, squarely presenting the enforceability of their own loans as a threshold subject-matter jurisdiction issue for this court.**

Through the involuntary proceedings, PEDixon and ZPD were absent. They have now reemerged — to object to the Rule 60 motions which would reopen the

1

original voluntary Chapter 11, thereby undoing the damage caused by PEDixon, ZPD, and their ilk. I welcome their reemergence, because it places before this court the very instruments on which PEDixon and ZPD stake their claims, objection, and defenses: eleven extensions of credit, totaling $11,225,000 in stated principal, made between January 2022 and September 2023, and the guaranties said to secure them. A party that objects to relief on the strength of a debt invites the court to ask whether the debt may be enforced at all. The answer the Florida Legislature supplied is no. And because that now removes the entire class of claims from this court's authority, this court has no authority or power to adjudicate any matter based on a ZPD or PEDixon claim. *See generally United States v. Arbaugh,* 546 U.S. 500, 514 (2006)(explaining subject-matter jurisdiction involves a court's power to hear a case, thus can never be forfeited, waived, or time-barred. And must be raised by the court itself even in the absence of a challenge by the parties); *see also Unites States v. Cotton,* 535 U.S. 625,630 (2002)(subject-matter jurisdiction involves a court's authority, not over a claim, but over a particular class of claims).

**Section 687.071(7) removes the entire class of usurious extensions of credit from the authority of any court of this state.**

Florida § 687.071 makes two usury thresholds. Interest "exceeding 25 percent per annum but not in excess of 45 percent per annum" is a second-degree misdemeanor. Fla. Stat. § 687.071(2). Interest "exceeding 45 percent per annum" is third-degree felony loan sharking. Fla. Stat. § 687.071(3). The Legislature then

2

commanded the courts: "No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state." Fla. Stat. § 687.071(7).

The grammar matters. The actor the statute restrains is "the courts." The Legislature did not condition the disability on pleading, proof, waiver, or election by a litigant. It wrote a flat command to the judiciary, removing an entire class of debts — every extension of credit made in violation of § 687.071 — from the competence of any Florida tribunal. The Legislature did not hand the borrower a shield to raise or lower as he pleased; it took the sword out of the courthouse. A defense belongs to a party and can be waived; a withdrawal of the court's power belongs to no one, and no one can give it back. A criminally usurious debt is therefore unenforceable in its entirety, and the lender forfeits both interest and principal. *Jersey Palm-Gross, Inc. v. Paper*, 658 So. 2d 531, 533 (Fla. 1995) (*a violation of § 687.071 renders the debt unenforceable and works a forfeiture of both principal and interest*). A court may not add words the Legislature omitted or ignore the words it chose. *Pleus v. Crist*, 14 So. 3d 941, 945 (Fla. 2009).

The statute reaches these claims at both ends. An "extension of credit" includes "any agreement for forbearance to enforce the collection of" a loan. Fla. Stat. § 687.071(1)(d). A "debtor" includes "any person who guarantees the repayment of a loan." Fla. Stat. § 687.071(1)(c). The guaranties PEDixon and ZPD

3

seek to enforce thus fall inside the statute directly, not merely by the rule that a

surety's liability is coextensive with the principal's. *See Arbor Club, Inc. v. Omega*

*Constr. Co.*, 565 So. 2d 357, 359 (Fla. 4th DCA 1990) (*the liability of a surety is*

*coextensive with that of its principal*). A guaranty of an unenforceable debt is itself

unenforceable.

I anticipate the response that usury is a waivable affirmative defense. The

cases that say so — *Yaffee v. International Co.*, 80 So. 2d 910 (Fla. 1955); *Sodi,*

*Inc. v. Salitan*, 68 So. 2d 882 (Fla. 1953) — each construed the pre-1969 civil-

usury statute. The 1969 enactment of § 687.071 added what the prior regime

lacked: criminalization, the contraband and immunity provisions, and the forum-

court withdrawal of § 687.071(7). The "waivable defense" gloss does not survive a

statute that speaks to judicial power rather than to litigant strategy. *Gunn*

*Plumbing, Inc. v. Dania Bank*, 252 So. 2d 1 (Fla. 1971), is not to the contrary; the

*Gunn* court enforced a stipulated waiver in a routine note dispute whose rate never

approached the criminal threshold, and it never confronted § 687.071(7). A

decision is not authority for a proposition it did not address.

## 11 U.S.C. § 502(b)(1) implicitly incorporates the jurisdiction to dent PEDixon-ZPD claims..

This court sits where the Florida courts would otherwise sit, and it applies

the same Florida law. Property and claim rights in bankruptcy are creatures of state

4

law. *Butner v. United States*, 440 U.S. 48, 55 (1979). When a claim's validity is challenged, the court looks to state law to decide it. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007). The Code then supplies the instruction directly: on objection, a claim is allowed "except to the extent that — (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).

