**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

HOMEMAKERS REAL ESTATE, LLC,                    Case No. 6:25-bk-05570-GER
                                                Chapter  11

          Debtor.

_____/

**NOTICE OF RULE 2004 EXAMINATION *DUCES TECUM***
**OF THE RECORDS CUSTODIAN OF BEACHSIDE VR LLC**
(Documents Only)

Lara Roeske Fernandez, the duly appointed Chapter 11 Trustee (the "**Trustee**") in this case, by and through her counsel, requests that the Records Custodian of Beachside VR LLC ("**Examinee**") produce and deliver on or before 5:00 p.m., July 27, 2026, to Rhys P. Leonard, Esquire at the law offices of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis P.A., 101 E. Kennedy Boulevard, Suite 2700, Tampa, Florida all of the documents as detailed in **Exhibit A** attached hereto and incorporated herein.

This request for production of documents is pursuant to Rule 2004, Federal Rules of Bankruptcy Procedure, and Local Rule 2004-1, Bankruptcy Rules for the United States Bankruptcy Court for the Middle District of Florida.  The scope of the request is as described in Bankruptcy Rule 2004.

PLEASE BE GOVERNED ACCORDINGLY.

Dated: July 6, 2026

                              */s/ Rhys P. Leonard*
                              RHYS P. LEONARD
                              Florida Bar No.: 59176
                              rleonard@trenam.com
                              ANTHONY P. MARZOCCA
                              Florida Bar No. 1068857
                              amarzocca@trenam.com
                              TRENAM, KEMKER, SCHARF, BARKIN,

FRYE, O'NEILL & MULLIS, P.A.
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
Tel: (813) 223-7474 | Fax: (813) 229-6553
*Proposed Counsel to Chapter 11 Trustee*


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 6, 2026, a true and correct copy of the foregoing was forwarded through the Court's CM/ECF Noticing System to all registered ECM/ECF recipients or by U.S. Mail to: Beachside VR LLC, c/o Registered Agent, Stuart Goldman, 485 North Shore Dr., Cocoa Beach, FL 32931; Homemakers Real Estate, LLC, 2875 S. Orange Ave, Suite 500, #6409, Orlando, FL 32806; Office of the United States Trustee, George C Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801.

*/s/ Rhys P. Leonard*
Rhys P. Leonard

# UNITED STATES BANKRUPTCY COURT

Middle District of Florida

In re: Homemakers Real Estate, LLC,                    Case No. 6:25-bk-05570-GER

Chapter 11

Debtor.

**SUBPOENA FOR RULE 2004 EXAMINATION**

To: <u>Records Custodian of Beachside VR LLC</u>

*(Name of person to whom the subpoena is directed)*

☐ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure and Local Rule 2004-1.

| PLACE | DATE AND TIME |
|---|---|
| | |

The examination will be recorded by this method: _____

☒ *Production:* **YOU ARE COMMANDED** to produce the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material at the time, date, and place set forth below (if different from that of the examination):

| PLACE | DATE AND TIME |
|---|---|
| Trenam Law | July 27, 2026 |
| 101 E. Kennedy Boulevard, Suite 2700 | 5:00 p.m. EST |
| Tampa, FL 33602 | |

*(Description of documents, electronically stored information, or objects)*

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: July 6, 2026       CLERK OF COURT              OR

_____          _____
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing Lara Roeske Fernandez, Chapter 11 Trustee for the estate of Homemakers Real Estate, LLC, who issues or requests this subpoena, is: Rhys P. Leonard, Esq., Trenam Law, 101 E. Kennedy Boulevard, Suite 2700, Tampa, FL 33602, rleonard@trenam.com, (813) 223-7474.  **Document production should be emailed to Jodi Payne at jpayne@trenam.com.**

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

LF-84 (rev. 12/01/21)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____.

[X] I served the subpoena by delivering a copy to the named person as follows: Beachside VR LLC, c/o Registered Agent, Stuart Goldman, 485 North Shore Dr., Cocoa Beach, FL 32931 by U.S. First Class Mail on July 6, 2026; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____.

My fees are $ _____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true and correct.

Date: July 6, 2026

*Rhys P. Leonard*

_____
*Server's signature*

Rhys P. Leonard, Esq. | Trenam Law
*Printed name and title*

101 E. Kennedy Boulevard, Suite 2700, Tampa, FL 33602
*Server's address*

Additional information concerning attempted service, etc.:

LF-84 (rev. 12/01/21)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

. . .

