## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| In re: | Case No. 6:25-bk-05570-GER |
| HOMEMAKERS REAL ESTATE, LLC, | Chapter 11 |
| | (Involuntary) |
| Debtor. | |

FILED ORL INTAKE- USBC
10 JUL 2026 PM2:02

## VERIFIED NOTICE OF THE MONEY LENT, THE MONEY REPAID, AND THE VALUE TRANSFERRED ON THE DIXON LOANS

**1. Twenty-one months ago I told the five principals to arbitrate the three questions that divide them.**

In or about October 2024, I spoke with each of the principal parties to the Dixon loans — five people I count as friends. I told each of them the same thing. Their positions on the value of the assets and on when the loans were paid were irreconcilable. The sensible course was to retain competent counsel and arbitrate three questions: what had been repaid, when it was repaid, and what the in-kind transfers were worth, thus what remained owing.

**2. No arbitration happened; the litigation multiplied instead.**

No one arbitrated anything. The parties instead produced what is the equivalent of the Central Florida Attorneys Full Employment Act: this involuntary case, In re Homemakers Real Estate, LLC, No. 6:25-bk-05570-GER (Bankr. M.D.

1

Fla. 2025); the voluntary case, In re Homemakers Real Estate, LLC, No. 6:25-bk-02685-GER (Bankr. M.D. Fla. 2025); a Chapter 7 case; the individual case, In re Flynn, No. 6:26-bk-00399 (Bankr. M.D. Fla. 2026); and numerous state-court proceedings, including 650 85th Street, LLC v. PEDIXON, LLC, No. 2025-CA-518-M (Fla. 16th Cir. Ct.), and Flynn v. PEDIXON LLC, No. 2025-CA-004329-O (Fla. 9th Cir. Ct.).[1] And yet we remain no closer to a consensus on what is owed.

**3. I assembled every party's records into one chronological payment list.**

Because the arbitration never came, I accumulated the data myself, from every party who would provide it, Mr. Dixon included. Mr. Dixon's own internal loan reports, the recorded instruments, the closing and settlement statements, bank records, appraisals, and tax filings all went into the attached documents or Document 203 in this case: the Complete Chronological Payment List (Ex. B), explained in plain terms by the attached narrative summary (Ex. A). The underlying evidence is already of record. (Doc. 203 and exhibits)(contains the evidence of payment and value).

The list shows $11,225,000.00 lent across eleven loans between January 28, 2022 and September 13, 2023. It shows verified payments to the Dixon lenders of $7,119,091.41 in cash and $19,851,897.00 in kind — $26,970,988.41 in total.

---

[1] At one point, I counted 22 actions which were fallout from the calamitous disarray caused by the litigation-friendly approach taken.

2

Separate from these totals it identifies $332,500.00 in items that await verification. I assembled the history of loans and payments so the parties, and if necessary the court, can determine what, if anything, the Dixon lending entities are due or owe — and so everyone can see what the fight is really about, instead of the noise that has been made about it.

**4. Sworn statements of the claims from each party would expedite these cases.**

The court can shorten these proceedings by requiring each party that asserts or disputes the Dixon lender claims to file its own sworn statement: what was repaid, when it was repaid, and what the transferred property was worth. The disputes would then be reduced to identifiable line items, and the noise would end. At a minimum, the court and the parties have a verified framework upon which to base their arguments.

## VERIFICATION

I declare under penalty of perjury that the factual statements in this notice are true and correct to the best of my knowledge, information, and belief. 28 U.S.C. § 1746.

Respectfully submitted this 10th day of July, 2026.

**Frank Amodeo, Pro Se**
4409 Hoffner Avenue #348

Orlando, FL 32817
(407) 406-1315
flahome32801@gmail.com

4

## CERTIFICATE OF SERVICE

I certify that on July 10, 2026, a true and correct copy of the foregoing

notice and its Exhibits A and B was filed using the court's CM/ECF system, which

will serve a copy on all counsel and parties of record who are registered CM/ECF

users.

Frank Amodeo, Pro Se

# THE DIXON LOANS HAVE BEEN PAID
## An Explanation of the Dixon is Paid Package and the Complete Chronological Payment List

### What These Documents Are

This narrative explains two documents. The first is the Complete Dixon is Paid Package with Exhibits (April 24, 2026), filed of record in *In re Homemakers Real Estate, LLC*, No. 6:25-bk-05570 (Bankr. M.D. Fla. 2025) (Doc. 203 and exhibits) — the underlying evidence. It contains the eleven loan documents (Exhibits L-1 through L-11) and the proof of each category of repayment (Exhibits P-1 through P-13): closing statements, recorded deeds, appraisals, corporate assignments, bank records, tax filings, and the Lender's own internal loan reports.

