**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FILED ORL INTAKE- USBC
13 JUL 2026 AM9:26

In re:

Homemakers Real Estate, LLC,

Case No. 6:25-bk-05570-GER

Chapter 11 (Involuntary)

Debtor.

_____/

## FRANK L. AMODEO'S MOTION FOR SANCTIONS UNDER
## FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011

Rule 9011 measures every paper an attorney presents against a single yardstick — an inquiry reasonable under the circumstances, judged by an objective standard of conduct. James A. Timko, Esq., presented, and continues to advocate, two forged instruments that fail that standard on their face. The first is a Trustee's Deed whose notarization never occurred, disproved by the very DocuSign certificate Mr. Timko filed to authenticate it. The second is an Assignment of Membership Units bearing a jurat that swears to a signing ceremony that never happened. Each instrument was a factual cornerstone of the relief Mr. Timko sought in the voluntary case,[1] the case whose dismissal delivered the ten-month delay that produced this involuntary proceeding.[2] Each is disproved by the record Mr. Timko himself built, and a reasonable inquiry would have exposed both before filing and prevented the resultant waste of roughly $2 million dollars. The law requires sanctions against Mr.

---

[1] Voluntary Case; *In re Homemakers Real Estate, LLC*, No. 6:25-bk-02685-GER (Bankr. M.D. Fla. 2025).
[2] Involuntary Case; *In re Homemakers Real Estate, LLC*, No. 6:25-bk-05570-GER (Bankr. M.D. Fla. 2025).

1

Timko and his law firm Dean Mead: their dereliction of duty has wasted millions of dollars in resources.[3]

**A court measures a Rule 9011 violation by an objective standard: whether a reasonable inquiry under the circumstances would have exposed the filing's defect.**

A court assesses a Rule 9011 violation using an objective standard of conduct, asking whether an inquiry reasonable under the circumstances would have made the signer aware of the defect. Because direct evidence of a signer's subjective purpose is rarely available, the inquiry is objective. *In re Graffy*, 233 B.R. 894, 896 (Bankr. M.D. Fla. 1999); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) (Rule 11 "imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith"). The standard does not ask what the attorney believed. It asks what a reasonable attorney, having read the paper and the evidence, would have known.

---

[3] This motion is captioned in, and filed in, both Homemakers Chapter 11 cases — the voluntary case, No. 6:25-bk-02685-GER, where the offending instruments were filed and relied upon, and the later involuntary case, No. 6:25-bk-05570-GER, where Mr. Timko's clients continue to build upon them. The voluntary-case filings are Docs. 12, 35, and 69 (the motion to dismiss and its supplements) and 93 (the omnibus objection carrying the DocuSign certificate). The involuntary-case filings are Docs. 54, 214, and 220. Mr. Timko also relied on the Assignment at the June 11, 2025 hearing on the motion to dismiss. (Doc. 63, Hr'g Tr. at 19:6–10, 21:12–20, 22:11–19.)

2

**A court finds a Rule 9011 violation by asking, first, whether the claim is objectively frivolous, and second, whether the signer should have known it was.**

To determine whether a pleading is factually or legally frivolous, a court must first determine whether the party's claim is objectively frivolous and, second, whether the person signing the document should have been aware that it was frivolous. *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995); *In re Mroz*, 65 F.3d 1567, 1573 (11th Cir. 1995); *In re Strunk*, No. 8:07-bk-7297-KRM, 2016 WL 675819, at *4 (Bankr. M.D. Fla. Feb. 18, 2016). A pleading is factually frivolous where the party has absolutely no valid evidence to support its position. *Id.* A pleading is legally frivolous where it is clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify, or reverse the law as it stands. *See Jones*, 49 F.3d at 694; *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990). Mr. Timko's two instruments are worse than unsupported: the record proves each of them false.

**A paper interposed for an improper purpose is sanctionable whether or not the facts and law support it, and no matter how careful the pre-filing investigation.**

The improper-purpose clause is directed at abusive litigation practices and encompasses papers filed to cause unnecessary delay, to increase litigation costs, or filed to harass; the focus is on why the nonmovant filed the pleading at issue. *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996); *In re*

3

*Strunk*, 2016 WL 675819, at *4 (Bankr. M.D. Fla. Feb. 18, 2016); *In re Edgewood Food Mart*, 664 B.R. 893, 901 (Bankr. N.D. Ga. 2024). To determine whether a paper was interposed for an improper purpose, a court looks to objectively ascertainable circumstances that support an inference that the nonmovant's purpose for filing a paper was improper. *Id.* A paper interposed for an improper purpose is sanctionable whether or not it is supported by the facts and the law, and no matter how careful the pre-filing investigation. *Id.*

**By presenting the Trustee's Deed and the Assignment, Mr. Timko certified three things Rule 9011 required to be true, and the record makes each of them false.**

Rule 9011(b) fixes the content of every certification. By presenting a paper to the court — "whether by signing, filing, submitting, or later advocating it" — an attorney certifies, after an inquiry reasonable under the circumstances, that (1) it is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the legal contentions are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse it; and (3) the factual contentions have evidentiary support. Fed. R. Bankr. P. 9011(b)(1)-(3). Compliance is measured by an objective standard. *Worldwide Primates*, 87 F.3d at 1254. Mr. Timko's presentation of the Trustee's Deed and the Assignment failed all three.

4

**Improper purpose.** Mr. Timko presented each instrument to win, and then to preserve, the dismissal — buying his clients a ten-month delay, during which they pushed roughly $500,000 past the preference period and diverted another $800,000 or so to a related creditor.[4] The delay was the object, not a byproduct.

**No warrant in law.** No existing law, and no nonfrivolous argument to change it, warrants building a motion or advocating a position based on a forged deed and a falsely notarized assignment.

**No evidentiary support.** The record proves the opposite of what Mr. Timko certified: his own DocuSign certificate (Doc. 93, Ex. C) shows no valid electronic notarization session occurred, and Mr. Johnson's sworn affidavit confirms no notary attended. (Doc. 48-4).

I identified many frivolous or dilatory filings in my safe-harbor letter. (Exhibit "1"). I press two of them here, because each rests on a forged instrument that Mr. Timko's own record disproves. The remainder appear in my more comprehensive motion to disqualify Mr. Timko and his firm from further representation of anyone involved in the Homemakers or related proceedings.

**First, the DocuSign Certificate of Completion Mr. Timko filed proves the opposite of what he told the court it proves: the certificate proves the notarized trustee deed is a fabrication or forgery.**

In the voluntary case Horton Johnson sought to vacate this court's dismissal (Docs. 88, 89). Mr. Timko responds in opposition with a Docusign certificate attached. (Doc. 93, Ex. C). He used it for one proposition: "the DocuSign identification number on the recorded deed[] matches Johnson's identification number . . . . As a result, *all* of the evidence supports that Johnson executed the

---

[4] Not to mention, initially, hoping to bury the entire $2,500,000 in preferential or disproportionate distributions under a mountain of litigation smoke and ash, hence, never having to account for either their conduct or monies they took.

 

recorded deed, had Amodeo's relatives witness it, and then he provided it to Respondents." (Doc. 93 at 7) (emphasis added).

A review of that same certificate shows the reverse. The certificate records a remote, electronic DocuSign signing on September 13, 2023, and its "Notary Events" row is blank — no notarial act, no audio-video session, and no identity-proofing event occurred on the envelope. There are no in-person signers, no notary. The document Mr. Timko filed to prove a valid, notarized, recorded deed instead is documentary proof that the notarization never happened.[5] A reasonable inquiry would have shown that the notary did not witness the signature, and that what was recorded is an altered document notarized by a person not present for the signing and a person not licensed to witness remote online notarizations. An electronic signing session, which was not set up for statutory recording and requirements— an alteration that strips the instrument of its presumption of correctness and changes it into a materially altered instrument: and one falsely attested, falsified, and forged. Mr. Timko needed no forensic examiner to see it. He needed only to read his own attached Docusign certificate. (Doc. 93, Ex C). (Exhibit "2").[6]

---

[5] Under Florida law, without a falsely notarized document, there can be no land trust. Hence, except for the fabricated forgery, there was not even the appearance of a land trust.

[6] Mr. Timko's omnibus objection is a post-safe-harbor-letter filing. It is relevant here only as further demonstration that he — and any reasonable attorney — would have detected the forgery earlier. See Bankr. R. 9011(b), (b)(3). Mr. Timko charges that Mr. Johnson's filing "leaves out some key facts." (Doc. 93 at 6.) Here is the fact Mr. Timko left out. Envelope 9078288B-FE20-4A15-A658-110FB6D3929D produced a three-page deed, and each of those three pages carries the envelope identification number; the third page is an Exhibit A reading "26 UNITS" and containing no legal description. The certificate records a single signer, Mr. Johnson, and its Witness Events and Notary Events

 

**Second, the Assignment of Membership Units Mr. Timko used to obtain a dismissal bears a jurat that swears a signing ceremony that never happened, that never occurred.**

The document that won Mr. Timko the dismissal of the voluntary case is a forgery. He attached the Assignment of Membership Units, executed January 9, 2024 (Doc. 12, Ex. C) to his motion to dismiss for lack of corporate authority, and made it the factual cornerstone of the argument that Mr. Johnson had transferred control of the Debtor to the Tiered Land Trust. The court relied on that Assignment when it dismissed the case and again when it denied reconsideration. (Docs. 73, 85.) Moreover, it served as the basis for Mr. Timko representing the putative debtor in the involuntary case.

**The Assignment Is Void as a Notarized and Recordable Instrument, and Its Filing Is a Fraud on This Court.**

The Assignment on which Mr. Timko relies is not the notarized original it purports to be. It is a scanned copy to which a notary, Ms. Morea, affixed a jurat certifying that Mr. Johnson personally appeared and swore before her — a ceremony that indisputably never occurred. That false certificate is void under Florida law; it deprives the Assignment of the presumption of authenticity and of the recordable,

---

rows are both blank. The recorded deed is eight pages. (OR BK 9992, PG 2830–2837, CFN 2024031262.) Pages 1 and 2 carry the envelope identification number; pages 3 through 8 — the six pages of legal descriptions conveying 27 units — carry none. Those six pages were never in the envelope. The matching number Mr. Timko invokes therefore proves that Mr. Johnson signed a three-page instrument with no witnesses, no notary, and no property descriptions, and that six pages were substituted afterward, outside DocuSign, and recorded. Mr. Timko read the envelope identification number off the certificate. Mr. Timko did not turn to page 3. Instead Mr. Timko presents a declaration containing statements that any reasonable inquiry into public records and documents available to him would have readily revealed were false, in an attempt to justify his prior action, rather than comporting to the rule. (Exhibit "4".)

7

self-proving character on which its use in this proceeding depends; and it defeats the very act — recordation — that alone would have vested the assigned interest in the land trust. Whatever force the underlying paper may retain between the parties, it is not competent to do what Mr. Timko asks this Court to let it do. Filing it as a notarized original, and pressing arguments built upon it with Mr. Johnson's sworn contradiction already in counsel's hands, is a fraud upon the judicial process.

### Recap of the Underlying Events

On January 9, 2024, Ms. Pitkanen presented a document to Mr. Johnson, and he signed it without a notary present; Ms. Pitkanen directed the document be sent to Ms. Morea to notarize. Ms. Morea applied a jurat to a scanned copy, certifying that Mr. Johnson had personally appeared and sworn before her. Under penalty of perjury Mr. Johnson has sworn that "[t]here was no notary present when Pitkanen presented me with the documents," and that the executed version submitted to the court "is notarized and stated that I was physically present before the notary," a ceremony he confirms never occurred. (Doc. 48-4, Johnson Aff. ¶¶ 5, 10 (July 3, 2025); Doc. 80-1 (Johnson Decl., July 29, 2025).) A jurat is the notary's sealed certificate that the affiant personally appeared and swore before signing. When the signer neither appears nor swears, the certificate is false on its face, and a false jurat authenticates nothing. Mr. Timko needed only to compare the instrument to Mr. Johnson's sworn account — an account I placed before him with my safe-harbor letter (Exhibit "1")



8

— to know that the Assignment could not be the notarized original it purports to be. (Exhibit "3").

## 9011 Requires Inquiry

Once informed, 9011 imposes on Mr. Timko a duty to correct the record: the attachment to his motion to dismiss does not comply with the best evidence rule, it is not an original, the original is inexplicably lost, and there is no explanation for why the original is not available. Moreover, if Mr. Timko had made a best evidence inquiry, then Mr. Timko would have realized that there was no original assignment document, signed or otherwise.

**Both instruments belong to a pattern of dilatory advocacy calculated to win this contest by attrition rather than on the merits.**

Mr. Timko engaged in a pattern of dilatory actions consistent with Kenneth Dixon's belief that Mr. Dixon would win this contest by attrition, because he had more money and could outlast the three guarantors. Each fails the objective standard Rule 9011 imposes. A reasonable inquiry into the Docusign certificate Mr. Timko attached to his Omnibus Response (Doc. 93, Ex. C) would have shown the recorded trustee deed to be a forgery. A reasonable comparison of Mr. Johnson's sworn account (Doc. 48-4 at 13–17) to the Assignment Mr. Timko filed (Doc. 12, Ex. C) would have shown the latter instrument to be false.

Further, because each was interposed for an improper purpose, even a careful prefiling investigation does not cure the Rule 9011 violation. *In re Edgewood Food Mart*, 664 B.R. at 901.

**I satisfied Rule 9011's safe harbor before presenting this motion.**

On May 5, 2026, I served a twenty-one-day demand letter and proposed motion on James A. Timko and on Marc D. Chapman, president of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., by certified mail, return receipt requested, and by courier. (Exhibit "1"). The letter identified the falsely attested, forged, and falsified loan documents this motion addresses — the Trustee's Deed and the Assignment — and set out the factual and legal basis for their correction or withdrawal. The twenty-one-day period under Rule 9011(c)(1)(A) expired on May 26, 2026. Mr. Timko did not withdraw the instruments, did not correct the record, and did not cease relying on them.

**Rule 9011(c) makes Mr. Timko's firm jointly responsible for his violations.**

The sanction does not stop with Mr. Timko. The rule is explicit:

> Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

Fed. R. Bankr. P. 9011(c)(1)(A).

