FILED ORL INTAKE- USBC
13 JUL 2026 PM3:09

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re: | Case No. 6:25-bk-05570-GER |
| **HOMEMAKERS REAL ESTATE, LLC,** | Chapter 11 |
| Debtor. | |
| / | |

## FRANK L. AMODEO'S MOTION TO APPROVE THE DISCLOSURE STATEMENT
## AND TO ESTABLISH SOLICITATION, VOTING, AND CONFIRMATION-HEARING PROCEDURES

Creditors decide whether a Chapter 11 plan is confirmed, and the Bankruptcy Code lets them decide only on adequate information. Section 1125 forbids the solicitation of votes until a disclosure statement approved by the court, after notice and a hearing, has gone out with the plan. 11 U.S.C. § 1125(b). The rules direct that the disclosure statement be filed with the plan, and both are filed contemporaneously with this motion: my Plan of Reorganization for the Debtor and the Disclosure Statement in its support. Fed. R. Bankr. P. 3016(b). This motion asks the court to approve the Disclosure Statement and to set the machinery of voting in motion: a record date, a ballot, a voting deadline, an objection deadline, and a confirmation hearing.

1

**1. Exclusivity has ended, and any party in interest may file and prosecute a plan.**

On September 2, 2025, an involuntary Chapter 11 petition commenced this case; the court entered the order for relief on May 21, 2026, on findings stated orally the day before. (Doc. 229); (Exhibit "A", May 20, 2026 Hearing Transcript). On June 11, 2026, the court directed the appointment of Lara Roeske Fernandez, Esquire, as Chapter 11 Trustee. The appointment of a trustee terminated the Debtor's exclusive period to file a plan, and the Bankruptcy Code then permits any party in interest — including a creditor — to file one. 11 U.S.C. § 1121(c)(1). I am one of the petitioning creditors; I hold an unsecured claim of $396. The Plan and Disclosure Statement I filed carry the full terms — eleven Classes, common secured treatment, a Recovery Trust administered by Trustee Fernandez, and payment in full of non-Insider unsecured claims — and this motion presumes familiarity with neither the Plan nor the Disclosure Statement.

**2. A plan eight weeks after the order for relief is not haste; for a seasonal business, it is barely on time.**

A creditor plan arriving this soon after the order for relief deserves an explanation, so I give one. The order for relief is less than eight weeks old, but the case is not, and neither is my familiarity with it. The involuntary petition was filed September 2, 2025, and I have been immersed in this case for the ten months since — as a petitioning creditor, in discovery, and through the contested trial that

2

produced the order for relief. Before that, I followed the First Bankruptcy Case, particularly from its dismissal and the reconsideration that followed. The Plan was not assembled in eight weeks. It was assembled from the events and documents of both cases, including the Schedules, the claims ledger, and the hearing records. Moreover, I assembled the verified accounting of the Dixon loans, and I have extensive personal knowledge of the events leading up to the filings.

Delay, by contrast, carries a cost the Estate cannot recover. The Debtor runs a seasonal vacation-rental business. Every month without a confirmed plan is another month of accruing arrearages and adequate-protection drift while the units rent under a cloud. Confirmation on the schedule this motion proposes gives the reorganized business time to reestablish operations and to emerge from bankruptcy in time for the 2027 season. Further delay in putting a plan before the creditors is, in my judgment, detrimental to the Debtor's ultimate reorganization. Waiting does not make the Disclosure Statement more adequate; it makes the reorganization difficult and impairs the value that could make all shareholders whole.

### 3. The Disclosure Statement contains adequate information under section 1125(a)(1).

A disclosure statement passes section 1125 when it supplies information of a kind, and in sufficient detail, that would enable a hypothetical reasonable investor typical of holders of claims or interests to make an informed judgment about the

3

plan. 11 U.S.C. § 1125(a)(1). The Disclosure Statement supplies each category courts customarily examine. The Disclosure Statement describes the Debtor's business and the history of the Cape Crossing Resort; the events that precipitated the bankruptcy, including the lending scheme, the diverted revenues, and the litigation now quantifying them; the Debtor's assets, drawn from the Schedules filed June 16, 2026 (real property of approximately $11,860,000 and substantial Causes of Action); the claims against the Estate, class by class, with the amounts asserted and the disputes identified; a liquidation analysis comparing Chapter 7 recoveries to Plan recoveries; financial projections supporting feasibility, including rental income of approximately $1,631,000 over the fifteen-month projection period of April 2027 through June 2028; the risk factors, including the candid disclosure of my own history; the means of implementation, including the Recovery Trust and the governance of the Reorganized Debtor; and the federal income tax caveat.

The Disclosure Statement also discloses what a reasonable investor would want flagged: that the claims of the Dixon-related entities are scheduled at zero and disputed; that two Rule 60 motions pending in the First Bankruptcy Case may move the operative avoidance dates back to May 5, 2025, as upside the Plan captures without depending on; and that I, and companies affiliated with my family, hold Class 9 claims treated identically to every other non-Insider unsecured

4

claim. Candor is part of adequate information, and the Disclosure Statement practices it.

**4. The court should set the disclosure hearing, and, on approval, fix the voting and confirmation schedule.**

Bankruptcy Rule 3017(a) directs the court to hold a hearing, on at least twenty-eight (28) days' notice under Rule 2002(b), to consider the disclosure statement and any objections. On approval, Rule 3017(c) authorizes the court to fix a record date and a deadline for the submission of ballots, and Rule 3017(d) directs the transmission of the approved disclosure statement, the plan, and the court-approved ballot to all creditors and interest holders entitled to vote. Ballots conforming to Official Form 314 and Local Rule 3018-1(a) — carrying the court's address and the Chapter 11 eBallot information — accompany this motion as Exhibit "C", one for each voting Class (Classes 1 through 11). Rule 3020(b)(1) governs objections to confirmation, and Rule 2002(b) requires twenty-eight (28) days' notice of the confirmation-objection deadline and the confirmation hearing. A proposed order accompanies this motion as Exhibit "B"; the dates are left for the court's calendar.

I will bear the cost of assembling and mailing the solicitation packages, and I will coordinate the mailing with the Chapter 11 Trustee so that creditors receive one coherent package rather than competing envelopes.

## RELIEF REQUESTED

Section 1125 entitles creditors to decide this case on adequate information, and the Disclosure Statement provides it. I ask the court to enter an order:

(a) setting a hearing to consider approval of the Disclosure Statement on at least twenty-eight (28) days' notice under Bankruptcy Rules 2002(b) and 3017(a);

(b) approving the Disclosure Statement as containing adequate information under 11 U.S.C. § 1125(a)(1);

(c) fixing a record date for determining the holders of claims and interests entitled to vote, under Bankruptcy Rule 3017(c);

(d) approving the form of ballot (Exhibit "C") conforming to Official Form 314 and Local Rule 3018-1 and fixing a deadline for ballots to be received by the Clerk;

(e) directing transmission of the approved Disclosure Statement, the Plan, and the ballots under Bankruptcy Rule 3017(d), with the mailing performed at my expense in coordination with the Chapter 11 Trustee;

(f) fixing a deadline for objections to confirmation under Bankruptcy Rule 3020(b)(1);

(g) scheduling the confirmation hearing under 11 U.S.C. § 1128; and

(h) granting such other relief as is just.

Respectfully submitted this 13th day of July, 2026.

Frank L. Amodeo
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32801@gmail.com
*Movant, pro se*

6

## CERTIFICATE OF SERVICE

I certify that on July _13_ , 2026, a true and correct copy of this motion was furnished by U.S. Mail and, where available, by electronic mail to the Chapter 11 Trustee, the United States Trustee, and the parties on the attached service list.

Frank L. Amodeo

# EXHIBIT "A"

Transcript of the May 20, 2026 Hearing
Before the Honorable Grace E. Robson

In re Homemakers Real Estate, LLC, Case No. 6:25-bk-05570-GER

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:25-bk-05570-GER
6:26-bk-01776-GER

IN RE:

HOMEMAKERS REAL ESTATE, LLC,

DEBTOR.

_____/

HEARING

| | |
|---|---|
| BEFORE: | THE HONORABLE GRACE E. ROBSON |
| DATE: | MAY 20, 2026 |
| TIME: | 11:00 A.M. - 11:35 A.M. |
| LOCATION: | UNITED STATES BANKRUPTCY COURT 400 WEST WASHINGTON STREET ORLANDO, FL 32801 |

REALTIME REPORTERS, INC.   407-884-4662
REALTIMERPRS@GMAIL.COM

A P P E A R A N C E S

APPEARING IN PERSON:

JAMES TIMKO, ESQUIRE, on behalf of Homemakers Real Estate

JUSTIN LUNA, ESQUIRE, on behalf of Mainstreet Community Bank

MATTHEW LEIBERT, ESQUIRE, on behalf of Homemakers Real Estate and Horton S. Johnson

LAWRENCE M. KOSTO, ESQUIRE, on behalf of IMQA Investments and CTO Holdings

CHRISTOPHER SMITH, ESQUIRE, on behalf of Tiered Capital

FRANK AMODEO, Pro Se

APPEARING BY ZOOM:

LINDSEY SAVASTANO, ESQUIRE, and
ELIZABETH A. WULFF, ESQUIRE, on behalf of Tamamoi and Carton Family Trust

ALSO PRESENT BY ZOOM:

LAUREN STRICKER, ESQUIRE, on behalf of Arvind Mahendru

INDEX

Ruling by the Court  ...........................7

Discussion held on 14-day period ..............31

    to resolve authority issue

Hearing set for June 9, 2026, at ..............38

    1:00 p.m.

CERTIFICATE OF REPORTER .......................39

REALTIME REPORTERS, INC.   407-884-4662
REALTIMERPRS@GMAIL.COM

PROCEEDINGS

THE CLERK:  All rise.  The United States Bankruptcy Court for the Middle District of Florida is now in session, the Honorable Grace E. Robson presiding.

THE COURT:  Okay.  Good morning.  Please be seated.  Let's call Case Number 25-5570, Homemakers Real Estate LLC; and Case Number 26-1776, also Homemakers Real Estate LLC.

Okay.  Mr. Timko?

MR. TIMKO:  James Timko for the Putative Debtor, Homemakers Real Estate.

THE COURT:  Mr. Luna?

MR. LUNA:  Good morning, Your Honor.  Justin Luna on behalf of Mainstreet Community Bank in both cases.

THE COURT:  Okay.

MR. LEIBERT:  Matt Leibert, also for Homemakers and for Horton S. Johnson.

THE COURT:  Mr. Kosto?

MR. KOSTO:  Good morning, Your Honor.  Larry Kosto for IMQA Investments and CTO Holdings.

THE COURT:  Okay.

MR. SMITH:  Your Honor, good morning.  My

name is Christopher Smith.  I filed an appearance this morning on behalf of Tiered Capital Incorporated.  I apologize that I could not get the Pacer account set up in time to e-file it.

THE COURT:  Okay.

MR. SMITH:  I don't know how the Court wants to treat that.

THE COURT:  Well, you're admitted to practice in the Middle District of Florida, yes?

MR. SMITH:  Since 1983.

THE COURT:  Okay.  So you can be here.  All right.

Mr. Amodeo.

MR. AMODEO:  Frank Amodeo, Pro Se, Your Honor.

THE COURT:  All right.  And then any other appearances in the courtroom?  So then let's turn to Zoom.  Ms. Savastano?

MS. SAVASTANO:  Good morning, Your Honor. Lindsey Savastano on behalf of Tamamoi and the Carton Family Trust.

THE COURT:  Okay.  And Ms. Wulff?

MS. WULFF:  Good morning again.  Elizabeth Wulff, also on behalf of Tamamoi and the Carton Family Trust.

THE COURT: Okay. So are each of you one for each case? Or, Ms. Wulff, are you going to handle the argument?

MS. WULFF: I'm just observing. Ms. Savastano will take care of any argument today.

THE COURT: Okay. Thank you.

MS. WULFF: Thanks.

THE COURT: All right. Ms. Stricker, are you here on this case?

MS. STRICKER: Yes, Your Honor. Thank you. Just in the Chapter 7 case, a limited appearance on behalf of -- as potential counsel to the Chapter 7 Trustee, Arvind Mahendra. Our firm hasn't been formally been retained, and only will be if the Chapter 7 case goes forward and is an asset case. But we're here today because (inaudible) the Chapter 7 case, as the Chapter 7 Trustee is in 341 meetings and could not be present today.

THE COURT: Okay. Gotcha. All right. Well, anyone else that wanted to make an appearance that did not already do so? No? Okay.

Well, before we talk about any of the

motions that are set, last time we were here I did indicate that I'd be announcing my oral ruling on the trial that we had in connection with Homemakers' motion to dismiss the case or to abstain. So I'll just -- I have my written ruling. So I'll read it into the record and then we can discuss the pending motions.

This case was commenced by the filing of an involuntary petition against Homemakers Real Estate LLC, which I will refer to as "Homemakers" or "Debtor." The involuntary petition was initially filed by Tiered Capital. Joinders were filed by Horton Johnson, Mr. Amodeo, CTO Holdings, and IMQA Investments Incorporated.

Homemakers filed a motion to dismiss the involuntary petition and also filed a motion to abstain, primarily arguing the case was filed in bad faith.

The petitioning creditors filed papers opposing dismissal and abstention. The Court conducted a trial on February 3rd and March 27, 2026, on the issue of bad faith, abstention, as well as whether the requirements for an involuntary petition were satisfied and an order for relief should be entered.

The Court also asked the parties to brief the issue of whether it's ruling in the first case, Case Number 25-2685, had any preclusive effect as part of this case, as well as whether the ruling in this case should impact the Chapter 7 petition that was filed on March 13, 2026, Case Number 26-1776.

Because the parties here are familiar with the individuals and entities involved, the Court will not go into any significant detail on who they are and their relationships with each other as part of this oral ruling, other than to say that this is an admittedly unusual circumstance where a trustee of a land trust was assigned the membership interest in the Debtor after default on a loan for which the Debtor is an obligor and that trustee is acting as the person in control of Homemakers, the Putative Debtor in this case.

The parties also dispute who has the right to control Homemakers. The Court has carefully considered the testimony of the witnesses and documentary evidence admitted at trial, the arguments of the parties, the record of the prior case and the Chapter 7 case, as well as reviewed precedent on the issues in making its ruling.

The Court will first address the Motion to Dismiss, then will address whether petitioning creditors met their burden for an entry of an order for relief and, third, whether the Court should abstain and dismiss the case.

The Motion to Dismiss argues the case should be dismissed based on the petitioning creditor's bad faith. The law presumes that petitioning creditors file an involuntary petition in good faith. This presumption can be overcome if the evidence demonstrating otherwise is shown by a preponderance of the evidence.

While not adopting any particular factors to make a bad faith determination, the Eleventh Circuit recognizes three tests that Courts use to analyze bad faith.

First is the improper purpose test where the Court considers whether there was any ill will or malice of the petitioning creditors in filing the petition against the Debtor.

Homemakers argues that Mr. Johnson's bad faith is evidenced by the filing of this involuntary case because Mr. Johnson was the one who authorized the first case where this Court found Mr. Johnson lacked the requisite authority

to commence that case.

In short, Homemakers argues that filing the involuntary petition ignores the Court's ruling from the first case.  Homemakers also argues that improper purpose is shown by the fact that the involuntary petition was filed by Tiered Capital, an entity that does not have a claim against Homemakers.

