UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

INTAKE – USBC
13 JUL 2026 PM3:08

| | |
|---|---|
| In re:<br><br>**HOMEMAKERS REAL ESTATE, LLC,**<br><br>　　Debtor.<br><br>　　　　　　　　　　/ | Case No. 6:25-bk-05570-GER<br><br>Chapter 11 |

## PLAN OF REORGANIZATION PROPOSED BY FRANK L. AMODEO,
### a Creditor and Party in Interest

Frank L. Amodeo
1311 Hoffner Avenue, Orlando, Florida 32809
(407) 406-1315 | flahome32801@gmail.com

Dated: July 13, 2026

I propose the following plan of reorganization (the "Plan") for Homemakers

Real Estate, LLC (the "Debtor") under Chapter 11 of the Bankruptcy Code. The

Debtor's exclusive period to file a plan ended when the court appointed a Chapter

11 trustee, and section 1121(c) permits any party in interest — including a creditor

— to file a plan. I am a creditor of the Debtor. The accompanying Disclosure

Statement discusses the Debtor's history, business, projections, and risk factors,

and summarizes the Plan.

1

## Article 1 — Definitions and Construction

The following terms have the meanings set forth below. A term used but not defined here carries the meaning the Bankruptcy Code gives it. The rules of construction in section 102 of the Code apply.

"**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in § 503(b) of the Code and entitled to priority under § 507(a)(2), including the actual and necessary costs of preserving the Estate, compensation for professional services allowed under §§ 330(a) or 331, and all fees and charges assessed under Chapter 123 of Title 28.

"**Allowed Claim**" means a Claim as to which a proof of Claim has been timely filed or deemed filed under § 1111(a), and as to which no objection has been interposed within the applicable period, or as to which any objection has been resolved by a Final Order. An Allowed Claim does not include post-petition interest unless the Plan expressly provides it.

"**Avoidance Actions**" means all claims and causes of action arising under §§ 502, 510, 542–545, 547, 548, 549, 550, 551, and 553 of the Code, or under applicable non-bankruptcy law, including the recovery of preferential transfers, fraudulent transfers, post-petition transfers, and unauthorized conveyances described in the Disclosure Statement, computed from the Relation-Back Date if the pending Rule 60 motions in the First Bankruptcy Case are granted.

2

**"Bankruptcy Code" or "Code"** means Title 11 of the United States Code, 11 U.S.C. § 101, et seq.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division.

**"Causes of Action"** means all claims, rights, and causes of action of the Debtor or the Estate, including the Avoidance Actions and claims for breach of fiduciary duty, conversion, fraud, civil conspiracy, usury, professional malpractice, and the tort and civil RICO claims scheduled by the Debtor, together with all proceeds thereof. All Causes of Action transfer to and are prosecuted by the Recovery Trust as provided in Article 6.

**"Chapter 11 Trustee" or "Trustee"** means Lara Roeske Fernandez, the duly appointed and acting Chapter 11 trustee of the Debtor, and any successor.

**"Claim"** has the meaning set forth in § 101(5) of the Code.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan under § 1129 of the Code; the "Confirmation Date" is the date of its entry.

**"Disclosure Statement"** means the disclosure statement filed in respect of this Plan under § 1125 of the Code, as amended.

**"Dixon Turnover Funds"** means the $880,000 in post-petition funds that P.E. Dixon and Crescent Sound collected and held in a separate account and are to turn over to the Estate, as described in the Disclosure Statement.

3

**"Effective Date"** means the first Business Day that is at least fourteen (14) days after the Confirmation Date and on which no stay of the Confirmation Order is in effect and the conditions in Article 8 are satisfied or waived.

**"Estate"** means the estate created under § 541 of the Code on the Petition Date.

**"Final Order"** means an order no longer subject to appeal, certiorari, reargument, or rehearing, and as to which no such proceeding is pending.

**"First Bankruptcy Case"** means the voluntary Chapter 11 case In re Homemakers Real Estate, LLC, No. 6:25-bk-02685-GER (Bankr. M.D. Fla. 2025), filed May 5, 2025 and dismissed June 27, 2025, in which two Rule 60 motions seeking vacatur of the dismissal and consolidation with this Bankruptcy Case remain pending. (Docs. 87, 88.)

