DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

## LOAN AGREEMENT

THIS LOAN AGREEMENT is entered on this 14 day of September 2023, between the following lender, borrowers and guarantors.

### LENDER:

- PEDIXON LLC, whose address is 1627 East Vine Street, Suite E, Kissimmee, FL 34744

- ZPD LLC, whose address is 1627 East Vine Street, Suite E, Kissimmee, FL 34744

    (hereinafter collectively referred to as "Lender" for convenience purposes)

### BORROWER:

- Tiered Capital, Inc., whose address is 5526 Hansel Avenue, Orlando, FL 32809

    (referred to herein as the "Borrower")

### GUARANTORS:

- Sherwood Construction, Inc.

- Florida Space Coast Resorts, Inc.

- Homemakers Real Estate, LLC

- Cape Crossing Vacation Rentals, LLC ("CCVR")

- Holly Bluff Marina, Inc. ("Holly")

- A Marine, Inc.

- Recycled Group of South Carolina, LLC ("Recycled")

- 650 85th

- MTF Holdings, LLC

- Martin C. Flynn, Jr.

- Horton S. Johnson

- Yaniv Amar

All guarantors are collectively referred to as the "Guarantor."

1

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

## DEFINITIONS

Lender, Borrower and Guarantor agree that in addition to terms defined elsewhere in this Agreement, the following terms have the following meaning:

*Agreement* – This Loan Agreement, which may be amended or modified from time to time, together with all exhibits and schedules attached.

*CCVR* – Cape Crossing Vacation Rentals, LLC, and its assigns.

*Closing Attorney* – Alison Pitkanen, Esquire.

*Collateral* – All property and assets granted as collateral security for the Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, lease, assignment of lease, land trust, deed of trust, assignment, pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

*Event of Default* – Any of the Events of Default set forth below.

*First Mortgages* – First priority security interest in the Property held by Mainstreet Bank (as to 19 Units) and Tamamoi (as to 9 units), recorded in the Public Records of Brevard County, Florida, and more particularly described on Schedule 2.

*Grantor* – Each and all of the persons or entities granting a Security Interest in any Collateral for the Indebtedness.

*Leases* – All leases that are part of the vacation rental program at Cape Crossing Resort and Marina as created under Brevard County Official Records Book 7626 Page 1609.

*Indebtedness* – All Loans, together with all other obligations, debts and liabilities of Borrower and Guarantor to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Guarantor, or any one or more of them; whether now or hereafter existing, voluntary or involuntary, due or not due, absolute or contingent, liquidated or unliquidated; whether Borrower and/or Guarantor may be liable individually or jointly with others; whether Borrower and/or Guarantor may be obligated as a guarantor, surety, or otherwise; whether recovery upon such Indebtedness may be or hereafter may become barred by any statute of limitations; and whether such Indebtedness may be or hereafter may become otherwise unenforceable. The total indebtedness as of the date hereof is Eleven Million Seventy-Five Thousand Dollars and No/Cents ($11,075,000).

*Loan* – All loans and financial accommodations from Lender to Borrower and/or Guarantor, whether now or hereafter existing, and however evidenced, including without limitation, the loan in the original principal amount of $750,000.00 of even date herewith, and any other loan described herein or described on any exhibit or schedule attached to this Agreement from time to time.

*Loan Documents* – The Note, and Related Documents.

*Note* – Promissory note evidencing Borrower's Loan obligations in favor of Lender.

*Obligor(s)* – Individually and collectively, Borrower and Guarantor.

*Permitted Liens* – All (a) liens and security interests securing indebtedness owed by Borrower to Lender; (b) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (c) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (e) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing. Specifically, included as part of the Permitted Liens are the

2

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

following: the first mortgages, in the disclosed outstanding principal amount as of the date hereof, currently affecting title to the Land, as long as the Borrower's representations made herein are true and correct.

*Property* – The real property legally described in Exhibit "A" attached hereto, consisting of 26 Units, together with all appurtenances thereto, including the improvements located thereon and the fixtures and existing personal property. The Property is governed by a homeowner association(s) and is thus subject to the governing documents recorded in the Official Records of Brevard County, Florida, including, but not limited to, the articles, bylaws, and covenants, of Cape Crossing Resort and Marina Living and Cape Crossing Resort Management Inc., in Official Records Book 7626 Page 1609, Cape Crossing Condominium Association, Inc. and/or Cape Crossing Townhomes Homeowners Association, Inc, including but not limited to all amendments to said documents that may be hereafter recorded in the Official Records of Brevard County, Florida.

