FILED ORL INTAKE- USBC
12 AUG 2026 PM2:51

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

HOMEMAKERS REAL ESTATE, LLC,          Case No. 6:25-bk-05570-GER
Debtor.                               Chapter 11 (Involuntary)

---

## NOTICE OF SUPPLEMENTAL AUTHORITY:
## BAY UNITED HOLDINGS, LLC v. INXS 7, LLC (11th Cir. July 24, 2026)

On July 24, 2026, the Eleventh Circuit decided, for publication, *Bay United Holdings, LLC v. INXS 7, LLC (In re Aegis Asset Management, LLC)*, 2026 WL 2131679 (11th Cir. 2026)(Tjoflat, J.).[1] The decision came down forty-five days after Doc. 242 and nineteen days after Doc. 306. It opens: "This case asks whether, in the bankruptcy context, a creditor must show it has the right to enforce its claim. For obvious reasons, the answer is yes." *Id.* at *1.

A Chapter 7 trustee sold estate property free and clear, and claims against the proceeds were made due within thirty days. Cloud 9 Properties, LLC filed three claims and attached mortgages but no promissory notes. When the notes surfaced,

---

[1] Two decisions bear the same name. The Eleventh Circuit opinion is *Bay United Holdings, LLC v. INXS 7, LLC (In re Aegis Asset Management, LLC)*, No. 25-10331, 2026 WL 2131679 (11th Cir. July 24, 2026), attached as Exhibit A. The opinion is designated for publication and is reported as "--- F.4th ----" pending assignment of a reporter page, so pin cites here run to the Westlaw star pagination. The decision it affirmed is *Bay United Holdings, LLC v. INXS 7 LLC (In re Aegis Asset Trust Mangement, LLC)*, No. 8:23-cv-2370-KKM, 2025 WL 5100701 (M.D. Fla. Jan. 6, 2025), attached as Exhibit B. Captions vary across the sources: the appellee appears as "INXS VII, LLC" and as "INXS 7, LLC," and the debtor appears as "Aegis Asset Management, LLC" and, in the Westlaw caption of the district court order, as "Aegis Asset Trust Mangement, LLC." The variances are clerical, and the underlying bankruptcy case is No. 8:19-bk-8036-CPM (Bankr. M.D. Fla.).

1

they ran to other payees, and Cloud 9 had not acquired them until long after the deadline. The bankruptcy court disallowed all three claims on summary judgment, the district court affirmed, and the Eleventh Circuit affirmed. Four holdings bear on the Dixon claims. State law governs the validity of a claim in bankruptcy, and a claim is not allowed "if the same claim would not be enforceable . . . outside of bankruptcy." *Id.* at \*4. Florida's conditions on enforcing an obligation travel into the bankruptcy claim: "Florida's requirements to enforce a note via foreclosure action must extend to its requirements to enforce a note via bankruptcy claim." *Id.* Once a proper objection is lodged, "the entity asserting the claim loses the presumption of validity and instead must establish the validity of its claim," and "[i]f the entity fails to meet that burden, its claim is properly disallowed." *Id.* at \*3. And equity supplies no relief from the governing law, because bankruptcy courts "are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements." *Id.* at n.8. The district court, whose order the Eleventh Circuit affirmed, stated the same principle in the form that governs the Dixon claims: a claim "must be enforceable against the debtor under applicable state law when the claim is filed." *Bay United Holdings, LLC v. INXS 7 LLC*, 2025 WL 5100701, at \*4 (M.D. Fla. Jan. 6, 2025).[2]

---

[2]The district court stated the rule in the form that governs here: except for a right to payment that is contingent or unmatured, a claim "must be enforceable against the debtor under applicable state law when the claim is filed." 2025 WL 5100701, at \*4. It also held that a claimant whose claim rests on a writing

The decision does not disturb the order of decision I have asked this court to follow. Subject-matter jurisdiction comes first, and it is ripe now. An objection to a proof of claim must wait for a proof of claim; a challenge to this court's power waits for nothing. Section 687.071(7) withdraws from every court of this state the authority to enforce a criminally usurious extension of credit, and a court that can grant no remedy has no live controversy before it. Nothing in *Bay United* addresses a state legislature's withdrawal of enforcement power, and nothing in it addresses mootness or redressability.[3] I file this notice to add authority, not to reorder the questions.

---

"must file a copy of the writing establishing that claimant's right to payment," because "[a]ttaching supporting documentation is a mandatory prerequisite to establishing a claim's prima facie validity"; a claim without it "may be quickly disallowed upon a valid objection, unless the claimant then provides sufficient evidence to establish the validity of the claim by a preponderance of the evidence." *Id.* at *3. I note one passage that cuts the other way and answer it. In footnote 3 the district court wrote that "[t]he question is not whether the mortgages (or the notes) were valid but whether Cloud 9 had a right to payment under them," because "[w]hether an instrument is valid and enforceable and whether a particular party has the right to sue on an instrument are separate inquiries." *Id.* at *4 n.3. That is correct, and it does not reach these claims. *11 U.S.C. § 502(b)(1)* disallows a claim "unenforceable against the debtor and property of the debtor, under any agreement or applicable law," and the two inquiries the district court separated are both housed in that phrase. *Bay United* decided the right-to-sue branch. I invoke the enforceability branch, on which the district court supplied the governing sentence and the Eleventh Circuit supplied the rule that Florida's conditions on enforcement travel into the claim.

