FILED ORL INTAKE- USBC
17 AUG 2026 AM11:22

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

Case No. 6:25-bk-05570-GER
Chapter 11

**HOMEMAKERS REAL ESTATE, LLC,**
Debtor.
_________________________________/

# REPLY TO THE RESPONSE OF JAMES A. TIMKO AND DEAN, MEAD, EGERTON, BLOODWORTH, CAPOUANO & BOZARTH, P.A., TO THE MOTION FOR SANCTIONS UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011

## Dean Mead answers under a rule that measures only the moment of filing, and Rule 9011 stopped reading that way on December 1, 1997.

Dean Mead states: "Rule 9011 does not impose a continu[ing] obligation after the filing of a pleading to evaluate its position or obtain more information as a case develops." (Doc. 331 at 6). Everything else in the response depends on that sentence. The authority behind it is *In re Mroz*, 65 F.3d 1567, 1574 (11th Cir. 1995). Dean Mead should read the opinion Dean Mead cites. It disclaims the reach Dean Mead gives it.

That rule applies to decisions addressing Rule 9011 sanctions before the rule changed in 1997.

The Eleventh Circuit stated the limitation twice. First, in a footnote hung on the sentence that imports the standard: "Recent amendments to Rule 11, effective December 1, 1993, have not yet been duplicated in Rule 9011. These amendments

have no impact on our discussion in this section, however, they become more relevant in Section II.2., discussed *infra*." *In re Mroz*, 65 F.3d at 1572 n.4. The court was tracking the amendment problem, not overlooking it.

Second, in the section where the court promised the point would matter:

> However, Congress amended Rule 11 to change that. Among other things, the amendments, which became effective December 1, 1993, now allow a federal court to sanction a law firm under Rule 11 as well as individual attorneys and parties. These changes have not been duplicated in the Bankruptcy Code, yet, even if they were, we would be bound to apply the law as it existed at the time the events herein took place, which occurred prior to the date of these amendments.

*In re Mroz*, 65 F.3d at 1576.

An appellate court that would be "bound to apply the law as it existed at the time the events herein took place" has fixed the reach of its own holding, and every later reader should be careful applying it beyond those events. The events in *Mroz* occurred before December 1, 1993. To state the obvious, the events in this case occurred in 2025 and 2026.

Before setting out the two-prong test Dean Mead quotes, the court wrote that "authorities applying these standards under Rule 11, *prior to its amendment*, may be useful in applying Bankruptcy Rule 9011." *Id.* at 1572. Footnote 4 hangs on the words "prior to its amendment." The limitation is the sentence immediately before the rule Dean Mead borrows, and Dean Mead carried the rule forward without it.

**The 1997 change.**

The Judicial Conference then did what *Mroz* said had not yet been done. Rule 9011 was amended April 11, 1997, effective December 1, 1997, to conform the bankruptcy rule to the 1993 revisions of Rule 11.[1] The rule now reads:

> By presenting to the court a petition, pleading, written motion, or other document — whether by signing, filing, submitting, or *later advocating* it — an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances ... the allegations and factual contentions have evidentiary support.

Fed. R. Bankr. P. 9011(b), (b)(3).

The certification no longer attaches once, at the instant of signature. It attaches every time Dean Mead advances the position. Whether Dean Mead made an inquiry reasonable under the circumstances, each time it advanced these instruments or advocated a position built on them, is the only question my motion presents.

With one exception, the response never quotes the correct language. Every standard in its argument comes from a 1995 decision construing a superseded rule.[2]

---

[1] Fed. R. Bankr. P. 9011 (as amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 11, 1997, eff. Dec. 1, 1997; Apr. 2, 2024, eff. Dec. 1, 2024). The 1997 amendment carried the 1993 revisions of Federal Rule of Civil Procedure 11 into Rule 9011. The 2024 amendment restyled the rule and left the certification language intact.

[2] Notably, Dean Mead's other primary authority is In re Edgewood Food Mart, Inc., a Northern District of Georgia bankruptcy decision that cuts against Dean Mead's premise.

