FILED ORL INTAKE- USBC
1 SEP 2026 PM1:22

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

HOMEMAKERS REAL ESTATE, LLC,\ Case No. 6:25-bk-05570-GER
Chapter 11

Debtor.

______________________________/

**OBJECTION TO THE TRUSTEE'S EMERGENCY MOTION TO APPROVE COMPROMISE OF CONTROVERSY**

**The settlement as proposed is a marketing piece for the Pedixon affiliates who, while trustee, took the revenues of Homemakers from its legitimate stakeholders.**

Each is on this docket: the Brevard County Tax Collector, both Cape Crossing associations, Cape Crossing Resort Management, Inc., Tamamoi LLC, The Carton Family Trust, Mainstreet Community Bank of Florida, N.A., and the beneficiaries of the Tiered Land Trust.

The Dixon minions manufactured a crisis to ensnare the Trustee in the web of their organization, and to create an escape hatch for their contractual and statutory breach of duty while acting as trustee of the so-called Tiered Land Trust. Pedixon LLC and ZPD, LLC are buying a release from expropriation with a small fraction of the money they expropriated. That is much like robbing a bank, then settling the bank's efforts to recover by giving back three rolls of the stolen quarters.

I hold Claim 1 and the Trustee served me. (Doc. 372 at 9). Rule 9019(a) requires notice to creditors, Rule 2002(a)(3) fixes it at twenty-one days, and this motion gives two. Her own authority explains why creditors are noticed at all: the fourth factor is "the paramount interests of the creditors and a proper deference to their reasonable views in the premises." *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990). Approval "requires more than just a 'rubber-stamping' of an agreement," and silence from the settling creditors decides nothing, because

creditors seldom object when the record gives them nothing to object to. *In re Kay*, 223 B.R. 816, 819 (Bankr. M.D. Fla. 1998); *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 435 (1968). This is not an objection to a proof of claim or a scheduled liability, so paragraph 3 of the case management order does not reach it, and that order's decretal paragraphs contemplate responses subject to a page limit. (Doc. 359).

**The roof must be replaced, and it will be, without this compromise.**

The certificate of necessity states the emergency in one sentence: without immediate approval "the Debtor's estate will not have the funds necessary to timely pay the special assessment for the roofing contractor to commence its work." (Doc. 373 at 2). Nothing in it says the estate needs releases, and nothing says the estate needs to settle a claim under *11 U.S.C. § 549*. The certified necessity is money.

Horton Johnson is preparing a better offer, and he will present it to the Trustee. He is obtaining a roofing estimate and has been in contact with the insurance carrier. What I can say now is that his offer will not ask the estate to release anything. The motion's answer to any such alternative is a parenthetical about "onerous debtor-in-possession financing terms," and on August 19, 2026 the Trustee told this court she was pursuing short-term financing for this very assessment. (Doc. 372 at 7-8); (Ex. 1, Hearing Tr. at 36:9-37:13). She should have the few days it takes to consider a better one.

If the emergency is the roof, the emergency has an answer that costs the estate nothing. If the compromise remains urgent after the roof is funded, the urgency was never the roof.

**There is no deal here, because the estate gives up real claims for money that was owed anyway and a benefit that survives without it.**

The money Pedixon and ZPD propose to pay is money they were required to turn over anyway. A postpetition transfer of estate property is avoidable, and a transferee that has not

turned over what it took is disallowed. *11 U.S.C. §§ 549, 502(d)*. Paying what one already owes is not consideration. It is compliance, bought at a discount and paid for with releases. A compromise "is inappropriate when the compromised claim is invalid as a matter of law," and one offered "not . . . due to the merits" of the claim but to accomplish something else does not satisfy Rule 9019. *Kay*, 223 B.R. at 820.

The benefit on the other side is largely an illusion. The association can still levy a special assessment for this roof, and a special assessment is a common expense that is divided; each owner is liable for the share the declaration assigns. *Fla. Stat. §§ 718.115(2), 718.116(1)(a)*. The Debtor owns eighteen of the thirty-six units, so half of any assessment falls on owners not before this court. The motion never says the board adopted the assessment at all — it describes a meeting "noticed" for August 25, 2026 "to vote on a proposed special assessment," was filed six days later without saying what the board did, and attaches no resolution. (Doc. 372 at 5).

