**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

HOMEMAKERS REAL ESTATE, LLC,

Case No. 6:25-bk-05570-GER
Chapter 11

Debtor.
________________________________/

**MOTION OF HORTON S. JOHNSON FOR THE APPOINTMENT OF AN EXAMINER UNDER 11 U.S.C. SECTION 1104(c)**

Horton S. Johnson, the holder of Claim 5, by and through undersigned counsel, moves under *11 U.S.C. § 1104(c)* and, in the alternative, *11 U.S.C. § 105(a)*, for the appointment of an examiner, and states:

**This case is being used to conceal the conduct that produced it.**

1. PEDixon LLC and ZPD, LLC (together, the "Dixon Lenders") assert the largest claims in this case. Crescent Sound, Ltd. ("Crescent") held record title to the Units as trustee of the Tiered Land Trust. Both "are controlled by Kenneth G. Dixon." (Doc. 372 at 3 n.2).

2. Each item below is dated and anchored in this record, bears on property of the estate and on the allowance of the two largest claims against it, and has never been investigated.

**The instruments on which the Dixon Lenders' position rests were completed after they were signed.**

3. The Trustee's Deed by which the Units passed to Crescent was DocuSigned on September 13, 2023 in three pages, with the witness lines and the notarial block blank. The instrument recorded February 14, 2024 at CFN 2024031262, OR Book 9992, Pages 2830-2837, is eight pages. Two wet-ink witnesses were added. A notarial certificate was added attesting to physical presence and a driver's license. The one-page Exhibit A describing 26 units was

replaced by a six-page Exhibit A describing 27. None of the six added pages carries the DocuSign Envelope ID that appears on every page of the signed version.

4. The DocuSign Certificate of Completion authenticating the signed envelope was filed in this record by counsel for the Dixon Lenders. (Doc. 93, Ex. C). Its Witness Events row is blank. Its Notary Events row is blank.

5. Thomas W. Vastrick, a document examiner certified by the American Board of Forensic Document Examiners, reported on July 30, 2026 that three versions of the Trustee's Deed exist in sequence "of a common document," two tracing page 2 to the same source while bearing different Exhibits A; that the witnesses' address entries were written after the notary entries; that the notary page on the Security Pledge Agreement of October 30, 2023 "has been added to at least one" document and on one version was completed before Mr. Dixon's signature entry was placed; that the notary entries on the October 30, 2023 assignments were added after execution; and that the DocuSigned notarizations were valid under neither remote online nor in-person electronic notarization, the only procedures Florida permits. Neither version of the Loan Agreement he examined bears a Lender signature.

**The debt those instruments secure was repaid before the first case was filed.**

6. Gary A. Moll, MBA, CPA, ASA, computed the effective rate of charge under *Fla. Stat. § 687.03(3)*. His report is of record. (Doc. 339). On the aggregate $11,075,000 obligation the rate is 69.13% over eighteen months and 96.73% over twelve; on the Holly Bluff loan, 82.94% at two months. Month by month from September 2023 through May 2025, crediting payments when made, the charge exceeded twenty-five percent in nineteen of twenty-one months and exceeded forty-five percent in thirteen.

7. On every valuation in the record, including the Dixon Lenders' own, the credits received equalled or exceeded the entire principal no later than February 1, 2024, and $2,997,242 was billed from February 2024 through May 2025 against a balance of zero.

8. The Loan Agreement of October 24, 2023 recites the mechanism: paragraph 8(a) placed $2,603,595 in a money market account "owned and controlled by Lender"; paragraph 4(d) states that "[t]he Loan Amount is not being changed hereunder"; and paragraph 8(b) that "[a]n amount equal to $396,405 was released to Borrower."

9. Beginning January 9, 2025 the guarantors and the Debtor's manager demanded an accounting seven times in writing, through four lawyers, twice by certified mail, one demand citing *Fla. Stat. § 687.08* by number. Two state actions were filed to obtain one; the Dixon Lenders answered each by counterclaiming to foreclose. None was produced. Asked under oath whether he could contradict the testimony that no accounting had been given, Mr. Dixon answered, "That's right. I can't contradict that." (Feb. 3, 2026 Hr'g Tr. 250:9-252:6).

