# EXHIBIT F

**Assignment of Membership Units**

I, Horton S. Johnson, as the sole owner and holder of all of the issued and outstanding membership units of Homemaker Real Estate, LLC, and in consideration of the loan accommodations made by PEDIXON, LLC, a Florida limited liability company, do now assign the following unto Crescent Sound, Ltd., as Trustee of the Tiered Land Trust u/t/d 9/13/2023: all of my right, title and interest in and to all of the issued and outstanding membership units of Homemakers Real Estate, LLC, a Florida limited liability company.

I have executed this assignment in Orlando, Florida on this 9th day of January 2024.

Horton S. Johnson
*Horton S. Johnson*
*Manager of*
*Homemakers Real Estate, LLC*

STATE OF FLORIDA
COUNTY OF Orange

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ✓ physical presence or __ online notarization on January 9, 2024, by Horton S. Johnson.

[signature]
Notary Public, State of Florida
Name: Janelle Morea
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary: Check one of the following:
___ Personally known OR
✓ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: License

HSJ

EXHIBIT
C

# EXHIBIT 35

---

In re Homemakers Real Estate, LLC
Case No. 6:25-bk-02685-GER (Bankr. M.D. Fla.)

**Doc. 35, filed June 3, 2025**

Reply in Support of Motion to Dismiss Bankruptcy Case

*PEDixon, LLC and ZPD, LLC*

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:

HOMEMAKERS REAL ESTATE, LLC,

Debtor.

CASE No. 6:25-bk-02685-GER
Chapter 11

**REPLY IN SUPPORT OF MOTION TO DISMISS BANKRUPTCY CASE FOR LACK OF CORPORATE AUTHORITY**

Creditors and Movants, PEDIXON LLC and ZPD, LLC (collectively "Movants"), by and through counsel, hereby files this Reply in Support of Motion to Dismiss Bankruptcy Case for Lack of Corporate Authority (the "Motion"), and in support of the Motion, respectfully states:

The Response to the Motion misstates Florida law and the facts of the case.

First, the Debtor claims it is a Florida limited partnership when it is in fact a limited liability company and subject to Florida's statutes with respect to limited liability companies.

Second, Mr. Johnson claims that he is the sole member of the Debtor, but, in the Debtor's Response, the Debtor fails to properly apply Florida law as it relates to sole members LLCs. The Debtor properly argues that "only a member has the right to vote a member's interest." Fla. Stat. §605.04073(1). However, the Debtor ignores the remainder of the statute, which is relevant to a "Member-Managed" company:

> (b) Each member's vote is proportionate to that member's then-current percentage or other interest in the profits of the limited liability company owned by all members.

As result, by assigning all of his "right, title and interest" in the Debtor and 100% of the profits to the Trust, the only party able to vote on and authorize the filing of this bankruptcy case is the Trust.

Olmstead v. FTC, 44 So.3d 76 (Fla. 2010), was decided prior to the current LLC statutes and involved the status of the rights and title in a sole member LLC that is subject to a charging order. The Florida Supreme Court's decision in Olmstead, however, was incorporated into the current statutes and provides guidance as to the treatment of LLC interests in a single-member vs multi-member LLC and provides as follows:

> As a preliminary matter, we recognize the uncontested point that the sole member in a single-member LLC may freely transfer the owner's entire interest in the LLC. This is accomplished through a simple assignment of the sole member's membership interest to the transferee.

Id. at 80.

As a result, the limitation on assignee rights in section 608.433(1) of the Florida Statutes has no application to the transfer of rights in a single-member LLC. In such an entity, the consideration of "all members other than the member assigning the interest" is unnecessary. Accordingly, "an assignee of the membership interest of the sole member in a single-member LLC becomes a member—and takes the full right, title, and interest of the transferor—without the consent of anyone other than the transferor." Id. at 81; see also Inskeep v. Baccus Global, LLC, 2024 WL 416357 *8 (Fla. SD 2024).[1]

The documentation and statutes are clear, the Trust is the sole member of the Debtor. While the Debtor claims that the transfer of his sole membership interest was by fraud or trick, which is disputed,[2] it does not change the fact that Mr. Johnson is currently not an interest holder in the Debtor and has no authority to file the bankruptcy case under Florida law. It is not a proper use of

[1] Any other result would be absurd, the Debtor's position would result in 100% owners of single member LLCs without any voting rights.
[2] The assignment was consideration of a brief forbearance with respect to suing on Mr. Johnson's guaranties.

the bankruptcy case to require a determination of corporate ownership, on behalf of a nondebtor - Mr. Johnson, in the context of a motion to dismiss. Such disputes are for state court.[3]

DATED: June 3, 2025.

/s/ James A. Timko
James A. Timko, Esq.
Florida Bar No. 0088858
**DEAN, MEAD, EGERTON, BLOODWORTH, CAPOUANO & BOZARTH, P.A.**
420 S. Orange Avenue, Suite 700
Orlando, Florida 32801
Telephone: 407-841-1200
Facsimile : 407-423-1831
Email: jtimko@deanmead.com
***Counsel for Movants***

[3] There are no employees and forcing creditors to be subject to the automatic stay while a fraud case is being fully litigated on behalf of Mr. Johnson is prejudicial to the creditors.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all parties listed below by ECF notification (if they receive ECF notification) and U.S. mail on this 3rd day of June, 2025:

**Debtor**
Homemakers Real Estate, LLC
201 Ivory Coral Lane
Merritt Island, FL 32953

**Debtor's Counsel**
Frank M. Wolff
Nardella & Nardella, PLLC
135 W. Central Blvd., Suite 300
Orlando, FL 32801

**U.S. Trustee**
United States Trustee – ORL
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

**Counsel for U.S. Trustee**
Audre M. Aleskovsky
DOJ-UST
United States Trustee
400 W. Washington Street, Suite 1100
Orlando, FL 32801

*/s/ James A. Timko*
JAMES A. TIMKO, ESQ.



5698776.v1

# EXHIBIT 58

---

In re Homemakers Real Estate, LLC
Case No. 6:25-bk-02685-GER (Bankr. M.D. Fla.)

**Doc. 58, filed June 11, 2025**

Hearing Proceeding Memorandum, hearing held June 11, 2025

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

# PRO MEMO

06/11/2025 09:30 AM

COURTROOM 6D, 6th Floor

HONORABLE GRACE ROBSON

CASE NUMBER: FILING DATE:

**6:25-bk-02685-GER** **11** **05/05/2025**

**Chapter 11**

**DEBTOR:** Homemakers Real Estate, LLC

**DEBTOR ATTY: Frank Wolff**

**TRUSTEE: NA**

**HEARING:**

1) Initial Status Conference
2) ZPD's Motion to Dismiss Case for Lack of Corporate Authority (Doc #12)
Debtor's Response (Doc #24)
Debtor's EXHIBIT LIST (Doc #55)
ZPD's Reply in Support of Motion to Dismiss Bankruptcy Case (Doc #35)
3) Debtor's Motion to Determine Adequate Assurance for Payment of Utility Services or, in the Alternative, Establishing the Procedure for Determining Adequate Assurance (Doc #22) AMENDED (Doc #44)
Debtor's Declaration Re: of Ross Johnston in Support of Emergency Motions (Doc #46)
4) Tamamoi's Motion for Relief from Stay Re: 202 Ivory Coral Lane, Unit 206,303,305,402,403,404,503,504,505, Merritt Island, FL 32953 (Doc #29)
5) The Carton Family Trust's Motion for Relief from Stay Re: 2709 Cutlass Point Lane, Unit 104, Merritt Island, FL 32953 (Doc #33)
~6) Debtor's Emergency Motion to Use Cash Collateral (Doc #43)
Debtor's Notice of Filing Amended Proposed Cash Collateral Order (Doc #56)
Note:
341 concluded: 6/9/25
Claims Deadline: 7/14/25
Plan/DS Statement due: 9/2/25
Case Summary (Doc #8)
Amended Petition (Doc #42)
Schedules (Doc #36)
Related Case:
Homemakers Real Estate v. Beachside, Crescent Sound 25-ap-69

**APPEARANCES::** Frank Wolff (Debtor Atty); Wanda Murray (US Trustee Atty); James Timko (ZPD Atty); Mah (Brevard Tax Atty); Justin Luna (Mainstreet Community Bank Atty); Audrey Dixon, Elizabeth Wulff (Tamamoi/Canton Family Atty);

**RULING:**
1) Initial Status Conference - cont. to June 23, 2025 at 10:00 am (AOCNFNG);

2) ZPD's Motion to Dismiss Case for Lack of Corporate Authority (Doc #12) - Under Advisement;

3) Debtor's Motion to Determine Adequate Assurance for Payment of Utility Services or, in the Alternative, Establishing the Procedure for Determining Adequate Assurance (Doc #22) AMENDED (Doc #44) - Granted:Order by WOLFF;

4) Tamamoi's Motion for Relief from Stay Re: 202 Ivory Coral Lane, Unit 206,303,305,402,403,404,503,504,505, Merritt Island, FL 32953 (Doc #29) - cont. to June 23, 2025 at 10:00 am (AOCNFNG);

5) The Carton Family Trust's Motion for Relief from Stay Re: 2709 Cutlass Point Lane, Unit 104, Merritt Island, FL 32953 (Doc #33) - cont. to June 23, 2025 at 10:00 am (AOCNFNG);

6) Debtor's Emergency Motion to Use Cash Collatera l (Doc #43) - Granted on an interim basis to 6/23/25; cont. to June 23, 2025 at 10:00 am:Order by WOLFF;
(gww).

Proposed Orders, if applicable, should be submitted within three days after the date of the hearing - Local Rule 9072-1(c). Failure to submit proposed orders before this case/adversary proceeding is closed will result in motions/objections/applications being denied as moot. This docket entry/document is not an official order of the Court.

# EXHIBIT 69

---

In re Homemakers Real Estate, LLC
Case No. 6:25-bk-02685-GER (Bankr. M.D. Fla.)

**Doc. 69, filed June 24, 2025**

Supplement to Pleading in Support of Motion to Dismiss
Bankruptcy Case for Lack of Corporate Authority

PEDixon, LLC and ZPD, LLC

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:

HOMEMAKERS REAL ESTATE, LLC,

Debtor.

CASE No. 6:25-bk-02685-GER
Chapter 11

**SUPPLEMENTAL PLEADING IN SUPPORT OF MOTION TO DISMISS BANKRUPTCY CASE FOR LACK OF CORPORATE AUTHORITY**

Creditors and Movants, PEDIXON LLC and ZPD, LLC (collectively "Movants"), by and through counsel, hereby files this Supplemental Pleading in Support of Motion to Dismiss Bankruptcy Case for Lack of Corporate Authority (the "Motion"), and in support of the Motion, respectfully states:

In its Order, the Court asks who is the beneficiary under the Tiered Trust and controls the beneficiary's rights under the Tiered Trust? Homemaker's remains the beneficiary. However, by assigning his entire transferable interest in Homemakers, Mr. Johnson is no longer the sole member of Homemakers. The Trust as administered by the Trustee is the sole member with the complete control of Homemakers. See Sec. 605.04073(1); Olmstead v. FTC, 44 So.3d 76, 81 (Fla. 2010). Further, in Florida, there is no limitation on the Trustee acting on behalf of a beneficial interest in the Tiered Trust. Sec. 689.071(2)(b), Fla. Stats.[1] As a result, the Trustee controls all of the Debtor's rights under the Tiered Trust

The preponderance of the evidence before this Court supports that Mr. Johnson has no further rights with respect to Homemakers. The Debtor admits that Mr. Johnson signed the assignment of his interests. The assignment itself is not ambiguous and it is clear that all of Mr.

[1] "Beneficiary" means any person or entity having a beneficial interest in a land trust. A trustee may be a beneficiary of the land trust for which such trustee serves as trustee."

Johnson's right, title, and interest in all of the interests in the Debtor were assigned. The Debtor also admits that the interests in the Debtor were not a part of the original collateral package,[2] the assignment occurred after the loan was made and the Tiered Trust was established, and there is no documentation reflecting that the loan was amended to include the interests in Homemakers to be a part of the collateral package.

The fact that there is no documentation amending the Loan Agreement to add the Homemakers interests to the collateral package is fatal to the Debtor's claim. In order to amend the loan to change the collateral package, section 18.1 of the Loan Agreement requires that "No alteration of or amendment to this agreement shall be effective unless given in writing and signed by the party of parties sought to be charged or bound by the alteration or amendment." A change in the collateral securing the loan requires such a written amendment.

Further, the lack of a written pledge agreement is fatal to the Debtor's claim for another reason. The only decision relied on by the Debtor is In re Windham Power Lifts Inc., 91 B.R. 595 (Bankr. M.D. Fla, 1988), which the Debtor asserts supports treating the assignment of the interest in the Debtor as a collateral assignment. Windham does not apply to this case. In Windham, the SBA entered into a pledge agreement with the owners of the debtor and held a blank endorsement of stock to serve as the original collateral of the loan. There was a default and the court held that the pledge and blank endorsement were not an absolute assignment under Alabama law because the lender had to foreclose on its interest under the pledge agreement and loan documents. Here, there is no pledge agreement, there is no blank endorsement, and there is no loan agreement

[2] The Debtor cannot even provide an explanation as to why the assignment was made. It just claims it was a "fraud" or "trick," with no supporting evidence. This argument was dropped at the hearing once the Debtor realized it did not help its cause.

limiting when the assignment can be exercised. In our case, the Assignment speaks for itself, it is a complete and total assignment of Mr. Johnson's interests.

The evidence supports that the Movants and Mr. Johnson entered into a separate agreement. The Movants accepted the interest in the Debtor to forbear on the collections of Mr. Johnson's debt under his related guaranty. In further support, Movants attach the declaration of Ken Dixon as Exhibit "A" (the "**Dixon Declaration**"). In the Dixon Declaration, Mr. Dixon confirms the existence of a separate agreement between Mr. Johnson and the Movants, which included a total assignment of Mr. Johnson's interests.

To the extent Mr. Johnson is seeking to be awarded ownership of the Debtor through this bankruptcy case, as addressed at the hearing, the Court does not have jurisdiction over this dispute. See In re Toledo, 170 F.3d 1340, 1344-45 (11th Cir. 1999) (defining the categories of a bankruptcy court's jurisdiction). Even if the Court determines it does have jurisdiction, it should abstain from making a determination of ownership of the Debtor under 28 U.S.C. section 1334(c)(1). The non-exclusive factors utilized for determining whether permissive abstention is appropriate, include:

(1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of the applicable law;

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C.A. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of nondebtor parties;

(13) any other unusual or significant factors;

(14) the court's duty to resolve matters properly before it;

(15) the economical use of judicial resources;

(16) potential prejudice to involuntarily removed parties;

(17) the possibility of inconsistent results; and

(18) any expertise of the court where the action originated.

See Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co., 6 F.3d 1184, 1189 (7th Cir. 1993) (citing In re Eastport Associates, 935 F.2d 1071, 1075-76 (9th Cir. 1991)); Antioch Co. Litigation Trust v. Hardman, 438 B.R. 598, 609-10 (S.D. Ohio 2010); In re Blankenship, 408 B.R. 854, 861 (Bankr. N.D. Ala. 2009); In re Tucson Estates, Inc., 912 F.2d 1162, 1166-67 (9th Cir. 1990) (quoting In re Republic Reader's Service, Inc., 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987)); In re DeMert & Dougherty, Inc., 271 B.R. 821 (Bankr. N.D. Ill. 2001); In re Ahearn, 318 B.R. 638 (Bankr. E.D. Va. 2003); In re Gulf Coast Lift Truck Co., Inc., 319 B.R. 20 (Bankr. M.D. Fla. 2004); In re Richardson, 319 B.R. 724 (S.D. Fla. 2005); Orion Refining Corp. v. Fluor Enterprises, Inc., 319 B.R. 480 (E.D. La. 2004) (rejected by, In re Guerrero, 2013 WL 6834642 (Bankr. S.D. Tex. 2013)).

Here, the overwhelming weight of the factors are in favor of the Court abstaining. The dispute relates to two non-debtors claiming ownership of certain property. Until that dispute is determined, the Court cannot efficiently administer the bankruptcy case because the creditors will not know who to negotiate with and several motions for relief from stay are pending. The litigation over ownership will take time and require discovery. The issues involve state law rights to ownership and the parties have jury rights. There is no question of federal law or other basis for federal jurisdiction other than 28 U.S.C Sec. 1334 (and the Court's jurisdiction in that case is loose). Mr. Johnson is engaging in forum shopping by bringing what is an ownership dispute before the bankruptcy court in order to control the rents and not pay the mortgages, real estate taxes and other charges related to the Debtor's properties – even though he agreed to pay those amounts in the Loan Agreement. The non-debtor ownership dispute between Mr. Johnson and the Trust is not a core proceeding. 28 U.S.C. Sec. 157(b)(2). And, under these circumstances, this Court determining the ownership issue is not an economical use of the Court's resources.

In the end, the only way to properly protect all of the parties' interests[3] is for this Court to require the determination of ownership and corporate control to be decided first by a state court (or by an agreement of the parties), before a bankruptcy case can be properly filed. See In re Florida Men's Medical Clinic, LLC, 2014 WL 3973161 * 1 (Bankr. M.D. Fla 2014) ("The Court agrees that the state court first must resolve this ownership and corporate control dispute before either party can file a bankruptcy case.")[4]

---

[3] This includes the creditors. They should not be subject to the automatic stay while there is a protracted ownership dispute. If the parties' see value in the creditors being paid to save the units, they can address that issue outside of bankruptcy court.

[4] It should be noted that PEDIXON and ZPD have entered into multiple agreements to try and work out this debt issue. Mr. Johnson, however, did not pay the creditors as required under the Loan Agreement, despite receiving $750,000 in further financing. He also did not sell the individual units to repay the Loan as agreed to and the rents were not sufficient for the debt service. At the hearing, Debtor's counsel admitted Mr. Johnson does not have the funds to back the Debtor's reorganization and the Debtor is unlikely to find financing to address the debt load. Thus, it appears,

Respectfully, the Motion should be granted.

DATED: June 24, 2025.

*/s/ James A. Timko*
James A. Timko, Esq.
Florida Bar No. 0088858
**DEAN, MEAD, EGERTON, BLOODWORTH,**
**CAPOUANO & BOZARTH, P.A.**
420 S. Orange Avenue, Suite 700
Orlando, Florida 32801
Telephone: 407-841-1200
Facsimile : 407-423-1831
Email: jtimko@deanmead.com
***Counsel for Movants***

under Mr. Johnson's ownership, there is little likelihood of a reorganization. The Debtor may claim they have a new advisor, but Mr. Johnson has had advisors throughout this process. See Dixon Declaration Para. 6.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all parties listed below by ECF notification on this 24th day of June, 2025:

*/s/ James A. Timko*
JAMES A. TIMKO, ESQ.



5743089.v1

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:

HOMEMAKERS REAL ESTATE, LLC,

Debtor.

CASE No. 6:25-bk-02685-GER
Chapter 11

**DECLARATION OF KENNETH DIXON IN SUPPORT OF MOTION TO DISMISS BANKRUPTCY CASE FOR LACK OF CORPORATE AUTHORITY**

I, KENNETH DIXON, declare as follows:

1. I am the Managing Member of PEDIXON, LLC ("PEDIXON") and ZPD, LLC ("ZPD") and its corporate representative for the matters addressed in this Declaration.

2. I am over 18 years of age and I am competent to make this Declaration. I am authorized to make this Declaration on behalf of PEDIXON and ZPD and based on my personal knowledge and the business records of PEDIXON and ZPD, including all of the exhibits attached to this Declaration.

3. I am familiar with the business records which PEDIXON and ZPD regularly create and maintain. The business records attached hereto are true and accurate copies; were made by, or from information transmitted by, a person with knowledge of the facts contained in the business records made at or near the time of the acts and events appearing on them; made or compiled as part of the regular practice of PEDIXON and ZPD; and kept in the regular course of Plaintiff's regularly conducted business activities. The documents attached hereto all constitute business records of PEDIXON and/or ZPD.

4. Horton Johnson and Homemakers Real Estate, LLC ("Homemakers") are the guarantors of several loan accommodations made by PEDIXON and ZPD to Tiered Capital, Inc.,

EXHIBIT
A

its shareholders and their affiliates, including Homemakers Real Estate, LLC and Horton ("Woody") Johnson (collectively, "Tiered") made from January 2022 through October 2023 (collectively, the "Loan").

5. In 2022, at the request of Ken Jones, the Chief Financial Officer of Tiered (the "CFO"), I began to attend meetings with Frank Amodeo ("Amodeo") at his place of residence located at 1311 Hoffner Ave, Orlando FL 32809.

6. For the first few months, the CFO was present at these meetings. Amodeo was introduced to me as the designated representative and consultant of Tiered, and specifically, Homemakers and Johnson.

7. Johnson was present for at least two of the meetings.

8. Johnson's legal counsel, Baylor Johnson, was present at one of the meetings.

9. After several months, PEDIXON's and ZPD's legal counsel, Alison Pitkanen, generally accompanied me to these meetings.

10. During these meetings, Amodeo orchestrated and negotiated the loan accommodations between PEDIXON, ZPD, and Tiered.

11. In December 2023, the Loan was in default, and the principal amount due was approximately $10,625,000. At this time, I instructed my legal counsel to deliver a default notice to Tiered.

12. On January 7, 2024, I attended a meeting with Frank Amodeo to discuss alternative solutions to foreclosure and legal action against Johnson and Homemakers. At this meeting, Mr. Amodeo suggested that Mr. Johnson would be willing to relinquish all interest in Homemakers to obtain a forbearance of legal action under and enforcement of Mr. Johnson's personal guaranty. Since the Assignment was not merely collateral, and it was something new being offered, I agreed

to forbear. The parties agreed that the Assignment would be a total assignment of the interests with no return to Johnson.

13. On January 9, 2024, I instructed my legal counsel to meet with Amodeo and Johnson to formalize the total assignment from Johnson. On that same date, Johnson executed the Assignment and in exchange therefor, PEDIXON LLC agreed to a six (6) month forbearance of the Loan. A true and correct copy of the Assignment is attached hereto as Exhibit "A."

14. I decided that the interests in Homemakers would be held in the Trust because it was a total assignment and the Trust would own Homemakers and own the beneficial interest in the Tiered Trust for the Trustee to administer to work towards paying off the Loan.

15. The Trustee has the authority to control the entity and holds the beneficiary interest of Homemakers in the Tiered Trust.

16. On or about January 24, 2025, I instructed my counsel to send another default notice to Johnson, among others. A true and correct copy of the default notice is attached hereto as Exhibit "B". In the default notice the assignment of the interests in Homemakers to obtain a forbearance was mentioned. Mr. Johnson never responded to contest the assignment of Homemakers to the Trust.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Kenneth Dixon



5735770.v1

**Assignment of Membership Units**

I, Horton S. Johnson, as the sole owner and holder of all of the issued and outstanding membership units of Homemaker Real Estate, LLC, and in consideration of the loan accommodations made by PEDIXON, LLC, a Florida limited liability company, do now assign the following unto Crescent Sound, Ltd., as Trustee of the Tiered Land Trust u/t/d 9/13/2023: all of my right, title and interest in and to all of the issued and outstanding membership units of Homemakers Real Estate, LLC, a Florida limited liability company.

I have executed this assignment in Orlando, Florida on this 9th day of January 2024.

[signature]
*Horton S. Johnson*
*Manager of*
*Homemakers Real Estate, LLC*

STATE OF FLORIDA
COUNTY OF Orange

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ✓ physical presence or __ online notarization on January 9, 2024, by Horton S. Johnson.

[signature]
Notary Public, State of Florida
Name: Janelle Morea
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary: Check one of the following:
___ Personally known OR
✓ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: License

HSJ

EXHIBIT
A

**Marisa Godek**

**From:** Alison Pitkanen <alisonpitkanen@gmail.com>
**Sent:** Friday, January 24, 2025 3:56 PM
**To:** Ken Dixon
**Subject:** Fw: PEDIXON loan to Tiered Capital, Inc., et al - Acceleration Notice
**Attachments:** CC Delinq. Crescent Sound Ltd 12.17.24.pdf; Dixon - Notice of Application of Account Proceeds (Loan XXX1214) (08.27.24).pdf

---

**From:** Alison Pitkanen
**Sent:** Friday, January 24, 2025 3:55 PM
**To:** Marty Flynn; Woody Johnson; Marty Flynn
**Subject:** PEDIXON loan to Tiered Capital, Inc., et al - Acceleration Notice

Marty C. Flynn, Jr. & Tracy Hester Flynn
14255 Saint Georges Hill Drive
martyf@sherwoodconstruction.net
mcflynn@me.com

Delivered via email and regular mail

Horton S. Johnson
2523 Kissam Court
Belle Isle, FL 32809
wjohnsonbbf@gmail.com

Delivered via email and regular mail

Yaniv Amar
3475 Mystic Pointe Drive, #10
Aventura FL 33180

Delivered via regular mail

January 24, 2025

RE: PEDIXON LLC and ZPD LLC (collectively, the "Lender") loan to Tiered Capital, Inc., Sherwood Construction et. al. (collectively referred to as "Tiered") and more particularly consolidated in September 2023 and subsequesntly modified in October 2023 (all loans, both separately and consolidated, are individually and collectively referred to as the "Loan")

EXHIBIT
B

Gentlemen,

I wanted to reach out with an update regarding this Loan while I am still able to do so.

PEDIXON LLC has accelerated the interest rate under the Loan, effective February 1, 2024.

The outstanding principal balance of the Loa is $8,150,000.
The total amount of accrued unpaid interest is $1,552,376.
The total payoff of the Loan is currently $9,702,376.

I have identified below all of the guarantors and obligors under the Loan.

**Opportunity to Cure.**

My records reflect that default notification was provided in January 2024, and again, in June 2024. Since February 1, 2024, the defaults have continued to accumulate. This correspondence should also serve to provide you with a formal opportunity to cure the defaults under the Loan. The Lender provides you with fifteen days from the date hereof to do so.

As you may recall, in January 2024, Mr. Johnson relinquished control of the membership units in Homemakers Real Estate, LLC; and in exchange therefor, the Lender did not pursue legal action against him personally at the time. It is my understanding that no other steps have been taken to cure any of the defaults since January 2024.

**Defaults.**

There are numerous monetary and non-monetary defaults under the loan. I want to bring your attention to the following most significant defaults:

- Certificate of Deposit. In August 2024, the Lender received notice that Sherwood Construction Inc. allowed First State Bank to seize a significant piece of collateral represented by a One Million Dollar certificate of deposit. The First State Bank correspondence detailing the seizure is attached for reference. This collateral has not been replaced or replenished.

  The Lender has requested that Mr. Flynn (on behalf of 650 85TH LLC) transfer the real property located in Marathon Florida unto the Tiered Land Trust. A good-faith gesture such as this would have shown a willingness to cooperate; but the property was never transferred.

- Association Dues. Crescent Sound Ltd., as Trustee of the Tiered Land Trust, recently received notification from Keystone Management Group requesting payment of delinquent association dues. It is my understanding that payments continue to be delinquent. Attached is the detailed accounting of amounts due.

- Maturity. All Loans, except for the October 2023 Flynn Substitution Loan ($750,000), matured in 2024. The entire unpaid principal balances of the matured loans, including interest and fees, have been due and payable.

Note: The referenced defaults are in addition to numerous other defaults under the Loan.

- 

**Conclusion.**

If you have any interest in resolving this in an amicable manner, please let me know.

I will not be involved in any legal action to foreclose upon or seize assets and properties, personal or otherwise. I have advised the Lender to procure separate legal counsel to enforce its rights and remedies under the Loan; and it is my understanding that it has done so. Notwithstanding, the Lender remains open to resolving this amicably with you.

I urge you to consult with legal counsel as soon as possible before this escalates even further.

**Obligors & Guarantors.** Here is a list of obligors and guarantors under the Loan.

Horton S. Johnson, individually
Martin C. Flynn, Jr., individually
Tracy Hester Flynn, individually
Tiered Capital, Inc., a Florida corporation
Sherwood Construction, Inc.
Horton S. Johnson Revocable Trust dated August 3, 2012
MTF Holdings, LLC, a Florida limited liability company
WM Holdings LLC, a Florida limited liability company
65 85TH ST LLC, a Florida limited liability company
Florida Space Coast Resorts, Inc., a Florida corporation
Canaveral Crossroads, LLC
A Marine, Inc., a Florida corporation
Cape Crossing Vacation Rentals, LLC, a Florida limited liability company
Holly Bluff Marina, Inc,, a Florida corporation
Recycled Group of South Carolina, LLC, a South Carolina limited liability company
Canaveral Crossroads, LLC

If you have any questions, please feel free to contact me to discuss. I am happy to answer questions for as long as I can. Once litigation counsel steps in, I will have to defer you to them.

