FILED ORL INTAKE - USBC
10 SEP 2026 AM8:54

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

Homemakers Real Estate, LLC,

Case No. 6:25-bk-05570-GER
Chapter 11

Debtor.
_______________________________________/

## NOTICE OF FILING DOCUMENTS FROM CASE NO. 6:25-BK-02685-GER

On September 1, 2026 this court granted in part the motion to supplement the record on appeal and directed that, within fourteen days, Frank L. Amodeo file notices of filing of any documents from the First Case not yet included in a pleading filed in this case, together with an amended designation. (Doc. 376 at 2). The sixteen documents attached to this notice are filed for that purpose. Every First Case item identified in the motion to supplement is attached except the two transcripts, which are addressed below.

**None of the eighteen items has been filed in this case as a complete document.**

Three appear here, but only as fragments inside exhibit compilations. Page 11 of the twelve-page Motion to Dismiss Case for Lack of Corporate Authority is reproduced three times, always alone. (Docs. 48-4 at 17, 48-7 at 24, 290 at 79). Pages 8 through 10 of the fourteen-page Supplement to Pleading in Support of that motion appear in the appendix to the motion to consolidate. (Doc. 241 at 23-25). Pages 15 and 16 of the twenty-one-page Omnibus Response appear in the

sanctions motion. (Doc. 290 at 83-84). One page of a twelve-page motion is not the motion. A district court reading the order on appeal should not have to reconstruct the corporate-authority litigation from three excerpts chosen for other purposes.

Two of the items were filed in both cases on the same day, and their counterparts already carry numbers on this docket. The Motion for an Evidentiary Hearing on the Court's Subject-Matter Jurisdiction Over the Pedixon and ZPD Claims is Doc. 102 there and Doc. 306 here. The Bench Memorandum on Deciding Subject-Matter Jurisdiction First is Doc. 104 there and Doc. 307 here. Both are attached in their First Case form, so that the record shows what each docket received.

**The attached documents are the litigation the order on appeal rests upon.**

The order on appeal holds that this court has the power to allow or disallow the claims of PEDixon, LLC and ZPD, LLC. (Doc. 344 at 2). Those parties put this court's authority over this debtor in issue on May 8, 2025, in the First Case, and the briefing that followed, the hearing on it, and the order that ended it are the documents attached here. The order entered the same day as the order on appeal denies consolidation because the First Case remains dismissed and closed, and its footnote 2 cites the order at Doc. 107 of that case. (Doc. 345 n.2). An appellate court asked whether this court may decide the claims of these parties should be

able to read what this court decided about these parties, and the order it relied on when it wrote that it had.

**The two transcripts are identified rather than refiled.**

Doc. 63 in the First Case is the transcript of the June 11, 2025 hearing, and Doc. 112 is the transcript of the July 14, 2026 hearing. Neither is attached. Access to Doc. 112 is restricted through November 16, 2026, and each is already a docket entry of a case of this court. Amodeo asks that both be transmitted with the record by the clerk rather than reproduced on this docket, and the amended designation identifies them for that purpose.

The designation filed August 28, 2026 gave the date of Doc. 63 as September 22, 2025. That is the date its access restriction expired. The transcript was filed June 23, 2025, and the amended designation states it correctly.

**DOCUMENTS FILED WITH THIS NOTICE**

Exhibit 12 — Doc. 12, filed May 8, 2025. Motion to Dismiss Case for Lack of Corporate Authority (PEDixon, LLC and ZPD, LLC). Twelve pages.

Exhibit 24 — Doc. 24, filed May 23, 2025. Response to Motion to Dismiss Bankruptcy Case for Lack of Corporate Authority (Debtor), with Exhibits A through F (Docs. 24-1 through 24-6). Forty-three pages in seven documents.

Exhibit 35 — Doc. 35, filed June 3, 2025. Reply in Support of Motion to Dismiss Bankruptcy Case (PEDixon, LLC and ZPD, LLC). Four pages.

Exhibit 58 — Doc. 58, filed June 11, 2025. Hearing Proceeding Memorandum, hearing held June 11, 2025. Two pages.

Exhibit 69 — Doc. 69, filed June 24, 2025. Supplement to Pleading in Support of Motion to Dismiss Bankruptcy Case for Lack of Corporate Authority (PEDixon, LLC and ZPD, LLC). Fourteen pages.

Exhibit 70 — Doc. 70, filed June 24, 2025. Supplement to Debtor's Response to Motion to Dismiss Bankruptcy Case for Lack of Corporate Authority (Debtor). Six pages.

Exhibit 73 — Doc. 73, entered June 27, 2025. Order Dismissing Case. Five pages.

Exhibit 88 — Doc. 88, filed March 26, 2026. Motion to Vacate Order Dismissing Case Pursuant to Federal Rules of Civil Procedure 60(b)(1) and 60(d)(3) (Horton Johnson). Twenty-eight pages.

Exhibit 89 — Doc. 89, filed May 11, 2026. Motion to Vacate Order Dismissing Case Pursuant to Federal Rule of Civil Procedure 60(b)(3) Based on Newly-Disclosed Misrepresentation by Kenneth G. Dixon (Horton Johnson). Thirty-three pages.

Exhibit 93 — Doc. 93, filed June 2, 2026. Omnibus Response to Motion to Vacate Order Dismissing Case (PEDixon, LLC and ZPD, LLC). Twenty-one pages.

Exhibit 94 — Doc. 94, filed June 5, 2026. Reply in Support of the Motions to Vacate (Docs. 88 and 89) and in Response to the Objection of PEDixon LLC and ZPD LLC (Doc. 93) (Horton Johnson). Thirteen pages.

Exhibit 95 — Doc. 95, filed June 9, 2026. Hearing Proceeding Memorandum, hearing held June 9, 2026. One page.

Exhibit 102 — Doc. 102, filed July 6, 2026. Motion for an Evidentiary Hearing on the Court's Subject-Matter Jurisdiction Over the Pedixon and ZPD Claims (Amodeo). Eight pages. Filed in this case the same day as Doc. 306.

Exhibit 104 — Doc. 104, filed July 14, 2026. Bench Memorandum on Deciding Subject-Matter Jurisdiction First and Disqualifying Pedixon, ZPD, and Crescent Sound From Participating (Amodeo). Thirteen pages. Filed in this case the same day as Doc. 307.

Exhibit 106 — Doc. 106, filed July 14, 2026. Hearing Proceeding Memorandum, hearing held July 14, 2026. Two pages.

Exhibit 107 — Doc. 107, entered July 21, 2026. Order Denying Motions (Related Docs. 88, 89). Two pages.

## TRANSCRIPTS IDENTIFIED FOR TRANSMITTAL

Doc. 63, filed June 23, 2025. Transcript, hearing held June 11, 2025. Transmittal requested.

Doc. 112, filed August 17, 2026. Transcript, hearing held July 14, 2026. Access restricted through November 16, 2026. Transmittal requested.

Nothing in this notice concedes that this court may adjudicate the claims of PEDixon, LLC or ZPD, LLC, and nothing in it is consent to an adjudication the Florida Legislature forbade. *Fla. Stat. § 687.071(7)*. All rights, objections, and defenses are reserved.

Respectfully submitted this 8th day of September, 2026.

Frank L. Amodeo
*Pro se*
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32809@gmail.com

## CERTIFICATE OF SERVICE

I certify that on the 8th day of September, 2026, I delivered this notice for filing to the Clerk of the United States Bankruptcy Court for the Middle District of Florida, Orlando Division. The clerk's CM/ECF entry serves every registered participant in this case.

Frank L. Amodeo

# EXHIBIT 12

In re Homemakers Real Estate, LLC
Case No. 6:25-bk-02685-GER (Bankr. M.D. Fla.)

**Doc. 12, filed May 8, 2025**

Motion to Dismiss Case for Lack of Corporate Authority

PEDixon, LLC and ZPD, LLC

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:

HOMEMAKERS REAL ESTATE, LLC,

Debtor.

CASE No. 6:25-bk-02685-GER
Chapter 11

**MOTION TO DISMISS BANKRUPTCY CASE FOR LACK OF CORPORATE AUTHORITY**

Creditors and Movants, PEDIXON LLC and ZPD, LLC (collectively "Movants"), by and through counsel, hereby moves the Court for entry of an Order Dismissing this Bankruptcy Case for Lack of Corporate Authority pursuant to section 1112(b)(1) of the Bankruptcy Code (the "Motion"), and in support of the Motion, respectfully states:

**PARTIES AND JURISDICTION**

1. On May 5, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. This is a core proceeding that the Court has jurisdiction over pursuant to 28 U.S.C. Section 157(b)(2)(A) and 28 U.S.C. Section 1334. Venue is proper pursuant to Sections 1408 and 1409. The relief requested is based upon Section 1112 of the Bankruptcy Code.

**PERTINENT BACKGROUND**

3. The Debtor commenced its business in or around December of 2008. The Debtor originally had two members, Horton Johnson, and Marty Flynn.

4. Mr. Flynn and Mr. Johnson signed an Operating Agreement effective December 15, 2008. Section 9 of the Operating Agreement requires the consent of all members to "cause the

company to file bankruptcy protection." A copy of the Operating Agreement is attached hereto as **Exhibit "A."**

5. On or about July 1, 2011, Mr. Flynn agreed to surrender his interest to Mr. Johnson, leaving Mr. Johnson as the sole member. **See Exhibit. B**.

6. The Debtor is a guarantor of certain loans owed to Movants, including a loan made to Tiered Capital, Inc. ("**TC**").

7. TC defaulted under its loan obligations and on January 9, 2024, Horton Johnson, the sole membership unit holder in Homemakers Real Estate, LLC, assigned to Crescent Sound, LTD., as Trustee of the Tiered Land Trust u/t/d 9/13/2023 (the "**Trust**") "all of my right title and interest in and to all of the issued and outstanding membership units of Homemakers Real Estate, LLC, a Florida limited liability company" (the "**Assignment**"). A copy of the Assignment is attached hereto as **Exhibit "C."**

8. On the Petition Date, the Debtor filed its Certificate of Authorization to File Bankruptcy Petition (Doc. No. 4) (the "**Certificate**"). Attached to the Certificate is a "Resolution of the Sole Member of Homemakers Real Estate, LLC (the "**Resolution**"). The Resolution is signed by Mr. Johnson as the "sole member" of the Debtor and is based on his alleged authority as sole member.

