**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

HOMEMAKERS REAL ESTATE, LLC,

Case No. 6:25-bk-05570-GER
Chapter 11

Debtor.
_______________________________________/

**CHAPTER 11 TRUSTEE'S PLAN OF LIQUIDATION**

LARA ROESKE FERNANDEZ
*Chapter 11 Trustee*

RHYS P. LEONARD
Florida Bar No.: 59176
rleonard@trenam.com
ANTHONY P. MARZOCCA
Florida Bar No. 1068857
amarzocca@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, P.A.
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
Tel: (813) 223-7474 | Fax: (813) 229-6553
*Counsel to Chapter 11 Trustee*

September 18, 2026

PURSUANT TO 11 U.S.C. § 1125, NOTHING CONTAINED IN THIS CHAPTER 11 TRUSTEE'S PLAN OF LIQUIDATION FOR HOMEMAKERS REAL ESTATE, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE (THE "**PLAN**") SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THE PLAN UNTIL SUCH TIME AS THE TRUSTEE'S DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN APPROVED BY AN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THE PLAN. THE TRUSTEE RESERVES THE RIGHT TO FILE AN AMENDED OR AN AMENDED AND RESTATED PLAN AND AN AMENDED OR AN AMENDED AND RESTATED DISCLOSURE STATEMENT FROM TIME-TO-TIME HEREAFTER. REFERENCE IS MADE TO SUCH DISCLOSURE STATEMENT FOR A DISCUSSION OF THE DEBTOR'S HISTORY, BUSINESS, PROPERTY, AND OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE BANKRUPTCY CASE, A SUMMARY OF THE MEANS OF IMPLEMENTING AND FUNDING THE PLAN, AND THE PROCEDURES FOR VOTING ON THE PLAN. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THE PLAN AND THE DISCLOSURE

STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## INTRODUCTION

Lara Roeske Fernandez, in her capacity as the duly appointed Chapter 11 Trustee (the "**Trustee**") of Homemakers Real Estate, LLC (the "**Debtor**"), proposes the following plan of liquidation (the "**Plan**") pursuant to Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I of the Plan. Reference is made to the Disclosure Statement for a discussion of the Debtor's known history, as well as a summary and analysis of the Plan and other related matters, including distributions to be made under the Plan. The Trustee is the proponent of the Plan (the "**Plan Proponent**") within the meaning of section 1129 of the Bankruptcy Code.

Tiered Capital, Inc. commenced this case by filing an involuntary petition under Chapter 11 of the Bankruptcy Code against the Debtor on September 2, 2025. On May 21, 2026, the Bankruptcy Court denied the Debtor's motion to dismiss the involuntary petition, entered an order for relief, and directed the appointment of a Chapter 11 trustee in the event the dispute over the ownership and control of the Debtor was not resolved. The Bankruptcy Court thereafter approved the appointment of Lara Roeske Fernandez as the Chapter 11 Trustee. Pursuant to sections 1106 and 704 of the Bankruptcy Code, the Trustee has taken control of the Debtor's property and operations, and the Debtor is no longer a debtor-in-possession.

The Plan is a liquidating plan. The Plan provides for the sale of the Debtor's twenty-six condominium and townhouse units located at the Cape Crossing Resort & Marina in Merritt Island, Brevard County, Florida (the "**Units**"), free and clear of all Liens, Claims, encumbrances, and interests pursuant to sections 363 and 1123(a)(5)(D) of the Bankruptcy Code, with such Liens to attach to the proceeds of sale in the same validity, extent, and priority as existed as of the Petition

Date, subject to the terms of the Plan and further order of the Bankruptcy Court. The Net Sale Proceeds, together with the Debtor's Cash, and the net recoveries on the Causes of Action, will fund payment of Allowed Administrative Expenses, Allowed Priority Tax Claims, and Distributions to Holders of Allowed Claims as set forth herein. All Causes of Action are expressly retained by, and shall remain vested in, the Estate and shall be prosecuted, settled, or abandoned by the Trustee for the benefit of the Estate.

This Plan provides for six (6) classes of secured claims; one (1) class of general unsecured claims; and one (1) class for the Interests in the Debtor. Only Holders of certain Claims specified in the Plan are entitled to vote on the Plan. ALL CREDITORS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY AND CONSULT WITH COUNSEL AND OTHER APPLICABLE PROFESSIONALS BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. WITHOUT LIMITING THE FOREGOING, ALL HOLDERS OF CLAIMS OR INTERESTS ARE URGED TO CAREFULLY READ THE INJUNCTION PROVISIONS SET FORTH HEREIN.

SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3019, THE PLAN PROPONENT RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

## ARTICLE I—DEFINITIONS AND INTERPRETATION

### A. Definitions

For purposes of this Plan, the following definitions shall apply unless the context clearly requires otherwise:

**Administrative Claim** shall mean any Claim for the payment of an Administrative Expense.

**Administrative Claims Bar Date** shall mean the last day established by the Bankruptcy Court for filing an application, request, or motion for allowance of an Administrative Claim.

**Administrative Expense** shall mean any cost or expense of administration of the Chapter 11 Case that is allowed under §§ 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, request or motion seeking such cost or expense in the Chapter 11 Case on or before the applicable Administrative Claims Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estate incurred after the Petition Date; (ii) any post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Trustee on behalf of the Estate; (iii) any claim granted administrative priority status by a Final Order of the Bankruptcy Court; (iv) compensation of the Trustee awarded or Allowed pursuant to §§ 326 and 330 of the Bankruptcy Code; and (v) compensation or reimbursement of expenses of Professionals awarded or Allowed pursuant to an order of the Bankruptcy Court under §§ 330(a) or 331 of the Bankruptcy Code; provided, however, that when used in the Plan, the term Administrative Expense shall not include any Priority Tax Claim, any Disallowed Claim, or, unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 8.

