**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

HOMEMAKERS REAL ESTATE, LLC,

Debtor.
_______________________________________/

Case No. 6:25-bk-05570-GER

Chapter 11

**DISCLOSURE STATEMENT FOR**
**CHAPTER 11 TRUSTEE'S PLAN OF LIQUIDATION**

LARA ROESKE FERNANDEZ
*Chapter 11 Trustee*

RHYS P. LEONARD
Florida Bar No.: 59176
rleonard@trenam.com
ANTHONY P. MARZOCCA
Florida Bar No. 1068857
amarzocca@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, P.A.
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
Tel: (813) 223-7474 | Fax: (813) 229-6553
*Counsel to Chapter 11 Trustee*

September 18, 2026

## ARTICLE I—INTRODUCTION

Lara Roeske Fernandez, in her capacity as the duly appointed Chapter 11 Trustee (the "**Trustee**") of Homemakers Real Estate, LLC (the "**Debtor**"), has prepared and is disseminating this Disclosure Statement ("**Disclosure Statement**") to holders of claims against and interests in the Debtor for the purpose of soliciting acceptance of her Chapter 11 Trustee's Plan of Liquidation for Homemakers Real Estate, LLC (the "**Plan**").[1] The Trustee believes this Disclosure Statement contains the information that is material, important, and necessary for creditors and interest holders to arrive at an informed decision in exercising their right to vote for acceptance of the Plan. As the holder of a claim against or interest in the Debtor, your acceptance is important. For a Class of Claims to accept the Plan, acceptances must be filed by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such Class that actually vote on the Plan. A failure to vote on the Plan does not constitute either an acceptance or rejection of the Plan. The Trustee urges parties-in-interest to read this Disclosure Statement and the Plan carefully prior to casting votes for or against the Plan.

THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN. THIS INTRODUCTION AND SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IS IN TURN QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.

LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED JUDGMENT ABOUT THE PLAN. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN SHALL CONTROL. ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE DEFINITIONS ASCRIBED TO THEM IN THE PLAN UNLESS OTHERWISE DEFINED HEREIN.

NO REPRESENTATIONS CONCERNING THE DEBTOR OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT A DECISION. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN REVIEWED OR PASSED UPON BY AN ACCOUNTANT. THE TRUSTEE IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH ALL SUCH INFORMATION IS ACCURATE TO THE TRUSTEE'S BEST KNOWLEDGE, INFORMATION, AND BELIEF, WHICH REMAINS SUBJECT TO THE TRUSTEE'S ONGOING INVESTIGATION. THE BANKRUPTCY COURT HAS NOT VERIFIED THE ACCURACY OF THE INFORMATION CONTAINED HEREIN, AND THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT IMPLY THAT THE BANKRUPTCY COURT ENDORSES OR APPROVES THE PLAN, BUT ONLY THAT, IF THE INFORMATION IS ACCURATE, IT IS SUFFICIENT TO PROVIDE AN ADEQUATE BASIS FOR CREDITORS AND INTEREST HOLDERS TO MAKE INFORMED DECISIONS WHETHER TO APPROVE OR REJECT THE PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, CAUSES OF ACTION, AND OTHER ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE, OR BE CONSTRUED AS, AN ADMISSION OF ANY FACT OR LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THE PLAN AND THIS DISCLOSURE STATEMENT CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.

Tiered Capital, Inc. commenced this case by filing an involuntary petition under Chapter 11 of the Bankruptcy Code against the Debtor on September 2, 2025, in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division (the "**Bankruptcy Court**"). On May 21, 2026, the Bankruptcy Court denied the Debtor's motion to dismiss the involuntary petition, entered an order for relief, and directed the appointment of a Chapter 11 trustee if the dispute over the ownership and control of the Debtor was not resolved. The Bankruptcy Court thereafter approved the appointment of Lara Roeske Fernandez as the Chapter 11 Trustee. Pursuant to sections 1106 and 704 of the Bankruptcy Code, the Trustee has taken control of the Debtor's property and operations, and the Debtor is no longer a debtor-in-possession.

As prescribed by the Code and the Rules, Claims asserted against, and Interests in, the Debtor are placed into Classes. The Plan designates six (6) classes of secured claims, one (1) class of general unsecured claims, and one (1) class of interests. The classification of Claims and the treatment of each Class are discussed in detail below.

To the extent the legal, contractual, or equitable rights with respect to any Claim or Interest asserted against the Debtor are altered, modified, or changed by the treatment proposed under the Plan, such Claim or Interest is considered "Impaired," and the Holder of such Claim or Interest is entitled to vote in favor of or against the Plan. A Ballot for voting in favor of or against the Plan (the "**Ballot**") will be mailed along with the order approving this Disclosure Statement.

THE VOTE OF EACH CREDITOR OR INTEREST HOLDER WITH AN IMPAIRED CLAIM OR INTEREST IS IMPORTANT. TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE ADDRESS AND BY THE DATE SET FORTH IN THE BALLOT.

**Voting Deadline**

The last day to vote to accept or reject the Plan is _______________, 2026. All votes must be received by the Clerk of the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, by 5:00 p.m. prevailing Eastern Time on that day.

Upon receipt, the Ballots will be tabulated, and the results of the voting will be presented to the Bankruptcy Court for its consideration. As described in greater detail in Article V of this Disclosure Statement, the Code prescribes certain requirements for confirmation of a plan. The Bankruptcy Court will schedule a hearing (the "**Confirmation Hearing**") to consider whether the Trustee has complied with those requirements.

The Code permits a court to confirm a plan even if all Impaired Classes have not voted in favor of the plan. Confirmation of a plan over the objection of a Class is sometimes called cramdown. As described in greater detail in Article V of this Disclosure Statement, the Trustee has expressly reserved the right to seek cramdown in the event all Impaired Classes do not vote in favor of the Plan.

