**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

HOMEMAKERS REAL ESTATE, LLC,

Case No. 6:25-bk-05570-GER

Chapter 11

Debtor.
_______________________________________/

**NOTICE OF OPPORTUNITY TO**
**OBJECT AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at the George C. Young Federal Courthouse, 400 W Washington Street, Suite 5100, Orlando, Florida 32801 within thirty (30) days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

**You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.**

**OBJECTION TO CLAIM NO. 69 FILED BY PAUL RENE, JR.**

Lara Roeske Fernandez, the Chapter 11 Trustee (the "Trustee"), by and through undersigned counsel and pursuant to Fed. R. Bankr. P. 3007 and 11 U.S.C. § 502, objects to Claim No. 69 filed by Paul Rene, Jr. (the "Mr. Rene"), and seeks entry of an order disallowing Claim No. 69 (the "Claim") in its entirety. In support, the Trustee states:

**Jurisdiction**

1. The Court has jurisdiction to consider this Objection and the relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The Trustee has standing to object to the Claim pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007.

**The Claim**

5. Mr. Rene has filed the Claim asserting (i) a secured claim of $1,486,484.37 and (ii) an unsecured claim of $166,115.63, for a total amount of $1,634,600,00.00.

6. The Claim states that the basis for the Claim is "Money loaned – note secured by recorded Jetton Mortgage," acquired from Jetton Investments, Inc. ("Jetton Investments"). *See* Claim.

7. The exhibits to the Claim include a balloon promissory note dated May 25, 2018, in the original principal amount of $5,775,000.00, with a balloon payment of $6,604,500.00 due at maturity (the "Note"), secured by a mortgage deed executed on May 25, 2018, and recorded on May 30, 2018 (the "Mortgage") that were executed by Canaveral Crossroads, LLC ("Canaveral Crossroads"), a separate legal entity than Homemakers Real Estate LLC (the "Debtor"). The Mortgage identifies Canaveral Crossroads as mortgagor and Jetton Investments as mortgagee. Jetton Investments purportedly assigned the Note and Mortgage to Mr. Rene by an assignment recorded on June 14, 2022 (the "Assignment").

8. The Forbearance Agreement and Modification effective November 19, 2024, also attached as an exhibit to the Claim, is solely between Mr. Rene and Canaveral Crossroads. The Debtor is not a party or signatory.

9. The Claim alleges only that the land encumbered by the Mortgage is "the land underlying the Cape Crossing resort property in which the Debtor holds recorded interests", and that Mr. Rene's prepetition foreclosure action, *Paul Rene, Jr. v. Canaveral Crossroads, LLC, et al.*, No. 05-2025-CA-038877 (Fla. 18th Jud. Cir.) (the "Rene Foreclosure Action"), named the Debtor "by reason of its interests in the encumbered land." Claim, at p. 4-5.

**Background**

10. This bankruptcy case was commenced on September 2, 2025, by the filing of an involuntary petition against the Debtor .

11. On May 21, 2026, this Court entered its Order (1) Denying Motion to Dismiss and Motion to Abstain, (2) Entering Order for Relief, and (3) Setting Deadlines (Doc. No. 229) (the "Order for Relief"), which provided, in part, a limited period of time for Kenneth G. Dixon and Horton S. Johnson to resolve the issue of ownership and control of the Debtor before the appointment of a Chapter 11 Trustee.

12. That resolution did not timely occur, and the Trustee was appointed to administer the Debtor's estate on June 12, 2026, by Order Approving Appointment of Chapter 11 Trustee (Doc. No. 252).

13. On June 16, 2026, Horton S. Johnson (purportedly on behalf of the Debtor) filed bankruptcy schedules for the Debtor (the "Schedules"). *See* Doc. No. 255.

14. On July 14, 2026, the Trustee raised her concern at the initial status conference that, given the history of this case, all purported creditors listed on the Schedules be required to file

proofs of claim under penalty of perjury to participate in the Debtor's bankruptcy case, and she subsequently filed her Motion to (I) Require Certain Creditors with Scheduled Claims to File Proofs of Claim and (II) Extend Time for Certain Creditors to File Proofs of Claim. *See* Doc. No. 318.

15. On July 22, 2026, this Court entered its Order Granting Chapter 11 Trustee's Motion to (I) Require Certain Creditors with Scheduled Claims to File Proofs of Claim and (II) Extend Time for Certain Creditors to File Proofs of Claim (Doc. No. 320) requiring all creditors listed on the Debtor's Schedules to file a proof of claim in order to participate in the Debtor's bankruptcy case and/or receive distributions from the Debtor's bankruptcy estate.

