12 pg

FILED ORL INTAKE - USBC
2 OCT 2026 AM9:23

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re: Case No. 6:25-bk-05570-GER

HOMEMAKERS REAL ESTATE, LLC, Chapter 11

Debtor.
_______________________________________/

**FRANK AMODEO REQUESTS THIS COURT COMPLY WITH SECTION 502(d) AND DISALLOW CLAIMS 67 AND 68**

Out of an adherence to textualist training, respect for the law, and a desire to see justice done, I bring an issue to this court's attention. This is not an objection to a claim, and it does not depend on my having the right to make one. Section 502(d) directs its command to the court alone, and it operates whether or not anyone objects. *11 U.S.C. § 502(d)* ("Notwithstanding subsections (a) and (b) of this section, the court shall disallow . . . ."). What follows is the record that triggers it.

11 U.S.C. § 502(d) provides: Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

**The Case Management Order does not reach this motion.**

At the August 19, 2026 status conference this court said that unless it entered "a further order of the Court that allows anybody else to file claim objections, I'm going to limit it to the Trustee for now." (Doc. 351, Tr. at 31:10–13). The Case Management Order carries that forward: parties "must seek leave of Court before filing an objection to a proof of claim." (Doc. 359 ¶ 3). I have not filed an objection and I do not ask leave to file one. Section 502(d) operates notwithstanding subsections (a) and (b), and subsection (a) is the objection subsection. A provision that operates notwithstanding the objection process is not a paper filed in that process.

The Order rests on the trustee's duty to "examine proofs of claims and object to the allowance of any claim that is improper," *11 U.S.C. § 704(a)(5)*, made applicable by *11 U.S.C. § 1106(a)(1)*. (Doc. 359 at 2 & n.6). Section 502(d) assigns nothing to a trustee. It names one actor, and that actor is this court.

The Order's own authority supplies the rest. Its footnote quotes *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1147 (1st Cir. 1992), for the rule that leave to object "is not generally accorded an individual creditor unless the . . . trustee refuses to object, notwithstanding a request to do so." (Doc. 359 at 2 n.7). I made that request of the Chapter 11 Trustee on August 20, 2026 and asked for an

answer by September 10, 2026. None came. Days before this filing she objected to an administrative expense request and to Claim 70. (Docs. 388, 392). She has filed nothing against Claim 67 and Claim 68, the two largest claims in this case; she compromised with their holders instead. (Doc. 379).

**PEDixon and ZPD hold property of this estate and have not turned it over.**

This court found as much when it appointed the Trustee. On May 20, 2026 it found that "Mr. Dixon has been retaining all of the rental income," (Doc. 256, Tr. at 13:15–19), and that "the uncontested evidence demonstrat[es] that all rents are being controlled by Mr. Dixon," (*id.* at 30:19–21). Mr. Dixon said the same himself, under oath, three months earlier. Asked whether Homemakers' bankruptcy "allows you to continue to collect the rents," he answered, "Yes." (Doc. 157, Tr. at 262:8–11). Rents this court found are being collected, and that this estate never received, are recoverable under *11 U.S.C. §§ 542 and 543*.

Mr. Dixon and I discussed what he holds. In our last conversation, in about June of 2026, we estimated that he would be holding roughly $880,000 in post-petition funds he expected he would have to turn over. That was our estimate, and I gave it to the Chapter 11 Trustee in writing on August 21, 2026. The Trustee reported on August 19, 2026 that she held "around $44,000 in a DIP account . . . the net excess proceeds of the rent income for the last two months." (Doc. 351, Tr.

at 36:15–18). For the month ended July 31, 2026 — the eleventh month of this case — the estate reported gross income of $0. (Doc. 347 at 2).

The prepetition transfers are a second and independent trigger. Between September 2022 and June 2026, PEDixon and ZPD — directly or through an alter ego status — received preferential payments and fraudulent conveyances, diverting more than $2,800,000 in Homemakers revenues and assets to themselves and other non-creditors. *11 U.S.C. §§ 544(b), 547, 548, and 549*; *Fla. Stat. ch. 726*. Mr. Dixon is trustee of the land trust that holds Homemakers and managing partner of both PEDixon and ZPD, and testified that "all the revenue that came to me paid off — in this case it was PEDIXON's, the interest due." (Doc. 157, Tr. at 238:8–16, 247:20–25, 250:3–8). That is a preference.

**The compromise this court approved did not pay the amount or turn over the property.**

Section 502(d) spares only an entity that "has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553."[1] That has not happened. On September 2, 2026 this court approved a compromise under which "[t]he Lender shall . . . pay the Trustee a sum of $350,000.00 . . . to resolve the Trustee's claim to avoid and recover the

[1] Section 502(d) operates "[n]otwithstanding subsections (a) and (b) of this section" — outside the claim and objection process those subsections create. A debtor may assert section 502(d) as an affirmative defense. *See In re Enron Corp.*, 340 B.R. 180, 191 (Bankr. S.D.N.Y. 2006).

