**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FILED ORL INTAKE - USBC
7 OCT 2026 AM 11:19

In re: Case No. 6:25-bk-05570-GER
HOMEMAKERS REAL ESTATE, LLC, Chapter 11 (Involuntary)

Debtor.
_______________________________/

# OBJECTION TO THE TRUSTEE'S DISCLOSURE STATEMENT (DOC. 395) AND NOTICE OF THE AMENDMENTS TO MY DISCLOSURE STATEMENT (DOC. 304)

## Objections


1. The townhome count ....2
2. The Carton collateral ....2
3. The Confirmation Date and the Effective Date ....3
4. The Class 6 claimant....3
5. The guaranty is disputed....3
6. Incomplete disclosure of class members ....4
7. The PEDixon and ZPD claims are disallowed by law without objection....4
8. The eleven grounds against Claims 67 and 68 ....5
9. Deemed consent to jurisdiction ....5
10. The liquidation analysis....6
11. The Tamamoi and Carton claims....6
12. Class 5 ad valorem taxes....7
13. Deficiency claims ....8
14. The Class 8 vote and assets left at closing....8
15. The ownership action and the land trust that did not exist ....8
16. The competing plan ....9
17. The Trustee's immunity....9

Relief Requested....10


Two plans compete for this estate. The Trustee's sells all twenty-six Units; mine keeps the resort operating, pays every allowed claim in full, and returns the equity to its holders. The court may confirm only one. *11 U.S.C. § 1129(c)*. I object

to the Trustee's disclosure statement (Doc. 395) on the seventeen grounds below and I give notice of the amendments to mine. (Doc. 397 ¶¶ 4–6).

**1. The townhome count**

Article IV.B of the disclosure statement tells creditors that Mainstreet's Class 1 collateral includes "8 townhome Units." (Doc. 395 at 15). The plan describes the same collateral as "five (5) townhome Units." (Doc. 394 at 16). The Debtor owns eight townhome Units. (*Id.* at 8). I identify the conflict; a creditor cannot reconcile the two documents. The disclosure statement must be made consistent with the plan before it circulates.

**2. The Carton collateral**

Articles III.D and IV.B describe the Carton collateral two ways: "Townhouse unit 104" and "townhouse Unit 8-104." (Doc. 395 at 11, 15). At Cape Crossing, a bare unit number identifies a condominium; a townhome carries its building number, as in 8-101. (Doc. 394 at 12). Condominium Unit 104 is Mainstreet's collateral. (*Id.*). The Carton judgment forecloses a townhome parcel at 2709 Cutlass Point Lane, Unit 104, and joins the townhome association. (Carton Final Judgment ¶¶ 1, 3, O.R. Book 10390, Pages 202–04). The collateral is townhome Unit 8-104, and the disclosure statement must correct every bare "unit 104."

**3. The Confirmation Date and the Effective Date**

Articles IV.E and IV.G run the contract-rejection bar date and the claim-objection deadline from the Confirmation Date. (Doc. 395 at 19–20). The plan defines that date as the day the confirmation order "becomes final and non-appealable," and the Effective Date as thirty days after the order's entry, absent a stay. (Doc. 394 at 10–11). If anyone appeals without a stay, the plan goes effective while the appeal "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Every act relying on the order is then open to jurisdictional challenge. The disclosure statement must reveal that incongruity, or the plan must make the Effective Date await finality.

**4. The Class 6 claimant**

Article IV.B labels Class 6 "Cape Crossing Association Assessment Claims." (Doc. 395 at 16). The plan names the claimant the "Cape Crossing Townhomes Homeowners Association." (Doc. 394 at 17). On September 18, 2026, the condominium association withdrew its claim. (Doc. 393). The disclosure statement must make clear that the condominium association is not part of Class 6, and the plan's name will do it.

