**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:

HOMEMAKERS REAL ESTATE, LLC, Case No. 6:25-bk-05570-GER

Chapter 11

Debtor.
____________________________________/

# MOTION TO APPROVE COMPROMISE OF CONTROVERSY AND REQUEST FOR EXPEDITED HEARING

Lara Roeske Fernandez, the Chapter 11 Trustee (the "**Trustee**"), by and through undersigned counsel and pursuant to Bankruptcy Rule 9019, moves for the entry of an order approving a global compromise by and between the Trustee, the Dixon Parties,[1] the Flynn-Johnson Parties,[2] the Pitkanen Parties,[3] and Yaniv Amar (the "**Motion**") and in support states as follows:

## RELIEF REQUESTED

The Trustee requests approval of the Global Settlement Agreement and Mutual General Release (the "**Settlement Agreement**"), a true and correct copy of which is attached hereto as **Exhibit A**, that globally resolves the disputes among the Trustee, the Dixon Parties, the Flynn-

---

1 The "**Dixon Parties**" collectively refers to PEDixon LLC; ZPD LLC; Crescent Sound, Ltd., individually; Crescent Sound, Ltd., in any capacity as trustee of the Tiered Land Trust; Parke Financial Limited Partnership; and Kenneth G. Dixon, individually.

2 The "**Flynn-Johnson Parties**" collectively refers to Martin C. Flynn, Jr., individually; Martin C. Flynn, Jr., as debtor and debtor-in-possession in the Flynn Case; Tracey Hester Flynn; 650 85th LLC; WM Holdings Group, LLC aka WM Holdings, LLC; MTF Holdings, LLC; Horton S. Johnson, individually; Horton S. Johnson, as trustee of the Horton S. Johnson Revocable Trust dated August 3, 2012; Horton S. Johnson, as successor trustee of the Tiered Land Trust under section 5.2 of the Settlement Agreement; Homemakers Real Estate, LLC, by and through the Trustee; Sherwood Construction, Inc., as debtor-in-possession in the Sherwood Case; Canaveral Crossroads, LLC, as debtor-in-possession in the Canaveral Case; Tiered Capital, Inc.; Cape Crossing Vacation Rentals, LLC; A Marine, Inc.; IMQA Investments, Incorporated; Frank Amodeo, individually, acting through Brian Horwitz, Esq., counsel for his guardians, under section 16.14 of the Settlement Agreement; Holly Bluff Marina, Inc.; Florida Space Coast Resorts, Inc., a dissolved Florida corporation acting through Tiered Capital, Inc.; and Recycled Group of South Carolina, LLC.

3 The "**Pitkanen Parties**" collectively refers to Alison Pitkanen, individually; Alison Pitkanen Law Firm LLC; and Alison Pitkanen, P.A.

Johnson Parties, the Pitkanen Parties, and Yaniv Amar relating to the Loan Agreement, the TC Loan, the Tiered Land Trust, the Trustee's Deed, the Assignment, and the related actions, claims, and proofs of claim, as more fully described below. Capitalized terms used but not defined in this Motion have the meanings given to them in the Settlement Agreement. The Trustee requests the Court schedule a hearing on the Motion on an expedited basis so the Motion is heard on or before November 19, 2026.

## JURISDICTION

1. The statutory predicate for the relief requested in this Motion is Bankruptcy Rule 9019. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157(b)(2)(A), (B), (C) and (O) and 1334. This is a core matter pursuant to 28 U.S.C. §§157(b)(2)(A), (B), (C) and (O).

## BACKGROUND

2. Homemakers Real Estate, LLC (the "**Debtor**") is a Florida limited liability company whose sole member (as of September 2023) was Horton S. Johnson ("**H. Johnson**").

3. The Debtor's primary assets are eighteen condominium units and eight townhouse units located in the Cape Crossing Resort & Marina in Merritt Island, Brevard County, Florida (collectively, the "**Units**"). The Units are used as vacation rentals.

4. In September 2023, H. Johnson caused the Debtor to enter into a Loan Agreement, as guarantor, of an $11,075,000.00 loan from PEDixon LLC ("**PEDixon**") and ZPD LLC ("**ZPD**" and together with PEDixon, the "**Lender**") to Tiered Capital, Inc. (the "**Loan Agreement**") that advanced $750,000.00 in additional funds and consolidated $10,325,000.00 in multiple prior unsecured notes given by Tiered Capital, Inc. and/or certain of the other Flynn-Johnson Parties

(collectively, the "**TC Loan**").[4] Pursuant to the Loan Agreement, the Lender was to collect $100,000 per month (funded from the rental income generated by the Units) to be applied to the TC Loan.

5. As part of the consolidation of the loans and in connection with the Loan Agreement, the Debtor (i) purportedly entered into a Tiered Land Trust Agreement as a beneficiary of the land trust (the "**Tiered Land Trust**") controlled by Crescent Sound, Ltd. ("**Crescent**")[5] as trustee and (ii) purportedly executed a Trustee's Deed conveying the Debtor's interest in and to the Units to Crescent (the "**Trustee's Deed**"). The Trustee's Deed required Crescent to hold the Units in accordance with the terms and conditions in the Tiered Land Trust. H. Johnson also purportedly executed an Assignment of Membership Units, conveying all right, title, and interest in and to all the issued and outstanding membership units of the Debtor to Crescent as trustee of the Tiered Land Trust (the "**Assignment**"). After the Lender subsequently declared the TC Loan in default, Crescent recorded the purportedly executed Trustee's Deed.

6. Subsequent to the Debtor's guaranty of the Loan Agreement, assorted Unit obligations became delinquent, including mortgage debt,[6] condominium and/or townhome association dues[7] and real estate taxes.[8] Despite these assorted non-payments, the records of the vacation rental management company operating the Units reflect that the Lender continued to receive the net monthly rental proceeds from the Units.

7. In March 2025, H. Johnson (i) caused the Debtor to purportedly terminate Crescent as trustee of the Trust and (ii) had the Debtor record a revocation of the Tiered Land Trust.

---

[4] Under the Loan Agreement, Tiered Capital, Inc. is listed as the borrower and certain of the other Flynn-Johnson Parties are listed as guarantors.

[5] Both Crescent and the Lender are controlled by Kenneth G. Dixon ("**K. Dixon**").

[6] *See* Proofs of Claim Nos. 63, 64, 65, 66. Presently, nine Units are the subject of foreclosure judgments, and the remaining seventeen Units are the subject of a pending foreclosure action.

[7] *See* Proofs of Claim Nos. 6, 7.

[8] *See* Proofs of Claim Nos. 8-62.

8. In April 2025, H. Johnson (i) executed and recorded a Declaration of Appointment of Successor Trustee that purportedly nominated and appointed the Debtor as the successor trustee of the Tiered Land Trust and (ii) had the Debtor execute and record a trustee's deed conveying the Units to itself as grantor, grantee, and successor trustee.[9]

9. In May 2025, H. Johnson, on behalf of the Debtor, filed a voluntary chapter 11 bankruptcy (Case No. 6:25-bk-02685-GER), and the Lender moved to dismiss the bankruptcy for lack of corporate authority. This Court ultimately determined that—because of the Assignment—H. Johnson lacked the requisite corporate authority to put the Debtor into bankruptcy. *See* Case No. 6:25-bk-02685-GER, Doc. Nos. 73, 85.

10. Shortly thereafter, this case was filed in September 2025, as an involuntary petition against the Debtor, and the Debtor (through Crescent as trustee of the Tiered Land Trust) moved to dismiss the involuntary petition. *See* Doc. No. 7.

11. The Court conducted a multi-day trial on whether to dismiss the involuntary petition (see Doc. Nos. 128, 208) and, in May 2026, entered its Order (1) Denying Motion to Dismiss and Motion to Abstain, (2) Entering Order for Relief, and (3) Setting Deadlines (Doc. No. 229), which provided, in part, a limited period of time for K. Dixon and H. Johnson to resolve the issue of ownership and control of the Debtor before the appointment of a Chapter 11 Trustee.

12. That resolution did not timely occur, and the Trustee was appointed in June 2026, by Order Approving Appointment of Chapter 11 Trustee (Doc. No. 252), and the Trustee began collecting the net monthly rental proceeds from the Units.

13. The validity and enforceability of the Loan Agreement, TC Loan, the Tiered Land Trust, the Trustee's Deed, and the Assignment are disputed, and allegations of prior satisfaction

---

[9] The Lender and Crescent dispute the validity and enforceability of H. Johnson's actions in March and April 2025 (described in paragraphs 7 and 8).

of the Loan Agreement, usurious nature of the TC Loan, and/or forgery of the Tiered Land Trust, Trustee's Deed and the Assignment have been made against the Lender (which the Lender disputes).

14. Assorted Flynn-Johnson Parties have initiated certain actions against the Dixon Parties relating to the Loan Agreement, TC Loan, the Tiered Land Trust, the Trustee's Deed, and/or the Assignment, as included on Exhibit A to the Settlement Agreement, (collectively, the "**Flynn-Johnson Parties Actions**"). The Dixon Parties assert that some of Flynn-Johnson Parties Actions allege derivative claims that belong to the Debtor's bankruptcy estate.

15. In July 2026, PEDixon filed Proof of Claim No. 67-1 for $4,779,864.58, and ZPD filed Proof of Claim No. 68-1 for $1,380,166.67 (collectively, the "**Proofs of Claim**") for amounts purportedly due on the TC Loan. The Trustee has objected to the Proofs of Claim. *See* Doc. Nos. 419, 420.[10]

16. In September 2026, this Court approved a partial, limited settlement between the Trustee and the Lender whereby the Lender paid $350,000.00 to the Debtor's estate to resolve the Trustee's claim that the Lender's collection of the net monthly rental income during the involuntary petition stage of the bankruptcy (i.e. September 2025 through May 2026) constitutes unauthorized, postpetition transfers avoidable and recoverable under sections 549 and 550 of the Bankruptcy Code. *See* Doc. Nos. 372, 379. At the request of the parties, the Court also directed the Trustee and the Lender to participate in a judicial settlement conference for a possible resolution of all issues between the Debtor's estate and the Lender (the "**Judicial Settlement Conference**"). *See* Doc. No. 386.

[10] The Trustee also objected to certain other proofs of claim filed in the Debtor's bankruptcy case, including: (i) Proof of Claim No. 2-1 by WM Holdings Group LLC; Proof of Claim 3-2 by CTO Holdings Inc.; Proof of Claim No. 4-2 by IMQA Investments Incorporated; Proof of Claim No. 5-2 by H. Johnson; Proof of Claim No. 69-1 by Paul Rene, Jr.; and Proof of Claim No. 71-1 by Tiered Capital, Inc. S*ee* Doc. Nos. 409, 410, 411, 412, 416, 421.

17. In the leadup to the Judicial Settlement Conference, the Trustee, the Dixon Parties and the Flynn-Johnson Parties explored a potential global resolution of all issues among them.

## SETTLEMENT TERMS[11]

18. At the Judicial Settlement Conference, the parties ultimately reached a global settlement as described in detail in the Settlement Agreement attached as **Exhibit A,** the key terms of which are more fully described below. The Settlement Agreement must be approved in each of the four Bankruptcy Cases: this case; *In re Martin C. Flynn, Jr.*, Case No. 6:26-bk-00399-LVV; *In re Sherwood Construction, Inc.*, Case No. 6:26-bk-05428-GER; and *In re Canaveral Crossroads, LLC*, Case No. 6:26-bk-05426-GER. Companion motions under Bankruptcy Rule 9019 will be filed in each of the other three cases, as required by Section 14.2 of the Settlement Agreement. The Effective Date is the first business day after the approval orders in all four cases have become Final Orders (or, for any case dismissed before approval, after ratification under Section 14.6 of the Settlement Agreement). Except as otherwise stated below, upon the occurrence of the Effective Date:

a. The Dixon Payor Parties, jointly and severally, shall pay the aggregate sum of $2,500,000.00 (the "**Settlement Payment**") within fourteen (14) days after the Effective Date, to resolve any and all claims that the Debtor's estate and/or the Flynn-Johnson Parties have against the Dixon Parties, including, but not limited to, the validity and enforceability of the Loan Agreement, TC Loan, the Tiered Land Trust, the Trustee's Deed and the Assignment;

[11] The following section is a summary of the material terms of the Settlement Agreement, provided solely for the convenience of the Court and parties-in-interest. It is qualified in its entirety by reference to the Settlement Agreement, a true and correct copy of which is attached hereto as **Exhibit A**. In the event of any inconsistency, ambiguity, or conflict between this summary and the Settlement Agreement, the terms of the Settlement Agreement shall control. All parties-in-interest are encouraged to review the Settlement Agreement in its entirety. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

b. The Settlement Payment shall be paid by separate payments as follows: (i) $850,000.00 to the Trustee, for the Debtor's estate; (ii) $30,000.00 to Canaveral Crossroads, LLC, as debtor-in-possession; (iii) $10,000.00 to Sherwood Construction, Inc., as debtor-in-possession; (iv) $10,000.00 to Martin C. Flynn, Jr., as debtor-in-possession; and (v) $1,600,000.00 to the Paying Agent, to be held until the Settlement Consummation Date and then paid to the Global Settlement Trust for distribution among the Parties that are not Estate Parties, Dixon Parties or Pitkanen Parties under separate agreements among them, as provided in Section 6 of the Settlement Agreement. The portion payable to the Debtor's estate is paid in settlement of the estate's claims and causes of action, including claims under 11 U.S.C. §§ 544, 547, 548 and 550, and does not constitute a payment of rents or of the proceeds of any creditor's collateral;

c. The Dixon Parties and the Pitkanen Parties shall withdraw, with prejudice, all proofs of claim they have filed in the Bankruptcy Cases, including the Proofs of Claim in the Debtor's bankruptcy case, except for the Flynn Allowed Claim (as defined in the Settlement Agreement), which is preserved solely for voting on, and receiving distributions under, a plan in the Flynn Case; the Dixon Parties shall not seek any credit bid, any claim under 11 U.S.C. § 502(h), or any administrative expense claim in this case; no Dixon Party or Pitkanen Party shall vote any claim in the Bankruptcy Cases, except that PEDixon and ZPD shall vote the Flynn Allowed Claim to accept the plan proposed by Martin C. Flynn, Jr. in the Flynn Case; and the Dixon Parties and the Pitkanen Parties shall not object to, or

take any action to impede, any plan in this case, including a competing plan, that is not inconsistent with the Settlement Agreement;

d. Proof of Claim 2-1 filed by WM Holdings Group LLC shall be disallowed in full with prejudice;

e. Proof of Claim 3-1 filed by CTO Holdings Inc., as amended by Proof of Claim 3-2, shall be withdrawn with prejudice upon entry of the order approving the Settlement Agreement in this case, and disallowed in full with prejudice;

f. Proof of Claim 4-2 filed by IMQA Investments Incorporated, as amended by Proof of Claim 4-3, shall be allowed as a general unsecured claim in the amount of $350,000.00;

g. Proof of Claim 5-2 filed by H. Johnson shall be allowed as a general unsecured claim in the amount of $1,297,493.97;

h. Proof of Claim 71-1 filed by Tiered Capital, Inc. shall be disallowed in full with prejudice;

i. Crescent Sound, Ltd. shall resign as trustee of the Tiered Land Trust, and Horton S. Johnson shall be appointed as successor trustee of the Tiered Land Trust;

j. Each Dixon Payor Party shall assign, transfer and relinquish to the Tiered Land Trust, acting through its successor trustee, all right, title and interest, if any, in and to any membership interest, units or other equity of the Debtor, for subsequent conveyance to Horton S. Johnson; provided, however, that nothing in the Settlement Agreement transfers any property of the Debtor's estate or affects

the rights or duties of the Trustee, who shall remain in her role pursuant to the Order Approving Appointment of Chapter 11 Trustee (Doc. No. 252) until further order of the Court;

k. All liens, mortgages, security interests, UCC financing statements, notices of lis pendens, assignments and other recorded interests, whether or not recorded, held or asserted by any Dixon Party or Pitkanen Party against any Flynn-Johnson Party or its property or Yaniv Amar and his property, or by any Flynn-Johnson Party or Yaniv Amar against any Dixon Party, any Pitkanen Party, or its property, shall be released, terminated and canceled effective as of the Settlement Consummation Date, as set forth in the Settlement Agreement, except the mortgage on the 650 85th Property, which is governed by the Flynn Agreement, and any claim or interest between Canaveral Crossroads, LLC and Sherwood Construction, Inc. preserved under Section 9.6(c) of the Settlement Agreement;

l. The mutual general releases set forth in the Settlement Agreement shall become effective on the Settlement Funding Date. By those releases, (i) the Dixon Parties, on the one hand, and the Flynn-Johnson Parties (including the Debtor, through the Trustee) and Yaniv Amar, on the other hand, release one another, and (ii) the Pitkanen Parties, on the one hand, and every other Party except the Dixon Parties (including the Debtor, through the Trustee), on the other hand, release one another, in each case from all claims, known or unknown, arising from the beginning of the world through the execution of the Settlement Agreement, subject to the exclusions stated therein. Claims between the Dixon Parties and the Pitkanen Parties are not released, but no such claim may be asserted against any

Flynn-Johnson Party or Yaniv Amar. No release benefits any person listed on Schedule 2.4 to the Settlement Agreement (the "Excluded Persons"), and the Debtor's estate retains its claims against the Excluded Persons;

m. The Trustee and her related persons shall be released, discharged and held harmless from any and all claims arising from any act, omission, transaction or event occurring through the execution of the Settlement Agreement, which release is effective upon entry of the order approving the Settlement Agreement in this case and shall be final and irrevocable without any exception or exclusion;

n. The parties shall dismiss or withdraw, with prejudice, all actions, claims and motions among them (except that *Horton S. Johnson v. Crescent Sound, Ltd., et al.*, Case No. 2026-CA-001368-O (Orange County), will be resolved by an agreed final judgment determining that Horton S. Johnson, and not Crescent Sound, Ltd., is the trustee of the Tiered Land Trust), including the Flynn-Johnson Parties Actions, as listed on Exhibit A to the Settlement Agreement; and

o. Frank Amodeo shall dismiss, with prejudice, his appeal of this Court's Order Denying Motions to Disqualify Pedixon LLC and ZPD LLC From Participation (Doc. No. 344), pending before the United States District Court for the Middle District of Florida, as Case No. 6:26-cv-02089.

**MEMORANDUM OF LAW**

19. Bankruptcy Rule 9019 (a) provides:

On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

20. Rule 9019(a) gives the Court broad authority in approving compromises or settlements. *In re Simmons*, 520 B.R. 136, 141 (Bankr. M.D. Fla. 2014); *In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993). The determination of whether to approve a compromise is a matter committed to the sound discretion of the bankruptcy judge. *River City v. Herpel* (*In re Jackson Brewing Co.*), 624 F.2d 599, 602-603 (5th Cir. 1980). In exercising this discretion, the court should approve the proposed settlement if it is in the best interests of the estate. *Id.* In determining whether a proposed compromise is in the best interests of the estate, the Bankruptcy Court should consider the following factors: (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interests of the creditors and a proper deference to their reasonable views in the premises. *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir.1990), *cert. denied*, 498 U.S. 959, 111 S. Ct. 387, 112 L. Ed. 2d 398 (1990). A court considering the approval of a settlement need only determine whether the settlement falls below the lowest point of the range of reasonableness. *See In re Arrow Air, Inc.*, 85 B.R. 886 (Bankr. S.D. Fla. 1988); *In re Martin*, 91 F.3d 389 (3rd Cir. 1996).

21. The Trustee asserts the Settlement Agreement satisfies the *Justice Oaks* factors and should be approved. The Settlement Agreement resolves, on a global basis, a series of contested issues without the cost and expense of the Trustee initiating and prosecuting an adversary proceeding. These contested issues include, but are not limited to, the recoverability of certain prepetition transfers received by the Dixon Parties as well as competing claims by the Debtor and the Flynn-Johnson Parties regarding the validity and enforceability of the Loan Agreement, TC Loan, the Tiered Land Trust, the Trustee's Deed, and the Assignment. The difficulties to be

encountered in the matter of expense, inconvenience and delay necessarily attending to the litigation weigh in favor of compromise, with the costs to litigate these contested issues to trial reducing any recovery, as the claims are complex, facts are disputed and competing expert testimony will be required.

22. Furthermore, the Dixon Parties' withdrawal of the Proofs of Claim reduces the amount of filed claims in the Debtor's estate by $6,160,031.25. In addition, the disallowance and reduction of the other proofs of claim addressed in the Settlement Agreement reduces the amount of filed claims in the Debtor's estate by a further $1,756,442.40. Paul Rene, Jr. filed a Notice of Withdrawal of Proof of Claim No. 69-1 with Prejudice dated October 26, 2026 (Doc. No. 457), which provides (i) for the disallowance in its entirety, with prejudice, of Claim No. 69-1 in the amount of $1,634,000.00, (ii) a request that the clerk of court mark Claim No. 69-1 as withdrawn on the claims register, and (iii) a reservation of rights indicating that the withdrawal applies only to Claim No. 69-1 in this case and does not withdraw, waive, release, or affect any claim, lien mortgage, or other right of Paul Rene, Jr., in *In re Canaveral Crossroads, LLC*, Case No. 6:26-bk-05426-GER, or in any other case or proceeding.

23. As a result, the Trustee believes that the proposed Settlement Agreement is in the best interests of the estate and the Debtor's creditors.

**WHEREFORE**, Lara Roeske Fernandez, as Chapter 11 Trustee for the bankruptcy estate of Homemakers Real Estate LLC, respectfully requests the entry of an Order: (a) approving the Settlement Agreement in its entirety pursuant to Bankruptcy Rule 9019; (b) authorizing the Trustee to execute the Settlement Agreement and to take all actions reasonably necessary to perform it; (c) providing that, effective on the Effective Date, Proof of Claim 2-1 is disallowed in full with prejudice, Proof of Claim 4-2 (as amended by Proof of Claim 4-3) is allowed as a general

unsecured claim in the amount of $350,000.00, Proof of Claim 5-2 is allowed as a general unsecured claim in the amount of $1,297,493.97, Proof of Claim 71-1 is disallowed in full with prejudice, and Proofs of Claim 67-1 and 68-1 are withdrawn with prejudice; (d) providing that Proof of Claim 3-1 (as amended by Proof of Claim 3-2) is withdrawn with prejudice upon entry of the order and disallowed in full with prejudice; (e) providing that the Trustee's objection to Proof of Claim 3-2 (Doc. No. 410) is moot, and holding in abeyance the Trustee's objections at Doc. Nos. 409, 411, 412, 419 and 420, which shall be deemed resolved on the Effective Date consistent with clause (c); (f) providing that the release of the Trustee under Section 15 of the Settlement Agreement is effective upon entry of the order; (g) retaining jurisdiction to interpret and enforce the order and the Settlement Agreement as they affect this case; and (h) granting such other and further relief as is just and equitable.

