FILED ORL INTAKE - USBC
16 NOV 2026 PM2:53

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re: Case No. 6:25-bk-05570-GER

HOMEMAKERS REAL ESTATE, LLC, Chapter 11

Debtor.
_________________________________/

# FRANK AMODEO'S HIGHLIGHT SHEET COMPARING HIS THIRD AMENDED PLAN WITH THE TRUSTEE'S PLAN AND WITH CHAPTER 7

On November 16, 2026, I filed my Third Amended Plan of Reorganization and my Third Amended Disclosure Statement. (Docs. ___, ___). The Plan and the Disclosure Statement are complicated. I file this highlight sheet simply to assist this court and the parties in comparing my plan with the Trustee's plan and with Chapter 7. The highlight sheet adds nothing to the Disclosure Statement and changes nothing in the Disclosure Statement or the Plan. The highlight sheet does not ask any creditor to accept or reject a plan.

## 1. The choice in one paragraph

Two plans are before this court. Mine keeps the Cape Crossing units renting, pays the non-Insider unsecured creditors in full in cash, pays every secured creditor its allowed claim, and sells units one at a time at a capped cost. The Trustee's plan sells all twenty-six units and pays unsecured creditors whatever is left. Both plans are better than Chapter 7, where the secured creditors finish their foreclosures in a quick liquidation and the Trustee herself projects no distribution to unsecured creditors. (Doc. 434 at 18, 32). Of the three, my plan costs the least to carry out.

## 2. The three outcomes side by side

| | My Third Amended Plan | The Trustee's Plan | Chapter 7 |
|---|---|---|---|
| **The Resort** | The units keep renting as a going concern. A third party acquires the Reorganized Debtor and the Crossroads assets and combines them. (Plan §§ 6.1, 6.2). | All twenty-six units are sold through brokers or an auctioneer, and the Debtor goes out of business. (Doc. 434 at 21, 31). | The secured creditors already hold relief from the stay and complete their foreclosures. (Doc. 434 at 32). |
| **Non-Insider unsecured** | Paid 100 percent, in cash, from the $850,000 Settlement | A pro rata share of "the remaining unencumbered | The Trustee projects no distribution. (Doc. |

| | My Third Amended Plan | The Trustee's Plan | Chapter 7 |
|---|---|---|---|
| **creditors** | Payment when the Plan takes effect and the payment arrives. (Plan §§ 4.7, 6.4). | funds of the Estate, if any." The Trustee cannot estimate the amount or the timing. (Doc. 434 at 18, 25). Better than Chapter 7. | 434 at 18). |
| **Secured creditors** | Each keeps its lien and is paid its allowed claim in full: 6 percent over 360 months from February 1, 2027, two-year balloon on February 1, 2029. When a unit sells, the lienholder receives a $350,000 release price, or $227,000 on a Tamamoi or Carton unit. (Plan §§ 4.1, 6.12). | Each receives the net proceeds of its units after commissions and any carve-out or surcharge. Any shortfall becomes an unsecured deficiency. (Doc. 434 at 22–23). Better than Chapter 7. | Foreclosure sale. At auction value every collateral pool is under water. (Disclosure Statement Ex. C). |
| **Property taxes** | Paid in full at the statutory rate, in installments from February 1, 2027, finished by January 2031. (Plan § 4.5). | Paid from each closing. (Doc. 434 at 22). | Paid from the foreclosure sale ahead of the mortgage, with interest still running until then. |
| **Mr. Johnson's $1,297,493.97 claim** | Paid only after the non-Insider creditors are paid in full. (Plan §§ 4.8, 6.6). | Shares the unsecured pool with every other unsecured creditor; her plan has no Insider class. (Doc. 434 at 25). | Shares the unsecured pool, if there is one. |
| **The owner** | Keeps his interests; receives nothing on them until every senior class is paid. (Plan § 4.9). | Receives nothing unless every creditor is first paid in full. (Doc. 434 at 25–26). | Receives nothing. |
| **Sales of units** | From January 2027, one condominium is listed at $500,000 and one townhome at $450,000. At least one unit stays listed unless the prior quarter's operations covered every Plan payment. (Plan § 6.12). | All twenty-six units, individually, in groups, or as a portfolio, as the Trustee decides. (Doc. 434 at 21). | Twenty-six units reach the same small market at once, at forced-sale prices. |
| **Cost of each sale** | Capped at 5 percent of the price, all in. (Plan § 6.12). | Brokers' or auctioneers' commissions, the carve-out or surcharge, and the fees of the Trustee and her professionals. No cap is stated. (Doc. 434 at 22–23). | A Chapter 7 trustee's commission and professionals, plus each lender's foreclosure costs. |
| **The Estate's claims** | A Recovery Trust, with Ms. Fernandez as trustee, pursues every claim the settlement does not release, including the claims against Mainstreet, Tamamoi, and Carton. (Plan §§ 6.3, 6.10). | The Trustee keeps the claims. She has said she will not raise usury against Tamamoi and Carton (Docs. 424, 425 n.2); nor will she seek to recover the $1,166,008.69 taken by | A Chapter 7 trustee holds the claims and takes a commission on what they bring. |

| | My Third Amended Plan | The Trustee's Plan | Chapter 7 |
|---|---|---|---|
| | | Tamamoi and its agent from the Debtor. | |

