**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

In re:

HOMEMAKERS REAL ESTATE, LLC,

Case No. 6:25-bk-05570-GER
Chapter 11

Debtor.
______________________________________/

# TRUSTEE'S APPLICATION TO EMPLOY AUCTIONEER

Lara Roeske Fernandez, the Chapter 11 Trustee (the "Trustee"), by and through undersigned counsel, and pursuant to 11 U.S.C. § 327, files this Application to Employ Auctioneer (the "Application") and states as follows:

## Background

1. This case was commenced on September 2, 2025 (the "Petition Date") by the filing of an involuntary petition against Homemakers Real Estate, LLC (the "Debtor").

2. On June 12, 2026, the Court entered its *Order Approving Appointment of Chapter 11 Trustee*, approving the appointment of Lara Roeske Fernandez as Chapter 11 Trustee. Doc. No. 252. The Trustee continues to serve in that capacity.

3. In conjunction with this Application, the Trustee and Mainstreet Community Bank of Florida ("Mainstreet") filed a *Joint Motion for Entry of Orders (I) Approving Bidding and Notice Procedures; (II) Scheduling a Bid Deadline, Auction, and Final Sale Hearing; (III) Authorizing the Sale of Substantially All of the Mainstreet Collateral Free and Clear of Liens, Claims, Encumbrances, and Interests; (IV) Deeming Mainstreet's Claims Allowed; and (V) Granting Related Relief* (the "Sale Motion"). The purpose of the Sale Motion is to facilitate a sale of the seventeen condominium and townhome units located in the Cape Crossing community that

are collateral for certain of Mainstreet's loans and are currently owned by the Debtor (those units, the "Mainstreet Collateral").

4. The Trustee has determined in the exercise of her business judgment that it is in the best interest of the estate to sell the Mainstreet Collateral pursuant to the terms of the Sale Motion and that she requires the assistance of an auctioneer, experienced in real estate transactions, to market and sell the Mainstreet Collateral.

5. The Trustee and Mainstreet have selected Moecker Realty Inc. d/b/a Moecker Brokers ("Moecker") pursuant to the terms of that certain Listing Agreement (the "Agreement"), a true and correct copy of which is attached as **Exhibit A**.

6. Moecker has been selected because it has considerable experience in marketing of assets of a type similar to the Mainstreet Collateral and the Trustee believes that Moecker is well qualified to represent the estate in the marketing and sale of the Mainstreet Collateral.

7. The Auctioneer has agreed to a marketing fee of $35,000, payable by Mainstreet, in the event that Mainstreet is the successful bidder on the Mainstreet Collateral following an allowed credit bid.

8. As compensation for Moecker's services, in the event that a third-party other than Mainstreet is the successful bidder (as set forth in the companion Sale Motion), Moecker has agreed to a five percent (5%) buyer's premium paid by the purchaser in addition to the purchase price.

9. Moecker agrees and acknowledges that no compensation will be paid absent court approval of the sale of the Mainstreet Collateral.

10. To the Trustee's knowledge, Mocker represents no interest adverse to the estate as supported by the declaration attached to this application and has no connection with the debtor,

creditors, or any other party in interest, the United States trustee, or any person employed in the office of the Unite States Trustee.

11. The declaration of Will Reynoso is attached as **Exhibit B**.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order authoring the employment of Moecker Realty Inc. d/b/a Moecker Brokers as auctioneer for the Trustee with respect to the Mainstreet Collateral pursuant to the terms set forth herein.

Dated: November 23, 2026

Respectfully submitted,

/s/ Anthony P. Marzocca
RHYS P. LEONARD
Florida Bar No.: 59176
rleonard@trenam.com
ANTHONY P. MARZOCCA
Florida Bar No. 1068857
amarzocca@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, P.A.
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
Tel: (813) 223-7474 | Fax: (813) 229-6553
*Counsel to Chapter 11 Trustee*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 23, 2026, a true and correct copy of the foregoing was served (i) to all parties receiving CM/ECF notification via the Court's CM/ECF system; (ii) by email to the Office of the United States Trustee, Audrey.M.Aleskovsky@usdoj.gov and the United States Department of Justice, Christopher.Emden@usdoj.gov; (iii) by email to those parties having filed claims in this case that included email addresses as a courtesy only:

Frank L. Amodeo (Claim 1)
Flahome32801@gmail.com

WM Holdings Group LLC (Claim 2)
mcflynnjr@gmail.com

CTO Holdings Inc. (Claim 3)
contact@ctoholdings.com
lkosto@kostoandrotella.com

IMQA Investments Incorporated (Claim 4)
contact@investments.com
lkosto@kostoandrotella.com

