FILED ORL INTAKE - USBC
24 NOV 2026 PM3:43

**United States Bankruptcy Court**
**Middle District of Florida**
**Orlando Division**

In re: Case No. 6:25-bk-05570-GER

Homemakers Real Estate, LLC, Chapter 11

Debtor.
____________________________________/

# FRANK AMODEO'S RENEWED MOTION FOR LEAVE TO OBJECT TO CLAIM 66-1 OF THE CARTON FAMILY TRUST OF 1992

Paragraph 3 of the Case Management Order requires leave before any party files an objection to a proof of claim. (Doc. 359 ¶ 3). I renew my request for leave to object to Claim 66-1 of the Carton Family Trust of 1992, filed for $383,505.45. I attach the objection I first proposed on October 28, 2026, unchanged, as Exhibit 1. (Doc. 449 Ex. 1). Exhibit 1 also objects to Claim 65-1 of Tamamoi, LLC, which I address by separate motion. This court should grant leave now, so that this court determines the Carton Trust's claim before the Trustee releases a dollar to the Carton Trust.

## On November 19, 2026, I withdrew a request for speed, not my objection to the Carton Trust's claim.

My Third Amended Disclosure Statement asked this court to rule on an expedited basis on my motion for leave to object to the Tamamoi and Carton

claims, so that claims the law does not allow would not cast votes that count. (Doc. 467 at 12).

At the November 19, 2026 hearing, this court asked why I needed that expedited ruling now. (Ex. 2, Tr. 6:4–13). I withdrew the request without prejudice, and I identified the paper that made it as Doc. 467. (Ex. 2, Tr. 6:14–7:4). I said nothing on the record about withdrawing an objection to any claim.

The order entered the same day reaches further. The order considers three of my motions withdrawn without prejudice: my motion for leave to object to the Mainstreet claims, my motion for leave to object to the Tamamoi and Carton claims, and my section 502(d) motion. (Doc. 486). I abandoned none of them. Rather than ask this court to revisit its order, I renew the request for leave here.

I gave up the timing because I will rely on my plan and my evidence at the confirmation hearing, not on the vote. (Ex. 2, Tr. 6:17–19). On December 3, 2026, this court will hear the Trustee's plan and mine together, along with motions under section 1129(b). (Doc. 465 ¶ 1(c); Doc. 485 ¶ 5(b)). The claims fight still matters, and it now matters for a different reason: the Estate's money.

**The Trustee concedes the Carton Trust's lien in full and announced that the Trustee will not raise usury.**

On October 6, 2026, the Trustee objected to Claim 66-1 "only insofar as it may be construed to seek an unsecured claim for any deficiency." (Doc. 425 ¶ 14).

The Trustee stated that the Trustee "does not object to" the Carton Trust's in rem rights, and that the Trustee "does not intend to pursue" usury against the claim. (Doc. 425 ¶ 14 & n.2). The Trustee's amended disclosure statement says it again. (Doc. 434 at 18). The Trustee's objection leaves every dollar of the $383,505.45 standing as a secured claim.

The Case Management Order's own authority gives leave when the trustee "refuses to object, notwithstanding a request to do so." (Doc. 359 at 2 n.7) (quoting *In re Thompson*, 965 F.2d 1136, 1147 (1st Cir. 1992)). A trustee who announces in advance that the trustee will not raise a ground has refused to raise it. The Trustee gives one reason: Homemakers is not the borrower. (Doc. 425 n.2). If Homemakers owed the Carton Trust nothing, then Homemakers paid the Carton Trust for nothing. The Trustee's plan leaves every claim objection to the Trustee alone. (Doc. 394 at 20).

Section 502(a) allows a claim "unless a party in interest . . . objects." *11 U.S.C. § 502(a).* I am a creditor of this Estate and the proponent of a competing plan. (Claim 1-1; Docs. 467, 468). Every creditor who expects payment from this Estate has a stake in what the Estate keeps.

**The Carton Trust took $51,721.60 of the Debtor's money on a debt the Debtor never owed, and the Carton Trust rolled charges into principal that Florida law treats as interest.**

On July 7, 2020, Canaveral Crossroads, LLC signed a $285,000 note to FDRE, Inc., not to the Carton Trust. (Doc. 81 ¶ 4; Doc. 81-1 at 2). The Carton Trust told this court that Canaveral Crossroads is unrelated to this bankruptcy. (Doc. 81 ¶ 4). The Trustee agrees that Homemakers "is neither an obligor nor a guarantor" on the debt. (Doc. 425 ¶ 14).

Between October 2021 and May 2023, Homemakers nonetheless paid twenty monthly installments of $2,586.08 on the Carton note from the Homemakers Wells Fargo account, $51,721.60 in all. (Ex. 1, Ex. C). Not one of those dollars reduced principal. After twenty months of payments on an amortizing note, the Carton Trust claims $295,299.33 of principal, $10,299.33 more than the note's face. (Claim 66-1 at 8; Doc. 81-1 at 2). That money belongs in this Estate. The claims fight is where this court decides how much of the Carton Trust's claim survives, and my objection shows from the Carton Trust's own papers that most of it does not:

- Claim 66-1 attaches a one-page itemization and the July 15, 2025 judgment, and nothing else. (Claim 66-1 at 8–15). The Carton Trust filed no note, no mortgage, and no payment history, so the claim is not prima facie evidence of its validity or amount. *Fed. R. Bankr. P. 3001(c)(1), (d), (f)*.
- FDRE is the payee on the Carton note, yet the Carton Trust swore that it did not acquire the claim from anyone else, and the Carton Trust attached

no allonge and no assignment. (Claim 66-1 at 1; Doc. 81 ¶ 4). On its own sworn filing, the Carton Trust has not shown that the Carton Trust holds the note the Carton Trust seeks to enforce.

- The Carton Trust rolled servicing fees, late charges, and a payoff fee into principal on a note whose principal could only fall. (Claim 66-1 at 8; Doc. 81-1 at 2). Whatever the Carton Trust rolled into principal and then charged interest on is interest under the Florida statute. *Fla. Stat. § 687.03(1)*. The itemization, captioned "As of Petition Date: 9/2/2025," also adds fees the Carton Trust billed on September 11 and 23, 2025. (Claim 66-1 at 8).

- Without its note, its chain of title, or its payment history, the Carton Trust cannot prove any amount above the $227,500.00 the Carton Trust purportedly lent, and the Carton Trust must account for every dollar the Carton Trust took. (Ex. 1).

**This court should decide the objection before the Trustee releases any proceeds of Unit 8-104.**

Under the Trustee's plan, the Carton Trust receives the net sale proceeds of Unit 8-104 up to the allowed amount of Claim 66-1, and the Trustee makes no distribution on a disputed claim until the claim becomes allowed. (Doc. 394 at 20–22). On August 27, 2026, this court abated the Carton Trust's request to conduct a foreclosure sale, and the Carton Trust may move to un-abate whenever the Carton Trust chooses. (Doc. 361 ¶¶ 1–2). Either path pays the Carton Trust from the Debtor's Unit. An objection on file holds that money in the Estate until this court rules.

This court hears a claim objection on at least thirty days' notice. *Fed. R. Bankr. P. 3007(a)(1)*. On December 3, 2026, this court will hear confirmation of

both plans. (Doc. 485 ¶ 5). Each day without leave pushes the claims hearing further behind confirmation and closer to the first distribution. Money paid to the Carton Trust will not come back without another lawsuit. The claims fight belongs before the money moves.

## Relief Requested

1. Grant leave under paragraph 3 of the Case Management Order to object to Claim 66-1 of the Carton Family Trust of 1992.

2. Deem the objection attached as Exhibit 1 filed as to Claim 66-1 on the date of the order granting leave, and set it for hearing on the earliest date *Fed. R. Bankr. P. 3007(a)(1)* permits. I will serve the objection and its notice as Rule 3007(a) requires.

3. Until this court determines the objection, direct that no proceeds of Unit 8-104 be distributed to the Carton Trust, and continue the abatement of the Carton Trust's request to conduct a foreclosure sale. (Doc. 361 ¶ 1).

4. Grant such relief as is appropriate or fair.

Respectfully submitted this 25th day of November, 2026.

Frank L. Amodeo
*Pro se*
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32801@gmail.com

## CERTIFICATE OF SERVICE

On November 25, 2026, I filed this motion and its Exhibits 1 and 2 in paper form with the clerk of court. I am not a registered CM/ECF user. When the clerk dockets this motion, the CM/ECF system will serve the motion and its exhibits electronically on every party registered to receive notice in this case, including the Chapter 11 Trustee, the Trustee's counsel, counsel for the Carton Family Trust of 1992, and the United States Trustee.