Florida's applicable law is § 687.071(7), and it makes the PEDixon and ZPD debts unenforceable as a matter of law. It follows that the estate cannot owe what no Florida court may enforce, and this court cannot allow against the estate a claim Florida has placed beyond the reach of enforcement. Whether the principle is framed as the Florida Legislature's withdrawal of judicial power or as mandatory disallowance under § 502(b)(1), the result is identical: the claims cannot be entertained on their merits, and an objection that rests on them cannot be sustained.

**The PEDixon and ZPD loans violate § 687.071 on the face of PEDixon's own records.**

I rely on no fact the lenders dispute. PEDixon's own internal loan reports, applying payments pro rata across the aggregated portfolio, establish an effective interest rate of 32.33% in 2024 and 29.10% in 2025.[1] Both figures exceed the 25%

---

[1] The rates are PEDixon's, derived from its internal loan tracking reports and reproduced in the contemporaneous memorandum in support of dismissal filed in PEDixon LLC v. Flynn, No. 2025-CA-002359 (Fla. 9th Cir., Osceola Cnty.). The borrowers contend the collected interest was higher; these figures use the lender's own numbers to avoid dispute.

5

criminal threshold of § 687.071(2). PEDixon drafted the instruments, PEDixon computed the charges, and PEDixon's books record the collection. The violation is shown by the lender's own arithmetic.

PEDixon also knew where the line lay. Beginning in January 2024 it charged stated interest at almost exactly 25% — the precise ceiling of § 687.071(2) — and it credited late fees back to keep the stated rate at the line. It did not, however, credit back the origination fees, renewal fees, excess professional fees, post-closing maintenance charges, and forbearance fees it separately collected. Florida defines all of those as interest. Fla. Stat. § 687.03 (interest includes consideration "reserve[d], charge[d], or take[n] for any loan, advance of money, line of credit, [or] forbearance"). A default provision that charges the maximum lawful rate while the lender collects uncredited fees on top of it does not respect the statute; it evades it. The crediting of the visible fee and the collection of the invisible one are themselves proof of the willful and knowing charging the statute condemns.

No savings clause stands in the way.[2] None of the eleven loan documents contains a proper savings clause. Even a proper clause is only "one factor" in the usury inquiry and rescues a lender only where the usury arises from "a remote and

---

[2]The loan documents contain only an "Interest After Default" provision capping post-default rate increases — not a clause addressing all charges Florida defines as interest. Without such a clause there is not even the illusion of compliance.

6



unanticipated contingency." *Jersey Palm-Gross, Inc. v. Paper*, 658 So. 2d 531, 535 (Fla. 1995). A daily rate printed on the face of the deal is not a remote contingency; it is the deal.

**PEDixon's failure to dispose of the collateral in a commercially reasonable manner, and to credit its fair market value when received, drove the effective rate higher still.**

This is the first of two events that aggravates the violation of § 687.071. A secured creditor that takes control and dominion over collateral assumes a duty: every aspect of its disposition — "method, manner, time, place, and other terms" — "must be commercially reasonable." Fla. Stat. § 679.610(2); *see* Fla. Stat. § 679.627. A lender may not seize property, sit on it, and let the unpaid balance keep generating interest while the asset that would have retired the debt lies idle in the lender's hands.[3]

PEDixon did exactly that in July 2023. It received real estate — the Hampton, South Carolina tract and the Holly Bluff parcel — yet did not credit the value against the debt until 2025, if at all. Florida law forecloses that delay. See Fla. Stat. § 687.03(3)(Property "taken as an advance or forbearance … shall be valued as of the date received").

---

[3] The principle is old and homey: a creditor may not lock the harvest in its own barn and then bill the farmer for letting the field lie fallow. Property the lender has taken under its dominion must be turned to account or credited at value; it may not sit idle while interest runs on a balance the property itself would have paid.



Crediting the property when it was received, at PEDixon's own conservative values, shrinks the principal on which interest is computed and makes the loans usurious as early as 2023 — an effective rate near 52.92% in the year the Hampton and Holly Bluff conveyances are credited. The longer PEDixon held the collateral without crediting it, the more egregious the § 687.071 violation became. The duty PEDixon ignored is the same duty that, once honored, exposes the usury.

**The forbearance transfer already in this record carries the effective rate above 100% per annum and into the felony loan-sharking band.**

The second significant event occurred in this court. Kenneth Dixon declared, under penalty of perjury, that Horton Johnson's January 2024 assignment of one hundred percent of the Homemakers Real Estate membership units to Crescent Sound, Ltd., as Trustee of the Tiered Land Trust, was the price of a six-month forbearance. (Doc. 69 at 9–10)(Decl. of Kenneth Dixon). Those membership units were valued at $8,750,000.[4] Florida law is unambiguous that a payment to obtain forbearance is interest. Fla. Stat. § 687.03 (usury to take, for "forbearance to enforce the collection of any sum of money," interest above the lawful rate); accord Fla. Stat. § 687.071(1)(d).