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

---

## EXHIBIT "A"

### A. INSTRUCTIONS

1.      Each paragraph below shall operate and be construed independently; and, unless otherwise indicated, no paragraph limits the scope of any other paragraph.

2.      Identify every document in this request that is withheld on any claim of privilege, work product or other immunity from production and for each such document state:
   a.      the specific basis on which that document is being withheld;
   b.      the date and subject matter of the document;
   c.      the name and address of the author and/or originator of the document;
   d.      the name and address of the recipient of the document.

3.      The documents produced for inspection shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the paragraphs set forth below.

4.      The party under subpoena should furnish any additional or supplemental documents subject to this Schedule "A" which are created or discovered after the original production of documents.

5.      This Schedule "A" is intended to cover all documents in the possession of the party under subpoena or subject to its custody or control, including information in the possession, custody or control of its attorneys, accountants, investigators, experts, employees, agents and any other persons employed on its behalf, and not merely such information as is known of its own personal knowledge.

6.      Whenever appropriate, the singular form of a word should be interpreted in the plural.

### B. DEFINITIONS

1.      As used herein, "You" or "Your" or "Beachside" means Beachside VR LLC, including its agents, representatives, attorneys, expert witnesses, accountants, auditors, and all other persons acting or purporting to act on its behalf.

2.      As used herein, "Debtor" means Homemakers Real Estate, LLC, including its agents, representatives, attorneys, expert witnesses, accountants, auditors, and all other persons acting or purporting to act on its behalf.

3.      As used herein, "document" shall refer to all tangible items in your possession, custody, or control, including, but not limited to, correspondence, ESI, e-mails, electronic communication, memoranda, contracts, files, leases, agreements, closing statements, minutes, reports, records, notes, telephone messages, long distance telephone call records, invoices, bills, books, schedules, tabulations, accountants' work papers, diary entries, telegrams, telex communications, accountings, charts, cancelled checks, receipts, ledgers, audio or video tapes,

3

films or photographs, press releases, newspaper clippings, advertisements, formal notices, investigations, claims, settlements, orders, blueprints, sketches, drawings, surveys, test reports, printouts, data, information, discs, circuits, tangible items upon which or in which information is stored (including any form of electronic or computer database), preparatory or draft materials and all other writings or recordings of whatever nature, whether assertedly privileged or not. The term "document" includes the original and any and all copies of the original, as well as drafts and copies which differ in any respect from the original. Where executed copies exist, produce an executed copy and all executed and unexecuted copies which differ in any respect, other than execution, from the executed copy.

4.    The term "communication" means the conveyance of information or knowledge by writing, orally or otherwise and includes, without limitation, writings, letters, memoranda, reports, notes, telegrams, interoffice communication, text messages, voicemail, e-mail, audiotapes, videotapes, computer programs, and any form of electromagnetic storage.

5.    The term "thing" or "item" includes at least documents and all three-dimensional objects of any kinds, including, but not limited to, samples, prototypes, parts, objects, mark-ups, displays, exhibits, books, advertising, tape cartridges or cassettes or reels, computer disks, containers, wrappers, and representations.

6.    The term "electronically stored information" or "ESI" shall include all information stored in electronic form on computers or other media, including, without limitation: e-mail (including attachments which shall be kept with the email); instant messages; text messages; word-processing documents; spreadsheets; Power Points and other presentation documents; graphics, animations, images, audio, video, and audiovisual recordings; and other user, or machine created computer files or other digital information which is stored on computer networks, servers, computer systems, desktop computers, laptop computers, home computers, the Internet, an Intranet, archives, discs, CD's diskettes, drives, zip drives, tapes, cartridges, flash drives, and other external storage media, personal digital assistants, handheld wireless devices, cellular telephones, blackberries, pagers, and voicemail systems. Electronically stored information should be produced in its native format, except that ESI may be produced in a reasonably usable form, *i.e.*, single page TIFFs that are searchable by electronic means. In addition, ESI should be produced in a logically unitized format. Logical unitization of documents requires the producing party to ensure, among other things, that a particular document captures all of its respective pages and that document relationships, such as a "parent" document (*e.g.*, a fax cover sheet) and "children" attachments (*e.g.*, a faxed letter and attachment to the letter), are preserved.

7.    As employed herein, the terms "refer to" and "relate to" mean, in whole or in part constituting, evidencing, concerning, regarding, containing, embodying, reflecting, describing, involving, identifying, stating, dealing with, or in any way pertaining.