The second is the Complete Chronological Payment List (July 8, 2026), attached to this narrative. It lists payments that the Dixon lending entities received, in date order, from the first loan in January 2022 through April 2026, and identifies the document that proves each entry. It is the Package reorganized into a single timeline, so the reader can follow the money from beginning to end.

### The Loans

Between January 28, 2022 and September 13, 2023, the Dixon entities — PEDIXON LLC, PE Dixon, LLC, ZPD LLC, and Parke Financial, Ltd. — made eleven loans totaling $11,225,000.00 to the Tiered group of companies, related borrowers, and their guarantors. Every loan was secured: mortgages on real estate, certificates of deposit, deeds signed over at closing, pledges of corporate stock and membership units, and personal guarantees. Beginning with the eleventh loan in September 2023, the Lender billed and collected on the whole portfolio as one.

### Where the Numbers Come From

The Lender never provided receipts for the payments it received, and never provided statements showing how payments were applied, despite repeated written requests. The payment record therefore had to be assembled from the Lender's own internal loan reports — prepared by the Lender and given to the borrowers on three occasions (September 2023, September 2024, and May 2025) — and then checked against independent records wherever they exist: recorded deeds, closing and settlement statements, bank records, appraisals, and tax filings. The checks hold up. For example, the rental distributions the Lender collected from Beachside VR reconcile with the IRS Form 1099 for 2024 to within $1.40.

The report is built conservatively, and every convention runs in the Lender's favor. Three items that cannot yet be verified ($74,000, $102,500, and $156,000) are set apart in their own section and excluded from the totals until the Lender provides an accounting. Two ledger lines that could overlap a later summary entry are marked as adjustments and excluded so that nothing is counted twice. Payments known to have been made between October 2025 and January 2026, in amounts only the Lender knows, are carried at zero. The totals can only be too low — never too high.

### The Major Payments, in Order

The first loan and the first payment came in the same year. In January 2022 the Lender received $150,000 from the proceeds of ROGO development-rights sales, documented in the Lender's own bookkeeping correspondence (Exhibit P-1). From March 2022 forward, the



borrowers made the monthly payments on every loan — more than ninety individual payments appear in the Lender's own ledger (Exhibit P-5), including a $375,000 interest reserve taken at the September 2023 closing and eleven separate payments from Cape Crossing Vacation Rentals in October 2023 alone.

July 2023 — the Holly Bluff transfer. When the Lender made the $3,000,000 Holly Bluff Marina loan on July 20, 2023, it took more than a mortgage: it took a signed deed to the marina's Volusia County real estate at the closing table, and recorded it in February 2024 (Exhibit P-6). Eight weeks later, on September 13, 2023, all of the shares of Holly Bluff Marina, Inc. were assigned into a trust the Lender controls (Exhibit P-9). The Lender ended up with the land and the company — the entire marina business, appraised as a going concern at $4,210,000, which is $1.2 million more than the loan it secured.

July 2023 — the Hampton, South Carolina transfer. The same day, the Lender took a signed deed to the Nevamar industrial facility in Hampton, South Carolina (Exhibit P-7). That property secured exactly $4,300,000 of the portfolio — a $1,300,000 first mortgage and a $3,000,000 second mortgage — and its value is established by a written third-party offer of $4,300,000, with a broker valuation in the record at $7,770,000. In mid-2024 the Lender took physical possession and locked the borrower out, and it has held the property since. A lender that takes and keeps the collateral has been paid by it: $4,300,000.

September 2023 — the Recycled Group units. On September 14, 2023, the membership units of Recycled Group of South Carolina, LLC were assigned to a trustee owned by the Lender and disposed of without notice to either the borrowers or the beneficiaries. Valued at $600,000 by the Lender's own due diligence (Exhibit P-10).

November 2023 — the River Fly In payment. On November 17, 2023, the Lender received $2,603,595.00 in cash from the River Fly In project closing (Exhibit P-2). The settlement statement was executed by all parties that day, and the Lender's counsel has confirmed in writing that her firm received and disbursed exactly that amount for that closing. This single payment, on top of the property transfers, put the Lender's recoveries past the entire principal of the portfolio before the end of 2023.

January 2024 — the Homemakers assignment. On January 9, 2024, the Lender took an assignment of 100% of the membership units of Homemakers Real Estate, LLC — a company whose value is shown at $8,981,897 on its 2023 financial reports (Exhibit P-11). The Lender itself characterized this transfer as a payment for forbearance.