The 1997 amendments added that command to conform Bankruptcy Rule 9011 to the 1993 revision of Civil Rule 11, replacing the former rule's focus on the

individual signer with the firm's joint responsibility. Fed. R. Bankr. P. 9011 advisory committee's note to 1997 amendment. ("Under Rule 9011(c)(1)(A), [the attorney] and [his firm] are jointly liable for the sanctions award."). Other courts reach the same result where an attorney causes pleadings to be filed under electronic signatures that falsely represent the client signed. *See In re Bradley*, 495 B.R. 747, 777 (Bankr. S.D. Tex. 2013) (imposing joint and several sanctions on the attorney's firm). Absent an exceptional circumstance, which does not exist here, Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A. is jointly responsible for the presentations its attorney made, and repeated after notice, in these cases.

11

## RELIEF REQUESTED

Rule 9011, applied to these facts, requires this court to enter an order that:

(1) finds that Mr. Timko, by filing the DocuSign Certificate of Completion as proof of a genuine notarized deed, and by filing and continuing to advocate the falsely attested Assignment of Membership Units, violated Rule 9011(b);

(2) imposes an appropriate sanction on Mr. Timko personally and on Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., which Rule 9011(c) makes jointly responsible for the violation;

(3) directs Mr. Timko to withdraw or correct the Trustee's Deed and the Assignment and every argument in these cases that depends on either instrument;

(4) awards me the costs and expenses the offending filings forced me to incur; and

(5) grants such other and further relief as the court deems appropriate.

The law requires no less.


Respectfully submitted this 13th day of July, 2026.

Frank L. Amodeo
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32801@gmail.com
Movant, *pro se*

12

## CERTIFICATE OF RULE 9011 SAFE HARBOR COMPLIANCE

I certify that, on May 5, 2026, I served the twenty-one-day demand letter and the proposed motion on James A. Timko and on Marc D. Chapman, as president of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., by certified mail, return receipt requested, and by email. The twenty-one-day period under Rule 9011(c)(1)(A) expired on May 26, 2026. Mr. Timko did not withdraw or correct the offending instruments. The safe-harbor requirement is satisfied.

_____
Frank L. Amodeo

## VERIFICATION

I declare under penalty of perjury under 28 U.S.C. § 1746 that the factual statements in this motion are true and correct to the best of my knowledge, information, and belief.

_____
Frank L. Amodeo

13

## CERTIFICATE OF SERVICE

I certify that on July 13th, 2026, I served a true and correct copy of the foregoing on all parties registered to receive electronic notice in these cases through the court's CM/ECF system.

Frank L. Amodeo

# EXHIBIT 1

## Rule 9011 Safe Harbor Letter

Frank L. Amodeo to James A. Timko, Esq., and
Marc D. Chapman, Esq., Dean, Mead, Egerton, Bloodworth,
Capouano & Bozarth, P.A.

Served by certified mail, return receipt requested, and by courier.

*Motion for Sanctions Under Federal Rule of Bankruptcy Procedure 9011*
In re Homemakers Real Estate, LLC
Case Nos. 6:25-bk-02685-GER and 6:25-bk-05570-GER

**FRANK L. AMODEO**
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315 • flahome32801@gmail.com

**5/5/2026**

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED, AND EMAIL**

James A. Timko, Esquire
Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A.
420 South Orange Avenue, Suite 700
Orlando, Florida 32801
Email: jtimko@deanmead.com

Marc D. Chapman, Esquire, President
Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A.
420 South Orange Avenue, Suite 700
Orlando, Florida 32801

**Re: Timko's Continuing Violations of Federal Rule of Bankruptcy Procedure 9011 and Federal Rule of Civil Procedure 11; Continuing Fraud upon the Court, the Parties, and the Public Through the Presentation of Falsely Attested, Forged, Falsified, and Fabricated Loan Documents**

Mr. Timko and Mr. Chapman:

Out of respect for your firm's past representation of me and in the hopes of avoiding unnecessary angst and expense for all, I provide this information concerning your firm's actions in the Homemakers bankruptcy cases, and related proceedings. The record reveals that your firm, via James Timko, has violated Rule 9011 of the Federal Rules of Bankruptcy Procedure and Rule 11 of the Federal Rules of Civil Procedure. He has done so by signing pleadings premised on

Page 1 of 21

documents that Florida law identifies, in plain terms, as forgeries (Fla. Stat. §

831.01), false notarial attestations (§ 117.105), and uttered falsehoods (§ 831.02),

and that the common law identifies as fabrications.

Taking one example from dozens, Timko argued your client (Cresent Sound,

Ltd, Kenneth Dixon) was the trustee of a land trust and that the land trust existed to

facilitate certain extensions of credit. A modicum of research reveals those

arguments are frivolous. Even a cursory examination of the documents and the

public record show that no land trust existed. In September 2023, your clients

promulgated a defective (so-called) trustee's deed for the Tiered Land Trust. At the

completion of the September 13, 2023 execution, Horton Johnson had signed

electronically, a three-page document with no witness signatures, no notarial

acknowledgment, and no property descriptions. This document purported to

activate a land trust.[1]

The document, however, was never recorded, thus did not create a land

trust. Moreover, the fundamentally defective document could never have created a

land trust.

---

[1] Under the Florida Land Trust Act, a Florida land trust exists only when an instrument recorded in the public records conveys title to a trustee and grants the trustee specified powers to hold, manage, and dispose of the real property. § 689.071, Fla. Stat.. An unrecorded or facially deficient instrument that fails to convey title to a trustee with the statutory powers does not create a Florida land trust within the meaning of § 689.071. See, e.g., Brigham v. Brigham, 11 So. 3d 374 (Fla. 3d DCA 2009) (treating a deed lacking the required trustee powers as failing to create a Florida land trust).

Five months later on February 7, 2024, an 8-page deed that replicated only page 1 from the September 13, 2023 document was recorded in the Brevard County public records. The eight-page instrument contained twenty-seven property descriptions, witness signatures, witness addresses written in by hand after the witnesses had signed, and a notarial acknowledgment falsely certifying physical presence and authority to witness an electronic signature. None of the witnesses, nor the notary were a part of the original signing session. The eight-page recorded document was fabricated to facilitate a fraud and a litigation posture. It is a forgery, a false attestation, a falsification, and a fabrication — all in one instrument. The trustee's deed is one of four examples set out below. Each reaches the same conclusion through different evidence. The conclusion is the same because the engineering is the same.[2]

## 1. Rule 9011 and Rule 11 Imposed on Timko a Personal Duty of Reasonable Inquiry, and Timko's Filings Have Not Satisfied It.

Rule 9011(b) derived from Rule 11(b), provides that an attorney who signs, files, submits, or *later advocates* a position certifies — after inquiry reasonable under the circumstances —that the legal contentions are warranted, that the factual contentions have evidentiary support, and that the paper is not presented for any improper purpose. The Rule speaks to the moment of presentation. It speaks to

---

[2] The false trustee's document had to be created to support a January 9, 2024 transaction, more thoroughly discussed at pages 8, and 16-18.

every act of advocacy after presentation. And it speaks to the signer personally. The signature is the certification.

Implicitly, the 9011 analysis presumes that the facts necessary for a reasonable inquiry were available. The core defects identified here are within the public record. They appear on the face of the instruments. They appear in the DocuSign Certificates of Completion. They appear in the Florida Department of State's notary registration database. They appear in contemporaneous email correspondence among Alison Pitkanen, Janelle Morea, and the lenders. They appear in the affidavits of the supposed signatories. None of this material is concealed. None of it required discovery. A reasonable inquiry by Timko would have found it. Either Timko did not look, or Timko looked and signed anyway. Both possibilities fail Rule 9011(b).

The conclusion is unavoidable, Timko's arguments and pleadings are premised on instruments that he certified are what they purport to be. They are not. The certification is therefore false. The filings further a fraud upon the United States Bankruptcy Court for the Middle District of Florida, upon the Florida circuit courts in which the same instruments have been deployed, upon the parties whose property and rights are being adjudicated, and upon the public. The public interest in the integrity of the public records and of the judicial process is not abstract — it is the soil in which every other right is rooted.

## 2. Four Distinct Wrongs Operate Across This Lender's Document Architecture: False Attestation, Forgery, Falsification, and Fabrication.

These four words look similar to a casual reader. Most lawyers use them as if they were synonyms. They are not. Each describes a distinct wrong, and each carries a distinct statutory home. Treating them as one, obscures the case; separating them exposes it.

**False attestation** is the notary public's certification, in a notarial certificate, of a fact that is untrue. Florida law recognizes two forms of notarial certificate. The **acknowledgment** certifies that the signatory appeared before the notary and acknowledged executing the instrument for the purposes stated; no oath is administered. The **jurat** goes further. The notary certifies both that the signatory appeared and that the signatory swore or affirmed the truth of the instrument under oath. Both forms appear across the more than thirty-four (34) Morea notarizations on the Dixon-affiliated portfolio. Some are acknowledgments. Some are jurats. The shared, recurring lie across both forms is the certification of **physical presence.** Every Florida notarial certificate — whether acknowledgment or jurat — certifies that the signatory was physically present before the notary.

The certificate may instead certify an online notarization under the Remote Online Notarization regime of Fla. Stat. §§ 117.201–117.305, but the notary must be properly certified and registered with the state. On the Dixon-affiliated

documents, virtually every certificate states presence. In virtually no instance was the signatory physically present before Ms. Morea. Florida treats the false notarial certificate as a third-degree felony in either form. Fla. Stat. § 117.105 ("A notary public who falsely or fraudulently takes an acknowledgment of an instrument as a notary public or who falsely or fraudulently makes a certificate as a notary public … is guilty of a felony of the third degree."). The false attestation — of presence, of identification, and where applicable of an oath that was never administered — is the building block that augments the three other wrongs.

**Forgery** is the broader category. The verb that matters here is **"alters"**. Fla. Stat. § 831.01 reaches "[w]hoever falsely makes, **alters**, forges or counterfeits … a certificate, return or attestation of any … notary public … in relation to a matter wherein such certificate, return or attestation may be received as a legal proof … with intent to injure or defraud any person." An underage drinker who alters a genuine driver's license to change the birth year commits forgery by alteration. The photo is real, the seal is real, the signature is real, and the document is still a forgery. The same principle reaches a notarial attestation spliced onto a wet-signed or electronically signed document the notary did not witness. The principal's signature can be entirely genuine. The instrument is still a forgery. Placing the false attestation on the writing altered it into something it was not before.

**Falsification** is the act of presenting the forged or falsely attested instrument as authentic — to a court, to a county clerk's recording office, to a third party. Fla. Stat. § 831.02 ("Whoever utters and publishes as true a false, forged or altered … instrument … knowing the same to be false … with intent to injure or defraud any person, shall be guilty of a felony of the third degree."). In federal proceedings, 18 U.S.C. § 1519 reaches the knowing falsification of records with intent to influence a federal proceeding and 18 U.S.C. § 1018 reaches the false official certificate or writing. Where the certificate is a jurat — a sworn certificate — the conduct also implicates Fla. Stat. § 837.06 (false official statements) and 18 U.S.C. § 1623 (false declarations before a federal court) and § 1001 (false statements to a federal tribunal).

After an actor, including an attorney, knows or should have known of a document's falsity, each filing, recording, or transmission of a forged instrument is a separate offense. See Fla. Stat. § 831.02. To borrow the analogy: a bartender who unwittingly accepts an altered driver's license commits no offense. A bartender who, after being shown the alteration, keeps pouring drinks for the same patron on the strength of the same license commits a separate, knowing offense. Each drink is a new violation.

**Fabrication** goes further still. A fabricated instrument has been **created or altered for a particular purpose** — not by accident, not by oversight. The



document is engineered, in its altered or constructed form, to obtain a result the actor could not obtain with the original. The defining element is purposive design.

With the four definitions in hand, the four examples that follow each show every form operating in concert.

### 3. The February 7, 2024 Recorded Trustee's Deed Embodies All Four Forms of Fraud in a Single Instrument.

September 13, 2023. A trustee's deed purporting to transfer real property to Crescent Sound, Ltd. as Trustee of the Tiered Land Trust was signed electronically through DocuSign (Envelope 9078288B-FE20-4A15-A658-110FB6D3929D). The deed was three pages, electronically signed only. It bore no witness signatures, no notarial acknowledgment, and no property descriptions. Under Fla. Stat. §§ 689.01, 695.03, and 695.26, that deed was unrecordable on its face. Under Fla. Stat. § 689.071(2)(c), a Florida land trust is formed only by a recorded transfer of real property to a trustee. The September 13, 2023 deed could not be recorded. No Florida land trust came into legal existence on that date or on any date that depends on it.

In January 2024, Alison Pitkanen attempted to have Horton Johnson assign his ownership in Homemakers to PEDixon, LLC. By happenstance, I prevented that from happening, and Ms. Pitkanen then modified the assignment and had Johnson transfer Homemakers to the Tiered Land Trust. Post signing, Pitkanen had

a notarial certification added to the document, falsely attesting to presence, creating a forgery, and this forgery has been uttered in the Homemakers bankruptcy proceedings.

Moreover, this event appears to have alerted Pitkanen to the fact that the land trust had never been formed. Consequently, Johnson's assignment was to nothing, making the assignment a nullity under Florida law. In order to attempt to validate the January 9, 2024 assignment, Pitkanen (arguably your co-counsel) and your client recorded a fabricated, falsified, and forged trustee deed.

February 7, 2024. A deed was recorded in the public records of Brevard County (CFN 2024031262, OR Book 9992, PG 2830–2837). The recorded deed is not the September 13, 2023 deed. The recorded deed is eight pages instead of three. It bears witness signatures absent from the September instrument. It carries witness addresses handwritten onto the deed after the witnesses signed and outside their presence. It contains a notarial acknowledgment falsely certifying physical presence of signatories who had executed only an electronic version. And it includes twenty-seven property descriptions found nowhere in the September 13, 2023 deed.

This single instrument carries every form of the fraud.

**Falsely attested.** The notary's certification of physical presence is untrue. The underlying signing had been electronic and remote. Fla. Stat. § 117.105 reaches the conduct directly.