On the other hand, the petitioning creditors argue that the involuntary petition was filed for a proper purpose, namely to ensure a fair distribution of Homemakers' assets.

While there is a lot of ill will demonstrated between the individuals, it is not directed against Homemakers.  It is directed principally against Mr. Dixon and his entities who loaned money against which Homemakers pledged its 26 condos and townhomes as collateral.

Therefore, the Court does not find that the involuntary petition was filed for an improper purpose.

The second test is the improper use test where Courts consider whether the bankruptcy case is being used as a substitute for customary collection practice and petitioning creditors are

seeking to obtain a disproportionate advantage for themselves rather than protect against other creditors obtaining disproportionate advantages.

Homemakers argues this involuntary case is just being used to relitigate the Court's prior ruling, remove Mr. Dixon's control of Homemakers, and a way for guarantors of debt owed to Mr. Dixon's entity to litigate matters that belong in state court.

Homemakers also argues that the joinders by CTO and IMQA were strategic and not for the purpose of collecting a debt, and that Mr. Amodeo's joinder was solely so he could participate in the case.

While Tiered Capital was the initial petitioning creditor, it has ceased taking any action in the case, including failure -- failing to prosecute the involuntary petition.

The other petitioning creditors have indicated they would like this Court to determine the ownership issue. However, the Court finds their primary reason for the involuntary petition was for a proper purpose, namely to ensure a fair distribution of Homemakers' assets.

The third test is what I will refer to as a

Rule 11 test where Courts look at whether the petitioning creditors had both an objective and subjective basis to file the involuntary petition.

The subjective component is similar to the improper purpose test and looks to the petitioning creditor's motivations in filing the case.

The objective test looks to whether a petitioning creditor has conducted diligence before filing the involuntary petition, was there a reasonable basis in law in fact to file the petition.  In other words, would a reasonable person in the same circumstances have filed the involuntary petition under the same circumstances.

Homemakers' argument focuses on the alleged improper purpose and use of the involuntary petition to argue that the involuntary petition was filed as a way to relitigate this Court's prior rulings, litigate state court issues, and attempt to obtain control over Homemakers from Mr. Dixon.

The petitioning creditors argue this is not about obtaining control from Mr. Dixon, but about

ensuring fair distribution so that Mr. Dixon does not get a disproportionate share versus other creditors.

Homemakers is the owner of 26 condos and townhomes that is the subject -- that is subject to mortgage liens in favor of Mainstreet, Tamamoi, and Carton Family Trust. There's no dispute that Homemakers contributed these properties to a land trust that is controlled by Mr. Dixon and that, under the loan agreement that Homemakers signed, the rents would first go to Mr. Dixon, and any shortfall as to the mortgages or other expenses would be paid by the obligors on that loan.

There's also no dispute that, as provided under that loan agreement, Mr. Dixon has been retaining all of the rental income, despite the mortgagee's assignment of rent provisions that are prior in time to the loan with Mr. Dixon.

While there was testimony that certain operating expenses were being paid through a management company, it was not disputed that the lenders with the mortgages were not being paid.

So while there was also testimony from petitioning creditors that they wanted this Court

to determine the ownership of Homemakers, and there was certainly a lot of motion practice mentioning the ownership dispute, the Court finds the petitioning creditors' primary concern was ensuring payment of all creditors and not just Mr. Dixon.

Next, the Court will discuss whether the requirements of § 303 were met.

Involuntary bankruptcy cases may be commenced pursuant to § 303 by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, if such non-contingent undisputed claims aggregate at least $21,050 more than the value of any lien on the property of the Debtor securing such claims held by the holders of such claims, or if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable by one or more of such holders that hold in the aggregate at least $21,050 of such claims.

When analyzing involuntary cases filed under § 303, the petitioning creditor bears the burden

of establishing that it is a qualified creditor under § 303(b).

A qualified creditor is one whose claim is not contingent as to liability or subject of a bona fide dispute. Courts generally apply a burden shifting approach when determining whether a creditor's claim is subject to a bona fide dispute but where the petitioning creditor must first establish a prima facie case proving a bona fide dispute does not exist and, if done successfully, the burden shifts to the Putative Debtor to present evidence that there is a bona fide dispute.

These burdens must be satisfied by a preponderance of the evidence. The Bankruptcy Code does not define the phrase "bona fide dispute," but a majority of courts, including bankruptcy courts in Florida, apply an objective standard.

Under the standard, a claim is disputed if there is a genuine issue of material fact that bears upon the Debtor's liability to the petitioning creditor or a meritorious contention as to application of law to undisputed facts the claim is subject to a bona fide dispute.

Here, the petitioning creditors sought to establish that Mr. Johnson, Mr. Amodeo, CTO, and IMQA held claims that aggregate at least $21,050 more than the value of liens on Homemakers' properties.  The Court will briefly discuss each of the referenced petitioning creditor's claims.

First, Mr. Johnson.  Mr. Johnson filed a proof of claim, assigned Claim Number 5, asserting a general unsecured claim in the approximate amount of 2.6 million on an unsecured basis based on loans he allegedly made to Homemakers dating back to 2016.

Pursuant to Bankruptcy Rule 3002(f), a proof of claim filed in accordance with the Bankruptcy Rules is prima facie evidence of the claim's validity and amount.  While the proof of claim is prima facie evidence, the Court finds that Homemakers was able to demonstrate there was a bona fide dispute that the debt was not a true debt.

In the first case, which Mr. Johnson authorized the filing of, the bankruptcy schedules did not reflect any debt owed to Mr. Johnson.  At trial, while Mr. Johnson testified his debt was not equity, he also could

not provide any detail on what the terms of the loan were, and testified that the loan was contingent on Homemakers' ability to repay, and that he was hoping to get repaid.  No documents were admitted into evidence to substantiate the loans.

Based on the evidence admitted at trial, the Court finds Mr. Johnson's claim is subject to a bona fide dispute and he's not a qualified petitioning creditor.

Next, the Court will turn to Mr. Amodeo's claim.  As with Mr. Johnson's claim in the bankruptcy schedules of the first case, the schedules did not reflect any debt owed to Mr. Amodeo.  However, a proof of claim, Claim Number 1, was filed for Mr. Amodeo in this case as an unsecured claim in the amount of $396.04 for utility payments allegedly made on Homemakers' behalf.

Mr. Amodeo also testified that he or his sister Deborah made payment and that he was not repaid.

Homemakers did not present any evidence or argument that demonstrated that the claim was subject of a bona fide dispute as to liability or

amount.  Therefore, based upon the evidence admitted at trial, the Court finds Mr. Amodeo's claim is not subject of a bona fide dispute as to liability or amount, and he is a qualified petitioning creditor.

Next, the Court will turn to CTO's claim. As with Mr. Johnson and Mr. Amodeo's claims, the bankruptcy schedules of the first case did not reflect any debt owed to CTO.  CTO filed Claim Number 3-2 in this case, asserting a general unsecured claim in the amount of $303,853 based on bills allegedly paid on behalf of Homemakers.

Again, while the proof of claim is prima facie validity of the -- of validity and the amount of the claim, Homemakers was able to demonstrate that the claim was subject to a bona fide dispute.

The testimony by Mr. Amodeo was that Mr. Johnson loaned CTO money to pay Homemakers' bills, as evidenced by attachments to the proof of claim, which included wire transfers that allegedly went to pay Mainstreet Bank and other debts.

However, the testimony also revealed that the payments were made by Mr. Johnson from his

personal bank account and were not made by CTO.

According to this testimony, the expenses Mr. Johnson would pay would be added to the note CTO signed in favor of Mr. Johnson. Based on the evidence admitted at trial, the Court finds a bona fide dispute exists regarding the validity and amount of the debt owed to CTO by Homemakers because the debt is arguably owed to Mr. Johnson and not Homemakers.

Because CTO's claim is subject of a bona fide dispute, CTO is not a qualifying petitioning creditor.

Next, the Court will turn to IMQA's claim. The schedules in the first case showed an undisputed debt owed to IMQA in the amount of $379,000. IMQA filed a proof of claim, Claim Number 4, in this case based on alleged expenses paid by IMQA on Homemakers' behalf, as well as amounts due under an option agreement.

The proof of claim attaches an option agreement. Based on the testimony and documentary evidence admitted at trial, IMQA had an option to repurchase -- or to purchase a condominium unit for $350,000. That condominium unit was sold to Homemakers, and Homemakers

agreed to pay IMQA the 350,000-dollar option fee that was due from seller.

Testimony showed a promissory note was executed, but the document was not admitted into evidence.  Homemakers raised a dispute over whether the option fee was paid based on a closing statement that listed the option fee as a debit from seller, as well as a disbursement ledger showing various disbursements to IMQA in the days after the date of the closing.

However, Mr. Amodeo's testimony was credible that the disbursements on Exhibit 48 did not include the option fee owed to IMQA and that IMQA was not paid this fee as of the date of the involuntary petition.

The balance of the debt allegedly owed to IMQA related to bills paid by IMQA on behalf of Homemakers, but the testimony and documents were insufficient to render that part of IMQA's claim undisputed.

In sum, as to IMQA, the Court finds that IMQA has a qualifying claim of $350,000 and is a qualifying petitioning creditor.

In sum, Mr. Amodeo and IMQA have eligible claims for purposes of filing or joining the

involuntary petition as petitioning creditors.

So next the Court must determine whether the number of creditors determine whether the involuntary petition can stand based on there being only two eligible petitioning creditors.

First the Court will look at the -- looked at the claims filed in the involuntary case. There were five claims filed. The Court's addressed the persons who have filed proofs of claim other than an entity called WM Holdings.

The WM Holdings claim is prima facie evidence of the validity and amount of that claim under Rule 3001(f). As no evidence was presented to refute this proof of claim, the Court includes WM Holdings in the calculation of number of qualified creditors in addition to Mr. Amodeo and IMQA.

Next the Court reviews the Amended Rule 1003 disclosure filed by Homemakers at document number 54. This disclosure lists 12 claims excluding PEDIXON and ZPD, which does not include IMQA or Mr. Amodeo.

Of the 12 listed claims, Mainstreet Bank, the IRS, Old Republic National Title Co. can be considered unsecured debts that qualify because

the other claims listed are fully secured by liens on property belonging to Homemakers.

The Court will next look at the schedules filed in the first case. The schedules filed in the first case list 16 creditors, but the Court excludes the zero-dollar claim of Nelson Mullins, as well as those of PEDIXON, ZPD, and Crescent Sound, which the Court considers insiders.

This would leave Jetton Investments, Florida Department of Revenue, and IPFS as qualified creditors.

There was no dispute that Carton Family Trust and Tamamoi do not hold claims against Homemakers but hold liens against the property owned by Homemakers. Mr. Dixon testified he believed that the value of the units was approximately $300,000 per unit and that the -- this amount was approximately equivalent to the debt owed to Mainstreet Bank.

Petitioning creditors dispute the value and argue there is equity in the properties, but no party presented expert testimony on the valuation of the units owned by Homemakers.

So if the Court presumes that Mainstreet Bank, Tamamoi, Carton Family Trust, and Jetton

Investments are under secured and should count toward the number of creditors, there are a total of 11 unsecured or under-secured creditors as follows:  Mr. Amodeo, IMQA, Florida Department of Revenue, IPFS, IRS, Old Republic National Title, Mainstreet, Tamamoi, Carton Family Trust, Jetton Investments, and WM Holdings.

Although the Court notes that the debt to Tamamoi and Carton Family Trust are not technically obligations of the -- of Homemakers, the Court is presuming it for purposes of this ruling.

Based on the evidence presented and the record in this case, in the first case the Court finds there are less than 12 creditors with claims above the value of liens on Homemakers' property and one of the creditors is a petitioning creditor with undisputed debt in an amount exceeding the requisite threshold under the statute.  Therefore, § 303(b)is met.

Next, even if the creditor numerosity and dollar amounts are met, § 303(h) requires the entry of an order for relief after trial only if the Debtor is generally not paying such Debtor's debts as debts become due, unless such debts are

the subject of a bona fide dispute as to liability or amount, or within 120 days before the date of the filing of the petition a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the Debtor for purpose of enforcing a lien against such property, was appointed or took possession. Subparagraph 2 of § 303(h) does not apply here.

Therefore, the Court shall enter the order for relief only if Homemakers is not generally paying its debts as they become due. The burdening -- the burden is on the petitioning creditors to demonstrate that Homemakers is not generally paying its debts as they come due.

Courts apply a flexible totality of the circumstances test in determining whether a Debtor is generally not paying its debts, which focuses on the number of unpaid claims, the amount of the claims, and materiality of nonpayment, and the overall conduct of the Debtor's financial affairs.

There's no exact formula for determining whether an alleged Debtor is generally not paying

its debts. This test is subject to considerable flexibility and judicial discretion.

Here, there's no question that Homemakers is not paying its mortgage, condo and townhome association fees, or real property tax debts as they come due, and has not done so for quite some time.

All of the mortgage lenders filed foreclosure actions and have requested relief from the stay, which the Court has granted through the entry of a Judgment. Therefore, the Court finds the requirements of § 303 are satisfied.

However, even if the Court finds an involuntary petition was properly filed, it can abstain from hearing and dismiss the case.

Homemakers argues that abstention is appropriate because this case is being pursued purely as a litigation strategy with respect to ownership and control of Homemakers.

Abstention is recognized as an extraordinary remedy, and because a decision to abstain is not subject to review, Courts are cautious in their consideration of dismissing or suspending proceedings under this provision of the

Bankruptcy Code.

Under § 305 of the Bankruptcy Code, the Court can abstain and dismiss if the interests of both the creditors and the Debtor would be better served by dismissal and the moving party bears the burden.

There is a number of factors, none of -- no single one is determinative, but the Court must consider the interests of creditors and the Debtor. So I'll just briefly go over each of the factors.

So, one is the economy and efficiency of administration. The Court finds that proceeding in this Chapter 11 would bring all claims against the Debtor into a single forum for administration and allow for an orderly reorganization or a liquidation of assets. Bankruptcy better serves the Debtor and its creditors versus allowing a single creditor to disproportionately have an advantage on collection or recovery.

Another factor is whether another forum is available to protect the interests of parties or there's already a state court proceeding pending.

While there are a number of foreclosure lawsuits filing pending against Homemakers, these

actions do not protect unsecured creditors who do not have a lien on Debtor's property. While there's reference to a state court lawsuit to determine ownership interests in the Debtor, that's an action between non-debtors that can continue during the pendency of this case and does not protect the interests of creditors of Homemakers.

There is no state or federal action that could bring all constituencies into a single forum and provide for the distribution of assets.

Another factor is whether there is federal proceedings -- whether federal proceedings are necessary to reach a just and equitable solution.

Petitioning creditors argue there's preferential transfers and significant assets that -- as a significant asset that could be recovered for creditors only in a bankruptcy case. Petitioning creditors also argue the existence of equity in the properties above the secured debt.

Both of these are factors that support a finding that bankruptcy proceedings are necessary to reach a just and equitable solution.

The Court finds that bankruptcy proceedings

can better address competing creditor interests at play, including ensuring a proper distribution of estate assets.

Another factor is whether there is an alternative means of achieving an equitable distribution of assets. Here, while there is no doubt that ownership of Homemakers is in dispute, the testimony of the petitioning creditors demonstrates that the principal aim in filing this case is to prevent the disproportionate advantage that Mr. Dixon exercises by receiving and controlling the disposition of Homemakers' rental income. And there are other creditors at issue here that are not being dealt with in that litigation.