**"Impaired"** means impaired within the meaning of § 1124 of the Code.

**"Insider"** has the meaning set forth in § 101(31) of the Code.

**"Interest"** means an equity or membership interest in the Debtor and any right arising therefrom.

**"Petition Date"** means September 2, 2025, the date the involuntary petition commencing this Bankruptcy Case was filed; the order for relief was entered May 21, 2026. If the pending Rule 60 motions in the First Bankruptcy Case are granted and the cases are consolidated, the operative petition date for computing the reach-back and avoidance periods under §§ 544, 546, 547, 548, and 549 of the Code will

4

be the Relation-Back Date, and all Avoidance Actions and Recovery Trust Claims will be computed from the Relation-Back Date; vacatur would also render the revenues diverted between June 27, 2025 and May 21, 2026 avoidable post-petition transfers under § 549. Nothing in the Plan waives or limits the Estate's rights under those motions. The adequate-protection payments under Section 4.1(a) are computed in all events from September 2, 2025.

**"Plan Proponent"** means Frank L. Amodeo, a creditor and party in interest.

**"Recovery Trust"** means the litigation and recovery trust established under Section 6.3 of the Plan on the Effective Date for the benefit of holders of Claims entitled to distribution under the Plan, and administered by the Recovery Trustee.

**"Recovery Trustee"** means Lara Roeske Fernandez, the Chapter 11 Trustee, who will serve as trustee of the Recovery Trust and administer it through its conclusion, and any successor trustee of the Recovery Trust.

**"Recovery Trust Claims"** means all Causes of Action of the Debtor and the Estate, including (a) the Avoidance Actions — among them the claims for preferential transfers under § 547, fraudulent transfers under §§ 544 and 548, and post-petition transfers under § 549; (b) the Causes of Action against P.E. Dixon, KAE, and ZPD, LLC; (c), separately, the Causes of Action against Tamamoi, LLC; and (d) the claim and right to recover the one unit that was foreclosed, together in

5

each case with all proceeds thereof, all of which transfer to and are prosecuted by the Recovery Trust.

**"Relation-Back Date"** means May 5, 2025, the petition date of the First Bankruptcy Case, which becomes the operative petition date for computing avoidance and reach-back periods if the pending Rule 60 motions in the First Bankruptcy Case are granted and the cases are consolidated.

**"Reorganized Debtor"** means Homemakers Real Estate, LLC on and after the Effective Date.

**"Reorganization Manager"** means the person engaged to serve the combined enterprise if the components of the Resort are combined as Section 6.2 contemplates, as described in Section 6.7.

**"Secured Claim"** means a Claim secured by a valid, perfected, and unavoidable Lien on property of the Estate, to the extent of the value of such property under § 506(a).

**"Unsecured Claim"** means a Claim that is not a Secured Claim, Administrative Claim, or Priority Claim.

### Article 2 — Classification of Claims and Interests

Under § 1123(a)(1) of the Code, Administrative Claims and Priority Tax Claims are not classified; Article 3 treats them. All other Claims against, and Interests in, the Debtor are classified as follows.



| Class | Designation | Status | Voting |
|---|---|---|---|
| 1 | Secured Claim of Jetton Investments, Inc. / Paul Rene, Jr. | Impaired | Entitled to vote |
| 2 | Secured Claim of Mainstreet Community Bank (Loan One) | Impaired | Entitled to vote |
| 3 | Secured Claim of Mainstreet Community Bank (Loan Two) | Impaired | Entitled to vote |
| 4 | Secured Claim of Tamamoi, LLC | Impaired | Entitled to vote |
| 5 | Secured Claim of Carton Family Trust of 1992 | Impaired | Entitled to vote |
| 6 | Secured Claim of Brevard County Tax Collector | Impaired | Entitled to vote |
| 7 | Secured Claim of Cape Crossing Townhome Owners Association | Impaired | Entitled to vote |
| 8 | Secured Claim of Cape Crossing Condominium Association | Impaired | Entitled to vote |
| 9 | General Unsecured Claims (Non-Insider) | Impaired | Entitled to vote |
| 10 | Insider Unsecured Claims | Impaired | Entitled to vote |
| 11 | Interests in the Debtor (Tiered Land Trust / Johnson) | Impaired | Entitled to vote* |