*Related Documents* – All promissory notes, credit agreements, loan agreements, assignment and/or sale of rents, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

*Security Interest* – Any type of collateral security, whether in the form of a lien, charge, mortgage, deed of trust, assignment, pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

*Stock* – All of the issued and outstanding stock and/or membership units, whichever the case may be of Holly Bluff Marina, Inc., Recycled Group of South Carolina and Cape Crossing Vacation Rentals, LLC.

*Tiered Loan* – The Tiered Loan includes all loan accommodations as of the date hereof made to Tiered Capital, Inc., the principals of Tiered Capital Inc., the consultants of Tiered Capital, Inc., the Borrowers, the Guarantors, and all entities related thereto. All of the loans that comprise the Tiered Loan are set forth on Schedule 1 attached hereto and made a part hereof. After closing the Loan on this date, the total outstanding indebtedness of the Tiered Loan will be Eleven Million Seventy-Five Thousand Dollars and No/Cents ($11,075,000). The Tiered Loan shall include all modifications, extensions, renewals and advances made after the date hereof.

*Tiered Loan Monthly Interest Payment* – The loan payment due under the Tiered Loan on the 1st of each month. This total payment is inclusive of each loan payment due under the loans identified on Schedule 1.

*Trust Property* – The Property and the Stock.

*Unit(s)* – Any dwelling place located on or about Cape Crossing Resort and Marina created under Brevard County Official Records Book 7626 Page 1609. that is used in the rental program located at the Resort, and shall include but is not limited to, a condominium and townhouse.

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

In consideration of the mutual covenants and promises set forth herein, Lender and Obligors enter into this Loan Agreement.

1. **Purpose.** The parties have acknowledged and agree upon the following facts:

    1.1. All Obligors have benefited from the Tiered Loan, and will all benefit from the current Loan of $750,000.00.

    1.2. The Tiered Loan is in default as of the date hereof. This includes, but is not limited to, a monetary default of all loans by all Obligors. These loans are more particularly set forth on Schedule 1.

    1.3. The Obligors have requested assistance from the Lender to reinstate each of their loans.

    1.4. In exchange for the extension of credit from the Lender, the Obligors hereby transfer Trust Property into the land trust, guarantee the payment of the Tiered Loan Monthly Interest Payment and make all of the promises stated herein.

    Notwithstanding the foregoing, and except as may be specifically stated herein, the terms of each loan described on Schedule 1 shall remain unchanged and shall further remain in full force and effect.

2. **Loan Closing.** On the date hereof, Lender has made a loan accommodation to Borrower in the principal amount of SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750,000.00) (the "Loan").

3. **Joint Liability.** By signature hereto, the Obligors are individually, jointly and collectively responsible for the timely payment of the Tiered Loan Monthly Interest Payment.

4. **Trust Property.** All of the Stock and Property shall be transferred unto CRESENT SOUND LTD. as the Trustee of the TIERED LAND TRUST AGREEMENT created and funded with the Trust Property of even date herewith.

5. **Additional Collateral.** Each Obligor shall take all reasonable and necessary steps to ensure that Lender has a perfected security interest in the following Collateral:

    5.1. **Leases.** All currently existing and future leases shall be assigned by CCVR, or its assigns, unto Lender.

    5.2. **Rents.** All rents collected by virtue of the Obligor's vacation rental business shall be assigned to Lender.

    5.3. **Collected Rents.** The collected rents from Obligor's vacation rental business shall be paid as follows:

        5.3.1. Lender shall be entitled to the first rental monies received in weekly installments of $25,000, which shall be applied to the amount owed under the Tiered Loan Monthly Interest Payment.

        5.3.2. Current sales tax due and payable.

        5.3.3. Then, the First Mortgages shall be paid.

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

5.3.4. No Obligor hereunder shall be entitled to any of the collected rental income to pay any unsecured indebtedness, or to repay any of Obligor's personal investments in any of the undersigned entities.