[3]One passage runs the other way, and I bring it forward rather than leave it to be found. In footnote 6 the panel declined to reach the appellant's contention that the *objecting* party lacked "statutory standing" to object under *11 U.S.C. § 502(a)*: "The statutory standing issue is not preserved or even properly argued now, so we will not consider it." *Bay United*, 2026 WL 2131679, at n.6. In declining, the panel cited *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014), for the observation that the "statutory standing" label "is a bit of a misnomer" because the question is whether a party has a cause of action, and "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction." *Id.*; *see also In re White-Lett*, No. 24-13053, 2025 WL 2528783, at *2 (11th Cir. Sept. 3, 2025). The passage is not a holding, its subject is the standing of a party to *object* rather than to assert a claim, and neither it nor *Lexmark* reaches a state legislature's withdrawal of enforcement power or the Article III doctrines of mootness and redressability.

3



What *Bay United* adds is a second road from the same facts. If the extensions of credit violate section 687.071, then no court of this state may enforce them,[4] and a claim unenforceable under applicable law is disallowed on objection.[5] The disallowance is total. The Eleventh Circuit held that "the Bankruptcy Court was right to disallow Cloud 9's claims in their entirety," and the assignee that had purchased those claims took nothing. 2026 WL 2131679, at *4. The practical consequence matches the jurisdictional one. A claimant whose claim is disallowed holds no allowable claim, a claimant with no allowable claim is no party in interest, and a party that is not a party in interest cannot be heard and can obtain no order. Whether this court reaches that result by finding it lacks power or by disallowing the claims, PEDixon, LLC and ZPD, LLC are out of these cases on either road.

The claims deadline makes the second road immediate rather than theoretical. On June 30, 2026, this court set the general deadline for filing proofs of claim at July 30, 2026.[6] Schedule D lists PEDixon, LLC and ZPD, LLC as insiders, states the

---

[4]*Fla. Stat. § 687.071(7)* reads in full: "No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state." Subsection (2) fixes criminal usury at interest "exceeding 25 percent per annum but not in excess of 45 percent per annum," and subsection (3) fixes felony loan sharking at interest "exceeding 45 percent per annum." *Fla. Stat. § 687.071(2), (3)*.

[5]*11 U.S.C. § 502(b)(1)* provides that on objection the court "shall determine the amount of such claim . . . and shall allow such claim in such amount, except to the extent that — (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."

[6]The Order (1) Setting Deadline to File Proofs of Claim and (2) Directing Clerk to Issue and Serve an Amended Notice of Chapter 11 Bankruptcy Case, entered June 30, 2026, orders: "The general deadline for filing proofs of claim in this case is July 30, 2026," and "[f]or a governmental unit, the deadline for filing proofs of claim is 180 days from the date of entry of the Order, i.e., November 17, 2026." (Doc. 271 at 2). The order explains the correction: the Notice of Chapter 11 Bankruptcy Case "provided that the deadline



amount of each claim as "-0-," and describes each as a guarantee of a non-debtor loan "Paid in Full Since December 2023." Each is scheduled as disputed, and the PEDixon entry is scheduled as contingent and unliquidated as well.[7] A creditor scheduled that way must file a proof of claim, and a creditor who does not file "will not be treated as a creditor for that claim for voting and distribution."[8] This court then made the point an order: every creditor listed on the schedules must file a proof of claim to participate in this case or to receive a distribution. That order extended the deadline to August 21, 2026 for six named creditors, and neither PEDixon, LLC nor ZPD, LLC is among them.[9]

---

for filing proofs of claim was November 12, 2025," and because "the proof of claim deadlines referenced in the Notice passed prior to the entry of the order for relief," the court directed an amended notice. (Doc. 271 at 1). The amended notice issued the same day. (Doc. 272).

[7]Schedule D lists PEDixon, LLC at line 2.8 and ZPD, LLC at line 2.10. Each entry states the amount of the claim as "-0-," marks the creditor an insider or related party, and describes the lien as a "Guarantee of non-debtor loan" that has been "Paid in Full Since December 2023." The PEDixon entry is marked contingent, unliquidated, and disputed; the ZPD entry is marked disputed. (Doc. 255, Sch. D, 2.8, 2.10). Mr. Johnson refiled the schedules without change on July 1 and July 7, 2026. (Docs. 273, 281).

[8]Fed. R. Bankr. P. 3003(c)(2) provides: "A creditor or equity security holder whose claim or interest is not scheduled—or is scheduled as disputed, contingent, or unliquidated—must file a proof of claim or interest. A creditor who fails to do so will not be treated as a creditor for that claim for voting and distribution." Rule 3003(b)(1) supplies the converse: a schedule entry "is prima facie evidence of the validity and the amount of a creditor's claim—except for a claim scheduled as disputed, contingent, or unliquidated."

[9]The Order Granting Chapter 11 Trustee's Motion to (I) Require Certain Creditors with Scheduled Claims to File Proofs of Claim and (II) Extend Time for Certain Creditors to File Proofs of Claim, entered July 21, 2026, orders: "Notwithstanding Bankruptcy Rule 3003(b)(1), to participate in the Debtor's bankruptcy case and/or receive distributions from the Debtor's bankruptcy estate, all creditors listed on the Schedules must file a proof of claim." (Doc. 320 at 2). The order then extends the General Proof of Claim Deadline "through August 21, 2026," for six named creditors: Tiered Capital, Inc.; IPFS Corporation; Old Republic National Title Insurance Company; Jetton Investments, Inc. / Paul Rene, Jr.; Conache LLC and Ocean Bank; and Day Start One LLC. *Id.* Neither PEDixon, LLC nor ZPD, LLC appears on that list. The underlying motion is at Doc. 318.