The single place Dean Mead cites the rule as it now exists is Rule 9011(c)(2)(C), where Dean Mead asks this court for its own fees.[3]

**Dean Mead changed the tense of the sentence that it relies on.**

In 1995, the Eleventh Circuit wrote this about the law firm before it: "Unfortunately, Rule 9011 did not impose a continuing obligation on H & S to obtain more information or reevaluate its position as the case developed." *In re Mroz*, 65 F.3d at 1574.

Dean Mead renders the same sentence this way: "Rule 9011 does not impose a continu[ing] obligation after the filing of a pleading to evaluate its position or obtain more information as a case develops." (Doc. 331 at 6). The past tense became the present. Dean Mead's sleight of hand turns a specifically named firm operating under a named rule into the rule itself, speaking to every case forever. I do not ask this court to infer why. I ask this court to compare the two sentences. (Ex. 1, *In re Mroz* (highlighted)).

**Mroz's own reasoning is the reason its holding no longer governs.**

The appellate court rested on the words of the rule then in force: "Because Bankruptcy Rule 9011 tracks the present tense language of Rule 11, the former also

[3] Doc. 331 quotes Rule 9011(c)(2)(C) at page 8, in support of Dean Mead's own request for fees. The rule as it now reads was open on Mr. Timko's desk.

does not impose a continuing obligation on the party to amend the complaint." *Id.* at 1572–73. The footnote to that sentence quotes the language the court meant — a certificate that the paper "*is* well grounded in fact and *is* warranted by existing law." *Id.* at 1572–73 n.5. That present-tense certificate is gone. The certificate now runs to signing, filing, submitting, *or later advocating*. When the text changed, the reasoning built on the text went with it.

The drafters said as much. A litigant's obligations are "not measured solely as of the time" a paper is filed; they extend to "reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit."[4] Dean Mead's duty to ensure the veracity of its advocacy continued throughout its representation and remains in force today.

**Dean Mead's only other authority decides this motion against Dean Mead.**

Beyond *Mroz*, the response cites a single case three times for the definition of a frivolous pleading and for the improper-purpose standard. *In re Edgewood Food Mart, Inc.*, 664 B.R. 893 (Bankr. N.D. Ga. 2024). (Doc. 331 at 5–6). Dean Mead

---

[4] Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment (a litigant's obligations "are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit").

does not cite *Edgewood* for the proposition that Rule 9011 stops looking after the filing. It could not. *Edgewood* holds the opposite, on facts that track this one.

Start with how that court states the rule. "When a party *presents* a writing to the court, that person is 'certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances'" the four things Rule 9011(b) enumerates. *Id.* at 899–900. The catalyst is presenting, not filing. The bankruptcy court then framed the inquiry in one sentence: a court must "ask whether a reasonable inquiry would have made the signer aware that the claim was frivolous." *Id.* at 900.

Then read what the court did with a lawyer who said he had not known:

> Even if he was legitimately unaware of the legal defect when he filed the Complaint, any question about that would have been answered when Defendant provided him with notice of the Rule 9011 Motion. Yet he failed to dismiss the claim and, in fact, opposed Defendant's motion to dismiss the Complaint. This conduct further supports the conclusion that Plaintiff knowingly filed the Complaint in violation of Rule 9011(b)(2).

*Id.* at 903.

The bankruptcy court returned to the point twice more. The violation lay in "filing it *and continuing to prosecute it.*" *Id.* at 904. And the aggravating fact was that the lawyer, "when put on notice … rather than correct the deficiency," pressed ahead. *Id.* The authorities the court collected say the same thing. Sanctions followed where a litigant proceeded "despite clear warning" that the claims had already been

decided. *Id.* at 900–01 (quoting *Grappell v. Carvalho*, No. 21-cv-61417, 2021 WL 5178750, at *9 (S.D. Fla. Nov. 8, 2021)).