The association is not without recourse either. It has sued the construction companies, including the roofer, for the defects, and it is entitled to insurance proceeds. The cost this motion treats as an emergency is one the association expects to recover. These funds are a bridge until recovery, and the filings do not disclose it.

Retiring Claim 7-1, $445,810.10 of delinquent dues the Debtor could not pay because Crescent was taking the revenue, for $204,000.00 is worth doing, and I support it. But one payment is asked to do two jobs — "to resolve the Special Assessment; and CCCA shall withdraw the Condo Association Claim." (Doc. 372 at 6). If it satisfies the assessment it is not consideration for the withdrawal; if it is consideration for the withdrawal the assessment is unpaid. On the day after this order is entered, does the estate still owe its share. The Trustee should answer that on the record.

**Crescent Sound was the trustee, and the creditors it took from are the creditors now being asked to release it.**

"Both Crescent and the Lender are controlled by Kenneth G. Dixon." (Doc. 372 at 3 n.2). Crescent held the units as trustee of the Tiered Land Trust, which makes it a custodian required to stop disbursing, deliver the property, account for everything that came into its control, and answer a surcharge for improper disbursements. *11 U.S.C. §§ 101(11)(C), 543*. Crescent did none of it, and no accounting appears on this docket. Those omissions are the breaches this settlement is built to escape.

The money was not Crescent's to move. The Trustee concedes that Mainstreet, Tamamoi, and Carton "may assert an interest in the proceeds that are the subject of the Postpetition Transfers by virtue of their claim of lien against the Units and the rents generated therefrom," and this court has found that Mr. Dixon "has been retaining all of the rental income, despite the mortgagee's assignment of rent provisions that are prior in time to the loan with Mr. Dixon." (Doc. 372 at 5); (Ex. 1, Hearing Tr. at 13:15-19). Those creditors are now asked to release Mr. Dixon's entities for "any and all claims . . . known or unknown . . . from the beginning of the world," three days after this court abated the Carton and Tamamoi stay motions and twenty days before the Trustee's plan is due. (Docs. 360, 361, 372 at 6). The estate is paid nothing for them, and this court cannot impose or enforce a release between non-debtors. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024). Even the decision approving such a release required findings that the barred claims were interrelated with the estate's and that the recovery came into the estate; neither is true here. *United States v. Hartog*, 597 B.R. 673, 680-81 (S.D. Fla. 2019).

**The ninety-seven percent is wrong, and the Trustee should know she has certified it.**

The motion and the certificate both represent a recovery of "approximately 97%." The figure is a fraction, and its denominator is $359,804.66 — net rental proceeds the Lender says it

received between the petition date and the order for relief, taken from "the records of the vacation rental management company." (Doc. 372 at 4). The motion identifies no record, no custodian, and no production, and the party who supplied the denominator is the party writing the check. "To make an informed and independent judgment, however, the court needs facts, not allegations." *TMT Trailer Ferry*, 390 U.S. at 437. The Trustee bears the burden of establishing that this compromise is fair and equitable, and this court must "apprise itself of all necessary facts to make an intelligent evaluation and to make an independent judgment." *In re Ortiz*, 619 B.R. 273, 275 (Bankr. M.D. Fla. 2020).

The denominator is a miscalculation of the postpetition money. In my discussions with Mr. Dixon we arrived at approximately $880,000.00 as the postpetition sum to be turned over, and I disagreed with that figure as too low given the revenues these units generate. On that number, $350,000.00 is about forty percent, not ninety-seven. Measured against everything due from Mr. Dixon in this case, the fraction is smaller still.

The Lender's own books point the same way. Mr. Dixon's internal loan reports, filed at Doc. 203 as Exhibit P-5, carry an aggregate line reading "BEACHSIDE DISTRIBUTIONS, aggregate reported 7/1/2025-4/1/2026 ('at least') - $404,096.46," with four months carried at zero — a shorter window than the motion's, already larger than its denominator. The window also closes early, stopping at the order for relief though the appointment was approved on June 12, 2026, and a transfer after the order for relief is avoidable under *§ 549(a)* without the gap protection of *§ 549(b)*. (Doc. 252).

Before this court certifies a percentage, the estate is entitled to know the number it is a percentage of. Approval on this record would be "mere boiler-plate approval . . . unsupported by evaluation of the facts or analysis of the law." *TMT Trailer Ferry*, 390 U.S. at 434.