**The bankruptcy process itself has been the instrument.**

10. The Debtor's first chapter 11 case was dismissed on the Dixon Lenders' motion, on the ground that the Assignment of Membership Units of January 9, 2024 had made Crescent the only person who could authorize a filing. (Doc. 305 at 4). That Assignment is one of the instruments described above. The dismissal returned the Debtor's assets to the control of the parties whose conduct is in question.

11. From the involuntary petition on September 2, 2025 until the Trustee opened an account on July 7, 2026, the rents were collected and retained. This court has found that "Mr. Dixon has been retaining all of the rental income" and that "all rents are being controlled by Mr. Dixon." (May 20, 2026 Hr'g Tr. 13:15-19, 30:17-23). Asked whether Homemakers "being in

bankruptcy allows you to continue to collect the rents," he answered, "Yes." (Feb. 3, 2026 Hr'g Tr. 262:8-11).

12. Crescent held the Units as trustee and is a custodian under *11 U.S.C. § 101(11)(C)*, owing on knowledge of the case the accounting *§ 543(b)* requires of everything that at any time came into its control. None appears on this docket, and the July 2026 operating report, in the eleventh month, shows receipts of $0. (Doc. 347 at 2).

**The number the Dixon Lenders gave the Trustee is false, and their own records say so.**

13. On August 31, 2026, on two days' notice, the Trustee moved to approve a compromise under which the Dixon Lenders pay $350,000 and, as a condition of paying it, obtain releases for themselves and for Crescent from four creditors covering "any and all claims . . . known or unknown . . . from the beginning of the world." (Doc. 372 at 6, 12-13). The estate is paid nothing for those releases. The motion and the certificate of necessity each certify a recovery of "approximately 97%." (Doc. 372 at 6-7); (Doc. 373).

14. That percentage is a fraction, and its denominator is $359,804.66 — the "net monthly rental income" the Dixon Lenders say they received between the petition date and the order for relief, attributed to "the records of the vacation rental management company operating the Units." (Doc. 372 at 4). The Dixon Lenders supplied it. The motion identifies no document, names no custodian, and describes no production. The management company is the one the Trustee's own report calls "closely aligned with the Lender and . . . not cooperating with court orders." (Doc. 305 at 9).

15. Three measures already in this record contradict that figure, and each comes from the Dixon Lenders' own side of the ledger.

a. *The established run rate.* Beachside VR, LLC's own monthly Owner Statements for the twelve months ending August 2025 report gross rental income of $969,910.78 and $779,131.19 payable to the owner — an average of $64,927.60 a month. The same series, covering July 1, 2025 through March 2026, was authenticated by Beachside's owner and received as Trial Exhibit 50 at the March 27, 2026 trial. (Doc. 226). Eight and a half months at that rate is on the order of $550,000, before any question of what "net" was netted against.

b. *The Dixon Lenders' own ledger.* Mr. Dixon's internal loan reports, filed in this case as Exhibit P-5 to Doc. 203, carry an aggregate entry reading "BEACHSIDE DISTRIBUTIONS, aggregate reported 7/1/2025-4/1/2026 ('at least') — $404,096.46," with October 2025 through January 2026 carried at $0. That number is the Dixon Lenders' own, it is expressly stated as a floor, four of its months are blank, it covers a shorter period than the settlement window — and it already exceeds the entire denominator.

c. *The estimate Mr. Dixon himself worked from.* In May 2026 Mr. Dixon and Frank Amodeo discussed the post-petition revenues received from September 2025 forward, and they arrived together at approximately $880,000 — an estimate that did not include whatever the management company diverted to third parties. Mr. Amodeo has stated as much in this case under penalty of perjury, adding that he regarded the figure as too low given what the Units generate. (Doc. 377 at 5, 8). Measured against it, $350,000 is about forty percent.

16. The window is wrong as well. It closes at the order for relief on May 21, 2026, though the Trustee's appointment was not approved until June 12, 2026, and a transfer in that interval is avoidable under *11 U.S.C. § 549(a)* without the gap protection of *§ 549(b)*. (Doc. 252).

17. The deadline that keeps the figure from being tested is the product of the same conduct. The special assessment this compromise pays became necessary, on the Trustee's own account, "in part due to the failure over an extended period of time to receive association dues for the Debtor's Condominium Units" — dues that went unpaid while, as this court has found, Mr. Dixon retained all of the rental income. (Doc. 372 at 5); (May 20, 2026 Hr'g Tr. 13:15-19). A party that supplies the number and also manufactures the emergency that forecloses examination of the number has not compromised a claim. It has priced one, and fixed the terms on which no one may check the price.