Thank you,
Alison

Alison Pitkanen, Esquire
1980 N. Atlantic Ave, Suite 230-328
Cocoa Beach FL 32931
Cell (407) 449-0037

IMPORTANT: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and delete the original message.

# EXHIBIT 70

---

In re Homemakers Real Estate, LLC
Case No. 6:25-bk-02685-GER (Bankr. M.D. Fla.)

**Doc. 70, filed June 24, 2025**

Supplement to Debtor's Response to Motion to Dismiss
Bankruptcy Case for Lack of Corporate Authority

Homemakers Real Estate, LLC (Debtor)

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

HOMEMAKERS REAL ESTATE, LLC, Case No.: 6:25-bk-02685-GER
Chapter 11

Debtor.
_______________________________/

**DEBTOR'S SUPPLEMENTAL BRIEF**
**IN OPPOSITION TO MOTION TO DISMISS**

Homemakers Real Estate, LLC (the "Debtor"), hereby supplements its argument in opposition to the Motion to Dismiss filed by PEDIXON LLC and ZPD LLC, ("Movants") and states as follows:

1. "[W]ho is the beneficiary(ies) holding power of direction with respect to management of Debtor when neither the membership units nor the beneficiary thereof are identified in the Land Trust." is the Question.

2. The Question arises because the Land Trust does not mention Mr. Johnson or the member's interest in the Debtor (hereinafter the "Property"). However, though the terms of the Land Trust don't mention the Property or Mr. Johnson, the law of trusts answers the Question.

3. The Land Trust is a trust. The definition of a trust according to the Restatement of the Law of Trusts, 3rd

> A trust.... is a fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit ... of one or more persons....

Restat 3rd of Trusts §2 (2012)

4. The Assignment of Membership Interests attached to the Movants Motion to Dismiss (the Assignment")[1] clearly is a "manifestation of intention to create that relationship" when it "assign[ed] the following [Property] unto Crescent Sound Ltd. As Trustee of the Tiered Land Trust u/t/d 9/13/2023."

5. The law of trusts is clear that assets can be added to a trust after its creation. In the Restatement of Trusts, 3rd § 2 (2012)

> Although merely entering into or executing an agreement or instrument of trust does not initially create a trust because of the absence of trust property, a trust may nevertheless be created later if and when a transfer of property to the trustee is made with reference to that agreement or instrument

6. The Assignment transferred the Property "with reference to that agreement or instrument" by specifically naming the Land Trust. The transfer of the Property into the Land Trust after its creation is consistent with the law of trusts:

> After a trust is created ... additional property ordinarily may be added to the trust by the original settlor or settlors or by one or more others.
>
> Restat 3d of Trusts, § 10 (2012)

7. Though the Land Trust does not identify Mr. Johnson as a beneficiary that does not preclude him from becoming one. As stated in the Restatement of the Law of Trusts 3rd, §2 (2012):

> An express trust can be created, or having been created can continue, although for a period of time there is no designated beneficiary in being. None of the intended beneficiaries need be identified or in existence at the time of the creation of the trust

8. By its nature, the property in a trust puts title in a trustee who holds property "in trust" for the benefit of another. By transferring Property into the Land Trust, Mr. Johnson subjected his Property to the terms of the Land Trust, and he became a beneficiary of the Trust.

---

[1] Though the Debtor disputes the validity of the Assignment, this memorandum assumes the bona fides of the document.

9. The "duties" or restrictions imposed on the Property in the Land Trust govern.

> If a trust is created by a transaction inter vivos and is evidenced by a written instrument, the terms of the trust are determined by the provisions of the governing instrument as interpreted in light of all the relevant circumstances… Restat 3rd of Trusts §4 (2012)

10. Thus the answer to the Question as to who has the "power of direction with respect to management of Debtor" has to come from the "governing instrument", namely, the Land Trust.

11. On this the Land Trust is very clear. It states unequivocally that the "Beneficiaries shall, in their own right, have full and exclusive control over the management and operation of the Trust property…"

12. Accordingly, the law of trusts answers the Question.

13. Movants contend that the transfer by Mr. Johnson of the Property was somehow different than the transfers made by the named Beneficiaries. They argue that the transfer was an absolute conveyance and that the "only party able to vote or authorize the filing of this bankruptcy is the Trust" (Doc 35 p. 1). That is inconsistent with the law of trusts.

14. The "relevant circumstances" also shed light on the answer to the Question.

15. First, it is inconsistent with the treatment of the other parties to the Land Trust. When the Land Trust was created in September 2023, three of the Beneficiaries named in the Trust had transferred 100% of their equity in three different entities. If a transfer of 100% of their interest in entities included the "power of direction" as the Movants contend, it contradicts the express terms of the Land Trust.

16. The second "relevant circumstance" is the purpose of the Land Trust. The Land Trust was created to provide additional security to Movants for a guaranty given by Mr. Johnson. Mr. Johnson retained rights of control over the Property after it was conveyed into the Land Trust not only under the terms of the Land Trust and the law of trusts, but as was argued at the hearing, because that result is required under the Florida LLC statute and the mortgage statue.

17. Next, the Assignment itself does say it is an absolute transfer. For the argument made by the Movants to have color, it would have to be a transfer to the Movants directly, and not a transfer "in trust.".

18. Finally, the Movant argued in court that the answer to the Question is that the "only party able to vote or authorize the filing of this bankruptcy is the Trust." However, this presents its own dead end. If the Trustee has the right to make decisions concerning the res of the Trust, what rules does it follow? How can the Trustee make decisions about the property put into its charge? The Land Trust gives no guidance to the Trustee if that is the case, and that is because the transfer was subject to the law of trusts. It was not an absolute conveyance.

Dated this 24th day of June 2025

Respectfully submitted,

/s/Frank M. Wolff

Frank M. Wolff, Esq.
Florida Bar No. 319521
Nardella & Nardella, PLLC
135 W. Central Blvd., Suite 300
Orlando, FL 32801
(407) 966-2680
fwolff@nardellalaw.com
klynch@nardellalaw.com

*PROPOSED COUNSEL TO DEBTOR*

CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2025, a true and correct copy of the foregoing has been served to (i) all filing users through the CM/ECF system including the office of the U.S. Trustee, Audrey M. Aleskovsky, at Audrey.m.aleskovsky@usdoj.gov; and (ii) by first class United States mail to all non-CM/ECF participants on the Local Rule 1007-2 Parties in Interest List as listed on the mailing matrix attached to the original of this application filed with the court.

*/s/Frank M. Wolff*
Frank M. Wolff, Esq.

| | | |
|---|---|---|
| Label Matrix for local noticing<br>113A-6<br>Case 6:25-bk-02685-GER<br>Middle District of Florida<br>Orlando<br>Mon Jun 23 15:23:29 EDT 2025 | Brevard County<br>Tax Collector<br>1605 N. Courtenay Pkwy<br>Merritt Island, FL 32953-4338 | ~~Brevard County Tax Collector~~<br>~~c/o Feibai Ma, Esq.~~<br>~~Winderweedle, Haines, Ward & Woodman, PA~~<br>~~329 Park Avenue North, Second Floor~~<br>~~Winter Park, FL 32789-7421~~ |
| ~~Brevard County Tax Collector~~<br>~~c/o Heidi M. Mitchell, Esq.~~<br>~~Winderweedle, Haines, Ward & Woodman, PA~~<br>~~329 Park Avenue North, Second Floor~~<br>~~Winter Park, FL 32789-7421~~ | Cape Crossing<br>Condominium Association, Inc<br>c/o Keystone Property Mngmnt<br>780 US Highway 1, Ste. 300<br>Vero Beach, FL 32962-1660 | ~~Feibai Ma, Esq.~~<br>~~Attorneys for Creditor Brevard~~<br>~~County Tax Collector~~<br>~~329 Park Avenue North, Second~~ Floor<br>~~Winter Park, Florida 32789-7408~~ |
| IMQA Investments Inc<br>4409 Hoffner Ave #348<br>Orlando, FL 32812-2331 | Internal Revenue Service<br>Post Office Box 7346<br>Philadelphia PA 19101-7346 | Kenneth Dixon<br>1627 E Vine Street<br>Suite E<br>Boynton Beach, FL 33474 |
| ~~Mainstreet Community Bank~~<br>~~c/o Justin M. Luna~~<br>~~201 S. Orange Ave., Suite 1400~~<br>Orlando, ~~Florida 32801-3483~~ | ~~TAMAMOI, LLC~~<br>~~Audrey J. Dixon, Esq.~~<br>~~McMichael Taylor Gray LLC~~<br>~~3550 Engineering Dr., Suite 260~~<br>~~Peachtree Corners, GA 30092-2871~~ | ~~THE CARTON FAMILY TRUST OF 1992 DATED OCTOBE~~<br>~~c/o Audrey J. Dixon, Esq.~~<br>~~McMichael Taylor Gray, LLC~~<br>~~3550 Engineering Drive, Suite 260~~<br>Peachtree Corners, GA 30092-2871 |
| ~~THE CARTON FAMILY TRUST OF 1992~~ DATED OCTOBE<br>~~c/o McMichael Taylor Gray LLC~~<br>~~3550 Engineering Dr., Suite 260~~<br>~~Peachtree Corners, GA 30092-2871~~ | End of Label Matrix<br>~~Mailable recipients 12~~<br>Bypassed recipients 0<br>Total 12 | |

# EXHIBIT 73

---

In re Homemakers Real Estate, LLC
Case No. 6:25-bk-02685-GER (Bankr. M.D. Fla.)

**Doc. 73, entered June 27, 2025**

Order Dismissing Case

**ORDERED.**

**Dated: June 27, 2025**

Grace E. Robson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Homemakers Real Estate, LLC, | ) | Case No. 6:25-bk-02685-GER<br>Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**ORDER DISMISSING CASE**

THIS CASE came before the Court for hearing on June 11, 2025 at 9:30 a.m. (the "Hearing") upon the *Motion to Dismiss Bankruptcy Case for Lack of Corporate Authority* (Doc. No. 12) (the "Motion") filed by Movants PEDIXON LLC and ZPD, LLC ("Movants"), the Response[1] (Doc. No. 24) thereto filed by Debtor Homemakers Real Estate, LLC ("Debtor"), and the Reply[2] (Doc. No. 35) thereto filed by Movants.

"Whether a bankruptcy filing is authorized depends on applicable state law and the unique facts of each case."[3] "A case filed by a person without proper corporate authority usually is dismissed."[4] Here, Debtor is a member-managed Florida limited liability company.[5] Debtor's

[1] *Debtor's Response to Motion to Dismiss Bankruptcy Case for Lack of Corporate Authority* (the "Response").
[2] *Reply in Support of Motion to Dismiss Bankruptcy Case for Lack of Corporate Authority* (the "Reply").
[3] *In re Melbourne Beach, LLC*, No. 6:17-bk-07975-KSJ, 2019 WL 10734081, at *3 (Bankr. M.D. Fla. Aug. 6, 2019) (citing *In re H & W Food Mart, LLC*, 461 B.R. 904, 907 (Bankr. N.D. Ga. 2011)).
[4] *Id.* (citing *In re H & W Food Mart*, 461 B.R. at 906-07).
[5] *Operating Agreement of Homemakers Real Estate, LLC*, Motion, Ex. A (Doc. No. 12) (the "Operating Agreement").

Operating Agreement requires consent of all members to authorize the filing of a bankruptcy petition.[6] Florida law likewise requires the affirmative vote of the holders of a majority of membership interests in order to take actions outside the ordinary course of the company's activities and affairs for both member-managed, and manager-managed, limited liability companies.[7] The decision to file a bankruptcy petition is not an every-day decision and is an act outside the ordinary course of business.[8]

Movants and Debtor agree that prior to the Petition Date,[9] Mr. Johnson, assigned all of his right, title and interest in 100% of Debtor's membership units (the "Membership Units") to the Land Trust[10] pursuant to the *Assignment of Membership Units* (the "Assignment").[11] The parties also agree that Crescent Sound Ltd., was the trustee of the Land Trust ("Trustee") on the Petition Date. However, the parties disagree about the impact of the Assignment on who holds the beneficial interest in the Membership Units and who may authorize Debtor to file bankruptcy. At the Court's direction,[12] Movants[13] and Debtor[14] supplemented their pleadings with respect to who held the beneficial interest and right to manage Debtor as of the Petition Date.

---

[6] Operating Agreement ¶ 9.xii.).
[7] Fla. Stat. § 605.04073(1)(c), (2)(d).
[8] *In re Melbourne Beach, LLC*, 2019 WL 10734081, at *3 ("The decision to file bankruptcy is an act outside of the ordinary course of any business and is more than a mere, everyday business decision." (footnote omitted) (first citing *In re Zaragosa Props., Inc.*, 156 B.R. 310, 313 (Bankr. M.D. Fla. 1993); and then citing *Winter v. Bel-Aire Invs., Inc. (In re Bel-Aire Invs., Inc.)*, 97 B.R. 88, 89 (Bankr. M.D. Fla. 1989))).
[9] The bankruptcy petition (Doc. No. 1) commencing this case was filed on May 5, 2025 (the "Petition Date").
[10] *See Tiered Land Trust Agreement Dated September 13, 2023*, Response, Ex. B (Doc. No. 24-2) (the "Agreement"). The Land Trust arises under the Agreement. The Agreement is not evidenced by a separate document, and references to the Land Trust and the Agreement refer to the same document.
[11] Motion, Ex. C (Doc. No. 12). The Assignment was executed on January 9, 2024.
[12] *Order (1) Directing Debtor and Movants to File Supplemental Pleading, (2) Setting Deadlines, and (3) Resetting Hearing* (Doc. No. 59).
[13] *Supplemental Pleading in Support of Motion to Dismiss Bankruptcy Case for Lack of Corporate Authority* (Doc. No. 69).
[14] *Debtor's Supplemental Brief in Opposition to Motion to Dismiss* (Doc. No. 70).

The Agreement lists four beneficiaries,[15] and sets forth the beneficiaries' interests in specific trust *res* (defined in the Agreement collectively as "Trust Property"). The Agreement provides that Trustee takes title to the Trust Property,[16] but the Land Trust beneficiaries retain power of direction to deal with title to Trust Property, power to manage and control the Trust Property, and the right to receive proceeds of the Trust Property.[17] Here, neither Mr. Johnson nor Trustee are listed as a beneficiary of the Land Trust.