9. Due to the Assignment, the Trust is the sole member of the Debtor, not Mr. Johnson.

**RELIEF REQUESTED**

10. Section 1112(b)(1) of the Bankruptcy Code requires that a court shall dismiss a bankruptcy case for "cause." Several courts have held that "when a bankruptcy case is filed without the requisite authority, dismissal is mandated." In re Arista Imaging of N. Miami, LLC, 2020 WL 609613 * 11 (Bankr. S.D. Fla 2020) (multiple citations omitted).

11. In the Resolution, Mr. Johnson claims he had the authority to file this bankruptcy case because he is the sole member of the Debtor. However, that is not the case. The Trust is the sole member due to the Assignment. Under Florida law, and section 9 of the Operating Agreement, as sole member, only the Trust is authorized to file a bankruptcy petition and it is the Trustee who would execute such authorization. See Sec. 605.0401, Fla. Stat., Sec. 605.0407 (presumption that LLC's are member-managed); Sec. 605.04073, Fla. Stat. (voting rights are proportionate to membership interest).

WHEREFORE, Movant requests this bankruptcy case be immediately dismissed for cause and lack of corporate authority under section 1112(b)(1) of the Bankruptcy Code and for such other and further relief the Court deems just and proper.

DATED: May 8, 2025.

*/s/ James A. Timko*
James A. Timko, Esq.
Florida Bar No. 0088858
**DEAN, MEAD, EGERTON, BLOODWORTH, CAPOUANO & BOZARTH, P.A.**
420 S. Orange Avenue, Suite 700
Orlando, Florida 32801
Telephone: 407-841-1200
Facsimile : 407-423-1831
Email: jtimko@deanmead.com
***Counsel for Movants***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all parties listed below by ECF notification (if they receive ECF notification) and U.S. mail on this 8th day of May, 2025:

**Debtor**
Homemakers Real Estate, LLC
201 Ivory Coral Lane.
Merritt Island, FL 32953

**Debtor's Counsel**
Frank M. Wolff
Nardella & Nardella, PLLC
135 W. Central Blvd., Ste 300
Orlando, FL 32801

**U.S. Trustee**
United States Trustee – ORL
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

**Counsel for U.S. Trustee**
Audre M. Aleskovsky
DOJ-UST
United States Trustee
400 W. Washington St. Ste 1100
Orlando, FL 32801

and the parties-in-interest matrix attached hereto.

*/s/ James A. Timko*
JAMES A. TIMKO, ESQ.

Label Matrix for local noticing
113A-6
Case 6:25-bk-02685-GER
Middle District of Florida
Orlando
Thu May 8 13:56:27 EDT 2025

Homemakers Real Estate, LLC
201 Ivory Coral Lane
Merritt Island, FL 32953-4111

Grace E. Robson
Orlando
, FL

Brevard County
Tax Collector
1605 N. Courtenay Pkwy
Merritt Island, FL 32953-4338

Cape Crossing
Condominium Assocation, Inc
c/o Keystone Property Mngmnt
780 US Highway 1, Ste. 300
Vero Beach, FL 32962-1660

Cape Crossing Condominium
Assocation, Inc.
202 Ivory Coral Lane
Merritt Island, FL 32953-4105

Cape Crossing Townhomes
Homeowners Association
c/o D. Johnathan Rhodeback
1565 US. Hwy 1
Sebastian, FL 32958-3895

Cape Crossing Townhomes
Homeowners Association, Inc
c/o Keystone Property Mngmnt
780 US. Hwy 1, Ste. 300
Vero Beach, FL 32962-1660

Carton Family Trust of 1992
dated October 14, 1992
12910 Lomas Verdes Drive
San Diego, CA 92064-1250

Florida Department of Revenue
Bankruptcy Unit
Post Office Box 6668
Tallahassee FL 32314-6668

GellerRagans, CPA
110 N. Orange Ave
Orlando, FL 32801-2375

Horton S. Johnson
2875 S. Orange Ave
Suite 500 #6409
Orlando, FL 32806-5455

IMQA Investments Inc
4409 Hoffner Ave #348
Orlando, FL 32812-2331

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Kenneth Dixon
1627 E Vine Street
Suite E
Boynton Beach, FL 33474

Kenneth Dixon
c/o Tucker H. Bird, Esq.
180 N. Park Ave Ste. 2A
Winter Park, FL 32789-7401

Mainstreet Community Bank
204 S. Woodland Blvd
Deland, FL 32720-5414

Nelson Mullins
Rile & Scarborough, LLP
390 N. Orange Ave
#1400
Orlando, FL 32801-1687

Orange County Tax Collector
PO Box 545100
Orlando FL 32854-5100

Tamamoi, LLC
5060 SW Philomath Blvd #363
Corvallis, OR 97333-1044

Frank M Wolff +
Nardella & Nardella. PLLC
135 W. Central Blvd
Suite 300
Orlando, FL 32801-2435

United States Trustee - ORL +
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210

Audrey M Aleskovsky +
DOJ-Ust
400 W. Washington St.
Ste 1100
Orlando, FL 32801-2210

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Internal Revenue Service
Post Office Box 7346
Philadelphia PA 19101-7346

(u)Note: Entries with a '+' at the end of the
name have an email address on file in CMECF

Note: Entries with a '-' at the end of the
name have filed a claim in this case

| | |
|---|---|
| End of Label Matrix | |
| Mailable recipients | 22 |
| Bypassed recipients | 2 |
| Total | 24 |

# OPERATING AGREEMENT
# OF
# HOMEMAKERS REAL ESTATE, LLC

**THIS OPERATING AGREEMENT** (this "**Agreement**") is made effective as of the 15th day of December, 2008, by Horton Johnson, and Martin C Flynn, Jr. ("The Members") the two members of Homemakers Real Estate, LLC (the "**Company**").

## WITNESSETH:

**WHEREAS**, the Company was formed on the December 8, 2008 upon the filing of Articles of Organization in accordance with and pursuant to the Florida Limited Liability Company Act (the "**Act**").

**WHEREAS,** "The Members" are the only members of the Company and in that capacity are referred to as the "**The Members.**"

**NOW, THEREFORE**, in consideration of the foregoing, the Members hereby adopt this Agreement as the operating agreement of the Company:

1. **Operation of the Company**. The Company shall operate as provided in this Agreement and pursuant to the Act, as the Act may be amended from time to time; provided, however, that if there is any inconsistency between any provision of the Act and the provisions of this Agreement, the provisions of this Agreement shall govern to the extent permitted by the Act.

2. **Name**. The name of the Company is "**Homemakers Real Estate, LLC**" and title to all assets of the Company shall be held in such name. The business of the Company shall be conducted under such name.

3. **Purpose of the Company**. The purpose of the Company shall be to engage in such activities as may be permitted by law.



EXHIBIT
A

4. **Company Filings**. The Managers shall execute and file all documents required by the Act to be filed in connection with the continuation of the Company.

5. **Place of Business**. The principal address of the Company shall be such place or places as the Managers may determine. The Managers will give notice to the Member promptly after any change in the location of the principal office of the Company.

6. **Term**. The Company shall continue until dissolved and liquidated pursuant to the provisions of Section 11 hereof.

7. **Interests of Members**. Horton Johnson and Martin C Flynn, Jr. will each own Fifty percent (50%) of the membership interests in the Company. Any and all transfers of membership interests must be made with the prior written consent of all members.

8. **Capital Contribution**. Each member will make capital contributions to the Company as needed and agreed upon between members.

9. **Management Powers of the Managers.** The management, operation and control of the Company shall vest solely in the Members. Accordingly, the Managers shall have all necessary and appropriate powers to carry out the purposes of the Company, including, without limitation, the power to execute, acknowledge and deliver any and all documents and instruments deemed appropriate to carry out any of the foregoing or the purposes and intent of this Agreement. Notwithstanding any of the foregoing, the Members shall not take any of the following corporate actions without the consent of all members.

i.) Cause the Company to merge or consolidate with any entity, where applicable, nor acquire all or any substantial part of the assets or stock of any third party person or entity.

ii.) Create, incur, assume or suffer to exist any indebtedness.

iii.) Enter into any transaction, which materially and adversely affects or may materially and adversely affect the Company's Business operations.

iv.) Cause the Company to guarantee, assume, endorse or otherwise, in any way, become directly or contingently liable with respect to the indebtedness of any person or entity



HJ [initials]

v.) Cause the Company to create or suffer to exist any lien upon any of its property, income or profits, whether now owned or hereafter acquired.

vi.) Cause the Company to create any subsidiary or divest itself of any material assets by transferring them to any subsidiary.

vii.) Cause the Company to enter into any new business or make any material change in the Company's current business objectives, purposes and operations, where applicable.

viii.) Cause the Company to make any agreements to sell, lease or otherwise dispose of any of the Company's assets.

ix.) Cause the Company to use any corporate name (other than the Company's legal name), as applicable, or any fictitious name, trade name or "d/b/a".

x.) Cause the Company to own, purchase or acquire (or enter into any contract to purchase or acquire) any "margin security", as defined by any regulation of the Federal Reserve Board, as now in effect or as the same may hereafter be in effect unless, prior to any such purchase or acquisition will not cause this Agreement to violate Regulations G, T, U or X or any other regulation of the Federal Reserve Board then in effect.

xi.) Cause the Company to change its fiscal year, where applicable.

xii.) Cause the Company to file for bankruptcy protection or make an assignment for the benefit of creditors.

10. **Profits and Losses.** The profits and losses of the Company shall be the profits and losses of the Company as determined for Federal income tax purposes. The profits and posses of the Company and each item of income, gain, loss, deduction or credit entering into the computation thereof, shall be allocated to the Members in the same proportions that they share in distributions of Cash Flow pursuant to Section 11, or if there is no Cash Flow, that they would have shared if there had been Cash Flow.

11. **Distributions**. The Company shall distribute to the Member from time to time all cash (regardless of the source thereof) of the Company which is not required for the operation or



HSJ [initials]

the reasonable working capital requirements of the Company, (such cash is sometimes referred to herein as "Cash Flow").

11. **Dissolution**. The Company shall be dissolved upon the first to occur of: (a) the date approved by the Members, or (b) 5:00 p.m., December 31, 2035.

**IN WITNESS WHEREOF,** the Members, intending legally to be bound, has executed this Agreement as of the day and year first above written.