**Allowed** when used with respect to a Claim or Interest, shall mean a Claim or Interest (a) proof of which was filed with the Bankruptcy Court on or before the Bar Date, and (i) as to which no objection has been filed by the Objection Deadline, or (ii) as to which an objection was filed by the Objection Deadline, to the extent Allowed by a Final Order; or (b) Allowed by a Final Order.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Priority Tax Claim** shall mean a Priority Claim pursuant to 11 U.S.C. § 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**Assets** shall mean all the assets, property, and cash of the Debtor and the Estate, as defined in § 541 of the Bankruptcy Code (excluding assets previously distributed, expended, or otherwise disposed of prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including, without limitation, the Units, the Cash, and the Causes of Action.

**Ballot** shall mean the ballot accompanying the Disclosure Statement upon which Holders of Impaired Claims entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the voting instructions.

**Ballot Date** shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received.

**Bankruptcy Case** or **Chapter 11 Case** or **Case** shall mean the bankruptcy case of the Debtor pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, Case No. 6:25-bk-05570-GER, under the caption *In re: Homemakers Real Estate, LLC*.

**Bankruptcy Code** or **Code** shall mean 11 U.S.C. § 101, et seq., and any amendments thereto.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

**Bankruptcy Rules** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure, as amended, and as supplemented by the Local Rules of Practice and Procedure of the Bankruptcy Court, as amended (the "**Local Rules**").

**Bar Date** shall mean July 30, 2026, the general deadline fixed by the Bankruptcy Court for the filing of proofs of Claim, and November 17, 2026, the deadline fixed for the filing of proofs of Claim by governmental units, or such other dates fixed by notice or Order of the Bankruptcy Court by which proofs of Claim must be filed against the Debtor.

**Brevard County Tax Collector** shall mean the Brevard County, Florida Tax Collector, and any other taxing authority holding a statutory Lien for ad valorem real property taxes assessed against the Units, together with any third party holding a tax certificate with respect to any of the Units.

**Business Day** shall mean any day except Saturday, Sunday, or any legal holiday.

**Cape Crossing Condominium Association** shall mean the Cape Crossing Condominium Association, Inc., the condominium association having authority to assess and collect assessments against the Debtor's eighteen (18) condominium Units.

**Cape Crossing Townhome Owners Association** shall mean the Cape Crossing Townhome Owners Association, Inc., the homeowner association having authority to assess and collect assessments against the Debtor's eight (8) townhome Units.

**Carton Trust** shall mean The Carton Family Trust of 1992 Dated October 14, 1992.

**Carton Trust Judgment** shall mean that certain Uniform Final Judgment of Mortgage Foreclosure entered on July 15, 2025 in Case No. 05-2024-CA-038140-XXCA-BC, Brevard County, Florida, in favor of the Carton Trust in the amount of $376,757.47, together with statutory interest accruing thereon, secured by Townhouse unit 104.

**Cash** shall mean cash or cash equivalents, including, but not limited to, checks, bank deposits, or other similar items, including funds on deposit in the Trustee's debtor-in-possession account.

**Carve-Out** shall mean the carve-out from the proceeds of the sale of the Units, in an amount equal to [•] percent ([•]%) of the gross purchase price of each Unit sold, which Holders of Secured Claims have agreed, or shall be deemed by acceptance of the Plan to have agreed, shall be carved out of the proceeds otherwise payable on account of the Allowed Secured Claims and made available to the Estate for the payment of Allowed Administrative Expenses, Allowed Priority Tax Claims, and Distributions under the Plan.[1]

**Causes of Action** shall mean all actions and causes of action of the Debtor or the Estate and the proceeds thereof, whether or not commenced as of the date hereof, all of which shall remain vested in the Estate and enforceable by the Trustee, including but not limited to: (a) all proceedings commenced or to be commenced pursuant to Bankruptcy Code §§ 502, 506, 510, 542 through 551, and 553 (or equivalent provisions of applicable non-bankruptcy law); (b) all claims against Creditors or Holders of Interests, parties having dealings, relationships, or transactions with or related to the Debtor, and any party named or identified in the Debtor's schedules or statement of

---

[1] The Trustee expressly reserves the right to file a plan supplement or an amended Plan containing the amount of the Carve-Out.

financial affairs or in any pleadings filed in this Chapter 11 Case; and (c) the Estate's rights of setoff, recoupment, contribution, reimbursement, subrogation, turnover, or indemnity and any other direct or indirect claim of any kind whatsoever.

**Claims Objection Bar Date** or **Objection Deadline** shall mean the date by which objections to Claims must be filed with the Bankruptcy Court; to wit, sixty (60) days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

**Class** shall mean a group of Claims or Interests substantially similar to each other as classified under this Plan.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order pursuant to § 1129 of the Code.

**Confirmation Date** shall mean the date the Confirmation Order becomes final and non-appealable.

**Confirmation Hearing** shall mean the hearing set by the Bankruptcy Court on confirmation of the Plan.

**Confirmation Order** shall mean the order entered by the Bankruptcy Court confirming the Plan.

**Creditor** shall have the meaning ascribed to it in § 101(10) of the Bankruptcy Code.

**Crescent** shall mean Crescent Sound, Ltd., the entity that served, or purported to serve, as trustee of the Tiered Land Trust.

**Debtor** shall mean Homemakers Real Estate, LLC.

**Disclosure Statement** shall mean the disclosure statement of the same date as this Plan filed by the Trustee pursuant to Bankruptcy Code § 1125 and any amendments thereto, including all exhibits.

**Disputed Claim** shall mean a Claim against the Debtor which is not an Allowed Claim and which has not been disallowed by a Final Order of the Bankruptcy Court.

**Distribution** shall mean the distribution under the Plan to the Holders of Allowed Claims.

**Distribution Date** when used with respect to each Claim shall mean the date on which distributions to the Holder of the Claim will be made in accordance with the Plan.

**Effective Date** shall mean, if no stay of the Confirmation Order is in effect, the date which is a Business Day thirty (30) days following the date of entry of the Confirmation Order.

**Estate** shall mean the estate created pursuant to § 541 of the Code by the commencement of the Debtor's Bankruptcy Case, including all property of the estate as defined in § 541 of the Code.