## ARTICLE II—SUMMARY OF CHAPTER 11

### A. Property of the Estate

The commencement of a Chapter 11 bankruptcy case creates an estate comprising all the legal and equitable interests of the debtor in property as of the date the petition is filed. Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a debtor in possession unless the bankruptcy court orders the appointment of a trustee. Lara Roeske Fernandez has been appointed in this case as the Chapter 11 Trustee, and the Debtor is no longer a debtor in possession.

**B. Automatic Stay**

Pursuant to Bankruptcy Code section 362, the filing of a Chapter 11 petition operates as an automatic stay applicable to all entities for various actions, including actions to collect pre-petition claims from the Debtor or otherwise interfere with its property. As described below, the three principal secured Creditors obtained relief from the automatic stay to pursue their respective foreclosure actions; the Trustee is administering the Units and pursuing a structured sale for the benefit of the Estate.

**C. Plan of Liquidation**

The Chapter 11 plan sets forth the terms for the disposition of the Debtor's assets. The Plan is a liquidating plan. Because a Chapter 11 trustee has been appointed, the Trustee, among others, may file a plan.

**D. Disclosure Statement**

An acceptance or rejection of a plan may not be solicited after the commencement of a Chapter 11 case from the holder of a Claim unless, at the time of or before such solicitation, there is transmitted to such holder the plan and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. Adequate information means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical, reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.

**E. Voting**

A Class of Claims has accepted a plan if the plan has been accepted by creditors that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such class held by creditors that actually vote. A class that is not impaired under a plan is

conclusively presumed to have accepted the plan. A class is deemed not to have accepted a plan if the plan provides that the Claims or Interests of such class do not entitle the holders to receive or retain any property under the plan on account of such Claims or Interests.

**F. Impairment**

A Class of Claims or Interests is impaired if the legal, equitable, or contractual rights attached to the Claims or Interests of that class are modified. Modification, for the purpose of determining impairment, does not include curing defaults and reinstating maturity.

**G. Confirmation Standards**

**1. General.** The proponent of the plan must meet all applicable requirements of § 1129(a) of the Bankruptcy Code (except § 1129(a)(8) if the proponent proposes to seek confirmation under § 1129(b)). These requirements include, among other things, that (i) the plan comply with the applicable provisions of Title 11 and other applicable law; (ii) the plan be proposed in good faith; and (iii) at least one impaired Class of creditors has voted to accept the plan.

**2. Cramdown.** The Bankruptcy Court may confirm a plan even though fewer than all classes of impaired Claims and Interests have accepted it. If a plan is to be confirmed despite the rejection of a class of impaired Claims or Interests, the proponent must show, among other things, that the plan does not discriminate unfairly and is fair and equitable with respect to each impaired class that has not accepted the plan.

## ARTICLE III—BACKGROUND INFORMATION

**A. The Debtor and the Units**

The Debtor, Homemakers Real Estate, LLC, is a Florida limited liability company. According to filings made with the Florida Secretary of State, Horton S. Johnson is the registered agent and sole manager of the Debtor. According to the Official Records of Brevard County, Florida, the Debtor owns in fee simple twenty-six (26) condominium and townhouse units located

in the Cape Crossing Resort & Marina in Merritt Island, Brevard County, Florida (the "**Units**"), which have been operated as vacation rentals. The effectiveness of certain recorded conveyances described below may be in dispute and is among the matters the Trustee is investigating.

**B. Events Leading to the Bankruptcy Case**

On September 14, 2023, the Debtor, as guarantor, entered into a Loan Agreement in connection with a loan from PEDixon, LLC and ZPD, LLC (together, the "**Lender"**) to Tiered Capital, Inc. ("**Tiered Capital**") that consolidated multiple notes (the "**TC Loan**"). The outstanding principal at execution was $10,325,000, with an additional $750,000 advanced. Under the Loan Agreement, the Lender was to collect $100,000 per month, funded from the rental income generated by the Units, to be applied to the TC Loan. The validity and enforceability of the TC Loan is disputed and is among the Causes of Action reserved under the Plan.

In connection with the TC Loan, on September 13, 2023, the Debtor entered into the Tiered Land Trust Agreement (the "**Trust**") as a beneficiary of a land trust controlled by Crescent Sound, Ltd. ("**Crescent**") as trustee, and executed a Trustee's Deed conveying the Debtor's interest in the Units to Crescent. On January 9, 2024, Mr. Johnson executed an Assignment of Membership Units conveying all of the membership units of the Debtor to Crescent as trustee of the Trust. Both Crescent and the Lender are, upon the Trustee's information and belief, controlled by Ken Dixon. In March and April 2025, Mr. Johnson, purporting to act for the Debtor, sought to revoke the Trust, appoint the Debtor as successor trustee, and deed the Units back to the Debtor. The validity, formation, and effectiveness of the Trust and of these conveyances are disputed and are among the Causes of Action reserved under the Plan.

The Debtor's bankruptcy history includes a first voluntary Chapter 11 case (No. 6:25-bk-02685-GER), filed May 5, 2025 by Mr. Johnson (purporting to act for the Debtor) and dismissed June 27, 2025 for lack of corporate authority; the present involuntary Chapter 11 case (No. 6:25-

bk-05570-GER), commenced September 2, 2025, in which an order for relief was entered May 21, 2026; and a Chapter 7 case (No. 6:26-bk-01776-GER), filed March 13, 2026 by Mr. Johnson (purporting to act for the Debtor), and dismissed June 11, 2026.

**C. Appointment of the Chapter 11 Trustee and Current Status**

Following the entry of the order for relief and the direction that a Chapter 11 trustee be appointed if Mr. Johnson and Mr. Dixon did not resolve the issue of ownership and control of the Debtor, the Bankruptcy Court approved the appointment of Lara Roeske Fernandez as the Chapter 11 Trustee. Since her appointment, the Trustee has, among other things: opened a debtor-in-possession account and arranged for the net monthly rental income generated by the Units to be deposited into that account under her control; worked to confirm insurance on the Units; commenced servicing homeowner and condominium association obligations prospectively; solicited proposals from real estate and portfolio brokers regarding the disposition of the Units under various scenarios to maximize the return to creditors; and moved to retain an accountant to prepare monthly operating reports, tax returns, and other required filings. The Trustee has discussed a structured sale of the Units, after stabilization, with the three principal secured Creditors, each of whom has been receptive to that structure.