## **Objection**

16. A filed proof of claim is deemed allowed unless objected to. *See* 11 U.S.C. § 502(a). Bankruptcy Rule 3001(c) requires a claimant whose claim is based on a writing to file the writing with the claim, and the attachment of supporting documentation is a mandatory prerequisite to establishing a claim's prima facie validity. *In re Taylor*, 363 B.R. 303, 307-08 (Bankr. M.D. Fla. 2007).

17. Whether a claim is enforceable—and therefore allowable—is governed by non-bankruptcy law. 11 U.S.C. § 502(b)(1). Because property interests are created and defined by state law, *Butner v. U.S.*, 440 U.S. 48, 55 (1979), a claim that is not enforceable against the debtor outside of bankruptcy will not be enforceable against the debtor's bankruptcy estate. *Citizens Bank of Am. V. Wiggins*, 167 B.R. 992, 994 (M.D. Ga. 1994).

### **I. The Debtor Is Not Liable for the Underlying Obligation.**

18. On the face of the Claim and its exhibits, the Debtor has no personal liability to Mr. Rene. The Note and Mortgage were made by Canaveral Crossroads, a distinct legal entity. The

Debtor did not sign the Note, did not execute the Mortgage, and is not a party to the Forbearance Agreement that purports to fix the claimed balance. Nothing in the Claim alleges that the Debtor assumed, guaranteed, or is otherwise in privity with respect to the Canaveral Crossroads obligation. An obligation of a separate entity is not enforceable against this Debtor under Florida law, and the associated right to payment is therefore not an allowable *in personam* claim against this estate. 11 U.S.C. § 502(b)(1); *Citizens Bank*, 167 B.R. at 994.

19. That the Debtor was named in Mr. Rene's state-court foreclosure action does not supply the missing liability. As the Claim concedes, the Debtor was named *in rem* only "by reason of its interests in the encumbered land." *See* Claim at 5. Naming a party in a foreclosure action solely because of its ownership interest in the encumbered property does not make that party an obligor on the note and mortgage. *See Aguilar v. Se. Bank, N.A.*, 177 F.3d 1226, 1227 (11th Cir. 1999). Mr. Rene's *in personam* remedy, if any, runs against Canaveral Crossroads and not the Debtor.

20. A mortgage lien encumbering estate property can constitute an allowable claim even absent personal liability, because a claim against the debtor includes a claim against property of the debtor under 11 U.S.C. § 102(2), and § 502(b)(1) directs disallowance only to the extent a claim is unenforceable against the debtor **and** the property of the debtor. *See In re Souza*, No. 2:26-bk-00352, 2026 WL 2566386, at *8 (Bankr. M.D. Fla. Aug. 29, 2026) (citing *Johnson v. Home State Bank*, 501 U.S. 78 (1991)). However, that framework does not provide a basis for validity of the Claim here, because it presupposes that the mortgage actually encumbers property in which this estate holds an interest, which Mr. Rene has not established through the Claim.

21. The Claim asserts only, in conclusory terms, that the Debtor "holds recorded interests" in the Cape Crossing property. Claim at p. 4. However, the Claim does not identify

specifically what the alleged real property interest is that the Debtor holds that is encumbered by the Claim's supporting documents. The legal description attached to the Mortgage does not appear to accurately reflect real property acknowledged to be owned by the Debtor. The Claim does not reconcile this issue or otherwise show that the Mortgage encumbers any parcel in which this Debtor holds an interest.

22. Once the presumption of validity is rebutted (*see infra*), claimant bears the burden of establishing the validity of its claim, including that its lien attaches to property of this estate. *In re Aegis Asset Mgmt., LLC*, 182 F.4th 1364, 1370 (11th Cir. 2026); *In re Taylor*, 363 B.R. at 308-09. A bare assertion of "recorded interests," unsupported by any showing that the specifically described mortgaged parcel is property of this estate, does not carry that burden. Absent proof that the Mortgage encumbers property of the Debtor's estate, there is no allowable *in rem* claim under § 102(2) and § 502(b)(1). *In re Souza*, 2026 WL 2566386, at *8.