Postpetition Transfers under sections 549 and 550 of the Bankruptcy Code." (Doc. 379 ¶ 3).

First, $350,000 is not the amount even on the payor's own accounting. "Postpetition Transfers" is defined as $359,804.66 in net monthly rental proceeds drawn from "the records of the vacation rental management company," (Doc. 372 ¶ 8) — a figure supplied by the party writing the check, and one our estimate exceeds by half a million dollars. Even inside that definition, $9,804.66 went unpaid. Second, the definition runs only "from the Petition Date through the Order for Relief," (*id.*), which is through May 21, 2026. The Trustee was appointed June 12, 2026, (Doc. 252), and the units have been rented ever since. Nothing in the order reaches a dollar collected after May 21, 2026. Third, the order resolves a claim "to avoid and recover . . . under sections 549 and 550." Section 502(d) is triggered separately by an entity "from which property is recoverable under section 542, 543, 550, or 553." Sections 542 and 543 appear nowhere in Doc. 379. The turnover liability this court's May 20 findings establish sits exactly where it sat.

The statute asks whether the entity has paid "the amount . . . for which such entity . . . is liable" — not an amount someone agreed to accept. Its purpose is "to preclude entities which have received voidable transfers from sharing in the distribution of the assets of the estate unless and until the voidable transfer has been returned to the estate." *In re Mid Atlantic Fund, Inc.*, 60 B.R. 604, 609

(Bankr. S.D.N.Y. 1986), *quoted in In re Enron Corp.*, 340 B.R. 180, 200 (Bankr. S.D.N.Y. 2006). Nothing has been returned.

**The statute directs the court, not the trustee or the parties.**

Section 502(d) directs the imperative to the court: "the *court* shall disallow any claim . . . ." It requires no objection from anyone, and no judgment, complaint, motion, or evidentiary hearing. Once this court is aware that an entity holds estate property, this court must disallow that entity's claims.

Neither does the statute wait on an avoidance action. Its trigger is a transfer "avoidable" — a condition, not an event — and Congress marked the difference. Section 550(a) gives the recovery to "the trustee" where a transfer "is avoided." Section 502(d) says "avoidable," and names no actor but the court. Section 547(g) assigns the burden of "proving the avoidability of a transfer," making avoidability a matter of proof, not an act someone must first perform. "Nothing on the face of the statute or any case requires the entry of a judgment as a prerequisite to the disallowance under § 502(d)." *In re Chase & Sanborn Corp.*, 124 B.R. 368, 370 (Bankr. S.D. Fla. 1991).

**The other side: nonbinding precedent.**

Candor requires me to identify two decisions that appear to run the other way. *In re Prime Motor Inns, Inc.*, 135 B.R. 917, 920–21 (Bankr. S.D. Fla. 1992),

in obiter dictum expressing a minority view, states that section 502(d) requires "a judicial determination," and that a creditor's prima facie showing is not enough. And a few decisions read sections 724(a) and 726(a)(4) to allow "the trustee, not a third party." *Holloway v. Internal Revenue Service (In re Odom Antennas, Inc.)*, 340 F.3d 705, 708 (8th Cir. 2003). Neither addressed the question this motion presents — whether this court is required to disallow a transferee's claims.

*Prime Motor Inns* identifies who may bring a claim, and not universally at that; its subject is recovering property, not disallowance. It says so: "[t]he narrow issue presented here is who may assert a claim to avoid a preference under § 547, whether offensively or defensively." *Prime Motor Inns*, 135 B.R. at 921. Notably, its one observation about section 502(d) runs my way — the subsection "does not incorporate the 'party in interest' language found in § 502(a)." *Id.* at 920. It does not, because it speaks to no party. It speaks to the court.

*Holloway* is further afield. The Eighth Circuit found at the outset that neither claimant "ha[d] received property from a transaction that is voidable under the sections identified in section 502(d)." *Holloway*, 340 F.3d at 708. That ended any section 502(d) question, and what followed — including the remark that section 502(d) applies "after the entity is first adjudged liable," *id.* — was unnecessary to the result. Nor was disallowance the relief sought. The objectors wanted to subordinate perfected liens and move ahead of them in the sale proceeds, using

section 502(d) as "a convenient substitute for section 724(a)," a power the Code gives the trustee alone. *Id.* at 708–09. Here the transfers are avoidable, this court has made the findings, and I ask neither for affirmative relief nor to substitute for the trustee.