**5. The guaranty is disputed**

On September 18, 2026, in Article III.B, the Trustee told creditors that "the Debtor, as guarantor, entered into a Loan Agreement" with PEDixon, LLC and

ZPD, LLC. (Doc. 395 at 9). On October 2, 2026, she objected to both lenders' claims as possibly "unenforceable." (Docs. 419 ¶¶ 18–19, 420). The disclosure statement must say what she now says: the guaranty is disputed, and so is every dollar that rests on it.

### 6. Incomplete disclosure of class members

PEDixon asserts $4,779,864.58, secured, in Claim 67. ZPD asserts $1,380,166.67 in Claim 68. (Docs. 419 ¶¶ 5, 7, 420 ¶ 5). The Trustee's plan places neither claim in any class, and Article IV.B of her disclosure statement never names them. (Doc. 394 at 16–17; Doc. 395 at 13–17). A plan must classify the claims it treats. *11 U.S.C. §§ 1122(a), 1123(a)(1)*. A creditor in Class 7 cannot tell whether $6,160,031.25 will stand ahead of it, beside it, or nowhere.

### 7. The PEDixon and ZPD claims are disallowed by law without objection

On October 2, 2026, I asked the court to disallow Claims 67 and 68 under *11 U.S.C. § 502(d)*. (Doc. 423). That section operates "[n]otwithstanding subsections (a) and (b)" and directs that "the court shall disallow" the claim of a transferee that has not returned what it received; no objection is required. Article IX.B of the plan and Article IV.G of the disclosure statement give the Trustee "exclusive authority" over objections (Doc. 394 at 29; Doc. 395 at 20), but cannot extinguish papers already on file.

**8. The eleven grounds against Claims 67 and 68**

On the PEDixon and ZPD claims, Article III.B says one thing: "The validity and enforceability of the TC Loan is disputed and is among the Causes of Action reserved under the Plan." (Doc. 395 at 9). It names no ground. The Trustee's October 2, 2026 objection adds only missing writings, uncredited payments, and laws that "may" make the claim unenforceable. (Doc. 419 ¶¶ 17–19). The disclosure statement must disclose eleven independent grounds, any one of which disallows both, and what Class 7 receives if one succeeds:

1. Florida bars enforcement of the debts and removes the claims from this court's subject-matter jurisdiction. *Fla. Stat. § 687.071(7).*
2. Section 502(d) bars the claims until the transfers are returned.
3. Seven of the eight notes were never filed. *Fed. R. Bankr. P. 3001(c).*
4. Payments of $26,970,988.41 on $11,225,000 advanced paid the debt.
5. The claimants refused the statements section 687.08 requires.
6. The lender never satisfied its own conditions precedent.
7. The guaranty reaches principal only on the paid $750,000 loan.
8. Four signatures cannot bind twelve guarantors. *Fla. Stat. § 725.01.*
9. The lender altered the bargain without the assent of the guarantors.
10. The loans exceed 25 percent a year and are therefore void. *Id.* § 687.071(2).
11. The claims are the proceeds of a scheme equity will not reward.

**9. Deemed consent to jurisdiction**

Article IV summarizes the plan (Doc. 395 at 13–20) but omits Article XIII.I, which deems every creditor who filed a claim or appeared to have "consented . . . to the jurisdiction of the Bankruptcy Court for all purposes." (Doc. 394 at 35–36). I do not consent to this court's adjudication of Claims 67 and 68. Consent cannot

supply a power the court lacks. *United States v. Cotton*, 535 U.S. 625, 630 (2002). Article XIII.I must be disclosed and stricken.