Dated: November 12, 2026

Respectfully submitted,

/s/ Anthony P. Marzocca

RHYS P. LEONARD
Florida Bar No. 59176
rleonard@trenam.com
ANTHONY P. MARZOCCA
Florida Bar No. 1068857
amarzocca@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, P.A.
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
Tel: (813) 223-7474 | Fax: (813) 229-6553
*Counsel to Chapter 11 Trustee*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 12, 2026, a true and correct copy of the foregoing was furnished:

by CM/ECF to all registered CM/ECF recipients;

by via First Class U.S. Mail, postage prepaid on:

- Homemakers Real Estate, LLC, 4964 S Orange Ave., Orlando, FL 32806,
- Brennan, Manna & Diamond, P.L., c/o BMD Florida Service LLC, 5210 Belfort Road, Suite 400, Jacksonville, FL 32256; and
- those parties on the Creditors Who Have Filed Claims mailing matrix attached who have not received service by CM/ECF;[12] and

by email to the Office of the United States Trustee, Audrey.M.Aleskovsky@usdoj.gov, United States Department of Justice, Christopher.Emden@usdoj.gov, and those parties having filed claims in this case that included email addresses (and/or have appeared in the case through counsel):

Frank L. Amodeo (Claim 1)
Flahome32801@gmail.com

WM Holdings Group LLC (Claim 2)
mcflynnjr@gmail.com

CTO Holdings Inc. (Claim 3)
contact@ctoholdings.com
lkosto@kostoandrotella.com

IMQA Investments Incorporated (Claim 4)
contact@imqainvestments.com
lkosto@kostoandrotella.com

Horton Johnson (Claim 5)
wjohnsonbbf@gmail.com
Michael.paasch@dinsmore.com
leibert@urbanthier.com

Cape Crossing Townhomes Homeowners Association Inc. (Claim 6)
jcrowder@farolaw.com

Cape Crossing Condominium Association, Inc. (Claim 7)
jcrowder@farolaw.com

Keys Funding LLC – 2024 (Claims 8-9)
tburke@tcmfund.com

Brevard County Tax Collector (Claims 10-17, 20-27, 32-62)
Alicia.foley@brevardtc.com

ATCF II Florida-A LLC (Claim 18)
florida@alternacap.com

FIG 20, LLC FBO SEC PTY (Claim 19, 28)
AR@figadvisors.com

Community RED CO (Claims 29-31)
jpico@jplinv.com

[12] Pursuant to the Order Granting Chapter 11 Trustee's Motion to (I) Require Certain Creditors with Scheduled Claims to File Proofs of Claim and (II) Extend Time for Certain Creditors to File Proofs of Claim (Doc. 320), the Bankruptcy Court required all creditors to file a proof of claim to participate in the Debtor's bankruptcy case and/or receive distributions from the Debtor's bankruptcy estate.

Mainstreet Community Bank of Florida, N.A.
(Claims 63-64)
jluna@lathamluna.com

Tamamoi LLC (Claim 65)
tamamoillc@gmail.com
lsavastano@mtglaw.com

The Carton Family Trust (Claim 66)
carton@sbcglobal.net
lsavastano@mtglaw.com

Pedixon LLC (Claim 67)
jeff@bransonlaw.com

ZPD LLC (Claim 68)
jeff@bransonlaw.com

IPFS Corporation (Claim 70)
Lisa.chandler@ipfs.com

Tiered Capital, Inc. (Claim No. 71)
wjohnsonbbf@gmail.com

/s/ Anthony P. Marzocca
RHYS P. LEONARD
Florida Bar No. 59176
rleonard@trenam.com
ANTHONY P. MARZOCCA
Florida Bar No. 1068857
amarzocca@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, P.A.
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
Tel: (813) 223-7474 | Fax: (813) 229-6553
*Counsel to Chapter 11 Trustee*

Label Matrix for local noticing
113A-6
Case 6:25-bk-05570-GER
Middle District of Florida
Orlando
Thu Nov 12 11:24:44 EST 2026

ATCF II Florida-A LLC
PO Box 69239
Baltimore, MD 21264-9239

Brevard County Tax Collector
PO Box 2500
Titusville, FL 32781-2500

CAPE CROSSING CONDOMINIUM ASSOCIATION, INC.
c/o Faro & Crowder, P.A.
700 N. Wickham Road
Suite 205
Melbourne, FL 32935-8840

COMMUNITY RED CO
8724 SW 72 ST NO 382
MIAMI, FL 33173-3512

CTO Holdings Inc.
4409 Hoffner Avenue
Orlando, FL 32812-2331

Cape Crossing Townhomes Homeowners Associati
c/o Faro & Crowder, P.A.
700 N. Wickham Road
Suite 205
Melbourne, FL 32935-8840

FIG 20, LLC FBO SEC PTY
PO Box 12225
Newark, NJ 07101-3411

Frank L. Amodeo
1311 Hoffner Ave
Orlando, FL 32809-3515

Horton Johnson
10226 Curry Ford Road
Suite 107 PMB 1036
Orlando, FL 32825-8735

Horton Johnson
c/o Michael A. Paasch, Esq.
Dinsmore & Shohl LLP
225 E. Robinson St., Suite 600
Orlando FL 32801-4334

IMQA Investments Incorporated
4409 Hoffner Avenue, #348
Orlando, FL 32812-2331

IPFS Corporation
30 Montgomery Street
Suite 501
Jersey City, NJ 07302-3821

KEYS FUNDING LLC - 2024
PO Box 67513
Newark, NJ 07101-8009

Mainstreet Community Bank of Florida, N.A.
c/o Latham, Luna, Eden & Beaudine, LLP
201 S. Orange Ave.
Suite 1400
Orlando, Florida 32801-3483

Paul Rene Jr.
116 Magnolia Avenue, Suite 3E
Ocala, FL 34471-1178

Pedixon LLC
c/o Jeffrey S Ainsworth
Branson Ainsworth PLLC
1501 E Concord Street
Orlando FL 32803-5411

TIERED CAPITAL, INC.
4409 Hoffner Avenue #348
Orlando, FL 32812-2331

Tamamoi LLC
5060 SW Philomath BLVD #516
Corvallis, OR 97333-1044

The Carton Family Trust
c/o Peter M. Carton Trustee/ Carton Fami
12910 Lomas Verdes Dr.
Poway, CA 92064-1250

WM Holdings Group LLC
14556 Saint Georges Hill Drive LLC
Orlando, FL 32828-8035

ZPD LLC
c/o Jeffrey S Ainsworth
Branson Ainsworth PLLC
1501 E Concord Street
Orlando FL 32803-5411

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)CTO Holdings, Inc.
4409 Hoffner Avenue
Orlando, FL 32812-2331

End of Label Matrix

| | |
|---|---|
| Mailable recipients | 21 |
| Bypassed recipients | 1 |
| Total | 22 |

# Exhibit A

## Settlement Agreement

# GLOBAL SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Global Settlement Agreement and Mutual General Release (this "**Agreement**") is entered into by and among the persons and entities listed in Section 2 of this Agreement, each in the capacity or capacities stated there (each, a "**Party**" and together, the "**Parties**"), and is dated as of the latest date on which a Party signs it, as shown on the signature pages (the "**Execution Date**").

## RECITALS

A. Disputes have arisen among the Parties concerning loans made or acquired by PEDixon LLC and ZPD LLC, related guaranties, security agreements, assignments and transfers, a trust arrangement referred to by some Parties as the "Tiered Land Trust," and related real and personal property. These disputes are the subject of the actions and claims listed on **Exhibit A** to this Agreement.

B. Four of the Parties are debtors in cases under title 11 of the United States Code pending in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division (the "**Bankruptcy Court**"):

(1) *In re Homemakers Real Estate, LLC,* Case No. 6:25-bk-05570-GER (the "**Homemakers Case**");

(2) *In re Martin C. Flynn, Jr.*, Case No. 6:26-bk-00399-LVV (the "**Flynn Case**");

(3) *In re Sherwood Construction, Inc.*, Case No. 6:26-bk-05428-GER (the "**Sherwood Case**"); and

(4) *In re Canaveral Crossroads, LLC*, Case No. 6:26-bk-05426-GER (the "**Canaveral Case**").

Homemakers Real Estate, LLC is a Party through its Chapter 11 trustee. The four cases are together the "**Bankruptcy Cases**."

C. The Parties intend a complete, amicable and mutual separation of their business relationships and termination of all litigation between them. Except as otherwise indicated in this Agreement, they intend to resolve every dispute among them, dismiss every action among them with prejudice, release and discharge all claims, defenses, and counterclaims that were raised or that could have been raised, and release every lien and recorded interest held by one side against the other, without any Party assigning or accepting blame.

D. The Parties dispute, among other things, the validity and enforceability of the loans, guaranties and related documents, and who served as trustee of the Tiered Land Trust and when. They enter into this Agreement to compromise those disputes.

NOW, THEREFORE, in consideration of the mutual promises and releases in this Agreement, the receipt and sufficiency of which are acknowledged, the Parties agree as follows:



***Note that the reference to "Page __ of 70" is no longer correct due to Ex. B. and that this fully executed and compiled agreement is 84 pages.***
***/s/ Chapter 11 Trustee.***

**1. RECITALS; NO ADMISSION.**

1.1. **Recitals.** The Recitals are incorporated into this Agreement.

1.2. **No admission.** This Agreement is a compromise of disputed claims. No Party admits liability, or the validity, enforceability, amount or characterization of any loan, guaranty, security agreement, assignment, transfer, trust or document, or the genuineness of any signature or notarization. Neither this Agreement nor its negotiation may be used as evidence in any proceeding, except a proceeding to approve or enforce this Agreement.

**2. PARTIES.** **Each Party enters into this Agreement for itself alone, in each capacity listed below, and signs on its own signature line. No Party signs for, binds or releases on behalf of any other Party. Where a person is listed in more than one capacity, that person is a separate Party in each capacity. Notwithstanding the foregoing, each Party that gives a release or covenant in this Agreement gives it in every capacity in which that Party has held, holds or may hold any claim, whether or not that capacity is listed below, including without limitation as an individual, trustee, successor trustee, beneficiary, settlor, debtor, debtor-in-possession, creditor, equity holder, member, manager, shareholder, officer, director, partner, employee, guarantor, assignee, subrogee, or derivative or representative claimant.**

2.1. **The Dixon Parties.** The following are the "**Dixon Parties**":

a. PEDixon LLC, a Florida limited liability company ("**PEDixon**");

b. ZPD LLC, a Florida limited liability company ("**ZPD**");

c. Crescent Sound, Ltd., a Florida limited partnership, on its own behalf and in any capacity as trustee of the Tiered Land Trust;

d. Parke Financial Limited Partnership, a Florida limited partnership; and

e. Kenneth G. Dixon, individually.

2.2. **The Flynn-Johnson Parties.** The following are the "**Flynn-Johnson Parties**":

a. Martin C. Flynn, Jr., individually;

b. Martin C. Flynn, Jr., as debtor and debtor-in-possession in the Flynn Case;

c. Tracey Hester Flynn, individually;

d. 650 85th, LLC, a Florida limited liability company;

e. WM Holdings Group, LLC, a Florida limited liability company, which has at times been incorrectly identified in documents among the Parties as "WM Holdings, LLC" (together, under either name, "**WM Holdings Group**");

f. MTF Holdings, LLC, a Florida limited liability company;

g. Horton S. Johnson, individually;

h. Horton S. Johnson, as trustee of the Horton S. Johnson Revocable Trust dated August 3, 2012;

i. Horton S. Johnson, as successor trustee of the Tiered Land Trust under Section 5.2 of this Agreement;

j. Homemakers Real Estate, LLC, by and through Lara Roeske Fernandez, solely as Chapter 11 Trustee of its estate;

k. Sherwood Construction, Inc., a Florida corporation, as debtor-in-possession in the Sherwood Case;

l. Canaveral Crossroads, LLC, a Florida limited liability company, as debtor-in-possession in the Canaveral Case;

m. Tiered Capital, Inc., a Florida corporation;

n. Cape Crossing Vacation Rentals, LLC, a Florida limited liability company;

o. A Marine, Inc., a Florida corporation;

p. IMQA Investments, Incorporated, a Florida corporation;

q. Frank Amodeo, individually, acting through Brian Horwitz, Esq., counsel for his guardians, and in his own right, each under Section 16.14 of this Agreement;

r. Holly Bluff Marina, Inc., a Florida corporation;

s. Florida Space Coast Resorts, Inc., a dissolved Florida corporation; and

t. Recycled Group of South Carolina, LLC, a South Carolina limited liability company.

2.3. **Borrowers, guarantors and obligors.** Each person or entity that signed, or is alleged to have signed, any promissory note, loan agreement, guaranty or other loan document in favor of a Dixon Party is listed separately in Section 2.2 or Section 2.7 of this Agreement and signs separately. The loan documents describe these persons in different ways, including as borrowers, guarantors, obligors and co-obligors. This Agreement includes each of them in every such capacity, however described.

2.4. **Released Related Persons; Excluded Persons**. A release, covenant or agreement to hold harmless in this Agreement benefits only (a) the Parties, each in the capacities stated in this Section 2, and (b) any officer, director, manager, member, shareholder, partner, employee, agent, heir, beneficiary, insurer, professional or attorney of such Party (each, a "**Released Related Person**"), on a mutual basis, so that each Party's Released Related Persons are released only to the same extent as every other Party's. Notwithstanding the foregoing, no release, covenant or agreement to hold harmless in this Agreement shall benefit any person specifically named on Schedule 2.4 (the "**Excluded Persons**"). This Agreement binds and benefits each Party's permitted successors and assigns.

2.5. **Entities held by the Tiered Land Trust**. Cape Crossing Vacation Rentals, LLC, Recycled Group of South Carolina, LLC and Holly Bluff Marina, Inc. are held by the Tiered Land Trust. Each of them signs this Agreement through Horton S. Johnson, as trustee of the Tiered Land Trust. Cape Crossing Vacation Rentals, LLC also signs through its manager of record, Tiered Preferred LLC, acting through its manager, Tiered Capital, Inc., by Horton S. Johnson, Director.

2.6. **The Pitkanen Parties.** The following are the "**Pitkanen Parties**" (none of which is a Dixon Party):

a. Alison Pitkanen, individually;

b. Alison Pitkanen Law Firm LLC, a Florida limited liability company; and

c. Alison Pitkanen, P.A.

2.7. **Yaniv Amar.** Yaniv Amar, individually, is a Party. He is not a Flynn-Johnson Party.

**3. DEFINITIONS.** **In addition to the terms defined elsewhere in this Agreement, the following terms have the following meanings:"650 85th Property"** means the real property owned by 650 85th, LLC that is the subject of the Flynn Agreement.

3.1. "**Approval Order**" means separate orders entered under Fed. R. Bankr. P. 9019 by the Bankruptcy Court in each of the four Bankruptcy Cases (the Homemakers Case, the Flynn Case, the Sherwood Case, and the Canaveral Case) approving this

Agreement in its entirety without material modification, each of which has become a Final Order.

3.2. **"Chapter 11 Trustee"** means Lara Roeske Fernandez as the duly appointed chapter 11 trustee in the Homemakers Case and her retained professionals.

3.3. **"Crescent Sound"** means Crescent Sound, Ltd., individually and in any capacity as trustee of the Tiered Land Trust.

3.4. **"Dixon Payor Parties"** means, collectively, PEDixon, ZPD, Crescent Sound and Parke Financial Limited Partnership.

3.5. **"Effective Date"** means the first business day following the date on which the Approval Orders in all four Bankruptcy Cases have become Final Orders. In the event any Bankruptcy Case is dismissed without an Approval Order, then the Effective Date shall be the first business day following the date on which both of the following have occurred: (i) Approval Orders in all applicable Bankruptcy Cases have become Final Orders, and (ii) this Agreement is ratified (including automatic ratification) pursuant to Section 14.6 of this Agreement.

3.6. **"Estate Party"** means each of the Parties listed in Sections 2.2(b), (j), (k) and (l) of this Agreement.

3.7. **"Final Order"** means an Approval Order that has not been reversed, modified, vacated or stayed, and as to which the time to appeal or to seek reconsideration or rehearing has expired with no appeal or motion pending.

3.8. **"Flynn Agreement"** means the Final Outline of Compromise dated July 15, 2026, signed July 21, 2026 by Martin C. Flynn, Jr. and Kenneth G. Dixon, as amended by the Settlement Agreement among PEDixon LLC, ZPD LLC, Martin C. Flynn, Jr., WM Holdings Group, LLC, MTF Holdings, LLC and 650 85th, LLC, including its exhibits and schedules, both attached as **Exhibit B** to this Agreement.

3.9. **"Global Settlement Trust"** means the Global Settlement Trust established under a trust agreement dated October 23, 2026, acting through its trustee, Horton S. Johnson.

3.10. **"Paying Agent"** means Cramer, Price & de Armas, P.A., acting through Stephen H. Price, Esq., 1420 Edgewater Drive, Suite 200, Orlando, Florida 32804, (407) 843-3300, a neutral and independent firm identified by the Flynn-Johnson Parties and reasonably acceptable to the Dixon Payor Parties and the Chapter 11 Trustee, acting under a paying agent agreement consistent with this Agreement.

3.11. **"Settlement Consummation Date"** means the single date after the Effective Date on which the Paying Agent, holding the full Trust Funds (as defined in Section 6.1 of this Agreement) in cleared funds, makes every payment required by Section 6.1 of this Agreement and releases the documents it holds in escrow under Section 7.2 of this Agreement. The Paying Agent will confirm the date by written notice to all Parties.

3.12. "**Subchapter V Trustee**" means the Subchapter V Trustee in the Flynn Case, L. Todd Budgen.

3.13. "**Tiered Land Trust**" means the Tiered Land Trust created under the Tiered Land Trust Agreement dated September 13, 2023, and any trust or nominee arrangement claimed to have been created by it.

## 4. THE FLYNN AGREEMENT.

4.1. **Incorporation by Reference.** The Flynn Agreement (including all exhibits and schedules) is incorporated into this Agreement and remains in full force without modification. Nothing in this Agreement amends, waives or conditions any term of the Flynn Agreement.

4.2. **The Flynn Claim is kept for voting only.**

a. The allowed claim of PEDixon and ZPD under the Flynn Agreement (the "**Flynn Allowed Claim**") is not released by this Agreement.

b. The Flynn Allowed Claim survives solely for voting on a plan proposed by Martin C. Flynn, Jr. in the Flynn Case and for receiving distributions under a plan confirmed in the Flynn Case. PEDixon and ZPD will vote the Flynn Allowed Claim only to accept that plan.

c. The Flynn Allowed Claim may not be asserted or enforced for any purpose other than voting under Section 4.2(b) of this Agreement, and may not be asserted or enforced against any Party other than Martin C. Flynn, Jr. as debtor in the Flynn Case, or against any property other than property distributed under that plan.

4.3. **Distributions go to the Global Settlement Trust.**

a. PEDixon and ZPD waive every distribution on account of the Flynn Allowed Claim, other than the conveyance of the 650 85th Property under the Flynn Agreement. Any other distribution they receive on account of that claim is held in trust for, and will be turned over promptly to, the Global Settlement Trust, by payment to the Paying Agent.

4.4. **Dismissal of the Flynn Case.** If the Flynn Case is dismissed before a plan is confirmed, the Flynn Allowed Claim is deemed withdrawn, and every release and other term of this Agreement remains in full force and effect in accordance with Section 14.6(a) of this Agreement.

4.5. **Conflicts.** If this Agreement conflicts with the Flynn Agreement, the Flynn Agreement controls as to: (a) the allowance, treatment, and voting of the claims of PEDixon and ZPD in the Flynn Case; (b) the conveyance of the 650 85th Property and the options relating thereto; (c) the escrow, release, and satisfaction of the mortgage encumbering Martin C. Flynn, Jr.'s residential homestead property; and (d) the default remedies provided in Section 12 of the Flynn Agreement. This Agreement controls on every other matter.

**5. DIXON PAYMENTS AND TRANSFERS.**

5.1. **Settlement Payment.**

a. **Settlement Amount and Payees.** The Dixon Payor Parties, jointly and severally, will pay the aggregate sum of Two Million Five Hundred Thousand and No/100 Dollars ($2,500,000.00) (the "**Settlement Payment**"). Within fourteen (14) days after the Effective Date, the Dixon Payor Parties will pay the Settlement Payment by separate payments to the following (each, a "**Payee**"): (i) $850,000.00 to the Chapter 11 Trustee, for the Homemakers estate; (ii) $30,000.00 to Canaveral Crossroads, LLC, as debtor-in-possession; (iii) $10,000.00 to Sherwood Construction, Inc., as debtor-in-possession; (iv) $10,000.00 to Martin C. Flynn, Jr., as debtor-in-possession; and (v) $1,600,000.00 to the Paying Agent, to be held and disbursed under Section 6 of this Agreement.

b. **Method of Payment.** Each payment will be made by wire transfer of immediately available funds, in accordance with written wire instructions delivered by the Payee to counsel for the Dixon Payor Parties and confirmed by telephone before the wire is sent. Each payment to an Estate Party will be made to that Estate Party's debtor-in-possession account or, for the Homemakers estate, the Chapter 11 Trustee's estate account. The last date on which every payment under Section 5.1(a) of this Agreement has been received by its Payee is the "**Settlement Funding Date**." On the Settlement Funding Date, the Dixon Payor Parties have no further payment obligation under this Agreement and no responsibility for the allocation, distribution or application of any part of the Settlement Payment. If the Bankruptcy Case of an Estate Party, other than the Homemakers Case, has been dismissed before the payment to that Estate Party is made, the payment will be made to that Estate Party, or as that Estate Party directs in writing (including to an assignee for the benefit of its creditors); and the payment for Martin C. Flynn, Jr. will be made to him or as he directs in writing. If a Bankruptcy Case has been converted to chapter 7, the payment for that estate will be made to the chapter 7 trustee.

c. Any portion of the Settlement Payment payable to the estate of any Bankruptcy Case is paid in settlement of the estate's claims and causes of action, including claims under 11 U.S.C. §§ 544, 547, 548 and 550. It is not a payment of rents or of proceeds of any creditor's collateral.