## 3. Why my plan costs less

No trustee shares in the sale proceeds. A trustee's compensation in a Chapter 7 or Chapter 11 case is measured by the money the trustee disburses, on a sliding scale that reaches 3 percent of everything above $1,000,000. 11 U.S.C. § 326(a). Under the Trustee's plan and in Chapter 7, the proceeds of twenty-six units pass through a trustee's hands. Under my plan, the Chapter 11 Trustee's administration ends on the Effective Date, the Reorganized Debtor makes the payments, and the Recovery Trustee's fee for any sale comes out of the 5 percent cap.

No foreclosure costs. In a foreclosure each lender adds its attorney's fees, filing fees, service and publication costs, and the clerk's sale fee to its debt, and the estate's creditors bear them. My plan pays each lender on its lien and forbids a foreclosure sale except through a receiver after an uncured default. (Plan §§ 6.13, 8.4).

No court expense for each sale. A sale under my plan needs no further order of this court. (Plan § 6.12(d)). Every sale outside a plan requires a motion, notice, a hearing, and the professional time that goes with them.

The cost of this case so far shows the difference. In five months, from June 11 through October 31, 2026, the Trustee, her counsel, and her accountant applied for $382,534.13, and a prior administrative claim was allowed at $30,000. (Docs. 455, 462, 463, 464). Those claims are paid first, from the same $850,000 that would otherwise reach creditors. A liquidation of twenty-six units keeps that meter running until the last unit closes.

## 4. What it normally costs to sell off property

These are the costs that ordinarily come out of a liquidation sale before any creditor is paid. My plan caps the costs of sale at 5 percent and avoids the rest.

| Cost | In a liquidation or foreclosure | Under my plan |
|---|---|---|
| **Broker's commission** | A percentage of the price on each unit sold. | Inside the 5 percent cap. |
| **Auctioneer's commission and expenses** | The auctioneer's fee, advertising, and often a buyer's premium that lowers what a bidder will pay. | No auction. |
| **Closing costs** | Title search and title insurance, closing-agent fees, recording fees, and prorated taxes and assessments. | Customary closing costs only, inside the 5 percent cap. |
| **Transfer taxes** | Florida documentary stamp tax on each deed. A transfer under a confirmed plan is exempt, and a Chapter 7 sale is not. 11 U.S.C. § 1146(a). | Exempt under the confirmed Plan. |
| **Trustee's commission** | Up to the sliding scale of 11 U.S.C. § 326(a) on every dollar disbursed, including sale proceeds paid to lenders. | None on sale proceeds. |
| **Professional fees** | The fees of the trustee's lawyers and accountants | No motion is needed for a |

| Cost | In a liquidation or foreclosure | Under my plan |
|---|---|---|
| | for each sale motion, objection, and closing. | sale. |
| **Foreclosure costs** | Each lender's attorney's fees, court costs, publication, and the clerk's sale fee, added to its debt. | No foreclosure. |
| **Carrying costs during the sale** | Association dues, about $26,000 a month (Oct. 14, 2026 Hr'g Tr. 7:5–7), insurance, utilities, and property taxes that accrue at 18 percent until paid. | Paid from rents while the units keep operating. |
| **Forced-sale discount** | Twenty-six units offered at once bring less per unit. Exhibit C values the units at about $9.5 million at auction against $11.1 million to $17.3 million as operating property. | Units are sold one at a time, at a listed price. |

## 5. What to weigh against it

My plan pays the secured creditors from rents, and the rents the Trustee reports today are far below my projections. (Doc. 399). I believe the units can earn more than her reports show. If I am wrong, the Plan keeps selling units, one at a time, until operations cover every payment or every claim is paid. The risks are stated in full in Section 5 of the Disclosure Statement.

On each measure in this sheet, the Third Amended Plan returns more to creditors, at less cost, than the Trustee's plan, and either plan returns more than Chapter 7.

Respectfully submitted this 16th day of November, 2026.

Frank L. Amodeo
Pro se
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32801@gmail.com

## CERTIFICATE OF SERVICE

I certify that on November 16, 2026, I filed this highlight sheet in paper form with the clerk of court. When the clerk dockets this highlight sheet, the CM/ECF system will serve the highlight sheet electronically on every party registered to receive notice in this case.

Dated: November 16, 2026

Frank L. Amodeo
Pro se