Horton Johnson (Claim 5)
wjohnsonbbf@gmail.com
Michael.paasch@dinsmore.com
leibert@urbanthier.com

Cape Crossing Townhomes Homeowners Association Inc. (Claim 6)
jcrowder@farolaw.com

Cape Crossing Condominium Association, Inc. (Claim 7)
jcrowder@farolaw.com

Keys Funding LLC – 2024 (Claims 8-9)
tburke@tcmfund.com

Brevard County Tax Collector
(Claims 10-17, 20-27, 32-62)
Alicia.foley@brevardtc.com
HMitchell@whww.com

ATCF II Florida-A LLC (Claim 18)
florida@alternacap.com

FIG 20, LLC FBO SEC PTY (Claim 19, 28)
AR@figadvisors.com

Community RED CO (Claims 29-31)
jpico@jplinv.com

Mainstreet Community Bank of Florida, N.A. (Claims 63-64)
jluna@lathamluna.com

Tamamoi LLC (Claim 65)
temamoillc@gmail.com
ewulff@mtglaw.com

The Carton Family Trust (Claim 66)
carton@sbcglobal.net
mwulff@mtglaw.com

Pedixon LLC (Claim 67)
jeff@bransonlaw.com

ZPD LLC (Claim 68)
jeff@bransonlaw.com

IPFS Corporation (Claim 70)
Lisa.chandler@ipfs.com

Tiered Capital, Inc. (Claim No. 71)
wjohnsonbbf@gmail.com

and (iv) by U.S. Mail, postage prepaid to (x) those parties on the Creditors Who Have Filed Claims mailing matrix attached who have not received service by CM/ECF (indicated as the entries without any strike-through text) and (y) the following parties:

Brennan, Manna & Diamond, P.L.
c/o BMD Florida Service LLC
5210 Belfort Road, Suite 400
Jacksonville, FL 32256

Paul Rene, Jr.
116 S. Magnolia Ave., Suite 3E
Ocala, FL 34471

*/s/ Anthony P. Marzocca*
Anthony P. Marzocca

Label Matrix for local noticing
113A-6
Case 6:25-bk-05570-GER
Middle District of Florida
Orlando
Mon Nov 23 11:25:31 EST 2026

ATCF II Florida-A LLC
PO Box 69239
Baltimore, MD 21264-9239

~~Brevard County Tax Collector~~
~~PO Box 2500~~
~~Titusville, FL 32781-2500~~

~~CAPE CROSSING CONDOMINIUM ASSOCIATION, INC.~~
~~c/o Faro & Crowder, P.A.~~
~~700 N. Wickham Road~~
~~Suite 205~~
~~Melbourne, FL 32935-8840~~

COMMUNITY RED CO
8724 SW 72 ST NO 382
MIAMI, FL 33173-3512

~~CTO Holdings Inc.~~
~~4409 Hoffner Avenue~~
~~Orlando, FL 32812-2331~~

~~Cape Crossing Townhomes Homeowners Associati~~
~~c/o Faro & Crowder, P.A.~~
~~700 N. Wickham Road~~
~~Suite 205~~
~~Melbourne, FL 32935-8840~~

FIG 20, LLC FBO SEC PTY
PO Box 12225
Newark, NJ 07101-3411

Frank L. Amodeo
1311 Hoffner Ave
Orlando, FL 32809-3515

~~Horton Johnson~~
~~10226 Curry Ford Road~~
~~Suite 107 PMB 1036~~
~~Orlando, FL 32825-8735~~

~~Horton Johnson~~
~~c/o Michael A. Paasch, Esq.~~
~~Dinsmore & Shohl LLP~~
~~225 E. Robinson St., Suite 600~~
~~Orlando FL 32801-4334~~

~~IMQA Investments Incorporated~~
~~4409 Hoffner Avenue, #348~~
~~Orlando, FL 32812-2331~~

IPFS Corporation
30 Montgomery Street
Suite 501
Jersey City, NJ 07302-3821

KEYS FUNDING LLC - 2024
PO Box 67513
Newark, NJ 07101-8009

~~Mainstreet Community Bank of Florida, N.A.~~
~~c/o Latham, Luna, Eden & Beaudine, LLP~~
~~201 S. Orange Ave.~~
~~Suite 1400~~
~~Orlando, Florida 32801-3483~~

~~Paul Rene Jr.~~
~~116 Magnolia Avenue, Suite 3E~~
~~Ocala, FL 34471-1178~~

~~Pedixon LLC~~
~~c/o Jeffrey S Ainsworth~~
~~Branson Ainsworth PLLC~~
~~1501 E Concord Street~~
~~Orlando FL 32803-5411~~