Dated: November 25, 2026

Frank L. Amodeo
*Pro se*

# EXHIBIT 1

Frank Amodeo's Objection to Claim 65-1 of Tamamoi, LLC
and Claim 66-1 of the Carton Family Trust of 1992, with Exhibits A-C

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re: Case No. 6:25-bk-05570-GER

HOMEMAKERS REAL ESTATE, LLC, Chapter 11

Debtor.
_______________________________________/

**FRANK AMODEO'S OBJECTION TO CLAIM 65-1 OF TAMAMOI, LLC AND CLAIM 66-1 OF THE CARTON FAMILY TRUST OF 1992**

**NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at the George C. Young Federal Courthouse, 400 W Washington Street, Suite 5100, Orlando, Florida 32801 within thirty (30) days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

**You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.**

Tamamoi, LLC filed Claim 65-1 for $3,378,797.64, and the Carton Family Trust of 1992 filed Claim 66-1 for $383,505.45, each as fully secured. Neither claim attaches the note, the mortgage, or the payment history it rests on. Both claims carry interest the Florida statute forfeits, and every installment Homemakers paid on them went to interest. I concede no more than an in rem claim of $1,022,144.00 against the eight Units securing Claim 65-1, and an in rem claim of $227,500.00 against Unit 8-104 securing Claim 66-1. I dispute the rest of each claim.

**Neither claim carries the writings Rule 3001 requires, so neither is evidence of what it claims.**

When a claim, or the lien securing it, "is based on a writing," the creditor "must file a copy with the proof of claim." *Fed. R. Bankr. P. 3001(c)(1).* A creditor that claims a security interest must file "evidence that the security interest has been perfected." *Fed. R. Bankr. P. 3001(d).* Both claimants named "Money Loaned" as the basis of the claim and a "Mortgage" as the basis of perfection. (Claim 65-1 at 2; Claim 66-1 at 2). Neither filed a note or a mortgage.

Claim 65-1 attaches only the May 18, 2026 foreclosure judgment. (Claim 65-1 at 8–18). It omits Tamamoi's nine notes, its nine mortgages, the April 15, 2021 modifications that rewrote every note, and any history of the payments Tamamoi and its servicer received. Claim 66-1 attaches a one-page itemization and

the July 15, 2025 judgment, and nothing else. (Claim 66-1 at 8–15). Only a claim "signed and filed in accordance with these rules" is "prima facie evidence of the claim's validity and amount." *Fed. R. Bankr. P. 3001(f)*. These claims are not. Each claimant must prove its claim with competent evidence, and neither has offered any.

The Carton Trust's claim has a further gap. Canaveral Crossroads, LLC signed the Carton note in favor of FDRE, Inc., not the trust. (Doc. 81 ¶ 4). On its proof of claim, the Carton Trust answered "No" to the question whether the claim was "acquired from someone else," and it attached no allonge and no assignment. (Claim 66-1 at 1). On its own sworn filing, the Carton Trust has not shown that it holds the note it seeks to enforce.

**Tamamoi charged more than Florida allows, and the statute forfeits every dollar of its interest.**

Tamamoi lent $227,500 on each Unit at 10 percent. Its note limits the rate on matured, unpaid amounts to the "[l]esser of: (a) eighteen percent (18%); or (b) the Highest Lawful Rate permitted by law." (Ex. A at 1). On April 15, 2021, Tamamoi rewrote the notes. On the Unit 303 note, the modification raised the principal to $274,427.20, $46,927.20 more than Tamamoi lent, and took a $5,000 "non-refundable down payment" that reduced nothing. (Ex. B ¶ 4(a)–(b)).

Tamamoi's own judgment then charges $135.53 a day on each Unit's $270,768.41 of claimed principal, for every calendar day. (Claim 65-1 at 9). That is 18.27 percent a year. On a loan of $500,000 or less, Florida sets the ceiling at 18 percent. *Fla. Stat. § 687.03(1)*. The statute "affords no leeway," and a lender that knowingly computes interest to exceed the maximum rate charges usury. *Ellis Nat'l Bank of Tallahassee v. Davis*, 359 So. 2d 466, 468 (Fla. 1st DCA 1978). Tamamoi knew the ceiling. It wrote 18 percent into its own note as the most it could charge, and then it charged more.

A lender that willfully violates the statute "shall forfeit the entire interest so charged, or contracted to be charged or reserved," and a court may enforce "only the actual principal sum." *Fla. Stat. § 687.04*. The actual principal sum is the $227,500 Tamamoi advanced on each Unit, not the $270,768.41 it built by rolling unpaid charges into principal.

**Every dollar Homemakers paid went to interest, and the statute returns it twice.**

Between October 2021 and May 2023, Homemakers paid $2,493.30 a month on each of Tamamoi's notes and $2,586.08 a month on the Carton note from its own Wells Fargo account. (Ex. C). Those twenty months of payments total $448,794.00 on Tamamoi's nine notes and $51,721.60 on the Carton note. (*Id.*). None of it reduced what either claimant lent. After twenty months of payments,

Tamamoi claims $270,768.41 of principal on each $227,500 loan, and the Carton Trust claims $295,299.33 of principal on a $285,000 note. (Claim 65-1 at 9; Claim 66-1 at 8; Doc. 81 ¶ 4). Money a lender collects and never credits to principal is interest.

The statute names who recovers the forfeited interest. A usurious lender forfeits "double the amount of interest so reserved, taken, or exacted" to "the party from whom such usurious interest has been reserved, taken, or exacted." *Fla. Stat. § 687.04*. Tamamoi exacted this interest from Homemakers, by checks drawn on Homemakers' account and, from January 2023, payable to Tamamoi itself. (Ex. C). The Trustee reads *Gunn Plumbing, Inc. v. Dania Bank*, 252 So. 2d 1, 4 (Fla. 1971), to deny Homemakers the usury defense because it is not the borrower. (Doc. 424 n.2). *Gunn Plumbing* decided that a borrower may waive the defense. It did not read the double-interest remedy out of the hands of the party the statute names. On the eight Units in Claim 65-1, Homemakers paid $2,493.30 a month for twenty months, $398,928.00 in all, and the statute doubles it. Those eight Units can secure no more than this:

| | |
|---|---|
| Actual principal, 8 Units × $227,500 | $1,820,000.00 |
| Interest paid on those Units, doubled | (797,856.00) |
| **Most Claim 65-1 can secure** | **$1,022,144.00** |

The accounting Tamamoi never produced will also show what it and its servicer kept when the loans funded in 2019. Once broker fees, loan costs, and

other lender charges are properly characterized as interest, the original documents exceed the usury statute. If that accounting puts the rate above 25 percent, no court of this state may enforce the debt at all. *Fla. Stat. § 687.071(7).*

**Claim 65-1 also claims amounts that no judgment or rule allows.**

The Bankruptcy Code fixes a claim "as of the date of the filing of the petition," and it excludes "unmatured interest." *11 U.S.C. § 502(b), (b)(2).* Claim 65-1 carries interest through May 14, 2026, more than eight months after the September 2, 2025 petition, and Brevard County taxes Tamamoi paid on September 3, 2025, the day after the petition. It also lists the same $17,530.59 twice — once as back taxes paid August 26, 2025, and again as "2022 Back Taxes for Unit 303, 503 and 505." (Claim 65-1 at 9–10). At $135.53 a day on eight Units, the 254 days after the petition carry $275,396.96 of interest. Those three items alone total $313,893.06. Claim 65-1 also names Unit 403 as collateral, although neither Tamamoi's judgment nor this court's stay-relief order reaches that Unit. (Claim 65-1 at 2, 11–12; Doc. 135 ¶ 2).

**The Carton Trust must prove what it claims, and its own papers show charges rolled into principal.**

On July 7, 2020, Canaveral Crossroads signed a $285,000 note to FDRE at 10 percent, interest only for a year and then amortized over thirty years. (Doc. 81-1

at 2). Under those terms the principal could only fall. The Carton Trust instead claims $295,299.33 of principal, $10,299.33 more than the note's face, and adds servicing fees, late charges, and a payoff fee. (Claim 66-1 at 8). Whatever the Carton Trust rolled into principal and then charged interest on is interest under the statute. *Fla. Stat. § 687.03(1).* Its itemization, captioned "As of Petition Date: 9/2/2025," also adds fees it billed on September 11 and 23, 2025. (Claim 66-1 at 8). FDRE, the payee on the Carton note, is also the servicer and loan agent on Tamamoi's loans, and it placed both on nearly identical terms; Tamamoi advanced $227,500 on each Unit. (Ex. A at 1; Ex. B, Recital A). Without its note, its chain of title, or its payment history, the Carton Trust cannot prove any amount above the $227,500.00 it purportedly lent, and it must account for every dollar it took.

**The claims must be resolved before their holders vote.**

The Trustee's plan places Tamamoi in Class 3 and the Carton Trust in Class 4, both entitled to vote. (Doc. 394 at 21). Ballots are due seven days before the November 19, 2026 confirmation hearing. (Doc. 437 ¶¶ 3, 9). A claim subject to an objection votes only if this court temporarily allows it after notice and a hearing. *Fed. R. Bankr. P. 3018(a).* Claims that cannot carry their own burden should not vote $3,762,303.09 against the creditors whose money Tamamoi and the Carton Trust took.