### Mafioso's Fantasy

---

[4] On December 31, 2023, GellerRagan, Homemakers' accountant, placed the book value of Homemakers at $6,895,454.37. A value that consisted of Homemakers' beneficial interest in the Tiered Land Trust at $4,930,029.67 and in accounts receivable, $1,824,261.15. The book value is less than what Johnson believes the fair market value to be, but either number sends the interest rate into loansharking territory.

If the transfer is what Dixon swore it was — a forbearance fee — then this loan becomes a loan shark's dream and a lender's nightmare. An \$8,750,000 charge for six months' forbearance on this portfolio yields an effective interest rate of 139.69% — more than five times the misdemeanor ceiling and far past the 45% felony line of § 687.071(3).[5] A rate exceeding 100% per annum does not merely violate the statute; it confirms that these extensions of credit sit where the Legislature said no court of this state may reach. The court need not accept the borrowers' valuations or the property's fair market value to reach this conclusion. Dixon's own sworn words and this court's original ruling in this case supply it.

**Because the defect is jurisdictional, no procedural doctrine can revive these claims, and this court must address it even on the court's own motion, and must address it first.**

Subject-matter jurisdiction is conferred by the constitution and the legislature, never by the parties. "No action of the parties can confer subject-matter jurisdiction upon a [ ] court." *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). It "can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). It may be "raised at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Because § 687.071(7) speaks to the power

---

[5] And arguably interest that has an incalculable return since the principal due as of January 2024 is zero, thus any interest is infinite on a phantom loan.

9

of the court rather than to a litigant's defense, the same incidents attach here. Any procedural objection PEDixon and ZPD now raise cannot cure the defect; no statute of limitations bars its consideration; and no prior order or judgment — in this case or any other — works a res judicata that resurrects a debt the Legislature made unenforceable. A void claim does not become valid because an earlier tribunal failed to notice it was void. A judgment entered without subject-matter jurisdiction is itself void and may be challenged at any time. *Mannino v. Mannino*, 980 So. 2d 575 (Fla. 2d DCA 2008).

### Jurisdiction Issue Is the Threshold Issue and Must Be Decided First

This court — all courts, for that matter — have an independent duty to determine their own subject-matter jurisdiction even if no party raises the issue. "The requirement that jurisdiction be established as a threshold matter … is inflexible and without exception." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998). Even on its own motion, this court must satisfy itself that it has subject-matter jurisdiction over the claims before it entertains an objection built upon them, and it may do so on its own motion. The jurisdictional restriction bars a cause based on the claims as it prevents the claim being wielded as a defense.

**At this point in time, this court should make only one factual determination as to its authority to adjudicate the claims. This court should proceed no further on any PEDixon and ZPD claims or matters.**

The statute leaves a single question of fact: whether these extensions of credit violate § 687.071. PEDixon's own records answer it — 32.33% in 2024, 29.10% in 2025, and 139.69% once Dixon's sworn forbearance is counted. Once the court makes that determination, the law makes the rest automatic. Accordingly, the court should not entertain or proceed on the PEDixon and ZPD claims for any purpose other than to find that they violate § 687.071.

This court should either conduct an evidentiary hearing on the legality of the PEDixon and ZPD claims, or the court should overrule their objection and strike all their previous filings. This court should disqualify these purported creditors from participating further in these proceedings.

## RELIEF REQUESTED

The law, applied to PEDixon's own records, requires the following:

1. determine that the PEDixon and ZPD extensions of credit violate Florida Statute § 687.071;

2. dismiss and disallow the PEDixon and ZPD claims as unenforceable under Florida Statute § 687.071(7) and 11 U.S.C. § 502(b)(1);

3. overrule the PEDixon and ZPD objection to the Rule 60 motions, which rests entirely on those unenforceable claims;

11

4. strike all prior filings of PEDixon and ZPD premised on those unenforceable claims;

5. disqualify PEDixon and ZPD from further participation in these proceedings;

6. in the alternative, set the matter for an evidentiary hearing on whether the PEDixon and ZPD extensions of credit violate § 687.071; and

7. grant such further relief as is necessary to give effect to the Florida Legislature's command that no court of this state enforce a debt made in violation of § 687.071.

The Florida Legislature has already decided this question. The law requires

that these claims not be enforced.

Respectfully submitted this 9th day of June, 2026.

_____

Frank L. Amodeo, *Pro se*
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32809@gmail.com

1

## CERTIFICATE OF SERVICE

I certify that on 9th day of June 2026, I filed the foregoing with the Clerk of

the court which will serve a notice of electronic filing on all counsel of record,

including counsel for PEDixon LLC and ZPD LLC.

_____

Frank L. Amodeo