8.    As employed herein, the terms "and" or "or" have both conjunctive and disjunctive meanings.

9.    As employed herein, the terms "any" and "all" mean "each" and "every."

10.     The term "present" shall mean the date on which the examination is scheduled and actually occurs.

11.     In producing documents requested herein, produce documents in full, without abridgment, abbreviation, or editing of any sort, except as is necessary to preserve a privilege or other recognized protection against discovery, in which case the method used for abridgement, abbreviation, or editing should make it clear that some portion of the document has been redacted, as well as the legal basis for the redaction.

12.     All documents should be segregated in accordance with the numbered paragraphs below.

13.     All documents requested herein that you withhold from production, in whole or in part, on the basis of a claim of privilege or statutory authority should be listed in accordance with the procedures described in the instructions above, and identified by:
   a.   author(s);
   b.   addressee(s);
   c.   date;
   d.   type of document;
   e.   subject matter;
   f.   number of pages;
   g.   number of attachments or appendices;
   h.   indicated or blind copies;
   i.   all persons to whom shown or explained;
   j.   present custodian;
   k.   factual or legal basis for claimed privilege, or specific statutory authority which provides the claimed basis for non-production

14.     All documents or tangible items requested herein which have been destroyed, placed beyond your control, or otherwise disposed of should be listed in accordance with the procedures described in the instructions above, and identified by:
   a.   author(s);
   b.   addressee(s);
   c.   date;
   d.   type of document;
   e.   subject matter;
   f.   number of pages;
   g.   number of attachments or appendices;
   h.   indicated or blind copies;
   i.   all persons to whom shown or explained;
   j.   date of destruction or other disposition;
   k.   reason for destruction or other disposition;
   l.   person authorizing destruction or other disposition;
   m.   person destroying or otherwise disposing of documents, and if not destroyed, person in possession of document otherwise disposed of which provides the claimed basis for non-production.

### C.  **DOCUMENTS TO BE PRODUCED**

With regard to each of the following requests for production, please produce the original or best copies of all documentation in your possession, custody, or control.

1.      Copies of any and all accounting of rents received for all units listed in the Vacation Rental Services Agreement attached hereto as **Exhibit B**.

2.      Copies of any and all expenses paid and net rents sent to third parties, including but not limited to Crescent Sound, Ltd., as Trustee of the Tiered Land Trust dated September 13, 2023 to current.

3.      Copies of any and all communications, including but not limited to emails, between Beachside on the one hand and Crescent Sound, Kenneth G. Dixon, Pedixon, LLC, ZPD LLC (or any entity owned and controlled by Mr. Dixon), or Alison Pitkanen on the other hand.

# EXHIBIT B

DocuSign Envelope ID: 3C5BC507-D56D-47B2-A4DB-921CE01C7313

## VACATION RENTAL SERVICES AGREEMENT

This Vacation Rental Services Agreement ("Agreement") is by and between Beachside VR LLC ("Manager"), a Florida limited liability company, and Crescent Sound, Ltd., as Trustee of the Tiered Land Trust dated September 13, 2023 ("Owner") to provide vacation rental services for the properties located at Cape Crossing Resort in Merritt Island, FL, as said properties are more particularly described on Schedule A attached hereto (collectively, the "Home").

Owner and Manager agree as follows:

### PART I: SUMMARY OF SERVICE

A. MANAGER SERVICES. Owner authorizes Manager to provide the following services:

**1. Reservations and Payments.** Manager will process reservations and process and collect Payments, through a Property Management Software that manages different booking Channels, from guests for vacation rental stays at the Home, and make payments to Owner from Manager's bank account.

**2. Marketing.** Manager will create marketing materials for the Home, which may include electronic and printed materials, descriptions, photographs, virtual tours, or other materials, and will promote the Home on Manager's website. To maximize exposure of the Home, Manager will determine appropriate third-party marketing channels (each a "Channel" and collectively, the "Channels") and market the Home on such Channels.

**3. Price Management.** Manager will determine rental rates based on property and market characteristics and demand with Owner's input to maximize revenue. Owner will have the opportunity to specify a minimum nightly rate should they elect to do so. Manager will use a dynamic pricing strategy so the pricing will be different every night, but will never dip below the pre-specified minimum.

**4. Cleaning Services.** Manager will set and collect a cleaning fee from guests. Manager shall furnish housekeeping services; basic light bulbs; and guest supplies including bath tissue, soap, paper towels, dishwashing detergent, garbage bags, towels, and linens.

**5. Lodging and Sales Taxes.** Unless otherwise specified in writing or required by law, Manager (or, if applicable, a Channel) will collect applicable taxes from guests, file sales and lodging tax returns, and make all sales and lodging tax payments on Owner's behalf.