February 2024 — the CD comes home. The $500,000 certificate of deposit that had served as collateral since the first loan was released back to the Lender on February 1, 2024 (Exhibit P-3), and the bank paid the Lender the interest on it directly — approximately $154,500 in all (Exhibit P-4).

2024 through 2026 — the money kept flowing. Every month, the rental distributions Homemakers should have received from Beachside VR went to the Lender instead — more than two years of monthly payments confirmed by tax filings, totaling over $1.5 million. Insurance proceeds, boat lease income, and sale proceeds from Holly Bluff went to the Lender. In October 2025 two Cape Crossing condominium units were transferred to the Lender, worth $1,100,000 on comparable sales (Exhibit P-8). Distributions continued into 2026.

## How to Read the Complete Chronological Payment List

The report presents all of this as one timeline. Cash payments appear with no shading. In-kind payments — the real estate, the businesses, the Homemakers units — are shaded orange so

they stand out from the cash. Three yellow lines are adjustments that keep the same money from being counted twice: two reconcile the same rental distributions reported in two formats, and one removes River Fly In closing funds that appear in the Lender's ledger as a separate credit even though they are part of the $2,603,595 closing payment. The unverified items sit in their own gray section at the bottom, outside the totals, with a note that an accounting from the Lender is needed to confirm them. Each line shows the date, what the payment was, the amount, the exhibit that proves it, and any note.

## The Bottom Line

Verified cash payments: $7,119,091.41. Verified payments in kind: $19,851,897.00. Total verified: $26,970,988.41 — against $11,225,000.00 lent. That is an overpayment of at least $15,745,988.41, before the unverified items, before the payments carried at zero, and without crediting the Lender a single dollar of interest.

The timeline tells the same story more simply: by the end of 2023 — after the property transfers and the River Fly In payment — the Lender had already received more than everything it ever lent. Everything it has collected since, it has collected on loans that were already paid.

# DIXON LOANS — COMPLETE CHRONOLOGICAL PAYMENT LIST

## 1. Chronological Schedule of All Payments — Cash and In-Kind

Every payment in chronological order: the itemized P-5 cash lines from Dixon's own reports (Exs. P-5-A/B/C, compiled in Ex. P-5-D and reproduced at Package pp. 132–134), merged with the exhibit-level cash payments (P-1 to P-4), the unverified cash items (P-12, P-13), and the in-kind transfers (P-6 to P-11, shown in orange). Amounts are as recorded in Dixon's ledger (PAYMENTS column only; Dixon's charges, fees, and interest billings excluded).

| Date | Payment | Amount | Ex. | Note |
|------|---------|--------|-----|------|
| 1/27/2022 | ROGO sales proceeds paid to Dixon (Marty Flynn / MTF Holdings) | $150,000.00 | P-1 | |
| 01/28/2022 | Sherwood Closing Amelia CD | $10,483.87 | P-5 | |
| 03/01/2022 | March 1 Pay for Feb Int Payment from Sherwood to PEDixon, LLC | $5,333.33 | P-5 | |
| 03/31/2022 | April 1 Pay for Mar Int Payment from Sherwood to PEDixon, LLC | $3,616.67 | P-5 | |
| 05/02/2022 | May 1 Pay for Apr Int Payment from Sherwood to PEDixon, LLC | $3,500.00 | P-5 | |
| 05/26/2022 | June 1  Pay for May Int Payment from Sherwood to PEDixon, LLC | $3,500.00 | P-5 | |
| 07/01/2022 | July 1 Pay for Jun Int Payment from Sherwood to PEDixon, LLC | $3,500.00 | P-5 | |
| 08/01/2022 | Aug 1 Pay for July Int Payment from Sherwood to PEDixon, LLC | $3,500.00 | P-5 | |
| 08/03/2022 | Sherwood Closing Allonge $250,000 | $7,177.42 | P-5 | |
| 08/26/2022 | Hampton Loan Closing $1,300,000 | $28,166.67 | P-5 | |
| 09/01/2022 | Sept 1 pay for Aug IMQA | $3,000.00 | P-5 | |
| 10/01/2022 | Sherwood Closing Option Loan $500,000 | $10,000.00 | P-5 | |
| 10/01/2022 | Oct 1 pay for Sept IMQA | $3,000.00 | P-5 | |
| 10/01/2022 | Oct 1 Pay for Sept Hampton | $13,000.00 | P-5 | |
| 11/01/2022 | Nov 1 Pay for Oct Int Payment from Sherwood to PEDixon, LLC | $6,000.00 | P-5 | |
| 11/01/2022 | Nov 1 pay for Oct IMQA | $3,000.00 | P-5 | |
| 11/01/2022 | Nov 1 Pay for Oct Hampton | $13,000.00 | P-5 | |
| 12/01/2022 | Dec 1 pay for Nov IMQA | $3,000.00 | P-5 | |
| 12/01/2022 | Dec1 Pay for Nov Hampton | $13,000.00 | P-5 | |
| 12/02/2022 | Dec 1 Pay for Nov Int Payment from Sherwood to PEDixon, LLC | $5,000.00 | P-5 | |
| 12/02/2022 | Dec 1 Pay for Nov Int Payment from Sherwood to PEDixon, LLC | $6,000.00 | P-5 | |
| 12/13/2022 | Sherwood Closing Cherry CD $1,000,000 | $25,483.87 | P-5 | |