**Forged.** Pages added. Witness signatures added. Witness addresses applied after the witnesses signed. A notarial acknowledgment falsely placed. Twenty-seven property descriptions inserted. Every alteration is an independent § 831.01 violation. The cumulative result is an instrument *void ab initio* under the *Wright–McCoy–Moore* line.[3]

**Falsified.** The presentation of this fabricated deed to the Brevard County recording office, and the resulting corruption of the public records by the recording of an instrument that is a legal nullity, is itself a falsification. Each subsequent reliance on the recorded version — in any court filing, foreclosure pleading, demand letter, or assignment chain — is an additional act of § 831.02 uttering, and where federal, a violation of 18 U.S.C. § 1519 falsification.

**Fabricated.** The deed was engineered for one purpose: to create the appearance, after the fact, that a valid Florida land trust had been formed in September 2023. The fabrication then permitted the January 9, 2024 Assignment of Membership Units (Section 6 below) and the dismissal of the Homemakers Real Estate, LLC voluntary Chapter 11 case to be cast as transfers to and rulings about a legally existing trustee. Cure-the-recordability-defect-by-recording-a-different-document is the defining mark of fabrication. The document was made to fit the litigation posture, not the other way around.

Timko may not have personally filed the trustee's deed in any case in which he appears. That observation does not exhaust Timko's duty under Rule 9011. The trustee's deed is the foundation of every position your firm has advanced regarding

---

[3] The Florida void-ab-initio line — *Wright v. Blocker*, 144 Fla. 428, 198 So. 88, 91 (1940) ("A forged deed ... is absolutely void and wholly ineffectual to pass title."); *McCoy v. Love*, 382 So. 2d 647, 648 (Fla. 1979) ("The recording of a void or forged deed is legally insufficient to create a legal title, and affords no protection to those claiming under it."); and *Moore v. Smith-Snagg*, 793 So. 2d 1000, 1001 (Fla. 5th DCA 2001) ("A forged deed is void; it has no effect.") — holds that a forged or fabricated instrument never had legal force. Recording does not cure it. Reliance does not cure it. Judicial action upon it does not cure it.

the existence of a valid Tiered Land Trust, the trustee status of Crescent Sound, the asserted ownership of Homemakers Real Estate by the Tiered Land Trust, and the resulting claims against the borrowers. The reasonable-inquiry duty under Rule 9011(b) reaches the foundation of the position. It does not end at the doorway through which Timko walked into court. The foundation is, on its face and on the public record, a fabrication. Every certification Timko has made by signing a filing that depends on the existence of that trust has been false.

### 4. The October 30, 2023 Flynn Security Pledge Agreement Confirms the Pattern: Same Architect, Same Notary, Same Engineering.

October 30, 2023. Martin C. Flynn, Jr. executed a Security Pledge Agreement through DocuSign (Envelope FA265EF5-31FC-48FE-A327-47C1E98C5BC9). Version 1 is five numbered pages. Flynn was the only signer. The DocuSign Certificate of Completion records no notary event and no signature by Kenneth Dixon.

Sixteen months passed. On January 25, 2025, Pitkanen transmitted to Shane Sarver and Mike McPhillips a Version 3 of the Security Pledge Agreement bearing a different DocuSign Envelope ID (545249E8-5982-4DFA-92C0-E713A3E9775F). Version 3 contained a signature by Dixon that did not exist on Version 1, plus an unnumbered sixth page bearing a notarial attestation by Janelle Morea purporting to certify a notarization on October 30, 2023. On February 20,

2025, Pitkanen transmitted to Patrick Stevens, Flynn's closing attorney, a further version bearing a third DocuSign Envelope ID (D1157520-7C51-4CF7-8D2C-73E9F6A42D20).

A DocuSign envelope identifier is a unique cryptographic value. It is generated when, and only when, a document is processed through the DocuSign system. It cannot be altered, duplicated, or reissued. The existence of three distinct envelope identifiers for what is purported to be a single original five-page instrument is conclusive forensic evidence. Versions 2 and 3 are separate, post-execution transactions. The original was uploaded to DocuSign two additional times, after Flynn signed, with material additions each time. That is not a recordkeeping artifact. That is the act of altering an instrument under § 831.01.

The alteration is compounded by the notary's status. Morea (Florida Notary Public Commission No. HH077342) was not registered with the Florida Department of State as an online notary public until approximately September 2025. That is nearly two years after the attested notarization date. Under Fla. Stat. § 117.225, only a notary so registered may perform Remote Online Notarization. Section 117.295(2) requires identity proofing through credential analysis and knowledge-based authentication. Section 117.245(7) requires retention of an audiovisual recording of the notarization session. None of these statutory safeguards were satisfied. The Department of State's registration database is

 

dispositive on the registration question. (Morea only obtained authority to perform online notarizations in September 2025).The notarization is impossible on the face of the public record.

Applying the four-fold vocabulary. Morea's certification on Versions 2 and 3 is a false attestation under § 117.105. The instruments are forgeries under § 831.01 by reason of post-execution alteration, page insertion, and signature addition. Their transmission to Shane Sarver, Mike McPhillips, and Patrick Stevens — and any subsequent presentation to a court or third party — is falsification under § 831.02. They are fabrications. They were engineered for a particular purpose: to redirect cash flow from Flynn's rental and ROGO operations to PEDIXON in circumstances where, on the unaltered original, no such redirection right existed and no such co-signature could be claimed. The 16-month gap between Flynn's actual execution and the deployment of the altered versions is not evidence of accident. It is evidence of design.

Two independent fact patterns now show the same engineering. Pitkanen as architect. Morea as notary. The DocuSign-and-notary mechanic. Post-execution alteration to fit a later-needed legal posture. Two examples are not coincidence. Two examples are pattern. The pattern, in turn, sharpens the Rule 9011 question for Timko: how, on the inquiry, did Timko not see this? Especially after I and others put him on notice.



Page 13 of 21

**5. Every Instrument in the Eleven-Loan Consolidated Portfolio Carries the Same Defects, and the Consolidation Therefore Cannot Stand.**

The trustee's deed and the Flynn assignments are not exceptional within the Dixon-affiliated lending portfolio. They are representative of it. Between January 2022 and September 2024, Pitkanen and Morea participated in the production of more than thirty-four (34) notarial attestations and related notarization irregularities. The defects appear across loan instruments, security pledges, assignments of property, mortgages, and ancillary documents. The instruments were executed by or against, Horton S. Johnson, Martin C. Flynn, Jr., Yaniv Amar, and their affiliated entities. Some of the certificates are acknowledgments. Some are jurats. Virtually all certify physical presence. In virtually no instance was the signatory physically present before Morea.

The defects are uniform in kind and recurrent in pattern. Each instrument suffers from one or more of the following. Morea certified physical presence on a transaction at which no physical-presence ceremony occurred. Morea purported to perform Remote Online Notarization without being a registered online notary under § 117.225, with none of the RON safeguards of §§ 117.245 and 117.295 satisfied. Subscribing-witness signatures were obtained outside the signatory's presence, and witness addresses were handwritten onto the instrument after the witnesses signed. Unnumbered notary or witness pages were inserted onto instruments that contained no such pages at execution. Co-signer or counterparty

signatures absent from the executed original were later added through separate DocuSign transactions bearing distinct cryptographic envelope identifiers.

Apply the false-attestation-forgery theory to each instrument. The conclusion is the same in each case. Each instrument is a § 831.01 forgery on the alteration verb. Each is a § 117.105 false acknowledgment or false jurat. Each presentation to a court, recording in the public records, or transmission to a third party is a § 831.02 uttering, and where federal an 18 U.S.C. § 1519 falsification. Where the certificate is a jurat — a sworn certificate — each presentation also implicates Fla. Stat. § 837.06 and, in federal proceedings, 18 U.S.C. §§ 1001 and 1623. The collective scheme — same architect, same notary, same methodology, repeated thirty-four-plus times across an eleven-loan portfolio — is fabrication in the strict sense. The instruments were engineered, document by document, for a particular purpose: to construct a paper architecture that would allow the Dixon-affiliated lenders to claim a unified collateral package, declare manufactured defaults, charge usurious default interest, and seize property and cash flow that, on the unaltered originals and under Florida's usury and notarial laws, they had no right to take.

The consolidation of the eleven loans into a single Consolidated Loan Agreement is the place where the systemic dimension of the fraud becomes exacerbated. Cross-collateralization and cross-default mean that any single forgery



in any single component instrument contaminates the security claims for every other component loan. A forged instrument is *void ab initio* under *Wright v. Blocker*, *McCoy v. Love*, and *Moore v. Smith-Snagg*. *Supra* n. 3. Nothing recorded, transmitted, or argued about the instrument can give it legal force. The foundational collateral instruments of the consolidation — the trustee's deed, the Homemakers Assignment of Membership Units, and the Flynn Security Pledge Agreement — are forgeries, as set forth in Sections 3, 4, and 6. The consolidation cannot stand on a foundation that does not exist.

Every position Timko advanced, in every case, in any forum, depends on the validity of the consolidated loan package, the existence of the Tiered Land Trust, the perfection of any security interest under any of these instruments, or the ownership of any property pledged under any of them, has been certified by Timko's signature under Rule 9011(b) or Rule 11(b). The reasonable-inquiry duty would have surfaced the pattern. The pattern is on the public record, in the DocuSign Certificates of Completion, in the Department of State's registration database, in the affidavits of the supposed signatories, and on the face of the recorded instruments. Rule 9011 is designed to prevent is precisely this class of defect: the attorney who certifies as authentic what reasonable inquiry would have shown is not.

**6. Timko Personally Placed the January 9, 2024 Homemakers Assignment of Membership Units Before the Bankruptcy Court as an Authentic Instrument; It Is a Forgery, and Its Certificate Is a False Jurat.**

If the trustee's deed is the foundation, and the Flynn assignments are the replication, and the eleven-loan portfolio is the scale, the January 9, 2024 Assignment of Membership Units is the instance Timko has personally placed before the United States Bankruptcy Court for the Middle District of Florida. It is the most blatant misrepresentation of a document's validity to a federal tribunal in any of the matters in which Timko appears.

January 9, 2024, at my residence, Pitkanen presented to Horton S. Johnson a document titled "Assignment of Membership Units." The document purported to transfer Johnson's entire 100% membership interest in Homemakers Real Estate, LLC to Crescent Sound, Ltd., as Trustee of the Tiered Land Trust dated September 13, 2023. No notary was present. Johnson signed at Amodeo's residence. The document was a wet-signed instrument with the notary block left entirely blank — no notary signature, no commission number, no seal, no county designation, no identification.

3:28 PM that same afternoon, *after* Johnson had signed and *at the request of Pitkanen*, an email was sent from gabbymilotte@icloud.com to Morea at janelle@sherwoodconstruction.net and jmorea@tieredcapital.com, with a carbon copy to Pitkanen. The email attached a file titled "Janelle Pls Notarize.pdf" and



stated: "Janelle, please see the attached. This is the document to notarize. Thank you." Morea thereafter completed the notary block. The certificate Morea executed reads, in pertinent part: "THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ___ physical presence or ___ online notarization on January 9, 2024, by Horton S. Johnson." That language is a **jurat**, not a bare acknowledgment. A jurat certifies two things: physical presence (or online notarization), and administration of an oath by which the signatory swore or affirmed the truth of the instrument. Morea checked physical presence, identified Johnson by "license," affixed her seal, and certified Orange County, Florida.

Both certifications are false. Johnson did not appear physically before Morea, as Morea's own email correspondence and Johnson's sworn affidavit independently establish. Johnson did not swear or affirm anything, because no oath ceremony occurred. Morea's jurat therefore contains two contemporaneously falsifiable statements in a single notarial certificate.

Johnson's sworn affidavit of July 3, 2025 states the matter plainly. "There was no notary present when Pitkanen presented me with the documents" (¶ 5). "The executed version of the Assignment of Membership Units that was submitted to the court is notarized and stated that I was physically present before the notary. This raises concerns for me because there was no notary present when attorney

Page 18 of 21



Pitkanen had me sign a document on January 9, 2024" (¶ 10). Johnson's deposition testimony of November 4, 2025 corroborates the affidavit. If Timko's earlier notice that the notarized assignment was a fraud had not alerted him, the Johnson affidavit and depositions did. Timko violates not only the best evidence rule but perpetrates a fraud upon the court.

Apply the four-fold vocabulary one final time.

**False attestation.** Morea's jurat falsely certifies physical presence and falsely certifies administration of an oath. Both certifications are reached by Fla. Stat. § 117.105. The affidavit and the email together are dispositive on the falsity element of each.

**Forgery.** Johnson's signature is a copy of what appears to be his genuine signature. The alteration that converted his wet-signed unrecordable writing into a notarized, self-authenticating, recordable instrument bearing a sworn jurat is the act § 831.01 forbids. The Assignment is a forgery and is *void ab initio* under *Wright, McCoy,* and *Moore. Supra* n. 3.

**Falsification.** Timko's filing of the Assignment in the United States Bankruptcy Court for the Middle District of Florida — in support of the Motion to Dismiss in the Homemakers voluntary Chapter 11 case — is the act that constitutes falsification under both § 831.02 and 18 U.S.C. § 1519. The certificate is a jurat, so the conduct also implicates Fla. Stat. § 837.06 (false official statements) and 18 U.S.C. §§ 1001 and 1623 (false statements and false declarations to a federal tribunal). Timko uttered a falsely sworn instrument to a federal tribunal. Each subsequent filing in any case that cites the Dismissal Order or relies on the ownership finding it embodies is an additional act of falsification.

**Fabrication.** The Assignment was completed for a particular purpose: to support an argument that Johnson had divested himself of his ownership of Homemakers Real Estate, LLC and that the resulting interest had been transferred to a trust whose existence depends on the equally fabricated trustee's deed



described in Section 3. Strip away either the Assignment or the trustee's deed and the entire ownership theory Timko has placed before the bankruptcy court collapses.