So there are no other alternative means of distributing -- of achieving an equitable distribution of the assets.

Another factor is whether Debtors -- the Debtor and creditors are able to work out a less expensive means to -- that would serve the -- better serve the interests.

Here, there's no evidence that Homemakers is able to work out an arrangement out of court that is better that would serve all interests.

Another factor is whether the state court has proceeded so far in proceedings and would be timely -- costly and time-consuming to start afresh, which is not applicable here.

And then lastly, one of the factors is the purpose for which bankruptcy was sought. As already discussed, the Court finds that even if part of the reason in filing the involuntary petition was to deal with ownership issues, the primary purpose for which bankruptcy is sought was to ensure an equitable treatment amongst creditors, which is not an improper purpose or use of bankruptcy.

The Court also asked the parties to brief whether its ruling in the first case had any preclusive effect as part of this case. While the issue of whether the case should be dismissed is the same in the -- you know, as the first case, the issue that was actually litigated in the first case was whether there was corporate authority to commence that case, versus this case where the issues being litigated are whether petitioning creditors filed the involuntary petition in bad faith, whether an order for relief should be entered based on the

requirements of an involuntary petition under § 303, and whether the Court should abstain and dismiss the case based on the best interests of Debtor and creditors. The facts and legal requirements are different, as was the evidence presented.

Therefore, the dismissal of the prior case does not have preclusive effect on the Court's determination of dismissal of the involuntary petition.

For these reasons, the Court will enter an order for relief in this case. And based upon that ruling, it's -- I find it's inappropriate for the Chapter 7 case to proceed, and the Court will enter an order to show cause why that case should not be dismissed.

Finally, because of the unresolved and hotly-disputed issue of ownership and control of Homemakers and the uncontested evidence demonstrating that all rents are being controlled by Mr. Dixon, simultaneously with the entry of an order for relief, the Court shall order the appointment of a trustee under § 1104(a)(2), which does not require a finding of fault or cause. But the Court finds that doing so is in

the best interests of the creditors, the estate, and the equity holders, whoever that may be.

Okay.  So that's my ruling.  And then we do have some other motions that are set for today. So any questions?  I don't know if I want to open that up to questions, but --

UNIDENTIFIED SPEAKER:  The only thing that I am -- there were discussions yesterday between -- well, there have been discussions about resolving the authority issue with respect to Mr. Johnson.

THE COURT:  Okay.

UNIDENTIFIED SPEAKER:  And it was anticipated that I would come up here and request that if you're going to dismiss the cases, that the automatic stay stay in effect for 14 days until that resolution is made.

Now, I haven't talked to the other side about that, but I imagine that Mr. Johnson would want to control his own entity.  So before the trustee is appointed, can we have 14 days to see if we can resolve the authority issue?  And then Mr. Johnson would take -- assuming that's what you want.

I assume that's what you'd want to do.

UNIDENTIFIED SPEAKER:  Yes.

UNIDENTIFIED SPEAKER: Okay. So that would be -- that would be my only caveat to that issue.

THE COURT: Okay. So then how would I -- okay. So do you want me to issue the order for -- enter the order for relief but --

UNIDENTIFIED SPEAKER: Yeah, we --

THE COURT: -- pending on -- hold on the ruling on the -- or directing the appointment of the trustee?

UNIDENTIFIED SPEAKER: You can do it that way. Or you can make it effect -- effective in a time certain to keep the heat on the parties to come up with a resolution.

THE COURT: Right. If something is not filed by a date certain, then it's automatic?

UNIDENTIFIED SPEAKER: Yeah. Yeah. If we don't file a compromise or a motion to extend for the compromise and have actually, you know, made progress on it. Do something like that. If Mr. Johnson's side is agreeable to that. But I think that would be probably best.

UNIDENTIFIED SPEAKER: Can we get 30 days on that?

THE COURT: Why?

UNIDENTIFIED SPEAKER: Well, we're going to

be trying to strategize on our rule to show cause on the 7. And we'll need more time to talk about, you know, how to deal with a settlement on -- with the other side.

THE COURT: I mean --

UNIDENTIFIED SPEAKER: With the show cause order and --

UNIDENTIFIED SPEAKER: Well, you -- there's no reason to have a 7 pending while there's an 11 pending, I would assume. Again, I don't mean to speak for them.

THE COURT: Right. There's the -- the whole issue Mr. Amodeo brought up before, the two estate rule --

UNIDENTIFIED SPEAKER: Correct.

THE COURT: -- and the like, so...

MR. AMODEO: Your Honor, I've had all these discussions. I went to the state court, expanded my authority so I could deal with Mr. Dixon and deal with the other obligors of this massive loan. Fourteen days is fine. The order for relief is in place.

The condition of the settlements, though, is that the estate holds. We don't want the properties to be foreclosed. I can tell you

that's universal.

But 14 days to appoint a trustee, I think, will be just fine. And we'll have it settled by then. These are substantive settlement agreements. I had Mr. Dixon talk to Mr. Johnson directly yesterday just to make sure.

THE COURT: Okay. Well, let's tie -- you know, put the bow on that present. Okay?

MR. LUNA: Your Honor, in light of your ruling -- and, Justin Luna on behalf of Mainstreet Community Bank. If you recall, we're one of the secured creditors owed about $4 million-plus.

You granted a stay relief, and so we had filed a motion in the Chapter 7, the third case, to get stay relief because we were on the edge of having a rent and an order to show cause on final judgment. And, obviously, there was the third case. And we knew Your Honor was going to have a ruling.

And so in light of your ruling, I'm sure Mainstreet will want to weigh in and likely will want to have this case remain in either a Chapter 11 with a Chapter 11 trustee or be converted and stay in Chapter 7 in light of all

of these issue.

So I understand the 7-day stay.  But we're trying to get back to and set a hearing on our motion.  We don't think it really impacts it, but what it does, Judge, is it determines who's going to show up at that hearing and say what, whether it's Mr. Timko, Mr. Amodeo, a Chapter 7 trustee.  And so it's really kind of affecting us.  And so we're trying to get to that end line.  I just wanted the Court to know that's, I think, where we're going to stand on these issues as a significant creditor of this estate.

THE COURT:  Yeah.  I understand that concern, which is legitimate.  But I'm hoping that if -- if there's no agreement that Mr. Johnson can continue to or can control the Debtor's decision making, then we're going to have a Chapter 11 trustee; and that's going to be the person that you're going to be dealing with one way or the other, so...

MR. LUNA:  Thank you, Judge.

THE COURT:  Okay.  So then I'll take care of doing the order.  I'll work in the 14-day trigger.  So if there's no indication on the record in this case, right, in this case that

there's a resolution as to the ownership issue. It doesn't have to be the settlement. It just -- someone has to file something that says it's been resolved.

Obviously, if you can attach an agreement, that would be better. But I think each of the folks should sign off on it. You know? So even if the agreement isn't attached, I want all the attorneys or parties in interest that have authority to sign off on it and file it with the Court that -- you know, so that I can find that satisfactory. So then I would not direct the appointment of a trustee. Okay? So...

All right. So I know, Ms. Savastano, I don't know if you're taking a position in this case. I know we had your client's motions also set over for today to determine whether additional or further relief was necessary. I think you have the relief you need to get to a judgment, right?

MS. SAVASTANO: Yes, Your Honor. We've obtained judgments in both of the pending foreclosures. So now we're seeking to move forward to obtain a sale date.

THE COURT: Okay. So I'm going to put a

hold on that because we're going to either have the trustee, who would need some time to look at that and maybe work with you-all to have a process that may be more orderly.  Because I don't know what's happening in state court, but I'm sure, for the reasons that Mr. Luna mentioned, it might be better to have, you know, a single person who is undisputed with authority to represent the Debtor there.

So let's set a further status conference for -- I guess what's the next date we have after 14 days?

UNIDENTIFIED SPEAKER:  Just a clarification, Your Honor.  When you say all parties in interest to our settlement agreement, do you mean the secured creditors, as well, or --

THE COURT:  No.

UNIDENTIFIED SPEAKER:  Okay.

THE COURT:  I meant the ownership issue.

UNIDENTIFIED SPEAKER:  Okay.  All right. Just making sure.

THE COURT:  Meaning so if you're -- yeah.  I just meant whoever needs to be involved with respect to resolving the ownership dispute issue. So Mr. Dixon's side and Mr. Johnson --

UNIDENTIFIED SPEAKER:  All right.  Okay.  I just wanted --

THE COURT:  -- both of you need to sign off.

UNIDENTIFIED SPEAKER:  All right.  Yeah.

THE COURT:  Yeah.  All right.  So can you all come back 1:00 on June 9th?  Okay.  So I just want to make sure everything is on track.  Okay.  So I'll take care of the order stemming from today's hearing.  And then we'll see you back on June 9th.

All right.  Anything the parties want to raise?  No?  Okay.  Very good.  Have a good day.

(WHEREUPON, the proceeding was concluded at 11:35 a.m.)

CERTIFICATE OF REPORTER

STATE OF FLORIDA

COUNTY OF ORANGE

I, SANDRA A. BATTAGLIA, NOTARY PUBLIC, CERTIFY THAT I WAS AUTHORIZED TO AND MY OFFICE DID TRANSCRIBE, FROM DIGITAL RECORDING, THE FOREGOING PROCEEDINGS AND THAT THE TRANSCRIPT IS A TRUE RECORD.

I FURTHER CERTIFY THAT I AM NOT A RELATIVE, EMPLOYEE, ATTORNEY OF COUNSEL OF ANY OF THE PARTIES, NOR AM I FINANCIALLY INTERESTED IN THE ACTION.

DATED THIS 23RD DAY OF MAY 2026.

_____
SANDRA A. BATTAGLIA, RPR, FPR-C
NOTARY PUBLIC - STATE OF FLORIDA
MY COMMISSION NO. HH215845
MY COMMISSION EXPIRES: 5/6/2026

**$**

$21,050 [3]   14/16 14/23 16/3
$300,000 [1]   22/17
$303,853 [1]   18/11
$350,000 [2]   19/24 20/22
$379,000 [1]   19/16
$396.04 [1]   17/17
$4 [1]   34/13
$4 million-plus [1]   34/13

**1**

1003 [1]   21/18
11 [7]   12/1 23/3 26/14 33/9
 34/24 34/24 35/18
1104 [1]   30/23
11:00 [1]   1/16
11:35 [2]   1/16 38/14
12 [4]   14/19 21/20 21/23
 23/15
120 [1]   24/2
13 [1]   8/6
14 [4]   31/15 31/20 34/2
 37/11
14-day [2]   3/4 35/23
16 [1]   22/5
1776 [2]   4/10 8/7
1983 [1]   5/10
1:00 [2]   3/7 38/6

**2**

2.6 [1]   16/10
20 [1]   1/15
2016 [1]   16/12
2026 [6]   1/15 3/6 7/22 8/7
 39/13 39/21
23RD [1]   39/13
25-2685 [1]   8/3
25-5570 [1]   4/8
26 [2]   10/18 13/4
26-1776 [2]   4/10 8/7
2685 [1]   8/3
27 [1]   7/21

**3**

3-2 [1]   18/10
30 [1]   32/22
3001 [1]   21/13
3002 [1]   16/13
303 [9]   14/8 14/10 14/25
 15/2 23/20 23/22 24/9 25/12
 30/2
305 [1]   26/2
32801 [1]   1/18
341 [1]   6/19
350,000-dollar [1]   20/1
3rd [1]   7/21

**4**

400 [1]   1/17
48 [1]   20/12

**5**

5/6/2026 [1]   39/21
54 [1]   21/20
5570 [1]   4/8

**6**

6:25-bk-05570-GER [1]   1/5
6:26-bk-01776-GER [1]   1/5

**7**

7-day [1]   35/2

**9**

9th [2]   38/6 38/10

**A**

a.m [3]   1/16 1/16 38/14
ability [1]   17/3
able [4]   16/18 18/15 28/20
 28/24
about [7]   6/25 12/25 12/25
 31/9 31/18 33/3 34/12
above [2]   23/16 27/20
abstain [7]   7/5 7/17 9/5
 25/16 25/22 26/3 30/2
abstention [4]   7/20 7/22
 25/17 25/21
accordance [1]   16/14
According [1]   19/2
account [2]   5/4 19/1
achieving [2]   28/5 28/17
acting [1]   8/17
action [4]   11/17 27/5 27/9
 39/12
actions [2]   25/9 27/1
actually [2]   29/19 32/18
added [1]   19/3
addition [1]   21/16
additional [1]   36/18
address [3]   9/1 9/2 28/1
addressed [1]   21/9
administration [2]   26/13
 26/15
admitted [8]   5/8 8/22 17/5
 17/7 18/2 19/5 19/22 20/4
admittedly [1]   8/13
adopting [1]   9/13
advantage [3]   11/1 26/20
 28/11
advantages [1]   11/3
affairs [1]   24/23
affecting [1]   35/8
afresh [1]   29/4
after [4]   8/15 20/10 23/23
 37/11
again [3]   5/23 18/13 33/10
against [13]   7/9 9/20 10/7
 10/15 10/16 10/17 11/2 14/12
 22/13 22/14 24/8 26/14 26/25
agent [1]   24/5
aggregate [3]   14/15 14/23
 16/3
agreeable [1]   32/20
agreed [1]   20/1
agreement [8]   13/10 13/16
 19/19 19/21 35/15 36/5 36/8
 37/15
agreements [1]   34/5
aim [1]   28/9
all [25]   4/3 5/11 5/16 6/9
 6/21 13/17 14/5 24/6 25/8
 26/14 27/10 28/25 30/20
 33/17 34/25 36/8 36/14 37/3
 37/14 37/20 38/1 38/4 38/5
 38/6 38/11
alleged [3]   12/17 19/17 24/25
allegedly [5]   16/11 17/18
 18/12 18/22 20/16
allow [1]   26/16
allowing [1]   26/18
already [3]   6/23 26/23 29/7
also [17]   2/16 4/10 4/19
 5/24 7/16 8/1 8/19 10/4
 11/10 13/15 13/24 16/25

alternative [2]   28/5 28/16
Although [1]   23/8
am [3]   31/8 39/10 39/12
Amended [1]   21/18
AMODEO [15]   2/10 5/13 5/14
 7/13 16/2 17/15 17/16 17/20
 18/18 20/24 21/16 21/22 23/4
 33/13 35/7
Amodeo's [5]   11/13 17/11 18/2
 18/7 20/11
amongst [1]   29/11
amount [15]   14/14 16/10 16/16
 17/17 18/1 18/4 18/11 18/15
 19/7 19/15 21/12 22/18 23/19
 24/2 24/21
amounts [2]   19/19 23/22
analyze [1]   9/16
analyzing [1]   14/24
announcing [1]   7/2
another [6]   26/21 26/21 27/12
 28/4 28/19 29/1
anticipated [1]   31/13
any [20]   5/16 6/5 6/25 8/3
 8/10 9/13 9/18 11/16 13/12
 14/16 14/19 14/20 16/23 17/1
 17/14 17/23 18/9 29/15 31/5
 39/11
anyone [1]   6/22
Anything [1]   38/11
apologize [1]   5/3
appearance [3]   5/1 6/12 6/23
appearances [1]   5/17
APPEARING [2]   2/2 2/12
applicable [1]   29/4
application [1]   15/24
apply [4]   15/5 15/18 24/10
 24/17
appoint [1]   34/2
appointed [3]   24/5 24/8 31/20
appointment [3]   30/23 32/8
 36/13
approach [1]   15/6
appropriate [1]   25/18
approximate [1]   16/10
approximately [2]   22/17 22/18
are [31]   6/1 6/2 6/9 7/1 8/8
 8/11 10/25 13/19 14/19 22/1
 23/1 23/2 23/9 23/15 23/22
 23/25 25/12 25/23 26/24
 27/13 27/22 27/23 28/13
 28/14 28/16 28/20 29/22 30/5
 30/20 31/4 34/4
arguably [1]   19/8
argue [6]   10/10 12/19 12/24
 22/21 27/15 27/19
argues [7]   9/6 9/21 10/2
 10/4 11/4 11/10 25/17
arguing [1]   7/17
argument [4]   6/3 6/5 12/17
 17/24
arguments [1]   8/23
arrangement [1]   28/24
Arvind [2]   2/17 6/14
as [56]
asked [2]   8/1 29/14
asserting [2]   16/9 18/10
asset [2]   6/17 27/17
assets [8]   10/12 11/24 26/17
 27/11 27/16 28/3 28/6 28/18
assigned [2]   8/14 16/8
assignment [1]   13/18