\* Horton S. Johnson holds the Class 11 Interest as Trustee of the Tiered Land Trust dated September 13, 2023 (or, if that trust is determined never to have been validly formed, dissolved, or wound up, as the restored owner of the Debtor), and retains it under the Plan. A pending declaratory action will determine the capacity in which Horton S. Johnson holds the Interest; the treatment is identical in either capacity. Johnson v. Crescent Sound Ltd., No. 2026-CA-001368-O (Fla. 9th Cir. Ct. 2026). The Class is Impaired and the holder is entitled to vote. No junior Class receives or retains property on account of its Interest ahead of a senior dissenting Class except as § 1129(b) permits, and I reserve all rights under § 1129(b).

7

## Article 3 — Treatment of Unclassified Claims

### 3.1 Administrative Claims.

Except to the extent a holder agrees to different treatment, each holder of an Allowed Administrative Claim will be paid in full, in Cash, on the later of the Effective Date or the date the Claim becomes Allowed, or as soon as practicable thereafter; ordinary-course Administrative Claims will be paid in the ordinary course. Administrative Claims include the allowed fees and expenses of the Chapter 11 Trustee and retained Professionals, subject to Bankruptcy Court approval under §§ 330 and 331.

### 3.2 United States Trustee Fees.

All fees due under 28 U.S.C. § 1930 will be paid in full on or before the Effective Date, and the Reorganized Debtor must continue to pay such fees until the case is closed, converted, or dismissed.

### 3.3 Priority Tax Claims.

Except to the extent a holder agrees to different treatment, each holder of an Allowed Priority Tax Claim will receive deferred Cash payments over a period not exceeding five (5) years from the Petition Date, with interest at the applicable statutory rate, under § 1129(a)(9)(C). I believe the scheduled priority tax obligations of the Internal Revenue Service and the Florida Department of

8

Revenue are subject to substantial dispute and may be reduced to zero following reconciliation.

## Article 4 — Treatment of Classified Claims and Interests

Treatment in this Article 4 refers exclusively to the Allowed Amount of each Claim. Notwithstanding Confirmation, I, the Reorganized Debtor, the Chapter 11 Trustee, and the Recovery Trustee each reserve the right to object to any Claim and to prosecute any Cause of Action, including objections seeking reduction, disallowance, equitable subordination, or recharacterization.

## 4.1 Common Treatment of Secured Claims (Classes 1 through 8).

Each holder of an Allowed Secured Claim in Classes 1 through 8 retains its Lien to the same validity, extent, and priority as existed on the Petition Date, subject to the Estate's rights to challenge the amount, validity, priority, and enforceability of the Claim and Lien. Although the collateral differs, each Allowed Secured Claim receives parallel treatment, as follows:

(a) Adequate-Protection Period. From the Petition Date through the Effective Date, each secured creditor will receive monthly adequate-protection payments computed at 4.8% per annum (0.4% per month) of its claimed amount, as set forth in the schedule below, funded as Section 6.4 provides from the Dixon Turnover Funds and from operating revenue.

9

**(b) Post-Confirmation Amortization.** Commencing the first day of the first full month after the Effective Date, each Allowed Secured Claim will be amortized over three hundred sixty (360) months at a fixed rate of six percent (6.0%) per annum, payable in equal monthly installments, with a balloon payment of the entire outstanding balance due sixty (60) months after the Effective Date.

**(c) Balloon / Exit.** I anticipate that, by the fifth anniversary of the Effective Date, the resort will be sufficiently seasoned to support a refinancing or going-concern sale satisfying the balloon obligations in full, as described in Article 6.

**(d) Cure of Arrearages and Defaults.** All arrearages and defaults of the secured creditors, together with the full Allowed Claims of the Brevard County Tax Collector (Class 6) and the Cape Crossing Townhome Owners Association (Class 7), will be cured and paid from the net proceeds of the Recovery Trust Claims, as and when recovered, in the order Section 6.6 sets forth.