5.3.5. Any excess collected rental income shall be expended to pay other debts and obligations as directed by Borrower.

5.4. **Unit Sale Proceeds**. The proceeds of the sale of any Unit or any other Collateral, subject only to the payment of the Permitted Liens and standard closing costs.

6. **Allocation of Loan**. The Loan shall be allocated into two parts:

6.1. $375,000 shall be designated as an interest reserve account (the "Reserve Account"). The Parties agree to the following terms and conditions regarding the Reserve Account:

6.1.1. The following shall be paid from the Reserve Account: all outstanding payments owed to Lender as of the date hereof and all closing costs incurred as a result of the Loan. After closing, Lender shall provide an accounting of funds applied from the Reserve Account.

6.1.2. From time to time, with the consent of Lender, funds from the Reserve Account may be used towards the Monthly Payment if financial assistance is necessary.

6.1.3. From time to time, with the consent of Lender, funds from the Reserve Account may be used to assist with closing costs that may be required when there is a closing on any Unit.

6.1.4. When there is a sale of any of the Property, Lender, in Lender's discretion, may replenish the Reserve Account with monies received from the proceeds of a sale.

6.2. $375,000 shall be disbursed to the Closing Attorney, and shall be utilized for the benefit of Borrower as follows:

6.2.1. All outstanding associations dues and real estate taxes shall be paid.

6.2.2. The outstanding amounts currently due on the First Mortgage payments shall be made.

6.2.3. $89,000 shall be delivered to Closing Attorney for outstanding payments related to the purchase of Holly Bluff Marina, Inc.

6.2.4. Borrower shall provide Closing Attorney with written instructions related to any excess funds that may be available.

7. **Depository Account**. As a condition precedent to the loan, Obligor shall establish a depository account and direct all rental income from its vacation rental operations to said account. The details of this account should be provided to Lender within three days of this Loan Agreement.

8. **Post Closing Covenants.**

8.1. **Weekly Payment to Lender**. Obligor agrees to make weekly payments to Lender in the amount of Twenty-Five Thousand Dollars and No/Cents ($25,000). Lender will apply this payment to the Tiered Loan Monthly Interest Payment. The intention of the Weekly Payment is for the Lender to collect One Hundred Thousand Dollars and No/Cents ($100,000.00) per month, therefore, if there is a shortfall one week, it will be recovered in the following weeks so that Lender receives at least $100,000.00/per month before any other Property expenses are paid.

5

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

8.2. **Agreement to sell the Units.** Obligor agrees to earnestly market and sell Units. Obligor agrees that its goal is to sell two units each month. Obligor must provide monthly notification to Lender identifying the subject units listed for sale. When a contract is signed, it must be immediately delivered to Lender to ensure Lender has the opportunity to exercise its right of first refusal.

8.3. **Leases.** Obligor shall take all steps necessary to remain compliant in all existing and future vacation rental leases relating to the Property. Obligor shall not cause any disruption to the Leases. Obligor shall not make any material changes to the leases without the prior written approval of the Lender. Copies of all existing leases shall be delivered to Lender within three days of Closing.

8.4. **Property.** Obligor shall ensure that the Property is well-maintained and the investment in the Units are protected. Specifically, Obligor must ensure that the following items are timely paid:

    8.4.1. Association dues.

    8.4.2. Sales tax.

    8.4.3. Real estate taxes.

    8.4.4. All required insurances, as may be mandated by mortgage agreement, lease agreement, or otherwise.

    8.4.5. Monthly payments due under the First Mortgages.

9. **Documents Executed Contemporaneous With Closing.** The parties will execute all documents necessary to effectuate the following at Closing, or at any time thereafter, as Lender may request, to fulfill the loan requirements set forth herein.

9.1. Assignment of all current and future leases on the Property from CCVR to Lender.

9.2. Assignment, transfer and sale of all rental payments collected by CCVR. Lender will be entitled to all existing and future rents generated from the vacation rental business operated by CCVR.

9.3. Execution of the TIERED LAND TRUST AGREEMENT designating CRESCENT SOUND, LTD. as Trustee. Said land trust agreement shall be funded with the Trust Property at the time of Closing.

9.4. Execution and recordation of a trustee's deed transferring the Trust Property unto CRESCENT SOUND, LTD., as Trustee of the contemplated land trust.