Two consequences follow, and this court can confirm which one applies by looking at the claims register. If PEDixon, LLC and ZPD, LLC filed proofs of claim, then the burden *Bay United* describes is already theirs, and the objection on file strips the presumption of validity and puts them to their proof under Florida law. If they filed nothing,[10] then by the terms of this court's own order they may not participate in this case at all, and the question of what Homemakers guaranteed never arises. The Eleventh Circuit addressed that consequence directly, rejecting the complaint that disallowance invalidates bona fide instruments: "The fact that the true owners of the mortgages and notes failed to file claims by the deadline is what makes them unenforceable now." 2026 WL 2131679, at n.9. Therefore, in either scenario the creditors do not belong in this contest.

One further holding deserves attention because Mr. Dixon controls each of the entities that appear here. Florida treats a limited liability company as an entity distinct from its members, and the Eleventh Circuit applied that rule to hold that affiliated claimants are strangers to one another's claims — "one entity cannot assert another's claims simply because the other entity failed to file the claims itself." *Id.*

---

[10]The Pro Memo of the July 14, 2026 initial status conference carries the line "Claims Deadline: 11/12/26." (Doc. 309 at 1). That entry is a courtroom minute note, and it appears to carry forward the superseded November 12 date from the original notice. It is not an order, and it cannot displace Doc. 271, which set July 30, 2026 by order and directed the amended notice that issued. I flag the discrepancy so it does not go unexamined at the hearing.



at n.8.[11] Common control of PEDixon, LLC, of ZPD, LLC, and of Crescent Sound, Ltd. does not let one of them stand in for another, and it does not let a missed deadline be cured by pointing to an affiliate.

I ask this court to consider *Bay United* when it takes up Doc. 306 and Doc. 242 on August 19, 2026. The Eleventh Circuit has now identified what governs the validity of a claim in this court: State law decides it, Florida law makes these debts unenforceable, the Bankruptcy Code disallows what Florida will not enforce, and equity supplies no way around the answer.

Respectfully submitted this **30** day of **July** , 2026.

Frank L. Amodeo
*Pro se*
1311 Hoffner Avenue
Orlando, FL 32809
(407) 406-1315
Flahome32801@gmail.com

---

[11]*Fla. Stat. § 605.0108(1)* provides: "A limited liability company is an entity distinct from its members." The *Bay United* panel applied it to reject the argument that affiliated claimants may stand in for one another: "Regardless of family connections, Cloud 9, Bob Mitchell Associates, and Margaret Mitchell are, legally speaking, strangers. . . . In other words, the claims owned by one of them are not owned by the others." 2026 WL 2131679, at n.8.

## CERTIFICATE OF SERVICE

I certify that on the 30 day of July , 2026, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve a Notice of Electronic Filing on all parties registered to receive electronic notice in Case No. 6:25-bk-05570-GER and in Case No. 6:25-bk-02685-GER.


Frank L. Amodeo

EXHIBIT

A

2026 WL 2131679
Only the Westlaw citation is currently available.
United States Court of Appeals, **Eleventh Circuit.**

IN RE: AEGIS ASSET MANAGEMENT,
LLC, Debtor.
**Bay United Holdings, LLC.,**
Plaintiff-Appellant,
v.
INXS 7, LLC, Defendant-Appellee.

No.
25
-
10331
|
Filed: 07/24/2026

Appeal from the United States District Court for the Middle District of Florida D.C. Docket No. 8:23-cv-02370-KKM

**Attorneys and Law Firms**

Jawdet I. Rubaii, Jawdet I. Rubaii, PA, Clearwater, FL, for Plaintiff-Appellant.

Patti W. Halloran, Gibbons Neuman, TAMPA, FL, for Defendant-Appellee.

Before Newsom, Luck, and Tjoflat, Circuit Judges.

**Opinion**

Tjoflat, Circuit Judge:

*1 This case asks whether, in the bankruptcy context, a creditor must show it has the right to enforce its claim. For obvious reasons, the answer is yes.

**I. Background**

Aegis Asset Management, LLC, filed for Chapter 11 bankruptcy on August 26, 2019. The bankruptcy was converted to Chapter 7 on October 17 of that year. The Chapter 7 trustee later identified numerous parcels of real property that Aegis had transferred to entities affiliated

with Aegis for no consideration. He filed an adversary proceeding against those entities, arguing that the properties had been fraudulently transferred to them. The parties settled, agreeing that the properties would be treated as assets of the bankruptcy estate and that 68 parcels would be sold free and clear of liens, claims, and interests.

On February 25, 2021, the trustee filed a motion in Bankruptcy Court to approve the settlement agreement in the adversary proceeding and approve the sale of the subject properties free and clear of all liens, claims, and interests pursuant to 11 U.S.C. § 363(f). The trustee served the motion on all parties in interest, including, as relevant here, Margaret Mitchell; Bob Mitchell Associates, Inc.; and Cloud 9 Properties, LLC. The Court granted the motion on March 29, 2021. It approved the sale of the properties to INXS VII, LLC; ordered that all liens, claims, and interests would attach to the sale proceeds; and ordered that any claims against the sale proceeds must be filed within thirty days.

Cloud 9 filed three claims, one for each of three properties, on April 28, 2021.[1] These were Claim 100, Claim 101, and Claim 102. For each proof of claim, Cloud 9 attached the corresponding property's payoff letter and mortgage. The mortgagee listed for the Claim 100 property was Margaret Mitchell, and the mortgagee listed for the other two properties was Bob Mitchell Associates.