One more feature of *Edgewood* answers the timing objection Dean Mead makes here. The plaintiff there dismissed the offending complaint *after* the twenty-one day window closed, and the court sanctioned him anyway, addressing the motion "notwithstanding the dismissal of the Complaint." *Id.* at 897. Dean Mead has withdrawn nothing at all.

Dean Mead took from *Edgewood* the sentence defining a legally frivolous pleading and stopped three pages short of the holding. What that court held is the rule Dean Mead tells this court does not exist: ignorance at the time of filing is answered by notice, and a lawyer who opposes instead of correcting has made the violation worse rather than cured it.

**Rule 9011 does not require a lawyer to be right. It requires a lawyer to look again once the documents are called into question.**

Nothing in this motion asks this court to hold Mr. Timko to a standard of perfection. Lawyers receive documents from clients, and lawyers are sometimes deceived by them. The rule accounts for that. What the rule does not tolerate is the lawyer who is told his client's instrument cannot be what it says it is, declines to look, and keeps presenting it.

This motion is about the repeated presentation of, and reliance on, two documents that were fundamentally flawed. That is the whole of the duty and the whole of this motion. A reasonable inquiry is measured against what the signer has been told. Where nothing has disturbed the paper, little inquiry is reasonable. Where a witness has testified that the notarial certificate describes a ceremony that could not have occurred, reasonableness demands more of an inquiry. Dean Mead answers a case about perfection that nobody brought.

**On February 3, 2026, both instruments were challenged in open court, and Mr. Timko told this court the challenge was new to him.**

At the trial on the involuntary petition, Mr. Timko offered the Tiered Land Trust Agreement and examined Mr. Johnson about it. The court asked Mr. Johnson whether he remembered signing it. Mr. Johnson answered that he believed he had signed such a document, "but it can't be this document." The court asked why not:

> Because it looks like it's all notarized. ... And the notary has marked, let's see — produced identification. And this was all electronically signed. So that couldn't be the case. ... And I don't see how the witnesses could witness an electronic signature.

(Ex. 2, Feb. 3, 2026 Hearing Tr. at 155:1–10).

Mr. Timko then read into the record his own deposition examination of Mr. Johnson, taken months earlier, in which Mr. Timko himself had asked: "Okay, but you did do an electronic signature on this document?" (Id. Tr. at 155:25–156:1). Mr. Timko knew the instrument was electronically executed before the witness ever

reached the stand. He had asked the question himself, which means Mr. Timko knew then that the validity of these documents was suspect.

What Mr. Timko said next is the reason this section exists. Pressed on whether he could authenticate the exhibit, Mr. Timko told the court: "I didn't bring the depositions with the exhibits, Your Honor. I — this is — this is all new that these documents are not correct." (Id. Tr. at 156:22–157:2).

A lawyer who tells a court that a challenge to his client's documents is new to him has identified, in his own words, the moment his duty of inquiry attached. The court declined to admit the exhibit. (Id. Tr. at 157:20–22).

The Assignment came in later the same day, as Exhibit 25, and it drew the same challenge. Mr. Timko offered it as a document that "shouldn't be in dispute" and had Mr. Dixon authenticate it. (Id. Tr. at 267:10–21). When I was examined about that exhibit, I testified that "this document is a forgery." (Id. Tr. at 284:13–15). Asked why, I testified that it "wasn't notarized. It was done in my kitchen in my house," that "I watched it," and that "[m]y niece sent it over un-notarized and nobody tells me about it because they know I wouldn't let it be signed." (Id. Tr. at 285:9–16).

Mr. Timko objected twice, and the court sustained both times. (Id. Tr. at 284:16–21, 284:25–285:1). His answer to the substance was that it belonged in "state

court." (Id. Tr. at 285:17–18). That is a venue objection. It is not an inquiry, and it reveals that Mr. Timko had notice the document was said to be falsified.