**This motion is about postpetition events, and the prepetition recitals are in it for use somewhere else.**

The motion recites that the Debtor signed the Loan Agreement "as guarantor," that principal was "$10,325,000 with an additional $750,000 advanced," that the Debtor "executed a Trustee's Deed conveying" the units to Crescent, and that a prior case failed because "Mr. Johnson lacked the requisite corporate authority." (Doc. 372 at 2 n.1, 3). None of that decides whether $350,000.00 fairly settles a claim for rents collected after September 2, 2025. Execution, conveyance, principal, guaranty scope, and corporate authority are contested here, in state court, and on appeal.

The Trustee's reservation does not cure it. She states that validity "is disputed" and reserves her rights, and then provides that nothing is an admission by the Lender or Crescent "except to the extent necessary to give effect to the terms of the Settlement Agreement." (Doc. 372 at 3-4 n.3). A footnote does not carry the weight of a recital a year later, and the exception runs one way: everything the Lender must be treated as having done to give the settlement effect becomes operative, while the Trustee's reservation has no such clause. A reservation of rights is not a cure for a marketing piece. If this motion is about postpetition events, the prepetition conduct does not belong in it.

The Trustee's own authority supplies the remedy. An order approving a compromise "cannot constitute a final judgment on the merits for purposes of former adjudication." *Justice Oaks*, 898 F.2d at 1549. The order should say so on its face, so no one carries these recitals into another forum as though a court had found them.

**If the court approves the compromise, these conditions must ride with it.**

The estate releases only the claim under *§ 549* for the transfers defined in paragraph 8, in the amount of $359,804.66, and no more. Approval determines nothing about whether the

Lender or Crescent "paid the amount, or turned over any such property" under *11 U.S.C. § 502(d)* as to anything else, and waives neither *§ 502(d)* nor *§§ 542*, *543*, *547*, *548*, or *Fla. Stat. § 687.08*; Crescent's duties under *§ 543(b)* and the surcharge under *§ 543(c)(3)* survive. No claim of the tax collector, either association, the resort manager, Mainstreet, Tamamoi, Carton, or any Tiered Land Trust beneficiary is released, and the court neither approves, adopts, nor enforces the Exhibit A releases. The order makes no finding about the Loan Agreement, the TC Loan, the Tiered Land Trust, the Trustee's Deed, the obligations, the guaranty, or corporate authority, and recites that the motion's background is the Trustee's summary of contested allegations, not a judgment on the merits.

The order states what the $204,000.00 buys. If it satisfies the special assessment, the assessment is discharged as to the Debtor's units and the association releases its lien; if not, the association states the estate's remaining share before entry. The estate's payment toward the assessment is limited to the Debtor's share, with subrogation against any owner whose share the estate funds, and any recovery by the association from the construction companies, the roofer, or insurance reimburses the estate to the full extent of what it paid. The executed agreement, the releases, and a proposed order are filed before entry, and entry affects neither the appeal nor any objection to Claim 67 or 68. (Docs. 352, 362, 375).

**RELIEF REQUESTED**

Nothing here concedes that this court may adjudicate the claims of Pedixon LLC or ZPD, LLC, and nothing here is consent to an adjudication the Florida Legislature forbade. *Fla. Stat. § 687.071(7)*. I reserve all rights, objections, and defenses.

The roof will be replaced either way. What remains is whether an estate emptied of its rents must also surrender its claims, on two days' notice, to obtain a roof it can have without surrendering them. The law, as applied to these facts, does not require that trade.

Sever the motion and grant the relief sought as to the association. Afford the Trustee the short time she needs to receive and consider Mr. Johnson's offer. Continue the balance to a hearing on the notice Rule 2002(a)(3) prescribes. If the court approves the compromise notwithstanding, enter it only on the conditions stated above.

**VERIFICATION**

I declare under penalty of perjury under the laws of the United States that the factual statements made in this objection from my own knowledge, including my discussions with Mr. Dixon, are true and correct. *28 U.S.C. § 1746*.

Respectfully submitted this 1st day of September, 2026.

Frank L. Amodeo
*Pro se*
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32801@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on September 1, 2026, I filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record, and that I served a copy by email on the Office of the United States Trustee and on each party served by the Trustee at Doc. 372, pages 9 and 10.

______________________________
Frank L. Amodeo