**Counsel's charge is specific, and it is that this bankruptcy is being used to conceal criminal conduct.**

18. Undersigned counsel states, as an officer of this court and subject to Rule 9011, that on the record set out above PEDixon LLC, ZPD, LLC and Crescent Sound, Ltd., acting through Kenneth G. Dixon, have used this case and its two predecessors to conceal, and to place beyond examination, the conduct described in the six paragraphs that follow. Counsel does not ask the court to find these things. He asks the court to appoint someone to determine them.

19. *Stripping the Debtor of its assets.* Title to twenty-six income-producing units, and then the membership interests of the Debtor itself, were moved to Crescent by the instruments described in paragraphs 3 through 5. *11 U.S.C. §§ 544(b), 548(a)(1), 550*; *Fla. Stat. §§ 726.105(1)(a), 726.110*.

20. *Taking the value of the Units while the obligations against them went unpaid.* The rents were collected for nine and a half months after the petition while the mortgages, assessments and taxes on the same Units went unpaid, consuming the value that secured every other creditor; the assessment now before the court is the direct product of that. (Doc. 305 at 5-8); (Doc. 372 at 5). *11 U.S.C. §§ 542, 543, 549*.

21. *Charging and receiving unlawful interest.* The charge exceeded twenty-five percent annualized in nineteen of twenty-one months and forty-five percent in thirteen, and $2,997,242 was billed after the principal had been repaid. (Doc. 339). *Fla. Stat. § 687.071(2), (3), (7)*.

22. *Making and using instruments completed after they were signed.* A notarial certificate attesting to physical presence and a driver's license was placed on an instrument that bore no notarization when executed, six pages were substituted into it, it was recorded, and it has since been used in three bankruptcy cases and two state actions to establish who owns the Debtor and what secures the claims against it. *Fla. Stat. §§ 831.01, 831.02, 817.535(2)(a), 117.105*.

23. *Presenting those claims against this estate.* On July 30, 2026 the Dixon Lenders filed Claims 67 and 68, asserting more than $6,000,000 as fully secured on a recorded right of first refusal whose acknowledgment bears neither notarial box checked, for a debt Mr. Moll computed as repaid in February 2024. *18 U.S.C. § 152(4)*.

24. *False statements made to this court through its own officer.* The Dixon Lenders gave the Trustee $359,804.66 as the whole of the post-petition rental proceeds they received. Their own ledger reports at least $404,096.46 over a shorter period. (Doc. 203, Ex. P-5). Their own manager's statements establish a run rate of $64,927.60 a month. (Doc. 226, Trial Ex. 50). The figure Mr. Dixon himself worked from in May 2026, discussing the same post-petition revenues, was approximately $880,000. (Doc. 377 at 5, 8). On the figure they supplied, the Trustee certified to this court a recovery of "approximately 97%" and asked to be heard on two days' notice. (Docs. 372, 373). A statement need not be made to the court directly to be made in relation to a case under title 11. *18 U.S.C. §§ 152(3), (7), (8), 157*.

25. Each expert of record stops short of the mental state. Mr. Moll "express[es] no opinion" on whether the charge was willful and knowing, "which is a question of intent for the

trier of fact," and Mr. Vastrick reports sequence and assembly alone. That is the gap an examiner exists to close, and it is why *11 U.S.C. § 1104(c)* speaks of investigating "allegations."

**No one has investigated, and the Trustee's own report says so.**

26. No one has performed the investigation. The Trustee's Initial Status Report is the only filing made under *11 U.S.C. §§ 1106(a)(3)* and *(4)*; it lists the matters above, disclaims them as "not exhaustive nor necessarily the position of the Chapter 11 Trustee," says the schedules have "not been vetted or probed," and recommends only operational steps. (Doc. 305 at 8-10). Section 1106(a)(4)(A) requires "any fact ascertained"; it ascertains none.

27. Nothing here is a charge against the Trustee. She was appointed because Mr. Dixon and Mr. Johnson filed no stipulation resolving ownership and control, holds $43,608.56 she concedes is cash collateral, and faces a policy lapsing September 15, 2026. (Doc. 229 at 2); (Doc. 240 at 1); (Doc. 372 at 5). An examiner must be disinterested and "answers solely to the Court." *11 U.S.C. §§ 1104(d), 101(14)*; *In re Big Rivers Elec. Corp.*, 355 F.3d 415, 432 (6th Cir. 2004).