Movants contend that as a result of the Assignment, Trustee holds the beneficial interest in the Membership Units and therefore Trustee has the right to manage and direct Debtor. Debtor disagrees and argues that the Assignment did not assign the right to manage Debtor; instead, the Assignment was Mr. Johnson's manifestation of intent to create a trust relationship, and, under trust law, the transfer of the Membership Units into the Land Trust was for Mr. Johnson's benefit. Ergo Mr. Johnson holds the beneficial interest and had the ability to direct the filing of the bankruptcy petition. However, but for a few exceptions not applicable here, the Florida Trust Code[18] does not apply to land trusts under Florida law.[19] Therefore, the Court must look to the Florida Land Trust Act,[20] which, as noted by Movants, does not preclude a trustee from both serving as trustee of a land trust and having status as a beneficiary of that same land trust.[21] Debtor

---

[15] The beneficiaries are identified as Homemakers Real Estate, LLC, A Marine, Inc., Yaniv Amar, and Tiered Capital.
[16] On April 8, 2025, a "Trustee's Deed" was executed by Mr. Johnson as successor trustee of the Land Trust, conveying real property that was Trust Property to Debtor, *see Motion for Relief from the Automatic Stay*, Ex. A (Doc. No. 29-1); however, counsel for Debtor conceded this conveyance was an exercise in self help and for purposes of the Motion could be disregarded.
[17] Agreement ¶¶ 2 and 12.
[18] Fla. Stat. §§ 736.0101-736.1512.
[19] *See* Fla. Stat. §§ 689.071(12), 736.0102(3); *see also Freeman v. Berrin*, 352 So. 3d 452, 454-55 (Fla. 2d DCA 2022).
[20] Fla. Stat. § 689.071.
[21] Fla. Stat. § 689.071(2)(b).

has not cited to any other law that would support its contention that the Assignment did not convey all rights attendant to the Membership Units that were conveyed to the Land Trust.[22]

Based on the evidence and arguments presented, the Court finds that the Assignment vested Trustee with legal and equitable ownership of the Membership Units, and all rights attendant thereto. Therefore, Trustee was the sole member of Debtor as of the Petition Date and was the only person who could authorize Debtor to file a bankruptcy petition.[23] Mr. Johnson was not the "sole member" or "manager" of Debtor as of the Petition Date, nor was any argument or evidence presented demonstrating that Mr. Johnson was serving as Trustee of the Land Trust when he signed the Resolution.[24] Because Mr. Johnson was not Trustee of the Land Trust as of the Petition Date, he did not have the power to authorize the filing of the bankruptcy petition by Debtor. Finally, no evidence or argument was presented that Trustee ratified or consented to the filing of the bankruptcy petition after it was filed.[25] Accordingly, it is

**ORDERED:**

1. The Motion (Doc. No. 12) is **GRANTED.**

---

[22] Under Florida law, a transfer of a membership interest in a single member limited liability is valid if the member consents to the transfer. *See Inskeep v. Baccus Glob., LLC*, No. 20-cv-82127, 2024 WL 416357, at *8 (S.D. Fla. Feb. 5, 2024) ("[A]n assignee of the membership interest of the sole member in a single-member LLC becomes a member—and takes the full right, title, and interest of the transferor—without the consent of anyone other than the transferor." (alteration in original) (quoting *Olmstead v. F.T.C.*, 44 So. 3d 76, 81 (Fla. 2010))). While Debtor's Response argued the Assignment was invalid based on lack of consent, Debtor agreed on the record at the Hearing that, for purposes of ruling on the Motion, its membership units were validly assigned to the Land Trust.

[23] Operating Agreement ¶ 9.xii.).

[24] Mr. Johnson executed the document titled *Resolution of the Sole Member of Homemakers Real Estate, LLC* (the "Resolution") that was attached to the *Certificate of Authorization to File Bankruptcy Petition* (Doc. No. 4).

[25] "Like most courts that have allowed ratification on these facts, the Eleventh Circuit has acknowledged that '[a] principal can ratify the unauthorized act of an agent purportedly done on behalf of the principal either expressly or by implication through conduct that is inconsistent with an intention to repudiate the unauthorized act.'" *In re Mojo Brands Media, LLC*, No. 6:15-bk-03871-CCJ, 2016 WL 1072508, at *1 (Bankr. M.D. Fla. Mar. 16, 2016) (alteration in original) (quoting *McDonald v. Hamilton Elec., Inc. of Fla.*, 666 F.2d 509, 514 (11th Cir. 1982)). "To determine whether a principal ratified a company's unauthorized bankruptcy filing, courts apply the state law of the filing company." *In re Melbourne Beach*, 2019 WL 10734081, at *4 (first citing *Hager v. Gibson*, 108 F.3d 35 (4th Cir. 1997); then citing *In re Alternate Fuels, Inc.*, No. 09-20173, 2010 WL 4866690, at *1 (Bankr. D. Kan. Nov. 23, 2010); and then citing *Jape v. Reliable Air, Inc. (In re Reliable Air, Inc.)*, No. 05-85627, 2007 WL 7136475, at *1 (Bankr. N.D. Ga. Mar. 9, 2007)).

2. This case is **DISMISSED**.

3. All pending hearings are cancelled.

4. The Court shall dismiss related Adversary Proceeding No. 6:25-ap-00069-GER by separate order.

###

Attorney James A. Timko is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of the order.

# EXHIBIT 88

---

In re Homemakers Real Estate, LLC
Case No. 6:25-bk-02685-GER (Bankr. M.D. Fla.)

**Doc. 88, filed March 26, 2026**

Motion to Vacate Order Dismissing Case Pursuant to Federal Rules of Civil Procedure 60(b)(1) and 60(d)(3)

*Horton Johnson*

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

In re

Case No. 6:25-bk-02685-GER
Chapter 11

HOMEMAKERS REAL ESTATE, LLC,

Debtor.

______________________________________/

**MOTION TO VACATE ORDER DISMISSING CASE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 60(b)(1), AND 60(d)(3)**

## INTRODUCTION

Horton Johnson ("Johnson"), as a creditor, through undersigned counsel, respectfully moves this Court pursuant to Federal Rules of Civil Procedure 60(b)(1), and 60(d)(3), made applicable by Bankruptcy Rule 9024, to vacate the Order Dismissing Case (Doc. 73) (the "Dismissal Order") entered on June 27, 2025, and the Order Denying Motion for Reconsideration (Doc. 85) entered on August 26, 2025.

This case was dismissed because the Court applied the Florida Land Trust Act, Fla. Stat. § 689.071, to determine who had authority to place Homemakers Real Estate, LLC ("Homemakers") into bankruptcy. (Doc. 73 at 3.) But that

analysis rested on a false premise: that a valid Florida land trust existed. It did not. The original trustee's deed was never recorded—indeed, it was unrecordable. Therefore, no land trust was ever formed. The deed later recorded in the public records was a fundamentally different document: a forgery that is void ab initio under Florida law. Because no valid land trust existed, the Florida Land Trust Act had no application, hence, the purported assignment of Johnson's membership units to the (non-existent) trust was a nullity, and Johnson retained full authority to authorize the Homemakers bankruptcy filing. The Dismissal Order should be vacated on two independent grounds: either as a mistake of law under Rule 60(b)(1), or as the product of a fraud upon the Court under Rule 60(d)(3).

## JURISDICTION

This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the standing order of reference from the United States District Court for the Middle District of Florida. This motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and governed by Federal Rule of Civil Procedure 60 made applicable to bankruptcy actions by Federal Rule of Bankruptcy Procedure 9024.

## STANDING

Johnson is a creditor of Homemakers. (Doc. 85 at 3.) Johnson holds a direct financial interest in Homemakers and its assets and qualifies as a party in interest

under 11 U.S.C. § 1109(b), a provision applied broadly in the bankruptcy context. *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 277 (2024) (Section 1109's "text is capacious"). Given the invalidity of the January 9, 2024 assignment of membership units, Johnson is the owner of the Homemakers membership units.

## PROCEDURAL HISTORY

On May 5, 2025, Homemakers filed a voluntary Chapter 11 bankruptcy petition (Doc. 1). Johnson signed the Resolution of the Sole Member authorizing the filing (Doc. 4).

On May 8, 2025, PEDIXON LLC and ZPD, LLC ("Movants") filed a Motion to Dismiss for Lack of Corporate Authority (Doc. 12), arguing that Johnson had assigned his membership units to the Tiered Land Trust and therefore lacked authority to authorize the bankruptcy filing.

After a June 11 hearing and post-hearing supplemental filings, on June 27, 2025, this Court dismissed the voluntary bankruptcy. (Doc. 73.) The Court determined that "Mr. Johnson, [sic] assign all of his rights, title and interest in 100% of the membership units to the Land Trust..." (Doc. 73 at 2), that the assignment of membership units vested the trustee of the Tiered Land Trust with legal and equitable ownership. Johnson therefore lacked authority to authorize the

bankruptcy filing. (Doc. 73 at 4.) To reach this finding, the Court expressly applied the Florida Land Trust Act, Fla. Stat. § 689.071. (Doc. 73 at 3.)

On July 7, 2025, Tiered Capital, Inc. filed a Motion for Reconsideration (Doc. 76) based on a Tiered Land Trust resolution ratifying the bankruptcy. On August 26, 2025, this Court denied reconsideration (Doc. 85), finding that the Resolution of the Beneficiaries dated June 4, 2025, was not "newly available evidence" because it could have been raised at the hearing. (Doc. 85 at 5.)

This motion raises fundamentally different grounds for relief. Johnson demonstrates here that the land trust was never formed: that the foundational document—the trustee's deed purportedly creating the land trust—was never recorded, and that the later-recorded deed is void. Succinctly, No valid land trust ever existed.

## FACTUAL BACKGROUND

### A. The Original Trustee's Deed Was Unrecordable

On September 13, 2023, the parties contemplated forming a land trust. (Trust Appendix 3 at 94-101.) A trustee's deed was prepared and signed electronically via DocuSign (Envelope ID: 9078288B-FE20-4A15-A658-110FB6D3929D). (Exhibit A).

That original deed was three pages long. It was electronically signed only. It had no witnesses, no notarization, and no property descriptions. Id. Under Florida law, a deed must be signed in the presence of two subscribing witnesses and acknowledged before a notary public to be recorded. Fla. Stat. sections 689.01, 695.03, 695.26. Because the original trustee's deed lacked witnesses, notarization, and property descriptions, it could not be recorded—and if it could not be recorded, no land trust could form. *Fla. Stat.* § 689.071(2)(c) (a Florida land trust is formed by a recorded transfer of real property to a trustee).

**B. No Land Trust Was Ever Formed**

In the absence of a recorded transfer of real property to a trustee, a land trust does not exist. The original September 2023 "deed" was never recorded because it was unrecordable. (Exhibit A). The Tiered Land Trust dated September 13, 2023, was never formed. At the time of the purported assignment of Homemakers' membership units in January 2024, no land trust existed to receive them. Where the recipient of a transfer lacks lawful existence, no transfer occurs.

**C. The Recorded Deed Is a Forgery**

In February 2024, a trustee's deed was recorded in the public records of Brevard County. (CFN 2024031262, OR BK 9992, PG 2830-2837 (Exhibit B); that recorded deed is a fundamentally different document from the one Johnson signed.

The recorded deed: (a) is eight pages long, not three; (b) bears witness signatures; (c) contains addresses for the witnesses that were handwritten on the deed outside their presence and after they signed; (d) contains a notary acknowledgment—but the notary's attestation to the physical presence of the signatories is false, as the original deed was signed electronically and no physical signing ceremony occurred; and (e) includes 27 properties not described in the original electronically signed document.

The recorded deed is not a corrected or amended version of the original. It is a different document entirely—one that was fabricated after the electronic signing and then recorded to create the false appearance that a valid land trust had been formed. The notary's false attestation constitutes a violation of *Fla. Stat.* section 117.105. The fabrication and recording of this document constitutes forgery under *Fla. Stat.* section 831.01 and fabrication of evidence under Fla. Stat. section 918.13.

**D. A Forged Deed Is Void Ab Initio**

Under longstanding Florida precedent, a forged deed is void ab initio and recording it does not change its status. *McCoy v. Love*, 382 So. 2d 647, 648 (Fla. 1979) ("The recording of a void or forged deed is legally insufficient to create a legal title, and affords no protection to those claiming under it."); *Moore v. Smith-*

*Snagg*, 793 So. 2d 1000, 1001 (Fla. 5th DCA 2001) ("A forged deed is void; it has no effect."); *Wright v. Blocker*, 144 Fla. 428, 432, 198 So. 88, 91 (1940) ("A forged deed ... is absolutely void and wholly ineffectual to pass title."). Because the recorded trustee's deed is a forgery, it is void ab initio, conveys no title, and its recording is a legal nullity. The forged deed could not and did not create a valid land trust.

## LEGAL ARGUMENT

### I. Relief Is Warranted Under Rule 60(b)(1): Mistake of Law

Rule 60(b)(1) provides relief from a final judgment based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1); Fed. R. Bankr. P. 9024. The term "mistake" encompasses both mistakes of fact and mistakes of law, including the court's own errors. *Kemp v. United States*, 596 U.S. 528, 534 (2022) ("A judge's errors of law are indeed 'mistake[s]' under Rule 60(b)(1).").

This Court applied the Florida Land Trust Act to determine who had authority to direct Homemakers' bankruptcy filing. (Doc. 73 at 3.) The Court specifically found that "the Florida Trust Code does not apply to land trusts under Florida law" and concluded that "the Court must look to the Florida Land Trust Act." Id. But the Florida Land Trust Act applies only when a valid land trust exists.

*Fla. Stat.* § 689.071(2)(c). As set forth above, no valid land trust was ever formed. The original deed was unrecordable, and the later-recorded deed was a forgery—void ab initio. (Exhibit A, Exhibit B). Applying the Florida Land Trust Act to these facts was a mistake of law.

Had the Court recognized that no valid land trust existed, the result would have been different. An assignment to a nonexistent entity is a nullity. *Avant Capital, LLC v. Gomez*, 254 So. 3d 1042 (Fla. 4th DCA 2018) ("When a transferee does not exist to accept a transferor's property, the purported transfer is a nullity and void."); *Daniels v. Berry*, 513 So. 2d 250, 251 (Fla. 5th DCA 1987) (recognizing "that a deed from the owner to a nonexistent entity is a nullity"); *Belcher Ctr. LLC v. Belcher Ctr., Inc.*, 883 So. 2d 338, 339 (Fla. 2d DCA 2004). Because the Tiered Land Trust did not exist when Johnson purportedly assigned his membership units in January 2024 (a month prior to the February fabrication), that assignment was a legal nullity. Johnson retained 100% of Homemakers' membership units and had full authority to authorize the bankruptcy filing.