**MEMBER:**

**Homemakers Real Estate, LLC**

Horton Johnson December 17, 2008

Martin C. Flynn, Jr. December 17, 2008

# MODIFICATION

This Modification (Modification) dated this 1st day of July, 2011, is to that certain Operating Agreement (Agreement) made and executed on December 15, 2008, by and between Horton Johnson (Johnson) and Martin C. Flynn, Jr. (Flynn) (collectively, the Members) of Homemakers Real Estate, LLC (the Company).

## WITNESSETH:

**WHEREAS**, the Company was formed on December 8, 2008 upon the filing of Articles of Organization in accordance with and pursuant to the Florida Limited Liablity Company Act (the Act);

**WHEREAS**, the Members were the only Members of the Company;

**WHEREAS**, it is the desire of the parties, at this point, to modify that certain Agreement by entering into the terms of the Modification provided here.

**NOW, THEREFORE**, in consideration of the foregoing, the Members hereby modify the Agreement as set forth.

1. **Surrender of Interest.** Flynn hereby surrenders his interest in the Company and tenders his Certificate of interest contemporaneously herewith.

2. **Option to Purchase**. Flynn shall be entitled to purchase an interest equal to fifty (50%) percent of the outstanding membership interest in the Company for a sum equal to the difference between the Company's payable owed to Johnson outstanding at the time of purchase, minus the sum of twenty-five thousand dollars (25,000.00).

3. **Waiver and Release**. Flynn shall have no further interest in and to the assets of the Company upon execution hereof.

IN WITNESS WHEREOF, the Members, intending legally to be bound, have executed this Modification as of the day and year first above written.

Horton S Johnson [signature]

Horton Johnson, Member

[signature]

Martin C. Flynn, Jr., Member

**EXHIBIT**

**B**

**Assignment of Membership Units**

I, Horton S. Johnson, as the sole owner and holder of all of the issued and outstanding membership units of Homemaker Real Estate, LLC, and in consideration of the loan accommodations made by PEDIXON, LLC, a Florida limited liability company, do now assign the following unto Crescent Sound, Ltd., as Trustee of the Tiered Land Trust u/t/d 9/13/2023: all of my right, title and interest in and to all of the issued and outstanding membership units of Homemakers Real Estate, LLC, a Florida limited liability company.

I have executed this assignment in Orlando, Florida on this 9th day of January 2024.

Horton S. Johnson
*Horton S. Johnson*
*Manager of*
*Homemakers Real Estate, LLC*

STATE OF FLORIDA
COUNTY OF Orange

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ✓ physical presence or __ online notarization on January 9, 2024, by Horton S. Johnson.

J. Morea
Notary Public, State of Florida
Name: Janelle Morea
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary: Check one of the following:
____ Personally known OR
✓ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: License

HSJ

EXHIBIT
C

**ALISON PITKANEN LAW FIRM LLC**
**1980 N. Atlantic Ave, Suite 328, Cocoa Beach, FL 32931**
**Phone: (407) 449-0037**
**Email: alisonpitkanen@gmail.com**

January 9, 2024

Homemakers Real Estate, LLC
Horton S. Johnson
2875 S. Orange Ave.
STE 500 #6409

Sent US Mail and Via Email to Horton S. Johnson
wjohnsonbbf@gmail.com

RE: PEDIXON LLC ("PEDIXON") loan to Tiered Capital, Inc. ("Tiered") as consolidated and agreed upon in September 2023 (the "Consolidated Loan Agreement") for a total loan amount of Ten Million Six Hundred Twenty-Five Thousand Dollars and No/Cents ($10,625,000) (the "Total Loan Amount").

Dear Mr. Johnson:

As you have been previously informed, there have been numerous monetary and non-monetary defaults under the Consolidated Loan Agreement since November 1, 2023.

This shall serve as notification that PEDIXON has exercised its rights under the Consolidated Loan Agreement as to Homemakers Real Estate, LLC. As a result, Horton S. Johnson has agreed to relinquish control of all of its membership units.

As a result of the express monetary default, the undersigned has been authorized and directed to release the following unto PEDIXON: all membership units of Homemakers Real Estate, LLC.

Please execute the attached to acknowledge notification and agreement hereof, and I will release said assignment of membership units directly to PEDIXON.

If you have any questions regarding this matter, please feel free to contact me.

Respectfully,

*Alison Pitkanen*

Alison Pitkanen, Esquire

cc: PEDIXON, LLC

# EXHIBIT 24

In re Homemakers Real Estate, LLC
Case No. 6:25-bk-02685-GER (Bankr. M.D. Fla.)

**Doc. 24, filed May 23, 2025**

Response to Motion to Dismiss Bankruptcy Case for Lack of Corporate Authority, with Exhibits A through F (Docs. 24-1 through 24-6)

Homemakers Real Estate, LLC (Debtor)

Case 6:25-bk-02685-GER Doc 24 Filed 05/23/25 Page 1 of 7

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

HOMEMAKERS REAL ESTATE, LLC,

Debtor.
_______________________________/

Case No.: 6:25-bk-02685-GER
Chapter 11

**DEBTOR'S RESPONSE TO MOTION TO DISMISS BANKRUPTCY CASE FOR LACK OF CORPORATE AUTHORITY**

Debtor, Homemakers Real Estate, LLC ("Homemakers"), files this response to the Motion to Dismiss Bankruptcy Case for Lack of Corporate Authority (Doc. No 12) (the "Motion") filed by PEDIXON LLC and ZPD LLC and says:

**INTRODUCTION**

1. The Debtor is Florida Limited Partnership

2. The sole member of the Debtor is Horton S. Johnson ("Johnson").

3. The Debtor owns twenty-six condominiums and townhomes in Brevard County, Florida (the "Homemakers Property"). The Homemakers Property is income producing properties with significant rental income.

4. On or about September 13, 2023, the Debtor entered into an agreement with PEDIXON LLC and ZPD LLC, ("Movants") (the "Loan Agreement" or the "Consolidated Loan Agreement"). Under the Loan Agreement the Debtor and. Johnson guaranteed certain obligations owed by Tiered Capital, Inc. The Loan Agreement Is attached hereto as **Exhibit "A"**.

5. The Loan Agreement called for the pledge of the Homemakers Property as security for the guaranty. The Loan Agreement does refer to the pledge of stock to secure the loan, but not the stock in the Debtor.

6. Under the Loan Agreement "Trust Property" is defined as the "Property and the Stock".

7. Property is defined in the Loan Agreement as the 26 condominium and townhome units of the Homemakers Property.

8. "Stock" is defined as "all of the issued and outstanding stock and/or membership interests whichever the case may be of Holly Bluff Marina Inc., Recycled Group of South Carolina and Cape Crossing Vacation Rentals, LLC".

9. To accomplish the pledge of the units, the Debtor executed the Tired Land Trust Agreement (the "Trust"), which is attached hereto as **Exhibit "B."** Pursuant to the Trust, the Debtor assigned its interest in the Homemakers Property to Crescent Sound Ltd. The Trust, retaining a beneficial interest.

10. The Debtor also executed an Assignment of Beneficial Interest in Trust, (the "Assignment") collaterally assigning its beneficial interest Homemakers Property to Crescent Sound, Ltd., as Trustee of the Tiered Land Trust. The Assignment is attached hereto as **Exhibit C.**

11. Johnson, the sole member and owner of the member's interests in the Debtor did not sign the Trust or the Assignment, and did not pledge any of the members interests.

12. The Trust makes clear that the assignment into the Trust made by the Debtor was "100% as to the real estate property (26 units)".

13. On December 20, 2023 PEDIXON declared a default under the loan agreement attached hereto as **Exhibit D** and began collecting all of the rents from the Homemakers Property.

14. Twenty days later, on January 9, 2024, Alison Pitkanen, acting as counsel for PEDIXON sent the letter attached hereto as **Exhibit E** (also attached to the Motion) (the "Letter")

15. In the Letter Ms. Pitkanen stated:

> This shall serve as notification that PEDIXON has exercised its rights under the Consolidated Loan Agreement as to Homemakers Real Estate LLC. As a result, Horton S Johnson has agreed to relinquish control of all its membership units.
>
> As a result of the express monetary default, the undersigned has been authorized and directed to release the following unto P/E Dixon all membership units of Homemakers Real Estate LLC please execute the attached acknowledgement notification and agreement here and I will release the assignment of membership units directly to PEDIXON.

16. Attached to the Letter was the Assignment of Membership Units (the January 9th Assignment) included here as **Exhibit F** (also attached to the Motion) which appears to be signed Johnson as manager of the Debtor "

> …do now assign the following to Crescent Sound Ltd. As Trustee of the tiered Land Trust u/t/d 9/13/2023 all of my right title and interest in and to all of the issued and outstanding membership units of Homemakers Real Estate LLC a Florida limited liability company.

17. The Letter and the January 9th Assignment were intentionally misleading. Johnson had never signed the Trust or the Assignment. The Trust and Assignment pledged the Homemakers Property as collateral, not the members interests. Johnson did not agree to "to relinquish control of all its membership units."

18. The January 9th Assignment looks deceptively similar to the Assignment but it is not the same document and is not consistent with the Loan Agreement, the Trust or the Assignment.

19. The language of the Letter was designed to mislead Johnson into surrendering his control of the Debtor.

**THE ASSIGNMENT OF THE MEMBERSHIP INTEREST IS NOT A VALID TRANSFER**

20. The Assignment of the Members Interest is an invalid instrument because it is evident that it was a fraudulent attempt to take Johnson's members interest through trick and deception.

21. The Assignment of the Member's Interest is also invalid because it is not supported by valid consideration. There was no value provided to the Debtor or Johnson for the purported transfer.

22. The January 9th Assignment is an invalid as an unlawful ruse to take control of the Debtor, as a means of, upon information and belief, keeping the Debtor from seeking bankruptcy protection as a means of preserving the Homemakers Property for the benefit of its creditors.

23. The January 9th Assignment does not make PEDIXON a member of the Debtor under Fla. Stat §605.0401(3) because Johnson was deceived into executing the document and accordingly did not consent to PEDIXON or anyone else becoming a member of the Debtor.

**TO THE EXTENT THAT THE ASSIGNMENT OF MEMBERSHIP INTEREST HAS ANY VALIDITY IT ONLY ACTS AS A COLLATERAL ASSIGNMENT AS SECURITY IN THE MEMBER'S INTEREST AND NOT A TRANSFER OF CONTROL**

24. Under the Florida Limited Partnership Act, only a member has the right to vote a member's interest. Fla. Stat §605.04073(1). A member retains this right unless and until he becomes disassociated as a member. As set out in Fla. Stat. §605.0602 "... a person is dissociated as a member.. (5) The person is expelled as a member by the unanimous consent of the other members if any of the following occur: ...(b) There has been a transfer of the person's entire transferable interest in the company other than: 1. A transfer for security purposes..." A transfer of the "transferable interest does not entitle the transferee to participate in the management or conduct of the company's activities or affairs." Fla. Stat §605.0502(1)(c) 1.