**Final Order** shall mean an Order or judgment of any court with jurisdiction which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending or, in the discretion of the Trustee, if an appeal is filed and no stay has been entered.

**Holder(s)** shall mean (a) as to any Claim, (i) the owner or holder of such Claim as reflected on the Proof of Claim filed with respect to such Claim, or (ii) if the owner or holder of such Claim has transferred the Claim to a third party and sufficient written evidence of such transfer has been filed with the Bankruptcy Court in accordance with Bankruptcy Rule 3001(e), the transferee; and (b) as to any Interest, the record owner or holder of such Interest.

**Impaired** shall mean, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

**Interest** shall mean any equity or membership interest in the Debtor and any right arising therefrom, which Interests are treated in Class 8 of the Plan.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, judgment lien, or other security device of any kind affecting any asset or property of the Debtor or the Estate.

**Mainstreet** shall mean Mainstreet Community Bank of Florida.

**Mainstreet Loan One** shall mean the indebtedness asserted as owed to Mainstreet in Proof of Claim No. 64-1, in the approximate principal amount of $3,611,594.47 (with an estimated total in excess of $4,793,000.00), secured by condominium Units 103, 104, 107, 202, 203, 205, 207, 307, 407 and 507 and townhome Units 2-101, 2-102, 7-101, 7-103 and 8-101.

**Mainstreet Loan Two** shall mean the indebtedness asserted as owed to Mainstreet in Proof of Claim No. 63-1, in the approximate principal amount of $712,105.80 (with an estimated total in excess of $920,000.00), secured by townhome Units 5-101 and 5-103.

**Net Sale Proceeds** shall mean, with respect to each Unit or group of Units sold, the gross proceeds of sale less (i) ordinary and customary costs of sale and closing, including any Bankruptcy Court-approved broker's or auctioneer's commissions, (ii) prorated ad valorem real property taxes and other customary prorations, and (iii) closing payoffs of Allowed Secured Claims senior in priority as provided in the Plan or in any order approving such sale.

**Petition Date** shall mean September 2, 2025, the date on which the involuntary petition commencing the Bankruptcy Case was filed.

**Plan** shall mean this Chapter 11 Trustee's Plan of Liquidation, as amended in accordance with the terms hereof or modified in accordance with the Bankruptcy Code.

**Priority Non-Tax Claim** shall mean a Claim entitled to priority pursuant to §§ 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of the Bankruptcy Code.

**Priority Tax Claim** shall mean a Claim entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code.

**Pro Rata** shall mean proportionately, so that the ratio of the amount of a particular Allowed Claim to the total amount of Allowed Claims of the applicable Class is the same as the ratio of the Distribution on account of such Allowed Claim to the total Distributions on account of all Allowed Claims of such Class.

**Professional** shall mean (i) any professional retained in the Chapter 11 Case pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 of the Bankruptcy Code, including counsel for the Trustee, the Trustee's accountant, the Trustee's real estate broker(s), and the Trustee's auctioneer; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to § 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to § 1129(a)(4) of the Bankruptcy Code.

**Proof of Claim** shall mean a proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001, 3002, or 3003.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable non-bankruptcy law, but only to the extent of the value of the Holder's interest in the Estate's interest in the property securing the Claim as provided under § 506(a) of the Code. A Secured Claim which is challenged by the Trustee shall only be Allowed to the extent that such claim is deemed to be Allowed in the Plan or the underlying security interest is recognized as valid by the Bankruptcy Court, and the difference in amount between such a Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Surcharge** shall mean the recovery by the Trustee from property securing an Allowed Secured Claim, pursuant to § 506(c) of the Bankruptcy Code, of the reasonable and necessary costs

and expenses of preserving or disposing of such property, to the extent of any benefit to the Holder of such Claim; provided, that the Surcharge, if any, may be included within the amount of the Carve-Out, if any.

**Tamamoi** shall mean Tamamoi, LLC.

**Tamamoi Judgment** shall mean that certain Uniform Final Judgment of Mortgage Foreclosure entered on May 20, 2026, in Case No. 05-2024-CA-023943-XXCA-BC, Brevard County, Florida, in favor of Tamamoi in the amount of $3,378,797.64, together with statutory interest accruing thereon, secured by condominium Units 206, 303, 305, 402, 404, 503, 504, and 505.

**Tiered Land Trust** or **Trust** shall mean the land trust created under that certain Tiered Land Trust Agreement dated September 13, 2023, of which the Debtor was a beneficiary and Crescent served, or purported to serve, as trustee.

**Trustee** shall mean Lara Roeske Fernandez, in her capacity as the duly appointed Chapter 11 Trustee of the Estate, and any successor trustee.

**Unimpaired Claim** shall mean a Claim that is not impaired within the meaning of § 1124 of the Bankruptcy Code.

**Units** shall mean, collectively, the twenty-six (26) condominium and townhouse units owned by the Debtor located at the Cape Crossing Resort & Marina in Merritt Island, Brevard County, Florida, as more particularly identified in the Disclosure Statement.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, et seq., and, as used in the Plan, refers to the Office of the United States Trustee for Region 21.

**Unsecured Claim** shall mean a Claim other than an Administrative Expense, a Priority Non-Tax Claim, a Priority Tax Claim, a Secured Claim, or an Interest, including any deficiency Claim arising under § 506(a) of the Code.

**B. Bankruptcy Code Definitions**

Definitions in the Bankruptcy Code and Bankruptcy Rules shall be applicable to the Plan unless otherwise defined in the Plan. The rules of construction in Bankruptcy Code § 102 shall apply to the Plan.

**C. Undefined Terms**

A term used in the Plan and not defined herein has the meaning ascribed to such term in the Bankruptcy Code or Rules.

**D. Interpretation**

Unless otherwise specified, all sections, articles, and exhibits referenced in the Plan are to the respective sections in, articles of, or exhibits to, the Plan, as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa. As to contested matters, adversary proceedings, and other actions or threatened actions, this Plan and the Disclosure Statement shall not be construed as a stipulation or admission, but rather as a statement made in settlement negotiations. Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or in the Bankruptcy Rules shall have the meaning given to it in the Bankruptcy Code or the Bankruptcy Rules, which shall be controlling in the case of a conflict or ambiguity.