On September 2, 2026, the Bankruptcy Court entered the *Order Granting Chapter 11 Trustee's Emergency Motion to Approve Compromise of Controversy Resolving (I) Unauthorized Postpetition Transfer Claim Against PEDixon LLC and ZPD LLC, (II) Special Assessment Demand by Cape Crossing Condominium Association, Inc. and (III) Proof of Claim 7-1 Filed by Cape Crossing Condominium Association, Inc.* (Doc. No. 372), which, among other things, granted the Trustee's emergency motion dated August 31, 2026, filed at docket number 372 (the "**Settlement Motion**") and provided that (i) the Lender shall pay to the Trustee a sum of $350,000 in accordance with the terms of the Settlement Motion to resolve the Trustee's claim to avoid and

recover postpetition transfers under sections 549 and 550 of the Bankruptcy Code and waive the right to file a section 502(h) proof of claim for this settlement amount; (ii) the Trustee shall pay to the Cape Crossing Condominium Association a sum of $204,000 in accordance with the terms contained in the Settlement Motion for the condominium building roof replacement to resolve the special assessment described in the Settlement Motion and upon such payment, the Cape Crossing Condominium Association shall withdraw Proof of Claim No. 7-1; (iii) the Trustee shall hold the balance of the settlement payment funds received from the Lender and shall not otherwise use those funds pending further order of the Bankruptcy Court, with the Trustee and secured creditors reserving their respective rights regarding whether the secured creditors' security interests attach to the recovery from the Lender on the Trustee's claim to avoid and recover the postpetition transfers defined in the Settlement Motion.

**D. The Units and the Secured Creditors**

The Units secure the claims of three principal secured Creditors, each of which obtained relief from the automatic stay to pursue foreclosure:

- **Mainstreet Community Bank of Florida (Mainstreet)** holds two loans. Mainstreet Loan One shall mean the indebtedness asserted as owed to Mainstreet in Proof of Claim No. 64-1, in the approximate principal amount of $3,611,594.47 (with an estimated total in excess of $4,793,000.00), secured by condominium Units 103, 104, 107, 202, 203, 205, 207, 307, 407 and 507 and townhome Units 2-101, 2-102, 7-101, 7-103 and 8-101. Mainstreet Loan Two shall mean the indebtedness asserted as owed to Mainstreet in Proof of Claim No. 63-1, in the approximate principal amount of $712,105.80 (with an estimated total in excess of $920,000.00), secured by townhome Units 5-101 and 5-103.
- **Tamamoi, LLC (Tamamoi)** obtained that certain Uniform Final Judgment of Mortgage Foreclosure entered on May 20, 2026, in Case No. 05-2024-CA-023943-XXCA-BC, Brevard County, Florida, in favor of Tamamoi in the amount of $3,378,797.64, together with statutory interest accruing thereon, secured by condominium Units 206, 303, 305, 402, 404, 503, 504, and 505.
- **The Carton Family Trust of 1992 (Carton Trust)** obtained that certain Uniform Final Judgment of Mortgage Foreclosure entered on July 15, 2025 in Case No. 05-2024-CA-038140-XXCA-BC, Brevard County, Florida, in favor of the Carton Trust in the amount of $376,757.47, together with statutory interest accruing thereon, secured by Townhouse unit 104.

The Trustee notes that the Debtor is neither the borrower on nor a guarantor of the obligations underlying the Tamamoi Judgment and the Carton Trust Judgment; rather, the borrower (Canaveral Crossroads, LLC) quitclaimed the applicable Units to the Debtor in November 2020, and the Debtor thereafter holds the legal and/or beneficial ownership interest in those Units. The Units are also subject to unpaid homeowner and condominium association assessments held by the Cape Crossing Townhome Owners Association and the Cape Crossing Condominium Association (reflected in Proofs of Claim Nos. 6 and 7), and to unpaid ad valorem real property taxes held by the Brevard County Tax Collector and by third parties holding tax certificates (reflected in Proofs of Claim Nos. 8 – 62).

**E. Claims**

As of the date of this Disclosure Statement, seventy-one (71) proofs of claim have been filed. Pursuant to the Order Granting Chapter 11 Trustee's Motion to (I) Require Certain Creditors with Scheduled Claims to File Proofs of Claim and (II) Extend Time for Certain Creditors to File Proofs of Claim (Doc. No. 318), the Bankruptcy Court has set July 30, 2026, as the general deadline, August 21, 2026 as the deadline for certain listed creditors and November 17, 2026, as the governmental-unit deadline, for filing proofs of claim. The Trustee reserves all rights to review, dispute, and object to the amount, validity, priority, extent, and enforceability of filed Claims.

## ARTICLE IV—PLAN OF LIQUIDATION

THE DISCUSSION OF THE PLAN SET FORTH BELOW IS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED PROVISIONS SET FORTH IN THE PLAN, THE TERMS OF WHICH ARE CONTROLLING.

HOLDERS OF CLAIMS AND INTERESTS AND OTHER INTERESTED PARTIES ARE URGED TO READ THE PLAN IN ITS ENTIRETY.