23. Furthermore, even where a mortgage lien may have validly existed to support an *in rem* claim, where a release (or partial release) of such mortgage has been recorded, the lien will cease to provide a basis for an *in rem* claim. *See, e.g.*, *Fed. Deposit Ins. Corp. v. Valente*, 553 So. 2d 763, 764 (Fla. 2d DCA 1989) (holding that recording of lien release in public records is prima facie evidence of discharge of the underlying debt). Two partial releases of mortgage were recorded in the Public Records of Brevard County, Florida that appear to directly relate to the Mortgage attached in support of the Claim.

a. On May 7, 2019, Jetton Investments executed a Partial Release of Mortgage (the "<u>First Partial Release</u>"), which was recorded on June 19, 2019, in Official Record Book 8468, Page 1259, in the Public Records of Brevard County, Florida, releasing the lien from the Mortgage as to the real property described

in Exhibit A to the First Partial Release.[1] A true and correct copy of the First Partial is attached hereto as **Exhibit 1**.

b. On May 8, 2019, Jetton Investments executed a Partial Release of Mortgage (the "Second Partial Release"), which was recorded on June 19, 2019, in Official Record Book 8468, Page 1263, in the Public Records of Brevard County, Florida, releasing the lien from the Mortgage as to the real property described in Exhibit to the Second Partial Release.[2] A true and correct copy of the Second Partial Release is attached hereto as **Exhibit 2**.

24. To the extent that Mr. Rene, or any of the predecessors in interest described in the attachments to the Claim, had or may have had an *in rem* claim against the Debtor on account of the Note or Mortgage, the First Partial Release and Second Partial Release appear to extinguish the liens that would support any potential such claim against the Debtor. Therefore, for this reason, among the others described herein, the Claim should be disallowed in its entirety.[3]

**II. The Claim is Prima Facie Invalid.**

25. A claim based on a writing is not entitled to prima facie validity where the claimant fails to attach the writing (or adequately explain its loss) and where the supporting documents are internally inconsistent. *In re Taylor*, 363 B.R. at 307-08. Where the required documentation is

---

[1] The real property included in Exhibit A to the First Partial Release includes Condominium Units 102-107, 202-206, 302-306, 402-404, 406, and 502-505. This is a summary only and reference is made to the First Partial Release for the complete legal descriptions therein.

[2] The real property included in Exhibit A to the Second Partial Release includes Condominium Units 207, 307, 407, and 507. This is a summary only and reference is made to the Second Partial Release for the complete legal descriptions therein.

[3] For the sake of completeness, the Trustee notes that the legal description of real property released by the First Partial Release and the Second Partial Release, as described above and incorporated by reference herein, does appear to be different from the legal description of real property incorporated into the Mortgage attached as an exhibit to the Claim. For the reasons described *infra*, this discrepancy is another independent basis for disallowance of the Claim in its entirety. *In re Taylor*, 363 B.R. at 307-08.

missing, "the creditor cannot rest on the proof of claim." *Id.* The Claim suffers from multiple such deficiencies including, a contradictory chain of title where the Assignment appears to have inaccurately reversed the mortgagor and mortgagee and describing a note with a figure appearing nowhere else in the claim (*see* Claim at p. 19); an assertion of $166,115.63 in accrued interest and charges without identification of the interest rate and a payment history (*see* Claim at p. 2); and inconsistency between the Claim attachments and lost note affidavit regarding whether the Mortgage was recorded in the public records of Hillsborough County or Brevard County.

26. Under Eleventh Circuit authority, "a proof of claim must show the debt is owed to the claimant at the time it files the claim," and in Florida "a party must also be the owner or holder of a note to file a claim based on it in bankruptcy." *In re Aegis Asset Mgmt.*, 182 F.4th at 1370. The lost Note, coupled with an assignment that misidentifies the mortgagor, mortgagee, and loan amount, calls into question Mr. Rene's status as the owner or holder entitled to enforce the obligation, even though the Trustee maintains, as set forth herein, that the Claim is not enforceable against the Debtor. Stripped of the presumption of validity, and combined with the substantive grounds set forth above, Mr. Rene cannot carry his burden, and the Claim should be disallowed in its entirety.

**Reservation of Rights**

27. The Trustee reserves all rights, including the right to object to the Claim or any amended claim on any additional grounds; to contest the validity, extent, priority, perfection, and amount of any asserted lien; to seek a determination of the value of collateral and secured status under 11 U.S.C. § 506 and Fed. R. Bankr. P. 3012; and to pursue any claims or causes of action of the estate. Nothing herein constitutes a waiver of, or admission concerning, any matter.