Significantly, a circuit court has construed the words that this motion turns on and rejected the argument that section 502(d) requires a finding "that the transferee of the avoidable transfer be liable to turn over property of the debtor and failed to do so." The Ninth Circuit held that "[t]his argument misconstrues the plain meaning of the statute": "[t]he use of the word 'unless' indicates that the phrase is not an additional requirement for disallowance, but an exception to the general rule that a claim based on an avoidable transfer must be disallowed," available only where "the transferee has already relinquished the avoidable transfer." *El Paso City of Texas v. America West Airlines, Inc. (In re America West Airlines, Inc.)*, 217 F.3d 1161, 1165–66 (9th Cir. 2000). Nor need an avoidance action be pending: "[t]he applicability of § 550 . . . is irrelevant because America West is not attempting to recover property affirmatively under § 550. Only the applicability of § 502(d) is at issue." *Id.* at 1167. A judicial determination is a determination by this court, and it was made on May 20, 2026, recognizing Mr. Dixon's testimonial concession. (Doc. 256, Tr. at 13:15–19, 22:6–8, 30:19–21).

**"Shall" is a command, and it leaves this court no discretion.**

Furthermore, neither of the apparently adverse dicta considered the supremacy-of-the-text canon that governs in this circuit: interpretation begins with the text, and where the text is clear it ends there. *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc). And the governing authority makes the statutory "shall" a command. "Using the verb 'shall' in a statute is a command. 'Shall' creates an obligation not subject to judicial discretion." *United States v. Peters*, 783 F.3d 1361, 1364 (11th Cir. 2015) (quoting *In re Tennyson*, 611 F.3d 873, 877 (11th Cir. 2010), and *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)).

**The disallowance bears directly on the two plans now before this court.**

Two plans are before this court: mine, (Docs. 303, 304), and the Chapter 11 Trustee's, filed September 18, 2026. (Docs. 394, 395). The Trustee's plan does not identify Claim 67 or Claim 68. It places general unsecured claims in Class 7, entitles that class to vote, and pays it pro rata from, among other things, "the net collections, if any, on the Causes of Action," (Doc. 394 at 23) — and among the causes of action it reserves is the validity of the Lender's own loan. (Doc. 395 at 9). It gives the Trustee "exclusive authority to file objections" and sets the deadline for them at "sixty (60) days after the Confirmation Date." (Doc. 394 at 10, 29).

Claims 67 and 68 assert $6,160,031.25, the largest claims in this case. Unless section 502(d) is applied first, transferees who have not returned estate property stand to vote that sum and to share in distributions the plan funds in part from recoveries against them. That is the result section 502(d) exists to prevent. *Mid Atlantic Fund*, 60 B.R. at 609. This court may, after notice and a hearing, temporarily allow a claim for purposes of voting. *Fed. R. Bankr. P. 3018(a)*. I ask that it decide the section 502(d) question before it does so, and before it approves a disclosure statement that does not identify the two largest claims in the case. Congress left that determination to no one's discretion, including mine or a Chapter 11 Trustee's. It gave the command to this court, and it made the command "shall."

## RELIEF REQUESTED

1. Comply with *11 U.S.C. § 502(d)* and disallow Claim 67 of PEDixon, LLC and Claim 68 of ZPD, LLC, unless and until PEDixon and ZPD have paid the amount, or turned over the property, for which they are liable.

2. Decide the section 502(d) question before approving any disclosure statement, and before any temporary allowance of Claim 67 or Claim 68 under *Fed. R. Bankr. P. 3018(a)*.

3. Direct PEDixon and ZPD to account for the rental proceeds they received after May 21, 2026, and to file the accounting *11 U.S.C. § 543(b)(2)* requires.

4. Such further relief as is just.

Respectfully submitted this 21st day of September, 2026.

______________________________
Frank L. Amodeo
*Pro se*
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32801@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on September 21, 2026, I filed this motion with the Clerk of Court through the CM/ECF system, which served it electronically on every party registered to receive notice in this case, including the Chapter 11 Trustee and her counsel, the United States Trustee, and Jeffrey S. Ainsworth, Esq., counsel of record for PEDixon, LLC and ZPD, LLC. (Doc. 353). Because this motion asks the court to disallow their claims, on the same date I also served it by first-class United States mail, postage prepaid, on:

PEDixon, LLC, Attn: Kenneth G. Dixon, Managing Member
ZPD, LLC, Attn: Kenneth G. Dixon, Managing Member
each in care of the notice address designated on its proof of claim and in Doc. 353:
Jeffrey S. Ainsworth, Esq., Branson Ainsworth PLLC
1501 E. Concord Street, Orlando, Florida 32803

I am the movant, Frank L. Amodeo, 1311 Hoffner Avenue, Orlando, Florida 32809. I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Dated: September 21, 2026

Frank L. Amodeo
*Pro se*