**10. The liquidation analysis**

Article V.E and the Liquidation Analysis rest on one premise: all three principal secured creditors hold stay relief, so a Chapter 7 trustee "would not sell the Units." (Doc. 395 at 21, 27). On February 11, 2026, the court lifted the stay for Tamamoi only to let it "obtain a final judgment." (Doc. 135 ¶ 2). On August 28, 2026, the court abated the Tamamoi and Carton requests to conduct foreclosure sales. (Doc. 361 ¶ 1). Mainstreet alone holds in rem relief. (Doc. 183 ¶ 2). The Carve-Out and voting deadline are blank, and no class's recovery is estimated. (Doc. 394 at 9; Doc. 395 at 6). *See 11 U.S.C. § 1129(a)(7).*

**11. The Tamamoi and Carton claims**

Articles III.D, III.E, and IV.B carry Tamamoi's $3,378,797.64 in Class 3 and the Carton Family Trust's $376,757.47 in Class 4, at their judgment amounts, and identify no defect in either. (Doc. 395 at 11–12, 15). On October 6, 2026, the Trustee objected to both claims only to bar a deficiency, and disclaimed standing to raise usury because Homemakers is not an obligor. (Docs. 424, 425 ¶ 14 & n.2). Tamamoi's judgment charges 18 percent on a 360-day year, which is 18.27 percent a year, above the ceiling. *Fla. Stat. § 687.03(1)*. Both loans are subject at least to the civil usury statute. *Fla. Stat. § 687.04*. If FDRE, Inc., which arranged and serviced both loans, acted for the lenders, its fees are interest, and the 2019

Tamamoi loans pass 25 percent, where the criminal statute makes the debt unenforceable. *Fla. Stat. § 687.071(2), (7)*. The civil forfeiture alone leaves the eight Tamamoi liens securing no more than $888,259.44, and the Carton note allows principal of no more than $281,200.15. Between March 2021 and November 2023, Homemakers paid $1,166,008.69 from its own account to Tamamoi, FDRE, and two affiliates. The statute gives the double recovery to "the party from whom such usurious interest has been . . . taken, or exacted," *Fla. Stat. § 687.04*, and Homemakers is that party. *Gunn Plumbing, Inc. v. Dania Bank*, 252 So. 2d 1, 4 (Fla. 1971), on which the Trustee relies, holds only that a borrower may waive the defense. The disclosure statement must disclose both claims as disputed and the double recovery as an estate asset.

**12. Class 5 ad valorem taxes**

Article IV.B tells creditors that Class 5 will be paid in full at each closing "with statutory interest" but never says what rate, and the disclosure statement puts the taxes at "at least $310,232.86." (Doc. 395 at 15, 28–29). Claims 8 through 62 assert $478,289.67. The Tax Collector claims $148,640.78 of 2024 taxes and $163,825.13 of 2025 taxes at 18 percent, the rate that runs "until a certificate is sold." *Fla. Stat. § 197.172(1)*. Certificate holders, who earn only the rate they bid, *id.* §§ 197.172(2), 197.432(6), claim the rest: Keys Funding and ATCF II at 7.5 percent, FIG 20 and Community Red Co at 18 percent. Community Red Co has

applied for tax deeds to Units 305, 402, and 404. (Claims 8–9, 18–19, 28–31). The disclosure statement must state each claim's holder, tax year, amount, and rate; disclose the tax-deed applications; and sort the years, because the 2024 and 2025 taxes fall within the one-year window for priority-tax treatment and the 2022 certificates do not. *11 U.S.C. §§ 507(a)(8)(B), 1129(a)(9)(C)–(D).*

**13. Deficiency claims**

Article IV.B sends any Tamamoi and Carton shortfall to Class 7. (Doc. 395 at 14). Because the plan sells every Unit, no deficiency exists, *11 U.S.C. § 1111(b)(1)(A)(ii)*, and on October 6, 2026, the Trustee asked the court to disallow one. (Docs. 424, 425 ¶ 14). The disclosure statement must conform.