5.2. **Tiered Land Trust; Resignation as Trustee**. Within fourteen (14) days after the Effective Date, Crescent Sound, Ltd., in any capacity as trustee of the Tiered Land Trust, will deliver to Horton S. Johnson a Resignation of Trustee and Appointment of Successor Trustee, in recordable form and substantially in the form attached as **Exhibit C** to this Agreement (the "**Resignation**"). Whether or not Crescent Sound, Ltd. has or ever had any authority as trustee of the Tiered Land Trust, to the extent it has or claims any such authority, it releases that authority and consents to Horton S. Johnson acting as trustee of the Tiered Land Trust, including in signing this Agreement for the entities held by the Tiered Land Trust and in receiving and signing the transfers under this Section 5. Horton S. Johnson will sign the Resignation accepting the appointment. Horton S. Johnson may record the Resignation in the Public Records of Brevard County and Orange County, Florida.

5.3. **Recycled Group of South Carolina, LLC and Holly Bluff Marina, Inc**. The Parties agree that all outstanding stock, shares, membership interest, or other equity interests in and to Recycled Group of South Carolina, LLC and Holly Bluff Marina, Inc. are held in the Tiered Land Trust. Nevertheless, to ensure the intent of this Agreement, effective as of the Settlement Funding Date, each Dixon Payor Party assigns, transfers and relinquishes to the Tiered Land Trust, acting through its successor trustee, all right, title and interest, if any, that it has or claims in any stock, shares, membership interest, or other equity interests in and to Recycled Group of South Carolina, LLC and Holly Bluff Marina, Inc. The assignment will be substantially in the forms attached as **Exhibit D**, to be agreed by the Parties before the hearing on approval of this Agreement. The real property known as Holly Bluff is not conveyed under this Agreement.

5.4. **Homemakers Real Estate, LLC.**

a. **Relinquishment.** Effective as of the Settlement Funding Date, each Dixon Payor Party assigns, transfers and relinquishes to the Tiered Land Trust, acting through its successor trustee, all right, title and interest, if any, that it has or claims in any membership interest, units or other equity of Homemakers Real Estate, LLC, whether held of record or beneficially (the "**Membership Interests**"). This assignment is made without representation, warranty or recourse of any kind, including as to the existence, validity, extent or value of any Membership Interest.

b. **Conveyance to Horton S. Johnson.** Promptly after the Settlement Funding Date, the Tiered Land Trust, acting through its successor trustee, will convey to Horton S. Johnson any Membership Interests it receives under Section 5.4(a) of this Agreement.

c. **No transfer of estate property.** Nothing in Sections 5.2 or 5.4 of this Agreement transfers any property of the Homemakers estate or affects the rights or duties of the Chapter 11 Trustee. For the avoidance of doubt all Parties expressly agree that the Chapter 11 Trustee shall remain in her role pursuant to the Order Approving Appointment of Chapter 11 Trustee (Doc. No. 252) until further order of the Bankruptcy Court presiding over the Homemakers Case.

5.5. **No Warranty.** Each Dixon Payor Party transfers, relinquishes and delivers the interests described in Sections 5.2 through 5.4 of this Agreement without representation, warranty or recourse of any kind, including as to title or as to the existence, validity, extent or value of any interest.

## 6. PAYING AGENT AND GLOBAL SETTLEMENT TRUST.

6.1. **Holding and distribution**. The Paying Agent will hold the $1,600,000.00 it receives under Section 5.1(a)(v) of this Agreement (the "**Trust Funds**") and will not disburse any part of it before the Settlement Consummation Date. On the Settlement Consummation Date, and not before, the Paying Agent will pay the Trust Funds to the Global Settlement Trust. The Paying Agent will account for any interest earned and handle all tax reporting on the funds it holds and distributes.

6.2. **Global Settlement Trust.** The Global Settlement Trust will distribute the Trust Funds among the Parties that are not Estate Parties, Dixon Parties or Pitkanen Parties, under separate agreements among those Parties. Those separate agreements, including any agreement between Yaniv Amar and Horton S. Johnson, are not part of this Agreement, and no Dixon Party, Pitkanen Party or Estate Party has any right, obligation or liability under them. The Dixon Parties have no interest in, and no responsibility for, how the Global Settlement Trust allocates or distributes its funds. Each payment under the Global Trust Agreement to an individual Party is $1,000. The payment for Frank Amodeo is made to the United States of America, and the payment for Martin C. Flynn, Jr. is made to his bankruptcy estate.

## 7. RELEASE OF LIENS AND RECORDED INTERESTS.

7.1. **Release.** Effective as of the Settlement Consummation Date, every lien, mortgage, security interest, UCC financing statement, notice of lis pendens, security agreement, assignment, pledge and other encumbrance, whether or not recorded, held or asserted by any Dixon Party or Pitkanen Party against any Flynn-Johnson Party, Yaniv Amar or its or his property, or by any Flynn-Johnson Party or Yaniv Amar against any Dixon Party, Pitkanen Party or its property (collectively, the "**Recorded Interests**"), is released, terminated and canceled. The Recorded Interests are listed on **Exhibit E**. While Exhibit E is intended to be a complete listing of Recorded Interests, the Parties intend and agree that every Recorded Interest in existence on the Execution Date is released under this Section 7.1, whether or not it is listed on **Exhibit E**, except that this Section 7.1 does not apply to the mortgage on the 650 85th Property, which is governed by the Flynn Agreement, or to any claim or interest between Canaveral Crossroads, LLC and Sherwood Construction, Inc. that is preserved under Section 9.6(c) of this Agreement.

7.2. **Delivery.** Before the Settlement Consummation Date, the Parties, as applicable to the instruments each holds, will deliver to the Paying Agent, in escrow, releases, satisfactions, UCC-3 termination statements and releases of lis pendens, in recordable form, for every item on **Exhibit E**. The releasing Party will pay recording fees. If any instrument is not timely delivered, the Party whose property is affected may record this Agreement, or an Approval Order, as a release of that item. Each Party appoints the Party whose property is affected as its attorney-in-fact, coupled with an interest, to sign and record any instrument needed to complete the release. The Paying Agent will release those instruments for recording on the Settlement Consummation Date, at the same time it makes the payments under Section 6.1 of this Agreement.

## 8. ABATEMENT AND DISMISSAL OF ACTIONS.

8.1. **Dismissals.** Within ten (10) days after the Settlement Funding Date, the Parties will file the papers needed to dismiss with prejudice, or withdraw with prejudice, each action, claim and motion (each, an "**Action**," or, collectively, the "**Actions**") listed on **Exhibit A** to this Agreement. While Exhibit A is intended to be a complete listing of the Actions, the Parties intend and agree that every Action in existence on the Execution Date will be dismissed, withdrawn, or otherwise released under this Section, whether or not it is listed on **Exhibit A**. Each dismissal with prejudice shall encompass all claims, counterclaims, cross-claims, third-party claims, defenses, and causes of action that were raised or that could have been raised in such Action.

8.2. **Fees and costs.** Each Party bears its own attorneys' fees and costs in every Action dismissed or withdrawn pursuant to this Agreement.

8.3. **Standstill.** From the Execution Date until the dismissals and withdrawals in this Section 8 are complete, and to the extent each court or tribunal permits, no Party will commence, continue or take any further action against another Party in any action, claim, motion, proceeding, demand, complaint, grievance or other matter, whether or not pending in a court, that relates to the matters resolved by this Agreement or any claims covered by the releases under Section 9 of this Agreement. This Section does not stay any proceeding needed to obtain an Approval Order. In furtherance of this standstill, the Parties shall request, where necessary, and/or cooperate, as may be requested, for enlargement of time and stays of all discovery, responsive pleading deadlines, and scheduled hearings in all pending Actions listed on Exhibit A until the dismissals and withdrawals in this Section 8 are complete.

8.4. **Dixon bankruptcy claims and voting**.

a. Within ten (10) days after the Settlement Funding Date, each Dixon Party and each Pitkanen Party will withdraw, with prejudice, any and all proofs of claim it has filed in any of the Bankruptcy Cases, except the Flynn Allowed Claim to the limited extent preserved in Section 4.2 of this Agreement.

b. From the Effective Date, no Dixon Party or Pitkanen Party will vote, or permit to be voted, any claim it holds or controls in any Bankruptcy Case,

except that PEDixon and ZPD will vote the Flynn Allowed Claim to accept the plan proposed by Martin C. Flynn, Jr. in the Flynn Case.

## 9. MUTUAL GENERAL RELEASE.

9.1. **Release by the Dixon Parties.** In consideration of the mutual covenants, rights and obligations in this Agreement, each Dixon Party, for itself, releases, discharges and agrees to hold harmless each Flynn-Johnson Party, Yaniv Amar, and each Released Related Person, from any and all claims, demands, actions, causes of action, suits, counterclaims, defenses, set-offs, rights of recoupment, controversies, debts, liens, obligations, liabilities, damages (including compensatory, exemplary, treble and punitive damages), penalties, costs, expenses and attorneys' fees, whether arising in contract, tort, by statute or otherwise, at law or in equity, known or unknown, suspected or unsuspected, that it ever had, now has, or may hereafter have, arising from any act, omission, transaction or event occurring from the beginning of the world through the Execution Date.

9.2. **Release by the Flynn-Johnson Parties and Yaniv Amar.** In consideration of the mutual covenants, rights and obligations in this Agreement, each Flynn-Johnson Party and Yaniv Amar, each for itself, releases, discharges and agrees to hold harmless each and every Dixon Party, and each Released Related Person, from any and all claims, demands, actions, causes of action, suits, counterclaims, defenses, set-offs, rights of recoupment, controversies, debts, liens, obligations, liabilities, damages (including compensatory, exemplary, treble and punitive damages), penalties, costs, expenses and attorneys' fees, whether arising in contract, tort, by statute or otherwise, at law or in equity, known or unknown, suspected or unsuspected, that it ever had, now has, or may hereafter have, arising from any act, omission, transaction or event occurring from the beginning of the world through the Execution Date.

9.3. **Unknown Claims.** Each Party assumes the risk of any unknown, unanticipated or misunderstood claims released by this Agreement. The releases apply even if a Party later discovers facts different from, or in addition to, those it now knows or believes to be true.

9.4. **Scope.** The releases in Sections 9.1 and 9.2 of this Agreement are identical in scope and are to be read the same way. The Parties intend them to be as broad and inclusive as permitted by the laws of the State of Florida.

9.5. **Effective date of releases.** The release given by or to a Party, other than the Chapter 11 Trustee, is effective on the Settlement Funding Date.

9.6. **Exclusions.** Nothing in this Section 9 releases, waives or impairs:

a. any Party's rights or obligations arising under this Agreement or the Flynn Agreement;

b. the Flynn Allowed Claim, to the limited extent preserved in Section 4.2 of this Agreement;

c. any claim between Canaveral Crossroads, LLC and Sherwood Construction, Inc., and any amount owed between them;

d. any claims, counterclaims and defenses between PEDixon LLC, ZPD LLC, Crescent Sound, Ltd., individually or in any capacity as trustee, Parke Financial Limited Partnership, and/or Kenneth G. Dixon, on the one hand, and Alison Pitkanen, Alison Pitkanen, P.A., and/or Alison Pitkanen Law Firm LLC, on the other hand; provided that nothing in this clause (d) preserves or permits any claim, including any claim for contribution or indemnity, against any Flynn-Johnson Party, Yaniv Amar, or any of their Released Related Persons; or

e. any Party's rights or claims against Excluded Persons.

9.7. **Covenant not to sue.** No Party will commence, maintain, solicit, encourage, or voluntarily participate or cooperate in any action or proceeding against another Party or a Released Related Person based on a claim released in this Agreement. Each Party further covenants and agrees that it shall not, directly or indirectly, initiate, encourage, solicit, finance, voluntarily assist, or participate in any action, claim, or proceeding brought by any third party, bankruptcy trustee, or governmental body against another Party or a Released Related Person based on a claim released in this Agreement, arising out of any matter from the beginning of the world through the Execution Date, except pursuant to a valid, un-waived subpoena or court order. If any Party commences or asserts any released claim against another Party or Released Related Person in violation of this Section 9.7, the defending party shall be entitled to an immediate order or judgment dismissing such action with prejudice upon submission of this Agreement, together with an award of all reasonable attorneys' fees and costs incurred in defense and enforcement, payable by the asserting Party. Each release in this Agreement given to a Released Related Person is mutual: by accepting its benefit, the Released Related Person is deemed to release each Party and each other Released Related Person to the same extent and on the same terms. If a Released Related Person commences or asserts against any Party or Released Related Person any claim released in this Agreement, the release given to that Released Related Person is extinguished. Each Party will cause every person it controls not to commence or assert any claim released in this Agreement. This Section 9.7 does not apply to an action to enforce this Agreement or the Flynn Agreement. Further, this Section 9.7 does not restrict the Chapter 11 Trustee in the performance of any of her duties under applicable law.

9.8. **Releases by and to Pitkanen and Dixon Parties.** Notwithstanding anything in this Agreement to the contrary, and subject to Section 14.5 and Section 15 of this Agreement, the releases, covenants, and discharges given by and in favor of each Party shall take full effect immediately, perpetually, and irrevocably upon the Settlement Funding Date.

9.9. **Release of Pitkanen.** Each Party, other than the Dixon Parties and the Pitkanen Parties, fully, unconditionally, and forever releases, acquits, and discharges Alison Pitkanen, Alison Pitkanen, P.A., Alison Pitkanen Law Firm LLC, their agents, employees, attorneys, representatives, insurers, predecessors, successors, and assigns (collectively, "**Pitkanen**") from any and all past, present, or future liabilities, claims, debts, damages, causes of action, accountings, and attorney fees whatsoever, in law or equity, known or unknown, actual or contingent, from the beginning of the world through the Execution Date. This release includes, without limitation, all claims arising out of or related to any act or failure to act by, through or on behalf of Pitkanen relating to: (a) all loans, notes, mortgages, guarantees, interest calculations, closing statements, escrow transactions, document negotiation and preparation, and trust account disbursements; (b) any legal, escrow, closing, or notarial services; (c) any alleged claims of any type including negligence, malpractice, breach of fiduciary duty, conflict of interest, RICO, criminal usury, fraud, or civil theft; and (d) all claims, defenses, and demands asserted or assertable in Case Nos. 2025-CA-007270-O, 2025-CA-012832-O, 2026-CA-007213-O, 2026-CA-000017-O, Brevard County Case No. 2025-CA-027661, the June 25, 2026 civil theft demand, or in any other matter. In exchange, Pitkanen releases each Party, other than the Dixon Parties and the Pitkanen Parties, and each of their Released Related Persons, to the same extent and on the same terms. This Section 9.9 is part of the consideration for this Agreement, is effective on the Settlement Funding Date, and is void if this Agreement is terminated under Section 14.5 of this Agreement.

**10. PROFESSIONAL AND REGULATORY COMPLAINTS.** **Within fourteen (14) days after the Settlement Consummation Date, each Party that has filed a complaint with The Florida Bar relating to the matters resolved by this Agreement will send the Bar or agency a copy of this Agreement, with a statement that the matters between the Parties have been resolved. This is the Party's only obligation regarding any such complaint.**

**11. RECORDS.**

11.1. **No Records Held.** Each Dixon Payor Party represents that, to its knowledge, it does not have possession, custody or control of any books or records of:

a. the Tiered Land Trust;

b. Homemakers Real Estate, LLC or its property, including rent rolls and owner statements; or

c. Recycled Group of South Carolina, LLC, Holly Bluff Marina, Inc. or Cape Crossing Vacation Rentals, LLC

(collectively, the "**Third-Party Records**"). This representation does not apply to any Dixon Party's own books and records, including its loan files, ledgers and correspondence.

11.2. **Later-Acquired Records.** If any Third-Party Records later come into a Dixon Payor Party's possession, custody or control, it will deliver them within fourteen (14) days. Records of the Tiered Land Trust and of the entities listed in Section 11.1(c) of

this Agreement go to the successor trustee of the Tiered Land Trust. Records of an Estate Party go to that Estate Party.

11.3. **Sole Remedy.** If any Third-Party Record is not delivered, the sole remedy is reimbursement of the reasonable cost of getting that record from another source. A failure to deliver a record is not a material breach of this Agreement and does not affect any other term.

11.4. **Beachside Records.** Within fourteen (14) days after the Effective Date, the Dixon Payor Parties will deliver to Beachside VR, LLC ("Beachside"), 485 North Shore Drive, Cocoa Beach, Florida 32931, with a copy to Horton S. Johnson, written authorization and instruction directing Beachside to provide to Horton S. Johnson copies of all records for the period from January 1, 2024 through the date of delivery, including rent rolls, owner statements, and the accounting for all Beachside transactions.

## 12. LAWFUL TESTIMONY AND REPORTS.

12.1. **Overriding Regulatory and Lawful Testimony Exception.** Nothing in this Agreement, including the covenant not to sue in Section 9.7 of this Agreement or the professional complaint provisions in Section 10 of this Agreement, prohibits, restricts, or penalizes any Party or its counsel from: (a) giving truthful testimony, evidence, or statements under oath pursuant to a valid subpoena, court order, or lawful deposition; (b) making lawful reports, disclosures, or complaints required or expressly protected by applicable state or federal law or court order; (c) cooperating with any lawful inquiry, investigation, or proceeding conducted by any governmental, law enforcement, or regulatory authority; or (d) asserting or defending its rights in any proceeding brought to enforce this Agreement.

## 13. BREACH AND REMEDIES.

13.1. **Notice and Cure.** A Party claiming a breach must give the breaching Party written notice describing the breach in reasonable detail. The breaching Party then has fifteen (15) business days to cure any such breach.

13.2. **Remedies.** If a breach is not cured, the non-breaching Party may seek specific performance, injunctive relief and actual damages. The prevailing Party in any such proceeding recovers its reasonable attorneys' fees and costs, including on appeal.

13.3. **No forfeiture or unwinding.** Except as provided in Section 14.5 of this Agreement, no breach voids this Agreement, revives any released claim, lien, guaranty or encumbrance, or causes a forfeiture. A breach by one Party does not affect the rights or releases of any other Party.

## 14. BANKRUPTCY COURT APPROVAL.

14.1. **Binding on signature.** This Agreement binds each Party when that Party signs it. As to each Estate Party, it is subject to the requirements of title 11 of the United States Code and to entry of an Approval Order in that Estate Party's Bankruptcy Case.

14.2. **Rule 9019 motions.** Within five (5) business days after the Execution Date, the following will file motions under Fed. R. Bankr. P. 9019 (the "**9019 Motions**") seeking approval of this Agreement:

a. Martin C. Flynn, Jr., as debtor-in-possession, in the Flynn Case;

b. Frank Amodeo, as a creditor and party in interest; Lara Roeske Fernandez, as Chapter 11 Trustee of Homemakers Real Estate, LLC; and PEDixon and ZPD, jointly, in the Homemakers Case;

c. Sherwood Construction, Inc., as debtor-in-possession, in the Sherwood Case; and

d. Canaveral Crossroads, LLC, as debtor-in-possession, in the Canaveral Case.

Each motion will be set for hearing before the bankruptcy court as soon as reasonably practicable pursuant to the applicable rules.

14.3. **Cooperation.** Each Party shall support the 9019 Motions and shall not object to them.

14.4. **Homemakers Reorganization**. Nothing in this Agreement, including Section 8.3 of this Agreement, restricts any Party, including Horton S. Johnson, from proposing, supporting or soliciting acceptances of a plan in the Homemakers Case, including a competing plan, or from negotiating with MainStreet Community Bank of Florida or any other creditor about the treatment of its claim. The Dixon Parties and the Pitkanen Parties will not object to, or take any action to impede, any such plan or negotiation, provided that such plan is not inconsistent with any term of this Agreement.

14.5. **If approval is denied**. If the Bankruptcy Court declines to approve this Agreement in any Bankruptcy Case, ratification under Section 14.6(a) of this Agreement applies as a fallback: this Agreement does not terminate, and the debtor in that case may seek dismissal of its Bankruptcy Case and, if such case is dismissed, take part in this Agreement outside of bankruptcy by ratification under Section 14.6(a) of this Agreement, which takes effect immediately upon dismissal of that Bankruptcy Case. If that Bankruptcy Case is not dismissed within thirty (30) days after the order denying approval, this Agreement terminates, and the Parties are returned to the status quo ante: the standstill in Section 8.3 of this Agreement ends; every document delivered in escrow is returned to the Party that delivered it; and no payment, transfer, release, appointment or waiver under this Agreement takes effect; except that the release of the Chapter 11 Trustee, once effective under Section 15.3 of this Agreement, survives. Notwithstanding the foregoing, termination of this Agreement does not terminate the Flynn Agreement. The Flynn Agreement, including any provisions of this Agreement incorporated into it and any document held in escrow under it, remains governed by its own terms.

14.6. **Dismissal or conversion before approval.**

a. **Ratification.** If a Bankruptcy Case is dismissed before an Approval Order is entered in it (including after approval is denied under Section 14.5 of this Agreement), no Approval Order is required in that case, and the Estate Party in that case takes part in this Agreement outside of bankruptcy. In such event, the debtor in that case, acting in its own right, will, within fourteen (14) days after the order of dismissal is entered, deliver to the Paying Agent a written ratification of this Agreement. Each debtor in a Bankruptcy Case also signs this Agreement in its own right, which will automatically take effect if its Bankruptcy Case is dismissed before an Approval Order is entered, and on that dismissal it is bound without further act. Horton S. Johnson represents and warrants that he is authorized to approve, ratify and execute this Agreement on behalf of Sherwood Construction, Inc.

b. **Conversion.** If a Bankruptcy Case is converted to chapter 7 before an Approval Order is entered in it, the conversion is treated as a denial of approval under Section 14.5 of this Agreement, unless the chapter 7 trustee obtains an Approval Order within sixty (60) days after conversion.

c. **Flynn Case.** If the Flynn Case is dismissed before an Approval Order is entered in it, Section 14.6(a) of this Agreement applies to Martin C. Flynn, Jr., and Section 4.4 of this Agreement governs the Flynn Allowed Claim.

## 15. CHAPTER 11 TRUSTEE MATTERS.

15.1. **Defined Term.** Solely with respect to this Section 15, the following term shall have the meanings ascribed to it as follows:

"**Related Persons**" means each person's officers, directors, managers, members, shareholders, partners, employees, agents, heirs, beneficiaries, successors, assigns, insurers, professionals, and attorneys.