TIERED CAPITAL, INC.
4409 Hoffner Avenue #348
Orlando, FL 32812-2331

~~Tamamoi LLC~~
~~5060 SW Philomath BLVD #516~~
~~Corvallis, OR 97333-1044~~

~~The Carton Family Trust~~
~~c/o Peter M. Carton Trustee/ Carton Fami~~
~~12910 Lomas Verdes Dr.~~
~~Poway, CA 92064-1250~~

WM Holdings Group LLC
14556 Saint Georges Hill Drive LLC
Orlando, FL 32828-8035

~~ZPD LLC~~
~~c/o Jeffrey S Ainsworth~~
~~Branson Ainsworth PLLC~~
~~1501 E Concord Street~~
~~Orlando FL 32803-5411~~

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

~~(d)CTO Holdings, Inc.~~
~~4409 Hoffner Avenue~~
~~Orlando, FL 32812-2331~~

End of Label Matrix
Mailable recipients 21
Bypassed recipients 1
Total 22

# EXHIBIT A

MOECKER BROKERS
COMPLEX BUSINESS & REAL ESTATE SOLUTIONS

# Exclusive Right of Sale Listing Agreement For Commercial Property

**This is a legal and binding contract on all parties hereto, including their heirs, legal representatives, successors and assigns and if it is not fully understood, OWNER should seek competent legal advice.**

**1.** This contract made and entered into by and between: Lara Roeske Fernandez, as Chapter 11 Trustee of Homemakers Real Estate, LLC ("OWNER" which term shall include singular and plural) and brokerage Moecker Realty, Inc. d/b/a Moecker Brokers ("BROKER") OWNER hereby gives BROKER for a period of time commencing the date of Court approval, and terminating the 31 day of March, 2027, or any renewal hereof ("Termination Date") THE EXCLUSIVE RIGHT AND AUTHORITY to find a purchaser of the real property and/or inventory or assets, arrange a merger, lease, lease with option to purchase, rent or exchange for the herein described property and personalty described in Paragraph 1(A). Upon full execution of a contract for sale and purchase of the Property, all rights and obligations of the Agreement will automatically extend through the date of the actual closing of the sales contract.

A. Description of real property:

Street address: 17 Units, Cape Crossing, Merritt Island, Brevard County, FL 32953 (see Legal Description)

Legal Description: Cape Crossing, a Condominium, Units 103, 104, 107, 202, 203, 205, 207, 307, 407 and 507; Cape Crossing Townhomes, Building #2 Units 101 and 102, Building #5 Units 101 and 103, Building #7 Units 101 and 103, and Building #8 Unit 101; Brevard County, FL. Being the Mainstreet Collateral (Claims 63-1 and 64-1), as more fully described in Exhibit A to the Joint Motion to Approve Bidding Procedures and Sale, Case No. 6:25-bk-05570-GER.

B. Description of personal property (including machinery, inventory, supplies and equipment): Upon the following price and terms: All furniture, furnishings, fixtures, appliances and equipment located in the Units and used in the vacation-rental operations, conveyed as-is, where-is with the real property. Offered as a portfolio; the Trustee may accept bids for one or more Units as provided in the Bidding Procedures.

Price: $4,000,000.00

Terms: (include special financing terms here) All cash. Auction under Court-approved Bidding Procedures; price shown is the minimum bid. No financing, inspection or due diligence contingencies.

C. Mortgage Information: existing mortgage with $__________ Balance; _____%, Payable $ __________, Per Month P.I. $ __________ Approximately _____ years to run.

D. Interest on encumbrances, taxes, insurance premiums and rents shall be adjusted pro rata at the date of closing. Improvement liens, if any, will be discharged by the OWNER. The usual and customary time to be allowed for examination of title and closing of the transaction. Personal property to be included in the purchase price shall include all fixed equipment, and plants and shrubbery now installed on said property. It is understood that the sale is to include: ☐ the goodwill and name as a going concern; ☐ furniture, fixtures and equipment as per attached inventory; ☐ advertising; contract rights; ☐ leases; ☐ licenses; ☐ rights under any agreement for interests except as stated herein. **SELLER** shall convey title to personal property assets by Bill of Sale Absolute giving good marketable title unless the sale is a secured transaction, in which case a Security agreement will be required by the purchaser. The OWNER agrees at its expense to provide (a) preparation of and delivery to the Purchaser of a warranty deed or other Trustee's Deed conveying a marketable title free and clear of all liens except encumbrances of record assumed by the Purchaser as part of the purchase price (public utility easements); (b) abstract of title or binder for marketable title insurance policy; (c) documentary stamps for the deed; (d) **SELLER**'s attorney fees; (e) recording fee for satisfaction of existing mortgage is paid off.