## Relief Requested

1. Sustain this objection and allow Claim 65-1 of Tamamoi, LLC only as an in rem claim against Units 206, 303, 305, 402, 404, 503, 504, and 505 in an amount not exceeding $1,022,144.00, and disallow the rest.

2. Sustain this objection and allow Claim 66-1 of the Carton Family Trust of 1992 only as an in rem claim against Unit 8-104 in an amount not exceeding $227,500.00, less any further amount the accounting shows was interest, and disallow the rest.

3. Disallow each claim in its entirety to the extent it asserts any personal liability of the Debtor or any unsecured deficiency.

4. Direct Tamamoi, the Carton Trust, and their servicer, FDRE, Inc., to produce their notes, mortgages, modifications, assignments, and complete payment histories from origination.

5. Until this objection is decided, decline to allow either claim for voting in an amount above the amount conceded here. *Fed. R. Bankr. P. 3018(a).*

6. Grant such further relief as is just.

Respectfully submitted this 28th day of October, 2026.

______________________________

Frank L. Amodeo
*Pro se*
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32809@gmail.com

## CERTIFICATE OF SERVICE

I certify that on October 28, 2026, I filed this objection, its notice, and Exhibits A through C with the Clerk of Court through the CM/ECF system, which will serve them electronically on every party registered to receive notice in this case.

Dated: October 28, 2026

______________________________
Frank L. Amodeo
*Pro se*

# EXHIBIT A

First Lien Promissory Note, Unit 206, dated May 1, 2019
Canaveral Crossroads, LLC to Tamamoi LLC
(filed in Brevard No. 05-2024-CA-023943, Filing 195981541)

**FIRST LIEN PROMISSORY NOTE WITH BALLOON PAYMENT**

**THIS IS A BALLOON NOTE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $211,686.03, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE BORROWER UNDER THE TERMS OF THIS NOTE.**

| | |
|---|---|
| **DATE:** | May 1, 2019 |
| **BORROWER:** | Canaveral Crossroads, a Florida Limited Liability Company |
| **BORROWER'S MAILING ADDRESS:** | PO Box 640337, Merritt Island FL 32954 |
| **LENDER:** | Tamamoi LLC, a Delaware limited liability company |
| **LENDER'S MAILING ADDRESS (PLACE FOR PAYMENT):** | 5060 SW Philomath Blvd #363 Corvallis OR 97333 |
| **PRINCIPAL AMOUNT:** | $227,500.00 |
| **ANNUAL INTEREST RATE:** | Ten Percent (10%) |
| **MATURITY DATE:** | April 30, 2029 |
| **ANNUAL INTEREST RATE ON MATURED, UNPAID AMOUNTS:** | Lesser of: (a) eighteen percent (18%); or (b) the Highest Lawful Rate permitted by law. |

1. **TERMS OF PAYMENT (PRINCIPAL AND INTEREST):** Commencing June 1, 2019, monthly installments of accrued but unpaid interest shall be due and payable on the 1st day of each month after the date of this Note for one year; then, beginning June 1, 2020, principal and accrued interest as calculated on a thirty year amortization schedule are due and payable on the 1st day of each month for nine years until the Maturity Date. On the Maturity Date or upon the earlier maturity hereof, whether by acceleration or otherwise as provided in this Note or the Mortgage, any and all unpaid principal, together with all accrued but unpaid interest thereon shall be immediately, finally and fully due and payable. Interest shall begin to accrue on the entire principal balance from the date of execution of the documents.

2. **SECURITY FOR PAYMENT:** This Promissory Note (herein referred to as the "Note") is secured by a Mortgage (herein referred to as the "Mortgage") of even date from Borrower to Lender, both of which cover that certain real property located in Brevard County, Florida, which is more particularly described as:

**A condominium commonly known as 202 Ivory Coral Lane, Unit 206, Merritt Island FL, further described in the attached Exhibit A.**

3. **OTHER SECURITY FOR PAYMENT:** This loan is additionally secured by personal guarantees from Michael McPhillips, Horton Johnson, and Martin Flynn, each of whom shall be jointly and severally liable thereunder. This loan is additionally secured by all personal property used for nightly rental purposes located in the subject unit.

4. **PROMISE OF PAYMENT:** Borrower promises to pay to the order of Lender the Principal Amount plus interest at the Annual Interest Rate. This Note is payable at the Place for Payment and according to the Terms of Payment. All unpaid amounts are due by the Maturity Date. After maturity, Borrower promises to pay any unpaid principal balance plus interest at the Annual Interest Rate on Matured, Unpaid Amounts.

5. **DEFAULT:** If Borrower defaults in the payment of this Note or in the performance of any obligation in any instrument securing or collateral to this Note, Lender may declare the unpaid principal balance, earned interest, and any other amounts owed on the Note immediately due; provided, however, that the entire principal balance and accrued interest owing thereon shall not be so accelerated unless Borrower fails to cure any such default within ten (10) days, if a monetary default, or, within twenty (20) days if a nonmonetary default, following the receipt of written notice from Lender, or any subsequent holder of this Note, specifying the existence of any such default. Borrower and each surety, endorser, and guarantor waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

6. **LATE CHARGE:** At the option of Lender, Borrower shall pay a "late charge" in the amount of five percent (5%) of any installment on this Note when such installment is not paid within ten (10) days following the date such installment is due, in order to cover the additional expenses involved in handling delinquent payments.

7. **ATTORNEY'S FEES:** Borrower also promises to pay reasonable attorney's fees and court and other costs if this Note is placed in the hands of an attorney to collect or enforce the Note.

[redacted]

These expenses will bear interest from the date of advance at the Annual Interest Rate on Matured, Unpaid Amounts. Borrower will pay Lender these expenses and interest on demand at the Place for Payment. These expenses and interest will become part of the debt evidenced by the Note and will be secured by any security for payment.

8. **PREPAYMENT:** Borrower may prepay this loan at any time with no penalty.

9. **FURTHER ASSURANCES AND CORRECTIONS:** From time to time, at the reasonable request of Lender, Borrower will: (i) promptly correct any defect, error or omission which may be discovered in the contents of this Note or in any other loan document or in the execution or acknowledgement thereof; (ii) execute, acknowledge, deliver, record and/or file (or cause to be executed, acknowledged, delivered, recorded and/or filed) such further documents and instruments (including, without limitation, further deeds of trust, security agreements, financing statements, continuation statements, and assignments of rents) and perform such further acts and provide further assurances as may be necessary, desirable or proper in Lender's reasonable opinion (a) to carry out more effectively the purposes of this Note and the other loan documents and the transactions contemplated hereunder and thereunder, (b) to confirm the rights created under this Note and the other loan documents, (c) to protect and further the validity, priority and enforceability of this Note and the other loan documents and the liens and security interests created thereby, and (d) to subject to the loan documents any portion of the Property intended by the terms of any one or more of the loan documents to be encumbered by the loan documents; and (iii) pay all costs in connection with any of the foregoing.

10. **USURY SAVINGS:** It is expressly provided that in no event shall the aggregate of all interest paid or contracted to be paid to Lender by Borrower ever exceed the maximum amount of interest which may lawfully be charged by Lender on the principal balance of this Note from time to time advanced and remaining unpaid. It is expressly agreed that it is the intent of Lender and Borrower in the execution and delivery of this Note to contract in strict compliance with applicable usury laws. None of the terms of this Note shall ever be construed to create a contract to pay interest at a rate which is an "Unlawful Rate of Interest". The term "Unlawful Rate of Interest" shall mean the usurious rate of interest according to: (a) Chapter 687 of Title XXXIX of the Florida Statutes as of the date of this Note ; or (b) under the laws of the United States, and the regulations promulgated thereunder or under other applicable law. In determining whether the loan any time contracted for, charged, or received from Borrower in connection with the loan evidenced by this Note is usurious under applicable law, all interest shall be amortized, prorated, allocated, and spread in equal parts during the period of the full stated term of the loan. However, in the event that this Note is paid in full by Borrower prior to the end of the term of this Note and in the event the interest received by the holder of this Note for the actual period of the existence of the loan meets of exceeds the "Unlawful Rate of Interest", the holder of this Note shall, either refund to Borrower the amount of such excess or credit the amount of such excess against any amounts owing by Borrower under this Note. In addition, if fulfillment of any provision hereof, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by applicable law, then, ipso facto, the obligation to fulfill shall be reduced to the limit of such validity, and if from any circumstance the holder thereof shall ever receive as interest an amount which would meet or exceed the "Unlawful Rate of Interest", such amount which would be excessive interest shall, at the option of Lender, be refunded to Borrower or be applied to the reduction of the unpaid principal balance due hereunder and not to the payment of interest. The provisions of this paragraph shall supersede all other provisions of this Note.

11. **LOAN PAYABLE AT MATURITY.** IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT THIS NOTE WILL REQUIRE A "BALLOON" PAYMENT OF ALL UNPAID PRINCIPAL AND ACCRUED BUT UNPAID INTEREST ON THE MATURITY DATE. THE PRINCIPAL INDEBTEDNESS EVIDENCED BY THIS NOTE IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE AND ACCRUED BUT UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THIS NOTE AT THAT TIME.