**6. Guest Relations.** Manager will take actions it deems appropriate to manage guest relations, including communicating with guests, managing guest check-in and check-out, addressing guest issues that arise during or after a rental stay, and managing guest reviews.

**7. Maintenance and Repairs.** Owner authorizes Manager to perform or arrange on Owner's behalf and at Owner's expense ordinary maintenance, repairs, and services for the Home. Unless specifically authorized by Owner or an Emergency Repair, the expense to be incurred for a single item of repair or alteration shall not exceed $300.

**8. Statements.** Each month, Manager will send Owner an account statement, or will make an account statement available through an owner portal. Owner agrees to carefully review all account statements upon receipt, and to notify Manager of any presumed errors in or questions about a statement by the last day of the month in which the statement is sent.

1

DocuSign Envelope ID: 3C5BC507-D56D-47B2-A4DB-921CE01C7313

### B. OWNER RIGHTS AND OBLIGATIONS.

**1. Owner Use.** Owner has the right to use the Home so long as Owner reserves the dates of use in advance with Manager on Manager's owner portal. Owner may not schedule an Owner stay for any period for which an Existing Reservation is in place. Owner stays are subject to Manager's standard check-in and check-out times for the Home. Unless the parties agree otherwise in writing or Owner specifies otherwise in the owner portal, Manager shall clean the Home after each Owner stay and charge to Owner the then-current cleaning fee for the Home. Cleaning fee will be optional for owner use.

**2. Utilities and Services.** Owner shall furnish at Owner's expense all appropriate utilities for the Home, including but not limited to electric, sewer, water, internet, trash removal, and pest or termite control as needed. Owner is advised to lock or disable any pay-per-use services, such as long-distance telephone service or pay-per-view cable television, to prevent guests from incurring charges.

**3. Furnishings.** Owner shall furnish the Home with suitable equipment, appliances, furniture, and furnishings necessary for rental occupancy. Manager will provide Owner with a list of all required items. If Owner fails to provide any required items for the Home, Manager may purchase any missing items at Owner's expense.

**4. Sale of Home.** To ensure that reservations are honored and that guest stays are not interrupted, Owner shall provide written notice to Manager prior to listing the Home for sale in order to allow for Managers to fulfill guest's reservation(s) or provide notice of reservation changes to guest, if there are any Existing Reservations for stays on or after the listing date, and shall notify Manager that the Home is listed for sale as soon as reasonably practicable after the listing. All showings of the Home must be coordinated in advance through Manager and to the extent reasonable must be scheduled during periods when the Home is not occupied by a rental guest.

**5. Liability Insurance.** Owner shall obtain a liability insurance policy (a) with coverage of at least $100,000 per each occurrence for bodily injury and property damage, (b) that is either a commercial general liability policy or a policy that otherwise covers transient rental use of the Home, and (c) that either names "Beachside VR, LLC" as an additional insured or that includes Beachside VR, LLC within the definition of a named insured. Owner shall furnish Manager with a certificate demonstrating compliance with this Paragraph.

### C. MANAGEMENT FEE; PAYMENT OF RENTAL PROCEEDS.

**1. Management Fee.** Manager's Management Fee shall be 10% of the Rental Proceeds through March 31, 2024 ("Management Fee"). Commencing April 2024, the Management Fee shall be 18%.

**2. Payment of Rental Proceeds.** All payments by Manager to Owner will be made through Manager's trust account. Manager shall pay Owner all Rental Proceeds as defined herein, less the Management Fee and any expenses incurred on Owner's behalf pursuant to this Agreement ("Owner Payment"). Manager shall initiate payment by direct deposit of the Owner Payment by the 10th of each month (or, if the 10th falls on a weekend or holiday, the following business day) for rentals with a checkout date during the previous month. Owner may

2

DocuSign Envelope ID: 3C5BC507-D56D-47B2-A4DB-921CE01C7313

view (1) booking and guest information, (2) previous monthly trust account payments to Owner, and (3) monthly financial reports for each previous month completed.

**D. EXCLUSIVITY.**

Owner shall not contract with any third party for rental services or marketing during the Term without Manager's express written permission. Any Owner advertisement of the Home as a rental shall direct prospective renters to Manager.

**E. TERM; TERMINATION.**

1. **Term.** This Agreement shall become effective as of the Effective Date and shall continue in effect until the Effective Termination Date (the "Term."). The "Effective Date" of this Agreement shall be the date of the latest signature or electronic acceptance of the terms of this Agreement.