EXHIBIT
B

| Date | Payment | Amount | Ex. | Note |
|---|---|---|---|---|
| 01/01/2023 | Dec 1 pay for Nov IMQA | $3,000.00 | P-5 | |
| 01/01/2023 | Jan1 Pay for Dec Hampton | $13,000.00 | P-5 | |
| 01/02/2023 | Jan 1 Pay for Dec Int Payment from Sherwood to PEDixon, LLC | $5,000.00 | P-5 | |
| 01/02/2023 | Jan 1 Pay for Dec Int Payment from Sherwood to PEDixon, LLC | $6,000.00 | P-5 | |
| 01/02/2023 | Jan 1 Pay for Dec Int Payment from Sherwood to PEDixon, LLC | $10,000.00 | P-5 | |
| 02/01/2023 | Dec 1 pay for Nov IMQA | $3,000.00 | P-5 | |
| 02/01/2023 | Feb 1 Pay for Jan Hampton | $13,000.00 | P-5 | |
| 02/17/2023 | Feb 1 Pay for Jan Int Payment from Sherwood to PEDixon, LLC | $5,000.00 | P-5 | |
| 02/27/2023 | Sherwood Loan closing Resorts $500,000 | $10,178.57 | P-5 | |
| 03/01/2023 | Mar 1 pay for Feb IMQA | $3,000.00 | P-5 | |
| 03/01/2023 | Mar 1 Pay for Feb Hampton | $13,000.00 | P-5 | |
| 03/22/2023 | March 1 Pay for Feb Int Payment from Sherwood to PEDixon, LLC | $24,000.00 | P-5 | |
| 04/01/2023 | Apr 1 pay for Mar IMQA | $3,000.00 | P-5 | |
| 04/01/2023 | Apr 1 Pay for Mart Hampton | $13,000.00 | P-5 | |
| 04/27/2023 | Apr 1 Pay for Mar Int Payment from Sherwood to PEDixon, LLC | $35,500.00 | P-5 | |
| 05/01/2023 | May 1 pay for Apr IMQA | $3,000.00 | P-5 | |
| 05/01/2023 | May 1 Pay for Apr Hampton | $13,000.00 | P-5 | |
| 05/10/2023 | May 1 Pay for Apr Int Payment from Sherwood to PEDixon, LLC | $34,000.00 | P-5 | |
| 06/01/2023 | Jun 1 pay for May IMQA | $3,000.00 | P-5 | |
| 06/01/2023 | Jun 1 Pay for May Hampton | $13,000.00 | P-5 | |
| 06/13/2023 | River Fly In Closing | $121,250.00 | P-5 | |
| 07/01/2023 | Jul 1 pay for Jun IMQA | $3,000.00 | P-5 | |
| 07/01/2023 | Jul 1 Pay for Jun Hampton | $13,000.00 | P-5 | |
| 07/20/2023 | Tiered Holly Bluff Closing | $93,750.00 | P-5 | |
| 7/20/2023 | **IN KIND — 7.24-acre riverfront property (Holly Bluff) quitclaimed to PEDIXON (appraisal basis)** | **$4,210,000.00** | **P-6** | |
| 7/20/2023 | **IN KIND — 57.36-acre industrial property (Nevamar, Hampton SC) quitclaimed to PEDIXON (contract basis)** | **$4,300,000.00** | **P-7** | |
| 07/28/2023 | Flynn Loan | $2,500.00 | P-5 | |
| 08/01/2023 | Aug 1 pay for Jul IMQA | $3,000.00 | P-5 | |
| 08/01/2023 | Aug 1 Pay for Jul Hampton | $13,000.00 | P-5 | |