The Rule 9011 violation is not abstract here. The Court relied on this instrument, and on Timko's representations regarding it, in entering the Dismissal Order (Doc. 73) in the Voluntary Case and the Order Denying Reconsideration (Doc. 85). The Court was not informed that the notarization had been performed remotely, after the fact, on a pre-signed document transmitted by email at the request of Pitkanen without the knowledge of Johnson. The Court was not informed that the notary was not present at the signing. The Court was not informed that no oath was administered to Johnson. And the Court was not informed that under controlling Florida law the resulting instrument was *void ab initio* and could not lawfully support the dispositive ownership finding the Court was asked to make. Timko's filings, having omitted those facts, fail every prong of Rule 9011(b). The certification was false when made. It has been false again every time Timko has advocated, since November 4, 2025, on a record that the Motion to Strike at Doc. 38 placed before him.

I have numerous other examples that I have not provided today. What is provided here is sufficient to require the removal of all documents containing false attestations, falsifications, or that are fabrications, and, or, forgeries.

This letter and the accompanying Proposed Motion are served pursuant to the safe-harbor provision of Federal Rule of Bankruptcy Procedure 9011(c)(1)(A) and Federal Rule of Civil Procedure 11(c)(2), the federal counterparts whose 21-day cure-or-withdraw mechanism mirrors the procedure codified in Florida Statutes § 57.105(4). If Plaintiffs do not withdraw or appropriately correct the dependent claims and positions within the 21-day period, I will file the Proposed Motion with the Court and seek (i) reasonable attorney's fees and costs incurred in defending Counts I and II from July 3, 2025 forward, (ii) the fees and costs of preparing and prosecuting the Proposed Motion, (iii) referral of the matter to The Florida Bar for investigation of violations of Rules 4-3.3, 4-3.4, 4-4.1, and 4-8.4(c) of the Rules Regulating The Florida Bar, and (iv) such further relief as the Court deems just and proper.

Sincerely,

Frank L. Amodeo
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32801@gmail.com

**Enclosure:** Proposed Motion for Sanctions Pursuant to Federal Rule of Bankruptcy Procedure 9011
**cc:** Horton S. Johnson

NITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                              Case No. 6:25-bk-05570-GER
HOMEMAKERS REAL ESTATE, LLC,                 Chapter 11
          Debtor.

_____/

**FRANK L. AMODEO'S MOTION TO STRIKE FORGED, FABRICATED, AND FALSELY ATTESTED INSTRUMENTS; FOR SANCTIONS AGAINST ATTORNEY JAMES TIMKO; AND TO VACATE ORDERS BASED ON THE FORGED DOCUMENTS**

I move the Court to strike from this proceeding's record the forged,

fabricated, falsely attested, and uttered instruments described below; to impose

sanctions against attorney James A. Timko personally and against his firm, Dean,

Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A.; and to vacate every prior

order procured through reliance on those instruments. The 21-Day Demand Letter

served on Timko and on Marc D. Chapman as President of Dean Mead is attached

as Exhibit 1. The grounds follow.

**1. The Procedural Posture: The Rule 9011 Safe Harbor Has Been Satisfied; Sanctions Under § 1927 and the Court's Inherent Powers Require No Safe Harbor.**

On May 5, 2026, the 21-Day Demand Letter (Ex. 1) was served on Timko

and on Marc D. Chapman by certified mail, return receipt requested, and by email.

The letter identified the forged, fabricated, falsely attested, and uttered instruments

demanded to be withdrawn. The letter set out the factual and legal basis. The letter

advised Timko of the intent to file this Motion if Timko did not withdraw the offending filings within 21 days.

The 21-day safe harbor under Rule 9011(c)(1)(A) expired on May 26, 2026. Timko has not withdrawn the offending instruments. Timko has not filed a corrective notice. Timko has not ceased reliance on the offending instruments. The safe-harbor prerequisite is satisfied.

Sanctions under 28 U.S.C. § 1927 and the Court's inherent powers require no safe harbor. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). The Court reaches Timko's conduct on those grounds independently of the Rule 9011 path.

## 2. Rule 9011 and Rule 11 Imposed a Duty of Reasonable Inquiry, and Timko's Filings Have Not Satisfied It.

Rule 9011(b) and Rule 11(b) provide, in identical material terms, that an attorney who signs, files, submits, or *later advocates* a paper certifies — after an inquiry reasonable under the circumstances — three things: that the legal contentions are warranted; that the factual contentions have evidentiary support; and that the paper is not presented for any improper purpose. The Rule speaks to the moment of presentation. It speaks to every act of advocacy after presentation. And it speaks to the signer personally. The signature is the certification.

The defects identified below sit on the public record. They appear on the face of the instruments. They appear in the DocuSign Certificates of Completion.

They appear in the Florida Department of State's notary registration database. They appear in contemporaneous email correspondence among Pitkanen, Morea, and the Dixon-affiliated lenders. They appear in the affidavit of Horton S. Johnson, executed July 3, 2025, and in Johnson's deposition testimony of November 4, 2025. None of this material is concealed. None of it requires discovery. A reasonable inquiry would have found it. Either Timko did not look, or Timko looked and signed anyway. Both possibilities fail Rule 9011(b).

Timko has, by his signature on filings premised on these instruments, certified that they are what they purport to be. They are not.

### 3. Four Distinct Wrongs Operate Across Timko's Filings: False Attestation, Forgery, Falsification, and Fabrication.

These four words look similar to a casual reader. Most lawyers use them as if they were synonyms. They are not. Each describes a distinct wrong, and each carries a distinct statutory home.

False attestation is the notary public's certification, in a notarial certificate, of a fact that is untrue — most often that the signatory was physically present before the notary, or executed the instrument under oath. Florida law treats the false notarial certificate as a third-degree felony. Fla. Stat. § 117.105 ("A notary public who falsely or fraudulently takes an acknowledgment of an instrument as a notary public or who falsely or fraudulently makes a certificate as a notary public

Page 3 of 17

... is guilty of a felony of the third degree."). Florida recognizes two forms of certificate. The acknowledgment certifies appearance and execution; no oath is administered. The jurat certifies appearance and an oath. Both forms appear across the more than thirty-four (34) Morea notarizations in the Dixon-affiliated portfolio. Some are acknowledgments. Some are jurats. The shared, recurring lie across both forms is the certification of **physical presence**. Virtually every certificate states presence. In virtually no instance was the signatory physically present before Morea.

Forgery is the broader category. The verb that matters here is **"alters."** Fla. Stat. § 831.01 reaches "[w]hoever falsely makes, **alters**, forges or counterfeits ... a certificate, return or attestation of any ... notary public ... in relation to a matter wherein such certificate, return or attestation may be received as a legal proof ... with intent to injure or defraud any person." The principal's signature can be entirely genuine; the instrument is still a forgery, because the act of placing the false attestation on it altered the writing into something it was not before.[1]

---

[1] The conventional lay image of forgery — signing another's name — is narrower than the statute. Fla. Stat. § 831.01 uses four verbs: "falsely makes, alters, forges or counterfeits." An underage person who alters a genuine driver's license to change the birth year commits forgery by alteration; the license is otherwise authentic. The January 9, 2024 Assignment of Membership Units is the same pattern: a real signature, a falsely attested notarial certificate, and an instrument deployed as a self-authenticating legal document it was never entitled to be. The controlling inquiry under § 831.01 is not "whose hand held the pen?" but "what does this document purport to be, and is that representation false?"

Falsification is the act of presenting the forged or falsely attested instrument as authentic — to a court, to a county clerk's recording office, to a third party. Fla. Stat. § 831.02 ("Whoever utters and publishes as true a false, forged or altered ... instrument ... knowing the same to be false ... with intent to injure or defraud any person, shall be guilty of a felony of the third degree."). In federal proceedings, 18 U.S.C. § 1519 reaches the knowing falsification of records with intent to influence a federal investigation or proceeding. Where the certificate is a jurat, the conduct also implicates Fla. Stat. § 837.06 (false official statements) and, in federal proceedings, 18 U.S.C. §§ 1001 (false statements to a federal tribunal) and 1623 (false declarations before a federal court). Each presentation of a forged instrument after the actor knows or should know of its falsity is an independent act of falsification.[2]

Fabrication goes further still. A fabricated instrument has been **created or altered for a particular purpose** — not by accident, not by oversight. The document is engineered, in its altered or constructed form, to obtain a result the

---

[2]The distinction between forgery and uttering is captured by a familiar analogy. A bartender who unwittingly accepts an altered driver's license commits no offense — the reliance is innocent. A bartender who, after being shown the alteration, keeps pouring drinks for the same patron on the strength of the same license is committing a separate, knowing offense; each drink poured after notice is a new violation. Timko's filings before receipt of actual notice of the forgery implicate Rule 9011(b)'s objective reasonable-inquiry standard. Timko's filings on and after November 4, 2025 — the date the Motion to Strike at Doc. 38 placed Timko on actual notice — implicate Fla. Stat. § 831.02's knowing-uttering standard, with each successive presentation of the forged instruments to this Court constituting an independent offense.

actor could not obtain with the original. The defining element is purposive design. The Florida void-ab-initio line — *Wright v. Blocker*, 144 Fla. 428, 198 So. 88, 91 (1940) ("A forged deed ... is absolutely void and wholly ineffectual to pass title."); *McCoy v. Love*, 382 So. 2d 647, 648 (Fla. 1979) ("The recording of a void or forged deed is legally insufficient to create a legal title, and affords no protection to those claiming under it."); and *Moore v. Smith-Snagg*, 793 So. 2d 1000, 1001 (Fla. 5th DCA 2001) ("A forged deed is void; it has no effect.") — holds that a forged or fabricated instrument never had legal force. Recording does not cure it. Reliance does not cure it. Judicial action upon it does not cure it.

### 4. Timko Has Personally Placed Falsely Notarized, Forged, and Fabricated Instruments Before This Court.

The conduct at issue is not abstract. Timko has filed in this case, and continues to advocate from, instruments that bear the defects described above on their face. Four representative anchors follow.

### January 9, 2024 Assignment of Membership Units.

On January 9, 2024, at my residence, Pitkanen presented to Horton S. Johnson a document titled "Assignment of Membership Units" purporting to transfer Johnson's 100% membership interest in Homemakers Real Estate, LLC to Crescent Sound, Ltd. as Trustee of the Tiered Land Trust dated September 13, 2023. No notary was present. The notary block was blank. At 3:28 PM that same afternoon, *after* Johnson had signed and at the request of Pitkanen, an email was

sent from gabbymilotte@icloud.com to Janelle Morea attaching "Janelle Pls Notarize.pdf" and instructing: "This is the document to notarize." Johnson had no knowledge of this transmission. Morea thereafter completed a notarial certificate falsely certifying physical presence in Orange County. The certificate is a **jurat** — "THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me" — so it falsely certifies both physical presence and an oath that was never administered. Johnson's sworn affidavit of July 3, 2025 (¶¶ 5, 10) confirms that no notary was present. The Assignment is a false attestation under § 117.105, a forgery under § 831.01, and *void ab initio* under *Wright*, *McCoy*, and *Moore*. Timko presented this Assignment in the Voluntary Case (No. 6:25-bk-02685-GER) as authentic, and the Dismissal Order (Doc. 73) and the Order Denying Reconsideration (Doc. 85) in that case rest on it. In this involuntary case, Timko has continued to advocate the ownership theory those orders embody.

**February 7, 2024 Recorded Trustee's Deed.**

The trustee's deed for the Tiered Land Trust was, at execution on September 13, 2023 (DocuSign Envelope 9078288B-FE20-4A15-A658-110FB6D3929D), a three-page electronically signed document with no witness signatures, no notarial acknowledgment, and no property descriptions. Under Fla. Stat. §§ 689.01, 695.03, and 695.26, that deed was unrecordable. Under Fla. Stat. § 689.071(2)(c), no Florida land trust is formed without a recorded transfer. See, e.g., *Brigham v.*

*Brigham*, 11 So. 3d 374 (Fla. 3d DCA 2009) (treating a deed lacking the required trustee powers as failing to create a Florida land trust). A deed was recorded in the Brevard County public records (CFN 2024031262, OR Book 9992, PG 2830–2837) as an eight-page instrument carrying twenty-seven property descriptions, witness signatures, witness addresses written by hand after the witnesses signed, and a notarial acknowledgment falsely certifying physical presence — none of which were on the document the signer signed. The recorded deed is a forgery under § 831.01 and *void ab initio*. The recorded deed is the foundation of every position Timko has advanced in this case regarding the existence of a valid Tiered Land Trust, the trustee status of Crescent Sound, and the ownership of Homemakers Real Estate by the Tiered Land Trust. The Doc. 11 "Tiered Land Trust Appendix" filed in this case relies on it.

### October 30, 2023 Flynn Security Pledge Agreement.

Martin C. Flynn, Jr. executed a Security Pledge Agreement through DocuSign (Envelope FA265EF5-31FC-48FE-A327-47C1E98C5BC9). Version 1 was five pages, signed only by Flynn, with no notary event and no Dixon signature. Sixteen months later, Pitkanen deployed altered versions bearing two distinct DocuSign envelope identifiers — Version 3 (545249E8-5982-4DFA-92C0-E713A3E9775F) on January 25, 2025, and Version 2 (D1157520-7C51-4CF7-8D2C-73E9F6A42D20) on February 20, 2025 — each carrying a Dixon

signature absent from Version 1 and an unnumbered sixth page bearing a Morea jurat. A DocuSign envelope identifier is a unique cryptographic value. It cannot be altered, duplicated, or reissued. The existence of three identifiers for what is purported to be a single original is conclusive evidence of post-execution alteration. Compounding the alteration, Morea was not registered with the Florida Department of State as an online notary public until approximately September 2025 — nearly two years after the attested notarization date. Under § 117.225, only a registered online notary may perform Remote Online Notarization. The notarization is impossible on the face of the public record.

**Eleven-Loan Consolidated Tiered Loan Package.**
Between January 2022 and September 2024, Pitkanen and Morea participated in the production of more than thirty-four (34) notarial attestations and related notarization irregularities across the eleven loans aggregating approximately $11,225,000 ultimately consolidated under the Tiered Land Trust structure. The defects are uniform in kind and recurrent in pattern. Same architect. Same notary. Same DocuSign-and-notary mechanic. Same post-execution alteration to fit a later-needed legal posture. The consolidation cannot stand on a foundation of forged collateral instruments.