**A**

association [1] 25/5
assume [2] 31/24 33/10
assuming [1] 31/22
at [20] 3/6 8/22 12/1 14/15
14/23 16/3 16/24 17/7 18/2
19/5 19/22 21/6 21/7 21/19
22/3 28/2 28/13 35/6 37/2
38/13
attach [1] 36/5
attached [1] 36/8
attaches [1] 19/20
attachments [1] 18/20
attempt [1] 12/22
ATTORNEY [1] 39/11
attorneys [1] 36/9
authority [8] 3/5 9/25 29/21
31/10 31/21 33/19 36/10 37/8
authorized [4] 9/24 16/22
24/5 39/7
automatic [2] 31/15 32/15
available [1] 26/22

**B**

back [4] 16/12 35/3 38/6
38/9
bad [7] 7/18 7/22 9/8 9/14
9/16 9/21 29/24
balance [1] 20/16
bank [8] 2/5 4/16 18/22 19/1
21/23 22/19 22/25 34/11
bankruptcy [21] 1/3 1/17 4/4
10/23 14/9 15/15 15/18 16/13
16/14 16/22 17/13 18/8 26/1
26/2 26/17 27/18 27/23 27/25
29/6 29/10 29/13
based [14] 9/7 16/11 17/7
18/1 18/11 19/4 19/17 19/21
20/6 21/4 23/13 29/25 30/3
30/12
basis [3] 12/3 12/12 16/11
BATTAGLIA [2] 39/6 39/19
be [34] 4/7 5/11 6/16 6/19
7/2 7/25 9/7 9/10 13/13 14/9
15/14 19/3 21/24 26/4 27/17
29/2 29/17 29/25 30/16 31/2
32/2 32/2 32/21 33/1 33/25
34/3 34/24 35/18 35/19 36/2
36/6 37/4 37/7 37/23
bears [3] 14/25 15/22 26/5
because [12] 6/17 8/8 9/23
19/8 19/10 21/25 25/18 25/22
30/17 34/16 37/1 37/4
become [2] 23/25 24/13
been [5] 6/15 6/15 13/16
31/9 36/3
before [6] 1/14 6/25 12/11
24/2 31/19 33/13
behalf [17] 2/3 2/4 2/6 2/7
2/9 2/13 2/17 4/16 5/2 5/20
5/24 6/13 17/19 18/12 19/18
20/17 34/10
being [9] 10/24 11/5 13/21
13/23 21/5 25/18 28/14 29/22
30/20
believed [1] 22/16
belong [1] 11/9
belonging [1] 22/2
best [3] 30/3 31/1 32/21
better [7] 26/4 26/17 28/1
28/22 28/25 36/6 37/7
between [3] 10/14 27/5 31/8

ERIs Doc 30 Filed 07/13/26
bk [2] 1/5 1/5
bona [15] 14/13 15/5 15/7
15/9 15/12 15/16 15/25 16/19
17/9 17/25 18/3 18/16 19/6
19/10 24/1
both [6] 4/17 12/2 26/4
27/22 36/22 38/3
bow [1] 34/8
brief [2] 8/1 29/14
briefly [2] 16/5 26/10
bring [2] 26/14 27/10
brought [1] 33/13
burden [6] 9/3 14/25 15/6
15/11 24/14 26/6
burdening [1] 24/14
burdens [1] 15/14
but [21] 6/17 12/25 15/8
15/17 20/4 20/18 22/5 22/14
22/21 26/8 30/25 31/6 31/18
32/5 32/20 34/2 35/2 35/4
35/14 36/6 37/5

**C**

calculation [1] 21/15
call [1] 4/8
called [1] 21/10
can [20] 5/11 7/7 9/10 21/4
21/24 25/15 26/3 27/5 28/1
31/20 31/21 32/10 32/11
32/22 33/25 35/16 35/16 36/5
36/11 38/5
Capital [5] 2/9 5/2 7/12 10/6
11/15
care [3] 6/5 35/22 38/8
carefully [1] 8/20
Carton [8] 2/14 5/21 5/24
13/7 22/12 22/25 23/6 23/9
case [67]
cases [4] 4/17 14/9 14/24
31/14
cause [5] 30/15 30/25 33/1
33/6 34/17
cautious [1] 25/23
caveat [1] 32/2
ceased [1] 11/16
certain [3] 13/20 32/12 32/15
certainly [1] 14/2
CERTIFICATE [2] 3/8 39/2
CERTIFY [2] 39/6 39/10
Chapter [15] 6/12 6/14 6/16
6/18 6/18 8/6 8/24 26/14
30/14 34/15 34/24 34/24
34/25 35/7 35/18
Chapter 11 [1] 34/24
Chapter 7 [1] 8/6
charge [1] 24/5
CHRISTOPHER [2] 2/9 5/1
Circuit [1] 9/15
circumstance [1] 8/13
circumstances [3] 12/14 12/16
24/18
claim [38] 10/7 14/12 15/3
15/7 15/20 15/25 16/8 16/8
16/9 16/14 16/16 17/8 17/12
17/12 17/15 17/15 17/17
17/24 18/3 18/6 18/9 18/11
18/13 18/15 18/16 18/21
19/10 19/13 19/16 19/16
19/20 20/19 20/22 21/10
21/11 21/12 21/14 22/6
claim's [1] 16/15
claims [18] 14/15 14/17 14/18

18/7 20/25
21/7 21/8 21/20 21/23 22/1
22/13 23/16 24/20 24/21
26/14
clarification [1] 37/13
client's [1] 36/16
closing [2] 20/7 20/10
Co [1] 21/24
Code [3] 15/16 26/1 26/2
collateral [1] 10/18
collecting [1] 11/12
collection [2] 10/25 26/20
come [5] 24/16 25/6 31/13
32/13 38/6
commence [2] 10/1 29/21
commenced [2] 7/8 14/10
COMMISSION [2] 39/20 39/21
Community [3] 2/5 4/16 34/11
company [1] 13/22
competing [1] 28/1
component [1] 12/5
compromise [2] 32/17 32/18
concern [2] 14/4 35/14
concluded [1] 38/13
condition [1] 33/23
condo [1] 25/4
condominium [2] 19/24 19/24
condos [2] 10/18 13/4
conduct [1] 24/22
conducted [2] 7/21 12/10
conference [1] 37/10
connection [1] 7/3
consider [2] 10/23 26/9
considerable [1] 25/1
consideration [1] 25/24
considered [2] 8/21 21/25
considers [2] 9/18 22/8
constituencies [1] 27/10
consuming [1] 29/3
contention [1] 15/23
contingent [4] 14/12 14/15
15/4 17/3
continue [2] 27/6 35/16
contributed [1] 13/8
control [9] 8/17 8/20 11/6
12/22 12/25 25/20 30/18
31/19 35/16
controlled [2] 13/9 30/20
controlling [1] 28/12
converted [1] 34/25
corporate [1] 29/20
Correct [1] 33/15
costly [1] 29/3
could [7] 5/3 6/19 11/13
16/25 27/10 27/17 33/19
counsel [2] 6/13 39/11
count [1] 23/1
COUNTY [1] 39/4
court [63]
Court's [5] 10/3 11/5 12/20
21/8 30/8
courtroom [1] 5/17
courts [8] 9/15 10/23 12/1
15/5 15/17 15/18 24/17 25/23
credible [1] 20/11
creditor [16] 11/16 12/10
14/25 15/1 15/3 15/8 15/23
17/10 18/5 19/12 20/23 23/18
23/21 26/19 28/1 35/12
creditor's [4] 9/7 12/7 15/7
16/6
creditors [43]
creditors' [1] 14/4

**C**

Crescent [1]  22/7
CTO [12]  2/8 4/23 7/13 11/11
 16/2 18/9 18/9 18/19 19/1
 19/4 19/7 19/11
CTO's [2]  18/6 19/10
custodian [1]  24/4
customary [1]  10/24

**D**

date [7]  1/15 20/10 20/14
 24/3 32/15 36/24 37/11
DATED [1]  39/13
dating [1]  16/12
day [5]  3/4 35/2 35/23 38/12
 39/13
days [8]  20/10 24/2 31/15
 31/20 32/22 33/21 34/2 37/12
deal [4]  29/9 33/3 33/19
 33/20
dealing [1]  35/19
dealt [1]  28/14
debit [1]  20/8
Deborah [1]  17/21
debt [16]  11/7 11/12 16/19
 16/20 16/23 16/25 17/14 18/9
 19/7 19/8 19/15 20/16 22/19
 23/8 23/18 27/21
DEBTOR [21]  1/9 4/13 7/11
 8/15 8/16 8/18 9/20 14/17
 15/12 23/24 24/7 24/19 24/25
 26/4 26/10 26/15 26/18 27/4
 28/20 30/4 37/9
Debtor's [5]  15/22 23/24
 24/23 27/2 35/17
debtors [2]  27/5 28/19
debts [10]  18/23 21/25 23/25
 23/25 23/25 24/13 24/16
 24/19 25/1 25/5
decision [2]  25/22 35/17
default [1]  8/15
define [1]  15/16
demonstrate [3]  16/18 18/16
 24/15
demonstrated [2]  10/14 17/24
demonstrates [1]  28/9
demonstrating [2]  9/11 30/20
Department [2]  22/10 23/4
despite [1]  13/17
detail [2]  8/10 17/1
determination [2]  9/14 30/9
determinative [1]  26/8
determine [6]  11/20 14/1 21/2
 21/3 27/4 36/17
determines [1]  35/5
determining [3]  15/6 24/18
 24/24
did [8]  6/23 7/2 16/23 17/14
 17/23 18/8 20/12 39/7
different [1]  30/5
DIGITAL [1]  39/8
diligence [1]  12/10
direct [1]  36/12
directed [2]  10/15 10/15
directing [1]  32/8
directly [1]  34/6
disbursement [1]  20/8
disbursements [2]  20/9 20/12
disclosure [2]  21/19 21/20
discretion [1]  25/2
discuss [3]  7/7 14/7 16/5
discussed [1]  29/7

discussion [1]  31/8
discussions [3]  31/8 31/9
 33/18
dismiss [9]  7/4 7/15 9/2 9/5
 9/6 25/16 26/3 30/3 31/14
dismissal [4]  7/20 26/5 30/7
 30/9
dismissed [3]  9/7 29/17 30/16
dismissing [1]  25/24
disposition [1]  28/12
disproportionate [4]  11/1
 11/3 13/2 28/10
disproportionately [1]  26/19
dispute [24]  8/19 13/8 13/15
 14/3 14/14 15/5 15/8 15/10
 15/13 15/17 15/25 16/19 17/9
 17/25 18/3 18/17 19/6 19/11
 20/5 22/12 22/20 24/1 28/7
 37/24
disputed [3]  13/22 15/20
 30/18
distributing [1]  28/17
distribution [7]  10/12 11/24
 13/1 27/11 28/2 28/6 28/18
DISTRICT [3]  1/3 4/4 5/9
DIVISION [1]  1/4
Dixon [14]  10/16 12/23 12/25
 13/1 13/10 13/12 13/16 13/19
 14/6 22/15 28/11 30/21 33/19
 34/5
Dixon's [3]  11/6 11/8 37/25
do [10]  6/23 22/13 27/1 27/1
 31/3 31/24 32/4 32/10 32/19
 37/15
document [2]  20/4 21/19
documentary [2]  8/22 19/22
documents [2]  17/4 20/18
does [11]  10/7 10/19 13/1
 15/10 15/16 21/21 24/9 27/7
 30/8 30/24 35/5
doesn't [1]  36/2
doing [2]  30/25 35/23
dollar [3]  20/1 22/6 23/22
don't [8]  5/6 31/5 32/17
 33/10 33/24 35/4 36/15 37/5
done [2]  15/10 25/6
doubt [1]  28/7
due [6]  19/19 20/2 23/25
 24/13 24/16 25/6
during [1]  27/6

**E**

e-file [1]  5/4
each [7]  6/1 6/2 8/11 14/11
 16/5 26/10 36/6
economy [1]  26/12
edge [1]  34/16
effect [5]  8/4 29/16 30/8
 31/15 32/11
effective [1]  32/11
efficiency [1]  26/12
either [3]  14/11 34/23 37/1
Eleventh [1]  9/14
eligible [2]  20/24 21/5
ELIZABETH [2]  2/13 5/23
else [1]  6/22
employee [2]  14/20 39/11
end [1]  35/9
enforcing [1]  24/7
ensure [3]  10/11 11/23 29/11
ensuring [3]  13/1 14/5 28/2
enter [4]  24/11 30/11 30/15
 32/5

entered [1]  29/25
entities [3]  8/9 10/16 14/11
entity [4]  10/7 11/8 21/10
 31/19
entry [4]  9/3 23/23 25/11
 30/21
equitable [5]  27/14 27/24
 28/5 28/17 29/11
equity [4]  16/25 22/21 27/20
 31/2
equivalent [1]  22/18
ESQUIRE [8]  2/3 2/4 2/6 2/7
 2/9 2/13 2/13 2/17
establish [2]  15/9 16/2
establishing [1]  15/1
estate [12]  1/8 2/3 2/6 4/9
 4/10 4/13 7/10 28/3 31/1
 33/14 33/24 35/12
even [4]  23/21 25/14 29/7
 36/7
everything [1]  38/7
evidence [20]  8/22 9/11 9/12
 15/12 15/15 16/15 16/17 17/5
 17/7 17/23 18/1 19/5 19/22
 20/5 21/12 21/13 23/13 28/23
 30/5 30/19
evidenced [2]  9/22 18/20
exact [1]  24/24
exceeding [1]  23/19
excludes [1]  22/6
excluding [2]  14/19 21/21
executed [1]  20/4
exercises [1]  28/11
Exhibit [1]  20/12
exist [1]  15/10
existence [1]  27/20
exists [1]  19/6
expanded [1]  33/18
expenses [4]  13/13 13/21 19/2
 19/17
expensive [1]  28/21
expert [1]  22/22
EXPIRES [1]  39/21
extend [1]  32/17
extraordinary [1]  25/21