The following schedule sets forth, for each secured Class, the claimed amount, monthly adequate-protection payment, monthly amortized installment, and projected balloon balance at month 60:

| Class / Creditor | Claimed Amount | Adequate Protection (mo.) | Amortized Installment (mo.) | Balloon (mo. 60) |
|---|---|---|---|---|
| Class 1: Jetton Investments, Inc. (assigned to Paul Rene, Jr.) | $1,634,600.00 | $6,538.40 | $9,800.25 | $1,521,066.52 |
| Class 2: Mainstreet Community Bank (Loan One) | $3,520,717.75 | $14,082.87 | $21,108.48 | $3,276,181.26 |

10

| Class / Creditor | Claimed Amount | Adequate Protection (mo.) | Amortized Installment (mo.) | Balloon (mo. 60) |
|---|---|---|---|---|
| Class 3: Mainstreet Community Bank (Loan Two) | $694,564.66 | $2,778.26 | $4,164.27 | $646,322.68 |
| Class 4: Tamamoi, LLC | $3,069,220.83 | $12,276.88 | $18,401.53 | $2,856,043.70 |
| Class 5: Carton Family Trust of 1992 | $376,757.47 | $1,507.03 | $2,258.85 | $350,589.24 |
| Class 6: Brevard County Tax Collector | $303,421.77 | $1,213.69 | $1,819.17 | $282,347.18 |
| Class 7: Cape Crossing Townhome Owners Association | $118,731.84 | $474.93 | $711.86 | $110,485.15 |
| Class 8: Cape Crossing Condominium Association | $445,810.10 | $1,783.24 | $2,672.86 | $414,845.72 |
| TOTAL (Classes 1–8) | $10,163,824.42 | $40,655.30 | $60,937.26 | $9,457,881.44 |

The adequate-protection and amortization figures are computed on the amounts the respective creditors assert and are not an admission of the validity or amount of any Claim. As the Disclosure Statement describes, I contend the Claims of Tamamoi, LLC (Class 4) and the Carton Family Trust (Class 5) are subject to forfeiture of all interest under the Florida usury statutes, and that each such Allowed Claim will be substantially reduced after reconciliation. *Fla. Stat. §§ 687.03, 687.04.*

**4.2 Class 1 — Jetton Investments, Inc. / Paul Rene, Jr. (Secured).**

Class 1 consists of the Allowed Secured Claim under the balloon mortgage recorded May 30, 2018 in the Public Records of Brevard County at Official Records Book 8176, Page 930 (CFN 2018121113), encumbering the underlying

resort land by metes and bounds, and assigned to Paul Rene, Jr. in 2022. The Bankruptcy Court has treated the Claim as allowed and undersecured. Class 1 receives the common secured treatment of Section 4.1. Class 1 is Impaired.

### 4.3 Classes 2 and 3 — Mainstreet Community Bank (Secured).

Classes 2 and 3 consist of the Allowed Secured Claims of Mainstreet Community Bank on its two loan facilities. Each receives the common secured treatment of Section 4.1, subject to the Estate's asserted offset for damages arising from the lender's conduct between February 2025 and February 2026, as the Disclosure Statement describes. Classes 2 and 3 are Impaired.

### 4.4 Classes 4 and 5 — Tamamoi, LLC and Carton Family Trust of 1992 (Secured).

Classes 4 and 5 consist of the Claims of Tamamoi, LLC (nine loans, one per unit) and the Carton Family Trust of 1992 (one loan on one unit), each originated by FDRE on materially identical terms (a 10% note rate, 18% default rate, and a 10% origination fee). I contend these loans bear an effective rate of approximately 25.6% per annum, exceeding Florida's 18% civil ceiling and reaching the criminal-usury threshold, so that all interest is forfeited and interest already paid is credited against principal. *Fla. Stat. §§ 687.03, 687.04.* The Allowed Secured Claim of each such creditor is limited to the principal lawfully due after that credit and receives the common secured treatment of Section 4.1. The Causes of Action against

12

Tamamoi, and the recovery of the one foreclosed unit, are Recovery Trust Claims prosecuted by the Recovery Trust under Article 6. Classes 4 and 5 are Impaired.