9.5. Execution of proper documentation transferring all of the issued and outstanding Stock unto CRESCENT SOUND, LTD., as Trustee of the contemplated land trust.

9.6. Execution of agreements assigning the beneficial interest in the Trust Property unto Lender, or a designated assignee thereof. This agreement shall be held in trust by the Closing Attorney until satisfaction of the Tiered Loan.

9.7. Written notification of the two (2) Units that are being marketed for sale each month, along with a copy of the listing agreement..

9.8. Executed CCVR stock option to be held in trust by the Closing Attorney until satisfaction of the Tiered Loan.

9.9. The form of each document referenced in this section shall be attached hereto and incorporated as part of this Loan Agreement.

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

10.    **Representations and Warranties.** Each Obligor represents and warrants to Lender, as of the date of this Agreement, and as of the date of any renewal, extension or modification of the Loan or any part of the Tiered Loan, and at all times any Indebtedness exists, that:

10.1.    <u>First Mortgages</u>. The outstanding principal balance of the First Mortgages and the corresponding approximate monthly payments are more particularly set forth on Schedule 2.

10.1.1.    Obligor will not make any further advances on the First Mortgages, and will ensure the First Mortgages are timely paid even if the monthly rents collected are not sufficient to pay said indebtedness.

10.2.    <u>Authorization</u>. The execution, delivery, and performance of this Agreement and all Related Documents by Obligor, to the extent to be executed, delivered or performed by Obligor, have been duly authorized by all necessary action by Obligor; do not require the consent or approval of any other person, regulatory authority or governmental body; and do not conflict with, result in a violation of, or constitute a default under (a) any provision of its articles of incorporation or organization, or bylaws, or any agreement or other instrument binding upon Obligor or (b) by law, governmental regulation, court decree, or order applicable to Obligor.

10.3.    <u>Legal Effect</u>. This Agreement constitutes, and any instrument or agreement required hereunder to be given by Obligor when delivered will constitute, legal, valid, and binding obligations of Obligor enforceable against Obligor in accordance with their respective terms.

10.4.    <u>Litigation and Claims</u>. No litigation, claim, investigation, administrative proceedings or similar action (including those for unpaid taxes) against Obligor is pending or threatened, and no other event has occurred which may materially adversely affect Obligor's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

10.5.    <u>Taxes</u>. To the best of Obligor's knowledge, all tax returns and reports of Obligor that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Obligor in good faith in the ordinary course of business and for which adequate reserves have been provided.

10.6.    <u>Binding Effect</u>. This Agreement, the Note, all Security Interests directly or indirectly securing repayment of Obligor's Loan and all of the Related Documents are binding upon Obligor as well as upon Obligor's successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

10.7.    <u>Commercial Purposes</u>. Borrower intends to use the Loan proceeds solely for business or commercial related purposes.

10.8.    <u>Information</u>. All information heretofore or contemporaneously herewith furnished by Obligor to Lender for the purposes of or in connection with this Agreement or any transaction contemplated hereby is, and all information hereafter furnished by or on behalf of Obligor to Lender will be, true and accurate in every material respect on the date as of which such information is dated or certified; and none of such information is or will be incomplete by omitting to state any material fact necessary to make such information not misleading.

10.9.    <u>Survival of Representation and Warranties</u>. Obligor understands and agrees that Lender, without independent investigation, is relying upon the above representations and warranties in extending the Loan to Obligor. Obligor further agrees that the foregoing representations and warranties shall be continuing in nature and shall remain in full force and effect until such time as Obligor's indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

11.    **Prepayment.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the Loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.

12.    **Affirmative Covenants.** Each Obligor covenants and agrees with Lender that, while this Agreement is in effect, it will:

    12.1.    <u>Litigation.</u> Promptly inform Lender in writing of (a) all material adverse changes in Borrower's financial condition, and (b) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower which could materially affect the financial condition of Borrower.

    12.2.    <u>Financial Records.</u> Maintain its books and records in accordance with generally accepted accounting principles, or with sound accounting principles applied on a consistent basis, and permit Lender to examine and audit Obligor's books and records at all reasonable times or to confirm Obligor's compliance with this Agreement.