INXS VII objected to all three of Cloud 9's claims on November 2, 2022, because the proofs of claim did not include promissory notes or other evidence of debt owed to Cloud 9. Cloud 9 responded by filing the promissory notes related to each claim. As with the mortgages, the note for the Claim 100 property was payable to Margaret Mitchell, and the notes for the other two properties were payable to Bob Mitchell Associates. INXS VII filed a motion for summary judgment on its objections. It explained that Cloud 9 did not show it owned the notes on April 28, 2021, the date it filed its claims. Therefore, based on cases dealing with foreclosure standing, Cloud 9 lacked standing to bring its claims, and its claims should be disallowed in their entirety. As support for its motion, INXS VII attached documents showing that the note related to Claim 100 transferred from Margaret Mitchell to Margaret's estate upon her death on March 11, 2022, and that the notes related to Claims 101 and 102 transferred to Cloud 9 on March 14, 2023.[2]

*2 On August 9, 2023, Cloud 9 assigned its claims in this suit to Bay United Holdings, LLC.[3] On that same day,

Bay United filed a response and objection to INXS VII's summary judgment motion. It stated that the evidence showed Cloud 9 held the mortgages and notes and that no one contested the debts existed. The Bankruptcy Court held a hearing on the issue on September 1, 2023. In this hearing, the Bankruptcy Court stated that it would grant summary judgment to INXS VII on Claims 101 and 102, because the evidence showed Cloud 9 did not own the corresponding notes until March 14, 2023. However, the Bankruptcy Court gave Bay United seven days to file additional evidence from the county public records related to Claim 100, because there was no evidence of when Cloud 9 came to own that note.

Bay United did not file the requested public records evidence for Claim 100. Instead, it filed two affidavits discussing the mortgages and notes for each claim. The first affidavit was by the attorney who did estate planning for Margaret Mitchell. He explained that Margaret Mitchell was the sole owner of Bob Mitchell Associates and Cloud 9. Joseph Quinn Mitchell, president of Cloud 9,⁴ was Margaret's son, personal representative, and trustee. He also had durable power of attorney over Margaret. In December 2015, the attorney helped Margaret assign multiple mortgages and notes from Bob Mitchell Associates to Cloud 9 and from herself to Cloud 9. The attorney believed Margaret meant to include the mortgages and notes related to Claims 100, 101, and 102 in the assignment but failed to provide them to him when he prepared the transfer documents. The attorney also believed that Joseph thought Cloud 9 held all the necessary notes and mortgages when he filed Claims 100, 101, and 102 in Cloud 9's name. Finally, the attorney stated that all three mortgages and notes transferred to Cloud 9 on March 14, 2023.⁵ The second affidavit was by Aegis's representative; it stated that the relevant mortgages and notes "have always been in the Mitchell family."

Though the affidavits provided background information for why the claims here were improperly filed, they did not provide evidence that the note for Claim 100 was transferred to Cloud 9 by April 28, 2021. The Bankruptcy Court granted summary judgment for INXS VII on its objections to all three of Cloud 9's claims, disallowing all three claims in their entirety. The Bankruptcy Court explained that, because Cloud 9 did not have an interest in the promissory notes and mortgages at the time it filed the claims, the claims were not timely filed. As such, the properties were sold to INXS VII free and clear.

Bay United appealed to the District Court. It argued that there was no dispute that the mortgages existed, that disallowing their claims invalidated bona fide mortgages,

and that cases concerning foreclosure standing were improper bases for invalidating mortgages in the bankruptcy context. Bay United also argued that the claims were timely filed, that the person who filed them had "full authority" to do so, and that there were no other claims filed against the sales in question. It characterized the specific ownership of the notes as a "technicality" and "scrivener's error" and stated that disallowing the claims created an unwarranted windfall for INXS VII.

*3 The District Court affirmed the Bankruptcy Court's ruling, explaining that claimed rights to payment must be enforceable when filed, that only one with the right to payment may lawfully enforce it, and that Bay United provided no evidence Cloud 9 had enforceable rights to payment when it filed its claims. Bay United now appeals to this Court, repeating the arguments it made to the District Court.⁶

## II. Discussion

We review de novo a grant of summary judgment. *In re Club Assocs.*, 951 F.2d 1223, 1229 (11th Cir. 1992); *see also In re Nash*, 765 F.2d 1410, 1412 (9th Cir. 1985) ("The bankruptcy court's grant of summary judgment, affirmed by the district court, is subject to *de novo* review."). The summary judgment "will be upheld only if everything in the record indicates that there is no genuine dispute over the material facts, and that the moving party is entitled to judgment as a matter of law." *In re Club Assocs.*, 951 F.2d at 1229 (citation modified).