Seven weeks later the challenge was put to this court as a matter of law, and Mr. Timko was in the room. On March 27, 2026, I told the court that "every document that exists in the public records, in this court, show that the tiered land trust, by virtue of your order, only own[ed] the beneficial interest in Homemakers. But that entity never existed. It wasn't formed properly, it was never done. And even the putative or the alleged formation of it in February 2024 was after the purported assignment." (Ex. 3, Mar. 27, 2026 Hearing Tr.). And again, a moment later: "Land trust did not exist. They had no authority to be here today. They have no authority to represent Homemakers." (Id. Tr.).

By the end of March 2026, then, Mr. Timko had heard the challenge stated three ways. The jurat could not describe what happened, because the instrument was signed electronically. The trust that the instrument was supposed to create never formed. And the formation his clients relied on postdated an assignment that presupposed the trust existed to receive it. Dean Mead's response to this motion treats June 2, 2026 as the first appearance of the subject. The record puts it four months earlier.

One limit belongs on this section, and I put it here rather than leaving it to be found. The February 3 testimony reached the Tiered Land Trust Agreement and the

Assignment by name. It did not reach the Trustee's Deed. As to the Deed, what Mr. Timko learned that day was the *kind* of defect — a physical-presence, produced-identification jurat certified on an instrument signed electronically. The Trustee's Deed came out of the same transaction, bears the same manner of execution, and carries the same form of jurat. An inquiry reasonable under those circumstances reaches it.

**Ten minutes in the State's notary records would have answered the question, and Mr. Timko never ran the search.**

Florida law gave Mr. Timko a short and public answer. A notary may not notarize a signature unless the signer appears in physical presence or by audio-video technology, and only a notary registered with the Department of State may take an appearance the second way.[5] The registry is searchable by anyone. The search takes minutes.

The search produces one date and one conclusion. Janelle Morea certified the Trustee's Deed on September 13, 2023. Ms. Morea was not registered with the Department of State to perform online notarizations until September 2025, two years

[5] Fla. Stat. § 117.107(9): a notary "may not notarize a signature on a document if the person whose signature is being notarized does not appear before the notary public either by means of physical presence or by means of audio-video communication technology as authorized under part II of this chapter at the time the signature is notarized." Part II reaches only an "online notary public," meaning a notary "who has registered with the Department of State to perform online notarizations under this part." Fla. Stat. § 117.201(10). An online certificate "must include a notation that the notarization is an online notarization." Fla. Stat. § 117.265(7). The statute adds that it "is no defense … that the notary public acted without intent to defraud." Fla. Stat. § 117.107(9).

afterward. Her certificate recites physical presence, states that the signer produced a driver's license, leaves the online-notarization box blank, and sits on an instrument executed through DocuSign.

Two possibilities follow, and only two. Either the signer stood in front of the notary, which the electronic execution refutes, or the notary took an appearance she held no commission to take. On the first branch the certificate is false. On the second it was unauthorized when made. Mr. Timko never had to choose a branch, because he never ran the search.[6]

This record does contain an inquiry. It came five days after the trial, and it asked the wrong question.

On February 8, 2026, Ms. Morea executed a declaration under penalty of perjury. (Ex. 4, Declaration of Janelle Morea). The declaration is careful, and it is responsive to a question no one had asked. It identifies her employer,[7] states who paid for her commission and bond, states who directed her work, and clears the closing attorney of ever asking her to falsify a seal or perform a "false attestation."

---

[6] I do not ask this court to hold on this record that the defect voids either instrument. The recording statutes treat that question separately. Fla. Stat. § 689.01(3); Fla. Stat. § 117.265(9). The Legislature made the same noncompliance admissible "as an indication of possible fraud, forgery, impersonation," and that is the use I make of it here. Fla. Stat. § 117.265(9).

[7] Incorrectly, as it happens. Ms. Morea worked for me at Correcting Injustice, Inc. before I referred her to Sherwood Construction, Inc., and while she was at Correcting Injustice I admonished her for notarizing a signature without watching the witness and the signer sign.

On the documents themselves it says this much and no more: "Any signature I notarized for Horton Johnson was actually his signature."