**The statute reaches this case.**

28. Appointment is in the interests of creditors. The Units carry three foreclosure judgments or actions and years of unpaid assessments and taxes, so what this estate has to distribute is its claims, and those claims turn on matters no one has developed. (Doc. 305 at 5-8). On that showing the statute is not permissive: the court "shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor," if "such appointment is in the interests of creditors, any equity security holders, and other interests of the

estate." *11 U.S.C. § 1104(c)(1)*. "Shall" is a command. *In re Revco D.S., Inc.*, 898 F.2d 498, 500-01 (6th Cir. 1990); *In re FTX Trading Ltd.*, 91 F.4th 148 (3d Cir. 2024). The discretion "as is appropriate" preserves runs to the investigation's "nature, extent, and duration," not to whether one occurs. *Revco*, 898 F.2d at 501.

29. The subsection's opening clause — "[i]f the court does not order the appointment of a trustee under this section" — withholds nothing here. It describes the choice a court makes on a section 1104(a) request that management be displaced for cause. This court made no such choice; it broke a control impasse and directed an appointment under subsection (d), which seats "one disinterested person . . . to serve as trustee or examiner, as the case may be," on no finding under *§ 1104(a)(1)* or *§ 1104(a)(2)*. (Doc. 240 at 1). A trustee investigates "except to the extent that the court orders otherwise," *§ 1106(a)(3)*; nothing otherwise has been ordered; and an examiner seated under subsection (d) performs the identical duties, *§ 1106(b)*. Were the clause read to close whenever a trustee sits, section 105(a) reaches the same relief, because an order placing a disinterested person under sections 1106(a)(3) and (4) carries those provisions into effect and contravenes none. *Law v. Siegel*, 571 U.S. 415, 421 (2014).

**The mandate should be limited to the period these creditors controlled Homemakers.**

30. The mandate should be defined by the period in which these creditors controlled the Debtor rather than by a list of topics. Mr. Johnson asks that the examiner be directed to investigate the acts, conduct and dealings of PEDixon LLC, ZPD, LLC, Crescent Sound, Ltd. and Kenneth G. Dixon in relation to the Debtor, its membership interests, its assets, its revenues and its affairs from September 13, 2023, when Crescent Sound, Ltd. allegedly became the decision maker for Homemakers through its position as trustee of the so-called Tiered Land Trust, through July 7, 2026, when the Chapter 11 Trustee took control of the rents; and to

investigate whether these three bankruptcy cases, or any proceeding, filing or representation in them, have been used to conceal, to shield from examination, or to obtain an advantage from unlawful conduct of those persons in that period, whether that conduct is administrative, civil or criminal in nature. The matters set out above are illustrative of what falls within the mandate, not the limits of it. The limit is temporal, and the proposed order submitted with this motion states it in full.

31. Mr. Johnson asks that the examiner be authorized to examine witnesses and require production under Rule 2004, and that the Dixon Lenders, Crescent and Beachside VR, LLC be directed to cooperate.

**RELIEF REQUESTED**

WHEREFORE Mr. Johnson asks this court to enter an order directing the United States Trustee to appoint an examiner under 11 U.S.C. §§ *1104(c)* and *1104(d)*, or alternatively under *§ 105(a)*, on the mandate stated there; providing that no order entered in this case release or impair any claim of the estate within that mandate until the examiner has reported; and granting such other relief as is just. Justice here does not require that anyone be found culpable; it requires that someone independent look, and report, before the estate's claims are traded away.

Respectfully submitted this 2nd day of September, 2026.

/s/ Matthew A. Leibert
MATTHEW A. LEIBERT, Esquire
Florida Bar No. 752266
Law Office Matthew A. Leibert
5782A S. Semoran Blvd.
Orlando, Florida 32822
Telephone: (407) 425-2005
Counsel for Horton Johnson, Creditor

**CERTIFICATE OF SERVICE**

I certify that on September 2, 2026, I electronically filed the foregoing with the Clerk of Court through the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ Matthew A. Leibert
MATTHEW A. LEIBERT, Esquire