Moreover, even if an unintentional trust of some kind were somehow created, it would be governed not by the Land Trust Act but by the Florida Trust Code, *Fla. Stat.* sections 736.0101-736.1512. Under the Trust Code, Crescent Sound, Ltd. and Kenneth Dixon could not lawfully serve as disinterested trustees because their interests were directly adverse to the beneficiaries. *See Fla. Stat.*

section 736.0802 (requiring trustees to act "solely in the interests of the beneficiaries" and making conflicted transactions voidable); *Brigham v. Brigham*, 11 So. 3d 374, 381-82 (Fla. 3d DCA 2009) (upholding removal and surcharge of self-dealing trustee).

**II. Relief Is Warranted Under Rule 60(d)(3): Fraud on the Court**

Rule 60(d)(3) preserves the inherent power of a court to set aside a judgment for "fraud on the court," without time limitation. Fed. R. Civ. P. 60(d)(3); *Hazel-Atlas Glass Co. v. Hartford-Empire* Co., 322 U.S. 238, 246-48 (1944). Such fraud "embraces only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Zakrzewski v. McDonough*, 490 F.3d 1264, 1267 (11th Cir. 2007); see also *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978) (fraud on the court involves the most egregious misconduct, such as fabrication of evidence by counsel).

That is precisely what occurred here. Attorney Alison Pitkanen, as counsel for Crescent Sound, prepared, procured, and recorded a forged trustee's deed—a document bearing false witness attestations and a false notary acknowledgment. The forged deed was then presented to this Court by Dean Mead, counsel for

PEDIXON and ZPD, in connection with the Motion to Dismiss (Doc. 12), as though it were authentic. This Court relied on these representations and the forged deed in reaching its decision. (Doc. 73 at 3-4.)

The forged deed was not a peripheral exhibit. It was the foundational document upon which this Court's entire legal analysis rested. Without it, there was no recorded transfer of real property, no valid land trust, and no basis for applying the Florida Land Trust Act. The fabrication of a foundational document by one officer of the court and its knowing presentation by another is a paradigmatic fraud upon the court. *See Hazel-Atlas Glass Co*, 322 U.S. at 245–46 (describing a 'deliberately planned and carefully executed scheme to defraud' the court and holding that such fraud demands vacatur of the prior judgment). *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (recognizing the inherent power of federal courts to protect the integrity of judicial proceedings). This Court has both the power and the duty to vacate the Dismissal Order.

## THIS GROUND FOR RELIEF WAS NOT RAISED ON RECONSIDERATION

The previously denied Motion for Reconsideration (Doc. 85) addressed different grounds—the Resolution of the Beneficiaries removing Crescent Sound as trustee and the settlors' revocation of the trust. This Court found that the Resolution was not newly available evidence. (Doc. 85 at 5.)

This motion is brought by a different party (Johnson not Homemakers) and raises an entirely different ground: the nonexistence of the land trust for failure to record a trustee's deed and, second, that the untimely recorded trustee's deed was a forgery. The significance of this forgery—readily apparent by comparing the original DocuSign deed (Exhibit A) (Trust Appendix at 73-75) with the fabricated recorded deed (Exhibit B) (Trust Appendix at 35-42)—was not appreciated by prior counsel and was never presented to this Court.

Counsel's oversight is not fatal to this challenge. A judicial error of law remains a "mistake" within the meaning of Rule 60(b)(1) notwithstanding counsel's failure to identify it. *Kemp*, 596 U.S. at 534. Moreover, the untimeliness of the trust deed relative to the assignment is apparent from the face of the filed documents themselves (assignment on January 9, 2024; fabricated trustee's deed recorded on February 7, 2024). The nature of this error is fundamental to the integrity of the administration of justice.

**TIMELINESS**

This motion is timely under Rule 60(b)(1), which requires the motion be brought within one year of the judgment. Fed. R. Civ. P. 60(c). To the extent this motion invokes Rule 60(d)(3), no time limitation applies. Fed. R. Civ. P. 60(d)(3); Hazel-Atlas Glass Co., 322 U.S. at 244-45.

## RELIEF REQUESTED

WHEREFORE, Johnson respectfully requests that this Court enter an order:

a. Vacating the Order Dismissing Case (Doc. 73) pursuant to Federal Rules of Civil Procedure 60(b)(1) and/or 60(d)(3);

b. Vacating the Order Denying Motion for Reconsideration (Doc. 85);

c. Finding that no valid Florida land trust was formed because the recorded trustee's deed is a forgery and void ab initio;

d. Finding that the Florida Land Trust Act, Fla. Stat. § 689.071, was improperly applied and has no application to this case;

e. Finding that Johnson retained his membership units in Homemakers at all relevant times and had authority to authorize the filing of the bankruptcy petition;

f. Reinstating the bankruptcy case; and

g. Granting such other and further relief as this Court deems just and proper.

## VERIFICATION

I, Horton Johnson, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED: March 11th, 2026

Horton Johnson

Respectfully submitted this 11th day of March, 2026.

/s/ Matthew A. Leibert
MATTHEW A. LEIBERT, Esquire
Florida Bar No. 752266
Law Office Matthew A. Leibert
5782A S. Semoran Blvd.
Orlando, Florida 32822
Telephone: (407) 425-2005
Counsel for Horton Johnson, Creditor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 11th, 2026, I electronically filed the foregoing with the Clerk of Court through the CM/ECF system.

/s/ Matthew A. Leibert

MATTHEW A. LEIBERT, Esquire

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re

| | | |
|---|---|---|
| | ) | Case No. 6:25-bk-02685-GER |
| HOMEMAKERS REAL ESTATE, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

---

**MOTION TO VACATE ORDER DISMISSING CASE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 60(b)(1), AND 60(d)(3)**

# EXHIBITS A & B

**Exhibit A:** Original Trustee's Deed — Executed September 13, 2023 (Unrecorded)
**Exhibit B:** Recorded Trustee's Deed — Recorded February 14, 2024 (Forgery)

---

**Summary of Material Differences**

**1. Document Composition.** The Sept Document is a three-page instrument bearing the DocuSign Envelope ID (9078288B-FE20-4A15-A658-110FB6D3929D) on all three pages. It contains a completely blank Exhibit A with no legal description whatsoever. The Feb Document is an eight-page instrument containing a six-page Exhibit A that identifies 27 specific properties—pages that bear no DocuSign Envelope ID and were therefore never part of the executed transaction.

**2. Witness and Notary Attestations.** The Sept Document contains no witness signatures, no witness addresses, and no notarization. The Feb Document contains signatures of witnesses Gabrielle Milotte and Anthony Amodeo, with addresses manually added to comply with the January 1, 2024 recordation requirement under *Fla. Stat.* § 695.26, and a notarization by Janelle Morea falsely attesting to physical presence on a DocuSign-executed instrument—by a notary who did not obtain Remote Online Notarization authorization until September 2025.

**3. Scope of Conveyance.** The Sept Document bears Johnson's electronic DocuSign signature on a deed conveying no identified property. The Feb Document is recorded as conveying 27 specific properties under that same signature.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| In re | | |
| | ) | Case No. 6:25-bk-02685-GER |
| HOMEMAKERS REAL ESTATE, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

# EXHIBIT A

Original Trustee's Deed (Unrecorded)

DocuSign Envelope ID: 90782[illegible]

THIS INSTRUMENT PREPARED BY:

1980 N. Atlantic Ave
Suite 328
Cocoa Beach, FL 32931

# TRUSTEE'S DEED

**THIS INDENTURE,** made September 13, 2023, by and between Homemakers Real Estate, LLC, a Florida limited liability company, hereinafter referred to as Grantor, whose mailing address is 2875 S. ORANGE AVE, STE. 500 #6409, ORLANDO, FL 32806 and CRESCENT SOUND LTD, Trustee, of Tiered Land Trust, u/t/d September 13, 2023, hereinafter referred to as Grantee, whose post office address is 1627 East Vine Street, Suite E, Kissimmee FL 34744.

(Wherever used the term "Grantor" and "Grantee" shall include singular and plural, heirs, legal representative, and assigns of individuals, and the successors and assigns of corporation, wherever the context so admits or requires.)

## WITNESSETH

Grantor, in consideration of the sum of TEN and NO/100 DOLLARS ($10.00), and other good and valuable considerations, receipt of which is hereby acknowledged, does hereby grant, bargain, transfer and convey to Trustee, its successors and assigns, all Grantor's interest in and to the real property described on Exhibit A attached hereto, lying and being situated in Brevard County, Florida.

TOGETHER WITH all appurtenances, privileges, rights, interest, dower, reversions, remainders and easements thereunto appertaining:

TO HAVE AND TO HOLD said real estate with the following powers and for the following uses and purposes, to wit:

1. The Trustee is vested with full rights of ownership over the above described real estate and Trustee is specifically granted and given the power and authority:
   (a) To protect and conserve said real estate and improvements located thereon and to pay the taxes assessed thereon;
   (b) To sell said real estate, for cash or credit, at public or private sale, to exchange said real estate for other property and to grant options to sell said property, and to determine the price and terms of sales, exchange and options;
   (c) To execute leases and subleases for terms as long as 20 years, to subdivide or improve said real estate and tear down or alter improvements, to grant easements, give consent and make contracts relating to said real estate or its use and to release or dedicated any interest in said real estate:
   (d) To borrower money and to mortgage, pledge or encumber any or all of the said real estate to secure payment thereof;
   (e) To manage, control and operate said real estate, to collect the rents, issues and profits, to pay all expenses thereby incurred, and in addition, to manage and operate any business that may now or hereafter be operated and maintained on said real estate, and in general, to exercise any powers authorized by law;
   (f) The Trustee's liability hereunder, under the Trust Agreement or by operation of law to any persons firm or corporation is limited to the trust assets and the Trustee shall not become individually or personally obligated in any manner related thereto;

2. The Trustee shall hold said real estate in accordance with the terms and conditions of that certain Homemakers Land Trust Agreement dated September 13, 2023.

3. No purchaser, grantee, mortgagee, lessee, assignee or any other person dealing with the Trustee need see to the application of any proceeds of any sales, lease, mortgage or pledge, but the receipt of the Trustee shall be a complete discharge and acquittance therefor. Any and all persons, including but not limited to grantees, mortgagees, lessees, transferees and assigns dealing with said Trustee need not inquire into the identification or status of any beneficiary under this deed or any collateral

**No documentary excise taxes are due on the recording of this instrument.**

**Exhibit A**

instrument nor inquire into or ascertain the authority of such Trustee to act in and exercise the powers granted by this deed or of adequacy or disposition of any consideration paid to the Trustee nor inquire into the provisions of said unrecorded Trust Agreement and any amendments thereto collateral hereto.

4. This conveyance is made in conformance with the provisions of Sections 689.071, Florida Statutes.

5. By its acceptance of this conveyance, the Trustee covenants and agrees to do and perform the duties, acts and requirements upon it binding.

6. Each and every power hereinabove set forth may be exercised by any Trustee. Any instrument executed by any Trustee or any act taken by any Trustee shall be binding upon the trust and all of the Trustees as fully and completely as if all Trustees had executed the said instrument or taken said action.

7. A certificate signed by Trustee or any successor trustee under this instrument and acknowledged by him/her before a notary public shall be conclusive evidence upon all persons and for all purposes of the facts stated in the certificate representing the terms of this instrument and the identity of the Trustees who from time to time are serving under it.

**In Witness whereof,** the Grantor has signed and sealed this deed the date above written.

Signed, sealed and delivered in the presence of:

HOMEMAKERS REAL ESTATE, LLC

DocuSigned by:

By: *Horton S. Johnson*

Horton S. Johnson, Manager

______________________
Witness 1 Signature

______________________
Printed Name of Witness

______________________
Witness 2 Signature

______________________
Printed Name of Witness

State of Florida
County of Orange

The foregoing instrument was acknowledged before me by means of [_] physical presence or [_] online notarization, this 13th day of September 2023 by Horton S. Johnson who [_] is personally known or [_] has produced a driver's license as identification.

[Seal]

______________________
Notary Public
Print Name: ______________________
My Commission Expires: ______________________

**No documentary excise taxes are due on the recording of this instrument.**

**Exhibit A**

DocuSign Envelope ID: 907828BB-FE20-4A1D-A65B-410FB8D3920D

EXHIBIT A
LEGAL DESCRIPTION

(26 UNITS)

No documentary excise taxes are due on the recording of this instrument.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| In re | | |
| | ) | Case No. 6:25-bk-02685-GER |
| HOMEMAKERS REAL ESTATE, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

# EXHIBIT B

Recorded Trustee's Deed (Forgery)

DocuSign Envelope ID: 9076200B-FE20-4A10-A066-110FB6D3929D

THIS INSTRUMENT PREPARED BY:

1960 N. Atlantic Ave
Suite 328
Cocoa Beach, FL 32931

# TRUSTEE'S DEED

**THIS INDENTURE**, made September 13, 2023, by and between Homemakers Real Estate, LLC, a Florida limited liability company, hereinafter referred to as Grantor, whose mailing address is 2875 S. ORANGE AVE, STE. 500 #6409, ORLANDO, FL 32806 and **CRESCENT SOUND LTD**, Trustee, of Tiered Land Trust, u/t/d September 13, 2023, hereinafter referred to as Grantee, whose post office address is 1627 East Vine Street, Suite E, Kissimmee FL 34744.

(Wherever used the term "Grantor" and "Grantee" shall include singular and plural, heirs, legal representative, and assigns of individuals, and the successors and assigns of corporation, wherever the context so admits or requires.)

## WITNESSETH

Grantor, in consideration of the sum of TEN and NO/100 DOLLARS ($10.00), and other good and valuable considerations, receipt of which is hereby acknowledged, does hereby grant, bargain, transfer and convey to Trustee, its successors and assigns, all Grantor's interest in and to the real property described on Exhibit A attached hereto, lying and being situated in Brevard County, Florida.