25. In the case of *In re Windham Power Lifts, Inc.*, 91 B.R. 595 (Bankr M.D. Ala 1988), The SBA held a pledge of the stock from the sole stockholder in the corporation. The Debtor filed a bankruptcy petition, and the SBA filed a motion to dismiss the petition. The SBA argued that the blank endorsement and surrender of the stock certificates was an absolute assignment of all

ownership rights in the stock, including the right to vote at the shareholders meeting. The court denied the motion to dismiss. It ruled that "the endorsement and surrender of the stock certificates was merely for the protection of SBA as a pledgee and not a transfer of ownership." *Id.* at 596.

26. Here, the circumstances are even clearer that Movants have not acquired rights in the members interests. Johnson, as the sole member of a Florida limited liability corporations retains control unless the very specific elements under Chapter 605 are met. None of those elements exist in this case.

Wherefore, the Debtor prays for an order denying the motion to dismiss.

Dated: May 23, 2025

Respectfully submitted,

*/s/Frank M. Wolff*
Frank M. Wolff, Esq.
Florida Bar No. 319521
Nardella & Nardella, PLLC
135 W. Central Blvd., Suite 300
Orlando, FL 32801
(407) 966-2680
fwolff@nardellalaw.com
klynch@nardellalaw.com

*PROPOSED COUNSEL TO DEBTOR*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2025, a true and correct copy of the foregoing has been served to (i) all filing users through the CM/ECF system including James A. Timko, Esq. Dean Mead, Egerton, Bloodworth, Capouano & Bozarth at jtimko@deanmead.com; Audrey M. Aleskovsky, Esq, Office of the United States Trustee at Audrey.m.aleskovsky@usdoj.gov, and (ii) by first class United States mail to all non-CM/ECF participants on the Local Rule 1007-2 Parties in Interest List as listed on the mailing matrix attached to the original of this motion filed with the court.

*/s/Frank M. Wolff*
Frank M. Wolff, Esq.

Label Matrix for local noticing
113A-6
Case 6:25-bk-02685-GER
Middle District of Florida
Orlando
Thu May 8 10:13:45 EDT 2025

Brevard County
Tax Collector
1605 N. Courtenay Pkwy
Merritt Island, FL 32953-4338

Cape Crossing
Condominium Assocation, Inc
c/o Keystone Property Mngmnt
780 US Highway 1, Ste. 300
Vero Beach, FL 32962-1660

IMQA Investments Inc
4409 Hoffner Ave #348
Orlando, FL 32812-2331

Internal Revenue Service
Post Office Box 7346
Philadelphia PA 19101-7346

Kenneth Dixon
1627 E Vine Street
Suite E
Boynton Beach, FL 33474

End of Label Matrix
Mailable recipients 5
Bypassed recipients 0
Total 5

# EXHIBIT A

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

# LOAN AGREEMENT

THIS LOAN AGREEMENT is entered on this 14 day of September 2023, between the following lender, borrowers and guarantors.

**LENDER:**

- PEDIXON LLC, whose address is 1627 East Vine Street, Suite E, Kissimmee, FL 34744
- ZPD LLC, whose address is 1627 East Vine Street, Suite E, Kissimmee, FL 34744

(hereinafter collectively referred to as "Lender" for convenience purposes)

**BORROWER:**

- Tiered Capital, Inc., whose address is 5526 Hansel Avenue, Orlando, FL 32809

(referred to herein as the "Borrower")

**GUARANTORS:**

- Sherwood Construction, Inc.
- Florida Space Coast Resorts, Inc.
- Homemakers Real Estate, LLC
- Cape Crossing Vacation Rentals, LLC ("CCVR")
- Holly Bluff Marina, Inc. ("Holly")
- A Marine, Inc.
- Recycled Group of South Carolina, LLC ("Recycled")
- 650 85th
- MTF Holdings, LLC
- Martin C. Flynn, Jr.
- Horton S. Johnson
- Yaniv Amar

All guarantors are collectively referred to as the "Guarantor."

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

*DEFINITIONS*

Lender, Borrower and Guarantor agree that in addition to terms defined elsewhere in this Agreement, the following terms have the following meaning:

*Agreement* – This Loan Agreement, which may be amended or modified from time to time, together with all exhibits and schedules attached.

*CCVR* – Cape Crossing Vacation Rentals, LLC, and its assigns.

*Closing Attorney* – Alison Pitkanen, Esquire.

*Collateral* – All property and assets granted as collateral security for the Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, lease, assignment of lease, land trust, deed of trust, assignment, pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

*Event of Default* – Any of the Events of Default set forth below.

*First Mortgages* – First priority security interest in the Property held by Mainstreet Bank (as to 19 Units) and Tamamoi (as to 9 units), recorded in the Public Records of Brevard County, Florida, and more particularly described on Schedule 2.

*Grantor* – Each and all of the persons or entities granting a Security Interest in any Collateral for the Indebtedness.

*Leases* – All leases that are part of the vacation rental program at Cape Crossing Resort and Marina as created under Brevard County Official Records Book 7626 Page 1609.

*Indebtedness* – All Loans, together with all other obligations, debts and liabilities of Borrower and Guarantor to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Guarantor, or any one or more of them; whether now or hereafter existing, voluntary or involuntary, due or not due, absolute or contingent, liquidated or unliquidated; whether Borrower and/or Guarantor may be liable individually or jointly with others; whether Borrower and/or Guarantor may be obligated as a guarantor, surety, or otherwise; whether recovery upon such Indebtedness may be or hereafter may become barred by any statute of limitations; and whether such Indebtedness may be or hereafter may become otherwise unenforceable. The total indebtedness as of the date hereof is Eleven Million Seventy-Five Thousand Dollars and No/Cents (\$11,075,000).

*Loan* – All loans and financial accommodations from Lender to Borrower and/or Guarantor, whether now or hereafter existing, and however evidenced, including without limitation, the loan in the original principal amount of \$750,000.00 of even date herewith, and any other loan described herein or described on any exhibit or schedule attached to this Agreement from time to time.

*Loan Documents* – The Note, and Related Documents.

*Note* – Promissory note evidencing Borrower's Loan obligations in favor of Lender.

*Obligor(s)* – Individually and collectively, Borrower and Guarantor.

*Permitted Liens* – All (a) liens and security interests securing indebtedness owed by Borrower to Lender; (b) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (c) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (e) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing. Specifically, included as part of the Permitted Liens are the

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

following: the first mortgages, in the disclosed outstanding principal amount as of the date hereof, currently affecting title to the Land, as long as the Borrower's representations made herein are true and correct.

*Property* – The real property legally described in Exhibit "A" attached hereto, consisting of 26 Units, together with all appurtenances thereto, including the improvements located thereon and the fixtures and existing personal property. The Property is governed by a homeowner association(s) and is thus subject to the governing documents recorded in the Official Records of Brevard County, Florida, including, but not limited to, the articles, bylaws, and covenants, of Cape Crossing Resort and Marina Living and Cape Crossing Resort Management Inc., in Official Records Book 7626 Page 1609, Cape Crossing Condominium Association, Inc. and/or Cape Crossing Townhomes Homeowners Association, Inc, including but not limited to all amendments to said documents that may be hereafter recorded in the Official Records of Brevard County, Florida.

*Related Documents* – All promissory notes, credit agreements, loan agreements, assignment and/or sale of rents, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

*Security Interest* – Any type of collateral security, whether in the form of a lien, charge, mortgage, deed of trust, assignment, pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

*Stock* – All of the issued and outstanding stock and/or membership units, whichever the case may be of Holly Bluff Marina, Inc., Recycled Group of South Carolina and Cape Crossing Vacation Rentals, LLC.

*Tiered Loan* – The Tiered Loan includes all loan accommodations as of the date hereof made to Tiered Capital, Inc., the principals of Tiered Capital Inc., the consultants of Tiered Capital, Inc., the Borrowers, the Guarantors, and all entities related thereto. All of the loans that comprise the Tiered Loan are set forth on Schedule 1 attached hereto and made a part hereof. After closing the Loan on this date,.the total outstanding indebtedness of the Tiered Loan will be Eleven Million Seventy-Five Thousand Dollars and No/Cents (\$11,075,000). The Tiered Loan shall include all modifications, extensions, renewals and advances made after the date hereof.

*Tiered Loan Monthly Interest Payment* – The loan payment due under the Tiered Loan on the 1st of each month. This total payment is inclusive of each loan payment due under the loans identified on Schedule 1.

*Trust Property* – The Property and the Stock.

*Unit(s)* – Any dwelling place located on or about Cape Crossing Resort and Marina created under Brevard County Official Records Book 7626 Page 1609. that is used in the rental program located at the Resort, and shall include but is not limited to, a condominium and townhouse.

DocuSign Envelope ID: ADBFE0C3-9761-459F-9A59-99B406B04C39

**In consideration of the mutual covenants and promises set forth herein, Lender and Obligors enter into this Loan Agreement.**

1. **Purpose**. The parties have acknowledged and agree upon the following facts:

   1.1. All Obligors have benefited from the Tiered Loan, and will all benefit from the current Loan of $750,000.00.

   1.2. The Tiered Loan is in default as of the date hereof. This includes, but is not limited to, a monetary default of all loans by all Obligors. These loans are more particularly set forth on Schedule 1.

   1.3. The Obligors have requested assistance from the Lender to reinstate each of their loans.

   1.4. In exchange for the extension of credit from the Lender, the Obligors hereby transfer Trust Property into the land trust, guarantee the payment of the Tiered Loan Monthly Interest Payment and make all of the promises stated herein.

   Notwithstanding the foregoing, and except as may be specifically stated herein, the terms of each loan described on Schedule 1 shall remain unchanged and shall further remain in full force and effect.

2. **Loan Closing**. On the date hereof, Lender has made a loan accommodation to Borrower in the principal amount of SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750,000.00) (the "Loan").

3. **Joint Liability.** By signature hereto, the Obligors are individually, jointly and collectively responsible for the timely payment of the Tiered Loan Monthly Interest Payment.