## ARTICLE II—CLASSIFICATION OF CLAIMS AND INTERESTS

### A. General Rules of Classification

Generally, a Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of the Class and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class. If a Claim qualifies for inclusion in a more specifically defined Class, then the Claim shall be included only in the more specifically defined Class. Notwithstanding anything contained herein to the contrary, if a Claim is not Allowed, then the Trustee and the Estate are not bound by a classification made or implied herein.

### B. Classifications

All Claims and Interests treated under Articles III through V of the Plan are divided into the following Classes, which shall be mutually exclusive:

**Class 1—Mainstreet Loan One Secured Claim.** Class 1 consists of the Allowed Secured Claim of Mainstreet arising under Mainstreet Loan One, in the approximate principal amount of $3,611,594.47 (estimated total in excess of $4,793,000.00), secured by five (5) townhome Units (2-101, 2-102, 7-101, 7-103 and 8-101) and ten (10) condominium Units (103, 104, 107, 202, 203, 205, 207, 307, 407 and 507). This Class is Impaired.

**Class 2—Mainstreet Loan Two Secured Claim.** Class 2 consists of the Allowed Secured Claim of Mainstreet arising under Mainstreet Loan Two, in the approximate principal amount of $712,105.80 (estimated total in excess of $920,000.00), secured by two (2) townhome Units (5-101 and 5-103). This Class is Impaired.

**Class 3—Tamamoi Secured Claim.** Class 3 consists of the Allowed Secured Claim of Tamamoi arising from the Tamamoi Judgment, in the amount of $3,378,797.64 plus statutory

interest, secured by condominium Units 206, 303, 305, 402, 404, 503, 504, and 505. This Class is Impaired.

**Class 4—Carton Trust Secured Claim.** Class 4 consists of the Allowed Secured Claim of the Carton Trust arising from the Carton Trust Judgment, in the amount of $376,757.47 plus statutory interest, secured by townhouse Unit 8-104. This Class is Impaired.

**Class 5—Secured Ad Valorem Real Property Tax Claims.** Class 5 consists of the Allowed Secured Claims of the Brevard County Tax Collector and any other holder of a statutory Lien or tax certificate for ad valorem real property taxes assessed against the Units. This Class is Unimpaired.

**Class 6—Cape Crossing Townhomes Homeowners Association Assessment Claim.** Class 6 consists of the Allowed Secured Claim, if any, of the Cape Crossing Townhomes Homeowners Association for unpaid pre-petition homeowner association assessments against the townhome Units, as reflected in Proofs of Claim No. 6. This Class is Impaired.[2]

**Class 7—General Unsecured Claims.** Class 7 consists of the Allowed Unsecured Claims against the Debtor, including any Allowed deficiency Claims of Holders of Claims in Classes 1 through 6 pursuant to § 506(a) of the Bankruptcy Code. This Class is Impaired.

**Class 8—Interests in the Debtor.** Class 8 consists of the equity and membership Interests in the Debtor, the ownership and holder of which are disputed and subject to the Causes of Action. This Class is Impaired.

---

[2] Pursuant to the Bankruptcy Court's *Order Granting Chapter 11 Trustee's Emergency Motion to Approve Compromise of Controversy Resolving (I) Unauthorized Postpetition Transfer Claim Against Pedixon LLC and ZPD LLC, (II) Special Assessment Demand by Cape Crossing Condominium Association, Inc. and (III) Proof of Claim 7-1 Filed by Cape Crossing Condominium Association, Inc.* (Doc. No. 372) entered on September 2, 2026, Cape Crossing Condominium Association has agreed to withdraw Proof of Claim No. 7 relating to unpaid prepetition condominium association assessments.

## ARTICLE III—ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**A. Administrative Claims**

**1. Non-ordinary Course Administrative Claims.**

a. Any person, including any Professional who has rendered services to the Trustee or the Estate during the course of this Case, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under § 503(b) of the Code, but excluding Ordinary Course Administrative Claims as discussed below, shall, on or before the Administrative Claims Bar Date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; provided, however, that applicants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to timely file an application, motion, or request for allowance pursuant to this Section by any holder of a Nonordinary Course Administrative Claim shall bar such claimant from seeking recovery on such Claim.

b. Each holder of a Nonordinary Course Administrative Claim, including the Trustee on account of the Trustee's statutory compensation under §§ 326 and 330 of the Bankruptcy Code and the Trustee's Professionals, shall be paid one hundred percent (100%) of its Allowed Claim in Cash, unless otherwise ordered by the Bankruptcy Court or agreed to by such Holder, on or before the Effective Date or such later date as may be agreed to by such holder, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. Allowed Administrative Claims shall be paid from Cash on hand, the Carve-Out, the

Surcharge, the Estate's share of the Net Sale Proceeds, and the net recoveries, if any, on the Causes of Action.

**2. Ordinary Course Administrative Claims.** Ordinary Course Administrative Claims will be resolved through the performance of the obligation by the Trustee in accordance with the terms and conditions of the agreement or applicable law giving rise thereto. An applicant for such Claim need not file an application, motion, or request to protect its rights with respect to Ordinary Course Administrative Claims.

**B. Priority Tax Claims**

Except to the extent that the Holder and the Trustee have agreed or may agree to a different treatment, each holder of an Allowed Priority Tax Claim against the Debtor shall receive, on account of such Claim, Cash in the full Allowed Amount of such Claim in accordance with § 1129(a)(9)(C) of the Code. The Trustee shall pay each Allowed Priority Tax Claim in full, in Cash, on the later of the Effective Date or the date such Claim becomes Allowed, from the Carve-Out, the Surcharge, and other unencumbered funds of the Estate. Any difference between the amount of a filed tax Claim and the portion thereof that qualifies for priority treatment under § 507(a)(8) shall be treated as a Class 7 General Unsecured Claim.