**A. Overview**

The Plan is a liquidating plan. The Plan provides for the orderly, structured sale of all twenty-six (26) Units, free and clear of all Liens, Claims, encumbrances, and interests pursuant to sections 363 and 1123(a)(5)(D) of the Bankruptcy Code, with such Liens to attach to the proceeds of sale in the same validity, extent, and priority as existed as of the Petition Date, subject to the terms of the Plan and further order of the Bankruptcy Court. Pending sale, the Trustee will stabilize the Debtor's vacation-rental operations, collect and preserve the net rental income of the Units, maintain and insure the Units, and service homeowner and condominium association obligations prospectively. The Trustee will market and sell the Units, individually, in groups, or as a portfolio, through one or more brokers and/or an auctioneer, in the manner she determines will maximize the return to the Estate. The Net Sale Proceeds, together with the Debtor's Cash , and the net recoveries on the Causes of Action, will fund payment of Allowed Administrative Expenses, Allowed Priority Tax Claims, and Distributions to Holders of Allowed Claims as set forth in the Plan. All Causes of Action are expressly retained by, and shall remain vested in, the Estate and shall be prosecuted, settled, or abandoned by the Trustee for the benefit of the Estate.

**B. Classification and Treatment of Claims and Interests**

**1. Administrative Claims.** Each holder of an Allowed Nonordinary Course Administrative Claim, including the Trustee's statutory compensation and the fees of the Trustee's Professionals subject to Bankruptcy Court approval, will be paid one hundred percent (100%) of its Allowed Claim in Cash on or before the Effective Date, or when Allowed, from Cash on hand, the Estate's share of the Net Sale Proceeds, and net recoveries on the Causes of Action. Ordinary Course Administrative Claims will be paid in the ordinary course.

**2. Priority Tax Claims.** Each holder of an Allowed Priority Tax Claim will receive Cash in the full Allowed Amount of its Claim under § 1129(a)(9)(C), payable on the later of the Effective Date or when Allowed, or in deferred installments over a period ending not later than five (5) years after the Petition Date, with statutory interest.

**Common Treatment of Secured Claims (Classes 1 through 4 and Class 6)**

Each Unit shall be sold free and clear of all Liens, Claims, encumbrances, and interests pursuant to §§ 363(b), (f), and (m) of the Bankruptcy Code and/or § 1123(a)(5)(D) of the Bankruptcy Code, as set forth in Article VII of the Plan, with each Allowed Secured Claim to attach to the Net Sale Proceeds of the Unit or Units securing it in the same validity, extent, and priority as existed as of the Petition Date, subject to further order of the Bankruptcy Court. At the closing of the sale of each Unit, and after payment of (i) ordinary and customary costs of sale and closing, including Bankruptcy Court-approved broker's or auctioneer's commissions, (ii) prorated ad valorem real property taxes and other customary prorations, and (iii) any senior Allowed Secured Claim, the Holder of the Allowed Secured Claim secured by that Unit shall be paid the remaining Net Sale Proceeds attributable to such Unit, less the Carve-Out and/or Surcharge, up to the Allowed Amount of its Allowed Secured Claim. To the extent the Allowed Amount of any such Claim exceeds the Net Sale Proceeds distributed on account thereof, the deficiency shall be treated as a Class 7 General Unsecured Claim pursuant to § 506(a) of the Bankruptcy Code. Upon the closing of each sale, the Lien securing the applicable Claim shall be deemed released and discharged as to the Unit sold and shall attach only to the Net Sale Proceeds thereof as provided herein. The Trustee reserves all Causes of Action with respect to the validity, priority, extent, amount, and enforceability of each such Claim and Lien; and no Distribution shall be made on account of any Disputed Secured Claim unless and until such Claim becomes an Allowed Claim.

The common treatment of secured claims (Classes 1 through 4 and Class 6) described in this paragraph is the "**Common Treatment of Secured Claims**."

**3. Class 1—Mainstreet Loan One Secured Claim (Impaired).** Subject to the Common Treatment of Secured Claims, the Allowed Class 1 Secured Claim shall receive the Net Sale Proceeds of the ten condominium and 8 townhome Units securing Mainstreet Loan One, subject to the Trustee's review of, and right to object to, the payoff amount asserted. This Class is Impaired and is entitled to vote on the Plan.

**4. Class 2—Mainstreet Loan Two Secured Claim (Impaired).** Subject to the Common Treatment of Secured Claims, the Allowed Class 2 Secured Claim shall receive the Net Sale Proceeds of the two townhome Units securing Mainstreet Loan Two, subject to the Trustee's review of, and right to object to, the payoff amount asserted. This Class is Impaired and is entitled to vote on the Plan.

**5. Class 3—Tamamoi Secured Claim (Impaired).** Subject to the Common Treatment of Secured Claims, the Allowed Class 3 Secured Claim shall the Net Sale Proceeds of the eight Condominium Units securing the Tamamoi Judgment. This Class is Impaired and is entitled to vote on the Plan.

**6. Class 4—Carton Trust Secured Claim (Impaired).** Subject to the Common Treatment of Secured Claims, the Allowed Class 4 Secured Claim shall receive Net Sale Proceeds of townhouse Unit 8-104. This Class is Impaired and is entitled to vote on the Plan.

**7. Class 5—Secured Ad Valorem Real Property Tax Claims (Unimpaired).** Allowed Class 5 Claims will be paid in full, in Cash, with statutory interest, at the closing of the sale of the Unit or Units securing them, subject to the Trustee's right to review, and if necessary, object to the amounts asserted.

**8. Class 6—Cape Crossing Association Assessment Claims (Impaired).** Subject to the Common Treatment of Secured Claims, the Allowed Class 6 Secured Claims shall be paid, to the extent secured and required to convey marketable title, from the Net Sale Proceeds of the townhome Units against which the assessments are assessed, at the closing of each such sale, in the amount reflected in an estoppel or payoff statement current through the date of closing. Any portion of a Class 6 Claim that is not an Allowed Secured Claim shall be treated as a Class 7 General Unsecured Claim. This Class is Impaired and is entitled to vote on the Plan. [2]

**9. Class 7—General Unsecured Claims (Impaired).** Class 7 consists of the Allowed Unsecured Claims against the Debtor, including any Allowed deficiency Claims arising under § 506(a) of the Bankruptcy Code. After payment in full of, or reservation for, all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Secured Claims as provided herein, the Trustee shall distribute to the Holders of Allowed Class 7 Claims, Pro Rata, the remaining unencumbered funds of the Estate, if any, including (i) the balance of the Net Sale Proceeds and (ii) the net collections, if any, on the Causes of Action, after payment of the costs of collection and prosecution thereof. Distributions to Class 7 shall be made on the later of the Effective Date, the date that is thirty (30) days after entry of a Final Order resolving all Disputed Claims, or such other date(s) as the Trustee determines, in the exercise of reasonable business judgment, that funds are available for an interim or final Distribution. This Class is Impaired and is entitled to vote on the Plan.