## Conclusion

WHEREFORE, the Trustee respectfully requests that the Court enter an order (i) sustaining this Objection; (ii) disallowing Claim No. 69 filed by Paul Rene, Jr. in its entirety; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: September 30, 2026

Respectfully submitted,

/s/ Anthony P. Marzocca
RHYS P. LEONARD
Florida Bar No.: 59176
rleonard@trenam.com
ANTHONY P. MARZOCCA
Florida Bar No.: 1068857
amarzocca@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, P.A.
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
Tel: (813) 223-7474 | Fax: (813) 229-6553
*Counsel to Chapter 11 Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 30, 2026, a true and correct copy of the foregoing was furnished by CM/ECF to all registered CM/ECF recipients, and by U.S. Mail, postage prepaid, to Paul Rene, Jr., 116 Magnolia Avenue, Suite 3E, Ocala, FL 34471,[4] and to the Office of the United States Trustee, and to any other parties entitled to service under Fed. R. Bankr. P. 3007(a) and the Local Rules.

/s/ Anthony P. Marzocca
Anthony P. Marzocca

[4] The Trustee had previously attempted to serve Mr. Rene by mail at this address listed on the Claim, but the U.S. Postal Service returned mailings sent to that address as "Return to Sender – Vacant – Unable to Forward." While this Objection is still being served on the address of record included in the Claim, out of an abundance of caution, the Trustee is also serving this Objection on the counsel of record for Mr. Rene in the Rene Foreclosure Action.

# **Exhibit 1**

## First Partial Release

**PARTIAL RELEASE OF MORTGAGE**

**KNOW ALL MEN BY THESE PRESENTS,**

**That JETTON INVESTMENTS, INC., a Florida corporation, the owner and holder of that Mortgage and executed by CANAVERAL CROSSROADS, LLC, a Florida limited liability company, on May 25, 2018, and recorded in Official Records Book 8176, Page** 930, **recorded in the Public Records of BREVARD County, Florida, in consideration of $10.00, the receipt of which is hereby acknowledged, on this** 7th **day of May, 2019, hereby releases from the lien of that mortgage the real property in that county described as:**

SEE EXHIBIT "A" ATTACHED HERETO AND MADE PARTOF

**This releases the lien without impairing the lien of the Mortgage, on the remaining part of the property described in those instruments.**

**JETTON INVESTMENTS, INC., a Florida corporation**

**By:** ______________________

**NEIL J. BUCK, President**

**STATE OF FLORIDA**
**COUNTY OF BREVARD**

**The foregoing instrument was acknowledged before me this** 7th **day of May, 2019, by Neil J. Buck as President of JETTON INVESTMENTS, INC., a Florida corporation, on behalf of said corporation. He is personally known to me or has produced ________________ as identification.**

**WITNESS my hand and official seal this** 7th **day of May, 2019.**

______________________
**Notary Public**

**My Commission Expires:**
May 20, 2021

JOYCE A MURATORE
MY COMMISSION # GG078118
EXPIRES May 20, 2021

Exhibit "A"

Condominium Unit 102, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 103, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 104, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 105, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 106, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 107, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 202, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 203, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 204, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 205, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 206, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 302, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 303, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 304, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 305, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 306, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 402, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 403, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 404, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 406, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 502, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 503, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 504, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 505, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

# <u>Exhibit 2</u>

## Second Partial Release

**PARTIAL RELEASE OF MORTGAGE**

**KNOW ALL MEN BY THESE PRESENTS,**

**That JETTON INVESTMENTS, INC., a Florida corporation, the owner and holder of that Mortgage and executed by CANAVERAL CROSSROADS, LLC, a Florida limited liability company, on May 25, 2018, and recorded in Official Records Book 8176, Page 930, recorded in the Public Records of BREVARD County, Florida, in consideration of $10.00, the receipt of which is hereby acknowledged, on this 8th day of May, 2019, hereby releases from the lien of that mortgage the real property in that county described as:**

SEE EXHIBIT "A" ATTACHED HERETO AND MADE PARTOF

**This releases the lien without impairing the lien of the Mortgage, on the remaining part of the property described in those instruments.**

**JETTON INVESTMENTS, INC., a Florida corporation**

**By:** ________________________
**NEIL J. BUCK, President**

**STATE OF FLORIDA**
**COUNTY OF BREVARD**

**The foregoing instrument was acknowledged before me this 8th day of May, 2019, by Neil J. Buck as President of JETTON INVESTMENTS, INC., a Florida corporation, on behalf of said corporation. He is personally known to me or has produced __________ as identification.**

**WITNESS my hand and official seal this 8th day of May, 2019.**

________________________
**Notary Public**

**My Commission Expires:**

May 20, 2021

JOYCE A MURATORE
MY COMMISSION # GG078118
EXPIRES May 20, 2021

Exhibit "A"

Condominium Unit 207, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 307, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 407, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

Condominium Unit 507, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.