**14. The Class 8 vote and assets left at closing**

Article IV.B deems Class 8 to reject though it promises Interests "any surplus"; Class 8 is entitled to vote. (Doc. 395 at 16–17); *11 U.S.C. § 1126(g).* Article IV.H also provides that no asset will ever "re-vest in the Debtor." (Doc. 395 at 20; Doc. 394 at 26–27). The plan must instead revest in the Debtor any asset left at closing, as the Code ordinarily requires. *11 U.S.C. §§ 554(c), 1141(b).*

**15. The ownership action and the land trust that did not exist**

Article III.B tells creditors that "[t]he validity, formation, and effectiveness of the Trust and of these conveyances are disputed" (Doc. 395 at 9), implying a bona fide dispute over whether the land trust exists. There is none. Florida law is clear, a word I seldom use: a land trust exists only when title "is vested in a trustee

by a recorded instrument" conferring the powers section 689.073(1) prescribes. *Fla. Stat. § 689.071(2)(c)*. No trust deed was recorded before February 14, 2024. (O.R. Book 9992, Page 2830). That deed grew from the three pages Mr. Johnson signed on September 13, 2023 to eight, and its new exhibit describes twenty-seven units where the signed exhibit described none. No deed was of record on January 9, 2024, when the units were assigned to Crescent Sound as trustee. (Doc. 395 at 9). On that date the land trust did not exist as a matter of law, and every claim of ownership that runs through it was contrived after the assignment. The disclosure statement must say so and disclose Mr. Johnson's ownership action, *Johnson v. Crescent Sound Ltd.*, No. 2026-CA-001368-O (Fla. 9th Cir. Ct.), which the plan must carve out of Articles XII and XI.B(e). (Doc. 394 at 32).

**16. The competing plan**

Article VI dismisses my plan as "speculative" without saying what any class would receive. (Doc. 395 at 23). Once Claims 67 and 68 are disallowed and Tamamoi is held to what Florida allows, my plan pays every allowed claim in full. The disclosure statement must set the two plans side by side.

**17. The Trustee's immunity**

Article IV.F gives the Trustee and her Professionals "judicial immunity" for any act connected with the plan or the disclosure statement, short of "gross negligence or willful misconduct," requires leave for any suit, and survives the case. (Doc. 395 at 19–20). It does not say where that immunity comes from or how

far it reaches. The Code creates none; under the judge-made *Barton* doctrine, she may not be sued for acts in her official capacity without the appointing court's leave. *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000) (applying *Barton v. Barbour*, 104 U.S. 126 (1881)). Congress made one express exception: a trustee "may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property," *28 U.S.C. § 959(a)*, and the trustee must operate it "in the same manner that the owner or possessor thereof would be bound to do." *Id.* § 959(b). The disclosure statement never says whether Article IV.F reaches further than that statute, by requiring leave for suits § 959(a) allows without it or by excusing conduct short of gross negligence that § 959(b) makes actionable. The plan cannot override the statute.

**Relief Requested**

I ask the court to deny approval until the Trustee files an integrated amended statement and plan that cure Objections 1 through 17. *11 U.S.C. § 1125(b)*. After the October 14, 2026 hearing, I will file my own amended plan and statement with a redline. (Doc. 397 ¶¶ 5–6). I reserve every objection to confirmation.

Respectfully submitted this 6th day of October, 2026.

________________________________
Frank L. Amodeo, Pro se
1311 Hoffner Avenue
Orlando, FL 32809
(407) 406-1315
flahome32809@gmail.com

## Certificate of Service

I certify that on October 6, 2026, I served a copy of this objection by United States first-class mail, postage prepaid, on the parties paragraph 4 of the Order of September 21, 2026 (Doc. 397) designates: Lara Roeske Fernandez, Chapter 11 Trustee, and her counsel, Rhys P. Leonard and Anthony P. Marzocca, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., 101 East Kennedy Boulevard, Suite 2700, Tampa, Florida 33602; Homemakers Real Estate, LLC, 2875 South Orange Avenue, Suite 500, #6409, Orlando, Florida 32806; the Office of the United States Trustee, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, Florida 32801; and the parties on the Local Rule 1007-2 Parties in Interest List. As a pro se litigant who is not a registered CM/ECF user, I file the original in person with the Clerk of Court.

Frank L. Amodeo, Pro se