15.2. **Release of Chapter 11 Trustee**. Notwithstanding anything to the contrary in this Agreement, each of the Dixon Parties, for itself and its Related Persons, each of the Pitkanen Parties, for itself and its Related Persons, each of the Flynn-Johnson Parties, for itself and its Related Persons, and Yaniv Amar, for himself and his Related Persons, releases, discharges and agrees to hold harmless the Chapter 11 Trustee and each of her respective Related Persons from any and all claims, defenses, setoffs, rights of recoupment, counterclaims, actions, causes of action, suits, debts, liens, controversies, liabilities, damages, costs, attorneys' fees and demands, in law or in equity, whether known or unknown, suspected or unsuspected, that it ever had, now has or may hereafter have, arising from any act, omission, transaction, or event occurring from the beginning of the world through the Execution Date. The Parties intend provisions of this Section 15 to be as broad and inclusive as permitted by the laws of the State of Florida and all applicable laws.

15.3. **Timing of Release of Chapter 11 Trustee.** Notwithstanding anything to the contrary in this Agreement, the release given to the Chapter 11 Trustee and her Related Persons is effective upon entry of the Approval Order in the Homemakers Case.

15.4. **No Exclusions**. Notwithstanding anything to the contrary in this Agreement, the release given to the Chapter 11 Trustee and her Related Persons shall be final and irrevocable without any exception or exclusion as of the date of the Approval Order.

## 16. GENERAL PROVISIONS.

16.1. **Governing Law.** This Agreement is governed by the laws of the State of Florida without regard to conflict of laws principles.

16.2. **Jurisdiction.** The bankruptcy court shall keep jurisdiction over matters affecting the Bankruptcy Cases. Every other dispute arising under this Agreement is brought exclusively in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida.

16.3. **Notices.** Notices are given in writing by email and by overnight courier to the addresses on **Schedule 16.3**.

16.4. **Entire agreement.** This Agreement, together with its Exhibits and Schedules and the Flynn Agreement, is the entire agreement among the Parties on its subject matter. It supersedes all prior term sheets, outlines and negotiations. This Agreement does not supersede the separate agreements described in Section 6 of this Agreement among the Parties that are not Estate Parties, Dixon Parties or Pitkanen Parties. Those agreements do not affect the closing of this Agreement, bind any Dixon Party or Pitkanen Party, or create any right against or obligation of any Dixon Party or Pitkanen Party.

16.5. **Amendment.** This Agreement may be amended only by a writing signed by all Parties.

16.6. **Joint drafting.** This Agreement is the joint work of the Parties and is not to be construed against any Party as drafter.

16.7. **Counterparts and electronic signatures.** This Agreement may be signed in counterparts and by electronic signature. Each counterpart is an original, and together they are one agreement.

16.8. **Further assurances.** Each Party will sign and deliver any further documents (including but not limited to W-9s) reasonably needed to carry out this Agreement.

16.9. **Authority.** Each person, including each person signing for an entity, represents that he or she is authorized to execute this agreement or is authorized to bind that entity in the capacity stated, as applicable, and that such person executes this Agreement freely, voluntarily, knowingly, and without coercion, duress, or undue influence.

16.10. **Advice of counsel.** Each Party acknowledges that it has read this Agreement in full and has had a full and fair opportunity to consult with counsel of its choosing before signing it. Each Party has either been represented by counsel in the negotiation and execution of this Agreement or has knowingly and voluntarily chosen not to be. Each Party understands the terms of this Agreement, including, but not limited to, the releases in Sections 9 and 15 of this Agreement, and signs it voluntarily, and without relying on any statement or representation by any other Party or its counsel that is not set out in this Agreement.

16.11. **Survival.** All representations, warranties and covenants in this Agreement survive its execution and performance.

16.12. **Severability.** If any provision of this Agreement is held invalid or unenforceable, the remaining provisions remain in full force and effect, and the affected provision is enforced to the fullest extent permitted by law.

16.13. **Section references.** Except if otherwise stated, references to any "section" shall refer to sections of this Agreement.

16.14. **Frank Amodeo's Signature.** Frank Amodeo is the ward in In re

Guardianship of Frank Amodeo, Case No. 48-2008-CP-001369-O, pending in the Circuit Court for Orange County, Florida, Probate Division (the "**Guardianship Court**"). Frank Amodeo executes this Agreement through Brian Horwitz, Esq., counsel for his guardians, who unanimously approved its execution. The guardians shall promptly ask the Guardianship Court to approve or ratify this Agreement under Chapter 744, Florida Statutes, including the releases and covenants given by or on behalf of Frank Amodeo. If the Guardianship Court does not approve or ratify this Agreement before Frank Amodeo's capacity is restored, Frank Amodeo will affirm and ratify this Agreement in the same manner as a debtor under Section 14.6(a) of this Agreement: within fourteen (14) days after entry of the order restoring his capacity, Frank Amodeo will deliver to the Paying Agent a written ratification of this Agreement. Frank Amodeo will also sign this Agreement in his own right and on his own behalf, which the Parties agree he is authorized to do pursuant to his expanded capacity to act on his own behalf in the Bankruptcy Cases.

[*Remainder of page intentionally left blank.*]

## SIGNATURE PAGES

Wet signature version. Each Party signs in ink in the physical presence of two witnesses and a notary public.

### DIXON PARTIES

**Signer: KENNETH G. DIXON (6 signature blocks)**

**KENNETH G. DIXON, individually**

[signature]
Kenneth G. Dixon
Date: 11/6/26

Address: 1627 East Vine Street, Suite E, Kissimmee, FL 34744
Email: kendixon@lelandenterprisesinc.com

Signed, sealed and delivered in the presence of:

Witness 1: [signature]
Print Name: Connie Schneckenberg
Address: 1627 E Vine St Kissimmee, FL

Witness 2: [signature]
Print Name: Maria [illegible] De Jesus
Address: 3605 Elk Bluff Rd St. Cloud, FL

STATE OF Florida
COUNTY OF Osceola

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 6th day of November 2026 by Kenneth G. Dixon, individually, who [✓] is personally known to me or [ ] has produced ____________ as identification.

[signature]
Notary Public, State of Florida
Print Name: Connie Schneckenberg
Commission No.: HH 745661
My Commission Expires: 2/7/30
(NOTARY SEAL)

NOTARY PUBLIC STATE OF FLORIDA
CONNIE J. SCHNECKENBERG
MY COMMISSION # HH 745661
EXPIRES: February 7, 2030

PEDIXON LLC, a Florida limited liability company

By: [signature]
Name: Kenneth G. Dixon
As its Manager
Date: 11/6/26

Address: Attn: Kenneth G. Dixon, Manager, 1627 East Vine Street, Suite E, Kissimmee, FL 34744
Email: kendixon@lelandenterprisesinc.com

Signed, sealed and delivered in the presence of:

Witness 1: [signature]
Print Name: Connie Schneckenberg
Address: 1627 E Vine St Kissimmee, FL

Witness 2: [signature]
Print Name: Marie Colon-De Jesus
Address: 3005 Elk Bluff Rd St. Cloud, FL

STATE OF Florida
COUNTY OF Osceola

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 6th day of November, 2026 by Kenneth G. Dixon, as Manager of PEDixon LLC, a Florida limited liability company, on behalf of the company, who [X] is personally known to me or [ ] has produced ____________________ as identification.

[signature]
Notary Public, State of Florida
Print Name: Connie J Schneckenberg
Commission No.: HH 745661
My Commission Expires: 2/7/30
(NOTARY SEAL)

CONNIE J. SCHNECKENBERG
MY COMMISSION # HH 745661
EXPIRES: February 7, 2030

ZPD LLC, a Florida limited liability company

By: ___________
Name: Kenneth G. Dixon
As its Manager
Date: 11/6/2026

Address: Attn: Kenneth G. Dixon, Manager, 1627 East Vine Street, Suite E, Kissimmee, FL 34744
Email: kendixon@lelandenterprisesinc.com

Signed, sealed and delivered in the presence of:

Witness 1: ___________
Print Name: Connie Schneckenberg
Address: 1627 E Vine St Kissimmee, FL

Witness 2: ___________
Print Name: Maria Colon-De Jesus
Address: 3805 Elk Bluff Rd St Cloud, FL

STATE OF ___________
COUNTY OF ___________

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 6th day of November, 2026 by Kenneth G. Dixon, as Manager of ZPD LLC, a Florida limited liability company, on behalf of the company, who [ ] is personally known to me or [ ] has produced ___________ as identification.

___________
Notary Public, State of Florida
Print Name: Connie J Schneckenberg
Commission No.: HH 745661
My Commission Expires: 2/7/30
(NOTARY SEAL)

CONNIE J. SCHNECKENBERG
MY COMMISSION # HH 745661
EXPIRES: February 7, 2030

**CRESCENT SOUND, LTD., a Florida limited partnership, individually**

By: Crescent Sound, Inc., a Florida corporation, its General Partner

By: ______________________
Name: Kenneth G. Dixon
As its President
Date: 11/6/2026

Address: c/o Crescent Sound, Inc., General Partner, Attn: Kenneth G. Dixon, President, 1627 East Vine Street, Suite E, Kissimmee, FL 34744
Email: kendixon@lelandenterprisesinc.com

Signed, sealed and delivered in the presence of:

Witness 1: ______________________
Print Name: Connie Schneckenberg
Address: 1627 E Vine St Kissimmee, FL

Witness 2: ______________________
Print Name: Maria Colon-De Jesus
Address: 3005 Elk Bluff Rd St Cloud, FL

STATE OF Florida
COUNTY OF Osceola

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 6th day of November, 2026, by Kenneth G. Dixon, as President of Crescent Sound, Inc., a Florida corporation, General Partner of Crescent Sound, Ltd., a Florida limited partnership, on behalf of the partnership, who [✓] is personally known to me or [ ] has produced ____________________ as identification.

______________________
Notary Public, State of Florida
Print Name: Connie J Schneckenberg
Commission No.: HH 745661
My Commission Expires: 2/7/30
(NOTARY SEAL)

NOTARY PUBLIC STATE OF FLORIDA
CONNIE J. SCHNECKENBERG
MY COMMISSION # HH 745661
EXPIRES: February 7, 2030

**CRESCENT SOUND, LTD., a Florida limited partnership, in any capacity as trustee of the Tiered Land Trust**

By: Crescent Sound, Inc., a Florida corporation, its General Partner

By: ______________________
Name: Kenneth G. Dixon
As its President
Date: 11/6/26

Address: c/o Crescent Sound, Inc., General Partner, Attn: Kenneth G. Dixon, President, 1627 East Vine Street, Suite E, Kissimmee, FL 34744
Email: kendixon@lelandenterprisesinc.com

Signed, sealed and delivered in the presence of:

Witness 1: ______________________
Print Name: Connie Schneckenberg
Address: 1627 E Vine St Kissimmee, FL

Witness 2: ______________________
Print Name: Maria Colon-De Jesus
Address: 3805 Elk Bluff Rd St. Cloud FL

STATE OF Florida
COUNTY OF Osceola

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 6th day of November, 2026, by Kenneth G. Dixon, as President of Crescent Sound, Inc., a Florida corporation, General Partner of Crescent Sound, Ltd., a Florida limited partnership, in any capacity as trustee of the Tiered Land Trust, on behalf of the partnership, who [✓] is personally known to me or [ ] has produced ____________________ as identification.

______________________
Notary Public, State of Florida
Print Name: Connie J. Schneckenberg
Commission No.: HH745661
My Commission Expires: 2/7/30
(NOTARY SEAL)

CONNIE J. SCHNECKENBERG
MY COMMISSION # HH 745661
EXPIRES: February 7, 2030

**PARKE FINANCIAL LIMITED PARTNERSHIP, a Florida limited partnership**

By: MFL, Inc., a Florida corporation, its General Partner

By: [signature]
Name: Kenneth G. Dixon
As its Vice President
Date: 11/6/2026

Address: c/o MFL, Inc., General Partner, Attn: Kenneth G. Dixon, Vice President, 1627 East Vine Street, Suite E, Kissimmee, FL 34744
Email: kendixon@lelandenterprisesinc.com

Signed, sealed and delivered in the presence of:

Witness 1: [signature]
Print Name: Connie Schneckenberg
Address: 1627 E Vine St Kissimmee, FL

Witness 2: [signature]
Print Name: Maria Colon-De Jesus
Address: 3805 Elk Bluff Rd St Cloud, FL

STATE OF Florida
COUNTY OF Osceola

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 6th day of November, 2026, by Kenneth G. Dixon, as Vice President of MFL, Inc., a Florida corporation, General Partner of Parke Financial Limited Partnership, a Florida limited partnership, on behalf of the partnership, who [✓] is personally known to me or [ ] has produced ____________________ as identification.

[signature]
Notary Public, State of Florida
Print Name: Connie J Schneckenberg
Commission No.: HH74566
My Commission Expires: 2/7/30
(NOTARY SEAL)

NOTARY PUBLIC STATE OF FLORIDA
CONNIE J. SCHNECKENBERG
MY COMMISSION # HH 745661
EXPIRES: February 7, 2030

**PITKANEN PARTIES**

**Signer: ALISON PITKANEN (3 signature blocks)**

**ALISON PITKANEN, individually**

Alison Pitkanen
_______________________
Alison Pitkanen
Date: 11/6/26

Address: 13514 Lake Mary Jane Road, Orlando, FL 32832
Email: alisonpitkanen@gmail.com; alisonplaw@gmail.com

Signed, sealed and delivered in the presence of:
Witness 1: _______________________
Print Name: Russell S. Musaick II
Address: 10524 Moss Pena Rd, Orlando, FL, 32832
Witness 2: _______________________
Print Name: Anthony Guzman
Address: 10524 Moss Pine Rd, Orlando, FL, 32832

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 6 day of November, 2026, by Alison Pitkanen, individually, who [ ] is personally known to me or [X] has produced FL Driver License as identification.

_______________________
Notary Public, State of Florida
Print Name: Juan Villa
Commission No.: HH757524
My Commission Expires: January 6, 2030
(NOTARY SEAL)

JUAN VILLA
Notary Public - State of Florida
Commission # HH 757524
My Comm. Expires Jan 6, 2030
Bonded through National Notary Assn.

**ALISON PITKANEN LAW FIRM LLC, a Florida limited liability company**

By: Alison Pitkanen
Name: Alison Pitkanen
As its Manager
Date: 11/6/26

Address: Attn: Alison Pitkanen, Manager, 1980 N. Atlantic Avenue, Suite 328, Cocoa Beach, FL 32931
Email: alisonpitkanen@gmail.com; alisonplaw@gmail.com

Signed, sealed and delivered in the presence of:

Witness 1: [signature]
Print Name: Russell S.musick Jr
Address: 10524 Moss Park Rd Orlando FL, 32832

Witness 2: [signature]
Print Name: Anthony Guzman
Address: 10524 Moss Park Rd Orlando, FL, 32832

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 6 day of November, 2026, by Alison Pitkanen, as Manager of Alison Pitkanen Law Firm LLC, a Florida limited liability company, on behalf of the company, who [ ] is personally known to me or [X] has produced FL Driver License as identification.

[signature]
Notary Public, State of Florida
Print Name: Juan Villa
Commission No.: HH752524
My Commission Expires: January 6, 2030
(NOTARY SEAL)

JUAN VILLA
Notary Public - State of Florida
Commission # HH 752524
My Comm. Expires Jan 6, 2030
Bonded through National Notary

**ALISON PITKANEN, P.A.**

By: Alison Pitkanen
Name: Alison Pitkanen
As its President
Date: 11/6/26

Address: Attn: Alison Pitkanen, 1980 N. Atlantic Avenue, Suite 328, Cocoa Beach, FL 32931
Email: alisonpitkanen@gmail.com; alisonplaw@gmail.com

Signed, sealed and delivered in the presence of:

Witness 1: [signature]
Print Name: Russell S. Musnick II
Address: 10524 Moss Park Rd, Orlando, FL 32832

Witness 2: [signature]
Print Name: Anthony Guzman
Address: 10524 Moss Park Rd, Orlando, FL 32832

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 6 day of November, 2026, by Alison Pitkanen, as President of Alison Pitkanen, P.A., on behalf of the corporation, who [ ] is personally known to me or [X] has produced FL Driver License as identification.

[signature]
Notary Public, State of Florida
Print Name: Juan Villa
Commission No.: HH752524
My Commission Expires: January 6, 2030
(NOTARY SEAL)

JUAN VILLA
Notary Public - State of Florida
Commission # HH 752524
My Comm. Expires Jan 6, 2030
Bonded through National Notary Assn.

**FLYNN-JOHNSON PARTIES**

**Signer: MARTIN C. FLYNN, JR. (5 signature blocks)**

**MARTIN C. FLYNN, JR., individually**

______________________

Martin C. Flynn, Jr.
Date: 11/4/2026

Address: 14556 Saint Georges Hill Drive, Orlando, FL 32828
Email: mcflynnjr@gmail.com

Signed, sealed and delivered in the presence of:

Witness 1: Brandon Bowyer
Print Name: Brandon Bowyer
Address: 671 Addison Longwood ter Apt 217, Longwood FL

Witness 2: Maridza M Perez
Print Name: Maridza M. Perez
Address: 201 S. Orange Ave., Suite 1400, Orlando FL 32801

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026, by Martin C. Flynn, Jr., individually, who [ ] is personally known to me or [✓] has produced license as identification.

______________________
Notary Public, State of Florida
Print Name: Maridza M Perez
Commission No.: HH 723837
My Commission Expires: 9/22/2029
(NOTARY SEAL)

Notary Public State of Florida
Maridza M Perez
My Commission HH 723837
Expires 9/22/2029

**MARTIN C. FLYNN, JR., as debtor and debtor-in-possession in Case No. 6:26-bk-00399-LVV**

______________________________

Martin C. Flynn, Jr
Date: 11/4/2026

Address: 14556 Saint Georges Hill Drive, Orlando, FL 32828
Email: mcflynnjr@gmail.com

Signed, sealed and delivered in the presence of:

Witness 1: ______________________________
Print Name: Brandon Bowyer
Address: 671 Addison Longwood ter Apt 217, Longwood FL

Witness 2: ______________________________
Print Name: Maridza M Perez
Address: 201 S. Orange Ave, Suite 1400, Orlando, FL 32801

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026 by Martin C. Flynn, Jr., as debtor and debtor-in-possession in Case No. 6:26-bk-00399-LVV, who [ ] is personally known to me or [✓] has produced license as identification.

______________________________
Notary Public, State of Florida
Print Name: Maridza M Perez
Commission No.: HH 723 837
My Commission Expires: 9/22/2029
(NOTARY SEAL)

Notary Public State of Florida
Maridza M Perez
My Commission HH 723837
Expires 9/22/2029

**650 85TH, LLC, a Florida limited liability company**

By: ______________________
Name: Martin C. Flynn, Jr.
As its Manager
Date: 11/4/2026

Address: Attn: Martin C. Flynn, Jr., Manager, 14556 Saint Georges Hill Drive, Orlando, FL 32828
Email: mcflynnjr@gmail.com

Signed, sealed and delivered in the presence of:

Witness 1: ______________________
Print Name: Brandon Bowyer
Address: 671 Addison Longwood ter Apt 217, Longwood FL
Witness 2: ______________________
Print Name: Maridza M. Perez
Address: 201 S. Orange Ave, Ste 1400, Orlando FL 32801

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026 by Martin C. Flynn, Jr., as Manager of 650 85th, LLC, a Florida limited liability company, on behalf of the company, who [ ] is personally known to me or [✓] has produced license as identification.

______________________
Notary Public, State of Florida
Print Name: Maridza M Perez
Commission No.: HH 723837
My Commission Expires: 9/22/2029
(NOTARY SEAL)

Notary Public State of Florida
Maridza M Perez
My Commission HH 723837
Expires 9/22/2029

**WM HOLDINGS GROUP, LLC, a Florida limited liability company**

By: [signature]
Name: Martin C. Flynn, Jr.
As its Manager
Date: 11/4/2026

Address: Attn: Martin C. Flynn, Jr., Manager, 14556 Saint Georges Hill Drive, Orlando, FL 32828
Email: mcflynnjr@gmail.com

Signed, sealed and delivered in the presence of:

Witness 1: [signature]
Address ~~Print~~ Name: 617 Addison Longwood ter Apt 217, Longwood FL
Print ~~Address~~: Brandon Dawyer

Witness 2: [signature]
Print Name: Maridza M Perez
Address: 201 S. Orange Ave, Suite 1400, Orlando FL 32801

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026 by Martin C. Flynn, Jr., as Manager of WM Holdings Group, LLC, a Florida limited liability company, on behalf of the company, who [ ] is personally known to me or [✓] has produced license as identification.

[signature]
Notary Public, State of Florida
Print Name: Maridza M Perez
Commission No.: HH 723837
My Commission Expires: 9/22/2029
(NOTARY SEAL)

Notary Public State of Florida
Maridza M Perez
My Commission HH 723837
Expires 9/22/2029

**MTF HOLDINGS, LLC, a Florida limited liability company**

By: ______________________
Name: Martin C. Flynn, Jr.
As its Manager
Date: 11/4/2026

Address: Attn: Martin C. Flynn, Jr., Manager, 14556 Saint Georges Hill Drive, Orlando, FL 32828
Email: mcflynnjr@gmail.com

Signed, sealed and delivered in the presence of:

Witness 1: ______________________
Print Name: Brandon Bowyer
Address: 671 Addison Longwood Ter Apt 217, Longwood FL

Witness 2: ______________________
Print Name: Maridza M. Perez
Address: 201 S Orange Ave, Ste 1400 Orlando FL 32801

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026 by Martin C. Flynn, Jr., as Manager of MTF Holdings, LLC, a Florida limited liability company, on behalf of the company, who [ ] is personally known to me or [✓] has produced license as identification.

______________________
Notary Public, State of Florida
Print Name: Maridza M Perez
Commission No.: HH 723837
My Commission Expires: 9/22/2029
(NOTARY SEAL)

Notary Public State of Florida
Maridza M Perez
My Commission HH 723837
Expires 9/22/2029

**Signer: TRACEY HESTER FLYNN (1 signature block)**

**TRACEY HESTER FLYNN, individually**

Tracey Hester Flynn
Date: 11/5/26

Address: 14556 Saint Georges Hill Drive, Orlando, FL 32828
Email: mcflynnjr@gmail.com

Signed, sealed and delivered in the presence of:

Witness 1: ____________
Print Name: MARTIN FLYNN
Address: 14556 SAINT GEORGES HILL DR ORLANDO, FL 32828

Witness 2: ____________
Print Name: ____________
Address: ____________

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 5th day of November, 2026, by Tracey Hester Flynn, individually, who [ ] is personally known to me or [X] has produced Florida DL as identification.