**2. BROKER agrees:**

A. To process Property through Multiple Listing Services.

B. To inspect and become familiar with the Property and promote its sale;

C. To present all offers and counter-offers in a timely manner regardless of whether the Property is subject to a contract for sale;


©2026 Florida Realtors®

D. To advertise the Property as Broker deems advisable including advertising the Property on the Internet unless limited in 2(d)(i) or 2(d)(ii) below. The **Seller** and **Broker** agree to adhere to each local MLS's policies and further agree to execute any applicable forms as necessary.

(**SELLER** opt-out)(Check one if applicable)

☐ (i) Display the Property on the Internet except the street address of the Property shall not be displayed on the Internet.

☐ (ii) **SELLER** does not authorize Broker to display the Property on the Internet.

**SELLER** understands and acknowledges that if **SELLER** selects option (ii), consumers who conduct searches for listings on the Internet will not see information about the listed property in response to their search.

_______/________ **Initials of SELLER**.

E. Virtual Office Websites: Some real estate brokerages offer real estate brokerage services online. These websites are referred to as Virtual Office Websites ("VOW"). An automated estimate of market value or reviews and comments about a property may be displayed in conjunction with a property on some VOWs. Anyone who registers on a Virtual Office Website may gain access to such automated valuations or comments and reviews about any property displayed on a VOW. Unless limited below, a VOW may display automated valuations or comments/reviews (blogs) about this Property.

☐ **SELLER** does not authorize an automated estimate of the market value of the listing (or hyperlink to such estimate) to be displayed in immediate conjunction with the listing of this Property.

☐ **SELLER** does not authorize third parties to write comments or reviews about the listing of the Property (or display a hyperlink to such comments or reviews) in immediate conjunction with the listing of this Property.

F. To the extent not in conflict with BROKER'S duties under paragraph 6 below, to furnish information requested by another agent or licensed real estate broker and to assist cooperating broker in closing transaction on the Property when requested.

G. To take all reasonable precautions to prevent damage in the process of showing Property or permitting others to show Property, but BROKER accepts no responsibility for loss or damage; and

H. To ☒ utilize ☐ not utilize the name of the OWNER in connection with marketing or advertising of the Property either before or after sale;

I. To represent the OWNER, and thereby is authorized to accept, receipt for and hold all monies paid or deposited as a binder or deposit on the purchase of the Property, and the duties of the BROKER relative thereto shall be in accordance with the laws of the State of Florida and regulations of the Florida Real Estate Commission; and

**3. OWNER agrees:**

A. **Brokerage commissions are not set by law and are fully negotiable.**

B. To pay the BROKER compensation in accordance with the terms of this Agreement set forth in paragraph 4 below;

C. To give BROKER permission to pay cooperating brokers, except when not in OWNER'S best interest: ☐ and to offer compensation in the amount of _____________% of the purchase price or $_____________ to cooperating brokers, who represent the interest of the **BUYER**, and not the interest of OWNER in a transaction; ☐ No compensation will be offered to buyer's broker.

D. In the event of an exchange, to permit BROKER to represent all parties and collect compensation or commissions from them. BROKER is authorized to pay other brokers such compensation or commissions in any manner acceptable to brokers.

E. To pay compensation due BROKER if Property, or any interests therein is sold, leased or contracted to be sold or leased or otherwise transferred within 90 days after Termination Date to anyone to whom the Property was submitted by or through the efforts of any BROKER or the OWNER before the Termination Date. However, the obligation to pay such compensation to BROKER shall cease if a bona fide Exclusive Right of Sale Contract is entered into after Termination Date with another licensed BROKER and a sale, lease, exchange or contract therefor, of the Property is made during the term thereof;

F. To notify the BROKER in writing before leasing, mortgaging or otherwise encumbering the Property and to provide details of any such encumbrances;

G. To refer immediately to BROKER all inquiries relative to the purchase or leasing of the Property.

H. To warrant accuracy of information set forth herein and on the data sheets, exhibits and addenda attached hereto and to indemnify and save harmless BROKER and those relying thereon for damages resulting from errors contained therein;

I. To furnish BROKER with keys to the Property and make the Property available for BROKER to show during reasonable hours;

J. To pay any applicable sales tax when due;

K. To obtain any information relating to the present mortgage or mortgages on the Property including existing balance, interest rate, monthly payment, balance in escrow and payoff amount;

L. To authorize BROKER to place "For Sale", "Under Contract" OR "Sale Pending" signs upon the Property and to remove the signs upon termination of this Agreement or sale of the Property; and