12. **MISCELLANEOUS:**

(a) Borrower is responsible for all obligations represented by this Note.

(b) When the context requires, singular nouns and pronouns include the plural.

(c) If any provision of this Note conflicts with any provision of any loan agreement, the Mortgage, or security agreement of the same transaction between Lender and Borrower, the provisions of the Mortgage will govern to the extent of the conflict.

(d) This Note will be construed under the laws of the state of Florida, without regard to choice-of-law rules of any jurisdiction.

(e) No Construction Against Drafter. The Parties acknowledge that this Agreement and all the terms and conditions contained herein have been fully reviewed and negotiated by the Parties. Having acknowledged the foregoing, the Parties agree that any principle of construction or rule of law that provides that, in the event of any inconsistency or ambiguity, an agreement shall be construed against the drafter of the agreement shall have no application to the terms and conditions of this Agreement.

THIS IS A BALLOON NOTE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $211,698.03, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE BORROWER UNDER THE TERMS OF THIS NOTE.

BORROWER:

Canaveral Crossroads, LLC,
a Florida Limited Liability Company

By: Martin Flynn
Its: Manager

File Number:

**EXHIBIT A**

Condominium Unit 206, CAPE CROSSING, A CONDOMINIUM, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, of the Public Records of Brevard County, Florida.

# EXHIBIT B

Modification Agreement, Unit 303, effective April 15, 2021
Tamamoi LLC and Canaveral Crossroads
(filed in Brevard No. 05-2024-CA-023943, Filing 195981541)

[redacted]

# MODIFICATION AGREEMENT

THIS MODIFICATION AGREEMENT ("the Agreement") is made and entered into as of April 15, 2021, between Tamamoi LLC, (hereinafter "Tamamoi"), whose address is 5060 SW Philomath Blvd., #516, Corvallis, OR 97333, and Canaveral Crossroads (hereinafter the "Borrower"), whose address is PO Box 540337, Merritt Island, FL 32954 (collectively referred to herein as the "Parties"). The Modification is as follows:

## RECITALS

principal
orig. principal

A. On or about May 1, 2019, Tamamoi loaned $227,500.00 to Borrower (the "Loan"), which was evidenced by a note (the "Note") dated May 1, 2019, payable to the order of and/or for the benefit of Tamamoi.

B. The Note is secured by a Mortgage encumbering a property and recorded in the official records of Brevard County on May 16, 2019, at Book 8440 and Page 1298 (the "Mortgage).

C. The Property is legally described as follows:

[illegible] CAPE CROSSING, A CONDOMINIUM TOGETHER WITH AN UNDIVIDED INTEREST IN THE COMMON ELEMENTS, ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF IN OFFICIAL RECORD BOOK 8418, PAGE 1832, OF THE PUBLIC RECORDS OF BREVARD COUNTY, FLORIDA

D. Tamamoi is the owner of the Note and Mortgage (collectively the "Loan Documents"), and Borrower hereby agrees that the loan documents are the only agreements and documents now in effect with respect to the Loan. Any other understandings, agreements, or arrangements, which may have existed pertaining to the Loan, are hereby terminated.

E. The Parties have agreed that Tamamoi shall refrain from exercising the rights and remedied granted to it by the Loan Documents, and instead, agree to modify the terms of Borrower's obligations under the Loan Documents pursuant to the terms and conditions set forth in this Agreement. The Parties do not intend to enter into a novation.

F. Pursuant to the mutual agreement of the parties to modify the Loan Documents, and in consideration of the promises, conditions and terms set forth below, Tamamoi has agreed to adjust the repayment terms of the Note, and the total amount due with respect to the Note. Tamamoi has also agreed to reinstate the Loan as current and not in default as of the Effective Date of this Agreement as further outlined below.

## LOAN MODIFICATION

**NOW, THEREFORE,** in consideration of the foregoing recitals which you agree to be true and correct and a part of this Agreement, the Borrower and Tamamoi agree as follows:

1. **INCORPORATION OF RECITALS AND DEFINITIONS.** Borrower and Tamamoi hereby acknowledge the accuracy of the foregoing Recitals as a substantive part of this agreement. Except as specifically defined herein, all capitalized terms used in the recitals and in the body of this agreement shall have the definitions ascribed therefore in the Loan Documents.

2. **VALIDITY OF THE LOAN DOCUMENTS.** Except as expressly modified by this Agreement, the terms and conditions of the Loan Documents remain in full effect and the Mortgage shall continue to secure the Note and this Agreement.
3. **THE EFFECTIVE DATE.** This agreement will be effective on April 15, 2021.
4. **MODIFICATION OF THE LOAN DOCUMENTS.** The obligations under the Loan Documents are modified as follows:
    a. **Down Payment.** Borrower shall provide a non-refundable down payment of $5,000 within five (5) business days after the Effective Date of this agreement. Failure to make this payment shall be treated as a material default of this Agreement;
    b. **New Principal Balance.** The new principal balance now owed with respect to the Loan shall be $225,827.20 (the "New Principal Balance").
    c. **Interest Rate.** From the Effective Date of this Agreement, and continuing until maturity, the interest on the unpaid new Principal Balance will accrue at a fixed annual rate equal to 10%. If, after the Effective Date of this Agreement Borrower misses a payment, and/or any other default under the terms of this Agreement or the Note and Mortgage and default remains uncured for thirty (30) days Tamamoi at its own discretion may apply an annual interest rate of 18% which will continue to accrue till the unpaid payments have been made. After the unpaid payments have been made the annual rate will revert back to 10%.
    d. **New Monthly Payment.** The new monthly payment amount of principal and interest will be $2,408.30.
    e. **New Monthly Payment Plan.** The first new monthly payment will be due May, 1, 2021, with all subsequent New Monthly Payments due on the 1st of each month following this date and continuing through and including the maturity date on May 1, 2051 (the "Maturity Date"), when the remaining New Principal Balance, including any additional interest, charges, advances, and other fees and costs related to the Loan which Tamamoi has not yet collected, will be due.
5. **CONSEQUENCES OF DEFAULT.** If a Borrower defaults under this Agreement or the Loan Documents after the Effective Date ("Default") Tamamoi pursuant to the Loan Documents will send a written Notice informing the Borrower of the default.
6. **REPRESENTATIONS AND WARRANTIES.** As a material condition to Tamamoi's willingness to enter into this Agreement, Borrower represents and warrants the following facts:
    a. That Borrower is indebted to Tamamoi pursuant to the terms of the Loan Documents and this Agreement, that the total amount owed is accurately set forth in this Agreement, and that Borrower has no claims, actions, causes of action, statute of limitations or other defenses, counterclaims, or setoffs of any kind, including any claims pursuant to the Federal Truth in Lending Act ("FTLA"), which Borrower can assert against Tamamoi in connection with the making, closing, administration, collection or enforcement by Tamamoi of the Loan Documents, this Agreement or any related agreement at any time, past present or future.

b. Borrower represents and warrants that they have no intention to file or agree to any bankruptcy proceeding any time after the Effective Date and that they believe the terms of this Agreement are sufficient to allow Borrower to comply with their obligations under the Loan Documents and this Agreement. If the Borrower is currently subject to the protections of any automatic stay in bankruptcy, or has obtained a discharge in a bankruptcy proceeding without reaffirming a mortgage loan debt, nothing in this Agreement or any other document executed in connection with this Agreement shall be construed as an attempt by Lender to impose personal liability under the Note and Mortgage. In such case, this Agreement is entered into in the ordinary course of business between the Lender and Borrower in lieu of pursuit of interim relief to enforce the lien. This Agreement does not revive the Borrower's personal liability under the Note and Mortgage, nor is it an attempt to collect, recover or offset any such debt as a personal liability of Borrower under the Note and Mortgage.

c. Borrower represents and warrants that all material statements Borrower has made to Tamamoi, whether written or oral, all financial information and releases Borrower has provided to Tamamoi regarding Borrower or the Property, and all information provided pursuant to any initial agreement Borrower may have signed with Tamamoi, remain valid and were trust as of the date made and as of the Effective Date.

d. Borrower understands that this Agreement is legally binding and that it affects Borrower's rights. Borrower has obtained, or has had the opportunity to obtain, independent legal counsel concerning the meaning and importance of this Agreement. Borrower further represents and warrants that he is she is signing this Agreement voluntarily and with full understanding of its contents and meaning.

7. **BORROWER'S RELEASE OF TAMAMOI:** In the event that Borrower has any claims, actions or causes of action, statue of limitations or other defenses, counterclaims or setoffs of any kind which exist as of the date of this Agreement, whether known or unknown to Borrower, which Borrower now or hereafter may assert against Tamamoi in connection with the making, closing, administration, collection or the enforcement by Tamamoi of the Loan Documents, this Agreement or any other related agreements, then by executing this Agreement Borrower forever irrevocably waives and relinquishes them.