2. **Termination.** Either party may give advance written "Notice of Termination" to the other party at any time. Following Notice of Termination, the "Effective Termination Date" shall be 30 days from the date Notice of Termination is delivered, or any other date Owner and Manager mutually agree on. If Owner terminates this agreement within 180 days of the Effective Date, Owner shall reimburse Manager for all "Onboarding Services" set forth in **Schedule 1** attached hereto. Upon "Effective Termination Date", Owner may choose to cancel booked reservations thereafter at Owner's expense. It is standard practice for Manager to solicit vacation rental reservations up to twelve months in advance. Manager may shorten this period (the "Booking Window") to as few as three months provided Owner requests in writing that Manager shorten the Booking Window. If Manager is unable to fulfill its responsibilities as set forth in this agreement, complete control of units will return to Owner.

## PART II: GENERAL TERMS AND CONDITIONS

A. OWNER REPRESENTATIONS AND ADDITIONAL RIGHTS AND OBLIGATIONS.

1. **Multiple Owners.** If there are multiple owners, the term "Owner" shall apply collectively and individually to each owner, and the obligations of each owner under this Agreement are joint and several.

2. **Representations and Warranties.** Owner represents and warrants that: (1) Owner is the lawful owner of the Home; (2) Owner has full authority to enter into this Agreement, and if Owner is a legal entity, that the person signing on the entity's behalf is fully authorized to bind the entity; (3) Owner's execution of this Agreement does not conflict with any contractual or legal obligation of Owner to a third party; (4) the physical condition of the Home, including any special features or amenities, is suitable and safe for use as a vacation rental and in compliance with applicable local building, health, and other codes or regulatory requirements; and (5) use of the Home as a vacation rental is not prohibited by any applicable law, regulation, deed restriction, or homeowners' association bylaw or rule. If an Owner agrees to enter into this Agreement on behalf of one or more additional owners, that Owner further represents and warrants that he or she has full permission or authority to bind the additional owner or owners. These representations and warranties are continuing. In the event that any of the foregoing representations or warranties is no longer true or correct, Owner will immediately notify Manager in writing.

DocuSign Envelope ID: 3C5BC507-D56D-47B2-A4DB-921CE01C7313

**3. Rights and Obligations of Ownership.** Nothing in this Agreement changes Owner's title to, or general rights and obligations of ownership in, the Home. Except as expressly provided in this Agreement, Owner is and shall at all times remain fully responsible for all physical, legal, and financial matters pertaining to the Home whether it is rented or not, including responsibility for: the cost of all repairs, maintenance, and replacement of any and all furnishings, fixtures and equipment necessary to maintain the Home in a suitable condition for rental occupancy; financial matters associated with ownership of the Home; and ensuring that the Home is in compliance with applicable law, and regulation, deed restriction, or homeowners' association bylaw or rule.

**4. Guest Privacy.** To ensure guest privacy, Owner shall not enter the Home, unless reasonably warranted by Emergency Repair or medical emergency, or to permit any other person to do so, without (1) reserving an Owner stay with Manager covering the period of access or (2) checking with Manager, or Guest(s) prior to entry. Owner shall not place any camera in the interior of the Home. Owner will not automatically be provided any guest-identifying information that is provided to or accessible by Manager, but will receive guest-identifying information upon request to Manager.

**5. Change of Address.** To ensure Manager is able to reach Owner if necessary and make timely Owner Payments, Owner shall notify Manager via the owner portal of any change in Owner's mailing address, telephone number, email address, or direct deposit information. Manager shall not be liable for its failure to contact Owner or make Owner Payments when required under this Agreement if Owner has not updated Owner's contact information.

**6. Compliance with Law; Licenses and Permits.** Owner agrees to abide by all applicable laws, regulations, deed restrictions, association rules, and licensing and permitting requirements applicable to use the Home as a vacation rental. Owner is responsible for obtaining and maintaining any applicable license or permit for the use of the Home as a vacation rental and for payment of all associated fees. Where permitted by law, Manager may, but is not required to, act on Owner's behalf to obtain or renew a license or permit for the Home.

**7. Existing Reservations.** Owner acknowledges that guest satisfaction is a priority for Manager, and that the inability to honor reservations is a significant source of guest dissatisfaction, poor reviews, and demands for compensation. Accordingly, Owner agrees to honor all Existing Reservations with a checkout date prior to the Effective Termination Date. "Existing Reservations'' are reservations for which Manager or Channels have received a monetary deposit. If Owner fails or refuses to honor Existing Reservations for any reason, then Owner and Manager will return any monetary deposit paid by Guests. Owner shall not, however, be responsible for damages for failure to honor Existing Reservations where such failure is due to factors beyond the Owner's reasonable control, such as flooding, fire, or the occurrence of a natural disaster or a mandatory evacuation order. If Owner makes an insurance or other third-party compensation claim that leads to recovery of lost rental income on displaced reservations, Owner shall notify Manager of such recovery in writing, and Owner will pay or cause to be paid to Manager an amount equal to the Management Fee that Manager would have received on the lost rental income Payment.