| Date | Payment | Amount | Ex. | Note |
|---|---|---|---|---|
| 9/14/2023 | **IN KIND — Holly Bluff Marina, Inc. stock assigned to lender-controlled Tiered Land Trust (book value)** | **$660,000.00** | P-9 | |
| 9/14/2023 | **IN KIND — Recycled Group of S. Carolina membership units assigned to Dixon (due-diligence value)** | **$600,000.00** | P-10 | |
| 09/19/2023 | OPENING INTEREST RESERVE BALANCE | $375,000.00 | P-5 | |
| 10/03/2023 | Payment from CCVR to PEDixon, LLC | $20,000.00 | P-5 | |
| 10/04/2023 | Payment from CCVR to PEDixon, LLC | $5,000.00 | P-5 | |
| 10/10/2023 | Payment from CCVR to PEDixon, LLC | $10,000.00 | P-5 | |
| 10/11/2023 | Payment from CCVR to PEDixon, LLC | $12,500.00 | P-5 | |
| 10/13/2023 | Payment from CCVR to PEDixon, LLC | $2,500.00 | P-5 | |
| 10/13/2023 | WIRE FOR INTEREST SINCE 9/19/23 | $47,500.00 | P-5 | |
| 10/17/2023 | Payment from CCVR to PEDixon, LLC | $12,500.00 | P-5 | |
| 10/18/2023 | Payment from CCVR to PEDixon, LLC | $6,250.00 | P-5 | |
| 10/19/2023 | Payment from CCVR to PEDixon, LLC | $6,250.00 | P-5 | |
| 10/19/2023 | WIRE FROM ALISON | $21,250.00 | P-5 | |
| 10/26/2023 | Payment from CCVR to PEDixon, LLC | $12,500.00 | P-5 | |
| 10/27/2023 | Payment from CCVR to PEDixon, LLC | $10,000.00 | P-5 | |
| 10/30/2023 | WIRE FROM ALISON | $28,750.00 | P-5 | See loan balance and pay 11/17/2023 |
| 10/31/2023 | Payment from CCVR to PEDixon, LLC | $5,000.00 | P-5 | |
| 11/17/2023 | EXCESS RIVER FLY IN RESERVE $121,093.17 to interest reserve | $128,526.50 | P-5 | ADJUSTMENT — part of the P-2 $2,603,595.00 payment; see note below table |
| 11/17/2023 | River Fly In Project payment (per 11/17/2023 Pitkanen Settlement Statement; Package p. 1 shows 10/24/2023 — correct in next revision) | $2,603,595.00 | P-2 | |
| 12/29/2023 | WIRE FROM FROM MARTY$ LOAN PLUS $SK | $125,000.00 | P-5 | |
| 1/9/2024 | **IN KIND — Homemakers Real Estate, LLC membership units assigned to Dixon (forbearance fee)** | **$8,981,897.00** | P-11 | |
| 01/30/2024 | WIRE FROM ALISON (Beachside?) | $55,487.97 | P-5 | |
| 2/1/2024 | Return of $500,000 CD collateral | $500,000.00 | P-3 | |
| 02/14/2024 | BEACHSIDE DISTRIBUTION | $57,424.57 | P-5 | |
| 03/13/2024 | BEACHSIDE DISTRIBUTION | $70,166.57 | P-5 | |
| 04/11/2024 | BEACHSIDE DISTRIBUTION | $136,113.39 | P-5 | |