**5. Timko Has Placed Morea-Notarized Instruments Before This Court in Doc. 7, Doc. 60, Doc. 98, and Doc. 186, and Has Built Doc. 180 and Doc. 184 on the Same Foundation.**

The defects above are not abstract for this Court. The instruments and the theories built on them appear in Timko's filings in this case at the following docket entries.

### Doc. 7 — Motion to Dismiss Involuntary Bankruptcy Petition (filed September 29, 2025).

Timko-signed. The body of the Motion references Morea by name. The Motion seeks dismissal on a theory that depends on the validity of the Tiered Land Trust and on the assignment of Homemakers' membership interest to Crescent Sound — both of which depend on the forged instruments described in Section 4.

### Doc. 60 — Putative Debtor's Exhibit List (filed December 12, 2025).

Timko-signed. The exhibit list designates as evidence at least the following Morea-notarized instruments: (Docs. 60-6, 60-7, 60-12, 60-22, 60-24). Doc. 60-22 carries Morea's Commission No. HH077342 on its face. Each is a falsely attested instrument under § 117.105 and a forgery under § 831.01.

### Doc. 98 — subsequent exhibit submission.

The Morea-notarized instruments at (Docs. 98-6, 98-7, 98-12, 98-22, 98-24, 98-34, 98-35) carry the same defects.

### Doc. 186 — trial exhibit submission.

The Morea-notarized instruments at (Docs. 186-6, 186-7, 186-12, 186-22, 186-24, 186-34, 186-35) carry the same defects, repeated for the trial record.

### Doc. 180 — Timko's Supplemental Motion for Sanctions and Bad Faith.

Timko has sought sanctions against the petitioning creditors on a record built upon the Voluntary Case Dismissal Order — itself procured through the forged Assignment of Membership Units — and upon the same Morea-notarized exhibits Timko has placed before this Court. Doc. 180 is the most direct example of bad-faith reliance: Timko seeks sanctions against the parties who have placed before this Court the very evidence of forgery on which Timko refuses to act..

**Doc. 184 — Motion to Dismiss the Chapter 7 (No. 6:26-bk-01776).**

The same theory of ownership runs through Doc. 184. The same defects run through it.

These docket entries together establish the conduct. Timko has presented falsely notarized, forged, and fabricated instruments to this Court as authentic. Timko has sought relief from this Court on the strength of those instruments. The Rule 9011 violation is concrete on the record.

**6. Every Filing Timko Has Submitted to This Court on or after November 4, 2025 Is a Knowing Act of Uttering Under § 831.02 and an Independent Rule 9011 Violation.**

Timko has been on actual notice of the forgeries since, at minimum, the following events. On November 4, 2025, Amodeo's Motion to Strike at Doc. 38 placed the forgery facts before Timko and before this Court. On November 20–21, 2025, the Verified Appendix at (Docs. 45–47) supplied the documentary record. On July 3, 2025, Johnson's sworn affidavit established the falsity of the January 9,

2024 notarization. On November 4, 2025, Johnson's deposition corroborated the affidavit. On May 5, 2026, the 21-Day Demand Letter (Ex. 1) recapitulated the entire record and demanded withdrawal.

Notwithstanding actual notice, Timko has continued to file and to advocate (Docs. 98, 180, 184, 186, 192, 193, 194, 195). Each filing is an independent act of uttering under Fla. Stat. § 831.02. Each is a separate violation of Rule 9011(b). Each multiplies these proceedings unreasonably and vexatiously within the meaning of 28 U.S.C. § 1927.

The forgery happened once. The uttering is happening on every docket entry Timko files. A bartender who unwittingly takes an altered ID is innocent. A bartender who, after being shown the alteration, keeps pouring drinks for the same patron commits a separate offense — every drink is a new violation. That is Timko after November 4, 2025.

## 7. Sanctions Under Rule 9011, 28 U.S.C. § 1927, and the Court's Inherent Powers Are Warranted.

Rule 9011(c) authorizes monetary and non-monetary sanctions against an attorney who violates Rule 9011(b). 28 U.S.C. § 1927 authorizes personal liability against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" for "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Court's inherent powers reach conduct that

abuses the judicial process or constitutes bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 50 (1991).

Timko's conduct satisfies each standard. Timko has continued to file pleadings premised on forged and fabricated instruments after actual notice of their defects. Timko has continued to seek relief — including sanctions against the parties exposing the forgery — predicated on those instruments. Timko has refused to withdraw within the safe-harbor period. Each of those choices imposes on Amodeo, and on every party that has been required to respond, the cost, expense, and time reasonably incurred in remediating the forgery. The right remedy is to shift those costs back to the actor whose post-notice choices imposed them.

## 8. Fraud on the Court Requires Vacatur of Every Order Procured Through or Relying on the Forged Instruments.

Rule 60(d)(3) preserves the Court's inherent power to vacate a judgment for fraud on the court. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246–48 (1944). No time limitation applies. *Id.* at 244–45. Fraud on the court "embraces only that species of fraud which does or attempts to subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Zakrzewski v. McDonough*, 490 F.3d 1264, 1267 (11th Cir.

2007). Fabrication of evidence relied upon by the court in rendering judgment is the paradigmatic case. *Herring v. United States*, 424 F.3d 384, 390 (3d Cir. 2005).

Every order entered on the strength of the forged Assignment of Membership Units, the fabricated Trustee's Deed, or the altered Flynn Security Pledge Agreement was procured through fraud on the court. Each such order should be vacated. The Court should also direct the parties to identify, by separate filing within a date certain, every order in this case and in related cases that depends on the offending instruments.

The conduct further implicates 18 U.S.C. §§ 1519, 1018, 1001, and 1623, and Fla. Stat. §§ 117.105, 831.01, 831.02, and 837.06. The Court need not make a criminal determination. The severity of the conduct nonetheless warrants referral.

## RELIEF REQUESTED

The law, applied to these facts, requires the following order. The Court is asked to enter an order:

**A.**   Striking from the record of this proceeding the forged, fabricated, falsely attested, and uttered instruments identified above, including without limitation the Morea-notarized exhibits at (Docs. 60-6, 60-7, 60-12, 60-22, 60-24, 98-6, 98-7, 98-12, 98-22, 98-24, 98-34, 98-35, 186-6, 186-7, 186-12, 186-22, 186-24, 186-34, 186-35), and every pleading, motion, affidavit, declaration, or argument predicated on those instruments;

**B.**   Imposing monetary sanctions against James A. Timko personally and against Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., under Rule

9011(c), 28 U.S.C. § 1927, and the Court's inherent powers, in an amount equal to the attorneys' fees, costs, and expenses reasonably incurred by Amodeo and by the petitioning creditors as a result of Timko's post-notice filings, plus such additional monetary penalty as the Court deems necessary to deter repetition;

**C.**    Vacating every prior order in this case, in the Voluntary Case (No. 6:25-bk-02685-GER), in the Chapter 7 case (No. 6:26-bk-01776), and in any related state-court proceeding that was procured through or relies upon the forged instruments, including the Dismissal Order (Doc. 73) and the Order Denying Reconsideration (Doc. 85) in the Voluntary Case;

**D.**    Directing the Clerk to flag in this case's docket every Timko filing built on the forged instruments, by separate notation, so that the record reflects the infirmity of those filings going forward;

**F.**    Awarding Amodeo reasonable costs incurred in bringing this Motion; and

**G.**    Granting such other and further relief as the law and the integrity of these proceedings require.

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America, under 28 U.S.C. § 1746, that the factual statements in this Motion are true and correct to the best of my knowledge, information, and belief, based on my personal review of the documents and records referenced.

Executed on [DATE].

Frank L. Amodeo, *pro se*

## CERTIFICATE OF RULE 9011 SAFE HARBOR COMPLIANCE

Under Fed. R. Bankr. P. 9011(c)(1)(A), the undersigned certifies that on May 5, 2026, a true and correct copy of this Motion, together with the 21-Day Demand Letter (Ex. 1), was served on James A. Timko and on Marc D. Chapman as President of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., by certified mail, return receipt requested, and by email. The 21-day safe-harbor period expired on May 26, 2026. Timko has not withdrawn the offending instruments or any pleading predicated on them. This Motion is filed after expiration of the safe-harbor period.

Respectfully submitted this ___ day of _____, 2026.

**Frank L. Amodeo**, *pro se*
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32801@gmail.com

## CERTIFICATE OF SERVICE

On [DATE], a true and correct copy of the foregoing Motion, together with Exhibit 1 (21-Day Demand Letter), was served on all parties through the Court's CM/ECF system and by U.S. Mail on any party not receiving CM/ECF service, including without limitation James A. Timko, Esquire, Dean, Mead, Egerton,

Bloodworth, Capouano & Bozarth, P.A., 420 South Orange Avenue, Suite 700, Orlando, Florida 32801, and Marc D. Chapman, Esquire, at the same address.

_____

Frank L. Amodeo, *pro se*

## EXHIBIT 1

21-Day Demand Letter to James A. Timko and Marc D. Chapman
(separately attached)

# EXHIBIT 2

## Demonstrative — The Trustee's Deed

The DocuSign Certificate of Completion (Doc. 93, Ex. C)
compared to the recorded Trustee's Deed
(CFN 2024031262; OR BK 9992, PG 2830–2837)

*Motion for Sanctions Under Federal Rule of Bankruptcy Procedure 9011*
In re Homemakers Real Estate, LLC
Case Nos. 6:25-bk-02685-GER and 6:25-bk-05570-GER

**EXHIBIT 2**

# Exhibit C Disproves the Very Point It Is Cited For
DocuSign Certificate of Completion — Trustee's Deed, Homemakers Real Estate, LLC

**MR. TIMKO'S CLAIM — Omnibus Objection (Doc. 93 at 7):**

*"The DocuSign identification number on the recorded deed … matches Johnson's identification number …. As a result, all of the evidence supports that Johnson executed the recorded deed, had Amodeo's relatives witness it …."*

## WHAT MR. JOHNSON SIGNED
The DocuSign envelope — Sept. 13, 2023



**3 pages**

✓ Bears DocuSign Envelope ID on **every page**
   9078288B-FE20-4A15-A658-110FB6D3929D
✗ No witnesses — signature lines blank
   Certificate's *Witness Events* row: **blank**
✗ No notarization — notary block blank
   Certificate's *Notary Events* row: **blank**
✗ Exhibit A: only "26 UNITS" — no legal description (1 page)
✗ Signed remotely, alone — no one present

### NOT RECORDABLE — NOT A VALID DEED

Fla. Stat. § 689.01 (2 witnesses) and § 695.03 (notarial acknowledgment) not met; no land trust is created without recording (§ 689.071).

**This is the only document Mr. Johnson signed.**



**NOT THE SAME DOCUMENT**

## WHAT WAS RECORDED
CFN 2024031262 — recorded Feb. 14, 2024

**8 pages**

+ Two wet-ink witnesses added
+ Notarization added — falsely attesting "physical presence" and "driver's license"
+ Exhibit A substituted — the 1-page "26 units" swapped for 6 pages describing **27 units**
✗ Those 6 pages carry no DocuSign Envelope ID — **plainly a substitution**
✗ Grew 3 → 8 pages after Mr. Johnson signed

### A DIFFERENT DOCUMENT

Everything that makes it a recordable deed — witnesses, notary, legal descriptions — was added after Mr. Johnson signed.

---

The DocuSign certificate authenticates the 3-page document Mr. Johnson signed — not the 8-page recorded deed.

Instead of proving Mr. Johnson executed the recorded deed, Exhibit C proves the opposite:

**Mr. Johnson did not sign the recorded deed.**

# EXHIBIT 2-A

## Trustee's Deed — As Signed

*Executed through DocuSign, September 13, 2023*

Three pages. DocuSign Envelope ID 9078288B-FE20-4A15-A658-110FB6D3929D
appears on every page.

Witness lines blank.  Notary block blank.
Exhibit A reads "(26 UNITS)" and contains no legal description.

*Motion for Sanctions Under Federal Rule of Bankruptcy Procedure 9011*
In re Homemakers Real Estate, LLC
Case Nos. 6:25-bk-02685-GER and 6:25-bk-05570-GER

EXHIBIT 2-A

THIS INSTRUMENT PREPARED BY:

1980 N. Atlantic Ave
Suite 328
Cocoa Beach, FL 32931

## TRUSTEE'S DEED

**THIS INDENTURE**, made September 13, 2023, by and between Homemakers Real Estate, LLC, a Florida limited liability company, hereinafter referred to as Grantor, whose mailing address is 2875 S. ORANGE AVE, STE. 500 #6409, ORLANDO, FL 32806 and CRESCENT SOUND LTD, Trustee, of Tiered Land Trust, u/t/d September 13, 2023, hereinafter referred to as Grantee, whose post office address is 1627 East Vine Street, Suite E, Kissimmee FL 34744.

(Wherever used the term "Grantor" and "Grantee" shall include singular and plural, heirs, legal representative, and assigns of individuals, and the successors and assigns of corporation, wherever the context so admits or requires.)

## WITNESSETH

Grantor, in consideration of the sum of TEN and NO/100 DOLLARS ($10.00), and other good and valuable considerations, receipt of which is hereby acknowledged, does hereby grant, bargain, transfer and convey to Trustee, its successors and assigns, all Grantor's interest in and to the real property described on Exhibit A attached hereto, lying and being situated in Brevard County, Florida.

TOGETHER WITH all appurtenances, privileges, rights, interest, dower, reversions, remainders and easements thereunto appertaining:

TO HAVE AND TO HOLD said real estate with the following powers and for the following uses and purposes, to wit:

1.  The Trustee is vested with full rights of ownership over the above described real estate and Trustee is specifically granted and given the power and authority:

    (a)  To protect and conserve said real estate and improvements located thereon and to pay the taxes assessed thereon;

    (b)  To sell said real estate, for cash or credit, at public or private sale, to exchange said real estate for other property and to grant options to sell said property, and to determine the price and terms of sales, exchange and options;

    (c)  To execute leases and subleases for terms as long as 20 years, to subdivide or improve said real estate and tear down or alter improvements, to grant easements, give consent and make contracts relating to said real estate or its use and to release or dedicated any interest in said real estate:

    (d)  To borrower money and to mortgage, pledge or encumber any or all of the said real estate to secure payment thereof;

    (e)  To manage, control and operate said real estate, to collect the rents, issues and profits, to pay all expenses thereby incurred, and in addition, to manage and operate any business that may now or hereafter be operated and maintained on said real estate, and in general, to exercise any powers authorized by law;

    (f)  The Trustee's liability hereunder, under the Trust Agreement or by operation of law to any persons firm or corporation is limited to the trust assets and the Trustee shall not become individually or personally obligated in any manner related thereto;

2.  The Trustee shall hold said real estate in accordance with the terms and conditions of that certain Homemakers Land Trust Agreement dated September 13, 2023.