**F**

facie [5]  15/9 16/15 16/17
 18/14 21/11
fact [3]  10/5 12/12 15/21
factor [5]  26/21 27/12 28/4
 28/19 29/1
factors [5]  9/13 26/7 26/11
 27/22 29/5
facts [2]  15/24 30/4
failing [1]  11/17
failure [1]  11/17
fair [3]  10/11 11/23 13/1
faith [8]  7/18 7/22 9/8 9/10
 9/14 9/16 9/22 29/24
familiar [1]  8/8
Family [8]  2/14 5/21 5/25
 13/7 22/12 22/25 23/6 23/9
far [1]  29/2
fault [1]  30/24
favor [2]  13/6 19/4
February [1]  7/21
federal [3]  27/9 27/12 27/13
fee [5]  20/1 20/6 20/7 20/13
 20/14
fees [1]  25/5
fewer [1]  14/19
fide [15]  14/13 15/5 15/7

**F**

fide... [12]  15/10 15/13 15/16 15/25 16/19 17/9 17/25 18/3 18/17 19/6 19/11 24/1
file [7]  5/4 9/9 12/3 12/12 32/17 36/3 36/10
filed [30]  5/1 7/12 7/13 7/15 7/16 7/17 7/19 8/6 10/6 10/10 10/20 12/14 12/20 14/24 16/7 16/14 17/16 18/9 19/16 21/7 21/8 21/9 21/19 22/4 22/4 25/8 25/15 29/23 32/15 34/15
filing [12]  7/8 9/19 9/22 10/2 12/7 12/11 16/22 20/25 24/3 26/25 28/9 29/8
final [1]  34/17
Finally [1]  30/17
financial [1]  24/23
FINANCIALLY [1]  39/12
find [3]  10/19 30/13 36/11
finding [2]  27/23 30/24
finds [14]  11/21 14/3 16/17 17/8 18/2 19/5 20/21 23/15 25/12 25/14 26/13 27/25 29/7 30/25
fine [2]  33/21 34/3
firm [1]  6/14
first [19]  8/2 9/1 9/17 9/24 10/4 13/11 15/9 16/7 16/21 17/13 18/8 19/14 21/6 22/4 22/5 23/14 29/15 29/18 29/20
five [1]  21/8
FL [1]  1/18
flexibility [1]  25/2
flexible [1]  24/17
FLORIDA [8]  1/3 4/5 5/9 15/18 22/9 23/4 39/3 39/20
focuses [2]  12/17 24/20
folks [1]  36/7
follows [1]  23/4
foreclosed [1]  33/25
foreclosure [2]  25/9 26/24
foreclosures [1]  36/23
FOREGOING [1]  39/8
formally [1]  6/15
formula [1]  24/24
forum [3]  26/15 26/21 27/11
forward [2]  6/16 36/24
found [1]  9/25
Fourteen [1]  33/21
FPR [1]  39/19
FPR-C [1]  39/19
FRANK [2]  2/10 5/14
fully [1]  22/1
further [3]  36/18 37/10 39/10

**G**

general [2]  16/9 18/10
generally [6]  15/5 23/24 24/12 24/16 24/19 24/25
genuine [1]  15/21
GER [2]  1/5 1/5
get [8]  5/3 13/2 17/4 32/22 34/16 35/3 35/9 36/19
go [3]  8/10 13/11 26/10
goes [1]  6/16
going [11]  6/2 31/14 32/25 34/19 35/5 35/11 35/17 35/18 35/19 36/25 37/1
good [9]  4/7 4/15 4/22 4/25 5/19 5/23 9/9 38/12 38/12

Gretchen [1]
GRACE [2]  1/14 4/6
granted [2]  25/10 34/14
guarantors [1]  11/7
guess [1]  37/11

**H**

had [9]  7/3 8/3 12/2 19/22 29/15 33/17 34/5 34/14 36/16
hand [1]  10/9
handle [1]  6/3
happening [1]  37/5
has [10]  8/19 8/20 11/16 12/10 13/16 20/22 25/6 25/10 29/2 36/3
hasn't [1]  6/15
have [27]  7/5 10/7 11/19 12/14 20/24 21/9 25/9 26/19 27/2 30/8 31/4 31/9 31/20 32/18 33/9 34/3 34/19 34/23 35/18 36/2 36/9 36/19 37/1 37/3 37/7 37/11 38/12
haven't [1]  31/17
having [1]  34/17
he [8]  11/13 16/11 16/25 17/4 17/20 17/21 18/4 22/15
he's [1]  17/9
hearing [6]  1/12 3/6 25/16 35/3 35/6 38/9
heat [1]  32/12
held [3]  3/4 14/18 16/3
here [13]  5/11 6/10 6/17 7/1 8/8 16/1 24/10 25/3 28/6 28/14 28/23 29/4 31/13
HH215845 [1]  39/20
his [5]  10/16 16/25 17/20 18/25 31/19
hold [5]  14/22 22/13 22/14 32/7 37/1
holder [1]  14/11
holders [4]  14/18 14/19 14/22 31/2
Holdings [7]  2/8 4/23 7/14 21/10 21/11 21/15 23/7
holds [1]  33/24
HOMEMAKERS [53]
Homemakers' [11]  7/4 10/12 11/24 12/17 16/4 17/3 17/19 18/19 19/18 23/16 28/12
Honor [11]  4/15 4/22 4/25 5/15 5/19 6/11 33/17 34/9 34/19 36/21 37/14
HONORABLE [2]  1/14 4/5
hoping [2]  17/4 35/14
Horton [3]  2/6 4/20 7/13
hotly [1]  30/18
hotly-disputed [1]  30/18
how [3]  5/6 32/3 33/3
However [5]  11/21 17/15 18/24 20/11 25/14

**I**

I'd [1]  7/2
I'll [6]  7/5 7/6 26/10 35/22 35/23 38/8
I'm [5]  6/4 34/21 35/14 35/25 37/6
I've [1]  33/17
if [27]  6/16 9/10 14/14 14/18 15/10 15/20 22/24 23/21 23/23 24/12 25/14 26/3 29/7 31/5 31/14 31/21 32/14 32/16 32/19 34/11 35/15

ignores [1]  10/3
ill [2]  9/18 10/13
imagine [1]  31/18
impact [1]  8/5
impacts [1]  35/4
improper [7]  9/17 10/5 10/20 10/22 12/6 12/18 29/12
IMQA [21]  2/7 4/23 7/14 11/11 16/3 19/15 19/16 19/18 19/22 20/1 20/9 20/13 20/13 20/17 20/17 20/21 20/22 20/24 21/17 21/22 23/4
IMQA's [2]  19/13 20/19
in [92]
inappropriate [1]  30/13
inaudible [1]  6/18
include [2]  20/13 21/21
included [1]  18/21
includes [1]  21/14
including [3]  11/17 15/17 28/2
income [2]  13/17 28/13
Incorporated [2]  5/3 7/14
indicate [1]  7/2
indicated [1]  11/20
indication [1]  35/24
individuals [2]  8/9 10/14
initial [1]  11/15
initially [1]  7/12
insider [1]  14/20
insiders [1]  22/8
insufficient [1]  20/19
interest [3]  8/15 36/9 37/14
INTERESTED [1]  39/12
interests [10]  26/3 26/9 26/22 27/4 27/7 28/1 28/22 28/25 30/3 31/1
into [6]  7/6 8/10 17/5 20/4 26/15 27/10
Investments [6]  2/8 4/23 7/14 22/9 23/1 23/7
involuntary [29]  7/9 7/11 7/16 7/24 9/9 9/23 10/3 10/6 10/10 10/20 11/4 11/18 11/22 12/3 12/11 12/15 12/18 12/19 14/9 14/24 20/15 21/1 21/4 21/7 25/15 29/8 29/23 30/1 30/9
involved [2]  8/9 37/23
IPFS [2]  22/10 23/5
IRS [2]  21/24 23/5
is [97]
isn't [1]  36/8
issue [18]  3/5 7/22 8/2 11/21 15/21 28/14 29/17 29/19 30/18 31/10 31/21 32/2 32/4 33/13 35/1 36/1 37/19 37/24
issues [5]  8/25 12/21 29/9 29/22 35/11
it [24]  5/4 7/6 10/14 10/15 11/16 13/22 15/1 23/11 25/15 31/12 32/10 32/11 32/19 34/3 35/4 35/4 35/5 35/5 36/2 36/2 36/7 36/10 36/10 37/7
it's [7]  8/2 30/13 30/13 32/15 35/7 35/8 36/3
its [9]  8/25 10/18 24/13 24/16 24/19 25/1 25/4 26/18 29/15

## J

Jetton [3]   22/9 22/25 23/6
Johnson [23]   2/6 4/20 7/13
  9/23 9/25 16/2 16/7 16/7
  16/21 16/24 16/24 18/7 18/19
  18/25 19/3 19/4 19/8 31/10
  31/18 31/22 34/5 35/16 37/25
Johnson's [4]   9/21 17/8 17/12
  32/20
joinder [1]   11/13
joinders [2]   7/12 11/10
joining [1]   20/25
Judge [2]   35/5 35/21
judgment [3]   25/11 34/18
  36/20
judgments [1]   36/22
judicial [1]   25/2
June [3]   3/6 38/6 38/10
just [17]   6/4 6/12 7/5 11/5
  14/5 26/10 27/14 27/24 34/3
  34/6 35/9 36/2 37/13 37/21
  37/23 38/2 38/6
JUSTIN [3]   2/4 4/15 34/10

## K

keep [1]   32/12
kind [1]   35/8
knew [1]   34/19
know [14]   5/6 29/18 31/5
  32/18 33/3 34/8 35/10 36/7
  36/11 36/14 36/15 36/16 37/5
  37/7
KOSTO [3]   2/7 4/21 4/23

## L

lacked [1]   9/25
land [2]   8/14 13/9
Larry [1]   4/22
last [1]   7/1
lastly [1]   29/5
LAUREN [1]   2/17
law [3]   9/8 12/12 15/24
LAWRENCE [1]   2/7
lawsuit [1]   27/3
lawsuits [1]   26/25
least [3]   14/16 14/23 16/3
leave [1]   22/9
ledger [1]   20/9
legal [1]   30/4
legitimate [1]   35/14
LEIBERT [2]   2/6 4/19
lenders [2]   13/23 25/8
less [3]   23/15 24/6 28/20
let's [4]   4/8 5/17 34/7
  37/10
liability [7]   14/13 14/14
  15/4 15/22 17/25 18/4 24/2
lien [3]   14/16 24/7 27/2
liens [5]   13/6 16/4 22/2
  22/14 23/16
light [3]   34/9 34/21 34/25
like [3]   11/20 32/19 33/16
likely [1]   34/22
limited [1]   6/12
LINDSEY [2]   2/13 5/20
line [1]   35/9
liquidation [1]   26/17
list [1]   22/5
listed [3]   20/7 21/23 22/1
lists [1]   21/20
litigate [2]   11/8 12/21
litigated [2]   29/19 29/22

litigation [2]   25/18 07/13/26
LLC [4]   1/8 4/9 4/10 7/10
loan [8]   8/16 13/10 13/14
  13/16 13/19 17/2 17/2 33/21
loaned [2]   10/17 18/19
loans [2]   16/11 17/6
LOCATION [1]   1/17
look [4]   12/1 21/6 22/3 37/2
looked [1]   21/6
looks [2]   12/6 12/9
lot [2]   10/13 14/2
LUNA [5]   2/4 4/14 4/16 34/10
  37/6

## M

made [7]   16/11 17/18 17/21
  18/25 19/1 31/16 32/18
Mahendra [1]   6/14
Mahendru [1]   2/17
Mainstreet [10]   2/4 4/16 13/6
  18/22 21/23 22/19 22/24 23/6
  34/11 34/22
majority [1]   15/17
make [5]   6/22 9/14 32/11
  34/6 38/7
making [3]   8/25 35/17 37/21
malice [1]   9/19
management [1]   13/22
March [2]   7/21 8/6
massive [1]   33/20
material [1]   15/21
materiality [1]   24/21
Matt [1]   4/19
matters [1]   11/8
MATTHEW [1]   2/6
may [5]   1/15 14/9 31/2 37/4
  39/13
maybe [1]   37/3
me [1]   32/4
mean [3]   33/5 33/10 37/15
Meaning [1]   37/22
means [3]   28/5 28/16 28/21
meant [2]   37/19 37/23
meetings [1]   6/19
membership [1]   8/15
mentioned [1]   37/7
mentioning [1]   14/3
meritorious [1]   15/23
met [4]   9/3 14/8 23/20 23/22
MIDDLE [3]   1/3 4/4 5/9
might [1]   37/7
million [2]   16/10 34/13
money [2]   10/17 18/19
more [6]   14/10 14/16 14/22
  16/4 33/2 37/4
morning [7]   4/7 4/15 4/22
  4/25 5/2 5/19 5/23
mortgage [3]   13/6 25/4 25/8
mortgagee's [1]   13/18
mortgages [2]   13/12 13/23
motion [9]   7/4 7/15 7/16 9/1
  9/6 14/2 32/17 34/15 35/4
motions [4]   7/1 7/7 31/4
  36/16
motivations [1]   12/7
move [1]   36/23
moving [1]   26/5
Mr [56]
Mr. [8]   11/8 11/13 16/24
  17/15 18/19 31/10 32/20
  35/16
Mr. Amodeo [1]   17/15
Mr. Amodeo's [1]   11/13

Mr Amodeo [2]   25/18 07/13/26
Mr. Johnson [4]   16/24 18/19
  31/10 35/16
Mr. Johnson's [1]   32/20
Ms [5]   5/18 5/22 6/2 6/9
  36/14
Ms. [1]   6/5
Ms. Savastano [1]   6/5
Mullins [1]   22/6
must [4]   15/8 15/14 21/2
  26/8
my [9]   4/25 7/2 7/5 31/3
  32/2 33/19 39/7 39/20 39/21

## N

name [1]   5/1
namely [2]   10/11 11/23
National [2]   21/24 23/5
necessary [3]   27/14 27/23
  36/18
need [4]   33/2 36/19 37/2
  38/3
needs [1]   37/23
Nelson [1]   22/6
next [9]   14/7 17/11 18/6
  19/13 21/2 21/18 22/3 23/21
  37/11
no [21]   1/5 6/23 13/7 13/15
  17/4 21/13 22/12 22/21 24/24
  25/3 26/7 27/9 28/6 28/16
  28/23 33/9 35/15 35/24 37/17
  38/12 39/20
non [2]   14/15 27/5
non-contingent [1]   14/15
non-debtors [1]   27/5
none [1]   26/7
nonpayment [1]   24/22
NOR [1]   39/12
not [58]
NOTARY [2]   39/6 39/20
note [2]   19/3 20/3
notes [1]   23/8
now [3]   4/5 31/17 36/23
number [15]   4/8 4/9 8/3 8/7
  16/8 17/16 18/10 19/17 21/3
  21/15 21/20 23/2 24/20 26/7
  26/24
number 54 [1]   21/20
numerosity [1]   23/21