**4.5 Class 6 — Brevard County Tax Collector (Secured).**

Class 6 consists of the Allowed Secured Claim of the Brevard County Tax Collector for ad valorem real property taxes. I contend the underlying assessments overstate the fair market value of the units by approximately 25–30% and will contest them. The Allowed Class 6 Claim will be paid in full, with statutory interest, from recoveries under Section 6.6, and otherwise receives the common secured treatment of Section 4.1. Class 6 is Impaired.

**4.6 Classes 7 and 8 — Cape Crossing Associations (Secured).**

Classes 7 and 8 consist of the Allowed Secured Claims of the Cape Crossing Townhome Owners Association and the Cape Crossing Condominium Association for unpaid assessments. These Claims are disputed as to amount and subject to the Estate's affirmative claims for negligence and waste that diminished unit values by as much as $125,000 per unit. The full Allowed Class 7 Claim will be paid from recoveries under Section 6.6; each Class otherwise receives the common secured treatment of Section 4.1. Classes 7 and 8 are Impaired.

13

**4.7 Class 9 — General Unsecured Claims (Non-Insider).**

Class 9 consists of all Allowed Unsecured Claims of non-Insider creditors, estimated to total less than $1,000,000 in the aggregate. Each holder of an Allowed Class 9 Claim will be paid one hundred percent (100%) of its Allowed Claim, without post-petition interest, from the net proceeds of the Recovery Trust Claims; to the extent not so satisfied, all Allowed Class 9 Claims will be paid in full, without interest, no later than five (5) years after the Effective Date. The Plan dedicates ninety percent (90%) of net Cause-of-Action recoveries to unsecured creditors until paid in full. My own Claim, and the Claims of IMQA Investments Incorporated and CTO Holdings, Inc., are Class 9 Claims and receive no treatment different from any other non-Insider unsecured creditor. Class 9 is Impaired.

**4.8 Class 10 — Insider Unsecured Claims.**

Class 10 consists of the Allowed Unsecured Claims of Insiders, including the Claims of Horton Johnson. Holders of Allowed Class 10 Claims receive distributions only after all Allowed Administrative Claims, Priority Claims, Secured Claims (Classes 1–8), and Class 9 Claims have been satisfied or adequately reserved, and after the $1,000,000 property-improvement reserve in Article 6 is funded. Thereafter, holders share pro rata in remaining net recoveries. Class 10 is Impaired.

14

**4.9 Class 11 — Interests.**

Class 11 consists of the Interests in the Debtor, held by Horton S. Johnson as Trustee of the Tiered Land Trust dated September 13, 2023 (or, if that trust is determined never to have been validly formed, dissolved, or wound up, as the restored owner of the Debtor). A declaratory action pending in Orange County will determine the capacity in which Horton S. Johnson holds the Interest, and the treatment under this Section is identical in either capacity. *Johnson v. Crescent Sound Ltd.*, No. 2026-CA-001368-O (Fla. 9th Cir. Ct. 2026). The holder of the Class 11 Interest retains its Interest in the Reorganized Debtor, subject to the governance structure in Article 6, and receives no distribution on account of the Interest until all senior Classes are satisfied. Class 11 is Impaired.

**Article 5 — Executory Contracts and Unexpired Leases**

All executory contracts and unexpired leases not previously assumed or rejected, and not the subject of a pending motion to assume as of the Confirmation Date, are rejected as of the Effective Date, except any contract or lease specifically identified for assumption in a schedule filed before the Confirmation Hearing. Any rejection-damages Claim must be filed within thirty (30) days after entry of the order authorizing rejection (or the Confirmation Order, if rejection occurs thereunder), and any such Allowed Claim will be treated as a Class 9 General Unsecured Claim.