    12.3.    <u>Taxes, Charges and Liens.</u> Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Obligor or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Obligor's properties, income, or profits. Provided however, Obligor will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (a) the legality of the same shall be contested in good faith by appropriate proceedings, and (b) Obligor shall have established on its book adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with generally accepted accounting practices. Obligor, upon demand of Lender, will furnish to Lender evidence of payment of the assessments, taxes, charges, levies, liens and claims and will authorize the appropriate governmental official to deliver to Lender at any time a written statement of any assessments, taxes, charges, levies, liens and claims against Obligor's properties, income, or profits.

    12.4.    <u>Performance.</u> Perform and comply with all terms, conditions, and provisions set forth in this Agreement and in the Related Documents in a timely manner, and promptly notify Lender if Obligor learns of the occurrence of any event which constitutes an Event of Default under this Agreement or under any of the Related Documents.

    12.5.    <u>Additional Assurances.</u> Each Obligor shall make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, financing statements, instruments, documents and other agreements as Lender or its attorney may reasonably request to evidence and secure both the Loan and the Tiered Loan, and to perfect all Security Interests.

13.    **Negative Covenants.** Each Obligor covenants and agrees with Lender that while this Agreement is in effect, Obligor shall not, without the prior written consent of Lender:

    13.1.    <u>Continuity of Operations.</u> (a) Engage in any business activities substantially different that those in which Obligor is presently engaged, or (b) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change ownership, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business.

14.    **Event of Default.** Each of the following shall constitute an Event of Default under this Agreement:

8

DocuSign Envelope ID: ADBFE0CB-9781-459F-9A69-99B406B04C39

14.1.  **Default on Indebtedness.** Failure to make any payment when due on the Loan and/or the Tiered Loan Monthly Interest Payment. This shall include the failure to pay to Lender $25,000/week as agreed upon herein.

14.2.  **Default on Depository Account.** Failure to immediately notify Lender regarding any changes made to the Depository Account.

14.3.  **Default on Leases.** Any default, termination or material change under the Leases.

14.4.  **Default on Sale of Units.** The failure to use good faith in the marketing and sale of the Units.

14.5.  **Other Defaults.** Failure of any Obligor to comply with or to perform when due any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents, or failure of any Obligor to comply with or to perform any other term, obligation, covenant or condition contained in any other agreement between Lender and such Obligor, including, without limitation, a default under any other loan referred to in the Note as constituting a default under the Note.

14.6.  **Default in Favor of Third Parties.** Should an Obligor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of such Obligor's property or such Obligor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

14.7.  **False Statements.** Any warranty, representation or statement made or furnished to Lender by or on behalf of an Obligor under this Agreement or the Related Documents is false or misleading in any material respect at the time made or furnished, or becomes false or misleading at any time thereafter.

14.8.  **Insolvency.** The dissolution or termination of the existence of Borrower as a going business, the insolvency of Borrower, the appointment of a receiver for any part of property of Borrower, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws or against Borrower.

14.9.  **Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

14.10.  **Insecurity.** Lender, in good faith, deems itself insecure.

15.  **Effect of an Event of Default on Indebtedness.** In the event Obligor fails to make the Monthly Payment and/or the Weekly Payment, Lender shall have the right to all of the following remedies. Lender's failure to exercise any of its rights hereunder shall not constitute a waiver of any rights provided herein.

15.1.  **Exclusive control of Depository Account.** If any monetary Event of Default shall occur, Lender, at Lender's option, shall have the right to sole and exclusive control of the Depository Account. Lender may exercise this right upon delivery of the attached notice to CCVR, with a copy to Tiered Capital, Inc. In the event Lender must exercise this right, Lender shall be released of any liability relating to the manner in which the collected rents are managed. Lender shall be under no duty or obligation to pay any other party, or any particular item relating to the Property.

15.2.  **CCVR Stock Option.** If any monetary Event of Default shall occur, Lender, at Lender option, shall be entitled to exercise its option on the CCVR stock. Lender's exercise of its option shall be deemed exercised upon delivery of the notice to CCVR, with notice to Tiered Capital, Inc. (form of option attached); and/or

9

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

15.3. <u>Beneficial Ownership in Trust Property.</u> The assignment of beneficial ownership of the Trust Property shall be executed contemporaneously herewith, and held in trust by the Closing Attorney.