In bankruptcy, when an entity's claim for payment is based on a writing, the entity must attach a copy of the writing to its proof of claim. Fed. R. Bankr. P. 3001(c)(1). The proof of claim, filed in compliance with the bankruptcy rules, is presumed valid until a party in interest objects. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f); *see also In re Taylor*, 363 B.R. 303, 308 (Bankr. M.D. Fla. 2007); *In re Armstrong*, 320 B.R. 97, 104 (Bankr. N.D. Tex. 2005). The objection must contain "some substantial factual basis to support its allegation of impropriety," *Matter of Mobile Steel Co.*, 563 F.2d 692, 701 (5th Cir. 1977)⁷—"evidence at least equal in probative force to that offered by the proof of claim" that "refute[s] at least one of the allegations that is essential to the claim's legal sufficiency." *In re Taylor*, 363 B.R. at 308 (citation modified); *In re Armstrong*, 320 B.R. at 104 (citation modified). Proper objections include "specific and detailed allegations that place the claim into dispute" and "legal arguments[,] based upon the contents of the claim and its supporting documents[,] in which evidence

is presented to bring the validity of the claim into question." *In re Taylor*, 363 B.R. at 308 (citation modified); *In re Armstrong*, 320 B.R. at 104 (citation modified); *see also In re Thornburg*, 596 B.R. 766, 769 (Bankr. M.D. Fla. 2018) (explaining that a claim does not have prima facie validity without "minimal supporting documentation"). Where a proper objection is made, the entity asserting the claim loses the presumption of validity and instead must establish the validity of its claim. *Matter of Mobile Steel Co.*, 563 F.2d at 701; *In re Taylor*, 363 B.R. at 308; *In re Armstrong*, 320 B.R. at 104. If the entity fails to meet that burden, its claim is properly disallowed. *In re Taylor*, 363 B.R. at 308.

**\*4** State law governs the validity of a claim in bankruptcy, *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20, 120 S. Ct. 1951, 1955, 147 L.Ed.2d 13 (2000), and a claim is not allowed in bankruptcy "if the same claim would not be enforceable ... outside of bankruptcy." *In re Sanford*, 979 F.2d 1511, 1513 (**11th Cir.** 1992); *see also* 11 U.S.C. § 502(b)(1). Outside of bankruptcy, a note attached to a mortgage is enforced by foreclosing on that mortgage. *In re Venice-Oxford Assocs. Ltd. P'ship*, 236 B.R. 791, 803 (Bankr. M.D. Fla. 1998). As such, Florida's requirements to enforce a note via foreclosure action must extend to its requirements to enforce a note via bankruptcy claim.

In Florida, a party must be the owner or holder of a note to foreclose on the property attached to it. *Sorrell v. U.S. Bank Nat. Ass'n*, 198 So. 3d 845, 847 (Fla. Dist. Ct. App. 2016); *Forty One Yellow, LLC v. Escalona*, 305 So. 3d 782, 786 (Fla. Dist. Ct. App. 2020). Therefore, a party must also be the owner or holder of a note to file a claim based on it in bankruptcy, and a party has no claim before

it owns the note.⁴

With this made clear, it becomes obvious that a proof of claim must show the debt is owed to the claimant at the time it files the claim. Where the proof of claim lacks that evidence, an objection is appropriate. If the claimant does not then provide that evidence, the claim is properly disallowed.

Cloud 9's proofs of claim showed no evidence of debts owed to Cloud 9 on the date it filed its claims. Therefore, INXS VII's objections on that ground were proper. Cloud 9 then failed to provide the evidence required. The Bankruptcy Court was right to disallow Cloud 9's claims in their entirety, and the District Court was right to affirm.⁵

## III. Conclusion

**\*5** Simply put, in bankruptcy, the validity of a claim turns on whether the claim was brought by a party entitled to enforce it. Where a creditor does not show it has the right to enforce its claim, the claim is properly disallowed. We affirm the order of the District Court.

**AFFIRMED.**

**All Citations**

--- F.4th ----, 2026 WL 2131679

Footnotes

1    April 28, 2021, was the last day to file claims against the sale proceeds.

2    Bob Mitchell Associates assigned its notes to Joseph Quinn Mitchell on February 27, 2023. Joseph assigned the notes to himself and Larry Michael Rushing on March 14, 2023. On that same day, the two men assigned the notes to Cloud 9.

3    Bay United and Cloud 9 used the wrong form for the transfer of claims, but the parties to this suit do not challenge the validity of the transfer.

4    Though not stated in the affidavit, Joseph was president of Bob Mitchell Associates as well.

5    The attorney's description of the transfers related to Claim 101 and 102 aligned with the documents INXS VII included with its summary judgment motion. His description for Claim 100 added that at some point during the probate of Margaret Mitchell's will, the note and mortgage for the property transferred from Margaret's estate to her revocable trust. The note and mortgage then transferred from the trust to Cloud 9 on March 14, 2023. Bay United did not provide any documents showing that these transfers actually occurred.

6    Bay United states fleetingly in its initial brief on appeal and in slightly more detail in its reply brief that INXS VII did not have statutory standing to object to Cloud 9's claims in the first place. See 11 U.S.C. § 502(a). Cloud 9 did not make this argument when INXS VII first objected to its claims, and Bay United wrote only two sentences on the issue when it objected to INXS VII's motion for summary judgment. The statutory standing issue is not preserved or even properly argued now, so we will not consider it. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4, 134 S. Ct. 1377, 1387 n.4, 188 L.Ed.2d 392 (2014) (explaining that the "statutory standing" label is a bit of a misnomer because (1) the question is really whether a plaintiff has a cause of action and (2) "the absence of a valid ... cause of action does not implicate subject-matter jurisdiction"); In re White-Lett, No. 24-13053, 2025 WL 2528783, at *2 (11th Cir. Sept. 3, 2025) ("But as the Supreme Court has explained, the question of whether a statute creates a cause of action 'does not implicate' subject matter jurisdiction or answer whether a court has 'constitutional power to adjudicate the case.' " (quoting Lexmark, 572 U.S. at 128 n.4, 134 S. Ct. at 1387 n.4)); In re Espino, 806 F.2d 1001, 1002 (11th Cir. 1986) (finding that an issue "never properly presented to the bankruptcy court ... was not preserved for appeal"); United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (explaining that appellants must, "[a]t the very least, ... devote a discrete, substantial portion of his argumentation" to the issue they wish to appeal, otherwise the issue is abandoned). We similarly will not consider Bay United's assertion on appeal that Cloud 9 was the servicer of the mortgages and could, thus, file the claims because it did not make this argument below. See In re Espino, 806 F.2d at 1002.