Read the declaration for what is missing. It does not say Mr. Johnson appeared before Ms. Morea. It does not say she watched him sign. It does not say the signing occurred in her physical presence, which is what her certificate on the Trustee's Deed attests. On the question of authority it says only that her commission "remained valid and in good standing from January 2022 until its expiration on January 5, 2025" — a traditional commission, and the one that does not authorize what her certificate describes. The declaration never mentions online notarization, and it never mentions that Ms. Morea was not licensed to perform one.

**Ten minutes reveals the notarization is false.**

The declaration does contain one sentence that ten minutes would have tested: "To the best of my knowledge, I have always performed my duties in strict compliance with the notarial laws of the State of Florida." (Ex. 4 ¶ 3). Dean Mead filed that declaration on June 2, 2026, and relies on it still. Whether a signature was genuine and whether a notarization was lawful are different questions. Dean Mead asked the first. Nobody has yet asked the second, and the omission is not accidental: the answer shows the declaration's assurance of "strict compliance with the notarial laws of the State of Florida" to be false.

**The Trustee's Deed is the source of the authority Dean Mead's clients used, so its defects were never collateral to this case or to the voluntary case.**

Dean Mead's answer to the merits is that none of this was ever before the court. Whether the Trustee's Deed "was properly notarized or is some sort of forgery was never litigated in this case and was irrelevant" to section 303. (Doc. 331 at 6–7). Dean Mead adds that its clients "never directly rel[ied] on or submitt[ed] the Trust Deed to the Court." (Doc. 331 at 4).

Three pages earlier the response says the opposite. "As a result of Homemakers acknowledging the existence of the Land Trust, it acknowledged the Trust Deed." (Doc. 331 at 3). Dean Mead claims the benefit of the deed and disclaims reliance on it in the same document. Both cannot be true.

The record answers which one is. The dismissal order rests on the proposition that Mr. Johnson assigned "all of his right, title and interest in 100% of Debtor's membership interests … to the Land Trust" and that Crescent Sound Ltd. "was the trustee of the Land Trust on the Petition Date." (Doc. 73 at 2). That is the holding Dean Mead won.[8] The Assignment and the Trustee's Deed are how the membership units got to the trust and how the trustee came to hold them. An instrument that

[8] A victory won on opposing counsel's mistake, taken knowingly, is no victory at all. It smacks of cheating, and it violates the duty of candor.

supplies the authority for the relief a party obtains is not collateral to the proceeding. It is the proceeding.

The comparison the deed invites is not close. Mr. Johnson signed three pages through DocuSign on September 13, 2023, bearing envelope identification 9078288B-FE20-4A15-A658-110FB6D3929D on every page, with the witness lines blank and the notary block blank. What reached the public records on February 14, 2024 runs eight pages, carries two wet-ink witnesses and a notarial certificate attesting physical presence and a driver's license, and substitutes six pages of legal descriptions covering twenty-seven units for the single page reading "26 UNITS." (CFN 2024031262, OR BK 9992, PG 2830–2837). None of the six added pages carries the envelope identification. Everything that makes the instrument recordable was added after Mr. Johnson signed.

**Dean Mead's own safe-harbor argument establishes that the advocacy came after the notice.**

Dean Mead argues that the Omnibus Response came "a month after Dean Mead was served with the Safe Harbor Letter," so that I "could not be claiming that Dean Mead made sanctionable statements of facts in a Court filing before the filing occurred." (Doc. 331 at 4). Dean Mead has the sequence right and the consequence backwards.

Two clocks run here and Dean Mead has merged them. The safe-harbor clock is procedural and runs from the letter of May 5, 2026. The inquiry clock is substantive, it started on February 3, 2026, and it ran again on March 27, 2026. On May 5, 2026, Dean Mead also received the proposed motion, the identification of the DocuSign Certificates of Completion, and Mr. Johnson's sworn statements that no notary attended the signing. On June 2, 2026, holding all of it, Dean Mead filed the Omnibus Response in the voluntary case and there advanced the same two instruments. *In re Homemakers Real Estate, LLC*, No. 6:25-bk-02685-GER (Bankr. M.D. Fla. 2025). On August 12, 2026, Dean Mead advanced them again, in the response now before this court.