TOGETHER WITH all appurtenances, privileges, rights, interest, dower, reversions, remainders and easements thereunto appertaining:

TO HAVE AND TO HOLD said real estate with the following powers and for the following uses and purposes, to wit:

1. The Trustee is vested with full rights of ownership over the above described real estate and Trustee is specifically granted and given the power and authority:
   (a) To protect and conserve said real estate and improvements located thereon and to pay the taxes assessed thereon;
   (b) To sell said real estate, for cash or credit, at public or private sale, to exchange said real estate for other property and to grant options to sell said property, and to determine the price and terms of sales, exchange and options;
   (c) To execute leases and subleases for terms as long as 20 years, to subdivide or improve said real estate and tear down or alter improvements, to grant easements, give consent and make contracts relating to said real estate or its use and to release or dedicated any interest in said real estate:
   (d) To borrower money and to mortgage, pledge or encumber any or all of the said real estate to secure payment thereof;
   (e) To manage, control and operate said real estate, to collect the rents, issues and profits, to pay all expenses thereby incurred, and in addition, to manage and operate any business that may now or hereafter be operated and maintained on said real estate, and in general, to exercise any powers authorized by law;
   (f) The Trustee's liability hereunder, under the Trust Agreement or by operation of law to any persons firm or corporation is limited to the trust assets and the Trustee shall not become individually or personally obligated in any manner related thereto;

2. The Trustee shall hold said real estate in accordance with the terms and conditions of that certain Homemakers Land Trust Agreement dated September 13, 2023.

3. No purchaser, grantee, mortgagee, lessee, assignee or any other person dealing with the Trustee need see to the application of any proceeds of any sales, lease, mortgage or pledge, but the receipt of the Trustee shall be a complete discharge and acquittance therefor. Any and all persons, including but not limited to grantees, mortgagees, lessees, transferees and assigns dealing with said Trustee need not inquire into the identification or status of any beneficiary under this deed or any collateral

No documentary excise taxes are due on the recording of this instrument.

Exhibit B

DocuSign Envelope ID: 90782888-FE20-4A16-A858-110FB8D3929D

instrument nor inquire into or ascertain the authority of such Trustee to act in and exercise the powers granted by this deed or of adequacy or disposition of any consideration paid to the Trustee nor inquire into the provisions of said unrecorded Trust Agreement and any amendments thereto collateral hereto.

4. This conveyance is made in conformance with the provisions of Sections 689.071, Florida Statutes.

5. By its acceptance of this conveyance, the Trustee covenants and agrees to do and perform the duties, acts and requirements upon it binding.

6. Each and every power hereinabove set forth may be exercised by any Trustee. Any instrument executed by any Trustee or any act taken by any Trustee shall be binding upon the trust and all of the Trustees as fully and completely as if all Trustees had executed the said instrument or taken said action.

7. A certificate signed by Trustee or any successor trustee under this instrument and acknowledged by him/her before a notary public shall be conclusive evidence upon all persons and for all purposes of the facts stated in the certificate representing the terms of this instrument and the identity of the Trustees who from time to time are serving under it.

In Witness whereof, the Grantor has signed and sealed this deed the date above written.

Signed, sealed and delivered in the presence of:

HOMEMAKERS REAL ESTATE, LLC

By: DocuSigned by: Horton S. Johnson
Horton S. Johnson, Manager

[signature]
Witness 1 Signature

Gabrielle Milotte - 1650 Sand Lake Rd Orlando, FL 32809
Printed Name of Witness + Address

[signature]
Witness 2 Signature

Anthony Amador - 4998 Dockside Dr. Orlando, FL 32822
Printed Name of Witness + Address

State of Florida
County of Orange

The foregoing instrument was acknowledged before me by means of [✓] physical presence or [ ] online notarization, this 13th day of September 2023 by Horton S. Johnson who [ ] is personally known or [✓] has produced a driver's license as identification.

[signature]
Notary Public
Print Name: Janelle Morea
My Commission Expires: 1/5/2025

[Seal]

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

No documentary excise taxes are due on the recording of this instrument.

**EXHIBIT A**

**LEGAL DESCRIPTION**

The land referred to herein below is situated in the County of BREVARD, State of FL, and described as follows:

Condominium Unit 103, CAPE CROSSING, a Condominium, together with an undivided Interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 104, CAPE CROSSING, a Condominium, together with an undivided Interest in the time elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 107, CAPE CROSSING, a Condominium, together with an undivided Interest in the common elements, according to the Declaration of Condominium thereof recorded In Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 202, CAPE CROSSING, a Condominium, together with an undivided Interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 203, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 205, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 206, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 207, CAPE CROSSING, a Condominium, together with an undivided Interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 303, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 305, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

**Exhibit B**

Condominium Unit 307, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 402, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 403, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 404, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 407, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 503, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 504, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 505, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 507, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Building #2 Unit 101

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, Public Records of Brevard County, Florida, and being more particularly described as follows:

Commence at the intersection of the Westerly right-of-way line of North Courtenay Parkway and the South Property Line of the Canaveral Port Authority (described as the Point-of-Beginning in Official Records Book 6212, Page 2393, aforesaid Public Records); thence S79°58'00"W, along the South line of the Canaveral Port Authority, a distance of 58.85 feet; thence S10°02'00"E, perpendicular to said South line of the Canaveral Port Authority, a distance of 121.30 feet to the Point-of-Beginning; thence continue S10°02'00"E, a distance of 52.67 feet; thence S79°58'00"W, a distance of 21.00 feet; thence N10°02'00"W, a distance of 70.00 feet; thence N79°58'00"E, a distance of 12.33 feet; thence S10°02'00"E, a distance of 17.33 feet; thence N79°58'00"E, a distance of 8.67 feet to the Point-of-Beginning.

Building #2 Unit 102

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, Public Records of Brevard County, Florida, and being more particularly described as follows:

Commence at the intersection of the Westerly right-of-way line of North Courtenay Parkway and the South Property Line of the Canaveral Port Authority (described as the Point-of-Beginning in Official Records Book 6212, Page 2393, aforesaid Public Records); thence S79°58'00"W, along the South line of the Canaveral Port Authority, a distance of 79.85 feet; thence S10°02'00"E, perpendicular to said South line of the Canaveral Port Authority, a distance of 103.97 feet to the Point-of-Beginning; thence continue S10°02'00"E, a distance of 70.00 feet; thence S79°58'00"W, a distance of 20.67 feet; thence N10°02'00"W, a distance of 52.67 feet; thence N79°58'00"W, a distance of 8.33 feet; thence N10°02'00"W, a distance of 17.33 feet; thence N79°58'00"E, a distance of 12.33 feet to the Point-of-Beginning.

**Exhibit B**

The Land is described as follows:
211 Ivory Coral Lane, Unit 101
Merritt Island, FL 32953

Parcel 1:
Building #5 Unit 101

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, Public Records of Brevard County, Florida, and being more particularly described as follows:

Commence at the intersection of the Westerly right-of-way line of North Courtenay Parkway and the South Property Line of The Canaveral Port Authority (described as the Point-of-Beginning in Official Records Book 6212, Page 2393, aforesaid Public Records); thence South 79 degrees 58 minutes 00 seconds West, along the South Line of the Canaveral Port Authority, a distance of 172.97 feet to a point; thence continuing along said South property line South 82 degrees 14 minutes 00 seconds West, a distance of 289.71 feet; thence South 07 degrees 46 minutes 00 seconds East, perpendicular to said South line of the Canaveral Port Authority, a distance of 148.30 feet to the POINT-OF-BEGINNING; thence continue South 07 degrees 46 minutes 00 seconds East, a distance of 52.67 feet; thence South 82 degrees 14 minutes 00 seconds West, a distance of 21.00 feet; thence North 07 degrees 46 minutes 00 seconds West, a distance of 70.00 feet; thence North 82 degrees 14 minutes 00 seconds East a distance of 12.33 feet; thence South 07 degrees 46 minutes 00 seconds East, a distance of 17.33 feet; thence North 82 degrees 14 minutes 00 seconds East a distance of 8.67 feet to the POINT-OF-BEGINNING.

The Land is described as follows:
211 Ivory Coral Lane, Unit 103
Merritt Island, FL 32953

Parcel 2:
Building #5 Unit 103

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, Public Records of Brevard County, Florida, and being more particularly described as follows:

Commence at the intersection of the Westerly right-of-way line of North Courtenay Parkway and the South Property Line of The Canaveral Port Authority (described as the Point-of-Beginning in Official Records Book 6212, Page 2393, aforesaid Public Records); thence South 79 degrees 58 minutes 00 seconds West, along the South Line of the Canaveral Port Authority, a distance of 172.97 feet to a point; thence continuing along said South property line South 82 degrees 14 minutes 00 seconds West, a distance of 331.38 feet; thence South 07 degrees 46 minutes 00 seconds East, perpendicular to said South line of the Canaveral Port Authority, a distance of 148.30 feet to the POINT-OF-BEGINNING; thence continue South 07 degrees 46 minutes 00 seconds East, a distance of 52.67 feet; thence South 82 degrees 14 minutes 00 seconds West, a distance of 20.67 feet; thence North 07 degrees 46 minutes 00 seconds West, a distance of 70.00 feet; thence North 82 degrees 14 minutes 00 seconds East a distance of 12.33 feet; thence South 07 degrees 46 minutes 00 seconds East, a distance of 17.33 feet; thence North 82 degrees 14 minutes 00 seconds East a distance of 8.33 feet to the POINT-OF-BEGINNING.

**Exhibit B**

Building #7 Unit 101

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, public records of Brevard County, Florida, and being more particularly described as follows:

Commence at the Southwest corner of aforesaid Section 11, Township 24 South, Range 36 East (Department of Natural Resources Certified Section Corner No. 22981 C); thence N00° 27'47"W, along the West line of said Section 11, a distance of 126.39 feet to a 5/8 inch iron rod stamped D.O.T marking the intersection of the North right-of-way line of Marine Harbor Drive at the Southwest corner of the lands as described in Official Records Book 6890, Page 2520, aforesaid public records of Brevard County, Florida; thence continue N00°27'47"W, along said West line of Section 11, a distance of 199.41 feet; thence N89°32'13"E, perpendicular to said line, a distance of 114.00 feet to the point-of-beginning; thence continue N89°32'13"E, a distance of 70.00 feet; thence N00°27'47"W, a distance of 21.00 feet; thence S89°32'13"W, a distance of 52.67 feet; thence S00°27'47"E, a distance of 8.67 feet; thence S89°32'13"W, a distance of 17.33 feet; thence S00°27'47"E, a distance of 12.33 feet to the point-of-beginning.

Building #7 Unit 103

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, public records of Brevard County, Florida, and being more particularly described as follows:

Commence at the Southwest corner of aforesaid Section 11, Township 24 South, Range 36 East (Department of Natural Resources Certified Section Corner No. 22981 C); thence N00° 27'47"W, along the West line of said Section 11, a distance of 126.39 feet to a 5/8 inch iron rod stamped D.O.T marking the intersection of the North right-of-way line of Marine Harbor Drive at the Southwest corner of the lands as described in Official Records Book 6890, Page 2520, aforesaid public records of Brevard County, Florida; thence continue N00°27'47"W, along said West line of Section 11, a distance of 157.74 feet; thence N89°32'13"E, perpendicular to said line, a distance of 131.33 feet to the point-of-beginning; thence continue N89°32'13"E, a distance of 52.67 feet; thence N00°27'47"W, a distance of 21.00 feet; thence S89°32'13"W, a distance of 70.00 feet; thence S00°27'47"E, a distance of 12.33 feet; thence N89°32'13"E, a distance of 17.33 feet; thence S00°27'47"E, a distance of 8.67 feet to the point-of-beginning.

Building #8 Unit 101

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, public records of Brevard County, Florida, and being more particularly described as follows:

Commence at the Southwest corner of aforesaid Section 11, Township 24 South, Range 36 East (Department of Natural Resources Certified Section Corner No. 22981 C); thence N00° 27'47"W, along the West line of said Section 11, a distance of 126.39 feet to a 5/8 inch iron rod stamped D.O.T marking the intersection of the North right-of-way line of Marine Harbor Drive at the Southwest corner of the lands as described in Official Records Book 6890, Page 2520, aforesaid public records of Brevard County, Florida; thence continue N00°27'47"W, along said West line of Section 11, a distance of 121.74 feet; thence N89°32'13"E, perpendicular to said line, a distance of 114.00 feet to the point-of-beginning; thence continue N89°32'13"E, a distance of 70.00 feet; thence N00°27'47"W, a distance of 21.00 feet; thence S89°32'13"W, a distance of 52.67 feet; thence S00°27'47"E, a distance of 8.67 feet; thence S89°32'13"W, a distance of 17.33 feet; thence S00°27'47"E, a distance of 12.33 feet to the point-of-beginning.

Building 8 Unit 104

A PARCEL OF LAND LYING IN SECTION 11, TOWNSHIP 24 SOUTH, RANGE 36 EAST, TALLAHASSEE BASE MERIDIAN, BREVARD COUNTY, FLORIDA, BEING A PART OF THE LANDS AS DESCRIBED IN OFFICIAL RECORDS BOOK 6890, PAGE 2520, PUBLIC RECORDS OF BREVARD COUNTY, FLORIDA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE SOUTHWEST CORNER OF AFORESAID SECTION 11, TOWNSHIP 24 SOUTH, RANGE 36 EAST (DEPARTMENT OF NATURAL RESOURCES CERTIFIED SECTION CORNER NO. 22981 C); THENCE N00°27'47"W, ALONG THE WEST LINE OF SAID SECTION 11, A DISTANCE OF 126.39 FEET TO A 5/8 INCH IRON ROD STAMPED D.O.T MARKING THE INTERSECTION OF THE NORTH RIGHT-OF-WAY LINE OF MARINE HARBOR DRIVE AT THE SOUTHWEST CORNER OF THE LANDS AS DESCRIBED IN OFFICIAL RECORDS BOOK 6890, PAGE 2520, AFORESAID PUBLIC RECORDS OF BREVARD COUNTY, FLORIDA; THENCE CONTINUE N00°27'47"W, ALONG SAID WEST LINE OF SECTION 11, A DISTANCE OF 59.41 FEET; THENCE N89°32'13"E, PERPENDICULAR TO SAID LINE, A DISTANCE OF 131.33 FEET TO THE POINT-OF-BEGINNING; THENCE CONTINUE N89°32'13"E, A DISTANCE OF 52.67 FEET; THENCE N00°27'47"W, A DISTANCE OF 21.00 FEET; THENCE S89°32'13"W, A DISTANCE OF 70.00 FEET; THENCE S00°27'47"E, A DISTANCE OF 12.33 FEET; THENCE N89°32'13"E, A DISTANCE OF 17.33 FEET; THENCE S00°27'47"E, A DISTANCE OF 8.67 FEET TO THE POINT-OF-BEGINNING.