4. **Trust Property**. All of the Stock and Property shall be transferred unto CRESENT SOUND LTD. as the Trustee of the TIERED LAND TRUST AGREEMENT created and funded with the Trust Property of even date herewith.

5. **Additional Collateral**. Each Obligor shall take all reasonable and necessary steps to ensure that Lender has a perfected security interest in the following Collateral:

   5.1. **Leases**. All currently existing and future leases shall be assigned by CCVR, or its assigns, unto Lender.

   5.2. **Rents**. All rents collected by virtue of the Obligor's vacation rental business shall be assigned to Lender.

   5.3. **Collected Rents.** The collected rents from Obligor's vacation rental business shall be paid as follows:

      5.3.1. Lender shall be entitled to the first rental monies received in weekly installments of $25,000, which shall be applied to the amount owed under the Tiered Loan Monthly Interest Payment.

      5.3.2. Current sales tax due and payable.

      5.3.3. Then, the First Mortgages shall be paid.

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

5.3.4. No Obligor hereunder shall be entitled to any of the collected rental income to pay any unsecured indebtedness, or to repay any of Obligor's personal investments in any of the undersigned entities.

5.3.5. Any excess collected rental income shall be expended to pay other debts and obligations as directed by Borrower.

5.4. <u>**Unit Sale Proceeds**</u>. The proceeds of the sale of any Unit or any other Collateral, subject only to the payment of the Permitted Liens and standard closing costs.

6. <u>**Allocation of Loan**</u>. The Loan shall be allocated into two parts:

6.1. **$375,000** shall be designated as an interest reserve account (the "Reserve Account"). The Parties agree to the following terms and conditions regarding the Reserve Account:

6.1.1. The following shall be paid from the Reserve Account: all outstanding payments owed to Lender as of the date hereof and all closing costs incurred as a result of the Loan. After closing, Lender shall provide an accounting of funds applied from the Reserve Account.

6.1.2. From time to time, with the consent of Lender, funds from the Reserve Account may be used towards the Monthly Payment if financial assistance is necessary.

6.1.3. From time to time, with the consent of Lender, funds from the Reserve Account may be used to assist with closing costs that may be required when there is a closing on any Unit.

6.1.4. When there is a sale of any of the Property, Lender, in Lender's discretion, may replenish the Reserve Account with monies received from the proceeds of a sale.

6.2. **$375,000** shall be disbursed to the Closing Attorney, and shall be utilized for the benefit of Borrower as follows:

6.2.1. All outstanding associations dues and real estate taxes shall be paid.

6.2.2. The outstanding amounts currently due on the First Mortgage payments shall be made.

6.2.3. $89,000 shall be delivered to Closing Attorney for outstanding payments related to the purchase of Holly Bluff Marina, Inc.

6.2.4. Borrower shall provide Closing Attorney with written instructions related to any excess funds that may be available.

7. <u>**Depository Account**</u>. As a condition precedent to the loan, Obligor shall establish a depository account and direct all rental income from its vacation rental operations to said account. The details of this account should be provided to Lender within three days of this Loan Agreement.

8. <u>**Post Closing Covenants.**</u>

8.1. <u>**Weekly Payment to Lender**</u>. Obligor agrees to make weekly payments to Lender in the amount of Twenty-Five Thousand Dollars and No/Cents ($25,000). Lender will apply this payment to the Tiered Loan Monthly Interest Payment. The intention of the Weekly Payment is for the Lender to collect One Hundred Thousand Dollars and No/Cents ($100,000.00) per month, therefore, if there is a shortfall one week, it will be recovered in the following weeks so that Lender receives at least $100,000.00/per month before any other Property expenses are paid.

DocuSign Envelope ID: ADBFE0C3-9761-459F-9A59-99B406B04C39

8.2. **Agreement to sell the Units.** Obligor agrees to earnestly market and sell Units. Obligor agrees that its goal is to sell two units each month. Obligor must provide monthly notification to Lender identifying the subject units listed for sale. When a contract is signed, it must be immediately delivered to Lender to ensure Lender has the opportunity to exercise its right of first refusal.

8.3. **Leases.** Obligor shall take all steps necessary to remain compliant in all existing and future vacation rental leases relating to the Property. Obligor shall not cause any disruption to the Leases. Obligor shall not make any material changes to the leases without the prior written approval of the Lender. Copies of all existing leases shall be delivered to Lender within three days of Closing.

8.4. **Property.** Obligor shall ensure that the Property is well-maintained and the investment in the Units are protected. Specifically, Obligor must ensure that the following items are timely paid:

8.4.1. Association dues.

8.4.2. Sales tax.

8.4.3. Real estate taxes.

8.4.4. All required insurances, as may be mandated by mortgage agreement, lease agreement, or otherwise.

8.4.5. Monthly payments due under the First Mortgages.

9. **Documents Executed Contemporaneous With Closing**. The parties will execute all documents necessary to effectuate the following at Closing, or at any time thereafter, as Lender may request, to fulfill the loan requirements set forth herein.

9.1. Assignment of all current and future leases on the Property from CCVR to Lender.

9.2. Assignment, transfer and sale of all rental payments collected by CCVR. Lender will be entitled to all existing and future rents generated from the vacation rental business operated by CCVR.

9.3. Execution of the TIERED LAND TRUST AGREEMENT designating CRESCENT SOUND, LTD. as Trustee. Said land trust agreement shall be funded with the Trust Property at the time of Closing.

9.4. Execution and recordation of a trustee's deed transferring the Trust Property unto CRESCENT SOUND, LTD., as Trustee of the contemplated land trust.

9.5. Execution of proper documentation transferring all of the issued and outstanding Stock unto CRESCENT SOUND, LTD., as Trustee of the contemplated land trust.

9.6. Execution of agreements assigning the beneficial interest in the Trust Property unto Lender, or a designated assignee thereof. This agreement shall be held in trust by the Closing Attorney until satisfaction of the Tiered Loan.

9.7. Written notification of the two (2) Units that are being marketed for sale each month, along with a copy of the listing agreement..

9.8. Executed CCVR stock option to be held in trust by the Closing Attorney until satisfaction of the Tiered Loan.

9.9. The form of each document referenced in this section shall be attached hereto and incorporated as part of this Loan Agreement.

10. **Representations and Warranties.** Each Obligor represents and warrants to Lender, as of the date of this Agreement, and as of the date of any renewal, extension or modification of the Loan or any part of the Tiered Loan, and at all times any Indebtedness exists, that:

10.1. First Mortgages. The outstanding principal balance of the First Mortgages and the corresponding approximate monthly payments are more particularly set forth on Schedule 2.

10.1.1. Obligor will not make any further advances on the First Mortgages, and will ensure the First Mortgages are timely paid even if the monthly rents collected are not sufficient to pay said indebtedness.

10.2. Authorization. The execution, delivery, and performance of this Agreement and all Related Documents by Obligor, to the extent to be executed, delivered or performed by Obligor, have been duly authorized by all necessary action by Obligor; do not require the consent or approval of any other person, regulatory authority or governmental body; and do not conflict with, result in a violation of, or constitute a default under (a) any provision of its articles of incorporation or organization, or bylaws, or any agreement or other instrument binding upon Obligor or (b) by law, governmental regulation, court decree, or order applicable to Obligor.

10.3. Legal Effect. This Agreement constitutes, and any instrument or agreement required hereunder to be given by Obligor when delivered will constitute, legal, valid, and binding obligations of Obligor enforceable against Obligor in accordance with their respective terms.

10.4. Litigation and Claims. No litigation, claim, investigation, administrative proceedings or similar action (including those for unpaid taxes) against Obligor is pending or threatened, and no other event has occurred which may materially adversely affect Obligor's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

10.5. Taxes. To the best of Obligor's knowledge, all tax returns and reports of Obligor that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Obligor in good faith in the ordinary course of business and for which adequate reserves have been provided.

10.6. Binding Effect. This Agreement, the Note, all Security Interests directly or indirectly securing repayment of Obligor's Loan and all of the Related Documents are binding upon Obligor as well as upon Obligor's successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

10.7. Commercial Purposes. Borrower intends to use the Loan proceeds solely for business or commercial related purposes.

10.8. Information. All information heretofore or contemporaneously herewith furnished by Obligor to Lender for the purposes of or in connection with this Agreement or any transaction contemplated hereby is, and all information hereafter furnished by or on behalf of Obligor to Lender will be, true and accurate in every material respect on the date as of which such information is dated or certified; and none of such information is or will be incomplete by omitting to state any material fact necessary to make such information not misleading.

10.9. Survival of Representation and Warranties. Obligor understands and agrees that Lender, without independent investigation, is relying upon the above representations and warranties in extending the Loan to Obligor. Obligor further agrees that the foregoing representations and warranties shall be continuing in nature and shall remain in full force and effect until such time as Obligor's indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

11. **Prepayment.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the Loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.

12. **Affirmative Covenants.** Each Obligor covenants and agrees with Lender that, while this Agreement is in effect, it will:

12.1. Litigation. Promptly inform Lender in writing of (a) all material adverse changes in Borrower's financial condition, and (b) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower which could materially affect the financial condition of Borrower.

12.2. Financial Records. Maintain its books and records in accordance with generally accepted accounting principles, or with sound accounting principles applied on a consistent basis, and permit Lender to examine and audit Obligor's books and records at all reasonable times or to confirm Obligor's compliance with this Agreement.

12.3. Taxes, Charges and Liens. Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Obligor or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Obligor's properties, income, or profits. Provided however, Obligor will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (a) the legality of the same shall be contested in good faith by appropriate proceedings, and (b) Obligor shall have established on its book adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with generally accepted accounting practices. Obligor, upon demand of Lender, will furnish to Lender evidence of payment of the assessments, taxes, charges, levies, liens and claims and will authorize the appropriate governmental official to deliver to Lender at any time a written statement of any assessments, taxes, charges, levies, liens and claims against Obligor's properties, income, or profits.

12.4. Performance. Perform and comply with all terms, conditions, and provisions set forth in this Agreement and in the Related Documents in a timely manner, and promptly notify Lender if Obligor learns of the occurrence of any event which constitutes an Event of Default under this Agreement or under any of the Related Documents.

**12.5.** Additional Assurances. Each Obligor shall make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, financing statements, instruments, documents and other agreements as Lender or its attorney may reasonably request to evidence and secure both the Loan and the Tiered Loan, and to perfect all Security Interests.

13. **Negative Covenants.** Each Obligor covenants and agrees with Lender that while this Agreement is in effect, Obligor shall not, without the prior written consent of Lender:

13.1. Continuity of Operations. (a) Engage in any business activities substantially different that those in which Obligor is presently engaged, or (b) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change ownership, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business.