## ARTICLE IV—TREATMENT OF UNIMPAIRED CLASSES

Class 5 is Unimpaired under the Plan and is conclusively presumed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code. The treatment of each Unimpaired Class is as follows:

**Class 5—Secured Ad Valorem Real Property Tax Claims.** The legal, equitable, and contractual rights of the Holders of Allowed Class 5 Claims are unaltered by the Plan except as provided herein. Each Allowed Class 5 Claim shall be paid in full, in Cash, together with statutory

interest, at the closing of the sale of the Unit or Units securing such Claim, from the gross proceeds of such sale, in the amount reflected in the applicable tax collector's statement current through the date of closing, subject to the Trustee's rights to review and, if necessary, object to the amounts asserted. To the extent not so paid, the Holders of Class 5 Claims shall retain their statutory Liens, which shall attach to the Net Sale Proceeds in the same validity, extent, and priority as existed as of the Petition Date until such taxes are paid in full. Nothing herein shall modify the rights of the Holders of Class 5 Claims except as permitted by § 1124 of the Bankruptcy Code.

## ARTICLE V—TREATMENT OF IMPAIRED CLASSES OF CLAIMS AND INTERESTS

### A. Determination of Allowed Amounts

Treatment prescribed for Claims and Interests in the following sections of Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the date on which the Plan provides for a Distribution to be made on account of such Claim, then no Distribution on account of such Claim shall be made until the Claim becomes an Allowed Claim, and the Trustee shall reserve on account thereof as provided in Article IX. Notwithstanding Confirmation of the Plan, the Trustee reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law, as well as the right to assert that any such Claim is subject to disallowance, reduction, equitable subordination, recharacterization, or other equitable relief. The Trustee will be responsible for all Claim objections, and all such objections will be filed on or before the Claims Objection Bar Date.

**B. Impairment/Classification Controversies**

If there is a controversy regarding the classification or impairment of a Claim or Interest, then such controversy shall be determined by the Bankruptcy Court after notice and a hearing.

**C. Common Treatment of Secured Claims (Classes 1 through 4 and Class 6)**

Each Unit shall be sold free and clear of all Liens, Claims, encumbrances, and interests pursuant to §§ 363(b), (f), and (m) of the Bankruptcy Code and/or § 1123(a)(5)(D) of the Bankruptcy Code, as set forth in Article VII, with each Allowed Secured Claim to attach to the Net Sale Proceeds of the Unit or Units securing it in the same validity, extent, and priority as existed as of the Petition Date, subject to further order of the Bankruptcy Court. At the closing of the sale of each Unit, and after payment of (i) ordinary and customary costs of sale and closing, including Bankruptcy Court-approved broker's or auctioneer's commissions, (ii) prorated ad valorem real property taxes and other customary prorations, and (iii) any senior Allowed Secured Claim, the Holder of the Allowed Secured Claim secured by that Unit shall be paid the remaining Net Sale Proceeds attributable to such Unit, less the Carve-Out and/or Surcharge, up to the Allowed Amount of its Allowed Secured Claim. To the extent the Allowed Amount of any such Claim exceeds the Net Sale Proceeds distributed on account thereof, the deficiency shall be treated as a Class 7 General Unsecured Claim pursuant to § 506(a) of the Bankruptcy Code. Upon the closing of each sale, the Lien securing the applicable Claim shall be deemed released and discharged as to the Unit sold and shall attach only to the Net Sale Proceeds thereof as provided herein. The Trustee reserves all Causes of Action with respect to the validity, priority, extent, amount, and enforceability of each such Claim and Lien; and no Distribution shall be made on account of any Disputed Secured Claim unless and until such Claim becomes an Allowed Claim.

The common treatment of secured claims (Classes 1 through 4 and Class 6) described in this paragraph is the "**Common Treatment of Secured Claims**."

**Class 1—Mainstreet Loan One Secured Claim.** Subject to the Common Treatment of Secured Claims, the Allowed Class 1 Secured Claim shall receive the Net Sale Proceeds of the ten condominium and 8 townhome Units securing Mainstreet Loan One, subject to the Trustee's review of, and right to object to, the payoff amount asserted. This Class is Impaired and is entitled to vote on the Plan.

**Class 2—Mainstreet Loan Two Secured Claim.** Subject to the Common Treatment of Secured Claims, the Allowed Class 2 Secured Claim shall receive Net Sale Proceeds of the two townhome Units securing Mainstreet Loan Two, subject to the Trustee's review of, and right to object to, the payoff amount asserted. This Class is Impaired and is entitled to vote on the Plan.

**Class 3—Tamamoi Secured Claim.** Subject to the Common Treatment of Secured Claims, the Allowed Class 3 Secured Claim shall receive the Net Sale Proceeds of the eight Condominium Units securing the Tamamoi Judgment. This Class is Impaired and is entitled to vote on the Plan.

**Class 4—Carton Trust Secured Claim.** Subject to the Common Treatment of Secured Claims, the Allowed Class 4 Secured Claim shall receive the Net Sale Proceeds of townhouse Unit 8-104. This Class is Impaired and is entitled to vote on the Plan.

**Class 6—Cape Crossing Townhome Homeowners Association Assessment Claims.** Subject to the Common Treatment of Secured Claims, the Allowed Class 6 Secured Claims shall be paid, to the extent secured and required to convey marketable title, from the Net Sale Proceeds of the townhome Units against which the assessments are assessed, at the closing of each such sale, in the amount reflected in an estoppel or payoff statement current through the date of closing.

Any portion of a Class 6 Claim that is not an Allowed Secured Claim shall be treated as a Class 7 General Unsecured Claim. This Class is Impaired and is entitled to vote on the Plan.