**10. Class 8—Interests (Impaired).** Class 8 consists of the equity and membership Interests in the Debtor. On and after the Effective Date, all Assets, including the Units (pending

---

[2] Pursuant to the Settlement Order, Cape Crossing Condominium Association has agreed to withdraw Proof of Claim No. 7-1 relating to unpaid prepetition condominium association assessments.

sale), the Net Sale Proceeds, and the Causes of Action, shall remain vested in the Estate and shall be administered and liquidated by the Trustee in accordance with the Plan. The Holder(s) of the Interests shall receive no Distribution under the Plan unless and until all Allowed Claims, including all Allowed Class 7 Claims, are paid in full, together with interest as required by applicable law, in which event any surplus shall be distributed to the Holder(s) of the Allowed Interests as their rights may be determined by Final Order. This Class is Impaired and, because the Holders of Interests may receive no Distribution, is deemed to reject the Plan; the Trustee will seek confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code with respect to any rejecting Class.

**C. Means of Implementation**

From and after the Effective Date, the Trustee shall continue to administer the Estate and implement the Plan, and shall have and retain all of the rights, powers, and duties of a Chapter 11 trustee under §§ 704, 1106, and 1108 of the Bankruptcy Code, together with all rights and powers granted under the Plan and the Confirmation Order, including the power to operate and stabilize the Units pending sale, to sell the Units, to prosecute, settle, and abandon the Causes of Action, to object to Claims, to make Distributions, to collect the Carve-Out and/or Surcharge, and to take all actions necessary to consummate the Plan, in each case without further order of the Bankruptcy Court except as expressly provided herein.

The Plan provides for the orderly, structured sale of all twenty-six (26) Units. The Trustee has discussed a structured sale of the Units, after stabilization, with the three principal secured Creditors, each of whom has been receptive to that structure. Pending sale, the Trustee shall stabilize operations, cause all net rental income generated by the Units to be deposited into the Estate's account, maintain and insure the Units, and service homeowner and condominium association obligations prospectively.

The Trustee shall solicit proposals from qualified real estate and portfolio brokers, and may employ one or more brokers and/or an auctioneer with Bankruptcy Court approval, to market and sell the Units, individually, in groups, or as a portfolio, in the manner the Trustee determines, in the exercise of reasonable business judgment, will maximize the return to the Estate. Each Unit shall be sold pursuant to §§ 363(b), (f), and (m) of the Bankruptcy Code and/or this Plan and § 1123(a)(5)(D) of the Bankruptcy Code, free and clear of all Liens, Claims, encumbrances, and interests, with all such Liens to attach to the Net Sale Proceeds, subject to the Common Treatment of Secured Claims (which for the avoidance of doubt includes the payment of the Carve-Out and/or Surcharge), in the same validity, extent, and priority as existed as of the Petition Date.

All net rental income generated by the Units and collected by or on behalf of the Trustee during the Case shall be deposited into the Estate's account and, except as otherwise provided in the Plan or by order of the Bankruptcy Court, shall constitute Cash of the Estate available for the payment of Allowed Administrative Expenses and Plan implementation.

**D. Retained Causes of Action**

All Causes of Action are expressly reserved and retained by the Trustee on behalf of the Estate, whether or not commenced as of the Confirmation Date, and the Trustee shall have the exclusive right to prosecute, settle, compromise, or abandon the same, subject to such Bankruptcy Court approval as may be required. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action as an indication that the Trustee will not pursue such Cause of Action. All Causes of Action shall remain property of the Estate and shall not re-vest in the Debtor or in any Holder of an Interest.

The Trustee estimates that the orderly disposition of the Units will realize substantial equity that would not be captured through piecemeal foreclosure, and that the Causes of Action may yield

material additional recoveries for the Estate; however, the outcome and amount of any recovery are uncertain.

**E. Executory Contracts and Unexpired Leases**

Except for (i) any executory contract or unexpired lease that has been assumed or rejected by prior order of the Bankruptcy Court, and (ii) any short-term rental, vacation-rental, license, or occupancy arrangements relating to the Units, and any vacation-rental management agreement, which the Trustee may assume, assume and assign, or reject in connection with the operation and sale of the Units, all executory contracts and unexpired leases of the Debtor shall be deemed rejected as of the Confirmation Date, unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such executory contract or unexpired lease. The Confirmation Order shall constitute an order of the Bankruptcy Court approving all such assumptions and rejections.

Any Claim for damages arising from the rejection of an executory contract or unexpired lease must be filed within thirty (30) days after the Confirmation Date or be forever barred. Such Claims shall be deemed to be Class 7 General Unsecured Claims. In the case of rejection of leases of real property, damages are limited under the Bankruptcy Code. The Plan shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease.

**F. Limitations of Liability**

The Trustee and her Professionals, for the purpose of consummating and implementing the transactions contemplated by the Plan, shall have no liability to any entity and shall be afforded judicial immunity for any act taken or omitted in connection with the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any related document, unless such liability results from gross negligence or willful

misconduct. The Bankruptcy Court retains exclusive jurisdiction over any claim against the Trustee or her Professionals for acts taken in their official capacities, and no such action may be commenced in any other forum without leave of the Bankruptcy Court. This provision survives the closing of the Case.