CATRINA CASTELLANOS
Notary Public, State of Florida
Commission# HH 638194
My comm. expires Feb. 9, 2029

____________
Notary Public, State of Florida
Print Name: Catrina Castellanos
Commission No.: HH 638194
My Commission Expires: Feb 9th 2029
(NOTARY SEAL)

**Signer: HORTON S. JOHNSON (10 signature blocks)**

**HORTON S. JOHNSON, individually**

Horton S. Johnson
Horton S. Johnson
Date: 11/4/2026

Address: 2523 Kissam Court, Belle Isle, FL 32809
Email: wjohnsonbbf@gmail.com

Signed, sealed and delivered in the presence of:
Witness 1: Farrah Sayyed
Print Name: Farrah Sayyed
Address: 7701 Country Pl, Winter Park FL 32792
Witness 2: Heidi Hansen
Print Name: Heidi Hansen
Address: 1700 Woodbury Rd, Apt 2212, Orlando FL 32828

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026 by Horton S. Johnson, individually, who [ ] is personally known to me or [X] has produced Driver's License as identification.

Ellen Scrimger Gordon
Notary Public, State of Florida
Print Name: Ellen Scrimger Gordon
Commission No.: HH 752699
My Commission Expires: Apr. 8, 2030
(NOTARY SEAL)

ELLEN SCRIMGER GORDON
Notary Public - State of Florida
Commission # HH 752699
My Comm. Expires Apr 8, 2030
Bonded through National Notary Assn.

HSJ

**HORTON S. JOHNSON, as trustee of the Horton S. Johnson Revocable Trust dated August 3, 2012**

Horton S. Johnson

Horton S. Johnson
Date: 11/4/2026

Address: 2523 Kissam Court, Belle Isle, FL 32809
Email: wjohnsonbbf@gmail.com

Signed, sealed and delivered in the presence of:
Witness 1: Farrah Sayyed
Print Name: Farrah Sayyed
Address: 7701 Country Pl, Winter Park, FL 32792
Witness 2: Heidi Hansen
Print Name: Heidi Hansen, ~~Heidi~~
Address: 1700 Woodbury Rd, Apt. 2312, Orlando, FL 32828

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026, by Horton S. Johnson, as trustee of the Horton S. Johnson Revocable Trust dated August 3, 2012, who [ ] is personally known to me or [X] has produced Driver's License as identification.

Ellen Scrimger Gordon
Notary Public, State of Florida
Print Name: Ellen Scrimger Gordon
Commission No.: HH 752699
My Commission Expires: Apr. 8, 2030
(NOTARY SEAL)

ELLEN SCRIMGER GORDON
Notary Public - State of Florida
Commission # HH 752699
My Comm. Expires Apr 8, 2030
Bonded through National Notary Assn.

HSJ

**HORTON S. JOHNSON, as successor trustee of the Tiered Land Trust**

Horton S. Johnson
Horton S. Johnson
Date: 11/4/2026

Address: 2523 Kissam Court, Belle Isle, FL 32809
Email: wjohnsonbbf@gmail.com

Signed, sealed and delivered in the presence of:
Witness 1: Farrah Sayyed
Print Name: Farrah Sayyed
Address: 7701 Country Pl, Winter Park, FL 32792
Witness 2: Heidi Hansen
Print Name: Heidi Hansen
Address: 1700 Woodbury Rd, Apt. 2312, Orlando, FL 32828

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026 by Horton S. Johnson, as successor trustee of the Tiered Land Trust, who [ ] is personally known to me or [X] has produced Driver's License as identification.

Ellen Scrimger Gordon
Notary Public, State of Florida
Print Name: Ellen Scrimger Gordon
Commission No.: HH752699
My Commission Expires: Apr. 8, 2030
(NOTARY SEAL)

ELLEN SCRIMGER GORDON
Notary Public - State of Florida
Commission # HH 752699
My Comm. Expires Apr 8, 2030
Bonded through National Notary Assn.



HSJ

**TIERED CAPITAL, INC.**

By: Horton S. Johnson
Name: Horton S. Johnson
Title: Director
Date: 11/4/2026

Address: Attn: Horton S. Johnson, Director, 4409 Hoffner Avenue, Suite 348, Orlando, FL 32812
Email: wjohnsonbbf@gmail.com

Signed, sealed and delivered in the presence of:
Witness 1: Farrah Sayyed
Print Name: Farrah Sayyed
Address: 7701 Country Pl, Winter Park, FL 32792
Witness 2: Heidi Hansen
Print Name: Heidi Hansen
Address: 1700 Woodbury Rd, Apt. 2312, Orlando, FL 32828

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026 by Horton S. Johnson, as Director of Tiered Capital, Inc., a Florida corporation, on behalf of the corporation, who [ ] is personally known to me or [X] has produced Driver's License as identification.

Ellen Scrimger Gordon
Notary Public, State of Florida
Print Name: Ellen Scrimger Gordon
Commission No.: HH752699
My Commission Expires: Apr. 8, 2030
(NOTARY SEAL)

ELLEN SCRIMGER GORDON
Notary Public - State of Florida
Commission # HH 752699
My Comm. Expires Apr 8, 2030
Bonded through National Notary Assn.



HSJ

**FLORIDA SPACE COAST RESORTS, INC., a dissolved Florida corporation,**

By: Tiered Capital, Inc., a Florida corporation, its sole shareholder

By: Horton S. Johnson
Name: Horton S. Johnson
Title: Director of Tiered Capital, Inc., and sole director of Florida Space Coast Resorts, Inc.
Date: 11/4/2026

Address: c/o Tiered Capital, Inc., Attn: Horton S. Johnson, Director, 4409 Hoffner Avenue, Suite 348, Orlando, FL 32812
Email: wjohnsonbbf@gmail.com

Signed, sealed and delivered in the presence of:
Witness 1: Farrah Sayyed
Print Name: Farrah Sayyed
Address: 7701 Country Pl, Winter Park, FL 32792
Witness 2: Heidi Hansen
Print Name: Heidi Hansen
Address: 1700 Woodbury Rd, Apt. 2212, Orlando, FL 32828

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026, by Horton S. Johnson, as Director of Tiered Capital, Inc., the sole shareholder of Florida Space Coast Resorts, Inc., a dissolved Florida corporation, and as sole director of Florida Space Coast Resorts, Inc., who [ ] is personally known to me or [X] has produced Driver's License as identification.

Ellen Scringer Gordon
Notary Public, State of Florida
Print Name: Ellen Scrimger Gordon
Commission No.: HH752699
My Commission Expires: Apr. 8, 2030
(NOTARY SEAL)

ELLEN SCRIMGER GORDON
Notary Public - State of Florida
Commission # HH 752699
My Comm. Expires Apr 8, 2030
Bonded through National Notary Assn.

HSJ

**SHERWOOD CONSTRUCTION, INC., debtor-in-possession, Case No. 6:26-bk-05428-GER**

By: Horton S. Johnson
Name: Horton S. Johnson
Title: Director, Tiered Capital, Inc., as agent for the shareholders of Sherwood Construction, Inc.
Date: 11/4/2026

Address: c/o Tiered Capital, Inc., Attn: Horton S. Johnson, Director, 4409 Hoffner Avenue, Suite 348, Orlando, FL 32812
Email: wjohnsonbbf@gmail.com

Signed, sealed and delivered in the presence of:
Witness 1: Farrah Sayyed
Print Name: Farrah Sayyed
Address: 7701 Country Pl, Winter Park, FL 32792
Witness 2: Heidi Hansen
Print Name: Heidi Hansen
Address: 1700 Woodbury Rd, Apt. 2312, Orlando, FL 32828

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026, by Horton S. Johnson, as Director of Tiered Capital, Inc., as agent for the shareholders of Sherwood Construction, Inc., a Florida corporation, debtor-in-possession, on behalf of the corporation, who [ ] is personally known to me or [X] has produced Driver's License as identification.

Ellen Scrimger Gordon
Notary Public, State of Florida
Print Name: Ellen Scrimger Gordon
Commission No.: HH 752699
My Commission Expires: Apr. 8, 2030
(NOTARY SEAL)

ELLEN SCRIMGER GORDON
Notary Public - State of Florida
Commission # HH 752699
My Comm. Expires Apr 8, 2030
Bonded through National Notary Assn.



HSJ

**CAPE CROSSING VACATION RENTALS, LLC, a Florida limited liability company**

By: Horton S. Johnson
Name: Horton S. Johnson
Title: Trustee of the Tiered Land Trust
Date: 11/4/2026

and by its manager, TIERED PREFERRED LLC, a Florida limited liability company,

By: Tiered Capital, Inc., a Florida corporation, its manager
By: Horton S. Johnson
Name: Horton S. Johnson
Title: Director of Tiered Capital, Inc.
Date: 11/4/2026
Address: Attn: Horton S. Johnson, Trustee of the Tiered Land Trust, 4409 Hoffner Avenue, Suite 348, Orlando, FL 32812
Email: wjohnsonbbf@gmail.com

Signed, sealed and delivered in the presence of:
Witness 1: Farrah Sayyed
Print Name: Farrah Sayyed
Address: 7701 Country Dr, Winter Park, FL 32792
Witness 2: Heidi Hansen
Print Name: Heidi Hansen
Address: 1700 Woodbury Rd, Apt. 2312, Orlando, FL 32828

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026 by Horton S. Johnson, as trustee of the Tiered Land Trust, on behalf of Cape Crossing Vacation Rentals, LLC, a Florida limited liability company, and as Director of Tiered Capital, Inc., the manager of Tiered Preferred LLC, the manager of Cape Crossing Vacation Rentals, LLC, who [ ] is personally known to me or [X] has produced Driver's License as identification.

Ellen Scrimger Gordon
Notary Public, State of Florida
Print Name: Ellen Scrimger Gordon
Commission No.: HH 752699
My Commission Expires: Apr. 8, 2030
(NOTARY SEAL)

ELLEN SCRIMGER GORDON
Notary Public - State of Florida
Commission # HH 752699
My Comm. Expires Apr 8, 2030
Bonded through National Notary Assn.

HSJ

**HOLLY BLUFF MARINA, INC., a Florida corporation**

By: Horton S. Johnson
Name: Horton S. Johnson
Title: Trustee of the Tiered Land Trust
Date: 11/4/2026

Address: Attn: Horton S. Johnson, Trustee of the Tiered Land Trust, 4409 Hoffner Avenue, Suite 348, Orlando, FL 32812
Email: wjohnsonbbf@gmail.com

Signed, sealed and delivered in the presence of:
Witness 1: Farrah Sayyed
Print Name: Farrah Sayyed
Address: 7701 Country Pl, Winter Park, FL 32792
Witness 2: Heidi Hansen
Print Name: Heidi Hansen
Address: 1700 Woodbury Rd, Apt. 2362, Orlando, FL 32828
STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026, by Horton S. Johnson, as trustee of the Tiered Land Trust, on behalf of Holly Bluff Marina, Inc., a Florida corporation, who [ ] is personally known to me or [X] has produced Driver's License as identification.

Ellen Scrimger Gordon
Notary Public, State of Florida
Print Name: Ellen Scrimger Gordon
Commission No.: HH 752699
My Commission Expires: Apr. 8, 2030
(NOTARY SEAL)

ELLEN SCRIMGER GORDON
Notary Public - State of Florida
Commission # HH 752699
My Comm. Expires Apr 8, 2030
Bonded through National Notary Assn.



HSJ

**RECYCLED GROUP OF SOUTH CAROLINA, LLC, a South Carolina limited liability company**

By: Horton S. Johnson [signature]
Name: Horton S. Johnson
Title: Trustee of the Tiered Land Trust
Date: 11/4/2026

Address: Attn: Horton S. Johnson, Trustee of the Tiered Land Trust, 4409 Hoffner Avenue, Suite 348, Orlando, FL 32812
Email: wjohnsonbbf@gmail.com

Signed, sealed and delivered in the presence of:
Witness 1: Farrah Sayyed [signature]
Print Name: Farrah Sayyed
Address: 770 Country Pt, Winter Park, FL 32792
Witness 2: Heidi Hansen [signature]
Print Name: Heidi Hansen
Address: 1700 Woodbury Rd, Apt. 2312, Orlando, FL 32828

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026, by Horton S. Johnson, as trustee of the Tiered Land Trust, on behalf of Recycled Group of South Carolina, LLC, a South Carolina limited liability company, who [ ] is personally known to me or [X] has produced Driver's License as identification.

Ellen Scrimger Gordon [signature]
Notary Public, State of Florida
Print Name: Ellen Scrimger Gordon
Commission No.: AH 752699
My Commission Expires: Apr. 8, 2030
(NOTARY SEAL)

ELLEN SCRIMGER GORDON
Notary Public - State of Florida
Commission # HH 752699
My Comm. Expires Apr 8, 2030
Bonded through National Notary Assn.

**ACKNOWLEDGED AS TO SECTIONS 4.3, 5.1, 6 AND 11 OF THIS AGREEMENT**
**GLOBAL SETTLEMENT TRUST**

By: Horton S. Johnson
Name: Horton S. Johnson
As Trustee
Date: 11/4/2026

Address: 7707 S. Orange Avenue, P.O. Box 590073, Orlando, FL 32859
Email: wjohnsonbbf@gmail.com

Signed, sealed and delivered in the presence of:
Witness 1: Farah Sayyed
Print Name: Farah Sayyed
Address: 7701 Country Pl, Winter Park, FL 32792
Witness 2: Heidi Hansen
Print Name: Heidi Hansen
Address: 1700 Woodbury Rd, Apt. 2312, Orlando, FL 32828

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026, by Horton S. Johnson, as trustee of the Global Settlement Trust, who [ ] is personally known to me or [X] has produced Driver's License as identification.

Ellen Scrimger Gordon
Notary Public, State of Florida
Print Name: Ellen Scrimger Gordon
Commission No.: HH 752699
My Commission Expires: Apr. 8, 2030
(NOTARY SEAL)

ELLEN SCRIMGER GORDON
Notary Public - State of Florida
Commission # HH 752699
My Comm. Expires Apr 8, 2030
Bonded through National Notary Assn.



HSJ

**Signer: LARA ROESKE FERNANDEZ, CHAPTER 11 TRUSTEE (2 signature blocks)**

**HOMEMAKERS REAL ESTATE, LLC, by and through its Chapter 11 Trustee, Case No. 6:25-bk-05570-GER**

By: Lara Roeske Fernandez
Name: Lara Roeske Fernandez, solely in her capacity as Chapter 11 Trustee
Date: November 4, 2026

Address: Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., 101 East Kennedy Boulevard, Suite 2700, Tampa, FL 33602
Email: lfernandez@trenam.com

Signed, sealed and delivered in the presence of:
Witness 1: Linda Dowell
Print Name: Linda Dowell
Address: 7404 Ironwood St., Tampa, FL 33605

Witness 2: Natalia Ramirez-Romero
Print Name: Natalia Ramirez-Romero
Address: 4019 Amber Rd. Valrico, FL 33594

STATE OF Florida
COUNTY OF Hillsborough

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4TH day of November, 2026, by Lara Roeske Fernandez, solely in her capacity as Chapter 11 Trustee of Homemakers Real Estate, LLC, Case No. 6:25-bk-05570-GER, on behalf of the estate, who [X] is personally known to me or [ ] has produced ________________ as identification.

Kelly D Wilcox
Notary Public, State of Florida
Print Name: Kelly D. Wilcox
Commission No.: HH 738934
My Commission Expires: 11/9/2029
(NOTARY SEAL)

NOTARY PUBLIC STATE OF FLORIDA
KELLY D. WILCOX
Commission # HH 738934
Expires November 9, 2029

**ACKNOWLEDGED BY CHAPTER 11 TRUSTEE, Case No. 6:25-bk-05570-GER:**

By: Lara Roeske Fernandez
Name: Lara Roeske Fernandez, solely in her capacity as Chapter 11 Trustee of Homemakers Real Estate, LLC
Date: November 4, 2026

Address: Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., 101 East Kennedy Boulevard, Suite 2700, Tampa, FL 33602
Email: lfernandez@trenam.com

Signed, sealed and delivered in the presence of:
Witness 1: Linda Dowell
Print Name: Linda Dowell
Address: 7404 Avonwood St, Tampa, FL 33625

Witness 2: Natalia Ramirez-Romero
Print Name: Natalia Ramirez-Romero
Address: 4019 Amber Rd Valrico FL 33594

STATE OF Florida
COUNTY OF Hillsborough

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4TH day of November, 2026, by Lara Roeske Fernandez, solely in her capacity as Chapter 11 Trustee of Homemakers Real Estate, LLC, Case No. 6:25-bk-05570-GER, who [X] is personally known to me or [ ] has produced ____________ as identification.

Kelly D Wilcox
Notary Public, State of Florida
Print Name: Kelly D. Wilcox
Commission No.: HH 738934
My Commission Expires: 11/9/29
(NOTARY SEAL)

NOTARY PUBLIC STATE OF FLORIDA
KELLY D. WILCOX
Commission # HH 738934
Expires November 9, 2029

**Signer: ROSS JOHNSTON (1 signature block)**

**CANAVERAL CROSSROADS, LLC, debtor-in-possession, Case No. 6:26-bk-05426-GER**

By: ______________________
Name: Ross Johnston
Title: Reorganization Manager
Date: 11/4/26

Address: Attn: Ross Johnston, Reorganization Manager, P.O. Box 1298, Winter Park, FL 32790
Email: crossing2026@gmail.com

Signed, sealed and delivered in the presence of:
Witness 1: ______________________
Print Name: Farrah Sayyed
Address: 7701 Country Pl, Winter Park, FL 32792
Witness 2: ______________________
Print Name: Heidi Hansen
Address: 1700 Woodbury Rd, Apt. 2312, Orlando, FL 32828

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026, by Ross Johnston, as Reorganization Manager of Canaveral Crossroads, LLC, a Florida limited liability company, debtor-in-possession, on behalf of the company, who [ ] is personally known to me or [X] has produced Driver's License as identification.

______________________
Notary Public, State of Florida
Print Name: Ellen Scrimger Gordon
Commission No.: HH 752699
My Commission Expires: Apr. 8, 2030
(NOTARY SEAL)

ELLEN SCRIMGER GORDON
Notary Public - State of Florida
Commission # HH 752699
My Comm. Expires Apr 8, 2030
Bonded through National Notary Assn.



459

**YANIV AMAR**

**Signer: YANIV AMAR (2 signature blocks)**

**YANIV AMAR, individually**

______________________
Yaniv Amar
Date: 11/6/26

Address: 19589 NE 10th Avenue, Miami, FL 33179
Email: yamarllc@gmail.com

Signed, sealed and delivered in the presence of:

Witness 1: ______________________
Print Name: ______________________
Address: ______________________

Witness 2: ______________________
Print Name: ______________________
Address: ______________________

STATE OF FL
COUNTY OF Miami-Dade

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 6th day of November, 2026, by Yaniv Amar, individually, who [ ] is personally known to me or [ ] has produced FL Drivers License as identification.

______________________
Notary Public, State of FL
Print Name: Daniel Rodriguez
Commission No.: HH628808
My Commission Expires: 01-15-2029
(NOTARY SEAL)

DANIEL RODRIGUEZ
Notary Public, State of Florida
Commission# HH 628808
My comm. expires Jan. 15, 2029

**FLYNN-JOHNSON PARTIES (continued)**

**A MARINE, INC., a Florida corporation**

By: ____________________

Name: Yaniv Amar

Title: President

Date: 11/6/26

Address: Attn: Yaniv Amar, President, 19589 NE 10th Avenue, Miami, FL 33179

Email: yamarllc@gmail.com

Signed, sealed and delivered in the presence of:

Witness 1: ____________________

Print Name: [illegible]

Address: [illegible] Dairy rd Miami FL 33179.

Witness 2: ____________________

Print Name: [illegible]

Address: [illegible] Ives Dairy Rd. Miami, FL 33179

STATE OF FL

COUNTY OF Miami-Dade

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 6th day of November, 2026, by Yaniv Amar, as President of A Marine, Inc., a Florida corporation, on behalf of the corporation, who [ ] is personally known to me or [ ] has produced FL Drivers License as identification.

____________________

Notary Public, State of FL

Print Name: Daniel Rodriguez

Commission No.: HH628808

My Commission Expires: 01-15-2029

(NOTARY SEAL)

NOTARY PUBLIC
DANIEL RODRIGUEZ
Notary Public, State of Florida
Commission# HH 628808
My comm. expires Jan. 15, 2029

**Signer: DEBORAH MILOTTE (1 signature block)**

**IMQA INVESTMENTS, INCORPORATED, a Florida corporation**

By: ______________________
Name: Deborah Milotte
Title: President
Date: 11/04/2026

Address: Attn: Deborah Milotte, President, 4409 Hoffner Avenue, Suite 348, Orlando, FL 32812
Email: contact@imqainvestments.com; deborah@milotte.com

Signed, sealed and delivered in the presence of:

Witness 1: ______________________
Print Name: Robert Felphley
Address: 2395 N. Courtenay Pkwy., Ste. 203, Merritt Island, FL 32953

Witness 2: ______________________
Print Name: June E Mackrell
Address: 2395 N Courtenay Pkwy, Suite 203 Merritt Island FL 32953

STATE OF Florida
COUNTY OF Brevard

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026, by Deborah Milotte, as President of IMQA Investments, Incorporated, a Florida corporation, on behalf of the corporation, who [ ] is personally known to me or [✓] has produced FL DL as identification.

CYNTHIA CASTILLO
Notary Public - State of Florida
Commission # HH 832801
My Comm. Expires May 7, 2027
Bonded through National Notary Assn.

______________________
Notary Public, State of Florida
Print Name: Cynthia Castillo
Commission No.: HH 832801
My Commission Expires: 5/7/2027
(NOTARY SEAL)

**Signer: BRIAN HORWITZ, ESQ., counsel for the guardians of Frank Amodeo (1 signature block)**

**FRANK AMODEO, individually, by Brian Horwitz, Esq., counsel for his guardians, under Section 16.14 of this Agreement**

By: ______________________________

Brian Horwitz, Esq., counsel for the guardians of Frank Amodeo, under Section 16.14 of this Agreement

Date: 11/5/26

Address: 5019 Saint Denis Ct, Belle Isle, FL 32812

Signed, sealed and delivered in the presence of:

Witness 1: ______________________________

Print Name: Heidi Hansen

Address: 1700 Woodbury Rd, Apt. 2312, Orlando, FL 32828

Witness 2: Vanessa Brown

Print Name: Vanessa Brown

Address: 9544 Moss preserve parkway, Apt. 303, Orlando, FL 32832

STATE OF Florida

COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 5th day of November, 2026 by Brian Horwitz, Esq., as counsel for the guardians of Frank Amodeo, on behalf of Frank Amodeo under Section 16.14 of this Agreement, who [ ] is personally known to me or [✓] has produced driver's license as identification.