©2026 Florida Realtors®

Serial#: **032184-400179-4420585**

Form Simplicity

M. To otherwise cooperate with the BROKER in carrying out the purpose of this Contract.

N. Provide all reasonable financial information, including but not limited to balance sheet, etc.

4. **Compensation: Brokerage Commissions are not set by law and are fully negotiable.** OWNER agrees to pay BROKER as follows, if BROKER, any agent of BROKER or a **BUYER**'s Broker procures a **BUYER** who is ready, willing, and able to purchase, lease, or exchange the property, and/or inventory of the OWNER, and/or assets of the business whichever is applicable, on the terms of this Contract or any other terms acceptable to OWNER. The stated compensation shall be paid to the BROKER in the event of a sale, exchange, or transfer of any interest including stocks or shares in the Property during the term of this contract, whether such transaction, sale or exchange be accomplished by the BROKER or any other person or entity including OWNER: (complete whichever fee arrangements apply):

A. (CHECK ONE): ☒ 5 % of gross sales price, or ☐ ________% of gross sales price plus $________________, or ☐$________________ including fees BROKER may pay to cooperating brokers. OWNER shall pay this fee at the time, and from the proceeds, of closing. If OWNER transfers the Property for nominal consideration, OWNER shall pay $35,000.00 on the date OWNER transfers title.

B. In the event the Property is leased during the term of this Agreement, OWNER shall pay to BROKER a leasing fee of $_______________ or ________% of gross lease amounts. The fee shall be paid to BROKER when BROKER, OWNER or anyone working by or through BROKER produces a tenant acceptable to OWNER. If the tenant purchases the Property at any time, even if such a purchase is subsequent to the expiration date of this Agreement, BROKER shall be paid the stated compensation set forth in Paragraph 4A at the time of closing.

C. In the event that deposit(s) be retained, ________ % (50% if left blank) thereof, but not exceeding the compensation provided above, shall be paid to the BROKER as full consideration for BROKER(s) services, including costs expended by BROKER, and the balance shall be paid to OWNER. If the transaction shall not be closed because of refusal or failure of OWNER to perform, the OWNER shall pay the said compensation in full to BROKER upon demand.

5. **OWNER understands** that this Contract does not guarantee the sale of the Property but that it does assure OWNER that BROKER will make earnest and continued effort to sell the Property until this Contract is terminated.

**6. (CHECK ONE) OWNER ☐ DESIRES ☒ DOES NOT DESIRE UTILIZATION OF A LOCKBOX SYSTEM. IN THIS REGARD, OWNER HAS BEEN INFORMED THAT THROUGH THE USE OF A LOCKBOX SYSTEM, THE PROPERTY MAY BE MORE READILY SHOWN TO PROSPECTIVE BUYERS, BUT THAT PERSONAL PROPERTY OF OWNER, MAY, THEREFORE, BE MORE SUSCEPTIBLE TO THEFT OR DAMAGE. OWNER AGREES THAT THE LOCKBOX, IF UTILIZED, WILL BE FOR THE BENEFIT OF OWNER AND RELEASES BROKER AND THOSE WORKING BY OR THROUGH BROKER, AND THE BROKER(S) LOCAL BOARD(S) AND/OR ASSOCIATIONS OF REALTORS FROM ANY LIABILITY AND RESPONSIBILITY IN CONNECTION WITH ANY LOSS THAT MAY OCCUR. THE BROKER ADVISES AND REQUESTS THE OWNER TO SAFEGUARD OR REMOVE ANY VALUABLES NOW LOCATED ON THE PROPERTY AND TO VERIFY THE EXISTENCE OF OR OBTAIN PROPER PROPERTY INSURANCE. SHOULD A TENANT BE IN THE PROPERTY, THE SELLER SHOULD NOTIFY THE TENANT IN WRITING OF THE USE OF A LOCKBOX.**

7. **OWNER authorizes BROKER**, upon execution of a contract for sale and purchase, to notify the Multiple Listing Service of the pending sale and after closing of the sale to disclose sale information including the sales price to the Multiple Listing Service, other REALTORS and appraisers.

8. In the event any litigation arises out of this Contract, the prevailing party shall be entitled to recover reasonable attorney fees and costs.

9. **TERMINATION:** This Contract shall terminate as of the Termination date unless sooner terminated as provided below:

A. If OWNER decides, because of a bona fide change in circumstances, not to sell the Property, this Contract shall be conditionally terminated as of the date OWNER executes a Withdrawal Agreement and pays BROKER a cancellation fee of $_______________. If OWNER contracts for sale to anyone after the agreed early termination date but on or before the original Termination Date, then the early termination provided by this paragraph shall be voidable by BROKER and OWNER shall pay BROKER the compensation stated in paragraph 4, less the cancellation fee paid pursuant to this paragraph.