8. **FINAL AGREEMENT:** This Agreement may not be supplemented, changed, waived, discharged, eliminated, modified or omitted by written document executed by both Borrower and Tamamoi. This Agreement constituted the entire agreement between Borrower and Tamamoi, and supersedes all previous negotiations and discussions between Borrower, and Tamamoi. Neither parole evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Agreement.

9. **NO NOVATION:** Borrower expressly agrees that this Agreement is not a new loan from Tamamoi, but simply the modification of Borrower's existing obligations under the Loan Documents. Neither Borrower nor Tamamoi has any intention to extinguish or discharge the indebtedness or the liens evidenced by the Loan Documents.

10. **USURY SAVINGS CLAUSE:** Notwithstanding anything to the contrary contained elsewhere in this Agreement, Borrower and Tamamoi hereby agree that all agreements between them under this Agreement and with respect to the Loan, whether now existing or hereafter arising and whether written or oral, are expressly limited so that in no contingency or event whatsoever shall the amount paid, or agreed to be paid, to Tamamoi for the use, forbearance, or detention of the money loaned to Borrower, or for the performance or payment of any covenant or obligation contained herein or therein, exceed the maximum rate of interest under applicable law (the " *Maximum Rate* "). If from any circumstance whatsoever, fulfillment of any provisions of this Agreement at the time performance of such provisions shall be due shall involve transcending the limit of validity prescribed by law, then, automatically, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any such circumstance Tamamoi should ever receive anything of value deemed interest by applicable law which would exceed the Maximum Rate, such excessive interest shall be applied to the reduction of the principal amount owing with respect to the Loan or on account of the other indebtedness secured by the Loan Documents and not to the payment of interest, or if such excessive interest exceeds the unpaid principal balance of the Loan and such other indebtedness, such excess shall be refunded to Borrower. All sums paid or agreed to be paid to Tamamoi for the use, forbearance, or detention of the Loan and other indebtedness of Borrower to Tamamoi shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the actual rate of interest on account of all such indebtedness is uniform throughout the actual term of the Loan or does not exceed the Maximum Rate throughout the entire term of the Loan, as appropriate. The terms and provisions of this Paragraph 7 shall control every other provision of this Agreement and all other agreements between Borrower and Tamamoi.
11. **CHOICE OF LAW AND SEVERABILITY:** This Agreement shall be governed by and construed under the laws of the State of Florida. If any portion, term or provision of this Agreement is held by a court of competent jurisdiction to be illegal or in conflict with such law, the validity of the remaining portions, terms or provisions of this Agreement shall not be affected, and the rights and obligations of the Parties shall be construed and enforced as if this Agreement did not conflict with such law and/or did not contain the portion, term or provision held to be invalid.
12. **SUCCESSORS:** This Agreement shall bind the Parties' respective successors, assigns, heirs and personal representatives. This Agreement shall not be understood to limit in any way the right of Tamamoi to sell, or otherwise convey, any interest in the subject obligation to another, provided that such subsequent party in interest is also bound as Tamamoi to the terms of this Agreement.
13. **REFERENCES:** All references to the singular shall include the plural and all references to one (1) gender herein shall include all genders.
14. **EXECUTED IN COUNTERPARTS:** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one (1) and the same document.

15. **NO TRIAL BY JURY:** By executing this Agreement, Borrower irrevocably waives all rights to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement and any related agreements or documents or transactions contemplated in this Agreement.
16. **TIME IS OF THE ESSENCE:** Time, and Tamamoi's security interest in the Property, shall be of the essence as to Borrower's obligations under this Agreement.
17. **AMENDMENTS:** This Agreement may not be amended or modified orally and no provision of this Agreement may be waived or amended except in a writing signed by the Borrower and Tamamoi.
18. **FULL FORCE AND EFFECTS:** Borrower hereby ratifies and confirms in all respects and without condition all of the terms and provisions of the Loan Documents, as modified herein, and agrees that said terms and provisions, except to the extent expressly modified herein, continues in full force and effect.

**IN WITNESS WHEREOF,** Tamamoi and the Borrower have executed this Agreement on the date set forth opposite the name below. The undersigned hereby certify that they have read and fully understand all of the terms, provisions and conditions of this Agreement and have executed this Agreement voluntarily. In addition, by each signature the party warrants that they have the ability, and right to fully bind the corporation/company they are signing on behalf of.

**CANAVERAL CROSSROADS LLC**

[signature]
______________________________

NAME: Martin Flynn
TITLE: Manager
DATE: 4/23/21

STATE OF FLORIDA

COUNTY OF ORANGE

Sworn to (or affirmed) and subscribed before me by means of ☒ physical presence or ☐ online notarization, this 23 day of April, 2021, by Martin Flynn

Notary Public, State of Florida

Alexandra M. Lezcano
(Printed Name of Notary)

Commission Number: HH077969
My Commission expires: 1/6/25

Alexandra M. Lezcano
Notary Public
State of Florida
Comm# HH077969
Expires 1/6/2025

Personally Known X OR Produced Identification____ Type of Identification Produced______________________

**TAMAMOI LLC**

______________________________

**NAME:** James Richardson
**TITLE:** Manager
**DATE:** 5/5/21

**STATE OF** ____________________

**COUNTY OF** ____________________

**Sworn to (or affirmed) and subscribed before me by means of ☐ physical presence or ☐ online notarization, this _____ day of____________, 20____, by___________________________**

**Notary Public, State of** ______________

______________________________
**(Printed Name of Notary)**

**Commission Number:**
**My Commission expires:**

**Personally Known ____ OR Produced Identification____ Type of Identification Produced___________________________**

Please See Attached.

**CALIFORNIA ACKNOWLEDGMENT** **CIVIL CODE § 1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Riverside }

On May 5, 2021 before me, Elena Gomez, Notary Public,
*Date* *Here Insert Name and Title of the Officer*

personally appeared James Richardson
*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

ELENA GOMEZ
COMM #2333554
NOTARY PUBLIC • CALIFORNIA
RIVERSIDE COUNTY
Commission Expires SEPT 17, 2024

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Elena Gomez
*Signature of Notary Public*

*Place Notary Seal and/or Stamp Above*

**OPTIONAL**

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: Modification Agreement

Document Date: ____________ Number of Pages: ______

Signer(s) Other Than Named Above: ____________

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: ____________
☐ Corporate Officer – Title(s): ____________
☐ Partner – ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: ____________
Signer Is Representing: ____________

Signer's Name: ____________
☐ Corporate Officer – Title(s): ____________
☐ Partner – ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: ____________
Signer Is Representing: ____________

©2019 National Notary Association

# EXHIBIT C

Homemakers Real Estate, LLC

Payments made to FDRE, Inc.; Tamamoi, LLC; TACIRA and DRCIRA

All Dates (QuickBooks report printed July 12, 2024)