**8. Linen Program.** Manager will coordinate the replacement of damaged and worn out Linens through a bi-annual linen fee which will be deducted from the Owner's payout. Linens include sheets, towels and blankets.

4

DocuSign Envelope ID: 3C5BC507-D56D-47B2-A4DB-921CE01C7313

## B. MANAGER RIGHTS AND OBLIGATIONS.

**1. Guest Fees and Services.** In addition to a cleaning fee, Owners may permit Manager to charge guests additional fixed or variable fees, such as a booking fee, pet fee, hot tub fee, and late check out fee.

**2. Channel Marketing.** A Channel may act as merchant of record for certain transactions reserved through the Channel. Owner acknowledges that certain Channels may charge guest fees that will be retained by the Channel (and that will not be shared with Manager or Owner). Owner further acknowledges that the presentation of the Home, including but not limited to the breakdown of the total cost of stay as displayed to the end user during checkout, may vary among Channels; and that due to limitations on the ability to present specific line items on some Channels the amount reflected as "rent" on a Channel might include fees, taxes, or other amounts that are not "Rental Proceeds" as defined in this agreement.

**3. Guest Refunds.** Manager, with Owner's agreement,  may issue full or partial refunds to guests to address guest dissatisfaction where reasonable to do so, and will be deducted from the property's generated revenue.

**4. Optional Start Date for Services.** If the start date for services under this Agreement is later than the Effective Date, Manager will perform the services listed in this Agreement beginning on the date the Home goes live on Manager's website, or on such other date as Manager and Owner may agree in writing (provided that Manager may prepare to perform such services beginning on the Effective Date).

**5. Out-Of-Order Status.** Manager, with Owner's approval, may place the Home in "out-of-order" status at any time, for any cause Manager believes could materially affect the quality or safety of a guest's stay. In no event will Manager be liable for any losses to Owner related to the Home being placed in "out-of-order" status.

**6. Emergency Repair.** A repair is an "Emergency Repair" if Manager in its sole discretion deems the repair to be necessary either to (1) protect the Home or its contents from damage or destruction or (2) return the Home to rentable condition during or in advance of a guest stay. To the extent reasonable under the circumstances, Manager will attempt to contact Owner prior to incurring expenses for an Emergency Repair.

**7. Out Of Scope Hourly Rate.** Manager strives to keep Owner's home in prime condition and will handle most preventative maintenance tasks and all property management tasks with no hourly charge. If projects arise that are deemed out of scope (ie. pest control, handiman services, etc) there will be a $50 and hour labor charge to complete the task. The charge will be discussed prior to work being completed and will be deducted from the Owner's Payout.

**8. Security.** Manager will provide, and retain all property rights, for all smart locks, professional photographs, copywriting, for a period of 6 months from start date of this Agreement. Then at such time, ownership of the aforementioned property will revert to owner. In the event that either

5

DocuSign Envelope ID: 3C5BC507-D56D-47B2-A4DB-921CE01C7313

party terminates this agreement after 6 months, Manager agrees to assist owner with an easy transition.

**9. Marketing Stays.** Manager is entitled to block off (7) days per year where rental revenue is not collected. These days will be used for marketing purposes to incentivize future bookings.

## C. DEFINITION OF RENTAL PROCEEDS.

For purposes of this Agreement, "Rental Proceeds" means:

**1. Rental Proceeds.** For reservations booked on the Manager's website or by phone through Manager reservation agents, the "Rental Proceeds" for each reservation shall be the total rent paid for the period during which the Home was occupied pursuant to the reservation less the credit card processing fees.

**2. Rental Proceeds for Channel Bookings.** For reservations booked through a Channel, the "Rental Proceeds" for each reservation shall be the total rent paid for the period during which the Home was occupied pursuant to the reservation. From Rental Proceeds, Manager agrees to pay commissions payable to Channels. Management has the right to raise or lower the base rates of the homes and/or add a percentage increase to the daily base rate to offset the commissions that Channels charges to the Management company on each booking. Manager shall strive for price parity across Channels, such that the amounts earned by Manager and Owner are equivalent regardless of which Channel provided a given reservation. Manager will never price below the pre-agreed minimum price.