| Date | Payment | Amount | Ex. | Note |
|---|---|---|---|---|
| 05/14/2024 | BEACHSIDE DISTRIBUTION | $50,157.31 | P-5 | |
| 06/12/2024 | BEACHSIDE DISTRIBUTION | $47,451.52 | P-5 | |
| 07/11/2024 | BEACHSIDE DISTRIBUTION | $86,807.48 | P-5 | |
| 08/15/2024 | BECHSIDE DISTRIBUTION | $89,807.89 | P-5 | |
| 8/27/2024 | Bank interest paid directly to Dixon (estimated; incl. $30,050.53 Cherry Village CD) | $154,500.00 | P-4 | estimate |
| 08/28/2024 | $1 MILLION PAYDOWN WITH 3 DAYS OF INTEREST CREDITED FOR August | $1,232.88 | P-5 | |
| 09/12/2024 | BEACHSIDE DISTRIBUTION | $88,144.09 | P-5 | |
| 10/16/2024 | BEACHSIDE DISTRIBUTION | $33,297.06 | P-5 | |
| (undated) | BEACHSIDE DISTRIBUTION | $52,848.88 | P-5 | |
| 12/02/2024 | Holly Bluff Insurance proceeds | $125,000.00 | P-5 | |
| 01/15/2025 | BEACHSIDE DISTRIBUTION | $66,750.57 | P-5 | |
| 02/01/2025 | Cash from Miller sale of Holly Bluff | $200,000.00 | P-5 | |
| 02/05/2025 | Insurance proceeds from Holly OFR boatsdamaged | $53,683.58 | P-5 | |
| 02/15/2025 | BEACHSIDE DISTRIBUTION | $84,789.99 | P-5 | |
| 02/26/2025 | Cotton Insurance dividend for Holly Bluff | $4,257.00 | P-5 | |
| 03/12/2025 | BEACHSIDE DISTRIBUTION | $101,696.19 | P-5 | |
| 04/03/2025 | Insurance proceeds for Holly Bluff claims | $204,183.54 | P-5 | |
| 04/11/2025 | BEACHSIDE DISTRIBUTION | $118,563.85 | P-5 | |
| 05/10/2025 | BEACHSIDE DISTRIBUTION | $62,143.00 | P-5 | |
| 06/10/2025 | BEACHSIDE DISTRIBUTION | $55,136.92 | P-5 | |
| 07/10/2025 | BEACHSIDE DISTRIBUTION | $64,229.37 | P-5 | |
| 08/10/2025 | BEACHSIDE DISTRIBUTION | $66,364.82 | P-5 | ADJUSTMENT — see note below table |
| 09/10/2025 | BEACHSIDE DISTRIBUTION | $23,454.67 | P-5 | ADJUSTMENT — see note below table |
| 10/6/2025 | **IN KIND — 2 Cape Crossing condos transferred to Dixon (comparable-sales basis)** | **$1,100,000.00** | P-8 | |
| 12/15/2025 | BEACHSIDE DISTRIBUTION | $50,085.93 | P-5 | |
| 4/1/2026 | BEACHSIDE DISTRIBUTIONS, aggregate reported 7/1/2025 – 4/1/2026 ("at least"; replaces the itemized 8/10/2025 and 9/10/2025 lines) | $404,096.46 | P-5 | estimate |
| | **SUBTOTAL — CASH PAYMENTS (verified)** | **$7,119,091.41** | | |
| | **SUBTOTAL — IN-KIND PAYMENTS (real estate, business interests, forbearance)** | **$19,851,897.00** | | |

| Date | Payment | Amount | Ex. | Note |
|------|---------|--------|-----|------|
|  | TOTAL — ALL CHRONOLOGICAL PAYMENTS RECEIVED BY DIXON (verified cash + in-kind) | $26,970,988.41 |  |  |

*Color key: orange = in-kind payments; yellow = adjustments to the source documents; no fill = verified cash. Adjustment notes: the two yellow Beachside lines (8/10/2025 $66,364.82 and 9/10/2025 $23,454.67) appear in the native P-5-D spreadsheet but are excluded from the totals solely to eliminate and ensure no double counting — the Package replaces them with the 4/1/2026 aggregate line of at least $404,096.46 covering the same 7/1/2025– 4/1/2026 period. The yellow 11/17/2023 "EXCESS RIVER FLY IN RESERVE" line (booked by Dixon as a $128,526.50 payment: the $121,093.17 excess closing reserve plus $7,433.33 of same-day fee and interest charges it was applied against) is River Fly In closing money already counted in the P-2 payment of $2,603,595.00, and is likewise excluded to prevent double counting. These are adjustments to reconcile the source documents, not disputed payments. Beachside distributions for 10/10/2025–1/10/2026 were made in unknown amounts and are carried at $0, so the total is understated. Dates are as recorded in Dixon's ledger; the 12/15/2025 Beachside entry appears in ledger sequence between Dec. 2024 and Jan. 2025 entries and may be a typo for 12/15/2024.*

## 2. Unverified Items — Pending Verification (Excluded From Payment Totals Above)

The following items are stated separately here, outside the chronological payment totals, until verified. The first two are carried by the Package as "Pending Final Verification" (Part 2.E); the third is the undated Amar/Recycled summary line from the Package version of Ex. P-5-D:

| Date | Item | Amount | Ex. | Evidentiary source |
|------|------|--------|-----|--------------------|
| 3/3/2023 | IMQA Investments, Incorporated payment — Package marks "Awaiting Audit" | $74,000.00 | P-12 | IMQA payment record dated 3/3/2023 (Ex. P-12) |
| 10/15/2023 | Payment to Pitkanen escrow — Package notes possible double counting | $102,500.00 | P-13 | Tiered subsidiary QuickBooks report, Oct. 2023 (Ex. P-13) |
| (undated) | Yaniv Amar / Recycled Group of SC payments — an accounting from Dixon is needed to verify this item and ensure there is no double counting with the itemized ledger lines | $156,000.00 | P-5 | Package p. 134 version of Ex. P-5-D (undated summary line) |
|  | **SUBTOTAL — UNVERIFIED ITEMS** | **$332,500.00** |  |  |