3.  No purchaser, grantee, mortgagee, lessee, assignee or any other person dealing with the Trustee need see to the application of any proceeds of any sales, lease, mortgage or pledge, but the receipt of the Trustee shall be a complete discharge and acquittance therefor. Any and all persons, including but not limited to grantees, mortgagees, lessees, transferees and assigns dealing with said Trustee need not inquire into the identification or status of any beneficiary under this deed or any collateral

**No documentary excise taxes are due on the recording of this instrument.**

**EXHIBIT 2-A**

instrument nor inquire into or ascertain the authority of such Trustee to act in and exerci[...] of adequacy or disposition of any consideration paid to the Trustee nor inquire into the provisions of said unrecorded Trust Agreement and any amendments thereto collateral hereto.

4.      This conveyance is made in conformance with the provisions of Sections 689.071, Florida Statutes.

5.      By its acceptance of this conveyance, the Trustee covenants and agrees to do and perform the duties, acts and requirements upon it binding.

6.      Each and every power hereinabove set forth may be exercised by any Trustee. Any instrument executed by any Trustee or any act taken by any Trustee shall be binding upon the trust and all of the Trustees as fully and completely as if all Trustees had executed the said instrument or taken said action.

7.      A certificate signed by Trustee or any successor trustee under this instrument and acknowledged by him/her before a notary public shall be conclusive evidence upon all persons and for all purposes of the facts stated in the certificate representing the terms of this instrument and the identity of the Trustees who from time to time are serving under it.

**In Witness whereof,** the Grantor has signed and sealed this deed the date above written.

Signed, sealed and delivered in the presence of:

 

HOMEMAKERS REAL ESTATE, LLC
DocuSigned by:

By: _Horton S. Johnson_

_____
Witness 1 Signature

Horton S. Johnson, Manager

_____
Printed Name of Witness

_____
Witness 2 Signature

_____
Printed Name of Witness

State of Florida
County of Orange

The foregoing instrument was acknowledged before me by means of [_] physical presence or [_] online notarization, this 13th day of September 2023 by Horton S. Johnson who [_] is personally known or [_] has produced a driver's license as identification.

[Seal]

_____
Notary Public
Print Name: _____
My Commission Expires: _____

**No documentary excise taxes are due on the recording of this instrument.**

EXHIBIT A
LEGAL DESCRIPTION

(26 UNITS)

**EXHIBIT 2-A**

No documentary excise taxes are due on the recording of this instrument.

# EXHIBIT 2-B

## Trustee's Deed — As Recorded

*Recorded February 14, 2024*

Eight pages. CFN 2024031262; OR BK 9992, PG 2830–2837, Brevard County.

Two witnesses and a notarial acknowledgment now appear, certifying
"physical presence" and a "driver's license," dated September 13, 2023.
Pages 1 and 2 bear the DocuSign Envelope ID.

Exhibit A replaced with six pages of legal descriptions for 27 units.
Those six pages bear no DocuSign Envelope ID.

*Motion for Sanctions Under Federal Rule of Bankruptcy Procedure 9011*
In re Homemakers Real Estate, LLC
Case Nos. 6:25-bk-02685-GER and 6:25-bk-05570-GER

CFN 2024031262, OR BK 9992 Page 2830 Recorded 02/14/2024 at 03:34 PM Rachel M. Sadoff, Clerk of Courts, Brevard County Doc. D: $0.70

Case 6:25-bk-05570-GER Doc 290 Filed 07/13/26 Page 61 of 89

**EXHIBIT 2-B**

DocuSign Envelope ID: 9078288B-FE20-4A16-A668-110FB6D3929D

THIS INSTRUMENT PREPARED BY:

1980 N. Atlantic Ave
Suite 328
Cocoa Beach, FL 32931

## TRUSTEE'S DEED

THIS INDENTURE, made September 13, 2023, by and between Homemakers Real Estate, LLC, a Florida limited liability company, hereinafter referred to as Grantor, whose mailing address is 2875 S. ORANGE AVE, STE. 500 #6409, ORLANDO, FL 32806 and CRESCENT SOUND LTD, Trustee, of Tiered Land Trust, u/t/d September 13, 2023, hereinafter referred to as Grantee, whose post office address is 1627 East Vine Street, Suite E, Kissimmee FL 34744.

(Wherever used the term "Grantor" and "Grantee" shall include singular and plural, heirs, legal representative, and assigns of individuals, and the successors and assigns of corporation, wherever the context so admits or requires.)

## WITNESSETH

Grantor, in consideration of the sum of TEN and NO/100 DOLLARS ($10.00), and other good and valuable considerations, receipt of which is hereby acknowledged, does hereby grant, bargain, transfer and convey to Trustee, its successors and assigns, all Grantor's interest in and to the real property described on Exhibit A attached hereto, lying and being situated in Brevard County, Florida.

TOGETHER WITH all appurtenances, privileges, rights, interest, dower, reversions, remainders and easements thereunto appertaining:

TO HAVE AND TO HOLD said real estate with the following powers and for the following uses and purposes, to wit:

1.  The Trustee is vested with full rights of ownership over the above described real estate and Trustee is specifically granted and given the power and authority:
    (a) To protect and conserve said real estate and improvements located thereon and to pay the taxes assessed thereon;
    (b) To sell said real estate, for cash or credit, at public or private sale, to exchange said real estate for other property and to grant options to sell said property, and to determine the price and terms of sales, exchange and options;
    (c) To execute leases and subleases for terms as long as 20 years, to subdivide or improve said real estate and tear down or alter improvements, to grant easements, give consent and make contracts relating to said real estate or its use and to release or dedicated any interest in said real estate:
    (d) To borrower money and to mortgage, pledge or encumber any or all of the said real estate to secure payment thereof;
    (e) To manage, control and operate said real estate, to collect the rents, issues and profits, to pay all expenses thereby incurred, and in addition, to manage and operate any business that may now or hereafter be operated and maintained on said real estate, and in general, to exercise any powers authorized by law;
    (f) The Trustee's liability hereunder, under the Trust Agreement or by operation of law to any persons firm or corporation is limited to the trust assets and the Trustee shall not become individually or personally obligated in any manner related thereto;

2.  The Trustee shall hold said real estate in accordance with the terms and conditions of that certain Homemakers Land Trust Agreement dated September 13, 2023.

3.  No purchaser, grantee, mortgagee, lessee, assignee or any other person dealing with the Trustee need see to the application of any proceeds of any sales, lease, mortgage or pledge, but the receipt of the Trustee shall be a complete discharge and acquittance therefor. Any and all persons, including but not limited to grantees, mortgagees, lessees, transferees and assigns dealing with said Trustee need not inquire into the identification or status of any beneficiary under this deed or any collateral

No documentary excise taxes are due on the recording of this instrument.

**EXHIBIT 2-B**

DocuSign Envelope ID: 90782888-FE20-4A15-A658-110FB8D3929D

instrument nor inquire into or ascertain the authority of such Trustee to act in and exercise the powers granted by this deed or of adequacy or disposition of any consideration paid to the Trustee nor inquire into the provisions of said unrecorded Trust Agreement and any amendments thereto collateral hereto.

4.    This conveyance is made in conformance with the provisions of Sections 689.071, Florida Statutes.

5.    By its acceptance of this conveyance, the Trustee covenants and agrees to do and perform the duties, acts and requirements upon it binding.

6.    Each and every power hereinabove set forth may be exercised by any Trustee. Any instrument executed by any Trustee or any act taken by any Trustee shall be binding upon the trust and all of the Trustees as fully and completely as if all Trustees had executed the said instrument or taken said action.

7.    A certificate signed by Trustee or any successor trustee under this instrument and acknowledged by him/her before a notary public shall be conclusive evidence upon all persons and for all purposes of the facts stated in the certificate representing the terms of this instrument and the identity of the Trustees who from time to time are serving under it.

In Witness whereof, the Grantor has signed and sealed this deed the date above written.

Signed, sealed and delivered in the presence of:

HOMEMAKERS REAL ESTATE, LLC

By: _Horton S. Johnson_

Horton S. Johnson, Manager

_Witness 1 Signature_

Gabrielle Milotte - 1650 Sand Lake Rd Orlando, FL 32809
Printed Name of Witness + Address

_Witness 2 Signature_

Anthony Amodeo - 4998 Dockside Dr. Orlando, FL 32822
Printed Name of Witness + Address

State of Florida
County of Orange

The foregoing instrument was acknowledged before me by means of [✓] physical presence or [ ] online notarization, this 13th day of September 2023 by Horton S. Johnson who [ ] is personally known or [✓] has produced a driver's license as identification.

[Seal]

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary Public
Print Name: Janelle Morea
My Commission Expires: 1/5/2025

No documentary excise taxes are due on the recording of this instrument.

**EXHIBIT 2-B**

EXHIBIT A

LEGAL DESCRIPTION

The land referred to herein below is situated in the County of BREVARD, State of FL, and described as follows:

Condominium Unit 103, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 104, CAPE CROSSING, a Condominium, together with an undivided interest in the time elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 107, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 202, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 203, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 205, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 206, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 207, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 303, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 305, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

EXHIBIT 2-B

Condominium Unit 307, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 402, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 403, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 404, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 407, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 503, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 504, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 505, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 507, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

**EXHIBIT 2-B**

Building #2 Unit 101

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, Public Records of Brevard County, Florida, and being more particularly described as follows:

Commence at the intersection of the Westerly right-of-way line of North Courtenay Parkway and the South Property Line of the Canaveral Port Authority (described as the Point-of-Beginning in Official Records Book 6212, Page 2393, aforesaid Public Records); thence S79°58'00"W, along the South line of the Canaveral Port Authority, a distance of 58.85 feet; thence S10°02'00"E, perpendicular to said South line of the Canaveral Port Authority, a distance of 121.30 feet to the Point-of-Beginning; thence continue S10°02'00"E, a distance of 52.67 feet; thence S79°58'00"W, a distance of 21.00 feet; thence N10°02'00"W, a distance of 70.00 feet; thence N79°58'00"E, a distance of 12.33 feet; thence S10°02'00"E, a distance of 17.33 feet; thence N79°58'00"E, a distance of 8.67 feet to the Point-of-Beginning.


Building #2 Unit 102

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, Public Records of Brevard County, Florida, and being more particularly described as follows:

Commence at the intersection of the Westerly right-of-way line of North Courtenay Parkway and the South Property Line of the Canaveral Port Authority (described as the Point-of-Beginning in Official Records Book 6212, Page 2393, aforesaid Public Records); thence S79°58'00"W, along the South line of the Canaveral Port Authority, a distance of 79.85 feet; thence S10°02'00"E, perpendicular to said South line of the Canaveral Port Authority, a distance of 103.97 feet to the Point-of-Beginning; thence continue S10°02'00"E, a distance of 70.00 feet; thence S79°58'00"W, a distance of 20.67 feet; thence N10°02'00"W, a distance of 52.67 feet; thence N79°58'00"W, a distance of 8.33 feet; thence N10°02'00"W, a distance of 17.33 feet; thence N79°58'00"E, a distance of 12.33 feet to the Point-of-Beginning.

**EXHIBIT 2-B**

The Land is described as follows:
211 Ivory Coral Lane, Unit [0]
Merritt Island, FL 32953

Parcel 1:
Building #5 Unit 101

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, Public Records of Brevard County, Florida, and being more particularly described as follows:

Commence at the intersection of the Westerly right-of-way line of North Courtenay Parkway and the South Property Line of The Canaveral Port Authority (described as the Point-of-Beginning in Official Records Book 6212, Page 2393, aforesaid Public Records); thence South 79 degrees 58 minutes 00 seconds West, along the South Line of the Canaveral Port Authority, a distance of 172.97 feet to a point; thence continuing along said South property line South 82 degrees 14 minutes 00 seconds West, a distance of 289.71 feet; thence South 07 degrees 46 minutes 00 seconds East, perpendicular to said South line of the Canaveral Port Authority, a distance of 148.30 feet to the POINT-OF-BEGINNING; thence continue South 07 degrees 46 minutes 00 seconds East, a distance of 52.67 feet; thence South 82 degrees 14 minutes 00 seconds West, a distance of 21.00 feet; thence North 07 degrees 46 minutes 00 seconds West, a distance of 70.00 feet; thence North 82 degrees 14 minutes 00 seconds East a distance of 12.33 feet; thence South 07 degrees 46 minutes 00 seconds East, a distance of 17.33 feet; thence North 82 degrees 14 minutes 00 seconds East a distance of 8.67 feet to the POINT-OF-BEGINNING.

The Land is described as follows:
211 Ivory Coral Lane, Unit 103
Merritt Island, FL 32953

Parcel 2:
Building #5 Unit 103

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, Public Records of Brevard County, Florida, and being more particularly described as follows:

Commence at the intersection of the Westerly right-of-way line of North Courtenay Parkway and the South Property Line of The Canaveral Port Authority (described as the Point-of-Beginning in Official Records Book 6212, Page 2393, aforesaid Public Records); thence South 79 degrees 58 minutes 00 seconds West, along the South Line of the Canaveral Port Authority, a distance of 172.97 feet to a point; thence continuing along said South property line South 82 degrees 14 minutes 00 seconds West, a distance of 331.38 feet; thence South 07 degrees 46 minutes 00 seconds East, perpendicular to said South line of the Canaveral Port Authority, a distance of 148.30 feet to the POINT-OF-BEGINNING; thence continue South 07 degrees 46 minutes 00 seconds East, a distance of 52.67 feet; thence South 82 degrees 14 minutes 00 seconds West, a distance of 20.67 feet; thence North 07 degrees 46 minutes 00 seconds West, a distance of 70.00 feet; thence North 82 degrees 14 minutes 00 seconds East a distance of 12.33 feet; thence South 07 degrees 46 minutes 00 seconds East, a distance of 17.33 feet; thence North 82 degrees 14 minutes 00 seconds East a distance of 8.33 feet to the POINT-OF-BEGINNING.