## O

objective [3]   12/2 12/9 15/18
obligations [1]   23/10
obligor [1]   8/16
obligors [2]   13/13 33/20
observing [1]   6/4
obtain [3]   11/1 12/22 36/24
obtained [1]   36/22
obtaining [2]   11/3 12/25
obviously [2]   34/18 36/5
off [3]   36/7 36/10 38/3
OFFICE [1]   39/7
okay [27]   4/7 4/11 4/18 4/24
  5/5 5/11 5/22 6/1 6/7 6/21
  6/24 31/3 31/11 32/1 32/3
  32/4 34/7 34/8 35/22 36/13
  36/25 37/18 37/20 38/1 38/6
  38/7 38/12
Old [2]   21/24 23/5
on [76]
one [10]   6/1 9/23 14/21 15/3
  23/17 26/8 26/12 29/5 34/12
  35/20

only [7]   6/15 21/5 23/23
 24/12 27/18 31/7 32/2
open [1]   31/5
operating [1]   13/21
opposing [1]   7/20
option [7]   19/19 19/20 19/23
 20/1 20/6 20/7 20/13
or [43]
oral [2]   7/2 8/12
ORANGE [1]   39/4
order [16]   7/24 9/4 23/23
 24/11 29/24 30/12 30/15
 30/22 30/22 32/4 32/5 33/7
 33/21 34/17 35/23 38/8
orderly [2]   26/16 37/4
ORLANDO [2]   1/4 1/18
other [20]   5/16 8/11 8/12
 10/9 11/2 11/19 12/13 13/2
 13/13 18/22 21/10 22/1 24/4
 28/13 28/16 31/4 31/17 33/4
 33/20 35/20
otherwise [1]   9/11
our [4]   6/14 33/1 35/3 37/15
out [3]   28/20 28/24 28/24
over [4]   12/22 20/5 26/10
 36/17
overall [1]   24/22
overcome [1]   9/10
owed [11]   11/7 16/23 17/14
 18/9 19/7 19/8 19/15 20/13
 20/16 22/19 34/12
own [1]   31/19
owned [2]   22/15 22/23
owner [1]   13/4
ownership [11]   11/21 14/1
 14/3 25/20 27/4 28/7 29/9
 30/18 36/1 37/19 37/24

**P**

p.m [1]   3/7
Pacer [1]   5/4
paid [8]   13/13 13/21 13/23
 18/12 19/18 20/6 20/14 20/17
papers [1]   7/19
part [5]   8/4 8/12 20/19 29/8
 29/16
participate [1]   11/14
particular [1]   9/13
parties [11]   8/1 8/8 8/19
 8/23 26/22 29/14 32/12 36/9
 37/14 38/11 39/11
party [2]   22/22 26/5
pay [4]   18/19 18/22 19/3
 20/1
paying [6]   23/24 24/13 24/16
 24/19 24/25 25/4
payment [2]   14/5 17/21
payments [2]   17/18 18/25
PEDIXON [2]   21/21 22/7
pendency [1]   27/6
pending [7]   7/7 26/23 26/25
 32/7 33/9 33/10 36/22
per [1]   22/17
period [1]   3/4
person [7]   2/2 8/17 12/14
 14/12 14/20 35/19 37/8
personal [1]   19/1
persons [1]   21/9
petition [28]   7/9 7/11 7/16
 7/24 8/6 9/9 9/20 10/3 10/6
 10/10 10/20 11/18 11/22 12/4

12/19 20/15 21/1 21/4 24/3
 25/15 29/9 29/24 30/1 30/10
petitioning [33]   7/19 9/2 9/7
 9/8 9/19 10/9 10/25 11/16
 11/19 12/2 12/7 12/10 12/24
 13/25 14/4 14/25 15/8 15/23
 16/1 16/6 17/10 18/5 19/11
 20/23 21/1 21/5 22/20 23/18
 24/14 27/15 27/19 28/8 29/23
phrase [1]   15/16
place [1]   33/22
play [1]   28/2
Please [1]   4/7
pledged [1]   10/17
plus [1]   34/13
position [1]   36/15
possession [1]   24/9
potential [1]   6/13
practice [3]   5/9 10/25 14/2
precedent [1]   8/25
preclusive [3]   8/3 29/16 30/8
preferential [1]   27/16
preponderance [2]   9/12 15/15
present [5]   2/16 6/20 15/12
 17/23 34/8
presented [4]   21/13 22/22
 23/13 30/6
presiding [1]   4/6
presumes [2]   9/8 22/24
presuming [1]   23/11
presumption [1]   9/10
prevent [1]   28/10
prima [5]   15/9 16/15 16/17
 18/13 21/11
primarily [1]   7/17
primary [3]   11/22 14/4 29/10
principal [1]   28/9
principally [1]   10/16
prior [5]   8/23 11/5 12/21
 13/19 30/7
Pro [2]   2/10 5/14
probably [1]   32/21
proceed [1]   30/14
proceeded [1]   29/2
proceeding [3]   26/13 26/23
 38/13
proceedings [7]   25/25 27/13
 27/13 27/23 27/25 29/2 39/8
process [1]   37/4
progress [1]   32/19
promissory [1]   20/3
proof [9]   16/8 16/13 16/16
 17/15 18/13 18/20 19/16
 19/20 21/14
proofs [1]   21/9
proper [3]   10/11 11/23 28/2
properly [1]   25/15
properties [5]   13/9 16/5
 22/21 27/20 33/25
property [8]   14/17 22/2 22/14
 23/17 24/6 24/8 25/5 27/2
prosecute [1]   11/18
protect [4]   11/2 26/22 27/1
 27/7
provide [2]   17/1 27/11
provided [1]   13/15
proving [1]   15/9
provision [1]   25/25
provisions [1]   13/18
PUBLIC [2]   39/6 39/20
purchase [1]   19/23
purely [1]   25/19

purpose [2]   10/17 10/5 10/11
 10/21 11/12 11/23 12/6 12/18
 24/7 29/6 29/10 29/12
purposes [2]   20/25 23/11
pursuant [2]   14/10 16/13
pursued [1]   25/18
put [2]   34/8 36/25
Putative [3]   4/12 8/18 15/11

**Q**

qualified [6]   15/1 15/3 17/9
 18/4 21/16 22/10
qualify [1]   21/25
qualifying [3]   19/11 20/22
 20/23
question [1]   25/3
questions [2]   31/5 31/6
quite [1]   25/6

**R**

raise [1]   38/12
raised [1]   20/5
rather [1]   11/2
RE [1]   1/7
reach [2]   27/14 27/24
read [1]   7/6
real [8]   1/8 2/3 2/6 4/9
 4/10 4/13 7/9 25/5
really [2]   35/4 35/8
reason [3]   11/22 29/8 33/9
reasonable [2]   12/12 12/13
reasons [2]   30/11 37/6
recall [1]   34/11
receiver [1]   24/4
receiving [1]   28/11
recognized [1]   25/21
recognizes [1]   9/15
record [5]   7/6 8/23 23/14
 35/25 39/9
RECORDING [1]   39/8
recovered [1]   27/18
recovery [1]   26/20
refer [2]   7/10 11/25
reference [1]   27/3
referenced [1]   16/6
reflect [3]   16/23 17/14 18/9
refute [1]   21/14
regarding [1]   19/6
related [1]   20/17
relationships [1]   8/11
RELATIVE [1]   39/10
relief [14]   7/25 9/4 23/23
 24/12 25/9 29/25 30/12 30/22
 32/5 33/22 34/14 34/16 36/18
 36/19
relitigate [2]   11/5 12/20
remain [1]   34/23
remedy [1]   25/22
remove [1]   11/6
render [1]   20/19
rent [2]   13/18 34/17
rental [2]   13/17 28/13
rents [2]   13/11 30/20
reorganization [1]   26/16
repaid [2]   17/4 17/22
repay [1]   17/3
REPORTER [2]   3/8 39/2
represent [1]   37/9
Republic [2]   21/24 23/5
repurchase [1]   19/23
request [1]   31/13
requested [1]   25/9
require [1]   30/24

**R**

requirements [5]   7/23 14/8
  25/12 30/1 30/5
requires [1]   23/22
requisite [2]   9/25 23/19
resolution [3]   31/16 32/13
  36/1
resolve [2]   3/5 31/21
resolved [1]   36/4
resolving [2]   31/9 37/24
respect [3]   25/19 31/10 37/24
retained [1]   6/15
retaining [1]   13/17
revealed [1]   18/24
Revenue [2]   22/10 23/5
review [1]   25/23
reviewed [1]   8/24
reviews [1]   21/18
right [15]   5/12 5/16 6/9
  6/21 8/19 32/14 33/12 35/25
  36/14 36/20 37/20 38/1 38/4
  38/5 38/11
rise [1]   4/3
ROBSON [2]   1/14 4/6
RPR [1]   39/19
rule [6]   12/1 16/13 21/13
  21/18 33/1 33/14
Rules [1]   16/15
ruling [16]   7/3 7/6 8/2 8/5
  8/12 8/25 10/3 11/6 23/12
  29/15 30/13 31/3 32/8 34/10
  34/20 34/21
rulings [1]   12/21

**S**

sale [1]   36/24
same [3]   12/14 12/15 29/18
SANDRA [2]   39/6 39/19
satisfactory [1]   36/12
satisfied [3]   7/24 15/14
  25/13
SAVASTANO [5]   2/13 5/18 5/20
  6/5 36/14
say [3]   8/12 35/6 37/14
says [1]   36/3
schedules [7]   16/23 17/13
  17/14 18/8 19/14 22/3 22/4
Se [2]   2/10 5/14
seated [1]   4/8
second [1]   10/22
secured [6]   22/1 23/1 23/3
  27/21 34/12 37/16
securing [1]   14/17
see [2]   31/20 38/9
seeking [2]   11/1 36/23
seller [2]   20/2 20/8
serve [3]   28/21 28/22 28/25
served [1]   26/5
serves [1]   26/17
session [1]   4/5
set [7]   3/6 5/4 7/1 31/4
  35/3 36/17 37/10
settled [1]   34/3
settlement [4]   33/3 34/4 36/2
  37/15
settlements [1]   33/23
shall [2]   24/11 30/22
share [1]   13/2
shifting [1]   15/6
shifts [1]   15/11
short [1]   10/2
shortfall [1]   13/12

should [10]   23/2
  23/1 29/17 29/25 30/2 30/16
  36/7
show [5]   30/15 33/1 33/6
  34/17 35/6
showed [2]   19/14 20/3
showing [1]   20/9
shown [2]   9/11 10/5
side [4]   31/17 32/20 33/4
  37/25
sign [3]   36/7 36/10 38/3
signed [2]   13/11 19/4
significant [4]   8/10 27/16
  27/17 35/12
similar [1]   12/5
simultaneously [1]   30/21
Since [1]   5/10
single [5]   26/8 26/15 26/19
  27/10 37/8
sister [1]   17/21
SMITH [2]   2/9 5/1
so [46]
sold [1]   19/25
solely [1]   11/13
solution [2]   27/14 27/24
some [3]   25/6 31/4 37/2
someone [1]   36/3
something [3]   32/14 32/19
  36/3
sought [3]   16/1 29/6 29/10
Sound [1]   22/8
speak [1]   33/11
stand [2]   21/4 35/11
standard [2]   15/19 15/20
start [1]   29/3
state [10]   11/9 12/21 26/23
  27/3 27/9 29/1 33/18 37/5
  39/3 39/20
statement [1]   20/7
STATES [3]   1/3 1/17 4/3
status [1]   37/10
statute [1]   23/20
stay [7]   25/10 31/15 31/15
  34/14 34/16 34/25 35/2
stemming [1]   38/8
strategic [1]   11/11
strategize [1]   33/1
strategy [1]   25/19
STREET [1]   1/17
STRICKER [2]   2/17 6/9
subject [14]   13/5 13/5 14/13
  15/4 15/7 15/25 17/8 17/25
  18/3 18/16 19/10 24/1 25/1
  25/23
subjective [2]   12/3 12/5
Subparagraph [1]   24/9
substantially [1]   24/6
substantiate [1]   17/5
substantive [1]   34/4
substitute [1]   10/24
successfully [1]   15/11
such [11]   14/12 14/14 14/17
  14/18 14/19 14/20 14/22
  14/23 23/24 23/25 24/8
sum [2]   20/21 20/24
support [1]   27/22
sure [5]   34/6 34/21 37/6
  37/21 38/7
suspending [1]   25/24

**T**

take [5]   6/5 24/5 31/22
  35/22 38/8

taking [2]   4/24 36/15
talk [3]   6/25 33/2 34/5
talked [1]   31/17
Tamamoi [8]   2/13 5/20 5/24
  13/7 22/13 22/25 23/6 23/9
tax [1]   25/5
technically [1]   23/10
tell [1]   33/25
terms [1]   17/1
test [9]   9/17 10/22 10/22
  11/25 12/1 12/6 12/9 24/18
  25/1
testified [4]   16/25 17/2
  17/20 22/15
testimony [12]   8/21 13/20
  13/24 18/18 18/24 19/2 19/21
  20/3 20/11 20/18 22/22 28/8
tests [1]   9/15
than [9]   8/12 11/2 14/16
  14/19 16/4 21/10 23/15 24/4
  24/6
Thank [3]   6/7 6/11 35/21
Thanks [1]   6/8
that [139]
that's [7]   27/5 31/3 31/22
  31/24 34/1 35/10 35/18
their [4]   8/11 9/3 11/22
  25/23
them [1]   33/11
themselves [1]   11/2
then [14]   5/16 5/17 7/6 9/2
  29/5 31/3 31/21 32/3 32/15
  34/4 35/17 35/22 36/12 38/9
there [29]   9/18 10/13 12/11
  13/20 13/24 14/2 14/18 15/12
  15/21 16/18 21/4 21/8 22/12
  22/21 23/2 23/15 26/7 26/24
  27/9 27/12 28/4 28/6 28/13
  28/16 29/20 31/8 31/9 34/18
  37/9
there's [14]   13/7 13/15 24/24
  25/3 26/23 27/3 27/15 28/23
  33/8 33/9 33/12 35/15 35/24
  36/1
Therefore [6]   10/19 18/1
  23/20 24/11 25/11 30/7
these [9]   13/8 15/14 26/25
  27/22 30/11 33/17 34/4 35/1
  35/11
they [6]   8/11 11/20 13/25
  24/13 24/16 25/6
thing [1]   31/7
think [6]   32/21 34/2 35/4
  35/10 36/6 36/19
third [4]   9/4 11/25 34/15
  34/18
this [43]
those [1]   22/7
though [1]   33/23
three [2]   9/15 14/10
threshold [1]   23/19
through [2]   13/21 25/11
tie [1]   34/7
Tiered [5]   2/9 5/2 7/12 10/6
  11/15
time [9]   1/16 5/4 7/1 13/19
  25/7 29/3 32/12 33/2 37/2
time-consuming [1]   29/3
timely [1]   29/3
TIMKO [4]   2/3 4/11 4/12 35/7
Title [2]   21/24 23/5
today [5]   6/6 6/17 6/20 31/4
  36/17

**T**

today's [1]   38/9
took [1]   24/8
total [1]   23/2
totality [1]   24/17
toward [1]   23/2
townhome [1]   25/4
townhomes [2]   10/18 13/5
track [1]   38/7
TRANSCRIBE [1]   39/7
TRANSCRIPT [1]   39/9
transfer [1]   14/21
transferee [1]   14/21
transfers [2]   18/21 27/16
treat [1]   5/7
treatment [1]   29/11
trial [9]   7/3 7/21 8/22
 16/24 17/7 18/2 19/5 19/22
 23/23
trigger [1]   35/24
true [2]   16/19 39/9
trust [10]   2/14 5/21 5/25
 8/14 13/7 13/9 22/13 22/25
 23/6 23/9
trustee [14]   6/14 6/19 8/14
 8/17 24/4 30/23 31/20 32/9
 34/2 34/24 35/7 35/18 36/13
 37/2
trying [3]   33/1 35/3 35/9
turn [4]   5/17 17/11 18/6
 19/13
two [2]   21/5 33/13