15

## Article 6 — Means of Implementation

### 6.1 Overview.

The Plan will be implemented through (a) continued operation of the Debtor's 27-unit vacation-rental business as a going concern — under the direction and control of the Chapter 11 Trustee until the Effective Date, and thereafter under the governance structure of Section 6.7; (b) the establishment of the Recovery Trust — which holds all of the Estate's Causes of Action, including the claims for preferences and fraudulent transfers — to prosecute and recover them to conclusion; (c) consolidation of the resort through acquisition of related assets; and (d) a refinancing or going-concern sale on or before the fifth anniversary of the Effective Date.

### 6.2 Operating Plan.

The Debtor, under the direction and control of the Chapter 11 Trustee until the Effective Date, and thereafter the Reorganized Debtor under the governance of Section 6.7, will: (1) stabilize the Debtor's vacation-rental operations; (2) cause Canaveral Crossroads, LLC to be placed into bankruptcy and acquired by the Debtor so the resort's components are combined into a single, self-contained enterprise; (3) propose to the McPhillips interests a combination of resort operations into a single operating entity, with management potentially vested in Michael McPhillips; (4) engage a vacation-rental investment bank to arrange the

16

financing necessary to acquire the remaining vacation-rental units; and (5) thereafter, through that investment bank, secure a strategic buyer or the McPhillips family to purchase the restored resort at fair market value (estimated at $90,000,000 to $100,000,000 for a restored resort of 82 vacation-rental units, 147 boat slips, and EBITDA potential of $8,000,000 or more).

**6.3 Establishment and Funding of the Recovery Trust.**

On the Effective Date, the Recovery Trust will be established as a trust for the benefit of the holders of Claims entitled to distribution under the Plan. Lara Roeske Fernandez, the Chapter 11 Trustee, will serve as the Recovery Trustee and will administer, prosecute, and conclude the Recovery Trust and the Recovery Trust Claims. The Recovery Trust will be funded with Two Hundred Fifty Thousand Dollars ($250,000) from the Dixon Turnover Funds, transferred to the Recovery Trust on or promptly after the Effective Date. On the Effective Date, the Recovery Trust Claims — all of the Estate's Causes of Action — vest in and transfer to the Recovery Trust, including: (a) the Avoidance Actions, among them the claims for preferential transfers, fraudulent transfers, and post-petition transfers; (b) the Causes of Action against P.E. Dixon, KAE, and ZPD, LLC; (c), separately, the Causes of Action against Tamamoi, LLC; and (d) the claim and right to recover the one unit that was foreclosed. The Recovery Trustee has full authority to investigate, commence, prosecute, settle, compromise, and abandon

17

the Recovery Trust Claims, to retain counsel and other professionals, and to take all actions necessary to administer the Recovery Trust through its conclusion, in each case subject to such Bankruptcy Court approval as may be required. The reasonable fees, costs, and expenses of the Recovery Trust are paid first from the funding described above and then from the gross proceeds of the Recovery Trust Claims before distribution.

**6.4 Use of the Dixon Turnover Funds.**

P.E. Dixon and Crescent Sound must turn over to the Estate the Dixon Turnover Funds — the $880,000 in post-petition funds collected and held in a separate account. The Dixon Turnover Funds will be applied as follows: (a) Two Hundred Fifty Thousand Dollars ($250,000) transfers to the Recovery Trust to fund the prosecution of the Recovery Trust Claims, as Section 6.3 provides; and (b) the remaining Six Hundred Thirty Thousand Dollars ($630,000) funds the operations of the Reorganized Debtor and the adequate-protection payments to the secured creditors (Classes 1 through 8) provided in Section 4.1. The turnover of the Dixon Turnover Funds is without prejudice to, and will be credited against, the Estate's further recoveries against P.E. Dixon on the Recovery Trust Claims.