Upon execution of this Loan Agreement, the Closing Attorney shall be authorized to release the following directly to Lender if Lender so elects in any monetary Event of Default: Assignment of Beneficial Interest in the Trust Property (attached). No advance notice to Borrower or Obligor shall be required.

16. **Effect of All Events of Default.**

16.1. If any Event of Default shall occur, except where otherwise provided in this Agreement or the Loan Documents, all commitments and obligations of Lender under this Agreement or the Loan Documents or any other agreement immediately will terminate (including any obligation to make disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Loan Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of any Obligor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

16.2. Further, notwithstanding any provision of the Note or any other Loan Documents, Lender may, following an Event of Default, and without declaring all amounts due and owing (i.e. accelerating the Loan), increase the Interest Rate by the highest rate allowed by law. Such interest rate shall apply until the later of the following to occur: (a) one calendar year after the Event of Default; or (b) the Event of Default is cured. Lender's pursuit of this remedy will not preclude Lender from thereafter accelerating the Loan or taking other remedies available under this Agreement or the Loan Documents.

17. **Release.** Upon satisfaction of all the Indebtedness, including any future advances or future loan or accommodations made to any Obligor hereunder, this Agreement shall terminate. As to Yaniv Amar, upon satisfaction of the loans made to Recycled Group of South Carolina, LLC and Holly Bluff Marina, Inc., and as long as no additional extensions of credit have been made to said obligor, Yaniv Amar shall be released from this Agreement. With the release from this Agreement, the undersigned will take the steps necessary to transfer all the shares of Holly and Recycled from the Tiered Land Trust unto Yaniv Amar, or his designee.

18. **Miscellaneous.**

18.1. <u>Amendments.</u> This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

18.2. <u>Applicable Law.</u> This Agreement has been delivered to Lender and accepted by Lender in the State of Florida. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Brevard County, the State of Florida. Lender and Borrower waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

18.3. <u>Caption Headings.</u> Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

10

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

18.4.   <u>Multiple Parties; Corporate Authority</u>. All obligations of each Obligor under this Agreement shall be joint and several, and all references to an Obligor shall mean each and every Obligor. This means that each of the persons signing below is responsible for all obligations in this Agreement.

18.5.   <u>Notices</u>. All notices required to be given under this Agreement shall be given in writing, may be sent by email (unless otherwise required by law), and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier or deposited in the United State mail, first class, postage prepaid, addressed to party to whom the notice is to be given at the address shown above. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. To the extent permitted by applicable law, if there is more than one Obligor, notice to any Obligor will constitute notice to all parties named as Obligor. For notice purposes, Obligor will keep Lender informed at all times of Obligor's current address(es).

18.6.   <u>Severability</u>. If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

18.7.   <u>Successors and Assigns</u>. All covenants and agreements contained by or on behalf of Borrower shall bind its successors and assigns and shall inure to the benefit of Lender, its successors and assigns.

18.8.   <u>Survival</u>. All warranties, representations, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement shall be considered to have been relied upon by Lender and will survive the making of the Loan and delivery to Lender of the Related Documents, regardless of any investigation made by Lender or on Lender's behalf.

18.9.   <u>Time is of the Essence</u>. Time is of the essence in the performance of this Agreement.

18.10.  <u>Waiver</u>. Lender shall not be deemed to have waived any rights under this Agreement, or any loan documents relating to any loan obligation identified on Schedule 1, or any other agreement with the Obligors unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Obligors, shall constitute a waiver of any of Lender's rights or of any obligations of Borrower or of any Obligors as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender is any instance shall not constitute continuing consent in subsequent instances where such consent is required, and in all cases such consent may be granted or withheld in the sole discretion of Lender.

19.   Survival of Agreement. This Agreement shall survive the closing of the Loan.

20.   Schedules and Exhibits. All schedules and exhibits referred to herein and attached hereto shall be incorporated and made part of this Agreement.

11

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

The undersigned have agreed to the foregoing as of the date first set forth above.

Kenneth G. Dixon
    As Manager of PEDIXON LLC
    AND
    AS Manager of ZPD LLC

By: _____
Martin C. Flynn, Jr.
    Individually
    AND as President of Sherwood Construction
    AND as Manager of 650 85th LLC,
    AND as Member of MTF Holdings, LLC,
    AND as Manager of Cape Crossing Vacation Rentals, LLC
    AND as President of Tiered Capital, Inc.