7    The Eleventh Circuit adopted as binding precedent all decisions "handed down by [the Fifth Circuit] prior to the close of business on [September 30, 1981]." Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

8    We reject Bay United's appeals to equity here. Though bankruptcy courts are courts of equity, they "are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements." Raleigh, 530 U.S. at 24–25, 120 S. Ct. at 1957. The underlying law here is that a party must own a note before it is entitled to enforce it. Sorrell v. U.S. Bank Nat. Ass'n, 198 So. 3d 845, 847 (Fla. Dist. Ct. App. 2016); Forty One Yellow, LLC v. Escalona, 305 So. 3d 782, 786 (Fla. Dist. Ct. App. 2020). We cannot look past that.

Even if we could, Bay United gives no good reason why we should. The bankruptcy court's equitable powers allow it to "reorder distributions from the bankruptcy estate ... for the sake of treating legitimate claimants to the estate equitably," Raleigh, 530 U.S. at 24, 120 S. Ct. at 1957 (emphasis added), and Cloud 9 was simply not a legitimate claimant here. Regardless of family connections, Cloud 9, Bob Mitchell Associates, and Margaret Mitchell are, legally speaking, strangers. See Fla. Stat. § 605.0108(1) ("A limited liability company is an entity distinct from its members."); Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008) ("A general principle of corporate law is that a corporation is a separate legal entity, distinct from the persons comprising them."). In other words, the claims owned by one of them are not owned by the others. And it goes without saying that one entity cannot assert another's claims simply because the other entity failed to file the claims itself. Our system would surely devolve into chaos if we allowed that.

9    We reject Bay United's assertion that this holding invalidates bona fide mortgages. We simply hold that Cloud 9 had no right to file claims to enforce mortgages and notes to which it had no legal connection. The fact that the true owners of the mortgages and notes failed to file claims by the deadline is what makes them unenforceable now.

In re Aegis Asset Management, LLC, --- F.4th --- (2026)

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.



EXHIBIT
B

In re: AEGIS ASSET TRUST MANGEMENT, LLC, Debtor. BAY UNITED HOLDINGS,..., Not Reported in Fed. Supp. (2025)

2025 WL 5100701
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
TAMPA DIVISION.

In re: AEGIS ASSET TRUST
MANGEMENT, LLC, Debtor.
**BAY UNITED HOLDINGS, LLC,**
Appellant,
v.
**INXS 7 LLC,** Appellee.

Case No. 8:19-bk-8036-CPM, Case No.
8:23-cv-2370-KKM
|
Filed 01/06/2025

## ORDER

Kathryn Kimball Mizelle United States District Judge

*1 Bay United Holdings, LLC, appeals a bankruptcy court's order granting summary judgment disallowing three of its claims. Because Bay United fails to point to any evidence that its predecessor in interest had the right to enforce the notes and mortgages underlying its claims when those claims were filed, the bankruptcy court's order is affirmed.

## I. BACKGROUND

This appeal arises from the Chapter 7 bankruptcy of Aegis Asset Management, LLC. *See* (Doc. 10-8) at 1–3. The appellee, INXS VII, LLC, purchased sixty-eight properties from the bankruptcy estate free and clear of liens under 11 U.S.C. § 363(f). *See* (Doc. 10-9) ¶¶ 9-10; (Doc. 10-21) ¶ 1; Appellees' Br. (Doc. 25) at 2, 14. Material to this appeal, the estate sold INXS VII properties at: 1901 West Sligh Avenue, Tampa; 6807 East

North Bay Street, Tampa; and 1127 Sycamore Street, Lakeland. (Doc. 10-9) at 19–20. The bankruptcy court approved that purchase in an order dated March 29, 2021, which provided that any claims against the proceeds of the sale would be barred after thirty days. (Doc. 10-13) ¶ 24.

On the last day of that period—April 28, 2021—Cloud 9 Properties, LLC, the appellant's predecessor in interest, filed three proofs of claim. *See* (Docs. 10-73, 10-74, & 10-75.) Claim 100 alleged an indebtedness of $90,345.43 secured by a mortgage on the West Sligh Avenue property and included an attached mortgage in favor of Margaret J. Mitchell. (Doc. 10-73) at 2, 5–6. Claim 101 alleged an indebtedness of $16,444.80 secured by a mortgage on the Sycamore Street property and included an attached mortgage in favor of Bob Mitchell Associates, Inc. (Doc. 10-74) at 2, 5–6. And claim 102 alleged an indebtedness of $42,572.26 secured by a mortgage on the East North Bay Avenue property and included an attached mortgage also in favor of Bob Mitchell Associates, Inc. (Doc. 10-75) at 2, 5–6. None of the three proofs of claim included a writing evidencing a debt.