The Assignment needs no such analysis at all. The Assignment entered the record in 2025, the safe-harbor letter addressed it in full at pages 17 through 20, and the twenty-one days expired before I filed. Dean Mead's timing objection reaches neither instrument — not the Assignment, which the letter covered in full and on time, and not the Trustee's Deed, which Dean Mead advanced anew after the letter arrived.

**Dean Mead offers ignorance where Rule 9011 requires inquiry.**

Dean Mead states that it "was not involved in documenting the underlying transaction and has no personal knowledge as to the preparation or execution of the

documents." (Doc. 331 at 2 n.3). That is not a defense. That is the reason the rule exists. The duty is to inquire.

Rule 9011 sets an objective standard, and Dean Mead states it correctly at page 5 before abandoning it. The second step asks whether "the person signing the document *should have been aware*" that the paper was frivolous. *In re Mroz*, 65 F.3d at 1573. Dean Mead then argues, for six pages, that Mr. Timko did not actually know. What a lawyer actually knew answers a different rule.

Reliance on a client bears on the reasonableness of the inquiry; it does not replace the inquiry. *Id.* (the reasonableness of the prefiling inquiry "may depend on the following factors: the time available to the signer for investigation, whether he had to rely on a client for information as to the underlying facts, and whether the paper was based on a plausible view of the law") (citing *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (en banc)). The factor asks whether Dean Mead *had to* rely. Dean Mead itself filed the DocuSign Certificate of Completion whose Witness Events row and Notary Events row are blank, and it already had notice that these documents were said to be false and their recordation a forgery. The filing of the Certificate of Completion shows Dean Mead had to rely on no one.

**Evidence that the Land Trust existed is not evidence that the jurat was true.**

Dean Mead answers the forgery allegation with a list: "the parties agreement the Land Trust existed, the parties acting under the Land Trust, this Court's ruling, the recorded document." (Doc. 331 at 6). Every item on that list proves appearance. None of them overcomes a failure of formation under the law.[9] No item on that list proves execution of the formation documents. No one disputes that a land trust was spoken of, papered, and acted upon. The contention is that a notary's certificate attests to a ceremony that never happened, and a recital that the trust existed says nothing about who stood in the room.

Moreover, Dean Mead compounds the substitution by moving the "absolutely no evidence" formulation from the step it governs to the step it does not. *In re Mroz*, 65 F.3d at 1573. That phrase measures whether a pleading is factually frivolous. It does not measure whether the signer's inquiry was reasonable. A lawyer holding record proof that contradicts a factual contention does not satisfy Rule 9011 by pointing to other evidence that the contention might still turn out to be true.

---

[9] By comparison, a failure to record the documents required to form a corporation results in no corporation, no matter what the parties call it.

**The hindsight rule protects against facts that surfaced later, not against a document in Dean Mead's own exhibit.**

Dean Mead invokes the instruction that a court "is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *In re Mroz*, 65 F.3d at 1572 (quoting *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1506 (11th Cir. 1993)). Read the instruction as written. It fixes the measuring point at submission and asks what was reasonable to believe *then*. Two points follow. First, after the change in Rule 9011, that "then" is every time Dean Mead advocated on the strength of these documents.

Second, Dean Mead told the court that "the DocuSign identification number on the recorded deed … matches Johnson's identification number" and that "all of the evidence supports that Johnson executed the recorded deed, had Amodeo's relatives witness it." (Doc. 93 at 7). The exhibit Dean Mead attached to prove it is the certificate that disproves the premise. The certificate authenticates a three-page envelope, and its Witness Events and Notary Events rows are blank. (Doc. 93, Ex. C).

Nothing about that document is hindsight. Dean Mead filed it, and in filing it showed that all along — well before May 5, 2026 — Dean Mead held the means to identify the forgery at any time it chose to look. Two possibilities follow, and only

two. Either Dean Mead did not look, which preserved the deniability the response now asserts, or Dean Mead looked and said nothing.