CONTAINING 1319.8 SQUARE FEET, MORE OR LESS, AND BEING SUBJECT TO ANY EASEMENTS AND/OR RIGHTS-OF-WAY OF RECORD.

# EXHIBIT 89

---

In re Homemakers Real Estate, LLC
Case No. 6:25-bk-02685-GER (Bankr. M.D. Fla.)

**Doc. 89, filed May 11, 2026**

Motion to Vacate Order Dismissing Case Pursuant to Federal Rule of Civil Procedure 60(b)(3) Based on Newly-Disclosed Misrepresentation by Kenneth G. Dixon

*Horton Johnson*

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re: Case No. 6:25-bk-02685-GER
Chapter 11

**HOMEMAKERS REAL ESTATE, LLC,**

Debtor.
_______________________________/

## MOTION TO VACATE ORDER DISMISSING CASE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)(3) BASED ON NEWLY-DISCLOSED MISREPRESENTATION BY KENNETH G. DIXON

Mr. Horton S. Johnson, by and through undersigned counsel, moves this Court under Federal Rule of Civil Procedure 60(b)(3), made applicable to this case by Federal Rule of Bankruptcy Procedure 9024, to vacate the Order Dismissing Case (Doc. 73) entered June 27, 2025. The Order rests on Mr. Kenneth G. Dixon's under penalty of perjury representation that the January 9, 2024 Assignment of Membership Units was an absolute, "total" transfer with "no return to Johnson."[1]

---

[1] Mr. Timko — speaking for PEDIXON LLC and ZPD LLC — repeatedly represented to the Court, on the record, that the January 9, 2024 Assignment was a complete and final transfer of Mr. Johnson's entire membership interest, expressly disclaiming any security or collateral characterization. These representations heralded and augmented the "total/no return" characterization that Mr. Dixon later declared to in Doc. 69, and they are flatly <u>inconsistent</u> with Mr. Timko's May 5, 2026 representation that the Assignment "would have been returned" upon repayment. Specifically, Mr. Timko stated:

> **Hearing Tr. 19:6–10:** *"Mr. Johnson assigned his interest in the Debtor, and that's the assignment that's at issue today, ... in it he assigns all of his rights, title, and interest in the Debtor as the sole member."*

> **Id. at 21:11–18:** *"the signed assignment dated January 9th, 2024, states that he is, quote, the sole owner and holder of all the issued and outstanding membership units of the Debtor, unquote. And he*

On May 5, 2026, Mr. James A. Timko, Esq, as counsel for Mr. Dixon and his affiliated entities —— disavowed Mr. Dixon's earlier representation, confirming instead that Homemakers Membership Units, "would have been returned" upon repayment of the underlying obligation.[2] (Exhibit A)(response to Civil Theft

---

*does now assign to the Trust all of my right, title, and interest in all issued and outstanding membership interests of the Debtor."*

**Id. at 21:19–25:** *"In other words, he transferred his entire transferable interest as the sole member and is no longer a member of the entity, because even under the statute cited to by Mr. Wolff in his response, he was disassociated under Section 605.0602 of the Florida statutes. And that language is not ambiguous ... ."*

**Id. at 22:11–13:** *"Under Olmstead, an assignment, quote, is accomplished through a simple assignment of the sole member's interest to the transferee, unquote."*

**Id. at 22:15–19:** *"Mr. Johnson having assigned his right and title interest in the Debtor would not have a percentage interest to vote, and therefore he didn't have authority to place the entity into bankruptcy."*

**Id. at 42:13–16:** *"Mr. Johnson assigned all of his -- his transferable rights to the Trust. So Mr. Johnson no longer has anything. The beneficial interest was gone, and the property was gone."*

**Id. at 43:4–11:** *"What we have is an agreement to temporarily forebear. Mr. Johnson walked away from his — all of his interest in Homemakers. ... Mr. Johnson's voting rights were lost when there's been a transfer of the person's entire [transferable interest] in the company."*

**Id. at 43:12–14:** *"There's no evidence anywhere, there's no document anywhere, that this was for a security purposes. There is evidence that it was for a forbearance purposes."*

**Id. at 43:20–24:** *"And the fact that it wasn't in the initial collateral package, and it was a separate deal with Mr. Johnson, underlines that this was a full and complete assignment. Mr. Johnson has no rights to control anymore of the property."*

**Id. at 44:20–22:** *"Mr. Johnson owns nothing and doesn't have the right to control Homemakers."*

**Id. at 45:13–14:** *"But Mr. Johnson is out of the picture. He assigned his entire interest."*

**Id. at 46:7–9:** *"Mr. Johnson's out of the picture is my point. The Trust controls Homemakers."*

**Id. at 48:15–19:** *"I don't believe that you can have an oral mortgage on property. ... they're claiming that this is some sort of oral collateral agreement, which it wasn't. It was an assignment of the interest in the — in the entity."*

**Id. at 49:8–14:** *"It's assigned to the Trust, and Homemakers is the — not Mr. Johnson — is the beneficiary of the Trust ... . So Mr. Johnson didn't have the right to put this entity into bankruptcy."*

[2] Dixon lent $11,225,000 to six entities by September 2023, and the evidence shows Dixon received in-cash or in-kind $11,363,595 plus all fees and interest due by December 2023_in other words, Dixon's claims were fully

Letter). As grounds for vacating this Court's Dismissal Order. (Doc. 73). Mr. Johnson states the following.

**Although a Motion to Vacate (Doc. 88) is pending, this Motion stands on its own grounds; the Court may rule on it together with the pending Motion to Vacate (Doc. 88) or separately.**

The Motion to Vacate filed at Doc. 88 on March 26, 2026 is presently before this Court under Federal Rules of Civil Procedure 60(b)(1) and 60(d)(3) and is fully briefed.

This Motion is independent of Doc. 88. It rests on Federal Rule of Civil Procedure 60(b)(3) on grounds that did not exist when Doc. 88 was filed. The May 5, 2026 letter from Mr. Timko post-dates Doc. 88 by approximately six weeks.

The Court may rule on this Motion separately or in conjunction with Doc. 88 on whatever procedural schedule it finds most efficient. Mr. Johnson seeks vacatur on either path.

**The dismissal order turned on Ken Dixon's factual representation made after Homemakers presented a statutory-mortgage theory to support Horton Johnson's authority to have Homemakers file a Chapter 7. The factual statement (made under) penalty of perjury has now been disavowed by Respondents' own counsel.**

---

satisfied by the end of 2023. If the May 5, 2026 letter is taken at face value, Homemakers should be returned. (Exhibit D)(Reports on Dixon loans and Payments).

On May 5, 2025, Homemakers Real Estate, LLC, filed a voluntary Chapter 11 petition signed by Mr. Johnson as sole member. The docket sequence that followed is dispositive.

May 8, 2025 — Doc. 12. PEDIXON LLC and ZPD LLC (collectively, with Mr. Kenneth G. Dixon, "Respondents"), through Mr. Timko, filed the Motion to Dismiss Bankruptcy Case for Lack of Corporate Authority. The motion argued that a January 9, 2024 Assignment of Membership Units conveyed "all of [Mr. Johnson's] right, title and interest" as a matter of document interpretation.

May 23, 2025 — Doc. 24. The Debtor, through Mr. Frank M. Wolff, Esq., filed its Response. At paragraphs 24 through 26, Mr. Wolff raised the alternative theory that the Assignment, regardless of its facial form, operated as a security device, citing Fla. Stat. § 605.0602(5)(b)(1) (the "transfer for security purposes" carve-out from dissociation) and In re Windham Power Lifts, Inc., 91 B.R. 595 (Bankr. M.D. Ala. 1988).

June 11, 2025 — Hearing (Doc. 63). Mr. Wolff read Fla. Stat. § 697.01 verbatim into the record. (Doc. 63) (Hearing Tr. at 35:5–15 (June 11, 2025)). He read Fla. Stat. § 697.02 into the record. (Id. at 35:19–22). He cited the security-purposes carve-out at § 605.0602(5)(b)(1). (Id. at 36:16–20). He cited Windham Power Lifts. (Id. at 41:14–15). He invoked the equity-of-redemption doctrine. Id.

at 39:17–24. He articulated the form-versus-substance principle. (Id. at 38:9–12). The Court directed the parties to file supplemental pleadings.

June 24, 2025 — Doc. 69. Thirteen days after the hearing, and six and a half weeks after the original Motion to Dismiss, Respondents through Mr. Timko filed the Supplemental Pleading in Support of Motion to Dismiss. Embedded in it, for the first time anywhere on the docket, was Mr. Dixon's verified declaration. Mr. Dixon swore at paragraphs 11 through 14 that the January 9, 2024 Assignment was "total" and "absolute," with "no return to Johnson" upon any event. Mr. Dixon's verified statement was made with full knowledge that Mr. Wolff had, two weeks earlier, placed § 697.01 and the security-characterization theory directly before the Court.

August 26, 2025 — Doc. 85. The Court entered the Order Denying Motion to Reconsider. It held that the Assignment "…the trustee of the Tiered Land Trust was the only person with authority to direct Homemakers to file a bankruptcy petition..." Doc. 73, p. 4. It held further: "Debtor has not cited to any other law that would support its contention that the Assignment did not convey all rights attendant to the Membership Units that were conveyed to the Land Trust." (Id. at n. 22)((Inskeep v. Baccus Global, LLC, 2024 WL 416357 (S.D. Fla. Feb. 5, 2024), and Olmstead v. F.T.C., 44 So. 3d 76 (Fla. 2010)) Together these cause the Court totreat the absolute-transfer characterization as established.

May 5, 2026 — (Exhibit A)(the Timko letter). Mr. Timko, the same lawyer who prepared and filed the Doc. 69 supplemental pleading containing Mr. Dixon's verified declaration, sent Mr. Matthew A. Leibert, Esq., a letter on Dean Mead letterhead. The letter states that the January 9, 2024 Assignment "would have been returned" upon repayment of the underlying obligation. (Exhibit A). That representation cannot coexist with Mr. Dixon's "total/no return" verified statement. One of the two is a misrepresentation of Mr. Dixon's actual state of mind on January 9, 2024.

**Frank M. Wolff, Esquire raised the equitable-mortgage and security-assignment theory at the June 11, 2025 hearing, on the record, with statutory and case-law citations.**

The legal theory Dixon now advances to avoid civil theft liability — is that the January 9, 2024 Assignment operated as a security device subject to recharacterization under Fla. Stat. § 697.01 as a mortgage. The concept is not new. Homemakers raised it previously and it was briefed in part at Doc. 24 ¶¶ 24–26, argued orally on the record at the June 11, 2025 hearing (Doc. 63)(Id), and rejected primarily because the record contained an under penalty of perjury statement from Mr. Dixon that his understanding of the transfer was different, that the assignment was absolute). Such an admission, by Respondents or their counsel then. That the parties intended the Assignment as a defeasance device, should have altered the results of the motion to dismiss.

The transcript—of—the June 11, 2025 hearing establishes that Mr. Wolff raised the theory with specificity:

First, Mr. Wolff read Fla. Stat. § 697.01 verbatim into the record: "All conveyances, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money . . . shall be deemed and held mortgages." (Id. at 35:5–15).

Second, Mr. Wolff read Fla. Stat. § 697.02 into the record: "A mortgage shall be held to be a specific lien on the property therein described, and not a conveyance of the legal title or the right of possession." (Id. at 35:19–22).

Third, Mr. Wolff cited Fla. Stat. § 605.0602(5)(b)(1)'s "transfer for security purposes" carve-out: "Well, this is a transfer for security purposes. Mr. Timko's argument makes that clear. They had a Loan Agreement. They needed another $750,000. So they set up this Trust to further secure that obligation." (Id. at 36:16–20.)[3]

Forth, Mr. Wolff articulated the form-versus-substance principle: "even if the instrument looks like a deed, if it is secured property, that is a mortgage, and that's the reason the mortgage statute exists." (Id. at 38:9–12).

[3] Mr. Timko's rebuttal at the same hearing reinforced the absolute-transfer characterization he now disavows: "Mr. Johnson made a deal with my clients that he would assign all of his interests in Homemakers, okay, which he did. It's not a dispute anymore. So he assigns all of his interests in Homemakers. Mr. Johnson is not a beneficiary under the Trust. Homemakers is … and Mr. Johnson assigned all of his — his transferable rights to the Trust. So Mr. Johnson no longer has anything. The beneficial interest was gone, and the property was gone." Tr. at 42:6–16.

**The Court rejected Mr. Wolff's theory because the face of the Assignment recited an absolute, unconditional transfer and the record contained no admission of contrary intent.**

The Assignment of Membership Units dated January 9, 2024 recites that Mr. Johnson "do[es] now assign the following . . . all of my right title and interest in and to all of the issued and outstanding membership units of Homemakers Real Estate LLC." (Exhibit B). It contains no defeasance or reversionary clause. It does not reference an underlying debt. It does not reserve a right of return upon repayment.

Now, Mr. Timko argues (contrary to his earlier position) that Florida law recharacterizes such an instrument as a mortgage where the parties intended it to secure a debt. Fla. Stat. § 697.01(1). But the recharacterization analysis turns on the parties' intent — a fact question. *Marina Funding Group v. Peninsula Property Holdings*, 950 So. 2d 428, 428 (Fla. 4th DCA 2007) ("[t]he form of an instrument is not controlling"). Without admissions or extrinsic evidence of contrary intent, a court applying § 697.01 to a facially absolute instrument is left with only the four corners. That is precisely the posture in which the June 27, 2025 Order issued.

**At the Court's behest, under penalty of perjury, Mr. Dixon's declared the assignment was an absolute transfer made as payment for a forbearance of collection action. If Dixon had declared otherwise adversarial testing would have been required to ascertain Dixon's intent and understanding.**

On June 24, 2025, Respondents filed a Supplemental Pleading in support of dismissal (Doc. 69), attaching the sworn Declaration of Kenneth G. Dixon (the *"Dixon Declaration"*)(Id at Exhibit C). The same Declaration was refiled in 6:25-bk-05570-GER as Exhibit "A" to Doc. 7. The Dixon Declaration provides:

> *¶ 12. "At this meeting, Mr. Amodeo suggested that Mr. Johnson would be willing to relinquish all interest in Homemakers to obtain a forbearance of legal action under and enforcement of Mr. Johnson's personal guaranty. ... The parties agreed that the Assignment would be a total assignment of the interests with no return to Johnson."*
>
> *¶ 13. "On January 9, 2024 ... Johnson executed the Assignment and in exchange therefor, PEDIXON LLC agreed to a six (6) month forbearance of the Loan."*
>
> *¶ 14. "I decided that the interests in Homemakers would be held in the Trust because it was a total assignment and the Trust would own Homemakers ...."*

Mr. Dixon made those statements under penalty of perjury. The logic behind the Court finding Mr. Johnson lacked authority relied on these statements, that is, when finding that the Assignment transferred ownership of Homemakers to the so-called Tiered Land Trust dated September 13, 2023, the Court presumed the Assignment was absolute.