14. **Event of Default.** Each of the following shall constitute an Event of Default under this Agreement:

DocuSign Envelope ID: ADBFE0C3-9761-459F-9A59-99B406B04C39

14.1. Default on Indebtedness. Failure to make any payment when due on the Loan and/or the Tiered Loan Monthly Interest Payment. This shall include the failure to pay to Lender $25,000/week as agreed upon herein.

14.2. Default on Depository Account. Failure to immediately notify Lender regarding any changes made to the Depository Account.

14.3. Default on Leases. Any default, termination or material change under the Leases.

14.4. Default on Sale of Units. The failure to use good faith in the marketing and sale of the Units.

14.5. Other Defaults. Failure of any Obligor to comply with or to perform when due any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents, or failure of any Obligor to comply with or to perform any other term, obligation, covenant or condition contained in any other agreement between Lender and such Obligor, including, without limitation, a default under any other loan referred to in the Note as constituting a default under the Note.

14.6. Default in Favor of Third Parties. Should an Obligor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of such Obligor's property or such Obligor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

14.7. False Statements. Any warranty, representation or statement made or furnished to Lender by or on behalf of an Obligor under this Agreement or the Related Documents is false or misleading in any material respect at the time made or furnished, or becomes false or misleading at any time thereafter.

14.8. Insolvency. The dissolution or termination of the existence of Borrower as a going business, the insolvency of Borrower, the appointment of a receiver for any part of property of Borrower, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws or against Borrower.

14.9. Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

14.10. Insecurity. Lender, in good faith, deems itself insecure.

15. **Effect of an Event of Default on Indebtedness.** In the event Obligor fails to make the Monthly Payment and/or the Weekly Payment, Lender shall have the right to all of the following remedies. Lender's failure to exercise any of its rights hereunder shall not constitute a waiver of any rights provided herein.

15.1. Exclusive control of Depository Account. If any monetary Event of Default shall occur, Lender, at Lender's option, shall have the right to sole and exclusive control of the Depository Account. Lender may exercise this right upon delivery of the attached notice to CCVR, with a copy to Tiered Capital, Inc. In the event Lender must exercise this right, Lender shall be released of any liability relating to the manner in which the collected rents are managed. Lender shall be under no duty or obligation to pay any other party, or any particular item relating to the Property.

15.2. CCVR Stock Option. If any monetary Event of Default shall occur, Lender, at Lender option, shall be entitled to exercise its option on the CCVR stock. Lender's exercise of its option shall be deemed exercised upon delivery of the notice to CCVR, with notice to Tiered Capital, Inc. (form of option attached); and/or

DocuSign Envelope ID: ADBFE0C3-9761-459F-9A59-99B406B04C39

15.3. Beneficial Ownership in Trust Property. The assignment of beneficial ownership of the Trust Property shall be executed contemporaneously herewith, and held in trust by the Closing Attorney.

Upon execution of this Loan Agreement, the Closing Attorney shall be authorized to release the following directly to Lender if Lender so elects in any monetary Event of Default: Assignment of Beneficial Interest in the Trust Property (attached). No advance notice to Borrower or Obligor shall be required.

16. **Effect of All Events of Default.**

16.1. If any Event of Default shall occur, except where otherwise provided in this Agreement or the Loan Documents, all commitments and obligations of Lender under this Agreement or the Loan Documents or any other agreement immediately will terminate (including any obligation to make disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Loan Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of any Obligor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

16.2. Further, notwithstanding any provision of the Note or any other Loan Documents, Lender may, following an Event of Default, and without declaring all amounts due and owing (i.e. accelerating the Loan), increase the Interest Rate by the highest rate allowed by law. Such interest rate shall apply until the later of the following to occur: (a) one calendar year after the Event of Default; or (b) the Event of Default is cured. Lender's pursuit of this remedy will not preclude Lender from thereafter accelerating the Loan or taking other remedies available under this Agreement or the Loan Documents.

17. **Release**. Upon satisfaction of all the Indebtedness, including any future advances or future loan or accommodations made to any Obligor hereunder, this Agreement shall terminate. As to Yaniv Amar, upon satisfaction of the loans made to Recycled Group of South Carolina, LLC and Holly Bluff Marina, Inc., and as long as no additional extensions of credit have been made to said obligor, Yaniv Amar shall be released from this Agreement. With the release from this Agreement, the undersigned will take the steps necessary to transfer all the shares of Holly and Recycled from the Tiered Land Trust unto Yaniv Amar, or his designee.

18. **Miscellaneous.**

18.1. Amendments. This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

18.2. Applicable Law. This Agreement has been delivered to Lender and accepted by Lender in the State of Florida. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Brevard County, the State of Florida. Lender and Borrower waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

18.3. Caption Headings. Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

18.4. Multiple Parties; Corporate Authority. All obligations of each Obligor under this Agreement shall be joint and several, and all references to an Obligor shall mean each and every Obligor. This means that each of the persons signing below is responsible for all obligations in this Agreement.

18.5. Notices. All notices required to be given under this Agreement shall be given in writing, may be sent by email (unless otherwise required by law), and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier or deposited in the United State mail, first class, postage prepaid, addressed to party to whom the notice is to be given at the address shown above. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. To the extent permitted by applicable law, if there is more than one Obligor, notice to any Obligor will constitute notice to all parties named as Obligor. For notice purposes, Obligor will keep Lender informed at all times of Obligor's current address(es).

18.6. Severability. If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

18.7. Successors and Assigns. All covenants and agreements contained by or on behalf of Borrower shall bind its successors and assigns and shall inure to the benefit of Lender, its successors and assigns.

18.8. Survival. All warranties, representations, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement shall be considered to have been relied upon by Lender and will survive the making of the Loan and delivery to Lender of the Related Documents, regardless of any investigation made by Lender or on Lender's behalf.

18.9. Time is of the Essence. Time is of the essence in the performance of this Agreement.

18.10. Waiver. Lender shall not be deemed to have waived any rights under this Agreement, or any loan documents relating to any loan obligation identified on Schedule 1, or any other agreement with the Obligors unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Obligors, shall constitute a waiver of any of Lender's rights or of any obligations of Borrower or of any Obligors as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender is any instance shall not constitute continuing consent in subsequent instances where such consent is required, and in all cases such consent may be granted or withheld in the sole discretion of Lender.

19. **Survival of Agreement.** This Agreement shall survive the closing of the Loan.

20. **Schedules and Exhibits.** All schedules and exhibits referred to herein and attached hereto shall be incorporated and made part of this Agreement.

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

The undersigned have agreed to the foregoing as of the date first set forth above.

______________________________
Kenneth G. Dixon
As Manager of PEDIXON LLC
AND
AS Manager of ZPD LLC

DocuSigned by:
By: Martin C. Flynn, Jr.
878801E49D94EA...
**Martin C. Flynn, Jr.**
Individually
AND as President of Sherwood Construction
AND as Manager of 650 85th LLC,
AND as Member of MTF Holdings, LLC,
AND as Manager of Cape Crossing Vacation Rentals, LLC
AND as President of Tiered Capital, Inc.

DocuSigned by:
By: Yaniv Amar
E2853268C66F4F8...
**Yaniv Amar**
Individually
AND as Manager of Recycled Group of South Carolina, LLC
AND as President of A Marine, Inc.
AND as President of Holly Bluff Marina, Inc.

DocuSigned by:
By: Horton S. Johnson
ED8DF801DDEE46B...
**Horton S. Johnson**
Individually
AND as Manager of Homemakers Real Estate, LLC
AND as Trustee of the Horton S. Johnson Revocable Trust dated August 3, 2012

**FLORIDA SPACE COAST RESORTS, INC.**
By: Alexandra M. Lezcano
8DA326825D78489...
Alexandra Lezcano, Authorized Agent

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

**STATE OF FLORIDA**
**COUNTY OF** Orange

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ✓ physical presence or __ online notarization on September 14, 2023, by Martin C. Flynn, Jr.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary Public, State of Florida
Name: Janelle Morea
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Notary: Check one of the following:
____ Personally known OR
✓ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: License

**STATE OF FLORIDA**
**COUNTY OF** Orange

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ✓ physical presence or __ online notarization on September 14, 2023, by Yaniv Amar.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary Public, State of Florida
Name: Janelle Morea
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Notary: Check one of the following:
____ Personally known OR
✓ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: License

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

**STATE OF FLORIDA**
**COUNTY OF** Orange

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ✓ physical presence or __ online notarization on September 14, 2023, by Alexandra Lezcano.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

[signature]
Notary Public, State of Florida
Name: Janelle Morea
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Notary: Check one of the following:
____ Personally known OR
✓ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: License

**STATE OF FLORIDA**
**COUNTY OF** Orange

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ✓ physical presence or __ online notarization on September 14, 2023, by Horton S. Johnson.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

[signature]
Notary Public, State of Florida
Name: Janelle Morea
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Notary: Check one of the following:
____ Personally known OR
✓ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: License

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

**SCHEDULE 1**

**Tiered Loans**
**Tiered Principals -- Loans as of 9/1/2023**

**Original January 2022 Loan – Modified and Renewed August 2022**

| | |
|---|---|
| Borrower: | Sherwood Construction, Inc. |
| Future Advance: | $250,000.00 represented by Allonge to Note |
| Total Note Amt: | **$600,000** |

**IMQA 506 Loan**

| | |
|---|---|
| Lender: | Parke Financial Limited Partnership |
| Borrower: | IMQA INVESTMENTS, INCORPORATED |
| Loan Amount: | **$300,000** |

**Recycled Group of SC**

| | |
|---|---|
| Lender: | ZPD LLC |
| Borrower: | Recycled Group of South Carolina, LLC |
| Loan Amount: | **$1,300,000** |

**Option Loan**

| | |
|---|---|
| Lender: | Pedixon LLC |
| Borrower: | Sherwood Construction, Inc. |
| Loan Amount: | **$500,000** |

**One Million Dollar Loan**

| | |
|---|---|
| Lender: | Pedixon LLC |
| Borrower: | Sherwood Construction, Inc. |
| Loan Amount: | **$1,000,000** |

**Resorts Common Area Loan**

| | |
|---|---|
| Lender: | Pedixon LLC |
| Borrower: | Sherwood Construction; Canaveral Crossroads as mortgagor |
| Loan Amount: | **$500,000** |

**River Fly Loan**

| | |
|---|---|
| Lender: | Pedixon LLC |
| Borrower: | Florida Space Coast Resorts, Inc. |
| Loan Amount: | **$3,000,000** |

**Holly Bluff Loan**

| | |
|---|---|
| Lender: | Pedixon LLC |
| Borrower: | Tiered Capital, Inc. |
| Loan Amount: | **$3,000,000** |

**Marty Loan**

| | |
|---|---|
| Lender: | Pedixon, LLC |
| Borrower: | Martin C. Flynn, Jr. |
| Loan Amount: | **$125,000** |

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

**EXHIBIT A**
**PROPERTY**

**Legal Descriptions of 26 Units**

# EXHIBIT B

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

**Tiered Land Trust Agreement**

**Dated September 13, 2023**

This Trust Agreement is made on this 13th day of September 2023 to certify that CRESCENT SOUND LTD., hereinafter called *Trustee,* as Trustee, is about to take title to the following: property described on Exhibit A attached hereto and made a part of this Agreement, consisting all the issued and outstanding stock of Holly Bluff Marina, Inc. located in Volusia County, FL, and twenty-six condominium and townhomes located at Cape Crossing Resort & Marina, in Brevard County FL (collectively the "Trust Property").