**D. Class 7—General Unsecured Claims**

Class 7 consists of the Allowed Unsecured Claims against the Debtor, including any Allowed deficiency Claims arising under § 506(a) of the Bankruptcy Code. After payment in full of, or reservation for, all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Secured Claims as provided herein, the Trustee shall distribute to the Holders of Allowed Class 7 Claims, Pro Rata, the remaining unencumbered funds of the Estate, if any, including (i) the balance of the Net Sale Proceeds and (ii) the net collections, if any, on the Causes of Action, after payment of the costs of collection and prosecution thereof. Distributions to Class 7 shall be made on the later of the Effective Date, the date that is thirty (30) days after entry of a Final Order resolving all Disputed Claims, or such other date(s) as the Trustee determines, in the exercise of reasonable business judgment, that funds are available for an interim or final Distribution. This Class is Impaired and is entitled to vote on the Plan.

**E. Class 8—Interests in the Debtor**

Class 8 consists of the equity and membership Interests in the Debtor. On and after the Effective Date, all Assets, including the Units (pending sale), the Net Sale Proceeds, and the Causes of Action, shall remain vested in the Estate and shall be administered and liquidated by the Trustee in accordance with the Plan. The Holder(s) of the Interests shall receive no Distribution under the Plan unless and until all Allowed Claims, including all Allowed Class 7 Claims, are paid in full, together with interest as required by applicable law, in which event any surplus shall be distributed to the Holder(s) of the Allowed Interests as their rights may be determined by Final Order. This Class is Impaired and, because the Holders of Interests may receive no Distribution,

is deemed to reject the Plan; the Trustee will seek confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code with respect to any rejecting Class.

## ARTICLE VI—EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except for (i) any executory contract or unexpired lease that has been assumed or rejected by prior order of the Bankruptcy Court, and (ii) any short-term rental, vacation-rental, license, or occupancy arrangements relating to the Units, and any vacation-rental management agreement, which the Trustee may assume, assume and assign, or reject in connection with the operation and sale of the Units, all executory contracts and unexpired leases of the Debtor shall be deemed rejected as of the Confirmation Date, unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such executory contract or unexpired lease. The Confirmation Order shall constitute an order of the Bankruptcy Court approving all such assumptions and rejections.

Any Claim for damages arising from the rejection of an executory contract or unexpired lease must be filed within thirty (30) days after the Confirmation Date or be forever barred. Such Claims shall be deemed to be Class 7 General Unsecured Claims. In the case of rejection of leases of real property, damages are limited under the Bankruptcy Code. The Plan shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease.

## ARTICLE VII—MEANS OF IMPLEMENTATION

### A. Continued Administration by the Trustee

From and after the Effective Date, the Trustee shall continue to administer the Estate and implement the Plan, and shall have and retain all of the rights, powers, and duties of a Chapter 11 trustee under §§ 704, 1106, and 1108 of the Bankruptcy Code, together with all rights and powers

granted under the Plan and the Confirmation Order, including the power to operate and stabilize the Units pending sale, to sell the Units, to prosecute, settle, and abandon the Causes of Action, to object to Claims, to make Distributions, to collect the Carve-Out and/or Surcharge, and to take all actions necessary to consummate the Plan, in each case without further order of the Bankruptcy Court except as expressly provided herein.

**B. Stabilization and Sale of the Units**

The Plan provides for the orderly, structured sale of all twenty-six (26) Units. The Trustee has discussed a structured sale of the Units, after stabilization, with the three principal secured Creditors, each of whom has been receptive to that structure. Pending sale, the Trustee shall stabilize operations, cause all net rental income generated by the Units to be deposited into the Estate's account, maintain and insure the Units, and service homeowner and condominium association obligations prospectively.

The Trustee shall solicit proposals from qualified real estate and portfolio brokers, and may employ one or more brokers and/or an auctioneer with Bankruptcy Court approval, to market and sell the Units, individually, in groups, or as a portfolio, in the manner the Trustee determines, in the exercise of reasonable business judgment, will maximize the return to the Estate. Each Unit shall be sold pursuant to §§ 363(b), (f), and (m) of the Bankruptcy Code and/or this Plan and § 1123(a)(5)(D) of the Bankruptcy Code, free and clear of all Liens, Claims, encumbrances, and interests, with all such Liens to attach to the Net Sale Proceeds, subject to the Common Treatment of Secured Claims (which for the avoidance of doubt includes the payment of the Carve-Out and/or Surcharge), in the same validity, extent, and priority as existed as of the Petition Date.

**C. Net Rental Income**

All net rental income generated by the Units and collected by or on behalf of the Trustee during the Case shall be deposited into the Estate's account and, except as otherwise provided in the Plan or by order of the Bankruptcy Court, shall constitute Cash of the Estate available for the payment of Allowed Administrative Expenses and Plan implementation.

**D. Prosecution of Causes of Action**

All Causes of Action are expressly reserved and retained by the Trustee on behalf of the Estate, whether or not commenced as of the Confirmation Date, and the Trustee shall have the exclusive right to prosecute, settle, compromise, or abandon the same, subject to such Bankruptcy Court approval as may be required. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action as an indication that the Trustee will not pursue such Cause of Action. All Causes of Action shall remain property of the Estate and shall not re-vest in the Debtor or in any Holder of an Interest.

**E. Section 1146 Exemption**

Pursuant to § 1146(a) of the Bankruptcy Code, the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including the deeds transferring the Units and any and all satisfactions or releases of Liens delivered in connection therewith, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, documentary stamp tax, or similar tax or fee.

**F. Tax Matters; Employment of Accountant**

Because the Debtor is no longer a debtor-in-possession, the Trustee shall file or cause to be filed all federal tax returns required to be filed on behalf of the Estate and shall pay or cause to be paid from the Estate all taxes, if any, arising from the administration and liquidation of the

Assets, including any taxes arising from the sale of the Units, as Ordinary Course Administrative Claims or as otherwise ordered by the Bankruptcy Court. The Trustee is authorized to employ an accountant, with Bankruptcy Court approval, to prepare monthly operating reports, tax returns, and other required filings.

**G. Assets Remain in the Estate**

All Assets of the Estate, including the Units (pending their sale), the Net Sale Proceeds, the Cash, the net rental income of the Units, and the Causes of Action, shall remain property of the Estate, shall not re-vest in the Debtor or in any Holder of an Interest, and shall continue to be administered by the Trustee in accordance with the Plan until fully administered, at which time the Trustee shall file a final report and seek entry of a final decree closing the Chapter 11 Case.