**G. Provisions Governing Distribution; Contested Claims**

The Plan contains customary provisions governing the form and delivery of Distributions, a ninety-day time bar to cash payments, the transfer of Claims, the resolution of Disputed Claims, the escrow of allocated Distributions, and the treatment of unclaimed property. The Trustee will file objections to Claims no later than sixty (60) days after the Confirmation Date, unless extended, and no Distribution will be made on account of a Disputed Claim until it becomes Allowed.

**H. Revesting; No Revesting in the Debtor**

Because the Plan is a liquidating plan, all Assets of the Estate—including the Units (pending sale), the Carve-Out, the Surcharge, the Net Sale Proceeds, the Cash, and the Causes of Action—remain property of the Estate and are administered by the Trustee until fully liquidated. No Assets re-vest in the Debtor or in any Holder of an Interest.

## ARTICLE V—CONFIRMATION

**A. Confirmation Hearing**

Section 1128 of the Code requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing on the Plan, at which any party in interest may be heard in support of or in opposition to Confirmation. Any objection to Confirmation must be made in writing, filed with the Clerk, and delivered to the Trustee's counsel and the United States Trustee at least seven days prior to the Confirmation Hearing.

**B. Financial Information Relevant to Confirmation**

The Trustee does not, as a matter of course, make long-range external forecasts or projections. Attached as an exhibit to the Disclosure Statement filed with the Bankruptcy Court, and incorporated herein, is a liquidation analysis (the "**Liquidation Analysis**") comparing estimated recoveries under the Plan to those in a hypothetical Chapter 7 liquidation.

**C. Confirmation Standards**

As a condition of confirmation, the Bankruptcy Court must determine that the Plan complies with the requirements of § 1129 of the Bankruptcy Code, including, among others, that the Plan complies with the applicable provisions of the Code, was proposed in good faith, provides for payment of administrative and priority claims as required, satisfies the best interest of creditors test, is feasible, and provides for payment of all fees due under 28 U.S.C. § 1930. This Disclosure Statement discusses the feasibility of the Plan, acceptance by impaired classes, and the best-interest (minimum value) standard.

**D. Acceptance of the Plan**

Acceptances of the Plan are being solicited only from Holders of Claims or Interests in Impaired Classes. A Class of Claims accepts the Plan if holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Claims in that Class actually voting vote to accept. Classes that are not impaired are conclusively presumed to have accepted the Plan and are not entitled to vote.

**E. Best Interest—Liquidation Analysis**

To confirm the Plan, the Bankruptcy Court must find that each Holder of an Impaired Claim or Interest either has accepted the Plan or will receive under the Plan not less than it would receive if the Debtor were liquidated under Chapter 7. Because this Plan is itself a liquidating plan implemented by a Chapter 11 trustee who is already administering the Units and pursuing the

Causes of Action, the Trustee believes that Holders of Claims will receive at least as much as, and likely more than, they would receive in a Chapter 7 liquidation, principally because the Plan preserves the ability to conduct an orderly, value-maximizing sale of the Units and to prosecute the Causes of Action for the benefit of the Estate rather than permitting piecemeal foreclosure. Reference is made to the Liquidation Analysis for the assumptions and figures. Any liquidation analysis is, at best, an estimate, and actual recoveries will depend on the outcome of the sales, the resolution of the disputed Liens and Claims, and the results of the Causes of Action.

**F. Feasibility of the Plan**

The Trustee believes that, after Confirmation, she will be able to fulfil her obligations under the Plan and to liquidate the Units and the Causes of Action without the need for further financial reorganization. Because the Plan provides for liquidation, the feasibility requirement of § 1129(a)(11) is satisfied.

**G. Confirmation Without Acceptance of All Impaired Classes**

The Bankruptcy Code permits confirmation of a plan that is not accepted by all impaired classes, so long as at least one impaired Class of Claims (excluding insiders) has accepted the Plan and the requirements of § 1129(b) are met—that is, the Plan does not discriminate unfairly and is fair and equitable as to each non-accepting Impaired Class. Because Class 8 (Interests) is deemed to reject the Plan, the Trustee will seek confirmation under § 1129(b), and reserves the right to do so as to any other rejecting Impaired Class. THE TRUSTEE BELIEVES THAT, IF NECESSARY, SHE WILL BE ABLE TO MEET THE STATUTORY STANDARDS FOR NONCONSENSUAL CONFIRMATION AND WILL SEEK SUCH RELIEF.

**H. No Discharge**

Because the Debtor is a limited liability company and the Plan provides for the liquidation of all or substantially all of the property of the Estate and the Debtor will not engage in business

after consummation, Confirmation of the Plan does not operate as a discharge of the Debtor under § 1141(d)(3) of the Bankruptcy Code.

## ARTICLE VI—ALTERNATIVES TO THE PLAN

The Trustee has evaluated alternatives to the Plan and has concluded that the Plan will maximize recoveries by Holders of Claims and Interests.

**A. Piecemeal Foreclosure.** Absent the Plan, the three principal secured Creditors, having obtained relief from stay, would likely proceed to foreclose their respective Units. The Trustee believes that piecemeal foreclosure would fail to capture the substantial equity available through an orderly, portfolio-based disposition of the Units and would leave the Estate's Causes of Action unpursued, to the detriment of unsecured creditors.

**B. Conversion to Chapter 7.** If the Plan is not confirmed, the Case could be converted to a liquidation under Chapter 7. The Trustee believes that a Chapter 7 liquidation would likely yield lower and later recoveries, principally because it would disrupt the structured sale process already underway and ongoing efforts to resolve disputes among the parties and the Causes of Action, and would add a further layer of administrative cost.

**C. Competing Plan.** A competing plan of reorganization has been proposed in this Case by a creditor, which contemplates continued operation of the vacation-rental enterprise as a going concern and its eventual refinancing or going-concern sale. The Trustee has determined that a liquidation of the Units through an orderly, structured sale—coupled with retention and prosecution of the Causes of Action—is the best available means of maximizing and expediting recoveries for creditors and is preferable to a speculative going-concern reorganization.