FARRAH SAYYED
Notary Public - State of Florida
Commission # HH 337762
My Comm. Expires Dec 4, 2026
Bonded through National Notary Assn.

______________________________

Notary Public, State of Florida

Print Name: Farrah Sayyed

Commission No.: HH 337762

My Commission Expires: 12/4/26

(NOTARY SEAL)

**Signer: FRANK AMODEO (1 signature block)**

**FRANK AMODEO, individually**

Frank Amodeo
Date: 11-4-2026

Address: 1311 Hoffner Avenue, Orlando, FL 32809
Email: flahome32801@gmail.com

Signed, sealed and delivered in the presence of:
Witness 1:
Print Name: Farrah Sayyed
Address: 770 Country Pl, Winter Park, FL 32792
Witness 2:
Print Name: Heidi Hansen
Address: 1800 Woodbury Rd, Apt. 2312, Orlando, FL 32828

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 4th day of November, 2026, by Frank Amodeo, individually, who [ ] is personally known to me or [X] has produced Driver's License as identification.

Notary Public, State of Florida
Print Name: Ellen Scrimger Gordon
Commission No.: HH 752699
My Commission Expires: Apr. 8, 2030

(NOTARY SEAL)

ELLEN SCRIMGER GORDON
Notary Public - State of Florida
Commission # HH 752699
My Comm. Expires Apr 8, 2030
Bonded through National Notary Assn.



459

## EXHIBITS AND SCHEDULES

| | |
|---|---|
| **Exhibit A** | Actions, Claims and Motions to Be Dismissed or Withdrawn (Section 8) |
| **Exhibit B** | Flynn Agreement (Section 4) |
| **Exhibit C** | Resignation of Trustee and Appointment of Successor Trustee (Section 5.2) |
| **Exhibit D** | Assignment Regarding Recycled Group of South Carolina, LLC and Holly Bluff Marina, Inc. (Section 5.3) |
| **Exhibit E** | Liens and Recorded Interests Released (Section 7) |
| **Schedule 2.4** | Excluded Persons |
| **Schedule 16.3** | Notice Addresses (attached) |

**<u>EXHIBIT A</u>**
**Pending Litigation**

1. PEDixon LLC and ZPD LLC v. Martin C. Flynn, Jr., et al., Case No. 2025-CA-002359-CI (Osceola County). Dismissed with prejudice as to every defendant.
2. Martin C. Flynn, Jr. v. PEDixon LLC, Case No. 2025-CA-004329-O (Orange County). Dismissed with prejudice in its entirety, including every counterclaim and third-party claim, including the third-party claims against Tracey Flynn.
3. Martin C. Flynn, Jr. and WM Holdings Group, LLC v. PEDixon LLC, et al., Case No. 2026-CA-000017-O (Orange County). Dismissed with prejudice as to each Dixon Party and each Pitkanen Party.
4. Horton S. Johnson v. Crescent Sound, Ltd., et al., Case No. 2026-CA-001368-O (Orange County). Dismissed with prejudice in its entirety, including every claim and counterclaim. The stipulation of dismissal will be filed within ten (10) days after the Settlement Funding Date or the delivery of the Resignation to Horton S. Johnson under Section 5.2 of this Agreement, whichever is later, and will ask the court to reserve jurisdiction to enforce Section 5.2 of this Agreement.
5. Horton S. Johnson and Tiered Capital, Inc. v. Kenneth G. Dixon, et al., Case No. 2026-CA-007213-O (Orange County), filed July 9, 2026. Dismissed with prejudice.
6. Sherwood Construction, Inc. v. PEDixon LLC, et al., Adv. Pro. No. 6:26-ap-00198-GER. Dismissed with prejudice.
7. Horton "Woody" S. Johnson v. Alison Pitkanen, et al., Case No. 2025-CA-007270-O (Orange County). Dismissed with prejudice.
8. Martin Flynn v. Ken Dixon, et al., Case No. 2025-CA-012832-O (Orange County). Dismissed with prejudice.
9. Mainstreet Community Bank of Florida v. Home Makers [sic] Real Estate, LLC, et al., Case No. 2025-CA-027661 (Brevard County). All claims between or among the Parties, including the third-party claims against Crescent Sound, Ltd. and Kenneth G. Dixon, dismissed with prejudice. MainStreet Community Bank of Florida's claims are not affected by this Agreement.
10. June 25, 2026 civil theft demand. Deemed cancelled, withdrawn, and released with prejudice without payment of any sum.
11. Claims 67 and 68 filed by PEDixon and ZPD in the Homemakers Case. Withdrawn with prejudice. Every objection, motion and request between any Flynn-Johnson Party or Yaniv Amar and any Dixon Party or Pitkanen Party pending in the Homemakers Case is also withdrawn. The Dixon Parties will not seek any credit bid, any claim under 11 U.S.C. § 502(h), or any administrative expense claim in the Homemakers Case.
12. Every claim filed by a Dixon Party or a Pitkanen Party in the Canaveral Case or the Sherwood Case. Withdrawn with prejudice.
13. The claims of PEDixon and ZPD in the Flynn Case, and Doc. Nos. 81 and 109 in the Flynn Case. Handled as provided in Section 4 of this Agreement and in the Flynn Agreement.
14. Frank Amodeo shall dismiss with prejudice his appeal of the Bankruptcy Court's Order Denying Motions to Disqualify PEDixon LLC and ZPD LLC From Participation (Doc. No. 344), pending before the United States District Court for the Middle District of Florida, as Case No. 6:26-cv-02089.

15. IMQA Investments, Incorporated lawsuit, Case No. 05-2025-CA-010481-XXCA-BC (Brevard County). Dismissed with prejudice in its entirety.
16. 650 85th, LLC v. PEDixon LLC, Case No. 2025-CA-000518 (Monroe County), and Adv. Pro. No. 6:26-ap-00068-LVV. Dismissed with prejudice in their entirety pursuant to the Flynn Settlement Terms.
17. In re Guardianship of Frank Amodeo, Case No. 48-2008-CP-001369-O (Orange County Probate). Crescent Sound, Ltd.'s verified petition for removal dated August 17, 2026, Petition filed August 19, 2026, Objection filed August 24, 2026, Motion for Judicial Notice filed October 7, 2026, and any objection to the Suggestion of Capacity, withdrawn and resolved. The stipulation dated October 14, 2026 is unwound: Crescent Sound, Ltd.'s access ends, all copies it obtained under the stipulation are returned or destroyed, and no further service is made on Crescent Sound, Ltd. in the guardianship case. The Fla. Stat. § 57.105 motion for sanctions served September 23, 2026, by the Guardians withdrawn with prejudice and released. Crescent Sound, Ltd. and the Guardians will file a joint notice that the matter is resolved.

**Treatment of Claims in the Homemakers Case**

1. Proof of Claim 2-1 filed by WM Holdings Group LLC shall be disallowed in full with prejudice.
2. Proof of Claim 3-1 filed by CTO Holdings Inc. shall be withdrawn with prejudice in the Homemakers Case upon entry of the Approval Order in the Homemakers Case, and disallowed in full with prejudice.
3. Proof of Claim 4-2 filed by IMQA Investments Incorporated will be allowed as a general unsecured claim in the amount of $350,000.00.
4. Proof of Claim 5-2 filed by H. Johnson will be allowed as a general unsecured claim in the amount of $1,297,493.97.
5. Proof of Claim 71-1 filed by Tiered Capital, Inc. shall be disallowed in full with prejudice.

**EXHIBIT B**
**Flynn Agreement**

The following are attached as this Exhibit B and together constitute the "Flynn Agreement" referenced in Sections 3 and 4 of this Agreement (see Section 1 of the attached Settlement Agreement):

1. Settlement Agreement among PEDixon LLC, ZPD LLC, Martin C. Flynn, Jr., WM Holdings Group, LLC, MTF Holdings, LLC and 650 85th, LLC (No. 6759678.1, as revised November 4, 2026). Its exhibits and schedules are incorporated as provided in Section 4.1 of this Agreement and will be attached in the form agreed by the parties to the Settlement Agreement.

2. Final Outline of Compromise dated July 15, 2026, signed July 21, 2026 by Martin C. Flynn, Jr. and Kenneth G. Dixon (the "July Outline").

# SETTLEMENT AGREEMENT

**THIS MEDIATED SETTLEMENT AGREEMENT** (the "Agreement") is entered into this 11th day of November, 2026, by and between PEDIXON LLC, a Florida limited liability company ("Pedixon") and ZPD LLC, a Florida limited liability company ("ZPD") (collectively Pedixon and ZPD are referred to herein as the "Secured Creditors"), on the one hand, and MARTIN C. FLYNN, JR. ("Debtor" or "Flynn"), WM Holdings Group, LLC, a Florida limited liability company ("WM"), MTF Holdings, LLC, a Florida limited liability company ("MTF"), and 650 85th, LLC ("650 85th" and collectively, with Flynn, 650 85th, WM and MTF, the "Flynn Parties") on the other hand. The Secured Creditors and the Flynn Parties, shall be referred to herein as the "Parties" or "Party," as appropriate.

## Recitals

The following recitals are provided for background and context only and are not admissions by any Party to this Agreement, are not binding contractual terms, and shall not be admissible for any purpose against any Party to this Agreement. The recitals herein relate to multiple disputed matters which the Parties to this Agreement have decided to resolve in the manner set forth herein.

**WHEREAS,** in connection with several outstanding and defaulted loans made by the Secured Creditors to the Flynn Parties, and affiliated individuals and entities, the Parties entered into that certain Loan Agreement dated September 14, 2023 (the "Loan Agreement") and in connection with that Loan Agreement established a Land Trust.

**WHEREAS,** Flynn and 650 85th executed a Guaranty Agreement dated September 14, 2023 (the "Guaranty"), and collectively along with the underlying promissory notes and all documents governing and related to the underlying loan (the "Loan Documents"), which, among other things, guaranteed the performance of all obligations and payment of all promissory notes that are the subject of the Loan Agreement.

**WHEREAS,** the Secured Creditors contend sufficient consideration for executing the Guaranty and the obligations required therein existed when the Guaranty was executed; however, the specific consideration given and overall validity of the Guaranty remained a subject of dispute between the Parties.

**WHEREAS,** in connection with the Loan Agreement, the Secured Creditors contend that a Tiered Land Trust Agreement dated September 13, 2023, was executed establishing the Tiered Land Trust (the "Tiered Trust") to facilitate the collateralization and repayment of Secured Creditors under the Loan Agreement and that Crescent Sound, LTD was appointed as the Trustee of the Tiered Trust. Flynn does not admit, and expressly disputes, the formation, execution, authenticity, validity, and effect of the Tiered Land Trust Agreement dated September 13, 2023.

**WHEREAS**, on May 7, 2025, 650 85th, an entity wholly owned by Flynn, filed a complaint against Pedixon in the Circuit Court of the Sixteenth Judicial Circuit in and for Monroe County, Florida, pending under case no. 2025-CA-518-M (the "650 Case").

**WHEREAS**, Pedixon has asserted counterclaims in the 650 Case against 650 85th, Sherwood Construction, Inc., and Flynn for foreclosure and breach of guaranty and otherwise disputes the claims raised by 650 85th in the 650 Case.

**WHEREAS,** on August 20, 2025, Pedixon and ZPD filed their Complaint for Damages for Breach of Guaranties, in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida (the "State Court"), pending under Case No. 2025-CA-002359-CI (the "Guaranty Case"), against the Flynn Parties and others.

**WHEREAS**, on May 13, 2025, Flynn filed a complaint against Pedixon in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, pending under case no. 2025-CA-004329-O (the "Flynn Case").

**WHEREAS,** in the Flynn Case, Pedixon has asserted a counterclaims seeking to foreclose on Flynn's residence and for breach of guaranty.

**WHEREAS,** on January 22, 2026, Flynn filed a chapter 13 bankruptcy case in the Middle District of Florida, pending under case no. 6:26-bk-00399-LVV (the "Bankruptcy Case").

**WHEREAS**, the Bankruptcy Case was converted to a case pending under chapter 11 of the Bankruptcy Code on March 3, 2026.

**WHEREAS,** on March 16, 2026, Pedixon filed its Renewed Motion for Order Determining the Automatic Stay Does Not Apply to Non-Debtor's and Their Property (the "Stay Motion") in the Bankruptcy Case (Doc. No. 43) seeking to complete Pedixon's foreclosure of 650 85th's real property (the "650 85th Property")

**WHEREAS,** on April 20, 2026, Flynn removed the 650 85th case to the Bankruptcy Court pending under adversary proceeding number 6:26-ap-00068-LVV (the "Adversary Case").

**WHEREAS,** on April 21, 2026, in the Bankruptcy Case Flynn filed a Subchapter V Plan of Reorganization (Doc. No. 66) proposing to distribute $229,874.00 to unsecured creditors (the "Plan")

**WHEREAS,** on April 27, 2026, the Bankruptcy Court entered an Order Granting the Stay Motion (Doc No. 74).

**WHEREAS,** on April 30, 2026, Pedixon filed a Motion to Remand the adversary case to state court. (Adversary Case Doc. No. 6).

**WHEREAS,** on May 19, 2026, Secured Creditors filed a Motion to Dismiss or Convert the Bankruptcy Case (Doc. No. 81).

**WHEREAS**, Secured Creditors filed multiple Proofs of Claim in the Bankruptcy Case (Claim Nos. 16-1 through 21-1) reflecting their secured interests, unsecured claims, and assert they are owed at least $6,473,068.65.

**WHEREAS**, concurrently herewith, the Flynn Parties and several of his business partners and related entities entered into the certain Global Settlement Agreement and Mutual General Release with Secured Creditors and other related parties (the "Global Settlement"). A copy of the Global Settlement is attached hereto as Exhibit A.

**WHEREAS**, on July 21, 2026, Flynn, on behalf of himself and related entities, and Kenneth G. Dixon, individually and on behalf of Pedixon, executed the Final Outline of Compromise dated July 15, 2026 (the "July Outline"), which the Parties amend by this Agreement.

**WHEREAS,** the Parties acknowledge there are a number of disputes associated with each Party's respective claims between them, and enter this Agreement solely to avoid further costly and time-consuming litigation associated with such claims.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, including the mutual covenants and conditions set forth herein, the Parties enter into the following Agreement:

**Terms and Conditions**

**1. Recitals.** The above recitals are incorporated herein and made a part hereof subject in all respects to the contextual statement preceding the above recitals. The Parties further acknowledge that the above recitals cannot be construed or utilized against any third party who has not executed this Agreement.

The July Outline, as amended by this Agreement, constitutes the "Flynn Agreement" referenced and incorporated into Section 4 of the Global Settlement. This Agreement, together with the July Outline, shall be attached as Exhibit B to the Global Settlement. If the July Outline conflicts with this Agreement, this Agreement controls. All mutual releases, covenants not to sue, Bar complaint notifications, representations, and general terms among the Parties and their Released Related Persons (including Kenneth G. Dixon and the Dixon Parties and Pitkanen Parties, as defined in the Global Settlement) are governed by the Global Settlement, which is incorporated herein by reference. To the extent of any conflict between this Agreement and the Global Settlement, this Agreement shall control solely as to the Parties to this Agreement and the matters addressed herein, including, but not limited to, treatment of the Secured Creditors' claims in the Bankruptcy Case, the terms of the chapter 11 plan and plan confirmation, the transfer of the 650 85th Property, the release of mortgages on the 650 85th Property and Flynn's residence, and the conditions precedent to Pedixon releasing money or liens. Any release or any other provision of the Global Settlement will not result in the release of any rights, remedies, and obligations under this Agreement. The Global Settlement controls on all other matters. The Parties intend this Agreement to be consistent with the Global Settlement. This Agreement is a settlement between the Secured Creditors and the Flynn Parties. It is not conditioned on confirmation of any plan, and it survives and remains in full force if the Global Settlement is not approved, does not close, terminates or is unwound for any reason (a "Global Failure"). Upon a Global Failure, the releases, covenants not to sue, Florida Bar notifications and other provisions of the Global Settlement incorporated by this Section continue to bind and apply between the 650 85th, Flynn Parties and the Dixon Parties and Pitkanen Parties and their Released Related Persons as terms of this Agreement. Any such release will not release any of the rights, remedies, terms, and obligations

of this Agreement. After a Global Failure, every reference in this Agreement, and as applied between the Parties to this Agreement every reference in the Global Settlement, to the Settlement Funding Date or the Settlement Consummation Date means the later of the Effective Date (as defined in Section 16 of this Agreement) and the date of the Global Failure.

2. **Authority.** The Flynn Parties and the Secured Creditors, who are represented by counsel of their choice, knowingly and voluntarily enter into this Agreement and have full and complete authority to execute this Agreement. Each entity executing this Agreement represents that the person signing on its behalf is duly authorized to bind it, and for the purposes of this Agreement the Parties agree Flynn may execute on behalf of WM and MTF.

3. **The Chapter 11 Plan.** Flynn shall amend the Plan or file a new chapter 11 plan that fully complies with and fully incorporates the terms of this Agreement. Any amendment to the Plan or new chapter 11 plan shall reflect a distribution to unsecured creditors equal to or greater than the distribution specified in the Plan. The Secured Creditors' approval is required only if an amendment or new plan alters the substantive rights the Secured Creditors receive under this Agreement or under a plan they previously approved or are deemed to have approved (an "Adverse Change"). No approval of the Secured Creditors is required for any amendment or new plan that does not make an Adverse Change. Where approval is required, it shall not be unreasonably withheld provided the amendment or new plan complies with the terms of this Agreement. Where approval is required, if Secured Creditors do not deliver either written approval, or a written statement identifying the specific provisions to which they object and the basis for each objection, within five (5) Business Days after receipt of a proposed amendment or new plan, Secured Creditors' approval of Flynn's amendment to the Plan will be deemed granted by Secured Creditors. Flynn shall not seek confirmation of or file with the Court any amendment of the Plan or new chapter 11 plan that does not fully incorporate this Agreement, is not in full compliance with this Agreement, or that makes an Adverse Change that the Secured Creditors have not approved or been deemed to approve. Flynn may freely amend the Plan to address any terms not associated with or contemplated by this Agreement without the need to address such amendments with Secured Creditors. Within five (5) Business days of the receipt of a new Plan or amended Plan, Pedixon and ZPD shall timely submit ballots voting Claim #16-1 and the aggregate claim allowed under Section 7 to Accept the Plan (as amended or refiled) to Flynn's counsel via email at dvelasquez@lathamluna.com, which ballots Flynn's counsel may register in the Bankruptcy Case upon receipt or by filing them in the Bankruptcy Case. The Secured Creditors shall vote to accept every amended or new plan that complies with this Agreement, whether or not their approval was required. Unless a Flynn Party has committed an Event of Default under Section 12 that remains uncured after notice and the cure period, the ballots are irrevocable, are not conditioned on any further act or approval, and shall remain effective and be counted. On the same condition, Secured Creditors shall not change, withdraw, or revoke such acceptance, and shall not object to or oppose confirmation of a Plan which complies with this Agreement. These conditions are bilateral: unless the Secured Creditors have committed an Event of Default under Section 12 that remains uncured after notice and the cure period, Flynn's obligations under this Section 3 to seek the Secured Creditors' approval of any Adverse Change, and to file and seek confirmation only of a plan that complies with and incorporates this Agreement, remain binding. Whether an Event of Default has occurred and remains uncured shall be determined by the Bankruptcy Court. From and after execution of this Agreement, the Secured Creditors shall not file, join or support

any motion or request to dismiss or convert the Bankruptcy Case, to appoint a trustee or examiner, to revoke the Subchapter V election, or to revoke, vacate or modify any order confirming the Plan, other than a motion to enforce this Agreement. The Secured Creditors' acceptance is not conditioned on the transfer of any WM/MTF interest, or cash, none of which transfers under the terms of this Agreement. Any dispute over whether a proposed amendment or plan complies with this Agreement or makes an Adverse Change shall be presented to the Bankruptcy Court for determination on an expedited basis. Secured Creditors reserve their right to object to an amended Plan or new plan only that does not fully comply with this Agreement.

4. **The Transfer of the 650 85th Property.** On the date of execution of this Agreement, 650 85th will execute and provide an original signed copy of a quit claim deed executed in favor of Pedixon or one of its designees with the intent to transfer the entirety of the 650 85th Property Upon completion of the transfer and recording of the quit claim deed that transfer will be in full satisfaction of Pedixon's Claim #16-1 in the Bankruptcy Case and in full settlement of the 650 Case. The transfer is not conditioned on confirmation of any plan. Any amendment to the Plan or new chapter 11 plan will reflect the transfer and the satisfaction of Claim #16-1. To the extent the transfer is made under a confirmed plan, it is subject to section 1146 of the Bankruptcy Code.

5. **First State Bank Obligation.** Within sixty (60) days after the Effective Date (the "FSB Deadline"), the Secured Creditors, at their election, shall either (i) obtain and deliver to Flynn a full and unconditional release of Flynn from any guaranty of or personal liability on the loan of First State Bank of the Florida Keys ("First State Bank") secured by the senior mortgage on the 650 85th Property, (ii) satisfy that senior mortgage in full, or (iii) assume that loan with a written release by First State Bank of Flynn from his guaranty and any other personal liability on it (the "FSB Obligation"). No Flynn Party shall have any obligation to remit payment on account of any First State Bank loan or mortgage obligation. Upon request, Flynn Parties will reasonably cooperate with Secured Creditors to perform the FSB Obligation, including executing any requested documents and the acquiring of and providing of information.

If the Secured Creditors do not perform the FSB Obligation by the FSB Deadline and that failure is not the fault of FSB or a Flynn Party: (A) the failure is an Event of Default by the Secured Creditors, and it does not affect the transfer of the 650 85th Property, the satisfaction of Claim #16-1, the Plan, or any release, dismissal or satisfaction under this Agreement or the Global Settlement and (B) Flynn and 650 85th shall have the right, but not the obligation, to cure any default on the First State Bank loan, and every amount so paid, with interest at the rate provided in the First State Bank note, together with attorneys' fees and costs, shall be a direct obligation of Pedixon._The exception for a failure caused by First State Bank or a Flynn Party applies only to options (i) and (iii) of the FSB Obligation. If neither option (i) nor option (iii) is completed by the FSB Deadline, the Secured Creditors shall satisfy the senior mortgage on the 650 85th Property in full under option (ii) within thirty (30) days after the FSB Deadline.