B. If at any time during the term of this Contract, BROKER determines that the proceeds from the sale of the Property which OWNER would reasonably expect to receive will not be sufficient to pay the compensation due BROKER, then this Contract may be terminated by BROKER upon three days written notice to OWNER.

10. **MANDATORY ARBITRATION: ATTORNEYS' FEES:** All claims, disputes, and other matters in question between the parties arising out of or relating to this Contract, or any addendum or addition, SHALL BE DECIDED BY MANDATORY BINDING ARBITRATION in accordance with the Florida Arbitration Code, Chapter 682, Florida Statutes. Each party shall select any arbitrator and the two arbitrators so chosen shall choose a third arbitrator. The three arbitrators so chosen shall hear and determine the matter. THIS AGREEMENT TO ARBITRATE SHALL BE SPECIFICALLY ENFORCEABLE UNDER THE FLORIDA



*The Parties acknowledge this form should not be used to share offers of compensation to buyer brokers or other buyer representatives via any field in the Multiple Listing Service.*


©2026 Florida Realtors®



Form Simplicity

ARBITRATION CODE, and judgment upon the award rendered by the ARBITRATORS may be entered by the Court having jurisdiction thereof. In connection with any such arbitration or litigation, the prevailing party shall be entitled to recover all fees and costs incurred including reasonable attorneys' fees. OWNER has been advised and consents to permit BROKER to file a lien against the Property, if applicable, for unpaid real estate commissions, pursuant to Section 475.42(1)(i), Florida Statutes, which lien shall be released only at such time as the full commission and all other sums due under this Agreement, including interest, attorneys fees and costs, have been paid in full.

**11. COMMERCIAL LIEN ACT DISCLOSURE:** The Florida Commercial Real Estate Sales Commission Lien Act provides that when a BROKER has earned a commission by performing licensed services under a brokerage agreement with you, the BROKER may claim a lien against your net sales proceeds for the BROKER'S commission. The BROKER'S lien rights under the act cannot be waived before the commission is earned.

**12. MISCELLANEOUS:** This Agreement is binding on BROKER's and OWNER's heirs, personal representatives, administrators, successors and assigns. BROKER may assign this Contract to another listing office. This Contract is the entire agreement between BROKER and OWNER. No prior or present agreements or representations shall be binding on BROKER or OWNER unless included in this Contract. Signatures, initials and modifications communicated by facsimile will be considered as originals. The term "**BUYER**" as used in this Contract includes **BUYER**s, tenants, exchangors, optionees and other categories of potential or actual transferees.

**13. ADDITIONAL TERMS** Subject to Bankruptcy Court approval (Case No. 6:25-bk-05570-GER) and the Court-approved Bidding Procedures, which control. Sale under 11 U.S.C. 363, free and clear, as-is; $100,000 deposit; closing by 12/31/2026 unless extended. Mainstreet may credit bid up to $5,100,000 per the Bidding Procedures. COMPENSATION: (1) If a third party closes (Successful Bidder, Back-Up Bidder or buyer of any Units), the Para. 4A fee is a 5% buyer's premium paid by that buyer at closing on top of the price, not from sale proceeds or estate funds; it covers BROKER's marketing expenses and any cooperating broker fee. (2) If Mainstreet is the Successful Bidder, BROKER's fee is a flat $35,000 paid by Mainstreet at closing, inclusive of all marketing expenses.

Date: ________________ **SELLER**: Lara Roeske Fernandez, Chapter 11 Trustee Tax ID No: ____________________
(print name)
Telephone #'s: Home __________________ Work 813-227-7404 Cell __________________ Fax: 813-227-0441
Address: 101 East Kennedy Blvd., Suite 2700, Tampa, FL 33602 E-mail: lfernandez@trenam.com

Date: ________________ **SELLER**: ____________________________________ Tax ID No: ____________________
(print name)
Telephone #'s: Home __________________ Work __________________ Cell __________________ Fax: __________________
Address: ____________________________________________ E-mail: ____________________

Date: ________________ **Broker or Authorized Associate:** Wilbert Reynoso
(print name)
Brokerage Firm Name: Moecker Realty, Inc. d/b/a Moecker Brokers Telephone: 954-252-1560
Address: 1885 Marina Mile Blvd., Suite 103, Fort Lauderdale, FL 33315

____________________________________ ____________________________________
Signature of **SELLER** Signature of **SELLER**

____________________________________
Signature of Associate or Broker

Copy returned to **SELLER** on the ______________________________ by: ☐ personal delivery ☐ mail ☐ e-mail ☐ fax.