# Homemakers Real Estate, LLC

## Payments made to FDRE, Inc.; Tamamol, LLC; TACIRA and DRCIRA

All Dates

| VENDOR | DATE | TRANSACTION TYPE | NUM | MEMO/DESCRIPTION | ACCOUNT FULL NAME | AMOUNT |
|---|---|---|---|---|---|---|
| **DRCIRA, LLC** | | | | | | |
| DRCIRA, LLC | 04/06/2021 | Check | 2678 | April 2021 2nd mortgage pmt | Homemakers Wells Fargo Checking | -$1,000.00 |
| DRCIRA, LLC | 04/23/2021 | Check | 2679 | Jan-Feb-Mar-May 2021 | Homemakers Wells Fargo Checking | -$2,076.00 |
| DRCIRA, LLC | 07/06/2021 | Check | 2684 | July 2021 pmt | Homemakers Wells Fargo Checking | -$500.00 |
| DRCIRA, LLC | 08/03/2021 | Check | 2689 | August 2021 Payment | Homemakers Wells Fargo Checking | -$500.00 |
| DRCIRA, LLC | 09/28/2021 | Check | 2693 | Sept 1, 2021 pmt plus 5% late fee | Homemakers Wells Fargo Checking | -$525.00 |
| DRCIRA, LLC | 09/30/2021 | Check | 2696 | October 1, 2021 pmt | Homemakers Wells Fargo Checking | -$500.00 |
| DRCIRA, LLC | 10/25/2021 | Check | 2700 | Nov 1st payment | Homemakers Wells Fargo Checking | -$500.00 |
| DRCIRA, LLC | 11/23/2021 | Check | 2705 | Dec 1st pmt | Homemakers Wells Fargo Checking | -$500.00 |
| DRCIRA, LLC | 12/27/2021 | Check | 2709 | January 1, 2022 pmt | Homemakers Wells Fargo Checking | -$500.00 |
| DRCIRA, LLC | 01/11/2022 | Check | wire | 50% final payoff of Balloon due on 2nd & 3rd mortgage loan | Homemakers Wells Fargo Checking | -$104,578.60 |
| **Total for DRCIRA, LLC** | | | | | | -$111,178.60 |
| **FDRE, Inc.** | | | | | | |
| FDRE, Inc. | 03/31/2021 | Check | wire transf | April 1st mortgage pmts 19 Units x $1,100 | Homemakers Wells Fargo Checking | -$20,900.00 |
| FDRE, Inc. | 04/23/2021 | Check | 2681 | May 1, 2021 mortgages Cape Crossing | Homemakers Wells Fargo Checking | -$43,695.61 |
| FDRE, Inc. | 04/23/2021 | Check | 2682 | Loan Modification-103 Parrotfish B2 #101 | Homemakers Wells Fargo Checking | -$1,600.00 |
| FDRE, Inc. | 07/06/2021 | Check | 2686 | July 2021 pmt minus $5107.02 overpay for may & June Unit 202-406 | Homemakers Wells Fargo Checking | -$61,328.19 |
| FDRE, Inc. | 08/03/2021 | Check | 2688 | August 2021 Payment | Homemakers Wells Fargo Checking | -$66,435.21 |
| FDRE, Inc. | 09/22/2021 | Check | ACH Pmt | Sept 1st mortage pmts + 5% late fee | Homemakers Wells Fargo Checking | -$70,806.97 |
| FDRE, Inc. | 09/30/2021 | Check | 2695 | Oct 1, 2021 pmt on 10 units minus credit | Homemakers Wells Fargo Checking | -$23,976.78 |
| FDRE, Inc. | 10/25/2021 | Check | 2699 | Nov 1st payment | Homemakers Wells Fargo Checking | -$25,025.78 |
| FDRE, Inc. | 11/23/2021 | Check | 2704 | Dec 1st pmt | Homemakers Wells Fargo Checking | -$25,025.78 |
| FDRE, Inc. | 12/27/2021 | Check | 2708 | January 1, 2022 pmt on (10) units | Homemakers Wells Fargo Checking | -$25,025.78 |
| FDRE, Inc. | 01/21/2022 | Check | 2712 | february 1st pmt on (10) units | Homemakers Wells Fargo Checking | -$25,025.78 |
| FDRE, Inc. | 01/28/2022 | Check | wire | (19) mortgage pmts for Oct 1, Nov 1, Dec 1, Jan 1) | Homemakers Wells Fargo Checking | -$173,919.61 |
| FDRE, Inc. | 02/10/2022 | Check | 2713 | March 1st payment on (10) mortgages-Cape Crossing | Homemakers Wells Fargo Checking | -$25,025.78 |
| FDRE, Inc. | 03/08/2022 | Check | 2726 | April 1st mortgage pmts on (10) cape crossing units | Homemakers Wells Fargo Checking | -$25,025.78 |
| FDRE, Inc. | 04/19/2022 | Check | 2730 | may 1, 2022 payment - (10) units | Homemakers Wells Fargo Checking | -$25,025.78 |
| FDRE, Inc. | 05/18/2022 | Check | 2731 | June 1st Mortgage on (10) units Cape Crossing | Homemakers Wells Fargo Checking | -$25,025.78 |
| FDRE, Inc. | 06/09/2022 | Check | 2736 | 7/1/22 monthly pmt | Homemakers Wells Fargo Checking | -$25,025.78 |
| FDRE, Inc. | 07/01/2022 | Check | 2742 | August 1st pmt on (10) units | Homemakers Wells Fargo Checking | -$25,025.78 |
| FDRE, Inc. | 08/15/2022 | Check | 2746 | LOST BY USPS - sept 1st 2022 pmt / stop pmt reference #A223747139 | Homemakers Wells Fargo Checking | $0.00 |
| FDRE, Inc. | 08/25/2022 | Check | 2747 | REPLACEMENT Sept 1 2022 pmt | Homemakers Wells Fargo Checking | -$25,025.78 |
| FDRE, Inc. | 09/28/2022 | Check | 2749 | Oct 1st Payment on (29) units | Homemakers Wells Fargo Checking | -$25,025.78 |
| FDRE, Inc. | 10/24/2022 | Check | 2752 | Nov 1st payment on (10) units | Homemakers Wells Fargo Checking | -$25,025.78 |
| FDRE, Inc. | 11/21/2022 | Check | 2755 | December 1st mortgage pmt (10 units) | Homemakers Wells Fargo Checking | -$25,025.78 |
| FDRE, Inc. | 12/26/2022 | Check | 2778 | Jan 1st pmt - 2709 Cutlass-104 | Homemakers Wells Fargo Checking | -$2,586.08 |
| FDRE, Inc. | 01/13/2023 | Check | 2781 | Feb 1st pmt on 2709 Cutlass #104 mortgage | Homemakers Wells Fargo Checking | -$2,586.08 |
| FDRE, Inc. | 02/14/2023 | Check | 2784 | March 1st pmt - 2709 Cutlass #104 | Homemakers Wells Fargo Checking | -$2,586.08 |
| FDRE, Inc. | 03/22/2023 | Check | 2787 | April 1st pmt on 2709 Cutlass 104 | Homemakers Wells Fargo Checking | -$2,586.08 |
| FDRE, Inc. | 04/21/2023 | Check | 2790 | May 1st pmt on (1) unit | Homemakers Wells Fargo Checking | -$2,586.08 |
| FDRE, Inc. | 11/08/2023 | Bill Payment (Check) | 2 | -- | Clearing Account | -$6,000.00 |
| **Total for FDRE, Inc.** | | | | | | -$832,452.59 |
| **TACIRA, LLC** | | | | | | |
| TACIRA, LLC | 04/23/2021 | Check | 2680 | Jan-Feb-Mar-May 2021 Pmts | Homemakers Wells Fargo Checking | -$2,076.00 |
| TACIRA, LLC | 07/06/2021 | Check | 2685 | July 2021 Pmt | Homemakers Wells Fargo Checking | -$500.00 |
| TACIRA, LLC | 08/03/2021 | Check | 2690 | August 2021 Payment | Homemakers Wells Fargo Checking | -$500.00 |
| TACIRA, LLC | 09/28/2021 | Check | 2694 | Sept 1, 2021 pmt plus 5% late fee | Homemakers Wells Fargo Checking | -$525.00 |
| TACIRA, LLC | 09/30/2021 | Check | 2697 | October 1, 2021 pmt | Homemakers Wells Fargo Checking | -$500.00 |
| TACIRA, LLC | 10/25/2021 | Check | 2701 | Nov 1st payment | Homemakers Wells Fargo Checking | -$500.00 |
| TACIRA, LLC | 11/23/2021 | Check | 2706 | Dec 1st pmt | Homemakers Wells Fargo Checking | -$500.00 |
| TACIRA, LLC | 12/27/2021 | Check | 2710 | Jan 1, 2022 pmt | Homemakers Wells Fargo Checking | -$500.00 |
| TACIRA, LLC | 01/11/2022 | Check | wire | 50% final payoff of Balloon due on 2nd & 3rd mortgage loan | Homemakers Wells Fargo Checking | -$104,578.60 |
| **Total for TACIRA, LLC** | | | | | | -$110,178.60 |
| **Tamamol, LLC** | | | | | | |
| Tamamol, LLC | 12/28/2022 | Check | 2779 | Jan 1st pmt - (9) Units | Homemakers Wells Fargo Checking | -$22,439.70 |
| Tamamol, LLC | 01/13/2023 | Check | 2782 | Feb 1st pmt on (9) mortgages | Homemakers Wells Fargo Checking | -$22,439.70 |
| Tamamol, LLC | 02/14/2023 | Check | 2785 | March 1st pmt on (9) units | Homemakers Wells Fargo Checking | -$22,439.70 |
| Tamamol, LLC | 03/29/2023 | Check | 2788 | April 1st mortgage pmt on (9) cape crossing units | Homemakers Wells Fargo Checking | -$22,439.70 |
| Tamamol, LLC | 04/21/2023 | Check | 2791 | May 1st mortgage pmt on (9) units | Homemakers Wells Fargo Checking | -$22,439.70 |
| **Total for Tamamol, LLC** | | | | | | -$112,198.50 |
| | | | | | | -$1,166,008.69 |

# EXHIBIT 2

Transcript of Hearing, November 19, 2026
(Realtime Reporters, Inc., certified November 22, 2026)
In re Homemakers Real Estate, LLC, No. 6:25-bk-05570-GER (Bankr. M.D. Fla.)

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:25-bk-05570-GER

IN RE:

HOMEMAKERS REAL ESTATE, LLC,

DEBTOR.

______________________________/

HEARING

BEFORE: THE HONORABLE GRACE E. ROBSON

DATE: NOVEMBER 19, 2026

TIME: 9:30 a.m. - 9:34 a.m.