**3. Rental Proceeds Limited to Rent.** For purposes of clarity, Rental Proceeds do not include lodging, sales, or other applicable taxes, cleaning fees, other guest or third-party fees, or any other fixed or variable charges, fees or amounts other than rent, except as the parties may agree in writing.

## D. CHANGE IN LAW

If any state, county, city or other government or association statute, rule, or regulation prohibits the use of the Home as a vacation rental as contemplated by this Agreement or makes such use economically prohibitive, then Manager may terminate this Agreement immediately and neither party shall be obligated to honor Existing Reservations.

## E. INDEMNIFICATION.

Each Party shall indemnify, defend, and hold harmless to the other party, its affiliates, successors and assigns, and each of their respective officers, directors, employees, owners, and agents for, from, and against any and all claims, suits, demands, actions or other proceedings, and any and all losses, liabilities, damages, costs or expenses of any kind (specifically including, without limitation, reasonable legal and accounting fees) (collectively "Claims"), arising from or relating to property damage or injury to persons (including death) by reason of any cause whatsoever either (1) occurring in or about the Home unless resulting from actions taken under the express or implied direction of Owner. Notwithstanding the foregoing obligation, Neither Party is required to indemnify, defend, or hold harmless the other with

DocuSign Envelope ID: 3C5BC507-D56D-47B2-A4DB-921CE01C7313

respect to any Claims solely and directly caused by the Other Party's gross negligence, intentional misconduct, or fraud.

### F. LIMITATION OF LIABILITY.

MANAGER WILL HOLD A $1 MILLION INSURANCE POLICY FOR THE ENTIRETY OF THIS AGREEEMENT AND SHALL BE LIABLE TO OWNER FOR ANY DIRECT DAMAGES CAUSED BY MANAGER.

### G. MISCELLANEOUS.

**1. Independent Contractor.** Manager is an independent contractor and it is fully understood and agreed upon by the parties that Manager shall have full power and authority to select the means, method, and manner of performing the duties, obligations, and responsibilities assumed by Manager under this Agreement.

**2. Governing Law.** This Agreement shall be construed and enforced in accordance with the laws of the State of Florida. If there is a lawsuit, the parties consent to the jurisdiction of the state and federal courts of the county in which the Home is located.

**3. Assignment.** Upon sale of Owner's property or Management's company, either party may assign this Agreement or any of its rights or delegate any of its duties or other interests in this Agreement at any time without the other party's consent.

**4. Signatures.** A signature delivered by facsimile or electronic means, a digital signature, or an electronic manifestation of assent (such as clicking a box to agree) shall have the same force and effect as an original signature. This Agreement may be executed in one or more counterparts or in different formats, each of which shall be deemed to be an original, and all of which together shall constitute one and the same agreement.

**5. Headings and Footers for Convenience Only; Interpretation.** Headings, captions, and the content of headers and footers in this Agreement are for convenience only and shall not affect the interpretation of this Agreement. In interpreting this Agreement or any part of it, no rule of construction shall apply to the disadvantage of any party on the basis that the party prepared this Agreement or any part of it.

**6. Severability.** If any portion of this Agreement is held invalid in any jurisdiction: (1) such holding shall not affect the validity of that portion in any other jurisdiction; (2) the validity of the remaining portions shall not be affected; and (3) to the greatest extent reasonable and possible, the intent of the parties hereto with respect to their rights and obligations under this Agreement (including with reference to the parts deemed invalid) will be given full effect.

**7. Waiver.** Any failure by Manager to enforce any provision of these terms shall not be construed as a waiver of future enforcement of that provision or of any of Manager's rights and privileges under this Agreement.

**8. Amendments.** This Agreement may be amended as follows:

**a. Amendment by Mutual Assent.** This Agreement may be amended at any time upon the mutual assent of the parties. Any amendment by mutual assent must be in writing (including by electronic mail), must be signed or assented to by a Manager representative at the regional director level (or equivalent) or higher, and must identify the provisions of this Agreement that are to be amended.

DocuSign Envelope ID: 3C5BC507-D56D-47B2-A4DB-921CE01C7313

**b. Amendment by Notice and Acceptance.** Manager may send Owner a proposed amendment to this Agreement, or a proposed fully restated agreement. Manager will send any proposed amendment or restated agreement by mail or electronic mail to Owner's last known address. Any proposed amendment will be deemed accepted and will be incorporated into this Agreement, and any restated agreement will replace this Agreement, effective on the 31st day after Manager transmits the proposed amendment or restated agreement to Owner, unless Owner notifies Manager in writing before the date the amendment or restated agreement becomes effective that Owner objects, in which event the proposed amendment or restated agreement shall not become effective. An objection to parts of a proposed amendment or restated agreement will be treated as an objection to the entirety of the proposed amendment or restated agreement.