**3. Synopsis of the Dixon Is Paid document,** *In re Homemakers Real Estate, LLC*, No. 6:25-bk-05570 (Bankr. M.D. Fla. 2025) (Doc. 203 and exhibits):

## The Eleven Loans (Package Part 1, Exhibits L-1 to L-11)

| # | Loan | Date | Amount | Exhibit |
|---|------|------|--------|---------|
| 1 | Sherwood Note (Amelia CD) | 1/28/2022 | $500,000.00 | L-1 (Promissory Note) |
| 2 | IMQA Loan 506 | 7/26/2022 | $300,000.00 | L-2 (Mortgage) |
| 3 | Allonge to Sherwood Note | 8/3/2022 | $250,000.00 | L-3 (Allonge) |
| 4 | Hampton | 8/26/2022 | $1,300,000.00 | L-4 (Business Loan Agreement) |
| 5 | Sherwood Option Loan | 10/1/2022 | $500,000.00 | L-5 (Promissory Note) |
| 6 | Million Dollar Loan (Cherry CD) | 12/13/2022 | $1,000,000.00 | L-6 (Promissory Note) |
| 7 | Resorts Common Area Loan | 2/27/2023 | $500,000.00 | L-7 (Promissory Note) |
| 8 | River Fly In | 6/13/2023 | $3,000,000.00 | L-8 (Promissory Note) |
| 9 | Holly Bluff | 7/19/2023 | $3,000,000.00 | L-9 (Business Loan Agreement) |
| 10 | Flynn | 7/28/2023 | $125,000.00 | L-10 (Promissory Note) |
| 11 | Tiered | 9/13/2023 | $750,000.00 | L-11 (Loan Agreement) |
| | **TOTAL LOANED** | | **$11,225,000.00** | |

Lenders: ZPD LLC, Parke Financial, Ltd., PE Dixon, LLC, and PEDIXON LLC. Source: Package pp. 1, 5 (Loan Documents Exhibit Index).

**4. Synopsis of the Dixon Is Paid document,** *In re Homemakers Real Estate, LLC*, No. 6:25-bk-05570 (Bankr. M.D. Fla. 2025) (Doc. 203 and exhibits):

## Payments by Exhibit (Package Part 2, Exhibits P-1 to P-13)

Package totals: Cash $7,403,617.91 + Real estate $9,610,000.00 + Business interests $1,260,000.00 + Forbearance $8,981,897.00 + Unverified cash $176,500.00 = $27,432,014.91 received, against $11,225,000.00 loaned (overpayment of $16,207,014.91). No credit is given for interest because the effective rates (32.33% in 2024; 29.10% in 2025) exceed the 25% criminal-usury threshold of Fla. Stat. § 687.071. (These are the Package's own figures; the corrected verified totals appear in Section 1.)

| Ex. | Date | Amount | Payment / credit | Evidentiary source |
|---|---|---|---|---|
| P-1 | 1/27/2022 | $150,000.00 | Cash — ROGO sales proceeds paid by Marty Flynn / MTF Holdings to Dixon | Email outlining the bookkeeping for the $150,000 ROGO sale payment to Dixon (Ex. P-1). |
| P-2 | 11/17/2023 | $2,603,595.00 | Cash — River Fly In Project payment | River Fly In Repayment Closing Statement (Ex. P-2); 11/17/2023 Pitkanen Settlement Statement and confirming email (all parties executed); Pitkanen's own 4/18/2025 email admitting her firm "received and disbursed loan proceeds in the amount $2,603,595.00 for this particular closing in November 2023"; Dixon ledger credits the excess River Fly In reserve 11/17/2023. Legal treatment of the related $2,000,000 held in the Pitkanen escrow: River Fly In $2,603,595 Repayment Treatment Memo (Payments Summaries folder), citing Rollins v. Odom, Velletri v. Dixon, St. Petersburg Bank v. Hamm, Battle v. Jennings, Ott v. Bray. |
| P-3 | 2/1/2024 | $500,000.00 | Cash — return of CD collateral | CD Repayment documentation (Ex. P-3, "P-3 CD Repayment.pdf"). |
| P-4 | 2024 (est.) | $154,500.00 | Cash — bank interest paid directly to Dixon | 8/27/2024 summary of the Cherry Village CD transaction showing $30,050.53 interest paid directly to Dixon (Ex. P-4); First State Bank records of Cherry Village CD interest paid to Dixon (Ex. P-4-A); spreadsheet of Valley and 2nd CD interest estimates paid directly to Dixon as of 7/1/2024 (Ex. P-4-B). |
| P-5 | Jan 2022 – present | $3,995,522.91 | Cash — all other cash payments (itemized line-by-line in Section 3 below) | Dixon's own internal loan reports — admissions: 9/12/2023 report (Ex. P-5-A), 9/6/2024 report (Ex. P-5-B), 5/14/2025 report (Ex. P-5-C); compilation spreadsheet (Ex. P-5-D); Beachside VR tax form showing $817,794.06 in 2024 distributions to Homemakers redirected to PEDixon (Ex. P-5-E; package describes it as a 1099-MISC, folder file is labeled K-1). |