EXHIBIT 2-B

Building #7 Unit 101

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, public records of Brevard County, Florida, and being more particularly described as follows:

Commence at the Southwest corner of aforesaid Section 11, Township 24 South, Range 36 East (Department of Natural Resources Certified Section Corner No. 22981 C); thence N00° 27'47"W, along the West line of said Section 11, a distance of 126.39 feet to a 5/8 inch iron rod stamped D.O.T marking the intersection of the North right-of-way line of Marine Harbor Drive at the Southwest corner of the lands as described in Official Records Book 6890, Page 2520, aforesaid public records of Brevard County, Florida; thence continue N00°27'47"W, along said West line of Section 11, a distance of 199.41 feet; thence N89°32'13"E, perpendicular to said line, a distance of 114.00 feet to the point-of-beginning; thence continue N89°32'13"E, a distance of 70.00 feet; thence N00°27'47"W, a distance of 21.00 feet; thence S89°32'13"W, a distance of 52.67 feet; thence S00°27'47"E, a distance of 8.67 feet; thence S89°32'13"W, a distance of 17.33 feet; thence S00°27'47"E, a distance of 12.33 feet to the point-of-beginning.

Building #7 Unit 103

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, public records of Brevard County, Florida, and being more particularly described as follows:

Commence at the Southwest corner of aforesaid Section 11, Township 24 South, Range 36 East (Department of Natural Resources Certified Section Corner No. 22981 C); thence N00° 27'47"W, along the West line of said Section 11, a distance of 126.39 feet to a 5/8 inch iron rod stamped D.O.T marking the intersection of the North right-of-way line of Marine Harbor Drive at the Southwest corner of the lands as described in Official Records Book 6890, Page 2520, aforesaid public records of Brevard County, Florida; thence continue N00°27'47"W, along said West line of Section 11, a distance of 157.74 feet; thence N89°32'13"E, perpendicular to said line, a distance of 131.33 feet to the point-of-beginning; thence continue N89°32'13"E, a distance of 52.67 feet; thence N00°27'47"W, a distance of 21.00 feet; thence S89°32'13"W, a distance of 70.00 feet; thence S00°27'47"E, a distance of 12.33 feet; thence N89°32'13"E, a distance of 17.33 feet; thence S00°27'47"E, a distance of 8.67 feet to the point-of-beginning.

**EXHIBIT 2-B**

Building #8 Unit 101

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, public records of Brevard County, Florida, and being more particularly described as follows:

Commence at the Southwest corner of aforesaid Section 11, Township 24 South, Range 36 East (Department of Natural Resources Certified Section Corner No. 22981 C); thence N00° 27'47"W, along the West line of said Section 11, a distance of 126.39 feet to a 5/8 inch iron rod stamped D.O.T marking the intersection of the North right-of-way line of Marine Harbor Drive at the Southwest corner of the lands as described in Official Records Book 6890, Page 2520, aforesaid public records of Brevard County, Florida; thence continue N00°27'47"W, along said West line of Section 11, a distance of 121.74 feet; thence N89°32'13"E, perpendicular to said line, a distance of 114.00 feet to the point-of-beginning; thence continue N89°32'13"E, a distance of 70.00 feet; thence N00°27'47"W, a distance of 21.00 feet; thence S89°32'13"W, a distance of 52.67 feet; thence S00°27'47"E, a distance of 8.67 feet; thence S89°32'13"W, a distance of 17.33 feet; thence S00°27'47"E, a distance of 12.33 feet to the point-of-beginning.

Building 8 Unit 104

A PARCEL OF LAND LYING IN SECTION 11, TOWNSHIP 24 SOUTH, RANGE 36 EAST, TALLAHASSEE BASE MERIDIAN, BREVARD COUNTY, FLORIDA, BEING A PART OF THE LANDS AS DESCRIBED IN OFFICIAL RECORDS BOOK 6890, PAGE 2520, PUBLIC RECORDS OF BREVARD COUNTY, FLORIDA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE SOUTHWEST CORNER OF AFORESAID SECTION 11, TOWNSHIP 24 SOUTH, RANGE 36 EAST (DEPARTMENT OF NATURAL RESOURCES CERTIFIED SECTION CORNER NO. 22981 C) THENCE N00°27'47"W, ALONG THE WEST LINE OF SAID SECTION 11, A DISTANCE OF 126.39 FEET TO A ⅝ INCH IRON ROD STAMPED D.O.T MARKING THE INTERSECTION OF THE NORTH RIGHT-OF-WAY LINE OF MARINE HARBOR DRIVE AT THE SOUTHWEST CORNER OF THE LANDS AS DESCRIBED IN OFFICIAL RECORDS BOOK 6890, PAGE 2520, AFORESAID PUBLIC RECORDS OF BREVARD COUNTY, FLORIDA THENCE CONTINUE N00°27'47"W, ALONG SAID WEST LINE OF SECTION 11, A DISTANCE OF 59.41 FEET; THENCE N89°32'13"E, PERPENDICULAR TO SAID LINE, A DISTANCE OF 131.33 FEET TO THE POINT-OF-BEGINNING; THENCE CONTINUE N89°32'13"E, A DISTANCE OF 52.67 FEET; THENCE N00°27'47"W, A DISTANCE OF 21.00 FEET; THENCE S89°32'13"W, A DISTANCE OF 70.00 FEET; THENCE S00°27'47"E, A DISTANCE OF 12.33 FEET; THENCE N89°32'13"E, A DISTANCE OF 17.33 FEET; THENCE S00°27'47"E, A DISTANCE OF 8.67 FEET TO THE POINT-OF-BEGINNING.

CONTAINING 1319.8 SQUARE FEET, MORE OR LESS, AND BEING SUBJECT TO ANY EASEMENTS AND/OR RIGHTS-OF-WAY OF RECORD.

# EXHIBIT 3

## Demonstrative — The Assignment of Membership Units

The jurat of January 9, 2024 (Doc. 12, Ex. C)
compared to the record of what occurred
(Doc. 48-4 — verified appendix)

*Motion for Sanctions Under Federal Rule of Bankruptcy Procedure 9011*
In re Homemakers Real Estate, LLC
Case Nos. 6:25-bk-02685-GER and 6:25-bk-05570-GER

**EXHIBIT 3**

## The Assignment Was "Notarized" by Email — Not in Mr. Johnson's Presence
### Assignment of Membership Units, Jan. 9, 2024 — Homemakers Real Estate, LLC

**MR. TIMKO'S CLAIM — Omnibus Objection (Doc. 93):**

an "unequivocal written assignment of Johnson's membership interests to a trust"; the notary Morea "confirms that any signature that she notarized for Johnson was actually his signature"; and "Johnson does not dispute" signing it — the Assignment is presented as a valid, notarized instrument on which the Court should rely.

### WHAT THE JURAT CERTIFIES
#### Assignment — Doc. 12, Ex. C (Jan. 9, 2024)

- ☑ Mr. Johnson "sworn to ... and subscribed before me by ... **physical presence**"

- ☑ Appeared before notary Janelle Morea, Orange County, Florida

- ☑ **"Produced Identification"** — a driver's license

- ☑ Presented as a valid, self-proving notarized instrument conveying Mr. Johnson's units

> **MR. TIMKO RELIES ON THIS AS A VALID NOTARIZATION**
>
> Mr. Timko's Omnibus Objection tells the court the notary "confirms that any signature that she notarized for Johnson was actually his signature," and that "Johnson does not dispute" signing it.
>
> **A jurat certifies a signing that occurred before the notary.**



**≠**

**PHYSICAL PRESENCE NEVER HAPPENED**

### WHAT THE RECORD SHOWS
#### Mr. Amodeo's verified appendix — Doc. 48-4

- ✗ Mr. Johnson signed **by hand — no notary present**

- ✗ Jan. 9, 2024, 3:28 PM — Gabby Milotte emailed the signed assignment to notary Morea: *"please see the attached. This is the document to notarize"* (cc Alison Pitkanen)

- ✗ Morea notarized the emailed copy — never met Mr. Johnson

- ✗ Mr. Johnson: she "did not check my identification nor ever spoke with me"

- ✗ The signer never appeared — in person or by audio-video

- ✗ **No original of the Assignment has been produced**

> **A FALSE JURAT — AND NO ORIGINAL**
>
> The certificate swears to a personal appearance and an ID check that never occurred, and no original has been produced. A false jurat authenticates nothing; it is void.

---

The jurat swears Mr. Johnson appeared in person; the record shows the notary was simply emailed the document.

Instead of the validly notarized assignment Mr. Timko represents to the court, the record shows a fabricated notarization.

**A reasonable inquiry into the record would have exposed it.**

# EXHIBIT 3-A

## Affidavit of Horton S. Johnson

*Concerning False Notary Attestation — executed November 20, 2025*

"Janelle Morea was not physically present to witness, did not check my identification nor ever spoke with me about it."

"The attestation that I was present, or that my identity was verified, is false."

Doc. 48-4 at 13–14 (Mr. Amodeo's verified appendix).

*Motion for Sanctions Under Federal Rule of Bankruptcy Procedure 9011*
In re Homemakers Real Estate, LLC
Case Nos. 6:25-bk-02685-GER and 6:25-bk-05570-GER

## HORTON S JOHNSON AFFIDAVIT CONCERNING FALSE NOTARY ATTESTATION

I, Horton S Johnson, under penalty of perjury, depose and state as follows:

1. My signature appears on documents allegedly attested by notary Janelle Morea related to the Dixon loan documents in the matter of Homemakers Real Estate LLC, Case No. 625-bk-05570-GER. Specifically, in Document 7 filed by Attorney James Timko, the following documents contain an electronic signature that purports to be mine, but bears the false notarial attestations by Janelle Morea:

    a. A Tiered Land Trust document at Doc 7 at pages 34-38, contains a notarization of my purported electronic signature. The alleged notary, Janelle Morea, was not physically present to witness my signature, she did not check my identification and did not conduct an audio-visual recording.

    b. A Loan Agreement related to Tiered Capital, Inc. loan at Ex B pages 26-28, contains a notarization of my supposedly electronic signature, wherein I allegedly signed on behalf of 3 entities. If I did sign these, Janelle Morea was not physically present to witness, did not check my identification, and did not conduct an audio-visual witnessing or recording.

    c. An Assignment of Membership Interest document at Doc 7 Ex A Page 43, containing a notarization of my signature, for which Janelle Morea was not physically present to witness, did not check my identification nor ever spoke with me about it. Attachment "1" is an email where the unnotarized Assignment was emailed to notary to falsely attest to my presence.

2. Although Janelle Morea was a licensed notary public in Florida at the time of attestation, she was not authorized or licensed to perform electronic notarization or to attest electronic signatures pursuant to Florida law.

3. I was not physically present with the notary during the electronic execution of said documents.

4. I did not participate in any audio-visual or remote meetings with the notary to verify my identity, witness my signing, or to record or memorialize the execution of these documents.

*H S J*

**EXHIBIT 3-A**

5. At no time did the notary require or obtain the proper identification to authenticate my identity, as required by Florida Statutes for remote electronic notarization.

6. I did not authorize the notary to apply a notarial attestation.

7. The attestation that I was present, or that my identity was verified, is false. The purported notarization did not comply with the procedures required for remote or electronic notarization under Florida law (including Fla. Stat. §§ 117.201-117.305).

8. No audio-visual recording of the signing was created or retained by the notary.

9. I make this affidavit to formally state that the notarization and attestation are not genuine and were executed without my presence, without proper verification, and by a notary not licensed or authorized to perform electronic notarization; thus, the documents are invalid and void under Florida law.

I declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct.

Executed this 20th day of November 2025, at Orlando, Florida.

Signature: _Horton S. Johnson_

Printed Name: Horton S Johnson

**EXHIBIT 3-A**

# EXHIBIT 3-B

## Assignment of Membership Units — As Signed

*Signed by hand at Orlando, Florida, January 9, 2024*

Mr. Johnson's signature appears. The notarial block is entirely blank:

No county.  No notary name, signature, or seal.  No commission number.
Neither "physical presence" nor "online notarization" is checked.
Neither "personally known" nor "produced identification" is checked.

Doc. 48-4 at 15.

*Motion for Sanctions Under Federal Rule of Bankruptcy Procedure 9011*
In re Homemakers Real Estate, LLC
Case Nos. 6:25-bk-02685-GER and 6:25-bk-05570-GER

## Assignment of Membership Units

I, Horton S. Johnson, as the sole owner and holder of all of the issued and outstanding membership units of Homemaker Real Estate, LLC, and in consideration of the loan accommodations made by PEDIXON, LLC, a Florida limited liability company, do now assign the following unto Crescent Sount, Ltd., as Trustee of the Tiered Land Trust u/t/d 9/13/2023: all of my right, title and interest in and to all of the issued and outstanding membership units of Homemakers Real Estate, LLC, a Florida limited liability company.

I have executed this assignment in Orlando, Florida on this 9th day of January 2024.

_Horton S. Johnson_
Horton S. Johnson
Manager of
Homemakers Real Estate, LLC.

STATE OF FLORIDA
COUNTY OF _____

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of _____ physical presence or ___ online notarization on January 9, 2024, by Horton S. Johnson.

_____
Notary Public; State of Florida
Name: _____
        (Please print or type)

Commission Number:
Commission Expires:

Notary: Check one of the following:
_____ Personally known OR
_____ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: _____

_HSJ_

**EXHIBIT 3-B**

# EXHIBIT 3-C

## "Janelle Pls Notarize"

*Email of January 9, 2024, 3:28 p.m.*

From Gabrielle Milotte to Janelle Morea — copy to Alison Pitkanen:

"Janelle, please see the attached. This is the document to notarize."

The signed Assignment was transmitted to the notary as an attachment.

Doc. 48-4 at 16.