**U**

uncontested [1]   30/19
under [15]   12/15 13/10 13/16
 14/24 15/2 15/20 19/19 21/13
 23/1 23/3 23/19 25/25 26/2
 30/1 30/23
under-secured [1]   23/3
understand [2]   35/2 35/13
undisputed [6]   14/15 15/24
 19/15 20/20 23/18 37/8
unit [3]   19/24 19/25 22/17
UNITED [3]   1/3 1/17 4/3
units [2]   22/16 22/23
universal [1]   34/1
unless [1]   23/25
unpaid [1]   24/20
unresolved [1]   30/17
unsecured [7]   16/9 16/10
 17/17 18/11 21/25 23/3 27/1
until [1]   31/16
unusual [1]   8/13
up [6]   5/4 31/6 31/13 32/13
 33/13 35/6
upon [3]   15/22 18/1 30/12
us [1]   35/8
use [4]   9/15 10/22 12/18
 29/13
used [2]   10/24 11/5
utility [1]   17/18

**V**

validity [5]   16/16 18/14
 18/14 19/6 21/12
valuation [1]   22/22
value [5]   14/16 16/4 22/16
 22/20 23/16
various [1]   20/9
versus [3]   13/2 26/18 29/21
Very [1]   38/12

**W**

want [11]   31/5 31/19 31/23
 31/24 32/4 33/24 34/22 34/23
 36/8 38/7 38/11
wanted [4]   6/22 13/25 35/10
 38/2
wants [1]   5/6
was [58]
WASHINGTON [1]   1/17
way [4]   11/7 12/20 32/11
 35/20
we [17]   6/25 7/1 7/3 7/7
 31/3 31/20 31/21 32/6 32/16
 32/22 33/24 34/14 34/16
 34/19 35/4 36/16 37/11
we'll [3]   33/2 34/3 38/9
we're [9]   6/17 32/25 34/11
 35/2 35/9 35/11 35/17 36/23
 37/1
We've [1]   36/21
weigh [1]   34/22
well [14]   5/8 6/22 6/25 7/23
 8/4 8/24 19/18 20/8 22/7
 31/9 32/25 33/8 34/7 37/16
went [2]   18/22 33/18
were [15]   7/1 7/12 7/24
 11/11 13/21 13/23 14/8 17/2
 17/5 18/25 19/1 20/18 21/8
 31/8 34/16
WEST [1]   1/17
what [6]   11/25 17/1 31/22
 31/24 35/5 35/6
what's [2]   37/5 37/11
when [3]   14/24 15/6 37/14
where [8]   8/14 9/17 9/24
 10/23 12/1 15/8 29/22 35/10
WHEREUPON [1]   38/13
whether [30]   7/23 8/2 8/4 9/2
 9/4 9/18 10/23 12/1 12/9
 14/7 15/6 20/6 21/2 21/3
 24/18 24/25 26/21 27/12
 27/13 28/4 28/19 29/1 29/15
 29/17 29/20 29/22 29/24 30/2
 35/6 36/17
which [16]   7/10 8/16 10/17
 14/11 16/21 18/21 21/21 22/8
 24/19 25/10 29/4 29/6 29/10
 29/12 30/24 35/14
while [13]   9/13 10/13 11/15
 13/20 13/24 16/16 16/24
 18/13 26/24 27/2 28/6 29/16
 33/9
who [8]   8/10 8/19 9/24 10/17
 21/9 27/1 37/2 37/8
who's [1]   35/5
whoever [2]   31/2 37/23
whole [1]   33/12
whose [1]   15/3
why [2]   30/15 32/24
will [21]   6/5 6/15 7/10 8/10
 9/1 9/2 9/18 10/13 11/25
 14/7 16/5 17/11 18/6 19/13
 21/6 22/3 30/11 30/15 34/3
 34/22 34/22
wire [1]   18/21
within [1]   24/2
witnesses [1]   8/21
WM [4]   21/10 21/11 21/15
 23/7
words [1]   12/13
work [4]   28/20 28/24 35/23

would [23]   11/20 12/13 13/11
 13/13 19/3 19/3 22/9 26/4
 26/14 28/21 28/25 29/2 31/13
 31/18 31/22 32/1 32/2 32/3
 32/21 33/10 36/6 36/12 37/2
written [1]   7/5
WULFF [4]   2/13 5/22 5/24 6/2

**Y**

yeah [7]   32/6 32/16 32/16
 35/13 37/22 38/4 38/5
yes [4]   5/9 6/11 31/25 36/21
yesterday [2]   31/8 34/6
you [31]   5/11 6/1 6/2 6/7
 6/10 6/11 29/18 31/23 32/4
 32/10 32/11 32/18 33/3 33/8
 33/25 34/7 34/11 34/14 35/21
 36/5 36/7 36/11 36/19 36/19
 37/3 37/7 37/14 37/15 38/3
 38/5 38/9
you'd [1]   31/24
you're [5]   5/8 31/14 35/19
 36/15 37/22
you-all [1]   37/3
your [14]   4/15 4/22 4/25
 5/14 5/19 6/11 33/17 34/9
 34/9 34/19 34/21 36/16 36/21
 37/14

**Z**

zero [1]   22/6
zero-dollar [1]   22/6
ZOOM [3]   2/12 2/16 5/18
ZPD [2]   21/21 22/7

# EXHIBIT "B"

Proposed Order Approving the Disclosure Statement
and Establishing Solicitation, Voting, and Confirmation-Hearing Procedures

In re Homemakers Real Estate, LLC, Case No. 6:25-bk-05570-GER

**ORDERED.**

Dated: _____

_____
Grace E. Robson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                                    Case No. 6:25-bk-05570-GER

**HOMEMAKERS REAL ESTATE, LLC,**        Chapter 11
     Debtor.

/

**ORDER APPROVING DISCLOSURE STATEMENT, FIXING RECORD DATE AND VOTING DEADLINE, APPROVING BALLOTS, FIXING DEADLINE FOR OBJECTIONS TO CONFIRMATION, AND SCHEDULING CONFIRMATION HEARING**

THIS CASE came before the Court on the Motion to Approve the Disclosure Statement and to Establish Solicitation, Voting, and Confirmation-Hearing Procedures (Doc. ___) (the "Motion"), filed by Frank L. Amodeo, a creditor and party in interest (the "Plan Proponent") and proponent of the Plan of Reorganization dated July 13, 2026 (Doc. ___) (the "Plan"). The Court has reviewed the Disclosure Statement dated July 13, 2026 (Doc. ___) (the "Disclosure Statement") and is otherwise fully advised. The Court finds that the Disclosure Statement contains adequate information within the meaning of 11 U.S.C. § 1125(a)(1). Accordingly, it is

**ORDERED:**

1. The Motion (Doc. ___) is GRANTED.

2. The Disclosure Statement (Doc. ___) is APPROVED as containing adequate information under 11 U.S.C. § 1125(a)(1).

1

3. _____, 2026 is fixed as the record date for determining the holders of claims and interests entitled to vote on the Plan under Federal Rule of Bankruptcy Procedure 3017(c).

4. The form of ballot conforming to Official Form 314 and Local Rule 3018-1, attached to the Motion as Exhibit "C", is APPROVED. To be counted, a ballot must be completed, signed, and actually received by the Clerk no later than 5:00 p.m. (Eastern Time) on _____, 2026 (the "Voting Deadline"), either at the Clerk's office, 400 W. Washington Street, Suite 5100, Orlando, Florida 32801, or via the Chapter 11 eBallot hyperlink on the Court's website, www.flmb.uscourts.gov.

5. Within seven (7) days after entry of this Order, the Plan Proponent, at his expense and in coordination with the Chapter 11 Trustee, must transmit by mail to all creditors, equity security holders, and other parties in interest, in accordance with Federal Rule of Bankruptcy Procedure 3017(d): (a) the Plan; (b) the approved Disclosure Statement; (c) notice of the Voting Deadline; (d) notice of the deadline for objections to confirmation and of the date and time of the Confirmation Hearing; and (e) the appropriate court-approved ballot for each Class entitled to vote.

6. Any objection to confirmation of the Plan under Federal Rule of Bankruptcy Procedure 3020(b)(1) must be filed and served no later than seven (7) days before the Confirmation Hearing.

7. The hearing on confirmation of the Plan under 11 U.S.C. § 1128 (the "Confirmation Hearing") is scheduled for _____, 2026, at ____:____ __.m., in Courtroom ____, United States Bankruptcy Court, George C. Young Federal Courthouse, 400 West Washington Street, Orlando, Florida 32801.

2

8. The Plan Proponent must prepare and file a tabulation of the acceptances and rejections of the Plan, in the form required by Local Rule 3018-1(d) and (e), no later than two (2) days before the Confirmation Hearing.

9. The Plan Proponent is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and to file a proof of service within three (3) days of entry of this Order.

3

# EXHIBIT "C"

Proposed Ballots — Official Form 314

Classes 1 through 11

In re Homemakers Real Estate, LLC, Case No. 6:25-bk-05570-GER

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA — ORLANDO DIVISION

In re:

HOMEMAKERS REAL ESTATE, LLC,

Debtor.

Case No. 6:25-bk-05570-GER

Chapter 11

/

**BALLOT FOR ACCEPTING OR REJECTING THE PLAN OF REORGANIZATION
PROPOSED BY FRANK L. AMODEO**

**CLASS 1 — Secured Claim of Jetton Investments, Inc. / Paul Rene, Jr.**

Frank L. Amodeo, a creditor and party in interest (the "Plan Proponent"), filed a Plan of Reorganization dated July 13, 2026 (the "Plan") for Homemakers Real Estate, LLC (the "Debtor"). The court has approved a disclosure statement for the Plan (the "Disclosure Statement"). The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy from Frank L. Amodeo, 1311 Hoffner Avenue, Orlando, Florida 32809, (407) 406-1315, flahome32801@gmail.com. Court approval of the Disclosure Statement does not indicate approval of the Plan by the court.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in Class 1 under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.

This ballot must be received by the Clerk no later than 5:00 p.m. (Eastern Time) on _____, 2026, the deadline established by order of the court. If your ballot is not received by the Clerk by that deadline, and such time is not extended, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the bankruptcy court, it will be binding on you whether or not you vote.

**ACCEPTANCE OR REJECTION OF THE PLAN**

The undersigned, the holder of a Class 1 claim against the Debtor in the unpaid amount of _____ Dollars ($ _____ ):

*(Check one box only)*

☐ **ACCEPTS THE PLAN**

☐ **REJECTS THE PLAN**

Dated: _____

Print or type name: _____

Signature: _____

Title (if corporation or partnership): _____

Address: _____

_____

**RETURN THIS BALLOT TO:**

Clerk, United States Bankruptcy Court, Middle District of Florida
George C. Young Federal Courthouse
400 W. Washington Street, Suite 5100, Orlando, Florida 32801

or electronically via the Chapter 11 eBallot hyperlink on the court's website, www.flmb.uscourts.gov. Local Rule 3018-1.

1



UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA — ORLANDO DIVISION

In re:

**HOMEMAKERS REAL ESTATE, LLC,**

Debtor.

/

Case No. 6:25-bk-05570-GER

Chapter 11

**BALLOT FOR ACCEPTING OR REJECTING THE PLAN OF REORGANIZATION**
**PROPOSED BY FRANK L. AMODEO**

### CLASS 2 — Secured Claim of Mainstreet Community Bank (Loan One)

Frank L. Amodeo, a creditor and party in interest (the "Plan Proponent"), filed a Plan of Reorganization dated July 13, 2026 (the "Plan") for Homemakers Real Estate, LLC (the "Debtor"). The court has approved a disclosure statement for the Plan (the "Disclosure Statement"). The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy from Frank L. Amodeo, 1311 Hoffner Avenue, Orlando, Florida 32809, (407) 406-1315, flahome32801@gmail.com. Court approval of the Disclosure Statement does not indicate approval of the Plan by the court.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in Class 2 under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.

This ballot must be received by the Clerk no later than 5:00 p.m. (Eastern Time) on _____, 2026, the deadline established by order of the court. If your ballot is not received by the Clerk by that deadline, and such time is not extended, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the bankruptcy court, it will be binding on you whether or not you vote.

### ACCEPTANCE OR REJECTION OF THE PLAN

The undersigned, the holder of a Class 2 claim against the Debtor in the unpaid amount of _____ Dollars ($_____):

*(Check one box only)*

☐ **ACCEPTS THE PLAN**

☐ **REJECTS THE PLAN**

Dated:_____

Print or type name: _____

Signature:_____

Title (if corporation or partnership): _____

Address:_____

_____

**RETURN THIS BALLOT TO:**

Clerk, United States Bankruptcy Court, Middle District of Florida
George C. Young Federal Courthouse
400 W. Washington Street, Suite 5100, Orlando, Florida 32801

or electronically via the Chapter 11 eBallot hyperlink on the court's website, www.flmb.uscourts.gov. Local Rule 3018-1.

3



4

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA — ORLANDO DIVISION

In re:

**HOMEMAKERS REAL ESTATE, LLC,**

Debtor.

Case No. 6:25-bk-05570-GER

Chapter 11

/

## BALLOT FOR ACCEPTING OR REJECTING THE PLAN OF REORGANIZATION PROPOSED BY FRANK L. AMODEO
### CLASS 3 — Secured Claim of Mainstreet Community Bank (Loan Two)

Frank L. Amodeo, a creditor and party in interest (the "Plan Proponent"), filed a Plan of Reorganization dated July 13, 2026 (the "Plan") for Homemakers Real Estate, LLC (the "Debtor"). The court has approved a disclosure statement for the Plan (the "Disclosure Statement"). The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy from Frank L. Amodeo, 1311 Hoffner Avenue, Orlando, Florida 32809, (407) 406-1315, flahome32801@gmail.com. Court approval of the Disclosure Statement does not indicate approval of the Plan by the court.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in Class 3 under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.

This ballot must be received by the Clerk no later than 5:00 p.m. (Eastern Time) on _____, 2026, the deadline established by order of the court. If your ballot is not received by the Clerk by that deadline, and such time is not extended, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the bankruptcy court, it will be binding on you whether or not you vote.

### ACCEPTANCE OR REJECTION OF THE PLAN

The undersigned, the holder of a Class 3 claim against the Debtor in the unpaid amount of _____ Dollars ($_____):

*(Check one box only)*

☐ **ACCEPTS THE PLAN**

☐ **REJECTS THE PLAN**

Dated: _____

Print or type name: _____

Signature: _____

Title (if corporation or partnership): _____

Address: _____

_____

**RETURN THIS BALLOT TO:**

Clerk, United States Bankruptcy Court, Middle District of Florida
George C. Young Federal Courthouse
400 W. Washington Street, Suite 5100, Orlando, Florida 32801

or electronically via the Chapter 11 eBallot hyperlink on the court's website, www.flmb.uscourts.gov. Local Rule 3018-1.

5



6

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA — ORLANDO DIVISION

In re:

**HOMEMAKERS REAL ESTATE, LLC,**

Debtor.