**6.5 Identified Recovery Sources.**

The Recovery Trust holds every Cause of Action of the Estate; no Cause of Action vests in the Reorganized Debtor for prosecution. The identified recovery

18

sources include: (a) the turnover of the $880,000 Dixon Turnover Funds held in a separate account by P.E. Dixon and Crescent Sound; (b) preferential transfers to the Dixon lenders of approximately $1,400,000, with the precise amount to be fixed by a forensic accounting now underway; (c) the $1,166,008.69 in interest the Debtor paid to Tamamoi, LLC, forfeited under Fla. Stat. §§ 687.03 and 687.04 and recoverable or credited against principal, together with the corresponding $129,556.52 paid to the Carton Family Trust; (d) the recovery of at least one unit fraudulently conveyed out of the Estate, adding a minimum of $183,000 in net equity and more likely $250,000 to $300,000; and (e) claims for breach of fiduciary duty, conversion, fraud, and civil RICO against Crescent Sound, P.E. Dixon, and related parties that, given applicable treble- and punitive-damages statutes, may yield a collectible recovery of $15,000,000 or more, together with affirmative claims against the Cape Crossing associations and the title companies. The Recovery Trustee may coordinate with the committee of unsecured creditors, if one is appointed.

**6.6 Waterfall — Distribution of Recoveries.**

Net proceeds of the Recovery Trust Claims, distributed by the Recovery Trustee after the costs of recovery, including professional fees, will be applied in the following order, consistent with the treatment of Claims under the Plan: (1) to cure all arrearages and defaults of the secured creditors and to bring all Allowed

19

Secured Claims (Classes 1–8) current, including the full Allowed Claims of Classes 6 and 7; (2) to satisfy all Allowed Class 9 General Unsecured Claims in full; (3) to fund a $1,000,000 reserve for capital improvements to the Debtor's properties; and (4) to satisfy the remaining Allowed Class 10 Insider Unsecured Claims and, thereafter, the Class 11 Interest. Ninety percent (90%) of net Cause-of-Action recoveries will be devoted to unsecured creditors until paid in full.

**6.7 Governance of the Reorganized Debtor.**

Governance under the Plan proceeds in three stages. First, while this case proceeds to conclusion, the Debtor remains under the direction and control of the Chapter 11 Trustee, and I propose and will support the appointment of a committee of unsecured creditors under § 1102 of the Code to monitor operational performance and assist the Chapter 11 Trustee. Second, on the Effective Date, ownership of the Reorganized Debtor rests with Horton S. Johnson, in the capacity the Declaratory Action determines, and Horton S. Johnson will oversee a professional management company engaged to operate the resort day to day and will be responsible for effectuating the Plan. Third, if agreements are reached to combine the Debtor with the other components of the Resort as Section 6.2 contemplates, the combined enterprise would be governed by a Board of Directors comprising Horton S. Johnson, Michael McPhillips, and Neil Buchalter, with Michael McPhillips as President and Chief Executive Officer and Ross Johnston as

Investor and Finance Officer and as Reorganization Manager; that structure takes effect only upon the combination, not upon Confirmation. I support the continued service of Lara Roeske Fernandez as Chapter 11 Trustee and as Recovery Trustee.

## 6.8 Vesting of Assets.

Except as the Plan or Confirmation Order otherwise provides, on the Effective Date all property of the Estate other than the Recovery Trust Claims vests in the Reorganized Debtor free and clear of all Claims and Interests, except the Liens retained by holders of Allowed Secured Claims under Article 4 and the obligations created under the Plan; the Recovery Trust Claims vest in the Recovery Trust as Section 6.3 provides.

## 6.9 Settlement of Claims.

Under Bankruptcy Rule 9019 and in consideration of the distributions and benefits provided under the Plan, the Plan constitutes a good-faith compromise and settlement of all Claims, Interests, and controversies resolved under it. Entry of the Confirmation Order constitutes Bankruptcy Court approval of those compromises as fair, equitable, reasonable, and in the best interests of the Debtor, the Estate, and holders of Claims and Interests.

## Article 7 — Distributions and Disputed Claims

### 7.1 Distribution Agents.

The Reorganized Debtor acts as Distribution Agent for distributions from operations, and the Recovery Trustee makes distributions of the net proceeds of the Recovery Trust Claims, in each case in accordance with Section 6.6. No distribution will be made on account of a Disputed Claim until it becomes an Allowed Claim.