By: _____
Yaniv Amar
    Individually
    AND as Manager of Recycled Group of South Carolina, LLC
    AND as President of A Marine, Inc.
    AND as President of Holly Bluff Marina, Inc.

By: _____
Horton S. Johnson
    Individually
    AND as Manager of Homemakers Real Estate, LLC
    AND as Trustee of the Horton S. Johnson Revocable Trust dated August 3, 2012

FLORIDA SPACE COAST RESORTS, INC.
By: _____
Alexandra Lezcano, Authorized Agent

DocuSign Envelope ID: AD8FE0CB-9761-459F-9A59-99B406B04C39

STATE OF FLORIDA
COUNTY OF _Orange_

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of physical presence or __ online notarization on September _14_, 2023, by Martin C. Flynn, Jr.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary Public, State of Florida
Name: _Janelle Morea_
(Please print or type)

Commission Number: _HH077342_
Commission Expires: _1/5/2025_

Notary: Check one of the following:
____ Personally known OR
__✓__ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: _License_


STATE OF FLORIDA
COUNTY OF _Orange_

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of physical presence or __ online notarization on September _14_, 2023, by Yaniv Amar.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary Public, State of Florida
Name: _Janelle Morea_
(Please print or type)

Commission Number: _HH077342_
Commission Expires: _1/5/2025_

Notary: Check one of the following:
____ Personally known OR
__✓__ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: _License_

13

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

STATE OF FLORIDA
COUNTY OF _Orange_

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of physical presence or __ online notarization on September _14_, 2023, by Alexandra Lezcano.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary Public, State of Florida
Name: _Janelle Morea_
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Notary: Check one of the following:
____ Personally known OR
____ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: _License_


STATE OF FLORIDA
COUNTY OF _Orange_

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of physical presence or __ online notarization on September _14_, 2023, by Horton S. Johnson.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary Public, State of Florida
Name: _Janelle Morea_
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Notary: Check one of the following:
____ Personally known OR
____ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: _License_

14

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

## SCHEDULE 1

### Tiered Loans
### Tiered Principals -- Loans as of 9/1/2023

**Original January 2022 Loan -- Modified and Renewed August 2022**
| | |
|---|---|
| Borrower: | Sherwood Construction, Inc. |
| Future Advance: | $250,000.00 represented by Allonge to Note |
| Total Note Amt: | $600,000 |

**IMQA 506 Loan**
| | |
|---|---|
| Lender: | Parke Financial Limited Partnership |
| Borrower: | IMQA INVESTMENTS, INCORPORATED |
| Loan Amount: | $300,000 |

**Recycled Group of SC**
| | |
|---|---|
| Lender: | ZPD LLC |
| Borrower: | Recycled Group of South Carolina, LLC |
| Loan Amount: | $1,300,000 |

**Option Loan**
| | |
|---|---|
| Lender: | Pedixon LLC |
| Borrower: | Sherwood Construction, Inc. |
| Loan Amount: | $500,000 |

**One Million Dollar Loan**
| | |
|---|---|
| Lender: | Pedixon LLC |
| Borrower: | Sherwood Construction, Inc. |
| Loan Amount: | $1,000,000 |

**Resorts Common Area Loan**
| | |
|---|---|
| Lender: | Pedixon LLC |
| Borrower: | Sherwood Construction; Canaveral Crossroads as mortgagor |
| Loan Amount: | $500,000 |

**River Fly Loan**
| | |
|---|---|
| Lender: | Pedixon LLC |
| Borrower: | Florida Space Coast Resorts, Inc. |
| Loan Amount: | $3,000,000 |

**Holly Bluff Loan**
| | |
|---|---|
| Lender: | Pedixon LLC |
| Borrower: | Tiered Capital, Inc. |
| Loan Amount: | $3,000,000 |

**Marty Loan**
| | |
|---|---|
| Lender: | Pedixon, LLC |
| Borrower: | Martin C. Flynn, Jr. |
| Loan Amount: | $125,000 |

15

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-998406B04C39

**EXHIBIT A**
**PROPERTY**

**Legal Descriptions of 26 Units**