INXS VII objected to all three proofs of claim. (Docs. 10-21, 10-22, & 10-23.)¹ It contended that each claim was "facially deficient" because it lacked a "promissory note or other evidence of the existence of a debt or other consideration for the mortgage." (Doc. 10-21) ¶ 3; (Doc. 10-22) ¶ 3; (Doc. 10-23) ¶ 3. Cloud 9 responded by filing copies of the three promissory notes that the mortgages secured. (Doc. 10-27) at 15–45. Yet none of the three notes were in favor of Cloud 9. Like the mortgages, the West Sligh Avenue note was in favor of Margaret J. Mitchell, *id.* at 15, while the Sycamore Street and East North Bay Street notes were in favor of Bob Mitchell Associates, Inc., *id.* at 25, 41.

*2 After responding, Cloud 9 assigned its interest in all three claims to appellant Bay United Holdings, LLC. (Docs. 10-39, 10-40, 10-42, 10-43, 10-45, & 10-46.)

INXS VII then moved for summary judgment on its objections because the claims were "unenforceable under applicable non-bankruptcy law" because "there was ... no evidence that the entity filing the claims had the power or authority to enforce the claims." (Doc. 10-30) at 1, 7. With its motion, INXS VII submitted evidence of the notes' subsequent transfers. The West Sligh Avenue note and its mortgage passed to Margaret J. Mitchell's estate following her death on March 11, 2022. *See* (Doc. 10-31) at 15–16. Bob Mitchell Associates, Inc., assigned the

Sycamore Street note and its mortgage to Joseph Quinn Mitchell on February 27, 2023, who in turn assigned it to himself and Larry Michael Rushing on March 14, 2023. (Doc. 10-32) at 15–18. On that same day, the two men assigned the note to Cloud 9. *Id.* at 19–21. The East North Bay Street note and mortgage followed the same path as the Sycamore Street note, winding up assigned to Cloud 9 on March 14, 2023. (Doc. 10-33) at 11–20. INXS VII argued that because Cloud 9 did not become the holder of the notes and mortgages until almost two years after it filed its proofs of claim, those claims were invalid when they were filed and should be disallowed. (Doc. 10-30) at 8. **Bay United** responded briefly that the objections should be overruled because no party disputes the validity of the debts or mortgages. (Doc. 10-52) ¶¶ 7–11.

The bankruptcy court held a hearing on the motion on September 1, 2023, at which it gave **Bay United** an opportunity to present evidence that Cloud 9 acquired the right to enforce the notes and mortgages prior to filing its proofs of claim on April 28, 2021. *See, e.g.*, (Doc. 10-55) at 1, 18. After **Bay United** failed to do so, it gave **Bay United** more time to submit evidence that the West Sligh Avenue note—held at one point by Margaret J. Mitchell—had come into Cloud 9's possession prior to Cloud 9 filing its proofs of claim. *Id.* at 28, 30. In response, **Bay United** filed two affidavits, neither of which establish that Cloud 9 owned any of the notes and mortgages on or before April 28, 2021. *See* (Docs. 10-58, 10-59, & 10-60.)¹ In the absence of any evidence that Cloud 9 owned the notes and mortgages on April 28, 2021, the bankruptcy court granted summary judgment in favor of INXS VII. (Docs. 10-3 & 10-72). **Bay United** appeals. (Doc. 10-2.)

## II. LEGAL STANDARD
*3 A district court serves in an appellate role when reviewing a bankruptcy court's decisions. *See Williams v. EMC Mortg. Corp.*, 216 F.3d 1295, 1296 (**11th Cir.** 2000). I "review a bankruptcy court's grant of summary judgment de novo, applying the same legal standard used by the bankruptcy court." *In re Delco Oil, Inc.*, 599 F.3d 1255, 1257 (**11th Cir.** 2010).

Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see* Fed. R. Bankr. P. 7056 (incorporating Civil Rule 56). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (**11th Cir.** 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there is a genuine issue of material fact, which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court reviews the record evidence as identified by the parties and draws all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (**11th Cir.** 2020). Here, to the extent that the record is disputed or capable of multiple inferences, the Court draws them in favor of the non-movant.

## III. ANALYSIS
Because **Bay United** fails to produce any evidence that its predecessor—Cloud 9—had the right to enforce the obligations central to the three proofs of claim at issue here, the bankruptcy court rightly granted summary judgment in favor of **INXS VII**.

The Bankruptcy Code lays out a multi-step framework for evaluating proofs of claim. 11 U.S.C. § 502; *see In re Eddy*, 572 B.R. 774, 778 (Bankr. M.D. Fla. 2017). A proof of claim is presumptively allowed if filed in compliance with 11 U.S.C. § 501. *See* 11 U.S.C. § 502(a); *see also* Fed. R. Bankr. P. 3001(f) ("A proof of claim signed and filed in accordance with these rules is prima facie evidence of the claim's validity and amount."); *In re Baggett Bros. Farm Inc.*, 315 F. App'x 840, 843 (**11th Cir.** 2009) (per curiam). After a proof of claim has been filed, any party in interest may object. 11 U.S.C. § 502(a). Once a party in interest has objected, the bankruptcy court must determine whether the claim should be allowed. *Id.* § 502(b). The party asserting the claim has the burden of showing that the claim should be allowed. *See Bagget Bros. Farm*, 315 F. App'x at 843.