**A ruling that reached no facts cannot validate the facts.**

Dean Mead argues that "the fact that there is legal support for the arguments made in the Omnibus Response … is established by the Court's ruling in Dean Mead's clients' favor."[10] (Doc. 331 at 7). Four pages earlier, Dean Mead concedes the opposite. "The Court did not refer to the affidavit of the notary or any of the factual disputes in its ruling. The Court relied on Johnson's failure to state a claim under Rule 60." (Doc. 331 at 4).

Both statements cannot stand. An order resting on the sufficiency of a pleading adjudicates nothing about the evidentiary support behind a factual contention, and Rule 9011(b)(3) asks about nothing else. Dean Mead prevailed on a ground that never touched the notarization, and now offers that victory as proof the notarization was sound.

[10] Rule 9011 demands inquiry into the veracity of the documents and the arguments, and the duty is the lawyer's. It is not abrogated by opposing counsel's mistake or by an error of the court. The duty of candor is the law.

**Mroz answers standing and remedy against Dean Mead, and it ends in a remand for an evidentiary hearing.**

Dean Mead argues that only the chapter 11 trustee may pursue this relief. *Parker v. Wendy's International, Inc.*, 365 F.3d 1268, 1273 (11th Cir. 2004) (a cause of action belonging to the estate "is property of the bankruptcy estate" that the trustee alone may assert). *Parker* governs causes of action. A Rule 9011 motion is neither a cause of action nor property of any estate. The rule creates no claim. It enforces a certification made to this court, and it measures the sanction by what "suffices to deter repetition of the conduct." Fed. R. Bankr. P. 9011(c)(4)(A). A monetary sanction on motion runs to "the reasonable attorney's fees and other expenses directly resulting from the violation," payable to the movant. Fed. R. Bankr. P. 9011(c)(4)(A)(iii).[11]

Two further paths stay open whatever this court concludes about my standing. The rule keeps its own: "On its own, the court may enter an order describing the specific conduct that appears to violate (b) and directing an attorney, law firm, or party to show cause why it has not violated (b)." Fed. R. Bankr. P. 9011(c)(3). And *Mroz* holds that the rules do not exhaust the remedy. "The fact that rules such as Rule 11 and Bankruptcy Rule 9011 have been promulgated by Congress does not displace a court's inherent power to impose sanctions for a parties' bad faith

---

[11] If a monetary sanction is appropriate, I ask that any amount that might be due to me be paid instead to the Make-A-Wish Foundation or a similar charity.

conduct." *In re Mroz*, 65 F.3d at 1575–76. A false jurat presented to this court is this court's business whoever brings it forward.[12]

Where *Mroz* came out is the last thing Dean Mead should want cited. The Eleventh Circuit could not tell from the record whether the firm had acted in bad faith or merely without diligence, and the Eleventh Circuit said what that uncertainty required: "Because the reputation of a law firm and its attorneys is at stake, we believe it prudent to remand this case to the bankruptcy court for an evidentiary hearing to determine if these parties acted in bad faith. This hearing will afford the parties involved due process." *Id.* at 1576. Dean Mead's own lead authority reversed a sanction and ordered an evidentiary hearing. Dean Mead now tells this court the notarizations are "clearly in dispute"[13] and asks for no hearing at all on whether that dispute obliged it to investigate how a three-page document became an eight-page document, or why a notary notarized a copy of a signature rather than an original.

---

[12] The response devotes its opening footnote, its closing page, and a run of adjectives in between to my criminal history, my guardianship, and my litigation habits. None of that answers Rule 9011(b), and I do not answer it here.

[13] Dean Mead does not tell us which facts are in dispute, or which point of law is in dispute. Nor does Dean Mead explain how a matter can be "clearly in dispute" when, by Dean Mead's own account, it "was never litigated in this case." (Doc. 331 at 6–7). See generally Bryan A. Garner, *The Redbook: A Manual on Legal Style* 260 (3d ed. 2013) ("[i]f something is clearly or obviously true, prove it to the reader without resorting to the conclusory use of these words.").