**Mr. Timko's prior briefing adopted the same characterization.**

Mr. Timko, as counsel for Respondents, repeatedly adopted and reinforced Mr. Dixon's characterization in his own briefing. (Supra at n.1) The most direct

restatement appears in Respondents' *Objection to Tiered Capital, Inc.'s Motion for Reconsideration of the June 27, 2025 Order Dismissing Case* (Doc. 79,p. 1).

> *" Mr. Dixon also confirmed the assignment was a total assignment of Mr. Johnson's interest and thus, not to be returned upon satisfaction of the loan."*

Mr. Timko made the same representation in his *Reply in Support of Motion to Dismiss for Lack of Corporate Authority* (Doc. 35 at 1). He described the assignment as transferring *"all of [Johnson's] 'right, title and interest' in the Debtor and 100% of the profits to the Trust"* so that *"the Trust is the sole member."* In footnote 2, of that same reply, Mr. Timko explained the Assignment's consideration as *"a brief forbearance with respect to suing on Mr. Johnson's guaranties."* (Id at n.2).Mr. Timko has continued the same characterization in subsequent filings in the related cases. *See, e.g.,* In re Homemakers Real Estate, LLC, 6:25-bk-05570-GER (Docs. 19, 184, 188).

**On May 5, 2026, in staving off civil theft penalties, Respondents' counsel admitted that his Dixon-related clients had a contrary intent, then articulated in the bankruptcy proceedings. Specifically, they only intended to hold the Homemakers units as collateral to ensure others paid debts to the Dixon lenders. That admission was intentionally missing from the June 11, 2025 record in order to avoid the conclusion that Johnson could authorize the bankruptcy.**

The May 5, 2026 letter from Mr. Timko states that the January 9, 2024 Assignment "would have been returned" upon repayment of the underlying obligation. (Exhibit A).

That admission cannot be reconciled with Mr. Dixon's verified statement that the Assignment was "total" with "no return to Johnson." (Doc. 69 ¶¶ 11–14). One of the two statements is a misrepresentation of Mr. Dixon's actual state of mind on January 9, 2024. The May 5, 2026 admission is the one that places the Assignment within § 697.01's express ambit.

The May 5, 2026 admission is as binding on Mr. Dixon and on PEDIXON LLC and ZPD LLC as Mr. Dixon's own declarations. Mr. Timko was authorized counsel acting within the scope of his representation. FRE 801(d)(2)(B) and (D); Hanson v. Waller, 888 F.2d 806, 814 (11th Cir. 1989) (holding that statements made by an attorney within the scope of his employment may be admissible against the party retaining the attorney).

**Had Mr. Dixon's admission been on the record at the June 11, 2025 hearing, the Court would either have ruled for the Debtor on Mr. Wolff's preserved equitable-mortgage theory, or at a minimum would have been required to convene an evidentiary hearing on the absolute-versus-conditional question.**

The premise of the dismissal was that the record contained no support for Mr. Wolff's contention that the Assignment did not convey "all rights." (Doc. 73,

p. 4). The May 5, 2026 letter is exactly that support, from the most authoritative possible source — Respondents' own counsel.

If the record is corrected to include Mr. Dixon's newly admitted intent, two outcomes are possible on the corrected record. Both foreclose dismissal.

Initially the Court would have applied Fla. Stat. § 697.01 and recharacterized the Assignment as a security device. Under § 697.02, a mortgage "shall be held to be a specific lien . . . and not a conveyance of the legal title." Under Fla. Stat. § 605.0602(5)(b)(1), a "transfer for security purposes" does not dissociate the member. Under Fla. Stat. § 605.0502(3)(a), even an absolute transfer of a transferable interest does not entitle the transferee to manage. Under Article 9 of the Florida UCC, Fla. Stat. § 679.1091(1)(a), Chapter 679 applies to any "transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract." In such a transaction, the secured party holds only a security interest, and may obtain ownership of the collateral, if at all, only through a commercially reasonable disposition after default under §§ 679.610–.614, following the notice requirements of § 679.611, or through a valid acceptance of collateral in full or partial satisfaction under § 679.620. None of those Article 9 remedies occurred On any of these statutory paths, Mr. Johnson remained the member with authority to sign the Resolution authorizing the bankruptcy filing.

Alternatively, at a minimum, a contemporaneous Respondent admission of conditional assignment intent would have made an evidentiary hearing on the absolute-versus-conditional question mandatory. Courts do not resolve § 697.01 recharacterization disputes on the four corners of the instrument when the parties' intent is contested by record evidence. The Court could not, on the corrected record, have applied Olmstead Inskeep substitution as a matter of law.

Either path forecloses the dismissal that issued. The Dismissal Order cannot stand on the corrected record. (Doc. 73).

The strategic timing of Mr. Dixon's verified declaration sharpens the Rule 60(b)(3) analysis. Mr. Dixon did not swear the "total/no return to Johnson" representation before the legal stakes were known. He swore it on June 24, 2025,thirteen days after Mr. Wolff read § 697.01 verbatim into the record at the June 11, 2025 hearing, after Mr. Wolff invoked the equity-of-redemption doctrine, and after the Court had ordered supplemental briefing on the precise question Mr. Wolff's theory raised. The verified statement was filed in direct response to a live, articulated, on-the-record contention that the transaction was a security device. A verified representation made under those circumstances — targeting the one factual element § 697.01 turns on, with full knowledge of materiality — is not a careless paraphrase. It is a precision-targeted denial of the truth, made to procure a favorable ruling on a contested legal theory. That the "absolute transfer" is a self-

serving, post hoc idea that is now supported by the contrary admission in response to civil theft allegations.

**The evidentiary hearing the Court would have been required to convene calls Mr. Kenneth G. Dixon and Mr. Frank L. Amodeo.**

The two witnesses are the ones that Mr. Dixon purports discussed the purpose of any Johnson assignment of Homemakers. (Doc 69 at 9-10). The two witnesses are necessary for the absolute-versus-conditional question, both witnesses stand ready to testify.

Mr. Kenneth G. Dixon. Mr. Dixon is the principal of PEDIXON LLC and ZPD LLC. He is the author of the verified declaration at Doc. 69 ¶¶ 11–14, in which he swore the Assignment was "total" with "no return to Johnson." He is the client whose counsel, on May 5, 2026, wrote that the Assignment "would have been returned" upon repayment. Both statements cannot be true. Mr. Dixon's testimony — under oath, subject to cross-examination — is the only direct evidence of his state of mind on January 9, 2024.

Mr. Frank L. Amodeo. Mr. Amodeo is not merely a witness to the January 9, 2024 transaction. Amodeo was a participant in it. He reviewed the documents Respondents' counsel presented to Mr. Johnson and rejected them as facially deficient since the documents would have caused Johnson to transfer Homemakers to Dixon. Amodeo told Pitkanen (counsel for both Mr. Dixon and Mr. Johnson)

that revisions had to be made before Mr. Johnson could sign. Pitkanen agreed to make those changes in order to protect Johnson's interest. Hence, Amodeo is a percipient witness to the parties' contemporaneous understanding of the transaction's purpose and to the negotiated exchanges that bear on intent under § 697.01.Particularly, since Pitkanen's changes apparently failed to accomplished what Pitkanen purported the changes would do.

**Rule 60(b)(3) authorizes vacatur where dismissal is procured by misrepresentation of a material fact, and that standard is met here.**

Federal Rule of Civil Procedure 60(b)(3) authorizes vacatur for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Federal Rule of Bankruptcy Procedure 9024 makes Rule 60 applicable to this case. The motion is timely under Rule 60(c)(1); the one-year period runs from June 27, 2025 and expires June 27, 2026.

The standard requires the moving party to prove by clear and convincing evidence that "the adverse party obtained the verdict through fraud, misrepresentation, or other misconduct" and that "the conduct prevented the losing party from fully and fairly presenting his case." Cox Nuclear Pharmacy, Inc. v. CTI, Inc., 478 F.3d 1303, 1314 (11th Cir. 2007). Both elements are satisfied.

The misrepresentation. Mr. Dixon's verified declaration at Doc. 69 ¶¶ 11–14 — that the Assignment was "total" with "no return to Johnson" — was a

misrepresentation of material fact. Respondents' own counsel has now admitted, in writing, that the Assignment "would have been returned" upon repayment. (Exhibit A). The admission disavows the Respondents' earlier characterization as "total." (Id).

The materiality. The misrepresentation was material. It was the precise factual representation on which the Court rested the absolute-transfer premise. (Doc. 73, pp. 2, 4 and n. 22). Without it, the Olmstead/Inskeep substitution rule has no purchase. With it, the substitution rule is dispositive.

The prevention of full and fair presentation. The misrepresentation prevented the Debtor from fully and fairly presenting its case. Mr. Wolff raised the equitable-mortgage theory at the June 11, 2025 hearing. The Court rejected the theory because the record contained no admission of contrary intent. Mr. Dixon's true state of mind — now established by his own counsel — was the missing piece. Had it been disclosed truthfully, Mr. Wolff's theory should have prevailed. But if not granted immediately, then the presentation would have triggered the need for an evidentiary hearing ,where the parties true intent could have been gleaned.

**Footnote 22 of the Order Dismissing Case does not bar this Motion.**

Respondents may argue that Mr. Wolff's on-the-record concession at the June 11, 2025 hearing — that "for purposes of this hearing . . . [Trustee] ha[s] a lien on the stock," Tr. at 40:7–9 — forecloses challenge to the absolute-transfer

characterization. It does not, because if Messrs. Timko and Dixon had told the truth and disclosed Dixon's true intent, then there would have been no concession.

Anyway, Mr. Wolff's concession was, by its own terms, "for purposes of this hearing" and was framed as a concession of execution and lien — i.e., a security characterization, not an absolute-transfer characterization. (Tr. at 34:13–14, 40:7–9). He preserved the legal-effect contest throughout, repeatedly invoking § 697.01 and § 605.0602(5)(b)(1).

Furthermore, Rule 60(b)(3) targets misrepresentations of fact by the adverse party, not procedural concessions by the moving party. A litigant's concession on a hearing record cannot insulate an opposing party's verified misrepresentation from later challenge under Rule 60(b)(3).

Nor does the "could have been raised earlier" rule apply. The May 5, 2026 letter post-dates the June 27, 2025 dismissal by more than ten months. The factual predicate for this Motion was not available at the time of the dismissal, because Mr. Timko and Mr. Dixon fabricated a different explanation, which served them better. Thus, the true intent could not have been raised earlier.

The May 5, 2026 letter now supports Homemakers' original legal theory that the assignment was an equitable mortgage under § 697.01 —an argument raised at the June 11, 2025 hearing.

**The May 5, 2026 letter is admissible as a statement of a party-opponent and as impeachment of Mr. Dixon's verified declaration.**

The May 5, 2026 letter is admissible against Respondents as a statement of a party-opponent. FRE 801(d)(2)(B) (statement adopted by the party); FRE 801(d)(2)(D) (statement by the party's agent on a matter within the scope of the agency). Mr. Timko is the attorney of record for Crescent Sound, Ltd., PEDIXON LLC, and ZPD LLC in this case and the related cases. His statement on Dean Mead letterhead about the very transaction at the heart of the dismissal is well within the scope of his representation. Mr. Timko's agency is strengthened by the fact that the same lawyer — Mr. Timko — who prepared and filed the Doc. 69 supplemental pleading containing Mr. Dixon's verified declaration, is the lawyer who, on May 5, 2026, wrote the contradicting letter on Mr. Dixon's behalf. The May 5, 2026 admission is therefore not merely a party-opponent admission; it is an admission by the same agent who prepared and filed the verified statement now being disavowed. (Bankr. R. 9011).

The letter is also admissible as impeachment of Mr. Dixon's verified declaration under FRE 613(b).

The settlement-privilege rule of FRE 408 does not bar admission. FRE 408 bars the use of compromise offers to prove the validity or amount of a disputed claim. The May 5, 2026 letter is offered for an impeachment and recharacterization

purpose, not to prove liability or amount of claim — the express carve-out under FRE 408(b).

## RELIEF REQUESTED

For the reasons stated, Mr. Horton S. Johnson respectfully requests that this Court:

1. Vacate the Order Dismissing Case (Doc. 73, Case No. 6:25-bk-02685-GER) entered June 27, 2025, pursuant to Federal Rule of Civil Procedure 60(b)(3) made applicable by Federal Rule of Bankruptcy Procedure 9024;

2. Reinstate the voluntary Chapter 11 case;

3. Consolidate all three bankruptcy filings and appoint a Chapter 11 trustee (presumably Arvind Mahendru).

4. Convene an evidentiary hearing on whether the January 9, 2024 Assignment of Membership Units was an absolute transfer or a conditional collateral assignment, with Mr. Kenneth G. Dixon and Mr. Frank L. Amodeo as witnesses;

5. In the alternative, rule on this Motion together with the pending Motion to Vacate (Doc. 88) on whatever procedural schedule the Court finds most efficient; and

6. Grant such further relief as the Court deems just and proper.

Respectfully submitted this 10th day of May, 2026,

/s/ Matthew A. Leibert
Matthew A. Leibert, Esq.
Florida Bar No. 0752266
5782-A South Semoran Boulevard
Orlando, Florida 32822
Telephone: (407) 245-8352
Facsimile: (407) 245-8361
Email: [illegible]
*Counsel for Movant Horton Johnson*

## EXHIBITS

Exhibit A — Letter from Mr. James A. Timko, Esq., to Mr. Matthew A. Leibert, Esq., dated May 5, 2026.

Exhibit B — Assignment of Homemakers Membership Units to the Tiered Land Trust.

Exhibit C —Verified Declaration of Mr. Kenneth G. Dixon (Doc. 69),

Exhibit D—Dixon Repayment Report.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 10th, 2026, I electronically filed the foregoing with the Clerk of Court through the CM/ECF system.

/s/ Matthew A. Leibert

MATTHEW A. LEIBERT, Esquire