This Trust Agreement is to further certify that, when Trustee has taken the title to the described real estate, or to any of the real estate deeded to it as Trustee, Trustee will hold it for the uses and purposes and on the trusts set forth in this Agreement.

**1. Beneficiaries**

The following named persons are the Beneficiaries of this Trust, and as such shall be entitled to the earnings and proceeds of the Trust property according to the respective interests, as follows:

| Name & Address | Interest |
|---|---|
| Homemakers Real Estate, LLC<br>2875 S. ORANGE AVE, STE. 500<br>#6409, ORLANDO, FL | 100% as to the real estate property (26 units) |
| A Marine, Inc.<br>19589 NE 10th Ave.<br>Miami FL 33179 | 100% as to the stock of Holly Bluff Marina |
| Yaniv Amar<br>3475 Mystic Pointe Dr. #10<br>Aventura, FL 33180 | 100% as to the shares of Recycled Group of South Carolina |
| Tiered Capital<br>5526 Hansel Ave.<br>Orlando, FL 32809 | 100% as to the shares of Cape Crossing Vacation Rentals |

**2. Interests of Beneficiaries as Personalty**

The interests of the Beneficiaries shall consist solely of a power of direction to deal with title to the Trust property, a power to manage and control the property as provided in this Agreement and the right to receive the proceeds from rentals and from mortgages, sales, or other disposition of the property. The right to the proceeds of the property shall be deemed to be personal property and may be assigned and transferred as such. In case of the death of any Beneficiary during the existence of this Trust, the Beneficiary's right and interest under this Agreement shall, except as otherwise specifically provided, pass to the Beneficiary's executor or administrator, and not to his or her heirs at law. No Beneficiary now has or shall have any right, title, or interest in or to any proportion of any real estate as such, either legal or equitable, but only an interest in the earnings and proceeds of the real estate.

**3. Death of Beneficiary**

The death of any Beneficiary shall not terminate the Trust or in any manner affect the powers of Trustee.

**4. Assignment of Beneficial Interests**

No assignment of any beneficial interests under this Agreement shall be binding on Trustee until the original or duplicate of the assignment in a form satisfactory to Trustee is delivered to Trustee. Any assignment not so delivered to Trustee shall be void as to all subsequent assignees or purchasers without notice.

**5. Income Tax Returns**

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

Trustee shall not be obligated to file any income, profit, or other tax reports or schedules. The Beneficiaries shall individually make all such reports, and pay any and all taxes on the earnings and proceeds of the trust property or growing out of their interest under this Agreement.

**6. Reimbursement and Indemnification of Trustee**

If Trustee makes any advances of money on account of this Trust, is made a party to any litigation on account of holding title to the real estate or in connection with this Trust, or if Trustee is compelled to pay any sum of money on account of this Trust, whether on account of a breach of contract, injury to personal property, fines or penalties under any law, or otherwise, the Beneficiaries will on demand pay to Trustee, with interest at the rate of ten percent per year, all such disbursements or advances or payments made by Trustee, together with Trustee's expenses, including reasonable attorney fees. Trustee shall not be called on to convey or otherwise deal with the trust property at any time held under this Agreement until all of the disbursements, payments, advances, and expenses made or incurred by Trustee have been fully paid, together with interest. Trustee shall not be required to advance or to pay out any money on account of this trust or to prosecute or defend any legal proceedings involving this trust or any property or interest under this Agreement unless Trustee is furnished with funds sufficient for the same or is satisfactorily indemnified.

**7. Protection of Third Parties**

No party dealing with Trustee in relation to the Trust property in any manner whatsoever, and no party to whom the property or any part of or interest in it is conveyed, contracted to be sold, leased, or mortgaged by Trustee, shall be obliged to see to the application of the purchase money paid or to inquire into the necessity or expediency of any act of Trustee or the provisions of this instrument.

**8. Recordation**

This Agreement shall not be placed on record in the recorder's office of the county in which the Trust property is situated, or elsewhere. Any such recording shall not be considered as notice of the rights of any person under this Agreement derogatory to the title or powers of Trustee.

**9. Disclosure of Beneficiaries' Names**

In the event of service of process on Trustee at any time, Trustee may in its discretion disclose to the other parties to any such proceeding the names and addresses of the Beneficiary or Beneficiaries.

**10. Resignation of Trustee**

Trustee may resign at any time by sending a notice of its intention to do so by registered mail to each of the Beneficiaries at his or her address last known to Trustee. Such resignation shall become effective ten days after the mailing of the notices. In the event of the Trustee's resignation, a successor or successors may be appointed by the person or persons then entitled to direct Trustee in the disposition of the Trust property. Trustee shall then convey the Trust property to such successor or successors in trust. If no successor in trust is named within ten days after the mailing of the notices, Trustee may convey the Trust property to the Beneficiaries in accordance with their respective interests under this Agreement, or Trustee may, at its option, file a bill for appropriate relief in any court of competent jurisdiction. Notwithstanding the resignation of Trustee, Trustee shall continue to have a first lien on the Trust property for its costs, expenses, and attorney fees, and for its reasonable compensation. Every successor or successors in trust shall become fully vested with all the estate, properties, rights, powers, trusts, duties, and obligations of its, his, her or their predecessor.

**11. Duties of Trustee**

Trustee assumes and agrees to perform the following active and affirmative duties under this Agreement:

A. Upon receipt of written direction from a beneficiary hereunder, Trustee shall execute such instruments as shall be necessary:

1. To protect and conserve the Trust property;

2. To sell, contract to sell, and grant options to purchase the property and any right, title or interest in the property on any terms;

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

3. To exchange the property or any part of it for any other real or personal property on any terms;

4. To convey the property by deed or other conveyance to any grantee, with or without consideration;

5. To mortgage, execute principal and interest notes, pledge or otherwise encumber the property or any part of it;

6. To lease, contract to lease, grant options to lease and renew, extend, amend, and otherwise modify leases on the property or any part of it, for any period of time, for any rental, and on any other terms and conditions; and

7. To release, convey, or assign any other right, title, or interest whatsoever in the property or any part of the property.

B. Any and all trust deeds, mortgages, and notes executed by Trustee shall contain provisions exempting and exonerating the Beneficiaries under this Trust from all personal obligation and liability whatsoever by reason of the execution of the same and from any and all personal obligation or liability for the repayment of the borrowed money evidenced and secured by the same.

C. Trustee shall not be required to inquire into the authenticity, necessity, or propriety of any written direction delivered to it pursuant to this section or otherwise under this Agreement. Any Beneficiary who is not vested with the foregoing power of direction may, by a written notice delivered to Trustee, prevent Trustee from dealing with title to the Trust property except on the written collective direction of all the Beneficiaries under this Agreement.

D. If any property remains in trust twenty years from the date of this Agreement, Trustee shall promptly sell the same at public sale after a reasonable public advertisement and reasonable notice of the sale to the Beneficiaries. After deducting its reasonable fees and expenses and satisfying all lien holders, Trustee shall divide the proceeds of the sale among the Beneficiaries as their interests may then appear without any direction or consent whatsoever, or shall transfer, set over, convey, and deliver to all the then Beneficiaries of this trust their respective undivided interest in any nondivisible assets, or shall transfer, settle, and deliver all of the assets of the Trust to the Beneficiaries in their respective proportionate interests at any time that the assets of the Trust consist solely of cash.

**12. Management and Operation of Trust Property**

The Beneficiaries shall, in their own right, have full and exclusive control over the management and operation of the Trust property and control of the sale, rental, or other disposition of it. Each Beneficiary, or his or her agent, shall collect and otherwise handle his or her share of the rents and proceeds and the proceeds of any sale or other disposition. Trustee shall have no duty respecting the payment of taxes, insurance premiums, or other costs or charges against or concerning the Trust property.

Notwithstanding the foregoing, upon receipt of written instructions from the Beneficiaries, Trustee must manage and execute the Trust Property accordingly.

**13. Compensation of Trustee**

The Beneficiaries shall pay Trustee as its compensation the following: Reasonable compensation for any regular and/or special services that may be rendered by Trustee under this Agreement, and for taking and holding title to any other property that may later be conveyed to Trustee.

**14. Binding on Successors**

The terms and conditions of this Agreement shall inure to the benefit of and be binding on any successor Trustee and on all successors in interest of the Beneficiaries.

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

**15. Governing Law**

This Agreement shall be construed and regulated, and its validity and effect shall be determined, by the laws of the State of Florida as such laws may from time to time exist.

**On this 13th day of September 2023 the undersigned beneficiaries and trustee execute this Agreement.**

**BENEFICIARY:**

**HOMEMAKERS REAL ESTATE, LLC**

Horton S. Johnson

ED9DF901DDBE488...

Horton S. Johnson, Manager

Witness 1 Signature

Gabrielle Milotte

Printed Name of Witness

Witness 2 Signature

Anthony Amodeo

Printed Name of Witness

**BENEFICIARY:**

**CAPE CROSSING VACATION RENTALS, LLC**

Martin C. Flynn, Jr.

8766014E40B04EA...