**H. Limitations of Liability**

**The Trustee and her Professionals, for the purpose of consummating and implementing the transactions and acts contemplated by this Plan, shall have no liability to any entity and shall be afforded judicial immunity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document relating to, arising out of, or in connection with the Plan, unless the liability of any such entity that would otherwise result from any such act or omission was the result of gross negligence or willful misconduct.**

**The Bankruptcy Court shall retain exclusive jurisdiction over any and all claims that can or may be brought by the Debtor, any Holder of an Interest, or any other person or entity that relates, either directly or indirectly, to the purpose of consummating and implementing the transactions and acts contemplated by this Plan. For the avoidance of**

**doubt, neither the Debtor, nor any Holder of an Interest, nor any other person or entity may commence or pursue any legal action, claim, or proceeding against the Trustee and/or her Professionals, in any forum other than the Bankruptcy Court, for acts taken in their official capacities, without first obtaining explicit leave and authorization from the Bankruptcy Court. The provisions of this section shall survive the closing of this Bankruptcy Case.**

## ARTICLE VIII—PROVISIONS GOVERNING DISTRIBUTION

### A. Cash Payments

Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn against a domestic bank, or by wire transfer from a domestic bank.

### B. Delivery of Distributions

Distributions and deliveries to Holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such Holders if no proof of Claim is filed or if the Trustee has been notified of a change of address). If any Distribution to a Holder is returned as undeliverable, then no further Distributions to such Holder shall be made unless and until the Trustee is notified of the Holder's then-current address, at which time all missed Distributions shall be made to such Holder, without interest. All Claims for undeliverable Distributions shall be made on or before the first anniversary of the applicable Distribution Date. After such date, all unclaimed property shall revert to the Estate, and the Claim of any Holder with respect to such property shall be discharged and forever barred.

### C. Time Bar to Cash Payments

Checks issued by the Trustee with respect to Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for re-issuance of any check shall be made directly to the Trustee by the Holder of the Allowed Claim with respect to

which such check originally was issued. Any Claim with respect to such a voided check shall be made on or before the later of the first anniversary of the applicable Distribution Date or ninety (90) days after the date of issuance of such check. After such date, all Claims with respect to void checks shall be discharged and forever barred, and the funds shall revert to the Estate.

### D. Transfer of Claim

In the event that the Holder of any Claim shall transfer such Claim on or after the Effective Date, the Holder shall immediately notify the Trustee in writing of such transfer and provide sufficient written evidence of the transfer in accordance with Bankruptcy Rule 3001(e). The Trustee shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Trustee has received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan.

## ARTICLE IX—PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS

### A. Objection Deadline

Unless extended by the Bankruptcy Court, the Trustee shall file any objections to Claims no later than sixty (60) days after the Confirmation Date; provided, however, that no deadline shall apply to objections or defenses asserted in a pending adversary proceeding or contested matter, or to Claims filed after the Bar Date.

### B. Prosecution of Objections

The Trustee shall have the exclusive authority to file objections, litigate to judgment, settle, or withdraw objections to Disputed Claims. All professional fees and expenses incurred by the Trustee from and after the Confirmation Date shall be paid as provided in Article III hereof or as otherwise ordered by the Bankruptcy Court.

**C. No Distributions Pending Allowance**

No payments or Distributions shall be made with respect to any Disputed Claim unless and until all objections to such Claim are resolved and such Claim becomes an Allowed Claim.

**D. Escrow of Allocated Distributions**

The Trustee shall withhold from the property to be distributed under the Plan, and shall place in escrow, amounts sufficient to be distributed on account of Disputed Claims. As to any Disputed Claim, upon a request for estimation by the Trustee, the Bankruptcy Court shall determine what amount is sufficient to withhold in escrow pending allowance or disallowance of the Claim.

**E. Distributions After Allowance**

Payments and Distributions from escrow to each Holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which the respective Holder belongs, as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim becomes a Final Order.

**F. Distributions After Disallowance**

If any property withheld in escrow remains after all objections to Disputed Claims of a particular Class have been resolved, then such remaining property, to the extent attributable to Disallowed Claims, shall be distributed as soon as practicable in accordance with the provisions of the Plan governing the Class of Claims to which the Disallowed Claim belonged.

## ARTICLE X—UNITED STATES TRUSTEE FEES

All fees payable under 28 U.S.C. § 1930, together with any applicable interest, will be paid by the Trustee from Estate funds on or before the Effective Date, and thereafter as they accrue

until the Chapter 11 Case is closed, converted, or dismissed. The Trustee shall timely file all post-confirmation reports required by the United States Trustee.

## ARTICLE XI—DISCHARGE, LIMITATION OF LIABILITY, GENERAL INJUNCTION, AND CAUSES OF ACTION

### A. No Discharge

The Debtor is a limited liability company and the Plan is a liquidating plan. Pursuant to § 1141(d)(3) of the Bankruptcy Code, Confirmation of the Plan does not discharge the Debtor because the Plan provides for the liquidation of all or substantially all of the property of the Estate, the Debtor will not engage in business after consummation of the Plan, and the Debtor would be denied a discharge under § 727(a) if the Case were a case under Chapter 7. Nothing in the Plan shall affect, impair, or waive any Cause of Action or any right of the Estate, the Trustee, or the United States Trustee, all of which are expressly reserved.

### B. General Injunction

Pursuant to §§ 105, 1123, 1129, and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold, or may hold a Claim or other debt, liability, or Interest that is treated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred, to the fullest extent permitted by law, from taking any of the following actions on account of or with respect to any such Claims, debts, liabilities, or Interests: (a) commencing or continuing in any manner any action or other proceeding against the Trustee, the Estate, or the Assets, other than to enforce rights under the Plan; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Trustee, the Estate, or the Assets, including the Units and the Net Sale Proceeds; (c) creating, perfecting, or enforcing any Lien or

encumbrance against the Assets, including the Units or the Net Sale Proceeds; (d) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Estate; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or Confirmation Order. The Trustee shall have the right to independently seek enforcement of this general injunction provision.