## ARTICLE VII—CONCLUSION

THE TRUSTEE BELIEVES THAT CONFIRMATION OF THE PLAN IS DESIRABLE AND IN THE BEST INTERESTS OF CREDITORS AND INTEREST HOLDERS. The Plan

provides for an orderly, value-maximizing sale of the Units, the retention and prosecution of the Estate's Causes of Action, and an equitable distribution to creditors in accordance with the priorities of the Bankruptcy Code. The Trustee believes that creditors will receive greater and earlier recoveries under the Plan than under any alternative. FOR THESE REASONS, THE TRUSTEE URGES YOU TO RETURN YOUR BALLOT ACCEPTING THE PLAN.

[*Remainder of page intentionally left blank.*]

Dated: September 18, 2026

Respectfully submitted,
/s/ Lara Roeske Fernandez
LARA ROESKE FERNANDEZ
*Chapter 11 Trustee*

/s/ Rhys P. Leonard
RHYS P. LEONARD
Florida Bar No.: 59176
**rleonard@trenam.com**
ANTHONY P. MARZOCCA
Florida Bar No. 1068857
**amarzocca@trenam.com**
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, P.A.
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
Tel: (813) 223-7474 | Fax: (813) 229-6553
*Counsel to Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

HOMEMAKERS REAL ESTATE, LLC,

Debtor.
_______________________________________/

Case No. 6:25-bk-05570-GER
Chapter 11

**Liquidation Analysis**

**I. Purpose and the Best Interests Test**

Section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an Impaired Claim or Interest that has not accepted the Plan receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount such Holder would receive or retain if the Debtor's estate were liquidated under Chapter 7 of the Bankruptcy Code. This Liquidation Analysis compares the estimated recoveries to Holders of Claims and Interests under the Chapter 11 Trustee's Plan of Liquidation with the estimated recoveries in a hypothetical Chapter 7 liquidation.

The Trustee has prepared this analysis in good faith based on the information presently available, including the Trustee's Initial Status Report and its Unit Analysis, the proofs of claim filed to date, the public records of Brevard County, Florida, and the state court foreclosure proceedings. The analysis necessarily rests on estimates and assumptions that are inherently uncertain. Assessed valuations are used solely as a reference point; they are not appraisals and do not represent the price any Unit would bring at a forced or distressed sale. Actual results will depend on the outcome of the sale process, the resolution of the disputed Liens and Claims, and

the results of the Causes of Action. The values stated below are estimates only and are subject to material change.

**II. Controlling Assumption—A Chapter 7 Would Not Include Sale of Units Where Stay Relief has Already Been Granted**

The single most important fact for the best-interests comparison is that the Bankruptcy Court has already granted each of the three principal secured Creditors relief from the automatic stay to pursue its respective state court foreclosure remedies to final judgment:

- **Tamamoi, LLC** holds that certain Uniform Final Judgment of Mortgage Foreclosure entered on May 20, 2026, in Case No. 05-2024-CA-023943-XXCA-BC, Brevard County, Florida, in favor of Tamamoi in the amount of $3,378,797.64, together with statutory interest accruing thereon, secured by condominium Units 206, 303, 305, 402, 404, 503, 504, and 505.

- **The Carton Family Trust of 1992** holds that certain Uniform Final Judgment of Mortgage Foreclosure entered on July 15, 2025 in Case No. 05-2024-CA-038140-XXCA-BC, Brevard County, Florida, in favor of the Carton Trust in the amount of $376,757.47, together with statutory interest accruing thereon, secured by Townhouse unit 104.

- **Mainstreet Community Bank of Florida** is pursuing foreclosure of the Units securing its two loans. Mainstreet Loan One shall mean the indebtedness asserted as owed to Mainstreet in Proof of Claim No. 64-1, in the approximate principal amount of $3,611,594.47 (with an estimated total in excess of $4,793,000.00), secured by condominium Units 103, 104, 107, 202, 203, 205, 207, 307, 407 and 507 and townhome Units 2-101, 2-102, 7-101, 7-103 and 8-101. Mainstreet Loan Two shall mean the indebtedness asserted as owed to Mainstreet in Proof of Claim No. 63-1, in the approximate principal amount of $712,105.80 (with an estimated total in excess of $920,000.00), secured by townhome Units 5-101 and 5-103.

Because stay relief has already been granted, in a Chapter 7 liquidation the Chapter 7 trustee would not sell the Units. The secured Creditors would instead complete their foreclosures in state court and take the Units (or their foreclosure-sale proceeds) in satisfaction of their judgments. There would therefore be no sales of the Units by the estate in a Chapter 7 case, and no Unit sale proceeds would flow to the Chapter 7 estate for distribution to creditors. This distinguishes the present case from an ordinary liquidation in which a trustee markets and sells estate real property.

## III. Chapter 7 Liquidation—Estimated Recoveries

### A. The Units

In a Chapter 7 case, each Unit would be surrendered to, or foreclosed by, the secured Creditor holding the senior Lien on that Unit. The following table sets forth, by collateral group, the aggregate Brevard County assessed valuation of the Units, the approximate secured indebtedness asserted against them, and the senior tax and association liens that would be paid ahead of any estate recovery. The assessed valuations are presented only to illustrate that no meaningful equity would be realized for the estate through foreclosure; forced-sale prices are customarily well below assessed value, and the judgments continue to accrue interest, fees, and costs that erode any nominal cushion.

| Collateral Group | Units | Aggregate Assessed Value | Approx. Secured Claim (with accruing interest/fees) | Senior Tax Liens (known) |
|---|---|---|---|---|
| Mainstreet Loan 4380371 | 15 | $6,511,130 | ± $4,793,000 | $197,494.86 |
| Mainstreet Loan 4383834 | 2 | $795,720 | ± $920,000 | $24,611.67 |
| Carton Family Trust | 1 | $398,250 | ± $376,757.47 | $24,299.98 |
| Tamamoi, LLC | 8 | $3,891,230 | ± $3,378,797.64 | $63,826.35 (several Units not yet available) |
| **Totals** | **26** | **$11,596,330** | **± $9,468,555** | **$310,232.86** |

Several considerations reduce any apparent equity to zero for purposes of a Chapter 7 estate recovery:

1. **No estate sale occurs.** Because the secured Creditors would exercise their state law remedies with respect to the Units, the estate would not conduct sales and would not capture any portion of the Units' value. Any surplus arising from a state court foreclosure sale, if

one occurred, would be determined and disbursed through the state court process rather than paid to the Chapter 7 estate.