Flynn shall be granted an option to purchase, at Flynn's election, the 650 85th Property, for a period of one year from the date of the transfers of the 650 85th Property to Pedixon or one of its designees (the "Option Period"), exercisable at a price of $800,000.00, plus any amounts Pedixon can demonstrate were expended by Pedixon or its designee during the Option Period to improve, protect, maintain, or preserve the 650 85th Property, including, but not limited to, i) all carrying



6576912.v1
6743719.v1
6774183.v2

costs, ii) property taxes, iii) repairs, iv) improvements, v) hazard and flood insurance, and iv) all mortgage related payments other lien payments, including principal, interest, charges, costs and fees on the 650 85th Property. At the closing of the transfer, Flynn shall prepare and upon Pedixon's or its designee's reasonable approval, Pedixon or its designee shall execute a memorandum of the option in recordable form, which shall be recorded with the deed. Subject to Florida law, the option shall survive, and shall not be terminated by, any sale or transfer of the 650 85th Property or of any interest in the entity holding title to it during the Option Period, and any purchaser or transferee shall take subject to it. The option is personal to Flynn, non-assignable and subject to immediate forfeiture and termination upon any default by Flynn or 650 85th under this Agreement or confirmed bankruptcy plan.

Upon execution of this Agreement, the Flynn Parties shall execute and deliver a signed quit claim deed in a form substantially similar to the quit claim deed attached as Exhibit B. The Secured Creditors may seek additional resolutions, affidavits, transfer documents, payoff authorizations, and other instruments reasonably necessary to effectuate the transfer of the 650 85th Property, which the Flynn Parties will provide within five (5) business days of any such request. These documents shall be held in escrow by Dean Mead and released upon the Effective Date for recording purposes. Recording of the quit claim deed and the release instruments relating to the 650 85th Property described in Section 6 shall occur within fourteen (14) days after the Effective Date. The Secured Creditors shall bear all costs of closing and recording the transfer, including any documentary stamp tax not exempted under section 1146 of the Bankruptcy Code.

The Flynn Parties shall not 1) create or permit any lien or other encumbrance (other than presently existing liens identified in Exhibit C to exist on the 650 85th Property, or (2) transfer, sell hypothecate, assign or in any manner whatever dispose of the 650 85th Property. The Flynn Parties shall continue to maintain the 650 85th Property and flood insurance currently in place on the 650 85th Property through the date of transfer. The Secured Creditors acknowledge that the First State Bank loan is in arrears, that the Flynn Parties are not making payments on it, that First State Bank has taken no action to enforce any payment obligation against the Flynn Parties, and that the Flynn Parties have refrained from leasing the 650 85th Property which is the subject of this Agreement. No Flynn Party shall have any obligation to lease the 650 85th Property or to fund any payment to First State Bank. The Secured Creditors may, at their sole option and expense, pay or cure the First State Bank loan at any time before the transfer. No enforcement action by First State Bank before the transfer shall constitute an Event of Default by any Flynn Party.

If a Flynn Party fails to deliver the transfer documents at the time of execution of this Agreement, the Secured Creditors may seek specific performance by motion in the Bankruptcy Court after notice and the cure period under Section 12. 650 85th acknowledges and waives any right to contest the Bankruptcy Court's jurisdiction to enforce this Agreement against 650 85th, and the Secured Creditors consent to the Bankruptcy Court's jurisdiction to enforce this Agreement against them.

6. **Litigation Dismissals.** Within fourteen (14) days after the recording of the quit claim deed as required above and the completion of the transfer of the 650 85th Property, the Secured Creditors and the Flynn Parties shall file stipulations dismissing with prejudice, the Guaranty Case, the 650 Case and the Adversary Case in their entirety as to Flynn and 650 85th

and any claims and defenses by those parties against the Secured Creditors and any related parties. The Parties will be responsible for their own attorneys' fees in the Guaranty Case, the 650 Case and Adversary Case. Within fourteen (14) days after the Effective Date, the Secured Creditors shall withdraw with prejudice all of their claims in the Bankruptcy Case other than the Flynn Allowed Claim. Within fourteen (14) days after the Effective Date, the Parties shall file a stipulation dismissing the Flynn Case with prejudice. Upon execution of this Agreement, Pedixon shall deliver in escrow to Dean Mead any necessary recordable satisfactions, releases, UCC-3 termination statements and releases of lis pendens for its mortgage relating to the 650 85th Property. In addition, Pedixon shall deliver to Dean Mead any necessary recordable satisfactions, releases, UCC-3 termination statements and releases of lis pendens for its mortgage on Flynn's residence at 14556 Saint Georges Hill Drive, Orlando, Florida. The release documents as to the 650 85th Property shall be released for recording on the Effective Date and recorded within fourteen (14) days after the Effective Date. The release documents as to Flynn's residence shall be released for recording on the Effective Date and recorded within fourteen (14) days after the Effective Date. Absent any default by any Flynn Party after providing a Notice of Default pursuant to section 12 and any such instrument not delivered or recorded within the fifteen (15) day cure period, Flynn or 650 85th may record this Agreement, together with the Approval Order, as a satisfaction and release of that item. As between the Parties, this Section 6 controls over Sections 7 and 8 of the Global Settlement as to the timing of these dismissals, withdrawals, satisfactions and releases.

Within ten (10) days of the execution of this Agreement, the Flynn Parties shall deliver to the Secured Creditors a schedule of any other litigation filed by a Flynn Party, or by any entity in which a Flynn Party holds a controlling interest against any of the Dixon Parties that is not identified herein, and each such lawsuit shall be dismissed with prejudice the same time as the cases identified above. Upon the Effective Date, the Secured Creditors shall withdraw all pending motions, requests, and objections in the Bankruptcy Case, including but not limited to the Motion to Dismiss, Motion to Remand, any objection to the Subchapter V Election (if any) and objection to confirmation. The Parties will be responsible for their own attorney's fees and costs in all lawsuits dismissed hereunder.

7. **Pedixon Claim**. Solely for purposes of voting on and receiving distributions under the Plan, the secured claim #16-1 shall remain and be satisfied by the transfer of the 650 85th Property under Section 4 and the remaining claims of Pedixon and ZPD shall be treated as a single allowed general unsecured claim of $4,665,000.00. Claim #16-1 and that allowed general unsecured claim together constitute the "Flynn Allowed Claim" under Sections 4.2 and 8.4 of the Global Settlement and are preserved and voted as provided there. Upon a Global Failure, any distribution under any plan on account of the Flynn Allowed Claim, other than the conveyance of the 650 85th Property, shall be paid to Pedixon. This Section 7 controls over Section 4.3 and Exhibit A, item 13, of the Global Settlement, as provided in Section 4.5 of the Global Settlement. This treatment is a compromise for voting and distribution purposes only and does not constitute, and shall not be construed or offered as, an admission or adjudication of the validity, amount, priority, enforceability, characterization, or secured/unsecured status of any claim or of the underlying debt, all of which the Debtor disputes and as to which Debtor reserves all rights. If the Bankruptcy Case is dismissed before a plan is confirmed, the Flynn Allowed Claim is deemed withdrawn, as provided in Section 4.4 of the Global Settlement, and every other term of this

Agreement remains in effect. Nothing in this Agreement may be used against any Party in any forum, other than to enforce this Agreement.

**8.** **Automatic Stay**. The Parties acknowledge and agree that enforcement of this Agreement is not stayed by 11 U.S.C. § 362 and the Debtor shall not assert the automatic stay as a defense to enforcement of this Agreement as approved; provided that before the confirmation of a plan nothing herein waives the stay as to any bona fide dispute over whether an Event of Default has occurred, which the Bankruptcy Court shall determine.

**9.** **Motion to Dismiss Withdrawal**. Upon entry of the Effective Date, the Secured Creditors will withdraw, with prejudice, the Motion to Dismiss (Doc. No. 81) and their objection to confirmation (Doc. No. 109). The Secured Creditors shall not oppose confirmation of a Plan that complies with this Agreement.

**10.** **Representations, Warranties and Covenants.** To induce the Secured Creditors to enter into this Agreement, the Flynn Parties, each on behalf of themselves, makes the following representations, warranties, and covenants:

(a) Each of the Flynn Parties are duly authorized and empowered to enter into and perform under this Agreement;

(b) The execution and performance of this Agreement by each of the Flynn Parties does not and will not violate any agreement to which Flynn or 650 85th is a party;

(c) Except as disclosed on Schedule 1, in Exhibit C, in Section 10(g) or in the record of the Bankruptcy Case, since the mediation resulting in this Agreement began, the Flynn Parties have not directly or indirectly through another entity or individual engaged in any conduct or have committed any omission that would prejudice any of the Secured Creditors rights or expectations under this Agreement. No matter so disclosed shall constitute or give rise to an Event of Default.

(d) Each of the Flynn Parties have full authority to grant the releases reflected herein.

(e) Each of the Flynn Parties, except for the liens and encumbrances reflected in Exhibit C attached hereto, did not permit and have no knowledge of any additional lien, easements, transfer rights, option, claims, or encumbrance affecting or attaching to the 650 85th Property.

(f) The 650 85th Property is covered by property and flood insurance currently in place, as reflected in the proof of insurance delivered to the Secured Creditors, the 650 85th Property is not subject to any storm or other damage other than normal wear and tear, and to Flynn's knowledge, there are no outstanding maintenance issues in excess of $10,000.00.

(g) The Flynn Parties have provided the Secured Creditors proof of insurance for the 650 85th Property and a true and complete copy of the First State Bank payoff statement dated August 6, 2026, good through September 3, 2026, reflecting a payoff of $346,146.13, which

shows that the loan is in arrears and accrues additional per diem interest after that date. The Flynn Parties make no warranty as to the accuracy of First State Bank's figures. Other than reasonably cooperating with performing the FSB Obligation in Section 5, the Flynn Parties assume no obligation regarding, the payoff of the First State Bank mortgage, which is addressed by the FSB Obligation in Section 5. The Secured Creditors make the same representations, warranties and covenants to the Flynn Parties, with the same limitations, to the extent applicable to them, and are bound by the representations of the Dixon Parties in the Global Settlement.

(h) The covenant not to sue in Section 9.7 of the Global Settlement, including its exceptions and remedies, applies between the Parties as a term of this Agreement, mutually and on the same terms, subject to Section 12.1 of the Global Settlement, and survives a Global Failure as provided in Section 1 of this Agreement.

**11. <u>Approval of Global Settlement Agreement.</u>** The effectiveness of this Agreement is subject only to entry in the Bankruptcy Case of an order approving this Agreement (the "Approval Order"), which the Parties shall seek in the Rule 9019 motion filed in the Bankruptcy Case under Section 14.2(a) of the Global Settlement within five (5) business days of the execution of the Agreement. This Agreement is not conditioned on approval or consummation of the Global Settlement in any other case.

**12. <u>Failure to Comply/Event of Default</u>**. Each of the following is an Event of Default: (a) failure by any Flynn Party to perform any material obligation when due which remains uncured for a period of fifteen (15) Business Days after receipt of written notice; (b) the failure of any representation or warranty in the Agreement that is not cured within fifteen (15) Business Days after receipt of written notice; (c) the failure of Secured Creditors to comply with their obligations under this Agreement which remains uncured for a period of fifteen (15) Business Days after receipt of written notice; and (d) the material violation of any covenant or release in this Agreement by the Parties.

Upon an uncured Event of Default by any Party, the non-defaulting Party may seek specific performance, enforcement of this Agreement or any confirmed Plan, and actual damages in the Bankruptcy Court or, if the Bankruptcy Case is dismissed and the Bankruptcy Court does not retain jurisdiction, in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida. No Event of Default voids or unwinds this Agreement, the transfer of the 650 85th Property, or any release, dismissal or satisfaction given under this Agreement or the Global Settlement. Nothing in this Agreement makes any claim or obligation non-dischargeable or waives any discharge.

**13. <u>No Termination; Denial of Approval.</u>** This Agreement may not be terminated by any Party. If the Bankruptcy Court denies approval of this Agreement: (a) Flynn may, within thirty (30) days after the order denying approval, move to dismiss the Bankruptcy Case and ratify this Agreement in the manner provided in Section 14.6(a) of the Global Settlement, in which event this Agreement takes effect, and the Effective Date occurs, on dismissal; and (b) whether or not Flynn so elects, 650 85th and the Secured Creditors remain bound as between themselves: 650 85th shall convey the 650 85th Property, the Secured Creditors shall perform the FSB Obligation within sixty (60) days after that conveyance and shall deliver the satisfactions and releases under Section 6 relating to the 650 85th Property, and the releases and covenants, including the covenant not to sue, between 650 85th and the Secured Creditors under the Global Settlement shall remain in

effect. If the Approval Order has not been entered by January 31, 2027, Flynn may elect, by written notice to the Secured Creditors, to treat approval as denied and proceed under this Section 13, and the thirty (30) day period in clause (a) shall run from the date of that notice, and clause (b) as to 650 85th and the Secured Creditors shall remain in effect. This election belongs to Flynn alone and does not give any other Party a right to terminate this Agreement. Failure to confirm a plan, dismissal or conversion of the Bankruptcy Case, an Event of Default by any Party, and a Global Failure do not void, revive or unwind any release, dismissal, transfer or other term of this Agreement or of the Global Settlement as between the Parties.

14. **Confirmation is Not Affected.** Notwithstanding anything in this Agreement to the contrary: (a) upon the Effective Date, this Agreement may not be terminated by any Party, and no Event of Default, Termination Event, breach or dispute under this Agreement, by any Party, shall vacate, revoke, modify or unwind the Confirmation Order or the Plan, re-vest or revert any property, reinstate or revive any claim, lien or guaranty released, satisfied or treated under the Plan or this Agreement, or render any release, dismissal, satisfaction or acknowledgment given under this Agreement void or voidable; (b) the remedies of any Party for an uncured Event of Default by another Party are those stated in Section 12.

15. **WM and MTF Interests.** Nothing herein shall prevent Flynn from obtaining and utilizing any funds or assets currently owned by or held on account of WM and MTF to fund his amended Plan or new Chapter 11 Plan that complies with this Agreement as the case may be. Subject to the terms herein and upon the Settlement Consummation Date the Secured Creditors hereby agree and acknowledge that they have no right, title, claim or interest in or to Flynn's business interests in WM and MTF or any of their respective assets, or any cash Flynn retains or is entitled to, all of which will be retained by Flynn and the Flynn Parties in full, unconditionally and permanently, and Secured Creditors relinquish any claim to any of the foregoing. For purposes of clarity, upon the withdrawal of their claims under section 6 above, the Secured Creditors shall have no claim, lien or interest of any kind in WM, MTF or any of their respective assets, and every lien, pledge, assignment and UCC financing statement held by the Secured Creditors against WM, MTF or their assets is released. The foregoing provisions and acknowledgements vest on the Settlement Consummation Date, are absolute, are not subject to any condition subsequent, divestment or forfeiture, and survive any Event of Default by any Party and any breach of this Agreement occurring after it vests. This acknowledgment is not, and shall not be construed as, an admission that the Secured Creditors ever held a valid interest in any of the foregoing. Within ten (10) days of the Settlement Consummation Date, the Secured Creditors and WM and MTF shall file a stipulation in the Guaranty Case dismissing all claims against WM and MTF and any claims and defenses by WM and MTF against the Secured Creditors, with prejudice, with each party being responsible for their attorneys' fees.

16. **Effective Date.** "Effective Date" means the first business day after the Approval Order becomes final, which occurs when the fourteen (14) day period to appeal under Federal Rule of Bankruptcy Procedure 8002(a) has expired with no notice of appeal, no motion under Federal Rule of Bankruptcy Procedure 8002(b), and no stay pending or, if an appeal or such a motion is filed, when it is finally resolved with the Approval Order in effect; or, in the circumstance described in Section 13(a), the date of dismissal. "Execution Date" means the date on which the last Party signs this Agreement. "Plan Effective Date" means the effective date of the Plan as

defined in the Plan, which will be subject to the completed transfer of the 650 85th Property. The transfer of the 650 85th Property is complete, for all purposes of this Agreement and the Plan, on the Effective Date, when the quit claim deed is released from escrow under Section 4, whether or not the deed has then been recorded and whether or not the FSB Obligation has been performed. "Settlement Consummation Date," "Released Related Persons", "Pitkanen Parties" and "Dixon Parties" have the meanings given in the Global Settlement. The Parties agree to cooperate with and file a motion under Bankruptcy Rule 9019 within five (5) business days after the Execution Date. Flynn shall file an amended Plan or new Plan that complies with this Agreement within fourteen (14) days after the Execution Date or, if the plan makes an Adverse Change, within seven (7) days after the Secured Creditors' approval or deemed approval under Section 3, whichever is later.

**17. Governing Law/Stipulated Jurisdiction.** This Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Florida applicable to contracts made and to be performed fully within the State of Florida.

**18. Counterparts.** This Agreement may be executed in counterparts, each of which shall constitute an original but all of which taken together shall constitute one and the same document.

**19. Notices Pursuant to the Agreement.** Any written notices under this Agreement may be delivered by email, U.S. Mail, overnight courier, or hand delivery, sent to counsel to the relevant Party. Daniel Velasquez shall be counsel for Flynn, and James A. Timko shall be counsel for the Secured Creditors. Any change in counsel shall be in writing and delivered in accordance with this Paragraph and any written notice to new counsel shall satisfy any notice requirements under this Agreement.

**20. Successors and Assigns.** This Agreement as well as the order contemplated herein, shall be binding upon, and inure to the benefit of the Parties and each of their respective predecessors, successors, and assigns, including, without limitation, the Flynn Parties, their estates, any trustee, examiner, or other estate representative appointed in any bankruptcy case of any of the Flynn Parties (whether under chapter 11 or chapter 7 of the Bankruptcy Code), and any chapter 7 trustee appointed upon conversion of the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, together with such trustee's successors and assigns. Each such successor and assign shall be bound by every release, waiver, covenant, representation, and obligation set forth in this Agreement to the same extent as the Party it succeeds.

**21. Modification.** This Agreement, and any of the covenants, conditions and representations contained herein may not be waived, changed, altered, or modified except by an instrument in writing signed by the Party against whom enforcement of such change is sought.

**22. Attorneys' Fees.** In any litigation or other legal proceeding between the Parties arising out of or related to this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs incurred in connection with any such proceeding, including attorneys' fees and costs in any appeal or bankruptcy proceeding and any attorney's fees and costs incurred in adjudicating the amount of attorneys' fees and costs, including fees and costs incurred in seeking injunctive relief, contempt, and sanctions.

**23.** **Entire Agreement.** This Agreement, the July Outline as amended by this Agreement, and the Global Settlement, together with their respective exhibits and schedules, constitute the entire agreement among the Parties concerning the subject matter addressed herein. To the extent applicable, nothing in this Agreement supersedes or limits the Global Settlement, except as expressly provided in Section 1. Without limiting the foregoing, the releases, covenants not to sue and other protections afforded to the Dixon Parties and their Related Persons under the Global Settlement remain in full force according to their terms. The Recitals are subject to the statement preceding them and to Section 1.

**24.** **Cooperation.** The Parties agree to execute such other documents and to provide reasonable cooperation as necessary or desirable to carry out the intent of this Agreement. The Parties will not take any action that would tend to interfere with the performance of this Agreement or defeat the intent of the releases contained herein.

**25.** **Survival.** All representations, warranties, covenants, and agreements made in this Agreement shall survive the execution, delivery, and performance of this Agreement.

**26.** **Interpretation.** The Parties each acknowledge that each has contributed substantially and materially to the negotiation and preparation of this Agreement, and it shall be deemed the joint work product of all parties and their respective counsel and all Parties shall be considered the drafters of this Agreement. As such, this Agreement shall not be construed more strictly against one party than against another merely by virtue of the fact that it may have been prepared by counsel to one of the Parties. Each of the Parties declares that they have been represented by counsel in connection with the negotiation of this Agreement or have had the opportunity and wherewithal to be represented by counsel in the review, negotiation, and execution of this Agreement, and that the terms and conditions of this Agreement are understood fully and agreed to voluntarily. Headings used in this Agreement are for the convenience of the Parties solely and have no substantive intent or purpose.

[SIGNATURES ON NEXT PAGE]

**IN WITNESS WHEREOF,** the Parties intending to be legally bound, have duly executed and delivered this Agreement as of the date first written above.

PEDIXON LLC,
a Florida limited liability company

By: Kenneth G. Dixon
Title: Manager
Date: 11/11/26

ZPD LLC,
a Florida limited liability company

By: Kenneth G. Dixon
Title: Manager
Date: 11/11/26

MARTIN C. FLYNN, JR., individually and as debtor-in-possession

By: Martin C. Flynn, Jr.
Date:

WM HOLDINGS GROUP, LLC,
a Florida limited liability company

By: Martin C. Flynn, Jr.
Title: Manager
Date:

650 85th, LLC,
a Florida limited liability company

By: Martin C. Flynn, Jr.
Title: Manager
Date:

MTF HOLDINGS, LLC,
a Florida limited liability company

By: Martin C. Flynn, Jr.
Title: Manager
Date:

**IN WITNESS WHEREOF,** the Parties intending to be legally bound, have duly executed and delivered this Agreement as of the date first written above.

PEDIXON LLC,
a Florida limited liability company

______________________________
By: Kenneth G. Dixon
Title: Manager
Date: ________________________

ZPD LLC,
a Florida limited liability company

______________________________
By: Kenneth G. Dixon
Title: Manager
Date: ________________________

MARTIN C. FLYNN, JR., individually and as debtor-in-possession

______________________________
By: Martin C. Flynn, Jr.
Date: 11/11/2026

WM HOLDINGS GROUP, LLC,
a Florida limited liability company

______________________________
By: Martin C. Flynn, Jr.
Title: Manager
Date: 11/11/2026

650 85th, LLC,
a Florida limited liability company

______________________________
By: Martin C. Flynn, Jr.
Title: Manager
Date: 11/11/2026

MTF HOLDINGS, LLC,
a Florida limited liability company

______________________________
By: Martin C. Flynn, Jr.
Title: Manager
Date: 11/11/2026



6576912.v1
6743719.v1
6774183.v2

**EXHIBIT C**

**Exhibit C: Resignation of Trustee and Appointment of Successor Trustee (Section 5.2)**

THIS INSTRUMENT PREPARED BY
AND RETURN TO:
Matthew Leibert, Esq.

Urban Thier & Federer, P.A.
5782 A S. Semoran Blvd.

Orlando, Florida 32822

RESIGNATION OF TRUSTEE AND APPOINTMENT OF SUCCESSOR TRUSTEE
OF THE TIERED LAND TRUST DATED SEPTEMBER 13, 2023
(Pursuant to Fla. Stat. § 689.071(9))

THIS INSTRUMENT is executed pursuant to that certain Global Settlement Agreement and Mutual General Release dated as of its Execution Date (the "Settlement Agreement"), by and among CRESCENT SOUND, LTD., a Florida limited partnership (the "Resigning Trustee"), HORTON S. JOHNSON (the "Successor Trustee"), and the undersigned Holders of the Power of Direction of The Tiered Land Trust dated September 13, 2023 (the "Trust").