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

**SELLER** (_____) (_____) and Broker/Authorized Associate (_____) (_____) acknowledge receipt of a copy of this page, which is Page 4 of 4 Pages.

*The Parties acknowledge this form should not be used to share offers of compensation to buyer brokers or other buyer representatives via any field in the Multiple Listing Service.*

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

In re:

HOMEMAKERS REAL ESTATE, LLC, Case No. 6:25-bk-05570-GER
Chapter 11

Debtor.
_________________________________/

**AFFIDAVIT IN SUPPORT OF TRUSTEE'S**
**APPLICATION TO EMPLOY AUCTIONEER**

STATE OF FLORIDA )
) ss.
COUNTY OF BROWARD )

Before me, the undersigned authority, personally appeared Will Reynoso, who being duly deposed and sworn, states that.

1. I am over the age of eighteen and competent to make this affidavit. I am a broker at Moecker Realty, Inc. d/b/a Moecker Brokers and case manager at its affiliate Michael Moecker & Associates, Inc.

2. I have personal knowledge of all facts sets forth herein.

3. I submit this declaration in connection with the Trustee's Application to Employ Auctioneer (the "Application") in the above-captions case which seeks to employ my firm Moecker Brokers ("Moecker") as auctioneer.

4. I hold an active broker license with the State of Florida with license number BK3240197.

5. Moecker is a real estate brokerage and auctioneer firm and holds license number CQ1032307 as a real estate corporation.

6. This affidavit is submitted in compliance with 11 U.S.C. § 27 and 328 and Fed. R. Bank. P. 2014.

7. Other than the below listed exceptions, Moecker has no connections with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the United Staes Trustee, or any other person employed in the office of the United States Trustee

None.

8. To the best of my knowledge, and after reasonable inquiry, neither I nor any member, employee, officer, or director of Moecker hold an interest adverse to the estate of the Debtor.

9. To the best of my knowledge, and after reasonable inquiry, neither I nor any member, employee, officer, or director of Moecker (A) is a creditor, equity holder or insider, as defined by 11 U.S.C. § 101(14) and (B) have within two (2) years pre-petition, been a director, officer or employee of the Debtor.

10. To the best of my knowledge, and after reasonable inquiry, neither I nor any member, employee, officer, or director of Moecker have an interest materially adverse to interest of the estate or any class of creditors or security holders, by reason of direct or indirect relationship to, connection with, or interest in, the Debtor or for any other reason.

11. Moecker has never represented the Debtor.

FURTHER AFFIANT SAYETH NOT.

______________________________
Will Reynoso

The foregoing instrument was acknowledged before me this 23rd day of November, 2026, by Will Reynoso who is personally known to me or who produced ____________________ as identification, and who did take an oath.

EULALIA SERPA RODRIGUEZ
MY COMMISSION # HH 336858
EXPIRES: February 26, 2027

Eulalia S. Rodriguez
Name: Eulalia S. Rodriguez
Notary Public – State of Florida
My Commission Expires: 02/26/2027

# VERIFICATION CERTIFICATE

THIS IS TO CERTIFY that Bond No. 6021345141 issued by

UNITED STATES FIRE INSURANCE COMPANY

dated the 30TH day of SEPTEMBER, 2026,

in the amount of ONE MILLION and No/100-----($1,000,000.00),

on behalf of MOECKER REALTY, INC. DBA MOECKER BROKERS
(as Principal),
and in favor of United States of America, STATE OF FLORIDA (as Obligee),

covers a term which began on the 30TH day of SEPTEMBER, 2026, and

ends only with the cancellation of said bond or other legal termination thereof; and that the

said bond remains in effect, subject to all its agreements, conditions and limitations.

*Signed, sealed and dated
11/23/26

*Use current or renewal date.

UNITED STATES FIRE INSURANCE COMPANY

By: Catherine A. Kehoe
C. KEHOE, Attorney-in-Fact

# POWER OF ATTORNEY

## HARCO NATIONAL INSURANCE COMPANY
## INTERNATIONAL FIDELITY INSURANCE COMPANY

**Member companies of IAT Insurance Group, Headquartered: 4200 Six Forks Rd, Suite 1400, Raleigh, NC 27609**

**KNOW ALL MEN BY THESE PRESENTS**: That **HARCO NATIONAL INSURANCE COMPANY**, a corporation organized and existing under the laws of the State of Illinois, and **INTERNATIONAL FIDELITY INSURANCE COMPANY**, a corporation organized and existing under the laws of the State of New Jersey, and having their principal offices located respectively in the cities of Rolling Meadows, Illinois and Newark, New Jersey, do hereby constitute and appoint