LOCATION: UNITED STATES BANKRUPTCY COURT
400 WEST WASHINGTON STREET
ORLANDO, FL 32801

A P P E A R A N C E S

APPEARING IN PERSON:

AUDREY ALESKOVSKY, ESQUIRE, on behalf of U.S. Trustee

FRANK AMODEO, Pro Se

JEFFREY AINSWORTH, ESQUIRE, on behalf of PEDIXON and ZPD

JUSTIN LUNA, ESQUIRE, on behalf of Mainstreet Community Bank

APPEARING VIA ZOOM:

RHYS LEONARD on behalf of Lara Fernandez, Chapter 11 Trustee

GERALD WASHINGTON, ESQUIRE, on behalf of Carton Family Trust and Tamamoi LLC

I N D E X

Mr. Amodeo regarding Third ......................5
Amended
Disclosure Statement
Ruling by the Court ...........................5
Request for expedited ruling ...................6
on the
ability to object withdrawn by Mr. Amodeo
CERTIFICATE OF REPORTER .......................9

P R O C E E D I N G S

THE CLERK: All rise. The United States Bankruptcy Court for the Middle District of Florida is now in session, the Honorable Grace E. Robson presiding. God save the United States and this Honorable Court.

THE COURT: Good morning. Please be seated. We're here on Homemakers Real Estate LLC, Case Number 25-5570. Let's take appearances in the courtroom first. Ms. Aleskovsky.

MS. ALESKOVSKY: Good morning, Your Honor. Audrey Aleskovsky on behalf of the United States Trustee.

THE COURT: Okay. Mr. Luna.

MR. LUNA: Good morning, Your Honor. Justin Luna on behalf of Mainstreet Community Bank.

MR. AMODEO: Frank Amodeo, Pro Se, the plan proponent.

THE COURT: Okay. And then on Zoom, Mr. Leonard.

MR. LEONARD: Good morning, Your Honor. Rhys Leonard on behalf of Lara Fernandez, the Chapter 11 Trustee.

THE COURT: Okay. Good morning. And Mr. Washington.

MR. WASHINGTON: Good morning, Your Honor. Gerald Washington on behalf of Carton Family Trust and Tamamoi LLC.

THE COURT: All right. Thank you. Is there anyone that wanted to make an appearance that has not done so? No? Okay.

So, Mr. Amodeo, we're here on your Third Amended Disclosure Statement. I didn't see, at least as of yesterday, whether there were any responses or objections. But given the time frame slip, let's see first if you've received any comments?

MR. AMODEO: I have received none. I have talked to a variety of the creditors and I think most are ready for the 3rd, so...

THE COURT: Okay. Did anyone want to be heard in connection with the Third Amended Disclosure Statement as far as deficiency? Obviously confirmation is a separate issue, but any reason why we shouldn't allow the disclosure statement and plan to go out? No? Okay.

So then I've reviewed it. It's very thorough. And we'll go ahead and let that be circulated to the creditors for -- to solicit the votes. So, Mr. Amodeo, I guess you'll be taking

care of that?

MR. AMODEO: I will take care of that, Your Honor.

THE COURT: All right. In the meanwhile, what else do we need to -- I guess that kind of takes care of everything that's set for today. And I know -- part of your paper asked for an expedited ruling on the ability to object to --

MR. AMODEO: Yes.

THE COURT: So, I mean, it's not set separately, or anything like that. But why do you think it's necessary now? Or do you think it's --

MR. AMODEO: No, I still think it's necessary now because the creditors who may have objections will be voting on the Trustee's plan. But let me just -- I'll pull that back for the moment, Your Honor. I think I'll live on my plan and my evidence on the 3rd, so...

THE COURT: Okay. So if -- well --

MR. AMODEO: I'll withdraw it without prejudice. Let me do that.

THE COURT: Okay. All right. So then withdrawn without prejudice. And do you know the document number? I know it's like 400 and

something, but do you -- okay, I'll find it and we'll make a note of it.

MR. AMODEO: 467, I think, but I'll take a look at it when I get back to the office.

THE COURT: All right. Anything else we should discuss this morning? No? Okay. So then, I guess, Mr. Luna, we'll see you in a little bit as well, I guess, for the other cases.

Okay. So if there's nothing else, then I'll issue the order and then Mr. Amodeo can -- I guess -- do you get electronic notices in the case?

MR. AMODEO: No, with this case. But I'm monitoring Pacer continually. So I'll know when it comes out and I'll have everything ready to go in the mail this afternoon.

THE COURT: Okay. All right. Very good. So then -- oh, Mr. Ainsworth, did you want to make an appearance? We're almost done. We're basically done here.

MR. AINSWORTH: Just watching, Your Honor. But Jeffrey Ainsworth on behalf of PEDIXON.

THE COURT: Okay. So just to let you know, I approved Mr. Amodeo's Third Amended Disclosure Statement for solicitation. I don't know if you

had a position that you wanted to take on that.

MR. AINSWORTH: No position, Your Honor.

THE COURT: Okay. All right. Well, I appreciate you all coming here in this weather. It's quite something. So glad to see you're dry. He has a raincoat there.

All right. So then court is adjoined until 10:00.

(WHEREUPON, the proceeding was concluded at 9:34 a.m.)

CERTIFICATE OF REPORTER

STATE OF FLORIDA

COUNTY OF ORANGE

I, SANDRA A. BATTAGLIA, NOTARY PUBLIC, CERTIFY THAT I WAS AUTHORIZED TO AND MY OFFICE DID TRANSCRIBE, FROM DIGITAL RECORDING, THE FOREGOING PROCEEDINGS AND THAT THE TRANSCRIPT IS A TRUE RECORD.

I FURTHER CERTIFY THAT I AM NOT A RELATIVE, EMPLOYEE, ATTORNEY OF COUNSEL OF ANY OF THE PARTIES, NOR AM I FINANCIALLY INTERESTED IN THE ACTION.

DATED THIS 22ND DAY OF NOVEMBER 2026.

Sandra A. Battaglia

SANDRA A. BATTAGLIA, RPR, FPR-C
NOTARY PUBLIC - STATE OF FLORIDA

**1**

10:00 [1] 8/8
11 [2] 2/9 4/23
19 [1] 1/13

**2**

2026 [2] 1/13 9/13
22ND [1] 9/13
25-5570 [1] 4/9

**3**

32801 [1] 1/16
3rd [2] 5/15 6/19

**4**

400 [2] 1/15 6/25
467 [1] 7/3

**5**

5570 [1] 4/9

**6**

6:25-bk-05570-GER [1] 1/4

**9**

9:30 [1] 1/14
9:34 [2] 1/14 8/10

**A**

a.m [3] 1/14 1/14 8/10
ability [2] 3/8 6/8
ACTION [1] 9/12
adjoined [1] 8/7
afternoon [1] 7/16
ahead [1] 5/23
AINSWORTH [3] 2/5 7/18 7/22
ALESKOVSKY [3] 2/3 4/10 4/12
all [9] 4/2 5/4 6/4 6/23 7/5 7/17 8/3 8/4 8/7
allow [1] 5/20
almost [1] 7/19
AM [2] 9/10 9/12
Amended [4] 3/3 5/8 5/17 7/24
AMODEO [7] 2/4 3/2 3/8 4/17 5/7 5/25 7/10
Amodeo's [1] 7/24
any [4] 5/9 5/12 5/20 9/11
anyone [2] 5/5 5/16
anything [2] 6/11 7/5
appearance [2] 5/5 7/19
appearances [1] 4/9
APPEARING [2] 2/2 2/8
appreciate [1] 8/4
approved [1] 7/24
are [1] 5/15
as [4] 5/9 5/18 5/18 7/8
asked [1] 6/7
at [3] 5/8 7/4 8/9
ATTORNEY [1] 9/11
AUDREY [2] 2/3 4/12
AUTHORIZED [1] 9/7

**B**

back [2] 6/17 7/4
Bank [2] 2/7 4/16
BANKRUPTCY [3] 1/2 1/15 4/3
basically [1] 7/20
BATTAGLIA [2] 9/6 9/19
be [5] 4/7 5/16 5/23 5/25 6/16
because [1] 6/15
BEFORE [1] 1/12
behalf [10]
bit [1] 7/8
bk [1] 1/4
but [8] 5/10 5/19 6/11 6/17 7/1 7/3 7/13 7/22

**C**

can [1] 7/10
care [3] 6/1 6/2 6/6
Carton [2] 2/10 5/2
case [4] 1/4 4/8 7/12 7/13
cases [1] 7/8
CERTIFICATE [2] 3/9 9/2
CERTIFY [2] 9/6 9/10
Chapter [2] 2/9 4/23
circulated [1] 5/24
comes [1] 7/15
coming [1] 8/4
comments [1] 5/12
Community [2] 2/7 4/16
concluded [1] 8/9
confirmation [1] 5/19
connection [1] 5/17
continually [1] 7/14
COUNSEL [1] 9/11
COUNTY [1] 9/4
court [6] 1/2 1/15 3/5 4/3 4/6 8/7
courtroom [1] 4/10
creditors [3] 5/14 5/24 6/15

**D**

DATE [1] 1/13
DATED [1] 9/13
DAY [1] 9/13
DEBTOR [1] 1/8
deficiency [1] 5/18
did [3] 5/16 7/18 9/7
didn't [1] 5/8
DIGITAL [1] 9/8
disclosure [5] 3/4 5/8 5/18 5/20 7/24
discuss [1] 7/6
DISTRICT [2] 1/2 4/3
DIVISION [1] 1/3
do [7] 6/5 6/11 6/12 6/22 6/24 7/1 7/11
document [1] 6/25
don't [1] 7/25
done [3] 5/6 7/19 7/20
dry [1] 8/5