**9. Intellectual Property.** All photographs, text, and other marketing materials Manager creates pursuant to this Agreement (and all copyrights and other intellectual property rights therein) are and shall at all times shall remain the sole and exclusive property of Manager for a period of 6 months from start date. If Owner holds the copyright or other intellectual property right in any marketing materials for the Home, Owner grants Manager a limited license for the term of this Agreement to use such materials for the purpose of performing the vacation rental services hereunder.

**10. Survival of Terms.** Part II sections A(7) (Existing Reservations), E (Indemnification), F (Limitation of Liability), and G(2) (Governing Law), and all other terms that by their nature should logically survive termination of this Agreement, shall continue in force and effect after termination.

**11. Entire Agreement.** This Agreement, including any contemporaneously executed addenda, constitutes the entire agreement of the parties hereto and supersedes all prior and contemporaneous communications, understandings, agreements, representations, and warranties, whether oral or written, relating to the subject matter hereof.

DocuSign Envelope ID: 3C5BC507-D56D-47B2-A4DB-921CE01C7313

## VACATION RENTAL SERVICES AGREEMENT

(Signature Pages)

OWNER: Crescent Sound, Ltd., as Trustee of the Tiered Land Trust dated September 13, 2023

By: _____

Kenneth G. Dixon, General Partner of Crescent Sound, Ltd., Trustee

MANAGER: Beachside VR, LLC, a Florida limited liability company

By: _____

Stuart Goldman, Manager

9

| UNIT # | PROPERTY ADDRESS |
|---|---|
| 101 | 103 Parrotfish Lane, Unit 101, Merritt Island, FL 32953 |
| 102 | 103 Parrotfish Lane, Unit 102, Merritt Island, FL 32953 |
| 103 | 202 Ivory Coral Lane, Unit 103, Merritt Island, FL 32953 |
| 104 | 202 Ivory Coral Lane, Unit 104, Merritt Island, FL 32953 |
| 107 | 202 Ivory Coral Lane, Unit 107, Merritt Island, FL 32953 |
| 202 | 202 Ivory Coral Lane, Unit 202, Merritt Island, FL 32953 |
| 203 | 202 Ivory Coral Lane, Unit 203, Merritt Island, FL 32953 |
| 205 | 202 Ivory Coral Lane, Unit 205, Merritt Island, FL 32953 |
| 207 | 202 Ivory Coral Lane, Unit 207, Merritt Island, FL 32953 |
| 307 | 202 Ivory Coral Lane, Unit 307, Merritt Island, FL 32953 |
| 407 | 202 Ivory Coral Lane, Unit 407, Merritt Island, FL 32953 |
| 507 | 202 Ivory Coral Lane, Unit 507, Merritt Island, FL 32953 |
| 101 | 2709 Cutlass Point Lane, Unit 101, Merritt Island, FL 32953 |
| 101 | 2719 Cutlass Point Lane, Unit 101, Merritt Island, FL 32953 |
| 103 | 2719 Cutlass Point Lane, Unit 103, Merritt Island, FL 32953 |
| 104 | 2709 Cutlass Point Lane, Unit 104, Merritt Island, FL 32953 |
| 206 | 202 Ivory Coral Lane, Unit 206, Merritt Island, FL 32953 |
| 303 | 202 Ivory Coral Lane, Unit 303, Merritt Island, FL 32953 |
| 305 | 202 Ivory Coral Lane, Unit 305, Merritt Island, FL 32953 |
| 402 | 202 Ivory Coral Lane, Unit 402, Merritt Island, FL 32953 |
| 403 | 202 Ivory Coral Lane, Unit 403, Merritt Island, FL 32953 |
| 404 | 202 Ivory Coral Lane, Unit 404, Merritt Island, FL 32953 |
| 503 | 202 Ivory Coral Lane, Unit 503, Merritt Island, FL 32953 |
| 504 | 202 Ivory Coral Lane, Unit 504, Merritt Island, FL 32953 |
| 505 | 202 Ivory Coral Lane, Unit 505, Merritt Island, FL 32953 |
| 101 | 211 Ivory Coral Lane, Unit 101, Merritt Island, FL 32953 |
| 103 | 212 Ivory Coral Lane, Unit 103, Merritt Island, FL 32953 |