| Ex. | Date | Amount | Payment / credit | Evidentiary source |
|---|---|---|---|---|
| P-6 | 7/20/2023 | $4,210,000.00 | In kind — 7.24-acre riverfront property (Holly Bluff) quitclaimed to PEDIXON | Quitclaim deed executed 7/20/2023, recorded 2/23/2024 (Volusia Co. Inst. #2024035593, Bk 8521 Pg 2618); appraisal effective 4/21/2023 (going-concern $4,210,000; land $3,760,000; folder file labeled $4,250,000); county property-record printout (folder file references Brevard County — verify). Corroborated by Holly Bluff In Kind $4,210,000 Repayment Memo (Payments Summaries): equitable-mortgage/no-foreclosure credit under Fla. Stat. §§ 697.01–.02, ch. 702, Markell v. Hilpert. |
| P-7 | 7/20/2023 | $4,300,000.00 | In kind — 57.36-acre industrial property (Nevamar facility, Hampton, SC) quitclaimed to PEDIXON | Hampton Agreement (Ex. P-7); Clean Energy Power, LLC LOI of 9/20/2022 at $4,300,000 (contract value basis); quitclaim deed 7/20/2023; broker valuation $7,770,000; Holly Bluff mortgage on the Hampton property. Corroborated by Hampton Spreadsheet (SC collateral credit schedule) and Dixon SC Collateral Credit Memo (Payments Summaries): SC mortgagee-in-possession / fair-value credit, S.C. Code §§ 29-3-680 to -760, Peoples Federal, Coastalstates Bank. |
| P-8 | 10/6/2025 | $1,100,000.00 | In kind — 2 Cape Crossing condos transferred to Dixon | 7/22/2022 condo appraisal at $545,000 (Ex. P-8); Parke Financial documentation of the transfer of the IMQA condo units (Ex. P-8); value based on comparable sales. |
| P-9 | 9/14/2023 | $660,000.00 | In kind — Holly Bluff Marina, Inc. stock assigned to lender-controlled Tiered Land Trust | Amar share-transfer/assignment of all Holly Bluff shares to Crescent Sound, Ltd. as trustee (9/14/2023, Ex. P-9); Holly Bluff financials showing business value $596,413.96 (Ex. P-9; package uses $660,000 book value). |
| P-10 | 9/14/2023 | $600,000.00 | In kind — Recycled Group of S. Carolina membership units assigned to Dixon | Amar assignment of Recycled Group units (9/14/2023, Ex. P-10); Ken Jones due-diligence emails with equipment valuation list (7/28–8/1/2023, Ex. P-10); Dixon's replacement of Amar with Jones as manager of Recycled Group (Ex. P-10). |
| P-11 | 1/9/2024 | $8,981,897.00 | In kind / forbearance fee — assignment of Homemakers Real Estate, LLC membership units | Assignment of Membership Units instrument (Ex. P-11); Homemakers 2023 tax return supporting the $8,981,897 value (Ex. P-11). (Index typo lists "January 9, 2924.") |
| P-12 | 3/3/2023 | $74,000.00 | Cash (unverified) — IMQA Investments payment | IMQA payment record dated 3/3/2023 (Ex. P-12). Package marks this "Awaiting Audit." |
| P-13 | 10/15/2023 | $102,500.00 | Cash (unverified) — payments to Pitkanen escrow | Tiered subsidiary QuickBooks report (Oct. 2023) showing $102,500 paid to the Pitkanen escrow for Dixon (Ex. P- |

| Ex. | Date | Amount | Payment / credit | Evidentiary source |
|-----|------|--------|------------------|--------------------|
|     |      |        |                  | 13). Package notes possible double counting. Package p. 4 also cites Pitkanen escrow records showing over $15,000,000 in total loan and construction-draw proceeds handled. |

Color key: orange = in-kind payments (real estate, business interests, forbearance assignment); gray = unverified cash; no fill = verified cash.