*Motion for Sanctions Under Federal Rule of Bankruptcy Procedure 9011*
In re Homemakers Real Estate, LLC
Case Nos. 6:25-bk-02685-GER and 6:25-bk-05570-GER

5/13/25, 5:06 PM

Case 6:25-bk-05570-GER    Doc 290    Filed 07/13/26    Page 77 of 89
Case 6:25-bk-05570-GER    Doc 48-4    Filed 11/21/25    Page 16 of 46

CTO Holdings Inc Mail - Janelle Pls Notarize

# M Gmail

Douglass Pardo <contact@ctoholdings.net>

## Janelle Pls Notarize
1 message

gabbymilotte@icloud.com <gabbymilotte@icloud.com>                                    Tue, Jan 9, 2024 at 3:28 PM
To: Janelle <janelle@sherwoodconstruction.net>, Janelle Morea <jmorea@tieredcapital.com>
Cc: Alison Pitkanen <alisonpitkanen@gmail.com>


Janelle, please see the attached. This is the document to notarize. Thank
you.

Janelle Pls Notarize.pdf
2294K

**EXHIBIT 3-C**

# EXHIBIT 3-D

## Assignment of Membership Units — As Filed

*Filed by Mr. Timko as Exhibit "C" to the motion to dismiss*

The same instrument. The notarial block is now completed:

"Physical presence" checked. "Produced Identification: License."
Janelle Morea, Commission HH 077342, with seal affixed.

Doc. 12, Ex. C (voluntary case); reproduced at Doc. 48-4 at 17.

*Motion for Sanctions Under Federal Rule of Bankruptcy Procedure 9011*
In re Homemakers Real Estate, LLC
Case Nos. 6:25-bk-02685-GER and 6:25-bk-05570-GER

Case 6:25-bk-05570-GER    Doc 290    Filed 07/13/26    Page 79 of 89
Case 6:25-bk-05570-GER    Doc 48-4    Filed 11/21/25    Page 17 of 46

Case 6:25-bk-02685-GER    Doc 12    Filed 05/08/25    Page 11 of 12

#### Assignment of Membership Units

I, Horton S. Johnson, as the sole owner and holder of all of the issued and outstanding membership units of Homemaker Real Estate, LLC, and in consideration of the loan accommodations made by PEDIXON, LLC, a Florida limited liability company, do now assign the following unto Crescent Sound, Ltd., as Trustee of the Tiered Land Trust u/t/d 9/13/2023: all of my right, title and interest in and to all of the issued and outstanding membership units of Homemakers Real Estate, LLC, a Florida limited liability company.

I have executed this assignment in Orlando, Florida on this 9th day of January 2024.

_____
Horton S. Johnson
*Manager of*
*Homemakers Real Estate, LLC*

STATE OF FLORIDA
COUNTY OF Orange

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ___ physical presence or ___ online notarization on January 9, 2024, by Horton S. Johnson.

_____
Notary Public, State of Florida
Name: Janelle McSree
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Janelle Moran
Notary Public
State of Florida
Comm# HH077942
Expires 1/5/2025

Notary: Check one of the following:
___ Personally known OR
___ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: License

MSE

EXHIBIT
C

**EXHIBIT 3-D**

# EXHIBIT 4

## Demonstrative — The Morea Declaration

The declaration filed as Exhibit "B" to the Omnibus
Objection (Doc. 93) compared to the record before
Mr. Timko and the records of the State of Florida

*Motion for Sanctions Under Federal Rule of Bankruptcy Procedure 9011*
In re Homemakers Real Estate, LLC
Case Nos. 6:25-bk-02685-GER and 6:25-bk-05570-GER

**EXHIBIT 4**

# The Affidavit Mr. Timko Filed to Prove the Notarizations — Refuted by What He Already Had

Declaration of Janelle Morea, filed as Exhibit "B" to the Omnibus Objection (Doc. 93) to answer the charge of forgery

**MR. TIMKO'S USE — Omnibus Objection (Doc. 93 at 6–7):**

"Johnson's claim of a forgery leaves out some key facts. In the affidavit attached as Exhibit 'B,' the notary, Janelle Morea, ... confirms that any signature that she notarized for Johnson was actually his signature." Mr. Timko offered her sworn word to persuade the court that the notarizations were valid. Rule 9011 asks only what a reasonable inquiry would have shown him.

| WHAT MS. MOREA SWORE | WHAT MR. TIMKO ALREADY HAD | WHAT A REASONABLE INQUIRY |
|---|---|---|
| Declaration filed as Doc. 93, Ex. "B" | His own exhibit; the docket | WOULD HAVE SHOWN — public record |
| **¶ 3 — "Professional Record"**<br><br>"I have always performed my duties in strict compliance with the notarial laws of the State of Florida."<br><br>**A blanket claim of compliance —** covering the very period in which the State says she had no authority to notarize the deed remotely. | ✗ Mr. Timko's own Exhibit "C" — the DocuSign Certificate of Completion — shows the "Notary Events" row **blank**.<br><br>No notarial act, no audio-video session, and no identity-proofing occurred on the envelope. (Doc. 93, Ex. C.) | ✗ Fla. Dept. of State — Ms. Morea's Remote Online Notary authority **did not issue until 9/13/2025** — two years after she certified the DocuSigned Trustee's Deed of 9/13/2023.<br><br>A public record. Anyone could pull it. |
| **¶ 4 — "Authorization"**<br><br>"Any signature I notarized for Horton Johnson was actually his signature."<br><br>**The signature was never the issue.**<br>Mr. Johnson does not deny signing. He denies that any notarization ever took place. | ✗ Mr. Johnson's sworn affidavit, on the docket — the notary "did not check my identification nor ever spoke with me." (Doc. 48-4 at 13–14.)<br><br>The Jan. 9, 2024 email, on the docket: the signed Assignment was *emailed* to the notary — "*This is the document to notarize.*" (Doc. 48-4 at 16.) | ✗ The Assignment **as Mr. Johnson signed it** bears **no notarial act at all**: no county, no notary name, no seal, no commission number, and neither the presence box nor the identification box is checked. (Doc. 48-4 at 15.)<br><br>The instrument Mr. Timko filed is the same page with the jurat filled in. (Doc. 12, Ex. C.) |

**Mr. Timko did not need the notary's oath. He needed to read his own Exhibit "C," the docket, and the State's public notary records.**

Each was in his hands or a keystroke away, and each disproves the declaration he offered the court to answer the charge of forgery.

**A reasonable inquiry into the record before him would have exposed it.**

# EXHIBIT 4-A

## Declaration of Janelle Morea

*Filed by Mr. Timko as Exhibit "B" to the Omnibus Objection*

Executed February 8, 2026.

"I have always performed my duties in strict compliance with the notarial laws of the State of Florida." (¶ 3)

"Any signature I notarized for Horton Johnson was actually his signature." (¶ 4)

Doc. 93 at 15–16 (voluntary case).

*Motion for Sanctions Under Federal Rule of Bankruptcy Procedure 9011*
In re Homemakers Real Estate, LLC
Case Nos. 6:25-bk-02685-GER and 6:25-bk-05570-GER

## DECLARATION OF JANELLE MOREA

I, Janelle Morea, under penalty of perjury, declare that I have personal knowledge of all statements contained herein and state as follows:

1. **Employment**: From approximately September 2020 through April 2024, I was a full-time employee of Tiered Capital, Inc. and its subsidiary, Sherwood Construction, Inc., serving as an Executive Assistant, certified paralegal, and Office Manager. I was never employed by Alison Pitkanen or her law firm.

2. **Notary Certification and Insurance**: My Florida Notary Public certification and the required surety bond and insurance were paid for and maintained by my employer, Sherwood Construction, Inc. My commission remained valid and in good standing from January 2022 until its expiration on January 5, 2025.

3. **Professional Record**: In my years of service as a Notary Public, I have never been the subject of any complaint, inquiry, or disciplinary action regarding a notarial act. To the best of my knowledge, I have always performed my duties in strict compliance with the notarial laws of the State of Florida.

4. **Authorization and Reporting**: Every document I notarized related to the numerous loans made and/or guaranteed to or for the benefit of Tiered Capital, Inc., Sherwood Construction, Inc., Martin C. Flynn, Jr. or Horton Johnson, was done with the express permission and under the direction of Martin C. Flynn, Jr. or Horton Johnson. Any signature I notarized for Martin C. Flynn, Jr. was actually his signature. Any signature I notarized for Horton Johnson was actually his signature.

   During my employment, I reported exclusively to Martin C. Flynn, Jr., Horton Johnson, or the CFO, Ken Jones.

5. **Direction Regarding Amodeo**: I was specifically directed by Martin C. Flynn, Jr. to report to and take daily direction from Frank Amodeo regarding business affairs.

6. **Interactions with Counsel**: At no time did Alison Pitkanen ever ask me to falsify a notary seal, nor did she ever direct me to perform any "false attestation" or improper notarial act. I did not take directions from Ms. Pitkan

EXHIBIT

EXHIBIT 4-A

regarding notarizing signatures or any other matter related to my job. I would not have falsely notarized a document at her request, but no such request was ever made. Alison Pitkanen was the Closing Attorney and did not have the authority to direct my actions as an employee of the borrower. After I notarized documents, they were provided to Ms. Pitkanen at the direction of my employer. In my experience, Ms. Pitkanen never asked me to do anything inappropriate. To my knowledge, Ms. Pitkanen never took an action that was unethical.

**I declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct.**

**Executed on: February 8, 2026**

JANELLE MOREA

EXHIBIT 4-A

# EXHIBIT 4-B

## Florida Department of State — Notary Records

*Remote Online Notary authorization issued September 13, 2025*

Andrea I. Parishani, Section Supervisor, Division of Corporations,
Annual Reports, Fictitious Names & Notaries, November 25, 2025:

"Yes. That is correct."

Confirming Ms. Morea's RON authorization date of 9/13/2025 —
after the Trustee's Deed (9/13/2023) and after the Assignment (1/9/2024).

*Motion for Sanctions Under Federal Rule of Bankruptcy Procedure 9011*
In re Homemakers Real Estate, LLC
Case Nos. 6:25-bk-02685-GER and 6:25-bk-05570-GER

**mcflynnjr@gmail.com**

| | |
|---|---|
| **From:** | NotariesCorpHelp <NotariesCorpHelp@dos.fl.gov> |
| **Sent:** | Tuesday, November 25, 2025 6:03 PM |
| **To:** | mcflynnjr@gmail.com |
| **Subject:** | RE: Notary Certification |

*Yes. That is correct.*

*Andrea I. Parishani*
*Section Supervisor –*
*Florida Dept. of State*
*Division of Corporations*
*Annual Reports, Fictitious Names, & Notaries*

**From:** mcflynnjr@gmail.com <mcflynnjr@gmail.com>
**Sent:** Monday, November 24, 2025 12:14 PM
**To:** NotariesCorpHelp <NotariesCorpHelp@dos.fl.gov>
**Subject:** RE: Notary Certification

EMAIL RECEIVED FROM EXTERNAL SOURCE

The attachments/links in this message have been scanned by Proofpoint.

Thank you Andrea.

Can you tell me when Ms. Morea became authorized for Remote Online Notarization (RON)? I am showing 9/13/2025 from Sunbiz (attached). Is that
correct?

Thanks,

1

**EXHIBIT 4-B**

Marty

**From:** NotariesCorpHelp <NotariesCorpHelp@dos.fl.gov>
**Sent:** Monday, November 24, 2025 9:45 AM
**To:** mcflynnjr@gmail.com
**Subject:** RE: Notary Certification

*Please see below:*

| Commissions | No. | Curre | Trx | Date | Name | Sex | Certificate | Status | Issued | Expiration |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | N | NEW | 01/19/2016 | MOREA, JANELLE | F | FF 951224 | REN | 01/19/2016 | 01/18/2020 |
| | 2 | N | REN | 01/06/2021 | Morea, Janelle | F | HH 77342 | REN | 01/06/2021 | 01/05/2025 |
| ▶ | 3 | Y | REN | 12/27/2024 | Morea, Janelle | F | HH 624124 | ACT | 01/06/2025 | 01/05/2029 |

*Andrea I. Parishani*
*Section Supervisor –*
*Florida Dept. of State*
*Division of Corporations*
*Annual Reports, Fictitious Names, & Notaries*

**From:** mcflynnjr@gmail.com <mcflynnjr@gmail.com>
**Sent:** Saturday, November 15, 2025 2:09 PM
**To:** NotariesCorpHelp <NotariesCorpHelp@dos.fl.gov>
**Subject:** Notary Certification

EMAIL RECEIVED FROM EXTERNAL SOURCE

Good morning. I hope you are doing well. I am looking for confirmation of notary licensure for the notary below including time frames, type of license, and when she became certified to witness electronic signatures.

Janell Morea
Notary ID     1454347
Certificate    HH 624124

2

**EXHIBIT 4-B**

Thanks for all your help,

Marty Flynn
(407) 257-1418
Mcflynnjr@gmail.com

3

**EXHIBIT 4-B**

Division of Corporations



## Division of CORPORATIONS
*an official State of Florida website*

**Notary Public** | **Service Providers**                                   **Sign in**

↩ Search Results

### Remote Online Notary

| | | | |
|---|---|---|---|
| **First Name:** | Janelle | **Address:** | 1110 Conctance Rd, Apt 103 |
| **Middle Name:** | | **City:** | Orlando |
| **Last Name:** | Morea | **State:** | Florida |
| **Notary ID:** | 1454347 | **Zip:** | 32826 |
| **Commission:** | HH 624124 | **Email:** | jmorea74@gmail.com |
| **RON Issue Date:** | 9/13/2025 | **Phone:** | 9174183865 |
| **Expire Date:** | 1/5/2029 | | |

◀ ━━━━━━━━━━━━━━━━━━━━━━━━━━━ ▶

### Service Provider

| Name | Start Date | End Date |
|---|---|---|
| Docusign, Inc. | Aug 01, 2025 | |

### Secure Repository

| Name | Start Date | End Date | Preferred Contact |
|---|---|---|---|



Questions or comments? Please contact us
©2025 Florida Department of State. All rights reserved.

R.A. Gray Building
500 South Bronough St
Tallahassee FL, 32399-0250
850-245-6500

**EXHIBIT 4-B**