/

Case No. 6:25-bk-05570-GER

Chapter 11

**BALLOT FOR ACCEPTING OR REJECTING THE PLAN OF REORGANIZATION
PROPOSED BY FRANK L. AMODEO**

**CLASS 4 — Secured Claim of Tamamoi, LLC**

Frank L. Amodeo, a creditor and party in interest (the "Plan Proponent"), filed a Plan of Reorganization dated July 13, 2026 (the "Plan") for Homemakers Real Estate, LLC (the "Debtor"). The court has approved a disclosure statement for the Plan (the "Disclosure Statement"). The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy from Frank L. Amodeo, 1311 Hoffner Avenue, Orlando, Florida 32809, (407) 406-1315, flahome32801@gmail.com. Court approval of the Disclosure Statement does not indicate approval of the Plan by the court.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in Class 4 under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.

This ballot must be received by the Clerk no later than 5:00 p.m. (Eastern Time) on _____, 2026, the deadline established by order of the court. If your ballot is not received by the Clerk by that deadline, and such time is not extended, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the bankruptcy court, it will be binding on you whether or not you vote.

**ACCEPTANCE OR REJECTION OF THE PLAN**

The undersigned, the holder of a Class 4 claim against the Debtor in the unpaid amount of _____ Dollars ($_____):

*(Check one box only)*

☐ **ACCEPTS THE PLAN**

☐ **REJECTS THE PLAN**

Dated: _____

Print or type name: _____

Signature: _____

Title (if corporation or partnership): _____

Address: _____

_____

**RETURN THIS BALLOT TO:**

Clerk, United States Bankruptcy Court, Middle District of Florida
George C. Young Federal Courthouse
400 W. Washington Street, Suite 5100, Orlando, Florida 32801

or electronically via the Chapter 11 eBallot hyperlink on the court's website, www.flmb.uscourts.gov. Local Rule 3018-1.

7



8

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA — ORLANDO DIVISION

In re:

**HOMEMAKERS REAL ESTATE, LLC,**

Debtor.

Case No. 6:25-bk-05570-GER

Chapter 11

/

**BALLOT FOR ACCEPTING OR REJECTING THE PLAN OF REORGANIZATION
PROPOSED BY FRANK L. AMODEO**

**CLASS 5 — Secured Claim of Carton Family Trust of 1992**

Frank L. Amodeo, a creditor and party in interest (the "Plan Proponent"), filed a Plan of Reorganization dated July 13, 2026 (the "Plan") for Homemakers Real Estate, LLC (the "Debtor"). The court has approved a disclosure statement for the Plan (the "Disclosure Statement"). The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy from Frank L. Amodeo, 1311 Hoffner Avenue, Orlando, Florida 32809, (407) 406-1315, flahome32801@gmail.com. Court approval of the Disclosure Statement does not indicate approval of the Plan by the court.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in Class 5 under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.

This ballot must be received by the Clerk no later than 5:00 p.m. (Eastern Time) on _____, 2026, the deadline established by order of the court. If your ballot is not received by the Clerk by that deadline, and such time is not extended, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the bankruptcy court, it will be binding on you whether or not you vote.

**ACCEPTANCE OR REJECTION OF THE PLAN**

The undersigned, the holder of a Class 5 claim against the Debtor in the unpaid amount of _____ Dollars ($_____):

*(Check one box only)*

☐ **ACCEPTS THE PLAN**

☐ **REJECTS THE PLAN**

Dated: _____

Print or type name: _____

Signature: _____

Title (if corporation or partnership): _____

Address: _____

_____

**RETURN THIS BALLOT TO:**

Clerk, United States Bankruptcy Court, Middle District of Florida
George C. Young Federal Courthouse
400 W. Washington Street, Suite 5100, Orlando, Florida 32801

or electronically via the Chapter 11 eBallot hyperlink on the court's website, www.flmb.uscourts.gov.
Local Rule 3018-1.

9



10

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA — ORLANDO DIVISION

In re:

**HOMEMAKERS REAL ESTATE, LLC,**

    Debtor.

/

Case No. 6:25-bk-05570-GER

Chapter 11

**BALLOT FOR ACCEPTING OR REJECTING THE PLAN OF REORGANIZATION
PROPOSED BY FRANK L. AMODEO**

**CLASS 6 — Secured Claim of Brevard County Tax Collector**

Frank L. Amodeo, a creditor and party in interest (the "Plan Proponent"), filed a Plan of Reorganization dated July 13, 2026 (the "Plan") for Homemakers Real Estate, LLC (the "Debtor"). The court has approved a disclosure statement for the Plan (the "Disclosure Statement"). The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy from Frank L. Amodeo, 1311 Hoffner Avenue, Orlando, Florida 32809, (407) 406-1315, flahome32801@gmail.com. Court approval of the Disclosure Statement does not indicate approval of the Plan by the court.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in Class 6 under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.

This ballot must be received by the Clerk no later than 5:00 p.m. (Eastern Time) on _____, 2026, the deadline established by order of the court. If your ballot is not received by the Clerk by that deadline, and such time is not extended, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the bankruptcy court, it will be binding on you whether or not you vote.

**ACCEPTANCE OR REJECTION OF THE PLAN**

The undersigned, the holder of a Class 6 claim against the Debtor in the unpaid amount of _____ Dollars ($_____):

*(Check one box only)*

    ☐ ACCEPTS THE PLAN

    ☐ REJECTS THE PLAN

Dated: _____

Print or type name: _____

Signature: _____

Title (if corporation or partnership): _____

Address: _____

_____

**RETURN THIS BALLOT TO:**

Clerk, United States Bankruptcy Court, Middle District of Florida
George C. Young Federal Courthouse
400 W. Washington Street, Suite 5100, Orlando, Florida 32801

or electronically via the Chapter 11 eBallot hyperlink on the court's website, www.flmb.uscourts.gov.
Local Rule 3018-1.

11



12

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA — ORLANDO DIVISION

In re:

Case No. 6:25-bk-05570-GER

**HOMEMAKERS REAL ESTATE, LLC,**

Chapter 11

Debtor.

/

**BALLOT FOR ACCEPTING OR REJECTING THE PLAN OF REORGANIZATION
PROPOSED BY FRANK L. AMODEO**

**CLASS 7 — Secured Claim of Cape Crossing Townhome Owners Association**

Frank L. Amodeo, a creditor and party in interest (the "Plan Proponent"), filed a Plan of Reorganization dated July 13, 2026 (the "Plan") for Homemakers Real Estate, LLC (the "Debtor"). The court has approved a disclosure statement for the Plan (the "Disclosure Statement"). The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy from Frank L. Amodeo, 1311 Hoffner Avenue, Orlando, Florida 32809, (407) 406-1315, flahome32801@gmail.com. Court approval of the Disclosure Statement does not indicate approval of the Plan by the court.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in Class 7 under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.

This ballot must be received by the Clerk no later than 5:00 p.m. (Eastern Time) on _____, 2026, the deadline established by order of the court. If your ballot is not received by the Clerk by that deadline, and such time is not extended, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the bankruptcy court, it will be binding on you whether or not you vote.

**ACCEPTANCE OR REJECTION OF THE PLAN**

The undersigned, the holder of a Class 7 claim against the Debtor in the unpaid amount of _____ Dollars ($_____):

*(Check one box only)*

□ **ACCEPTS THE PLAN**

□ **REJECTS THE PLAN**

Dated: _____

Print or type name: _____

Signature: _____

Title (if corporation or partnership): _____

Address: _____
_____

**RETURN THIS BALLOT TO:**

Clerk, United States Bankruptcy Court, Middle District of Florida
George C. Young Federal Courthouse
400 W. Washington Street, Suite 5100, Orlando, Florida 32801

or electronically via the Chapter 11 eBallot hyperlink on the court's website, www.flmb.uscourts.gov. Local Rule 3018-1.

13



14

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA — ORLANDO DIVISION

In re:

**HOMEMAKERS REAL ESTATE, LLC,**

Debtor.

/

Case No. 6:25-bk-05570-GER

Chapter 11

**BALLOT FOR ACCEPTING OR REJECTING THE PLAN OF REORGANIZATION
PROPOSED BY FRANK L. AMODEO**

**CLASS 8 — Secured Claim of Cape Crossing Condominium Association**

Frank L. Amodeo, a creditor and party in interest (the "Plan Proponent"), filed a Plan of Reorganization dated July 13, 2026 (the "Plan") for Homemakers Real Estate, LLC (the "Debtor"). The court has approved a disclosure statement for the Plan (the "Disclosure Statement"). The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy from Frank L. Amodeo, 1311 Hoffner Avenue, Orlando, Florida 32809, (407) 406-1315, flahome32801@gmail.com. Court approval of the Disclosure Statement does not indicate approval of the Plan by the court.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in Class 8 under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.

This ballot must be received by the Clerk no later than 5:00 p.m. (Eastern Time) on _____, 2026, the deadline established by order of the court. If your ballot is not received by the Clerk by that deadline, and such time is not extended, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the bankruptcy court, it will be binding on you whether or not you vote.

**ACCEPTANCE OR REJECTION OF THE PLAN**

The undersigned, the holder of a Class 8 claim against the Debtor in the unpaid amount of _____ Dollars ($ _____ ):

*(Check one box only)*

☐ **ACCEPTS THE PLAN**

☐ **REJECTS THE PLAN**

Dated: _____

Print or type name: _____

Signature: _____

Title (if corporation or partnership): _____

Address: _____

_____

**RETURN THIS BALLOT TO:**

Clerk, United States Bankruptcy Court, Middle District of Florida
George C. Young Federal Courthouse
400 W. Washington Street, Suite 5100, Orlando, Florida 32801

or electronically via the Chapter 11 eBallot hyperlink on the court's website, www.flmb.uscourts.gov. Local Rule 3018-1.

15



16

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA — ORLANDO DIVISION

In re:

**HOMEMAKERS REAL ESTATE, LLC,**

Debtor.

Case No. 6:25-bk-05570-GER

Chapter 11

/

**BALLOT FOR ACCEPTING OR REJECTING THE PLAN OF REORGANIZATION**
**PROPOSED BY FRANK L. AMODEO**
### CLASS 9 — General Unsecured Claims (Non-Insider)

Frank L. Amodeo, a creditor and party in interest (the "Plan Proponent"), filed a Plan of Reorganization dated July 13, 2026 (the "Plan") for Homemakers Real Estate, LLC (the "Debtor"). The court has approved a disclosure statement for the Plan (the "Disclosure Statement"). The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy from Frank L. Amodeo, 1311 Hoffner Avenue, Orlando, Florida 32809, (407) 406-1315, flahome32801@gmail.com. Court approval of the Disclosure Statement does not indicate approval of the Plan by the court.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in Class 9 under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.

This ballot must be received by the Clerk no later than 5:00 p.m. (Eastern Time) on _____, 2026, the deadline established by order of the court. If your ballot is not received by the Clerk by that deadline, and such time is not extended, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the bankruptcy court, it will be binding on you whether or not you vote.

### ACCEPTANCE OR REJECTION OF THE PLAN

The undersigned, the holder of a Class 9 claim against the Debtor in the unpaid amount of _____ Dollars ($_____):

*(Check one box only)*

☐ **ACCEPTS THE PLAN**

☐ **REJECTS THE PLAN**

Dated: _____

Print or type name: _____

Signature: _____

Title (if corporation or partnership): _____

Address: _____

_____

**RETURN THIS BALLOT TO:**

Clerk, United States Bankruptcy Court, Middle District of Florida
George C. Young Federal Courthouse
400 W. Washington Street, Suite 5100, Orlando, Florida 32801

or electronically via the Chapter 11 eBallot hyperlink on the court's website, www.flmb.uscourts.gov. Local Rule 3018-1.

17



18

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA — ORLANDO DIVISION

In re:

**HOMEMAKERS REAL ESTATE, LLC,**

Debtor.

Case No. 6:25-bk-05570-GER

Chapter 11

/

**BALLOT FOR ACCEPTING OR REJECTING THE PLAN OF REORGANIZATION
PROPOSED BY FRANK L. AMODEO**
**CLASS 10 — Insider Unsecured Claims**

Frank L. Amodeo, a creditor and party in interest (the "Plan Proponent"), filed a Plan of Reorganization dated July 13, 2026 (the "Plan") for Homemakers Real Estate, LLC (the "Debtor"). The court has approved a disclosure statement for the Plan (the "Disclosure Statement"). The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy from Frank L. Amodeo, 1311 Hoffner Avenue, Orlando, Florida 32809, (407) 406-1315, flahome32801@gmail.com. Court approval of the Disclosure Statement does not indicate approval of the Plan by the court.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in Class 10 under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.

This ballot must be received by the Clerk no later than 5:00 p.m. (Eastern Time) on _____, 2026, the deadline established by order of the court. If your ballot is not received by the Clerk by that deadline, and such time is not extended, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the bankruptcy court, it will be binding on you whether or not you vote.

**ACCEPTANCE OR REJECTION OF THE PLAN**

The undersigned, the holder of a Class 10 claim against the Debtor in the unpaid amount of _____ Dollars ($ _____ ):

*(Check one box only)*

□ **ACCEPTS THE PLAN**

□ **REJECTS THE PLAN**

Dated: _____

Print or type name: _____

Signature: _____

Title (if corporation or partnership): _____

Address: _____

_____

**RETURN THIS BALLOT TO:**

Clerk, United States Bankruptcy Court, Middle District of Florida
George C. Young Federal Courthouse
400 W. Washington Street, Suite 5100, Orlando, Florida 32801

or electronically via the Chapter 11 eBallot hyperlink on the court's website, www.flmb.uscourts.gov. Local Rule 3018-1.

19



UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA — ORLANDO DIVISION

In re:

**HOMEMAKERS REAL ESTATE, LLC,**

    Debtor.

Case No. 6:25-bk-05570-GER

Chapter 11

/

## BALLOT FOR ACCEPTING OR REJECTING THE PLAN OF REORGANIZATION PROPOSED BY FRANK L. AMODEO
### CLASS 11 — Interests in the Debtor

Frank L. Amodeo, a creditor and party in interest (the "Plan Proponent"), filed a Plan of Reorganization dated July 13, 2026 (the "Plan") for Homemakers Real Estate, LLC (the "Debtor"). The court has approved a disclosure statement for the Plan (the "Disclosure Statement"). The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy from Frank L. Amodeo, 1311 Hoffner Avenue, Orlando, Florida 32809, (407) 406-1315, flahome32801@gmail.com. Court approval of the Disclosure Statement does not indicate approval of the Plan by the court.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your interest has been placed in Class 11 under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.

This ballot must be received by the Clerk no later than 5:00 p.m. (Eastern Time) on _____, 2026, the deadline established by order of the court. If your ballot is not received by the Clerk by that deadline, and such time is not extended, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the bankruptcy court, it will be binding on you whether or not you vote.

### ACCEPTANCE OR REJECTION OF THE PLAN

The undersigned, the holder of a Class 11 equity interest in the Debtor:
*(Check one box only)*

    ☐ **ACCEPTS THE PLAN**

    ☐ **REJECTS THE PLAN**

Dated: _____

Print or type name: _____

Signature: _____

Title (if corporation or partnership): _____

Address: _____

_____

**RETURN THIS BALLOT TO:**

Clerk, United States Bankruptcy Court, Middle District of Florida
George C. Young Federal Courthouse
400 W. Washington Street, Suite 5100, Orlando, Florida 32801

or electronically via the Chapter 11 eBallot hyperlink on the court's website, www.flmb.uscourts.gov. Local Rule 3018-1.

21