### 7.2 Objections to Claims.

Objections to Claims may be filed by the Chapter 11 Trustee, the Recovery Trustee, the Reorganized Debtor, or me on or before the date that is one hundred eighty (180) days after the Effective Date, subject to extension by the Bankruptcy Court. Because Local Rule 3020-1(e) sets a sixty-day default for claim objections unless the court orders otherwise, the Confirmation Order will expressly provide for this 180-day period. I have identified substantial challenges to the Claims of P.E. Dixon and ZPD, LLC (each scheduled by the Debtor at $0.00 and marked disputed, contingent, and unliquidated), the Florida Department of Revenue, and others, as the Disclosure Statement describes.

### 7.3 Reserves.

The Reorganized Debtor and the Recovery Trustee must each establish and maintain appropriate reserves for Disputed Claims pending resolution, so that, if

22

and when allowed, those Claims receive the treatment to which the Plan entitles them.

## Article 8 — Conditions and Effect of Confirmation

### 8.1 Conditions to the Effective Date.

The Effective Date will not occur until (a) the Confirmation Order has been entered and is not stayed; (b) all documents necessary to implement the Plan, including the Recovery Trust agreement, have been executed; and (c) all required authorizations and approvals have been obtained. I may waive any legally waivable condition.

### 8.2 Binding Effect.

Upon the Effective Date, the Plan binds the Debtor, the Reorganized Debtor, the Chapter 11 Trustee, the Recovery Trustee, all holders of Claims and Interests, and all other parties in interest, whether or not the holder voted to accept the Plan and whether or not Impaired.

### 8.3 Discharge.

Except as the Plan or Confirmation Order otherwise provides, confirmation operates as a discharge under § 1141(d) of the Code of all debts that arose before the Confirmation Date. Because the Debtor will continue in business and the Plan

23

does not provide for liquidation of substantially all property, the discharge provisions of § 1141(d)(1) apply.

**8.4 Injunction.**

Except as the Plan otherwise provides, all persons who have held, hold, or may hold Claims or Interests are permanently enjoined from taking any action to collect, recover, or offset any such Claim against the Debtor, the Reorganized Debtor, the Recovery Trust, or the Estate, other than as the Plan expressly permits.

**8.5 Preservation of Causes of Action.**

Except to the extent expressly released, all Causes of Action — including the claims for preferences and fraudulent transfers — are preserved and vest in the Recovery Trust, administered by the Recovery Trustee. No preclusion doctrine applies to any Cause of Action by reason of Confirmation. Because Local Rule 3020-1(e) sets a sixty-day default for adversary proceedings and contested matters contemplated by a plan unless the court orders otherwise, the Confirmation Order will expressly provide that the Recovery Trustee may commence any Recovery Trust Claim at any time within the applicable limitations period.

**Article 9 — Retention of Jurisdiction**

The Bankruptcy Court retains jurisdiction to the fullest extent the law permits, including to: determine objections to Claims; adjudicate the Causes of

24

Action and the Recovery Trust Claims; supervise the Recovery Trust and the Recovery Trustee; resolve disputes concerning interpretation or implementation of the Plan; approve professional fees; enter orders necessary to consummate the Plan; and enter a final decree closing the case.

## Article 10 — Miscellaneous Provisions

### 10.1 Modification; Cramdown.

I may modify the Plan before Confirmation under § 1127 of the Code, and I expressly reserve the right to seek confirmation under § 1129(b) as to any Impaired Class that does not accept the Plan.

### 10.2 Governing Law.

Except where the Code or other federal law applies, Florida law governs the rights and obligations under the Plan.

### 10.3 Severability.

If any provision of the Plan is invalid or unenforceable, it is severable, and the remainder remains in full force and effect.

### 10.4 Headings.

Headings are for convenience only and do not affect interpretation.

25

Respectfully submitted this 13th day of July, 2026.

Frank L. Amodeo
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32801@gmail.com
*Plan Proponent, pro se*

## CERTIFICATE OF SERVICE

I certify that on July 13, 2026, a true and correct copy of this motion was furnished by U.S. Mail and, where available, by electronic mail to the Chapter 11 Trustee, the United States Trustee, and the parties on the attached service list.

Frank L. Amodeo