Cloud 9 did not originally file its three proofs of claim in compliance with the Bankruptcy Code and Rules, so **Bay**

United's claims are not presumptively valid. The Bankruptcy Rules require that, for a claim to be prima facie valid, a claimant whose claim is based on a writing must file a copy of the writing establishing that claimant's right to payment. Fed. R. Bankr. P. 3001(c)(1); *see In re Thornburg*, 596 B.R. 766, 769 (Bankr. M.D. Fla. 2018) ("Attaching supporting documentation is a mandatory prerequisite to establishing a claim's prima facie validity."). The three claims lack documentary evidence showing that Cloud 9 had an enforceable claim against the properties, as they lacked both notes in favor of Cloud 9 and either mortgages in favor of Cloud 9 or documents evidencing the assignment of those mortgages to Cloud 9. *See Forty One Yellow, LLC v. Escalona*, 305 So. 3d 782, 787 (Fla. 2d DCA 2020) ("An assignment of the mortgage without an assignment of the debt creates no right in the assignee." (quoting *Vance v. Fields*, 172 So. 2d 613, 614 (Fla. 1st DCA 1965))). The proofs of claim thus lack prima facie validity and may be "quickly disallowed upon a valid objection, unless the claimant then provides sufficient evidence to establish the validity of the claim by a preponderance of the evidence." *In re Taylor*, 363 B.R. 303, 308 (Bankr. M.D. Fla. 2007).

*4 Bay United has not met its burden here. A bankruptcy court must disallow a claim if the "claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). Except to the extent that a claimed right to payment is "contingent or unmatured," *id.*, it "must be enforceable against the debtor under applicable state law when the claim is filed," *In re Food Mgmt. Grp., LLC*, 484 B.R. 574, 589 n.8 (S.D.N.Y. 2012) (quoting *In re J & S Conveyors, Inc.*, 409 B.R. 635, 647 (Bankr. W.D.N.Y. 2009)); *see also* 11 U.S.C. § 101(10)(A) (defining "creditor" as any "entity that *has* a claim against

a debtor" (emphasis added)); Fed. R. Bank P. 3001(a), (b) (providing that "[a] proof of claim is a written statement of a creditor's claim"). It goes without saying that only an entity with the right to enforce a note and mortgage may lawfully do so. *See Bank of N.Y. Mellon v. Welker*, 194 So. 3d 1078, 1080 (Fla. 2d DCA 2016). And Bay United has put forward no evidence that its predecessor in interest, Cloud 9, had a right to payment on April 28, 2021.[3] Indeed, the affidavit that Bay United itself filed establishes that Cloud 9 did not come to hold the notes and mortgages until March 14, 2023. *See* (Doc. 10-59) ¶¶ 11–12).[4] Bay United points to no authority that prima facie invalid claims must be allowed if a claimant acquires rights in the instruments that would have supported the claims almost two years after the bar date had passed. In the absence of such authority, the bankruptcy court correctly granted summary judgment.

## IV. CONCLUSION

Accordingly, the bankruptcy court's order is **AFFIRMED**. The clerk is directed to **ENTER JUDGMENT**, which shall read: "The order of the bankruptcy court is affirmed," **TERMINATE** any pending deadlines, and **CLOSE** this case.

**ORDERED** in Tampa, Florida, on January 6, 2025.

## All Citations

Not Reported in Fed. Supp., 2025 WL 5100701

## Footnotes

1    INXS VII claims standing to object to these claims because after the bankruptcy court approved the settlement of controversies related to the sale of the sixty-eight properties, *see* (Doc. 10-15), "the [Chapter 7] Trustee and the bankruptcy estate have no further obligations relating to any claims filed or asserted against any of the 68 properties," (Doc. 10-21) ¶ 2; (Doc. 10-22) ¶ 2; (Doc. 10-23) ¶ 2; *see also* Appellee's Br. at 18 ("Appellee had standing as a party in interest to object to the claims because it has a financial stake in an order allowing or disallowing the claims because such an order 'diminishes their property, increases their burdens or impairs their rights.' " (quoting *In re Westwood Cmty. Two Ass'n, Inc.*, 293 F.3d 1332, 1335 (11th Cir. 2002))).

2    Gregory Richard's affidavit does shed some light on the whole transaction. According to Richards, the late Margaret J. Mitchell was the sole owner of both Bob Mitchell Associates, Inc., and Cloud 9, and Mitchell had intended to have the three notes and mortgages in favor of her and Bob Mitchell Associates assigned to Cloud 9, but never did so. (Doc. 10-59) ¶¶ 5, 7. Her son, Joseph Quinn Mitchell, was her attorney-in-fact, was designated to be the personal representative of her estate and was the president of both Cloud 9 and Bob Mitchell Associates. *Id.* ¶¶ 4, 8; *see* (Doc. 10-32) at 16. Joseph Quinn Mitchell believed that Cloud 9 held

all three notes and mortgages based on his mother's representations and so filed the proofs of claim in its name. (Doc. 10-59) ¶ 8. Only after his mother's death did he discover that the notes and mortgages were held elsewhere. *Id.* ¶¶ 9–10. The affidavit also explains that the West Sligh Avenue note and mortgage were probated following Mitchell's death, became part of the Mitchell estate, and were later transferred to Cloud 9. *Id.* ¶ 11.

3   Bay United repeatedly claims that the upshot of INXS VII's argument is the invalidation of the mortgages. *See* Appellant's Br. at 12, 15, 17–19, 21, 23–25, 27–28. Not so. The question is not whether the mortgages (or the notes) were valid but whether Cloud 9 had a right to payment under them. Whether an instrument is valid and enforceable and whether a particular party has the right to sue on an instrument are separate inquiries.

4   Because the affidavits support affirmance, I need not address INXS VII's argument that they should not be considered at all. *See* Appellee's Br. at 33–36.

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---