**I narrowed this motion so that three admissions would end it, and Dean Mead answered with a superseded rule instead.**

I did not ask Dean Mead for money. Before filing I cut this motion down to what an admission would resolve, and the admission I wanted was three sentences long: that Ms. Morea was not present when the Trustee's Deed was signed; that the eight-page instrument recorded on February 14, 2024 is not the three-page document Mr. Johnson signed on September 13, 2023; and that the notarial certificate on the recorded instrument is false. Those three sentences would have ended my Rule 9011 motion. I would have let the matter go.

Dean Mead answered with a rule the Judicial Conference superseded in 1997, an affidavit about who gave the notary her instructions, and ten pages about me. The response repeats the representations rather than correcting them, which is what Rule 9011 protects against and the conduct the certification reaches. Rule 9011 is not the only authority that reaches it, and I reserve every remedy available under 11 U.S.C. § 105(a) and under the inherent power that *Mroz* confirms the rules do not displace. *In re Mroz*, 65 F.3d at 1575–76.

Strip away the superseded standard and what remains of the response is an admission. "Any claims that the Trust Deed was not properly notarized is clearly in dispute." (Doc. 331 at 6). "The legal effect or deficiencies in the notarizations is a disputed issue and will likely be determined in this Court." (Doc. 331 at 5 n.5). That

is a conclusory statement, and it identifies neither the facts said to be in dispute nor the rule of law said to be ambiguous. Most noteworthy of all, in ten pages Dean Mead never tells this court the instruments are genuine. Dean Mead tells this court the question is open, and then asks to be excused from having investigated it.

Rule 9011(b) certifies the papers each time Dean Mead advanced them. Dean Mead advanced or relied upon these two instruments beginning with the voluntary case filed on May 5, 2025, most recently on June 2, 2026, and again on August 12, 2026,[14] in every instance after being told what the certificates could not be, and in no instance after an inquiry reasonable under those circumstances. The rule as written requires sanctions.

## RELIEF REQUESTED

I ask this court to measure the response against Rule 9011(b) as the rule reads today, to find that Mr. Timko and Dean Mead certified the Assignment and the Trustee's Deed throughout this proceeding, including on June 2, 2026, and on August 12, 2026, without an inquiry reasonable under the circumstances then known to them, to impose a sanction sufficient to deter repetition under Rule 9011(c)(4)(A),

---

[14] From May 5, 2025, the date the voluntary case was filed, to now, Dean Mead has advocated that Crescent Sound Ltd., as trustee of the Tiered Land Trust, controlled Homemakers. If Dean Mead wishes to restore its ethical integrity, it should recant that position and admit that the Tiered Land Trust of September 2023 was never formed, and that the post hoc Trustee's Deed recorded on February 14, 2024 is a fabrication and is false.

and to award the reasonable expenses directly resulting from the violation under Rule 9011(c)(4)(A)(iii). Dean Mead states in writing that the notarizations are "clearly in dispute." On that concession, and on the course the Eleventh Circuit set in the very case Dean Mead cites, I ask this court to set the disputed jurats and the alteration of the recorded Trustee's Deed for evidentiary hearing.

Respectfully submitted this 17 day of August, 2026.

Frank L. Amodeo
*Pro se*
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32809gmail.com

## CERTIFICATE OF SERVICE

I certify that on the 17 day of August, 2026, I filed the foregoing with the Clerk of Court by delivering it for docketing in Case No. 6:25-bk-05570-GER. The Clerk's docketing entry transmits a Notice of Electronic Filing to all parties registered to receive electronic notice in this case, including counsel for the chapter 11 trustee, counsel for the debtor, and James A. Timko, Esq., Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., 420 South Orange Avenue, Suite 700, Orlando, Florida 32801. I served all remaining parties entitled to notice by United States mail, first class, postage prepaid.

Frank L. Amodeo
*Pro se*