Martin C. Flynn, Manager

Witness 1 Signature

Gabrielle Milotte

Printed Name of Witness

Witness 2 Signature

Anthony Amodeo

Printed Name of Witness

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

**BENEFICIARY:**

**TIERED CAPITAL, INC.**

Martin C. Flynn, President

Witness 1 Signature

Printed Name of Witness

Witness 2 Signature

Printed Name of Witness

**BENEFICIARY:**

**A MARINE, INC.**

By: 

Yaniv Amar, President

Witness 1 Signature

Printed Name of Witness

Witness 2 Signature

Printed Name of Witness

**BENEFICIARY:**

**RECYCLED GROUP OF SOUTH CAROLINA, LLC**

Yaniv Amar, Manager

Witness 1 Signature

Printed Name of Witness

Witness 2 Signature

Printed Name of Witness

**TRUSTEE:**

**CRESCENT SOUND, LTD.**

______________________________
Kenneth G. Dixon, General Partner

______________________________
Witness 1 Signature

______________________________
Printed Name of Witness

______________________________
Witness 2 Signature

______________________________
Printed Name of Witness

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

**STATE OF FLORIDA**
**COUNTY OF** Orange

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ✓ physical presence or __ online notarization on September 13, 2023, by Yaniv Amar.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

[signature]
Notary Public, State of Florida
Name: Janelle Morea
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Notary: Check one of the following:
____ Personally known OR
✓ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: License

**STATE OF FLORIDA**
**COUNTY OF** Orange

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ✓ physical presence or __ online notarization on September 13, 2023, by Horton S. Johnson.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

[signature]
Notary Public, State of Florida
Name: Janelle Morea
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Notary: Check one of the following:
____ Personally known OR
✓ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: License

**STATE OF FLORIDA**
**COUNTY OF** Orange

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ✓ physical presence or __ online notarization on September 13, 2023, by Martin C. Flynn, Jr..

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

[signature]
Notary Public, State of Florida
Name: Janelle Morea
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Notary: Check one of the following:
____ Personally known OR
✓ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: License

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

**STATE OF FLORIDA**
**COUNTY OF** ________________

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ____ physical presence or __ online notarization on September ____, 2023, by Kenneth G. Dixon.

______________________________
Notary Public, State of Florida
Name: __________________________
(Please print or type)

Commission Number:
Commission Expires:

Notary: Check one of the following:
____ Personally known OR
____ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: ________________________________

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

**JOINT BENEFICIARY INSTRUCTIONS TO TRUSTEE REGARDING TRUST PROPERTY:**

On this 14th day of September 2023, the undersigned beneficiaries, constituting 100% of the beneficiaries under the Tiered Land Trust Agreement created as of the date hereof, hereby adopt a resolution to sell two Cape Crossing Resort and Marina townhome/condominium units ("Units') each month commencing with the date hereof in its effort satisfy the debts and obligations set forth on the attached schedule. Units should continue to be marketed for sale, with two new units being listed each month.

The intention of the beneficiaries is to pay off the indebtedness in accordance with the loan agreement entered into on this date.

All of the shares of stock constituting trust property should be held in trust, and only released in the event of either the termination of the loan agreement, or a default under the loan agreement, and/or any of its related loan documentation.

The beneficiaries further acknowledge and provide notice that the first mortgages on the Units will be timely paid. If the collected rents of Cape Crossing Vacation Rentals, LLC are insufficient to pay the existing first mortgages, Homemakers Real Estate, LLC as the sole beneficial owner of said Units will ensure that the mortgages are paid to prevent a default under the loan agreement entered into on this date.

This shall further serve as notice of the realtor and listing agreement handling the sale of the units.

By signature hereto, the Trustee is authorized and directed to take the necessary action to effectuate this plan effective on this 14th day of September 2023.

**HOMEMAKERS REAL ESTATE, LLC**

DocuSigned by:
Horton S. Johnson
Horton S. Johnson, Manager

**TIERED CAPITAL, INC.**

DocuSigned by:
Martin C. Flynn, Jr.
8788014E49D94EA...
Martin C. Flynn, President

**A MARINE, INC.**

By: Yaniv Amar
E2853268EC1F4F8...
Yaniv Amar, President

**CAPE CROSSING VACATION RENTALS, LLC**

By: Martin C. Flynn, Jr.
8788014E49D94EA...
Martin C. Flynn, Jr.

**RECYCLED GROUP OF SOUTH CAROLINA, LLC**

By: Yaniv Amar
E2853268EC1F4F8...

Yaniv Amar, Manager

Realtor Contact:

______________________________

______________________________

______________________________

# EXHIBIT C

DocuSign Envelope ID: 90782883-FE20-4A15-A658-110FB6D3929D

**Assignment of Beneficial Interest in Trust**

I, Horton S. Johnson, as Manager of Homemakers Real Estate, LLC, a Florida limited liability company, in consideration of the loan accommodations made by PEDIXON, LLC, a Florida limited liability company, and in furtherance of the terms and conditions set forth in the loan agreement dated September 13, 2023, do now assign unto CRESCENT SOUND, LTD., as Trustee of the TIERED LAND TRUST U/T/D 9/13/2023 all my right, title and interest in and to the real property more particularly described on Exhibit A attached hereto, and incorporated herein.

I have executed this assignment in Orlando, Florida on this 13th day of September 2023.

DocuSigned by:
Horton S. Johnson
FD9DF9710D5E488...

*Horton S. Johnson*
*Manager of*
*Homemakers Real Estate, LLC*

STATE OF FLORIDA
COUNTY OF Orange

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ✓ physical presence or __ online notarization on September 13, 2023, by Horton S. Johnson.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

[signature]
Notary Public, State of Florida
Name: Janelle Morea
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Notary: Check one of the following:
_____ Personally known OR
✓ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: License

DocuSign Envelope ID: 90782883-FE20-4A15-A658-110FB6D3929D

EXHIBIT A
LEGAL DESCRIPTION

(26 UNITS)

# EXHIBIT D

**ALISON PITKANEN LAW FIRM LLC**
**1980 N. Atlantic Ave, Suite 328, Cocoa Beach, FL 32931**
**Phone: (407) 449-0037**
**Email: alisonpitkanen@gmail.com**

December 20, 2023

Tiered Capital, Inc.

Sent Via Email to: Martin C. Flynn, Jr., Horton S. Johnson and Yaniv Amar
martyf@sherwoodconstruction.net; wjohnsonbbf@gmail.com; yamarllc@gmail.com

RE: PEDIXON LLC ("PEDIXON") loan to Tiered Capital, Inc. ("Tiered") as consolidated in September 2023 (the "Consolidated Loan") for a total loan amount of Ten Million Six Hundred Twenty-Five Thousand Dollars and No/Cents ($10,625,000) (the "Total Loan Amount").

Dear Gentlemen:

This shall serve as notice that the Consolidated Loan, and all its underlying loans, are currently in default. Please be advised that the following individuals are each **personally liable** for payment of the Total Loan Amount: Martin C. Flynn, Jr. ("Flynn"), Horton S. Johnson ("Johnson") and Yaniv Amar ("Amar").

There have been several defaults under the Consolidated Loan regarding non-payment of indebtedness, termination of the leases and management of the depository accounts. Ultimately, Tiered has failed to pay PEDIXON the November 2023 and the December 2023 payments; and all of the payments made with the rents generated from Cape Crossing Vacations Rentals, LLC since November 1, 2023 are an express violation of the Consolidated Loan.

IMQA Investments Incorporated ("IMQA") has been notified as a guarantor under the Consolidated Loan, and it has agreed to work with PEDIXON in its efforts to enforce the Consolidated Loan.

Consequently, from this date forward, PEDIXON will have exclusive control over the income generated from Beachside Vacation Rentals, LLC ("Beachside") for its rental of the twenty-seven condominiums and townhomes subject to the Consolidated Loan. Beachside has already been notified, and it has agreed to deliver all rental monies directly to Alison Pitkanen Law Firm for the benefit of PEDIXON. All Tiered agents and employees should be notified immediately to ensure there is no longer any apparent confusion over the management of the rental monies generated from these units.

In addition, please be advised that PEDIXON is further exploring all options under the Consolidated Loan, which include, but are not limited to the following remedies. You will be notified accordingly depending on how PEDIXON chooses to proceed.

- Enforcement of Flynn's personal guaranty in its collection of the Total Loan Amount of $10,625,000.
- Enforcement of Johnson's personal guaranty in its collection of the Total Loan Amount of $10,625,000.
- Enforcement of Amar's personal guaranty in its collection of the Total Loan Amount of $10,625,000.
- Acceleration of the interest rate to 25%
- Sale of all condominiums and townhomes
- Sale of the real estate of 650 85TH, LLC
- Sale of the stock and the real and personal property of Holly Bluff Marina, Inc.
- Sale of the stock and the real and personal property of Recycled Group of South Carolina, LLC

If you have any questions regarding this matter, please feel free to contact me.

Respectfully,

Alison Pitkanen, Esquire
CAC153A5D9DE44D...

cc: IMQA

# EXHIBIT E

Case 6:25-bk-02685-GER Doc 24-5 Filed 05/23/25 Page 2 of 2

**ALISON PITKANEN LAW FIRM LLC**
**1980 N. Atlantic Ave, Suite 328, Cocoa Beach, FL 32931**
**Phone: (407) 449-0037**
**Email: alisonpitkanen@gmail.com**

January 9, 2024

Homemakers Real Estate, LLC
Horton S. Johnson
2875 S. Orange Ave.
STE 500 #6409

Sent US Mail and Via Email to Horton S. Johnson
wjohnsonbbf@gmail.com

RE: PEDIXON LLC ("PEDIXON") loan to Tiered Capital, Inc. ("Tiered") as consolidated and agreed upon in September 2023 (the "Consolidated Loan Agreement") for a total loan amount of Ten Million Six Hundred Twenty-Five Thousand Dollars and No/Cents ($10,625,000) (the "Total Loan Amount").

Dear Mr. Johnson:

As you have been previously informed, there have been numerous monetary and non-monetary defaults under the Consolidated Loan Agreement since November 1, 2023.

This shall serve as notification that PEDIXON has exercised its rights under the Consolidated Loan Agreement as to Homemakers Real Estate, LLC. As a result, Horton S. Johnson has agreed to relinquish control of all of its membership units.

As a result of the express monetary default, the undersigned has been authorized and directed to release the following unto PEDIXON: all membership units of Homemakers Real Estate, LLC.

Please execute the attached to acknowledge notification and agreement hereof, and I will release said assignment of membership units directly to PEDIXON.

If you have any questions regarding this matter, please feel free to contact me.

Respectfully,

Alison Pitkanen

Alison Pitkanen, Esquire

cc: PEDIXON, LLC