**C. No Liability for Tax Claims**

Unless a taxing governmental authority has asserted a Claim against the Debtor before the applicable Bar Date established therefor, no Claim of such governmental authority shall be Allowed against the Estate or the Trustee for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the Debtor or any other Person or Entity to have paid any tax or to have filed any tax return in and for any period, or arising out of any audit of any return for a period before the Petition Date.

## ARTICLE XII—RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain the fullest and most expansive jurisdiction that is permitted under applicable law to issue any order or process to carry out the provisions of the Plan, including, but not limited to, jurisdiction to: approve the sale of the Units and resolve any disputes arising therefrom; determine the validity, priority, and extent of all Liens asserted against the Units; determine the ownership and holder of the Interests and the validity, formation, and effectiveness of the Tiered Land Trust and related conveyances; adjudicate all Causes of Action, whether or not commenced as of the Confirmation Date; determine all Claims and objections thereto; enforce all obligations established in the Plan and the Confirmation Order; determine any application for the

allowance of compensation pursuant to §§ 326, 330, 331, or 503(b); and enforce and interpret the Plan and resolve any dispute and questions of any kind arising in connection with any act arising out of or contemplated by the Plan and the rights created herein or in the Confirmation Order.

The Bankruptcy Court shall retain exclusive jurisdiction over any and all claims that can or may be brought by the Debtor, any Holder of an Interest, or any other person or entity that relates, either directly or indirectly, to the purpose of consummating and implementing the transactions and acts contemplated by this Plan. For the avoidance of doubt, neither the Debtor, nor any Holder of an Interest, nor any other person or entity may commence or pursue any legal action, claim, or proceeding against the Trustee and/or her Professionals, in any forum other than the Bankruptcy Court, for acts and/or omissions taken in their official capacities contemplated by this Plan, without first obtaining explicit leave and authorization from the Bankruptcy Court. The provisions of this section shall survive the closing of this Bankruptcy Case.

## ARTICLE XIII—MISCELLANEOUS

### A. Modification of the Plan

The Trustee may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan as modified, and the Disclosure Statement, meet applicable Bankruptcy Code and Bankruptcy Rule requirements. After entry of the Confirmation Order, the Trustee may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (a) the Trustee obtains approval of the Bankruptcy Court for such modification, after notice and hearing, and (b) such modification shall not materially or adversely affect the interests, rights, treatment, or distributions of any Class of Allowed Claims or Interests under the Plan.

**B. Confirmation Order and Plan Control**

To the extent that the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Trustee and any third party, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (and any other orders of the Bankruptcy Court) shall be construed together with the terms of the Plan.

**C. Governing Law**

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan provide otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

**D. No Admissions**

Nothing herein shall be construed to be an admission of any fact by the Trustee or the Estate or otherwise binding upon the Trustee or the Estate in any manner prior to the Effective Date.

**E. Revocation or Withdrawal of the Plan**

The Trustee reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Trustee revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to (a) constitute a waiver or release of any Claims by or against the Estate or any other Person, including the Causes of Action, or (b) prejudice in any manner the rights of the Trustee, the Estate, or any other Person in any further proceedings involving the Debtor.

**F. Further Assurances**

The Trustee is hereby authorized to execute and deliver any and all papers, documents, contracts, agreements, and instruments, including deeds and releases of Liens, which may be necessary to carry out and implement the terms and conditions of the Plan, and, pursuant to § 1142(b) of the Bankruptcy Code, the Bankruptcy Court may direct the Debtor, Horton S. Johnson, Crescent, and any other necessary party to execute or deliver, or to join in the execution or delivery of, any instrument required to effect a transfer of property dealt with by the Plan.

**G. Notices**

All notices, requests, or other documents in connection with, or required to be served by, the Plan shall be in writing and shall be sent by United States Mail, postage prepaid, or by overnight delivery by a recognized courier service, to the following:

> **Chapter 11 Trustee and Counsel for the Trustee:** Lara Roeske Fernandez, Chapter 11 Trustee c/o Rhys P. Leonard, Esq., and Anthony P. Marzocca, Esq., Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A. 101 East Kennedy Boulevard, Suite 2700 Tampa, Florida 33602
>
> **Debtor:** Homemakers Real Estate, LLC, 4964 S Orange Ave., Orlando, Florida 32806
>
> **United States Trustee:** Office of the United States Trustee George C. Young Federal Building 400 West Washington Street, Suite 1100 Orlando, Florida 32801

**H. Estimated Claims**

To the extent any Claim is estimated for any purpose other than for voting, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

**I. Consent to Jurisdiction**

By accepting any Distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by voting on the Plan, or by entering an appearance in the Chapter 11 Case, all Creditors and other parties in interest have consented, and shall be deemed to have expressly

consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under, or in connection with the Plan or the Chapter 11 Case.

**J. Compliance with Tax Requirements**

In connection with this Plan, to the extent applicable, the Trustee, in making Distributions under this Plan, shall comply with all tax withholding and reporting requirements imposed by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

**K. Distribution of Unclaimed Property**

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan which is unclaimed after six (6) months following the relevant Distribution Date shall be forfeited, and such Distribution, together with all interest earned thereon, shall revert to the Estate for redistribution in accordance with the Plan.

[*Remainder of page intentionally left blank.*]

Dated: September 18, 2026

Respectfully submitted,

/s/ Lara Roeske Fernandez
LARA ROESKE FERNANDEZ
*Chapter 11 Trustee*

/s/ Rhys P. Leonard
RHYS P. LEONARD
Florida Bar No.: 59176
**rleonard@trenam.com**
ANTHONY P. MARZOCCA
Florida Bar No. 1068857
**amarzocca@trenam.com**
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, P.A.
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
Tel: (813) 223-7474 | Fax: (813) 229-6553
*Counsel to Chapter 11 Trustee*