2. **Assessed value overstates realizable value.** Assessed valuations are not appraisals. Forced foreclosure sales routinely yield materially less than assessed value, particularly for a block of vacation-rental units sold piecemeal by separate foreclosing creditors rather than marketed as a portfolio.

3. **Senior liens and accruing charges consume any cushion.** The foreclosure judgments accrue statutory and default interest, attorneys' fees, and costs (Mainstreet's asserted totals already exceed its principal by more than $1.3 million), and unpaid ad valorem taxes (at least $310,232.86, with several Tamamoi Units not yet quantified) are senior or must be satisfied to convey title. These charges erase the nominal difference between assessed value and asserted debt.

4. **Piecemeal disposition destroys portfolio value.** Separate foreclosures by three creditors would forfeit any premium available from an orderly, stabilized, portfolio sale of the resort units.

Accordingly, the Trustee estimates that a Chapter 7 liquidation would produce no net recovery to the estate from the Units.

**B. Rental Income**

Tamamoi has already obtained an order sequestering the rental income generated by its collateral, and the other secured Creditors assert similar rights. In a Chapter 7 case, the net rental income would be applied to the secured Creditors' claims rather than retained by the estate. Under the Plan, by contrast, the Trustee collects and preserves the net rental income in the estate's account pending the structured sale.

**C. Causes of Action**

The Estate's Causes of Action would exist in a Chapter 7 case as well. However, in a Chapter 7 liquidation those claims would have to be investigated, funded, and prosecuted anew by a Chapter 7 trustee, adding a second layer of trustee and professional compensation, and the recoveries (if any) would be delayed and remain speculative. The Trustee, who is already administering the estate and is positioned to prosecute (or resolve for value to the estate) the Causes

of Action under the Plan, believes the Plan will realize the value of the Causes of Action more efficiently and with less administrative cost than a Chapter 7 liquidation.

**D. Administrative and Priority Claims**

A conversion to Chapter 7 would create a new set of Chapter 7 administrative expenses, including the compensation of a Chapter 7 trustee and that trustee's counsel and other professionals, which would be payable ahead of general unsecured creditors and would compound the accrued Chapter 11 administrative expenses. With no estate recovery from the Units and only speculative recoveries from the Causes of Action, these administrative and priority claims would likely absorb any Chapter 7 estate funds.

**E. Estimated Chapter 7 Distribution**

| **Class / Category** | **Estimated Chapter 7 Recovery** |
|---|---|
| Secured Claims (Classes 1–4) | Paid only from their own collateral through foreclosure; deficiencies likely |
| Ad Valorem Tax Claims (Class 5) | Paid from foreclosure proceeds to extent of value; otherwise ride with the property |
| Cape Crossing Townhome Homeowners Association Assessment Claims (Class 6) | Paid from foreclosure proceeds to extent of value; deficiencies likely |
| Chapter 11 and Chapter 7 Administrative / Priority Tax Claims | Uncertain; likely not paid in full |
| **Class 7—General Unsecured Claims** | **$0 (no estate funds available)** |
| **Class 8—Interests** | **$0** |

## IV. Recoveries Under the Plan

Under the Plan, the Trustee does not surrender the Units to foreclosure. Instead, the Trustee stabilizes operations, collects and preserves the net rental income, and conducts an orderly, marketed sale of the Units—individually, in groups, or as a portfolio—free and clear of Liens under sections 363 and 1123(a)(5)(D) of the Bankruptcy Code, with Liens attaching to the proceeds. This process is designed to capture value above forced-foreclosure levels, to preserve for the estate any surplus over the Allowed Secured Claims, and to fund the payment of Allowed

Administrative Expenses and Allowed Priority Tax Claims. In addition, the Trustee retains and prosecutes the Causes of Action for the benefit of the estate, without the added cost and delay of a second trustee's investigation. As a result, the Trustee believes the Plan offers Holders of Allowed Claims (and, potentially, the Holders of Interests) a recovery greater than, and earlier than, the $0 recovery projected in a Chapter 7 liquidation.

**V. Conclusion**

Because a Chapter 7 liquidation would proceed by foreclosure rather than by estate sale, it would yield no net recovery to the estate from the Units and, after Chapter 7 and Chapter 11 administrative and priority claims, no distribution to general unsecured creditors or to Interests. The Plan, by contrast, preserves the opportunity to realize the value of the Units through an orderly, value-maximizing sale and to prosecute the Causes of Action for the benefit of the estate. The Trustee therefore submits that the Plan satisfies the best interests of creditors test under § 1129(a)(7) of the Bankruptcy Code, because each Holder of an Impaired Claim or Interest will receive under the Plan at least as much as, and in most instances more than, such Holder would receive in a Chapter 7 liquidation.

[*Remainder of page intentionally left blank.*]

Dated: September 18, 2026

Respectfully submitted,

/s/ Lara Roeske Fernandez
LARA ROESKE FERNANDEZ
*Chapter 11 Trustee*

/s/ Rhys P. Leonard
RHYS P. LEONARD
Florida Bar No.: 59176
**rleonard@trenam.com**
ANTHONY P. MARZOCCA
Florida Bar No. 1068857
**amarzocca@trenam.com**
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, P.A.
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
Tel: (813) 223-7474 | Fax: (813) 229-6553
*Counsel to Chapter 11 Trustee*