1. Resigning Trustee. CRESCENT SOUND, LTD., 1627 East Vine Street, Suite E, Kissimmee, Florida 34744.

2. Successor Trustee. HORTON S. JOHNSON, 2523 Kissam Court, Belle Isle, Florida 32809.

3. Resignation. Effective as of ____________, 20___ (a date not later than the 14th day following the Effective Date of the Settlement Agreement), Crescent Sound, Ltd. resigns as Trustee of the Trust and relinquishes all authority to act on behalf of the Trust.

4. Crescent Sound Lien Release. Any lien rights, claims, or security interests held by Crescent Sound, Ltd. under Section 10 of the Tiered Land Trust Agreement dated September 13, 2023, shall be released and terminated at the same time, and on the same terms, as the other releases under the Settlement Agreement.

5. Appointment of Successor Trustee. The undersigned, constituting not less than seventy-five percent of the Holders of the Power of Direction, hereby appoint HORTON S. JOHNSON as sole Successor Trustee of the Trust pursuant to Fla. Stat. § 689.071(9) and the Trust Agreement.

6. Acceptance. HORTON S. JOHNSON accepts the appointment as Successor Trustee and agrees to administer the Trust pursuant to Florida law.

7. Immediate Title Vesting. Pursuant to Fla. Stat. § 689.071(9)(c), legal and equitable title to all trust property, including all stock, shares, membership interests and other equity interests in Cape Crossing Vacation Rentals, LLC, Recycled Group of South Carolina, LLC and Holly Bluff Marina, Inc. (the "Trust Property"), immediately vests in HORTON S. JOHNSON, as Successor Trustee, by operation of law without further conveyance.

8. Third-Party Reliance. Pursuant to Fla. Stat. § 689.071(3) and (9), any person or title insurer dealing with HORTON S. JOHNSON, as Successor Trustee, may rely conclusively on this recorded instrument as establishing his full power to sell, convey, mortgage, lease, or manage the Trust Property without inquiry.

RESIGNING TRUSTEE:
CRESCENT SOUND, LTD., a Florida limited partnership
By: Crescent Sound, Inc., its General Partner

Witness 1: ______________________ By: ______________________
Print Name: ______________________ Kenneth G. Dixon, President
Address: ______________________ Date: ______________________

Witness 2: ______________________
Print Name: ______________________
Address: ______________________

SUCCESSOR TRUSTEE:

Witness 1: ______________________ ______________________
Print Name: ______________________ HORTON S. JOHNSON, Successor Trustee
Address: ______________________ Date: ______________________

Witness 2: ______________________
Print Name: ______________________
Address: ______________________

HOLDERS OF THE POWER OF DIRECTION:

HOMEMAKERS REAL ESTATE, LLC TIERED CAPITAL, INC.

By: ______________________ By: ______________________
Horton S. Johnson, Trustee of the Tiered Land Trust Horton S. Johnson, Director

A MARINE, INC. YANIV AMAR
By: ______________________ ______________________
Yaniv Amar, President Yaniv Amar, Individually

ACKNOWLEDGED BY CHAPTER 11 TRUSTEE OF HOMEMAKERS REAL ESTATE, LLC:

By: ___________________________________

Lara Roeske Fernandez, solely as Chapter 11 Trustee, Case No. 6:25-bk-05570-GER

STATE OF FLORIDA, COUNTY OF _______________
The foregoing instrument was acknowledged before me by means of [ ] physical presence or [ ] online notarization this _____ day of ________________, 20___, by Kenneth G. Dixon, as President of Crescent Sound, Inc., General Partner of Crescent Sound, Ltd.

Notary Public, State of Florida
Commission No. / Expiration: ________________________

STATE OF FLORIDA, COUNTY OF _______________
The foregoing instrument was acknowledged before me by means of [ ] physical presence or [ ] online notarization this _____ day of ________________, 20___, by Horton S. Johnson, as Successor Trustee.

Notary Public, State of Florida
Commission No. / Expiration: ________________________

**EXHIBIT D**

Assignment Regarding Recycled Group of South Carolina, LLC and Holly Bluff Marina, Inc.

The form of assignment is to be agreed by the Parties before the hearing on approval of this Agreement, as provided in Section 5.3 of this Agreement.

**EXHIBIT E**
**Recorded Interests**

1. Crescent Sound Trust Lien
- All lien rights, claims, and security interests held or asserted by Crescent Sound, Ltd. under Section 10 of the Tiered Land Trust Agreement dated September 13, 2023, shall be released, extinguished, and terminated at the same time, and on the same terms, as the other releases under the Agreement.

2. Orange County, Florida
- 14556 St. Georges Hill Drive Mortgage: Mortgage dated July 28, 2023, executed by Martin C. Flynn, Jr. and Tracey Hester Flynn in favor of PEDixon, LLC, recorded August 2, 2023, at Instrument # 20230434480, Public Records of Orange County, Florida, encumbering Lot 108, Kensington at Eastwood, Plat Book 40, Pages 16 through 19. To be satisfied and discharged of record by delivery of a recordable satisfaction of mortgage.
- Orange County UCC-1 Financing Statement: Financing statement naming Martin C. Flynn, Jr. as debtor and PEDixon, LLC as secured party, covering Lot 108, Kensington at Eastwood, recorded August 2, 2023, at Instrument # 20230434713, Public Records of Orange County, Florida. To be terminated by filing a Form UCC-3 termination statement.
- Notice of Lis Pendens (Case No. 2025-CA-004329-O): Recorded in the Public Records of Orange County, Florida, in connection with Martin C. Flynn, Jr. v. PEDixon LLC. To be cancelled and discharged of record.
- Notice of Lis Pendens (Case No. 2026-CA-001368-O): Recorded in the Public Records of Orange County, Florida, in connection with Horton S. Johnson v. Crescent Sound, Ltd., et al. To be cancelled and discharged of record by a recordable release of notice of lis pendens delivered under Section 7.2 of this Agreement.

3. Monroe County, Florida
- 650 85th Street Mortgage: Mortgage dated January 28, 2022, executed by 650 85th LLC in favor of PEDixon LLC, recorded March 1, 2022, at Document # 2363740, Official Records Book 3158, Page 183, and Mortgage Modification Agreement dated August 4, 2022, recorded October 27, 2022, at Document # 2395895, Official Records Book 3199, Page 1140, Public Records of Monroe County, Florida, encumbering 650 85th Street Ocean, Marathon, Florida 33050. Governed by the Flynn Agreement: the 650 85th Property is conveyed to PEDixon LLC under the Flynn Agreement, and Martin C. Flynn, Jr. is released from this mortgage and the debt it secures.
- Notice of Lis Pendens (Case No. 2025-CA-000518): Filed by PEDixon LLC on July 28, 2025 (Filing # 228215247) in connection with its foreclosure counterclaim in 650 85th, LLC v. PEDixon LLC, and recorded in the Public Records of Monroe County, Florida. To be cancelled and discharged of record.
- UCC-1 Financing Statement: Recorded in Official Records Book 3199, Page 1148, Public Records of Monroe County, Florida, and Florida Secured Transaction Registry. To be terminated by filing a Form UCC-3 termination statement.

4. Brevard County, Florida (Cape Crossing Units and Lands)

- Recorded Option and Right of First Refusal: Amended and Restated Right of First Refusal and Option to Purchase Agreement executed by Homemakers Real Estate, LLC in favor of PEDixon LLC, dated February 1, 2023, recorded February 1, 2023, in Official Records Book 9708, Page 2844, Instrument # 2023020846, Public Records of Brevard County, Florida. To be terminated and released of record by recordable release agreement.
- IMQA Right of First Refusal and Option: Right of First Refusal and Option to Purchase Agreement granted by IMQA Investments, Incorporated in favor of PEDixon LLC, recorded February 3, 2023, in Official Records Book 9710, Page 878, Instrument # 2023022193, Public Records of Brevard County, Florida. To be terminated and released of record by recordable release agreement.
- IMQA Mortgage: Mortgage dated July 2022, executed by IMQA Investments, Incorporated in favor of Parke Financial Limited Partnership, securing $300,000.00, recorded September 7, 2022, in Official Records Book 9606, Page 2325, Instrument # 2022219949, Public Records of Brevard County, Florida. To be satisfied and discharged of record.
- Canaveral Mortgage: Mortgage dated February 27, 2023, executed by Canaveral Crossroads, LLC in favor of PEDixon LLC, securing $500,000.00, recorded March 3, 2023, in Official Records Book 9731, Page 1341, Instrument # 2023043479, Public Records of Brevard County, Florida. To be satisfied and discharged of record.
- Notice of Lis Pendens (Case No. 05-2025-CA-010481-XXCA-BC): Recorded in the Public Records of Brevard County, Florida, in connection with IMQA Investments, Incorporated lawsuit. To be cancelled and discharged of record.
- Notice of Lis Pendens (Case No. 2026-CA-001368-O): Recorded in the Public Records of Brevard County, Florida, in connection with Horton S. Johnson v. Crescent Sound, Ltd., et al. To be cancelled and discharged of record by a recordable release of notice of lis pendens delivered under Section 7.2 of this Agreement.

5. Volusia County, Florida (Holly Bluff Marina Property)

- IMQA Deed to Secure Debt: Deed to Secure Debt with Power of Sale executed by Holly Bluff Marina, Inc. in favor of IMQA Investments, Incorporated, dated February 29, 2024, recorded March 11, 2024, in Official Records Book 8528, Page 239, Instrument # 2024046563, Public Records of Volusia County, Florida, securing $100,000.00 against real property referencing Official Records Book 3759, Page 561. To be fully satisfied, cancelled, and discharged of record by IMQA Investments, Incorporated.

6. South Carolina (Hampton County Property)

- Hampton County Real Property Encumbrances: Any mortgage or encumbrance of record in Hampton County, South Carolina, concerning Recycled Group of South Carolina, LLC and the 57.363-acre property at 304 Hoover Street North, Hampton, SC will be released pursuant to Section 5.3 of this Agreement.
- ZPD Hampton Mortgage: Mortgage Deed and Security Agreement dated September 16, 2022, executed by Recycled Group of South Carolina, LLC in favor of ZPD LLC, securing $1,300,000.00, recorded January 25, 2023, as Instrument No. 202300000115, Book 631, Page 46, Office of the Clerk of Court for Hampton County, South Carolina. To be satisfied and released of record.

- PEDixon Hampton Mortgage: Mortgage dated July 31, 2023, executed by Recycled Group of South Carolina, LLC in favor of PEDixon, LLC, securing $3,000,000.00, recorded October 6, 2023, as Instrument No. 202300001593, Book 639, Page 95, Office of the Clerk of Court for Hampton County, South Carolina. To be satisfied and released of record.

7. Personal Property and Collateral Transfers

- Corporate Pledges: The Security Pledge Agreement (Pledge of Stock, Cash Flow and ROGOS) dated October 24, 2023, and the related Assignment and Transfer of Shares of MTF Holdings, LLC, Assignment and Transfer of Shares of WM Holdings Group, LLC, Assignment and Transfer of Cash Flow, Assignment of Contracts and Building Rights by MTF Holdings, LLC and Martin C. Flynn, Jr., and Assignment of All Contracts and Building Rights by MTF Holdings, LLC, WM Holdings Group, LLC and Martin C. Flynn, Jr., each in favor of PEDixon LLC and executed in October 2023, released, terminated and returned to Martin C. Flynn, Jr.
- State UCC Filings: All UCC financing statements filed with the Florida Secured Transaction Registry naming PEDixon LLC, ZPD LLC, Crescent Sound, Ltd., or Parke Financial Limited Partnership as secured party and any Flynn-Johnson Party as debtor, or naming any Flynn-Johnson Party as secured party and any Dixon Party as debtor, terminated via Form UCC-3.
- MTF Holdings / 650 85th UCC-1: Financing statement filed December 13, 2022, Florida Secured Transaction Registry File No. 20220389444X, naming MTF Holdings, LLC and 650 85th LLC as debtors and PEDixon LLC as secured party, covering the building rights of MTF Holdings, LLC and the real and personal property of 650 85th LLC. To be terminated by filing a Form UCC-3 termination statement.
- All shares and membership units of Recycled Group of South Carolina and Holly Bluff Marina, Inc. secured by PEDixon and held in trust will be released.

## SCHEDULE 2.4

The following persons are excluded from the definition of Released Related Persons under Section 2.4 of this Agreement, each solely in the capacity stated. Each person listed below is an Excluded Person as to every Party.

- Michael McPhillips, individually
- FBC Holdings, LLC
- Cheryl McPhillips
- Just Sayin Construction, LLC
- Cape Crossing Marina, LLC
- Cape Crossing Boat Rentals, LLC
- Harbor Square, LLC
- Cape Crossing Tiki Hut Restaurant, LLC
- Cherry Village GP, LLC
- Cherry Village, LP
- Austin Commons GP, LLC
- Austin Commons, LP
- Trent Development
- Shane Sarver, individually
- Surfside Pointe, LLC
- Nardella & Nardella, PLLC
- Frank M. Wolff, Esq., individually

SCHEDULE 16.3

## NOTICE ADDRESSES

| Party | Notice address and email | With a copy to |
|---|---|---|
| PEDixon LLC | Attn: Kenneth G. Dixon, Manager, 1627 East Vine Street, Suite E, Kissimmee, FL 34744; kendixon@lelandenterprisesinc.com | Jeffrey S. Ainsworth, Esq. / Jennifer L. Morando, Esq., Branson Ainsworth PLLC, 1501 E. Concord Street, Orlando, FL 32803; jeff@bransonlaw.com |
| ZPD LLC | Attn: Kenneth G. Dixon, Manager, 1627 East Vine Street, Suite E, Kissimmee, FL 34744; kendixon@lelandenterprisesinc.com | Jeffrey Ainsworth, Esq. (same) |
| Crescent Sound, Ltd., individually | c/o Crescent Sound, Inc., General Partner, Attn: Kenneth G. Dixon, President, 1627 East Vine Street, Suite E, Kissimmee, FL 34744; kendixon@lelandenterprisesinc.com | Jeffrey Ainsworth, Esq. (same) |
| Crescent Sound, Ltd., as trustee of the Tiered Land Trust | c/o Crescent Sound, Inc., General Partner, Attn: Kenneth G. Dixon, President, 1627 East Vine Street, Suite E, Kissimmee, FL 34744; kendixon@lelandenterprisesinc.com | Jeffrey Ainsworth, Esq. (same) |
| Parke Financial Limited Partnership | c/o MFL, Inc., General Partner, Attn: Kenneth G. Dixon, Vice President, 1627 East Vine Street, Suite E, Kissimmee, FL 34744; kendixon@lelandenterprisesinc.com | Jeffrey Ainsworth, Esq. (same) |
| Kenneth G. Dixon, individually | 1627 East Vine Street, Suite E, Kissimmee, FL 34744; kendixon@lelandenterprisesinc.com | Jeffrey Ainsworth, Esq. (same) |
| Alison Pitkanen, individually | 13514 Lake Mary Jane Road, Orlando, FL 32832; alisonpitkanen@gmail.com; alisonplaw@gmail.com | Alison Pitkanen Law Firm LLC, 1980 N. Atlantic Avenue, Suite 328, Cocoa Beach, FL 32931 |
| Alison Pitkanen Law Firm LLC | Attn: Alison Pitkanen, Manager, 1980 N. Atlantic Avenue, Suite 328, Cocoa Beach, FL 32931; alisonpitkanen@gmail.com; alisonplaw@gmail.com | None |
| Alison Pitkanen, P.A. | Attn: Alison Pitkanen, 1980 N. Atlantic Avenue, Suite 328, Cocoa Beach, FL 32931; alisonpitkanen@gmail.com; alisonplaw@gmail.com | None |
| Martin C. Flynn, Jr., individually | 14556 Saint Georges Hill Drive, Orlando, FL 32828; mcflynnjr@gmail.com | Daniel A. Velasquez, Esq., Latham, Luna, Eden & Beaudine, LLP, 201 S. Orange Avenue, Suite 1400, Orlando, FL 32801; dvelasquez@lathamluna.com |

| Party | Notice address and email | With a copy to |
|---|---|---|
| Martin C. Flynn, Jr., as debtor-in-possession | 14556 Saint Georges Hill Drive, Orlando, FL 32828; mcflynnjr@gmail.com | Daniel A. Velasquez, Esq. (same) |
| Tracey Hester Flynn, individually | 14556 Saint Georges Hill Drive, Orlando, FL 32828; mcflynnjr@gmail.com | Daniel A. Velasquez, Esq. (same) |
| 650 85th, LLC | Attn: Martin C. Flynn, Jr., Manager, 14556 Saint Georges Hill Drive, Orlando, FL 32828; mcflynnjr@gmail.com | Dale R. Coburn III, Esq., Wolfe Stevens PLLC, 5800 Overseas Highway, Suite 3, Marathon, FL 33050; coburn@marathonlaw.com |
| WM Holdings Group, LLC | Attn: Martin C. Flynn, Jr., Manager, 14556 Saint Georges Hill Drive, Orlando, FL 32828; mcflynnjr@gmail.com | Daniel A. Velasquez, Esq., Latham, Luna, Eden & Beaudine, LLP, 201 S. Orange Avenue, Suite 1400, Orlando, FL 32801; dvelasquez@lathamluna.com |
| MTF Holdings, LLC | Attn: Martin C. Flynn, Jr., Manager, 14556 Saint Georges Hill Drive, Orlando, FL 32828; mcflynnjr@gmail.com | Dale R. Coburn III, Esq., Wolfe Stevens PLLC, 5800 Overseas Highway, Suite 3, Marathon, FL 33050; coburn@marathonlaw.com |
| Horton S. Johnson, individually | 2523 Kissam Court, Belle Isle, FL 32809; wjohnsonbbf@gmail.com | Matthew A. Leibert, Esq., 5782A S. Semoran Blvd., Orlando, FL 32822; leibert@urbanthier.com |
| Horton S. Johnson, as trustee of the Horton S. Johnson Revocable Trust dated August 3, 2012 | 2523 Kissam Court, Belle Isle, FL 32809; wjohnsonbbf@gmail.com | Matthew A. Leibert, Esq., 5782A S. Semoran Blvd., Orlando, FL 32822; leibert@urbanthier.com |
| Horton S. Johnson, as successor trustee of the Tiered Land Trust | 2523 Kissam Court, Belle Isle, FL 32809; wjohnsonbbf@gmail.com | Matthew A. Leibert, Esq., 5782A S. Semoran Blvd., Orlando, FL 32822; leibert@urbanthier.com |
| Homemakers Real Estate, LLC (Lara Roeske Fernandez, Chapter 11 Trustee) | Lara Roeske Fernandez Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., 101 East Kennedy Boulevard, Suite 2700, Tampa, FL 33602; lfernandez@trenam.com | Rhys P. Leonard, Esq. and Anthony P. Marzocca, Esq.<br>Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., 101 East Kennedy Boulevard, Suite 2700, Tampa, FL 33602;<br>rleonard@trenam.com<br>amarzocca@trenam.com |
| Sherwood Construction, Inc., debtor-in-possession | c/o Tiered Capital, Inc., Attn: Horton S. Johnson, Director, 4409 Hoffner Avenue, Suite 348, Orlando, FL 32812; wjohnsonbbf@gmail.com | None |
| Canaveral Crossroads, LLC, debtor-in-possession | Attn: Ross Johnston, Reorganization Manager, P.O. Box 1298, Winter Park, FL 32790; crossing2026@gmail.com | Christopher L. Smith, Esq., Fromang & Smith, P.A., 4767 New Broad Street, Orlando, FL 32814; chris@fromangsmith.com |

| Party | Notice address and email | With a copy to |
|---|---|---|
| Tiered Capital, Inc. | Attn: Horton S. Johnson, Director, 4409 Hoffner Avenue, Suite 348, Orlando, FL 32812; wjohnsonbbf@gmail.com | Christopher L. Smith, Esq., Fromang & Smith, P.A., 4767 New Broad Street, Orlando, FL 32814; chris@fromangsmith.com |
| Florida Space Coast Resorts, Inc. | c/o Tiered Capital, Inc., Attn: Horton S. Johnson, Director, 4409 Hoffner Avenue, Suite 348, Orlando, FL 32812; wjohnsonbbf@gmail.com | None |
| Cape Crossing Vacation Rentals, LLC | Attn: Horton S. Johnson, Trustee of the Tiered Land Trust, 4409 Hoffner Avenue, Suite 348, Orlando, FL 32812; wjohnsonbbf@gmail.com | Matthew A. Leibert, Esq., 5782A S. Semoran Blvd., Orlando, FL 32822; leibert@urbanthier.com |
| Yaniv Amar, individually | 19589 NE 10th Avenue, Miami, FL 33179; yamarllc@gmail.com | None |
| A Marine, Inc. | Attn: Yaniv Amar, President, 19589 NE 10th Avenue, Miami, FL 33179; yamarllc@gmail.com | None |
| IMQA Investments, Incorporated | Attn: Deborah Milotte, President, 4409 Hoffner Avenue, Suite 348, Orlando, FL 32812; contact@imqainvestments.com; deborah@milotte.com | Lawrence M. Kosto, Esq., Kosto & Rotella, P.A., P.O. Box 113, Orlando, FL 32802 |
| Holly Bluff Marina, Inc. | Attn: Horton S. Johnson, Trustee of the Tiered Land Trust, 4409 Hoffner Avenue, Suite 348, Orlando, FL 32812; wjohnsonbbf@gmail.com | Matthew A. Leibert, Esq., 5782A S. Semoran Blvd., Orlando, FL 32822; leibert@urbanthier.com |
| Recycled Group of South Carolina, LLC | Attn: Horton S. Johnson, Trustee of the Tiered Land Trust, 4409 Hoffner Avenue, Suite 348, Orlando, FL 32812; wjohnsonbbf@gmail.com | Matthew A. Leibert, Esq., 5782A S. Semoran Blvd., Orlando, FL 32822; leibert@urbanthier.com |
| Frank Amodeo, individually | 1311 Hoffner Avenue, Orlando, FL 32809 | Brian Horwitz, Esq., counsel for his guardians, 5019 Saint Denis Ct, Belle Isle, FL 32812 |
| Global Settlement Trust | Attn: Horton S. Johnson, Trustee, 7707 S. Orange Avenue, P.O. Box 590073, Orlando, FL 32859; wjohnsonbbf@gmail.com | None |