SARA S. DEJARNETTE, CONWAY C. MARSHALL, STEPHEN BEAHM, ELIZABETH SCHOTT, DAVID C. JOSEPH, JESSICA PALMERI, KELLI R. CROSS, AMANDA RIEDL, ANDRE AUTIN, VICTORIA SCRUGGS, CLARK P. FITZ-HUGH, CATHERINE C. KEHOE, KRISTINE DONOVAN

New Orleans, LA.

their true and lawful attorney(s)-in-fact to execute, seal and deliver for and on its behalf as surety, any and all bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof, which are or may be allowed, required or permitted by law, statute, rule, regulation, contract or otherwise, and the execution of such instrument(s) in pursuance of these presents, shall be as binding upon the said **HARCO NATIONAL INSURANCE COMPANY and INTERNATIONAL FIDELITY INSURANCE COMPANY**, as fully and amply, to all intents and purposes, as if the same had been duly executed and acknowledged by their regularly elected officers at their principal offices.

This Power of Attorney is executed, and may be revoked, pursuant to and by authority of the By-Laws of **HARCO NATIONAL INSURANCE COMPANY** and **INTERNATIONAL FIDELITY INSURANCE COMPANY** and is granted under and by authority of the following resolution adopted by the Board of Directors of **INTERNATIONAL FIDELITY INSURANCE COMPANY** at a meeting duly held on the 13th day of December, 2018 and by the Board of Directors of **HARCO NATIONAL INSURANCE COMPANY** at a meeting held on the 13th day of December, 2018.

"**RESOLVED**, that (1) the Chief Executive Officer, President, Executive Vice President, Senior Vice President, Vice President, or Secretary of the Corporation shall have the power to appoint, and to revoke the appointments of, Attorneys-in-Fact or agents with power and authority as defined or limited in their respective powers of attorney, and to execute on behalf of the Corporation and affix the Corporation's seal thereto, bonds, undertakings, recognizances, contracts of indemnity and other written obligations in the nature thereof or related thereto; and (2) any such Officers of the Corporation may appoint and revoke the appointments of joint-control custodians, agents for acceptance of process, and Attorneys-in-fact with authority to execute waivers and consents on behalf of the Corporation; and (3) the signature of any such Officer of the Corporation and the Corporation's seal may be affixed by facsimile to any power of attorney or certification given for the execution of any bond, undertaking, recognizance, contract of indemnity or other written obligation in the nature thereof or related thereto, such signature and seals when so used whether heretofore or hereafter, being hereby adopted by the Corporation as the original signature of such officer and the original seal of the Corporation, to be valid and binding upon the Corporation with the same force and effect as though manually affixed."

IN WITNESS WHEREOF, **HARCO NATIONAL INSURANCE COMPANY** and **INTERNATIONAL FIDELITY INSURANCE COMPANY** have each executed and attested these presents on this 31st day of December, 2025

INTERNATIONAL FIDELITY INSURANCE COMPANY CORPORATE SEAL 1904 NEW JERSEY

STATE OF NEW JERSEY
County of Essex

STATE OF ILLINOIS
County of Cook

HARCO NATIONAL INSURANCE COMPANY CORPORATE SEAL 1984 ILLINOIS

Michael F. Zurcher
Executive Vice President, Harco National Insurance Company and International Fidelity Insurance Company

On this 31st day of December, 2025, before me came the individual who executed the preceding instrument, to me personally known, and, being by me duly sworn, said he is the therein described and authorized officer of **HARCO NATIONAL INSURANCE COMPANY** and **INTERNATIONAL FIDELITY INSURANCE COMPANY**; that the seals affixed to said instrument are the Corporate Seals of said Companies; that the said Corporate Seals and his signature were duly affixed by order of the Boards of Directors of said Companies.

CATHY CRUZ NOTARY PUBLIC STATE OF NEW JERSEY

IN TESTIMONY WHEREOF, I have hereunto set my hand affixed my Official Seal, at the City of Newark, New Jersey the day and year first above written.

Cathy Cruz

Cathy Cruz a Notary Public of New Jersey
My Commission Expires April 16, 2029

## CERTIFICATION

I, the undersigned officer of **HARCO NATIONAL INSURANCE COMPANY** and **INTERNATIONAL FIDELITY INSURANCE COMPANY** do hereby certify that I have compared the foregoing copy of the Power of Attorney and affidavit, and the copy of the Sections of the By-Laws of said Companies as set forth in said Power of Attorney, with the originals on file in the home office of said companies, and that the same are correct transcripts thereof, and of the whole of the said originals, and that the said Power of Attorney has not been revoked and is now in full force and effect.

IN TESTIMONY WHEREOF, I have hereunto set my hand on this day, November 23, 2026

A00586

Irene Martins, Assistant Secretary