**E**

electronic [1] 7/11
else [3] 6/5 7/5 7/9
EMPLOYEE [1] 9/11
ESQUIRE [4] 2/3 2/5 2/6 2/10
ESTATE [2] 1/7 4/8
everything [2] 6/6 7/15
evidence [1] 6/19
expedited [2] 3/6 6/8

**F**

Family [2] 2/10 5/2
far [1] 5/18
Fernandez [2] 2/9 4/22
FINANCIALLY [1] 9/12
find [1] 7/1
first [2] 4/10 5/11
FL [1] 1/16
FLORIDA [4] 1/2 4/4 9/3 9/20
FOREGOING [1] 9/8
FPR [1] 9/19
FPR-C [1] 9/19
frame [1] 5/11
FRANK [2] 2/4 4/17
FURTHER [1] 9/10

**G**

GER [1] 1/4
GERALD [2] 2/10 5/2
get [2] 7/4 7/11
given [1] 5/10
glad [1] 8/5
go [3] 5/21 5/23 7/15
God [1] 4/5
good [7] 4/7 4/11 4/15 4/21 4/24 5/1 7/17
GRACE [2] 1/12 4/5
guess [5] 5/25 6/5 7/7 7/8 7/11

**H**

had [1] 8/1
has [2] 5/5 8/6
have [4] 5/13 5/13 6/15 7/15
He [1] 8/6
heard [1] 5/17
HEARING [1] 1/11
here [4] 4/8 5/7 7/20 8/4
HOMEMAKERS [2] 1/7 4/8
Honor [8] 4/11 4/15 4/21 5/1 6/3 6/18 7/21 8/2
HONORABLE [3] 1/12 4/4 4/6

**I**

I'll [8] 6/17 6/18 6/21 7/1 7/3 7/9 7/14 7/15
I'm [1] 7/13
I've [1] 5/22
if [4] 5/11 6/20 7/9 7/25
in [11]
INTERESTED [1] 9/12
is [5] 4/4 5/4 5/19 8/7 9/9
issue [2] 5/19 7/10
it [6] 5/22 6/21 7/1 7/2 7/4 7/15
it's [7] 5/22 6/10 6/12 6/13 6/14 6/25 8/5

**J**

JEFFREY [2] 2/5 7/22
just [3] 6/17 7/21 7/23
JUSTIN [2] 2/6 4/15

**K**

kind [1] 6/5
know [6] 6/7 6/24 6/25 7/14 7/23 7/25

**L**

Lara [2] 2/9 4/22
least [1] 5/9
LEONARD [3] 2/9 4/20 4/22
let [4] 5/23 6/17 6/22 7/23
let's [2] 4/9 5/11
like [2] 6/11 6/25
little [1] 7/8
live [1] 6/18
LLC [4] 1/7 2/11 4/8 5/3
LOCATION [1] 1/15
look [1] 7/4
LUNA [4] 2/6 4/14 4/16 7/7

**M**

mail [1] 7/16
Mainstreet [2] 2/6 4/16
make [3] 5/5 7/2 7/19

**M**

may [1] 6/15
me [2] 6/17 6/22
mean [1] 6/10
meanwhile [1] 6/4
MIDDLE [2] 1/2 4/3
moment [1] 6/18
monitoring [1] 7/14
morning [7] 4/7 4/11 4/15 4/21 4/24 5/1 7/6
most [1] 5/15
Mr [9] 3/2 3/8 4/14 5/7 5/25 7/7 7/10 7/18 7/24
Mr. [2] 4/20 4/25
Mr. Leonard [1] 4/20
Mr. Washington [1] 4/25
Ms [1] 4/10
my [3] 6/18 6/19 9/7

**N**

necessary [2] 6/12 6/15
need [1] 6/5
NO [7] 1/4 5/6 5/21 6/14 7/6 7/13 8/2
none [1] 5/13
NOR [1] 9/12
not [3] 5/6 6/10 9/10
NOTARY [2] 9/6 9/20
note [1] 7/2
nothing [1] 7/9
notices [1] 7/11
NOVEMBER [2] 1/13 9/13
now [3] 4/4 6/12 6/15
number [2] 4/9 6/25

**O**

object [2] 3/8 6/8
objections [2] 5/10 6/16
Obviously [1] 5/19
office [2] 7/4 9/7
oh [1] 7/18
okay [14]
on [19]
or [3] 5/10 6/11 6/12
ORANGE [1] 9/4
order [1] 7/10
ORLANDO [2] 1/3 1/16
other [1] 7/8
out [2] 5/21 7/15

**P**

Pacer [1] 7/14
paper [1] 6/7
part [1] 6/7
PARTIES [1] 9/11
PEDIXON [2] 2/5 7/22
PERSON [1] 2/2
plan [4] 4/17 5/21 6/16 6/18
Please [1] 4/7
position [2] 8/1 8/2
prejudice [2] 6/22 6/24
presiding [1] 4/5
Pro [2] 2/4 4/17
proceeding [1] 8/9
PROCEEDINGS [1] 9/8
proponent [1] 4/18
PUBLIC [2] 9/6 9/20
pull [1] 6/17

**Q**

quite [1] 8/5

**R**

raincoat [1] 8/6
RE [1] 1/6
ready [2] 5/15 7/15
REAL [2] 1/7 4/8
reason [1] 5/20
received [2] 5/11 5/13
RECORD [1] 9/9
RECORDING [1] 9/8
regarding [1] 3/2
RELATIVE [1] 9/10
REPORTER [2] 3/9 9/2
Request [1] 3/6
responses [1] 5/10
reviewed [1] 5/22
RHYS [2] 2/9 4/22
right [7] 5/4 6/4 6/23 7/5 7/17 8/3 8/7
rise [1] 4/2
ROBSON [2] 1/12 4/5
RPR [1] 9/19
ruling [3] 3/5 3/6 6/8

**S**

SANDRA [2] 9/6 9/19
save [1] 4/5
Se [2] 2/4 4/17
seated [1] 4/7
see [4] 5/8 5/11 7/7 8/5
separate [1] 5/19
separately [1] 6/11
session [1] 4/4
set [2] 6/6 6/10
should [1] 7/6
shouldn't [1] 5/20
slip [1] 5/11
so [16]
solicit [1] 5/24
solicitation [1] 7/25
something [2] 7/1 8/5
STATE [2] 9/3 9/20
statement [5] 3/4 5/8 5/18 5/21 7/25
STATES [5] 1/2 1/15 4/2 4/6 4/12
still [1] 6/14
STREET [1] 1/15

**T**

take [4] 4/9 6/2 7/3 8/1
takes [1] 6/6
taking [1] 5/25
talked [1] 5/14
Tamamoi [2] 2/11 5/3
Thank [1] 5/4
that [14]
that's [1] 6/6
then [8] 4/19 5/22 6/23 7/7 7/9 7/10 7/18 8/7
there [3] 5/4 5/9 8/6
there's [1] 7/9
think [6] 5/14 6/12 6/12 6/14 6/18 7/3
Third [4] 3/2 5/7 5/17 7/24
this [6] 4/6 7/6 7/13 7/16 8/4 9/13
thorough [1] 5/23
time [2] 1/14 5/10
today [1] 6/6
TRANSCRIBE [1] 9/7
TRANSCRIPT [1] 9/9
TRUE [1] 9/9
Trust [2] 2/11 4/3
Trustee [4] 2/3 2/9 4/13 4/23
Trustee's [1] 6/16

**U**

U.S [1] 2/3
UNITED [5] 1/2 1/15 4/2 4/5 4/12
until [1] 8/7

**V**

variety [1] 5/14
very [2] 5/22 7/17
VIA [1] 2/8
votes [1] 5/25
voting [1] 6/16

**W**

want [2] 5/16 7/18
wanted [2] 5/5 8/1
was [2] 8/9 9/7
WASHINGTON [4] 1/15 2/10 4/25 5/2
watching [1] 7/21
we [3] 5/20 6/5 7/5
we'll [3] 5/23 7/2 7/7
we're [4] 4/8 5/7 7/19 7/19
weather [1] 8/4
well [3] 6/20 7/8 8/3
were [1] 5/9
WEST [1] 1/15
what [1] 6/5
when [2] 7/4 7/14
WHEREUPON [1] 8/9
whether [1] 5/9
who [1] 6/15
why [2] 5/20 6/11
will [2] 6/2 6/16
withdraw [1] 6/21
withdrawn [2] 3/8 6/24
without [2] 6/21 6/24

**Y**

Yes [1] 6/9
yesterday [1] 5/9
you [12]
you'll [1] 5/25
you're [1] 8/5
you've [1] 5/11
your [10]

**Z**

ZOOM [2] 2/8 4/19
ZPD [1] 2/5