FILED ORL INTAKE - USBC
24 NOV 2026 PM3:41

**United States Bankruptcy Court**
**Middle District of Florida**
**Orlando Division**

In re: Case No. 6:25-bk-05570-GER

Homemakers Real Estate, LLC, Chapter 11

Debtor.
_______________________________________/

# FRANK AMODEO'S RENEWED MOTION FOR LEAVE TO OBJECT TO CLAIMS 63-1 AND 64-1 OF MAINSTREET COMMUNITY BANK OF FLORIDA

Paragraph 3 of the Case Management Order requires leave before any party files an objection to a proof of claim. (Doc. 359 ¶ 3). I renew my request for leave to object to Claims 63-1 and 64-1 of Mainstreet Community Bank of Florida, filed together for $5,713,572.21. I attach the objection I first proposed on October 28, 2026, unchanged, as Exhibit 1. (Doc. 448 Ex. 1). This court should grant leave now, so that this court determines both claims before anyone allows them, sells their collateral, or pays Mainstreet a dollar.

## On November 19, 2026, I withdrew a request for speed, not my objection to the Mainstreet claims.

My Third Amended Disclosure Statement asked this court to rule on an expedited basis on my right to object, so that claims the law does not allow would not cast votes that count. (Doc. 467 at 12).

At the November 19, 2026 hearing, this court asked why I needed that expedited ruling now. (Ex. 2, Tr. 6:4–13). I withdrew the request without prejudice, and I identified the paper that made it as Doc. 467. (Ex. 2, Tr. 6:14–7:4). I said nothing on the record about withdrawing an objection to any claim.

The order entered the same day reaches further. The order considers three of my motions withdrawn without prejudice: my motion for leave to object to the Mainstreet claims, my motion for leave to object to the Tamamoi and Carton claims, and my section 502(d) motion. (Doc. 486). I abandoned none of them. Rather than ask this court to revisit its order, I renew the request for leave here.

I gave up the timing because I will rely on my plan and my evidence at the confirmation hearing, not on the vote. (Ex. 2, Tr. 6:17–19). On December 3, 2026, this court will hear the Trustee's plan and mine together, along with motions under section 1129(b). (Doc. 465 ¶ 1(c); Doc. 485 ¶ 5(b)). The claims fight still matters, and it now matters for a different reason: the Estate's money.

**Four days later, the Trustee asked this court to allow both Mainstreet claims in full, and the Trustee will not object to them.**

On November 23, 2026, the Trustee and Mainstreet jointly moved this court to deem Claims 63-1 and 64-1 allowed secured claims of $5,713,572.21 "for all purposes in this case." (Doc. 493 ¶¶ 12–13). The same motion lets Mainstreet credit bid up to $5,100,000 for all seventeen Units and pays Mainstreet the net

proceeds of any sale. (Doc. 493 ¶¶ 2, 15). In return, Mainstreet pays the Estate $100,000, reduced by every dollar of rent the Trustee collects from the Units before closing. (Doc. 493 ¶ 15).

The joint motion settles the Estate's defenses to the Mainstreet claims at face value. A compromise of the Estate's claims requires this court to weigh the probability of success, the complexity of the litigation, and the paramount interest of creditors. *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990). The joint motion weighs none of them. The joint motion asks this court to allow $1,389,871.94 above the principal Mainstreet swore to, and to release defenses worth millions, in a motion about bidding procedures. (Doc. 73 ¶¶ 12, 20; Doc. 493 ¶ 13).

The Case Management Order's own authority gives leave when the trustee "refuses to object, notwithstanding a request to do so." (Doc. 359 at 2 n.7) (quoting *In re Thompson*, 965 F.2d 1136, 1147 (1st Cir. 1992)). The Trustee examined the Mainstreet claims and "has not objected to the validity" of either one. (Doc. 434 at 13). On October 19, 2026, my Second Amended Disclosure Statement set out the Estate's claims against Mainstreet in full. (Doc. 441 at 26–30). On October 28, 2026, I filed my objection with my first motion for leave. (Doc. 448 Ex. 1). The Trustee answered by moving to allow the claims in full. A trustee who asks this

court to allow a claim has refused to object to it. The Trustee's plan leaves every claim objection to the Trustee alone. (Doc. 394 at 20).

Section 502(a) allows a claim "unless a party in interest . . . objects." *11 U.S.C. § 502(a)*. I am a creditor of this Estate and the proponent of a competing plan. (Claim 1-1; Docs. 467, 468). Every creditor who expects payment from this Estate has a stake in what the Estate keeps.

**Mainstreet stands near the center of the Debtor's collapse, and my objection proves it from Mainstreet's own papers.**

- Neither claim attaches a note, a mortgage, or an itemization, and together the claims exceed the principal Mainstreet swore to by $1,389,871.94. (Doc. 73 ¶¶ 12, 20; Doc. 395 at 29). Neither claim is prima facie evidence of its validity or amount. *Fed. R. Bankr. P. 3001(c)(1), (d), (f)*.

- In February 2022, as a condition of its loan, Mainstreet dictated the Debtor's arrangement with Canaveral Crossroads and cost the Debtor its reservation priority and its share of the resort's amenity revenue, $2,957,696 through October 2026. (Doc. 441 at 26–30). The Estate recoups that loss against Claim 64-1, and limitations do not bar recoupment. *11 U.S.C. § 558*; *Allie v. Ionata*, 503 So. 2d 1237, 1239 (Fla. 1987). Recoupment caps Claim 64-1 at $653,898.47.

- In 2025, Mainstreet left its own assignment of rents unenforced while PEDixon kept the Debtor's rents, and Mainstreet negotiated instead to sell its mortgages to PEDixon. (Doc. 256 at 13:15–19; Doc. 441 at 27–28). Mainstreet did not earn its default charges.

The Estate's damages above the claims, and the subordination of whatever remains, belong in an adversary proceeding. *Fed. R. Bankr. P. 3007(b)*. My objection reserves both. (Ex. 1).

**This court should decide the objection before it allows either claim and before the Trustee pays Mainstreet anything.**

A claim stands allowed until a party in interest objects. *11 U.S.C. § 502(a).* Under the Trustee's own plan, the Trustee makes no distribution on a disputed claim until the claim becomes allowed. (Doc. 394 at 20–21). An objection on file therefore keeps the Estate's money in the Estate until this court rules.

This court hears a claim objection on at least thirty days' notice. *Fed. R. Bankr. P. 3007(a)(1).* On December 3, 2026, this court will hear the joint motion's bidding procedures. (Doc. 493 ¶ 17). By December 31, 2026, the joint motion would close the sale and pay Mainstreet the proceeds. (Doc. 493 ¶¶ 15, 17). Each day without leave brings Mainstreet closer to an order that allows its claims by default and to a closing that pays them. Proceeds paid to Mainstreet will not come back. The claims fight belongs before the money moves.

**Relief Requested**

1. Grant leave under paragraph 3 of the Case Management Order to object to Claims 63-1 and 64-1 of Mainstreet Community Bank of Florida.

2. Deem the objection attached as Exhibit 1 filed on the date of the order granting leave, and set it for hearing on the earliest date *Fed. R. Bankr. P. 3007(a)(1)* permits. I will serve the objection and its notice as Rule 3007(a) requires.

3. Until this court determines the objection, decline the joint motion's request to deem either claim allowed, and direct that no sale proceeds be distributed on account of either claim. (Doc. 493 ¶ 13).

4. Grant such relief as is appropriate or fair.

Respectfully submitted this 25th day of November, 2026.

Frank L. Amodeo
*Pro se*
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32801@gmail.com

## CERTIFICATE OF SERVICE

On November 25, 2026, I filed this motion and its Exhibits 1 and 2 in paper form with the clerk of court. I am not a registered CM/ECF user. When the clerk dockets this motion, the CM/ECF system will serve the motion and its exhibits electronically on every party registered to receive notice in this case, including the Chapter 11 Trustee, the Trustee's counsel, counsel for Mainstreet Community Bank of Florida, and the United States Trustee.

Dated: November 25, 2026

Frank L. Amodeo
*Pro se*

# EXHIBIT 1

Frank Amodeo's Objection to Claims 63-1 and 64-1
of Mainstreet Community Bank of Florida, with Exhibits A-D

In re Homemakers Real Estate, LLC, No. 6:25-bk-05570-GER (Bankr. M.D. Fla.)

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re: Case No. 6:25-bk-05570-GER

HOMEMAKERS REAL ESTATE, LLC, Chapter 11

Debtor.
______________________________________/

## FRANK AMODEO'S OBJECTION TO CLAIMS 63-1 AND 64-1 OF MAINSTREET COMMUNITY BANK OF FLORIDA

## NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING

If you object to the relief requested in this paper you must file a response with the Clerk of Court at the George C. Young Federal Courthouse, 400 W Washington Street, Suite 5100, Orlando, Florida 32801 within thirty (30) days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

**You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.**

On July 30, 2026, Mainstreet Community Bank of Florida filed Claim 64-1 for $4,793,063.37 and Claim 63-1 for $920,508.84, each as fully secured. Neither claim attaches a note, a mortgage, or a single line of the itemization Rule 3001 requires. Mainstreet's own stay-relief motion puts the principal of the two loans at $3,611,594.47 and $712,105.80. (Doc. 73 ¶¶ 12, 20). The claims carry $1,389,871.94 more than that, and Mainstreet has never said what it is. Claim 64-1 also rests on the February 17, 2022 loan that Mainstreet used to take the resort's amenities and reservation priority away from the Debtor. The Estate recoups the damages from that loan against the claim the loan created. I dispute every dollar of both claims above their stated principal, and every dollar of Claim 64-1 above $653,898.47.

**Neither claim carries the writings Rule 3001 requires, so neither is evidence of its validity or its amount.**

When a claim, or the lien securing it, "is based on a writing," the creditor "must file a copy with the proof of claim." *Fed. R. Bankr. P. 3001(c)(1)*. A claim that includes interest, fees, or other charges must attach an itemized statement of them. *Fed. R. Bankr. P. 3001(c)(2)(A)*. A creditor that claims a security interest must file "evidence that the security interest has been perfected." *Fed. R. Bankr. P. 3001(d)*. Mainstreet named a "Commercial Promissory Note Secured by Mortgage & Security Agreement" as the basis of each claim and a "Mortgage Lien" as the

basis of perfection, and it filed neither. (Claim 63-1 at 2; Claim 64-1 at 2). Each claim is three pages of Official Form 410 and nothing else.

Mainstreet knows what it left out. In December 2025 it attached both notes, both mortgages, the 2023 modification, and four guaranties to its motion for stay relief, and it swore that $3,611,594.47 of principal was due on Loan 4380371 and $712,105.80 on Loan 4383834. (Doc. 73 ¶¶ 4–20). Seven months later it claimed $1,181,468.90 more than that principal on Claim 64-1 and $208,403.04 more on Claim 63-1, at an 18 percent rate, with no statement of how any of it accrued. (Claim 63-1 at 2; Claim 64-1 at 2). The Trustee saw the same gap: "Mainstreet's asserted totals already exceed its principal by more than $1.3 million." (Doc. 395 at 29). Only a claim "signed and filed in accordance with these rules" is "prima facie evidence of the claim's validity and amount." *Fed. R. Bankr. P. 3001(f)*. These claims are not. Mainstreet carries the burden of proving every dollar above principal, and it has offered no evidence of any of it.

**In February 2022, Mainstreet used its loan to dictate the Debtor's arrangement with Canaveral Crossroads, and the Debtor lost the resort behind its Units.**

In April 2021, Canaveral Crossroads quitclaimed the resort's public property — the clubhouse, the pool and fitness facility, the sewage lift station, and the open land and sign parcel — to Canaveral Crossing Resorts, Inc., and the Cape Crossing Resort & Marina names and marks went with it. (O.R. Book 9077, Page 1557,

recorded Apr. 6, 2021; Ex. A). That arrangement gave the Debtor's Units first priority on every reservation the resort booked, and it gave the Debtor the margin the amenities and marks earned above their expenses and the original Crossroads investors' share. (Doc. 441 at 26).

On February 17, 2022, Mainstreet refinanced nineteen of the Debtor's Units with a $5,061,363 loan, and $4,822,072.69 of it retired the Campbell loans on those Units through FDRE, Inc. (Ex. B at 1, lines 1501, 1600). That is the loan behind Claim 64-1: the Debtor gave Mainstreet the Loan 4380371 mortgage that day, and on March 24, 2023 the parties renewed and modified it. (Doc. 73 ¶¶ 4–6). As a condition of the loan, Mainstreet dictated how the Debtor and Canaveral Crossroads would structure their contract, and its demand produced exactly the result it sought. On February 7, 2022, ten days before the closing, the deed returning the clubhouse, the pool, the lift station, and the open land from Canaveral Crossing Resorts, Inc. to Canaveral Crossroads was recorded. (O.R. Book 9407, Page 1642; Ex. D at 12, 16). The Debtor lost its reservation priority and its share of the amenity revenue, and for almost five years the returned properties have produced nothing for it. (Doc. 441 at 26–27).

Florida holds a party liable for tortious interference when it knows of a business relationship, interferes with it intentionally and without justification, and damages the plaintiff. *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127

(Fla. 1985). Motive does not matter: "The action is tortious, regardless of motive." *Id.* at 1128. Mainstreet knew of the Debtor's arrangement with Canaveral Crossroads, because it required the arrangement's undoing as a condition of its loan. Its own title commitment, issued to insure its mortgage, listed the April 2021 deed to Canaveral Crossing Resorts, Inc. in September 2021, and listed the deed returning the property to Canaveral Crossroads when the commitment was revised eight days before closing. (Ex. C at 4, 16; Ex. D at 4, 12, 16). No lender's justification covers that demand. Mainstreet's collateral was the nineteen Units, not the relationship between its borrower and a third party, and the revenue that would have repaid Mainstreet's own loan fell as a direct result.

**The Debtor's damages arise from the same loan as Claim 64-1, and the Estate recoups them against it.**

The Estate "shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses." *11 U.S.C. § 558*. A claim is disallowed to the extent it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." *11 U.S.C. § 502(b)(1)*. Recoupment is such a defense. It reduces a creditor's claim by the debtor's damages from the same transaction, and in Florida "the defense of recoupment may be asserted even though the underlying claim is barred by the applicable statute of limitations as an

independent cause of action." *Allie v. Ionata*, 503 So. 2d 1237, 1239 (Fla. 1987). Mainstreet's claim and the Debtor's damages come out of one closing. Mainstreet cannot enforce the loan's repayment terms and disown the condition it attached to the loan.

The damages are the revenue the Debtor's Units would have earned with first priority on every resort reservation and the Debtor's share of the amenity revenue, over the revenue they actually earned. The resort's rental program has always split revenue equally between operator and owner, and on that split the Debtor's loss runs $52,816 a month. From March 2022 through October 2026, fifty-six months, it totals $2,957,696, and it grows every month the Debtor goes without the resort behind its Units. (Doc. 441 at 30). Recouped against the principal Mainstreet itself swore to, Claim 64-1 can be allowed in no amount above this:

| | |
|---|---|
| Principal on Loan 4380371 (Doc. 73 ¶ 12) | $3,611,594.47 |
| Debtor's damages, Mar. 2022 – Oct. 2026 | (2,957,696.00) |
| **Most Claim 64-1 can be allowed** | **$653,898.47** |

Recoupment is a defense to allowance, so it belongs in this objection. The Estate's damages above Mainstreet's claim, and the equitable subordination of what remains, are affirmative relief the Recovery Trust will pursue by adversary proceeding. *Fed. R. Bankr. P. 3007(b), 7001*. Neither is asked for here.

**In 2025, Mainstreet left its assignment of rents unenforced while PEDixon took the rents, and then negotiated to sell PEDixon its mortgages.**

In February 2025, Mr. Johnson and I met with Mainstreet and told it that it had to enforce the assignment of rents in its mortgages to stop the diversion of the Debtor's rents to PEDixon. (Doc. 441 at 27–28). Mainstreet's assignment came first. This court later found that Mr. Dixon "has been retaining all of the rental income, despite the mortgagee's assignment of rent provisions that are prior in time to the loan with Mr. Dixon." (Doc. 256 at 13:15–19). Mainstreet itself declared the loans in default because the Debtor's rents had been assigned to "a separate entity." (Doc. 73 ¶¶ 10(c), 18(c)). It did not enforce its assignment. It discussed instead a short sale of its mortgages to PEDixon, the lender diverting the rents. (Doc. 441 at 28). The sale did not close, but the default interest and charges Mainstreet now claims accrued while the remedy that would have cured the default sat in its own mortgages.

Conduct of that kind supports subordination, and it need not concern the claim itself: "inequitable conduct directed against the bankrupt or its creditors may be sufficient to warrant subordination of a claim irrespective of whether it was related to the acquisition or assertion of that claim." *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1977). At a minimum, a creditor that let the rents go to PEDixon has not earned allowance of $1,389,871.94 in unexplained default charges on proof it never filed.

**The claims must be resolved before Mainstreet votes them.**

The Trustee "has not objected to the validity of the Mainstreet secured Claims," and reserves only a review of "the payoff amounts asserted." (Doc. 434 at 13). Her plan places both claims in voting Classes 1 and 2. (Doc. 394 at 16, 22). Ballots are due seven days before the November 19, 2026 confirmation hearing. (Doc. 437 ¶¶ 3, 9). A claim subject to an objection votes only if this court temporarily allows it after notice and a hearing. *Fed. R. Bankr. P. 3018(a).* Mainstreet should not vote $5,713,572.21 on claims it has not documented, against an Estate that holds a defense to most of them. Until this objection is decided, the Plan escrows every payment on both claims. (Doc. 440 § 4.1(e)).

**Relief Requested**

1. Sustain this objection and allow Claim 64-1 of Mainstreet Community Bank of Florida, if at all, as a secured claim in an amount not exceeding $653,898.47, and disallow the rest.

2. Sustain this objection and allow Claim 63-1 of Mainstreet Community Bank of Florida, if at all, as a secured claim in an amount not exceeding its $712,105.80 principal, and disallow the $208,403.04 asserted without itemization.

3. Direct Mainstreet to produce its notes, mortgages, the 2023 modification, the February 17, 2022 settlement statement and loan commitment, every writing in which it conditioned the February 2022 loan on the Debtor's arrangement with Canaveral Crossroads, its communications with PEDixon, LLC about a sale of its mortgages, and a complete payment and charge history for each loan.

4. Until this objection is decided, decline to allow either claim for voting in an amount above the amount allowable under paragraphs 1 and 2. *Fed. R. Bankr. P. 3018(a).*

5. Preserve the Estate's claims against Mainstreet for damages and equitable subordination for determination in an adversary proceeding.

6. Grant such further relief as is just.

Respectfully submitted this 28th day of October, 2026.

______________________________

Frank L. Amodeo
*Pro se*
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32809@gmail.com

## CERTIFICATE OF SERVICE

I certify that on October 28, 2026, I filed this objection, its notice, and Exhibits A through D with the Clerk of Court through the CM/ECF system, which will serve them electronically on every party registered to receive notice in this case.

Dated: October 28, 2026

______________________________

Frank L. Amodeo
*Pro se*

# EXHIBIT A

Quit Claim Deed, Canaveral Crossroads, LLC to Canaveral Crossing Resorts, Inc.
dated April 3, 2021, recorded April 6, 2021
O.R. Book 9077, Page 1557, Public Records of Brevard County, Florida

CFN 2021087075, OR BK 9077 Page 1557, Recorded 04/06/2021 at 02:48 PM Rachel M. Sadoff, Clerk of Courts, Brevard County Doc. D: $0.70

**THIS INSTRUMENT PREPARED BY AND SHOULD BE RETURNED TO:**

**Tiered Capital, Inc.**
**111 N. Orange Ave.**
**Suite 800**
**Orlando, FL 32801**

# QUIT CLAIM DEED

**THIS QUIT CLAIM DEED,** made and executed this 3rd day of April, 2021, by **Canaveral Crossroads, LLC,** an organization whose address of 201 Ivory Coral Lane, Merritt Island, FL 32953 (hereinafter collectively referred to as the "Grantor", to **Canaveral Crossing Resorts, Inc.,** whose mailing address is 111 N. Orange Ave., Ste. 800, Orlando, FL 32801 (hereinafter collectively referred to as the "Grantee"):

> (Wherever used herein the terms "Grantors" and "Grantee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations, partnerships [including joint ventures], public bodies and quasi-public bodies.)

## WITNESSETH:

**THAT** the Grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby remise, release and quit-claim unto the Grantee forever all the right, title, interest, claim and demand which Grantors have in and to that certain land situate in Brevard County, Florida, to wit:

(201 Ivory Coral Lane, Merritt Island, Florida 32953)

PARCEL ONE:
A parcel of land lying in Section 11, Township 24 South, Range 36 East, Brevard County, Florida being more particularly described as follows:

Commence at the Southwest corner of said Section 11; thence N.00°27'47''W. along the West line of said Section 11 a distance of 126.39 feet to the North right-of-way line of State Road No. 528 as shown on the State of Florida Department of Transportation right-of-way map section 70070-2502, being a non-tangent curve concave to the North having a radius of 1120.92 feet and a radial bearing of S.05°42'53"E., being the point of beginning of the parcel of land described herein; thence N.00°27'47"W. continuing along the said West line of Section 11 a distance of 347.44 feet to the South right-of-way line of the Canaveral Port Authority Barge Canal; thence N.82°14'39"E. along said South right-of-way line a distance of 588.61 feet to the West right-of-way line of Tingley Drive, a 50 foot right-of-way; then S.04°35'05"E. along said West

right-of-way line a distance of 258.73 feet to the said North right-of-way line of State Road No. 528; thence S.71°54'35"W. along said North right-of-way line a distance of 383.61 feet to the point of curvature of said curve concave to the North having a radius of 1120.92 feet; thence Southwesterly along the arc of said curve through a central angle of 12°22'32" an arc distance of 242.11 feet to the said West line of Section 11 and the point of beginning.

PARCEL TWO:

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Brevard County, Florida being more particularly described as follows:

Commence at the Southwest corner of said Section 11; thence N.00°27'47"W. along the West line of said Section 11 a distance of 126.39 feet to the North right-of-way line of State Road No. 528 as shown on the State of Florida Department of Transportation right-of-way map section 70070-2502, being a non-tangent curve concave to the North having a radius of 1120.92 feet, and a radial bearing of S.05°42'53"E.; thence N.00°27'47"W. continuing along the said West line of Section 11 a distance of 347.44 feet to the South right-of-way line of the Canaveral Port Authority Barge Canal; thence N.82°14'39"E. along said South right-of-way line a distance of 638.69 feet to the East right-of-way line of Tingley Drive, a 50 foot right-of-way, and the point of beginning of the parcel of land described herein; thence N.82°14'39"E. continuing along said South right-of-way line a distance of 30.42 feet to a point of intersection; thence N.79°57'47"E., continuing along said South right-of-way line a distance of 152.43 feet to the West right-of-way line of State Road No. 3 as shown on the State of Florida Department of Transportation right-of-way map Section 70140-2514; thence S.04°32'31"E. along said West right-of-way line a distance of 80.00 feet; thence N.79°57'47"E. continuing along said West right-of-way line a distance of 4.02 feet; thence S.04°32'31"E. continuing along said West right-of-way line a distance of 120.01 feet to the said North right-of-way line of State Road No. 528; thence S.79°57'47"W. along said North right-of-way line a distance of 186.82 feet to the said East right-of-way line of Tingley Drive; thence N.04°35'05"W. along said East right-of-way line a distance of 201.21 feet to the said South right-of-way line of the Canaveral Port Authority Barge Canal and the point of beginning. Bearings based on the assumption that the West line of Section 11 bears N.00°27'47"W. per the State of Florida Department of Transportation right-of-way map section 70140-2514.

**TO HAVE AND TO HOLD,** the same together with all and singular the appurtenances thereunto belonging or in anywise appertaining, and all the estate, right, title, interest, lien, equity and claim whatsoever of the Grantor, either in law or in equity, to the only proper use, benefit and behoof of the Grantee forever.

**IN WITNESS WHEREOF,** the Grantor has caused these presents to be executed in its name, by its proper officer thereunto duly authorized, on the day and year first above written.

Signed, sealed and delivered
in the presence of:

Signature

Julie Herring
Print/Type Name

Signature:
Martin O. Flynn, Jr.
Print/Type Name:

As Authorized Agent of
**Canaveral Crossroads, LLC**

Signature

Isabella Rios
Print/Type Name

Signature:
Martin O. Flynn, Jr.
Print/Type Name:

As President of
**Canaveral Crossing Resorts, Inc.**

STATE OF FLORIDA )
COUNTY OF ORANGE )

**I HEREBY CERTIFY** that on this day before me, an officer duly authorized in the State and County aforesaid to take acknowledgments, personally appeared __________ who [X] is personally known to me or [___] produced ____________________ as identification.

**WITNESS** my hand and official seal in the County and State last aforesaid this 6th day of April, 2021.

Alexandra M. Lezcano
Notary Public
State of Florida
Comm# HH077969
Expires 1/6/2025

Signature of Notary
Print Name Alexandra M. Lezcano
My Commission Number: HH077969
My Commission Expires: 1/6/2025

(NOTARIAL SEAL)

# EXHIBIT B

Settlement Statement (Commercial Refinance), February 17, 2022
Homemakers Real Estate, LLC, Borrower; Mainstreet Community Bank of Florida, Lender
executed by Homemakers, with Calculation of Line 1501

# Commercial Refinance

Form for Transactions without Sellers

| | |
|---|---|
| Name and Address of Borrower *Cont. on Addendum* ☐<br>HOMEMAKERS REAL ESTATE, LLC<br>522 SOUTH HUNT CLUB BLVD, #228<br>APOPKA FL 32703 | Name and Address of Lender<br>MAINSTREET COMMUNITY BANK OF FLORIDA<br>112 NORTH MAGNOLIA AVENUE<br>OCALA FL 34475 |
| Property Location *Cont. on Addendum* ☐<br>19 UNITS AT THE CANAVERAL CROSSING RESORT<br>BREVARD COUNTY FL | Settlement Agent: W. JAMES GOODING III ESQUIRE<br>Place of Settlement: GOODING & BATSEL, PLLC<br>1531 SE 36TH AVENUE OCALA FL 34471 |
| Loan Number<br>TBD | Settlement Date: FEBRUARY 17, 2022<br>Disbursement Date: FEBRUARY 18 or 22, 2022 |

## L. Settlement Charges

| Item | Amount |
|---|---|
| **800. Items payable in Connection with Loan** | |
| 801. Loan Origination to: MAINSTREET COMMUNITY BANK OF FLORIDA ("MCB") ($25,000.00 LESS $10,000.00 POC) | 15,000.00 |
| 802. | |
| 803. Appraisal Fee to: MCB | 3470.00 |
| 804. Environmental Report to: MCB | 150.00 |
| 805. Tax Service Fee to: MCB | 711.00 |
| 806. Future Satisfaction Fee: MCB | 14.75 |
| 807. Flood Certification Fee to: MCB | 68.00 |
| 808. Document Preparation Fee to: MCB - WAIVED | |
| 809. Funding Reserve Account Number 1505629 to: MCB | 225,000.00 |
| 810. | |
| 811. | |
| 812. | |
| 813. | |
| 814. | |
| 815. | |
| 816. | |
| 817. | |
| 818. | |
| 819. | |
| 820. | |
| 821. | |
| 822. | |
| 823. | |
| 824. | |
| 825. | |
| **900. Items Required by Lender to be Paid in Advance** | |
| 901. Interest from ___ to ___ @ ___ per day | |
| 902. Mortgage Insurance Premium for ___ months to | |
| 903. Hazard Insurance Premium for ___ years to | |
| 904. | |
| **1000. Reserves Deposited with Lender** | |
| 1001. Hazard Insurance ___ months @ $ ___ per month | $ 0.00 |
| 1002. Mortgage Insurance ___ months @ $ ___ per month | $ 0.00 |
| 1003. City Property Taxes ___ months @ $ ___ per month | $ 0.00 |
| 1004. County Property Taxes ___ months @ $ ___ per month | $ 0.00 |
| 1005. Annual Assessments ___ months @ $ ___ per month | $ 0.00 |
| 1006. ___ months @ $ ___ per month | $ 0.00 |
| 1007. ___ months @ $ ___ per month | $ 0.00 |
| 1008. | |
| 1009. | |
| **1100. Title Charges** | |
| 1101. Settlement or Closing Fee to: | |
| 1102. Title Search to: FIRST AMERICAN TITLE INSURANCE COMPANY ("FATI") | 1,700.00 |
| 1103. Title Examination to: | |
| 1104. Title Insurance Binder to: | |
| 1105. Document Preparation to: | |
| 1106. Notary Fees to: | |
| 1107. Attorney's Fees to: (includes above item | |
| 1108. Title Insurance to: FATI AND GOODING & BATSEL, PLLC (includes above item | |
| 1109. Lender's Coverage - $5,061,363.00 | 15,214.50 |
| 1110. Owner's Coverage - N/A | |
| 1111. | |
| 1112. | |
| 1113. | |
| **1200. Government Recording and Transfer Charges** | |
| 1201. Recording fees to: CLERK, BREVARD COUNTY | 283.50 |
| 1202. City/county tax/stamps to: CLERK, BREVARD COUNTY | 10,122.73 |
| 1203. State tax/stamps to: CLERK, BREVARD COUNTY | 17,714.90 |
| 1204. Record/File UCC1 to: CLERK, BREVARD COUNTY & FLUCC1 | 99.50 |
| 1205. Record Partial Releases & Satisfactions to: CLERK, BREVARD COUNTY | 761.00 |
| **1300. Additional Settlement Charges** | |
| 1301. Attorney's Fees to: GOODING& BATSEL, PLLC | 25,000.00 |
| 1302. 2021 Ad Valorem Taxes to: BREVARD COUNTY TAX COLLECTOR (See Addendum for Parcel Numbers) | 78,074.75 |
| 1303. Escrow for Additional Items - Unused will be returned following Closing | 500.00 |
| 1304. Record Corrective Quit Claim Deed to: CLERK, BREVARD COUNTY | 27.00 |
| 1305. | |
| 1306. | |
| 1307. | |
| **1400. Total Settlement Charges (enter on line 1602)** | $393,931.63 |

## M. Disbursement to others

| Item | Amount |
|---|---|
| 1501. PAYOFFS TO: FORE, Inc.19 UNITS per Escrow Agreement<br>Calculated through 2/22. If disbursed on 2/18, will be $4,818,768.86 | $ 4,822,072.69 |
| 1523. TOTAL DISBURSED (enter on line 1603) | $4,822,072.69 |

## N. NET SETTLEMENT

| Item | Amount |
|---|---|
| 1600. Loan Amount | 5,061,363.00 |
| 1601. Plus Cash/Check from Borrower | |
| 1602. Minus Total Settlement Charges (line 1400) | $393,931.63 |
| 1603. Minus Total Disbursements to Others (line 1523) | $4,822,072.69 |
| 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period required by law) | ($154,641.32) |

Previous editions are obsolete



© ThorpeForms.com

## CERTIFICATION

I have carefully reviewed this Closing Disclosure and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the Closing Disclosure form.

[signature] Horton S. Johnson

____________________________________ Borrower
HOMEMAKERS REAL ESTATE, LLC, HORTON S. JOHNSON AS MANAGER

____________________________________

To the best of my knowledge the Closing Disclosure which I have prepared is true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

__________________________ Settlement Agent __________________________ Date
W. JAMES GOODING III

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

### Addendum

| | |
|---|---|
| D. Name & Address of Borrower 2: *(Cont from pg 1)* | G. Property Location: *(Cont from pg 1)* |
| | **CONDOS:**<br>Tax ID Nos. 3021448; 3021449; 3021451; 3021452; 3021454;3021455; 3021456; 3021457; 3021459; 3021466; 3021473; 3021480<br>**TOWNHOUSES:**<br>Tax ID Nos. 3022865; 3022866; 3017192; 3017193; 3022871; 3022872; 3017207 |
| D. Name & Address of Borrower 3: *(Cont from pg 1)* | |
| | |
| D. Name & Address of Borrower 4: *(Cont from pg 1)* | |
| | |
| D. Name & Address of Borrower 5: *(Cont from pg 1)* | |
| | |

© ThorpeForms.com

## CALCULATION OF LINE 1501
## ASSUMING DISBURSAL ON 2/22

| | | |
|---|---|---|
| 1. | 2709 Cutlass Point - Bldg 8, Unit 101 | $ 276,763.14 |
| 2. | 103 Parrotfish Lane, Bldg 2, Unit 101 | $ 264,768.89 |
| 3. | 103 Parrotfish Lane, Bldg 2,Unit 102 | $ 264,768.89 |
| 4. | 202 Ivory Coral #103 | $ 247,607.60 |
| 5. | 202 Ivory Coral #104 | $ 247,607.60 |
| 6. | 202 Ivory Coral #106 | $ 247,607.60 |
| 7. | 202 Ivory Coral #107 | $ 247,607.60 |
| 8. | 202 Ivory Coral #202 | $ 247,607.60 |
| 9. | 202 Ivory Coral #203 | $ 247,607.60 |
| 10. | 202 Ivory Coral #205 | $ 247,607.60 |
| 11. | 202 Ivory Coral #207 | $ 246,426.51 |
| 12. | 202 Ivory Coral #307 | $ 238,705.67 |
| 13. | 202 Ivory Coral #407 | $ 251,624.94 |
| 14. | 202 Ivory Coral #507 | $ 245,640.11 |
| 15. | 202 Ivory Coral #204 | $ 230,604.53 |
| 16. | 221 Ivory Coral Lane, Bldg 6, Unit 102 | $ 266,053.49 |
| 17. | 221 Ivory Coral Lane, Bldg 6, Unit 103 | $ 275,236.28 |
| 18. | 2719 Cutlass Point, Bldg 7, Unit 101 | $ 264,723.62 |
| 19. | 2719 Cutlass Point, Bldg 7, Unit 103 | $ 264,723.62 |
| 20. | TOTAL LINE 1501 | $4,822,072.69 |

P:\JG\Mainstreet CB\Loans\Homemakers\HUDS\Commercial Refinance 2-17-22.docx

© ThorpeForms.com

# EXHIBIT C

First American Title Insurance Company Commitment No. 2076-5624722
Commitment Date September 29, 2021; Proposed Insured: Main Street Community Bank of Florida
Excerpt: Schedule A (page 4 of 21) and Schedule B-II (page 16 of 21)
Pin cites are to the commitment's own page numbers.

| First American | ALTA Commitment for Title Insurance |
| --- | --- |
| **Schedule A** | ISSUED BY<br>**First American Title Insurance Company**<br>File No: 2076-5624722 |

***Transaction Identification Data for reference only:***

Issuing Agent: Gilligan, Gooding, Franjola, & Batsel, P.A.
ALTA Universal ID:
Commitment Number:
Property Address: 202 IVORY CORAL LANE UNIT 103, MERRITT ISLAND FL, FL 32953

Issuing Office:
Loan ID Number:
Issuing Office File Number: Mainstreet CB/Homemakers RE
Revision Number:

**SCHEDULE A**

1.Commitment Date: September 29, 2021 @ 8:00 AM

2.Policy to be issued:

(a) ☐ 2006 ALTA® Owner's Policy
Proposed Insured:

(b) X 2006 ALTA® Loan Policy
Proposed Insured: MAIN STREET COMMUNITY BANK OF FLORIDA, its successors and/or assigns as defined in the Conditions of the policy, as their interests may appear.
Proposed Policy Amount: $ 5,061,363.00

(c) ☐ 2006 ALTA® Loan Policy
Proposed Insured:
Proposed Policy Amount: $

3.The estate or interest in the Land described or referred to in this Commitment is Fee Simple.

4.The Title is, at the Commitment Date, vested in:
Homemakers Real Estate, LLC, a Florida limited liability company

5.The Land is described as follows:

**See Exhibit "A" attached hereto and made a part hereof**

Gilligan, Gooding, Franjola, & Batsel, P.A.

By: ______________________
Authorized Signatory

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

25. Easements reserved in County Deed by and between Brevard County, Florida, a political subdivision of the State of Florida and Canaveral Crossroads, LLC, recorded December 5, 2016 in Book 7768, Page 1916.

26. Any loss or damage arising from a lien for Homeowner's Association assessments recorded after the date of the Policy, resulting from the effect of Florida Statute 720.3085, notwithstanding any assurances to the contrary in any Florida Endorsement Form 9-06 or Florida Endorsement Form 9.3-06, which may be attached to this Policy. (Affects any Loan Policy(s) issued pursuant to this Commitment)

**THE FOLLOWING EXCEPTIONS APPLY TO ALL CONDOMINIUM AND TOWNHOUSE UNITS:**

27. Declaration of Covenants, Conditions and Restrictions, which contains provisions for a private charge or assessments, recorded in Book 7626, Page 1609 , but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c).

28. Quit Claim Deed to Canaveral Crossing Resorts, Inc. recorded in Book 9077, Page 1557.

29. Terms and conditions of any existing unrecorded lease(s), and all rights of lessee(s) and any parties claiming through the lessee(s) under the lease(s).

30. Any loss or damage arising from a lien for Homeowner's Association assessments recorded after the date of the Policy, resulting from the effect of Florida Statute 720.3085, notwithstanding any assurances to the contrary in any Florida Endorsement Form 9-06 or Florida Endorsement Form 9.3-06, which may be attached to this Policy. (Affects any Loan Policy(s) issued pursuant to this Commitment)

31. Riparian rights are not guaranteed or insured. Title to no portion of the herein described land lying below ordinary high water mark is hereby insured.

32. This Policy does not insure title to any part of the land lying below the ordinary high water mark of any abutting body of water.

33. The right, title or interest, if any, of the public to use as a public beach or recreation area any part of the Land lying between the water abutting the Land and the most inland of any of the following: (a) the natural line of vegetation; (b) the most extreme high water mark; (c) the bulkhead line, or (d) any other line which has been or which hereafter may be legally established as relating to such public use.

34. Rights of the United States Government to that part of the Land, if any, being artificially filled in land in what was formerly navigable waters arising by reason of the United States Government control over navigable waters in the interest of navigation and commerce.

**Note:** All of the recording information contained herein refers to the Public Records of BREVARD County, Florida, unless otherwise indicated. Any reference herein to a Book and Page or Instrument Number is a reference to the Official Record Books of said county, unless indicated to the contrary.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

# EXHIBIT D

First American Title Insurance Company Commitment No. 2076-5624722 (revised)
Commitment Date February 9, 2022; Proposed Insured: Main Street Community Bank of Florida
Excerpt: Schedule A (page 4 of 21), Schedule B-I (pages 11-12 of 21), Schedule B-II (page 16 of 21)
Pin cites are to the commitment's own page numbers.

| First American | ALTA Commitment for Title Insurance<br>ISSUED BY<br>**First American Title Insurance Company** |
|---|---|
| **Schedule A** | File No: 2076-5624722 |

***Transaction Identification Data for reference only:***

Issuing Agent: Gilligan, Gooding, Franjola, & Batsel, P.A.
ALTA Universal ID:
Commitment Number:
Property Address: 202 IVORY CORAL LANE UNIT 103, MERRITT ISLAND FL, FL 32953

Issuing Office:
Loan ID Number:
Issuing Office File Number: Mainstreet CB/Homemakers RE
Revision Number: 1.

**SCHEDULE A**

1.Commitment Date: February 09, 2022 @ 8:00 AM

2.Policy to be issued:
- (a) ☐ 2006 ALTA® Owner's Policy
  Proposed Insured:
- (b) X 2006 ALTA® Loan Policy
  Proposed Insured: MAIN STREET COMMUNITY BANK OF FLORIDA, its successors and/or assigns as defined in the Conditions of the policy, as their interests may appear.
  Proposed Policy Amount: $ 5,061,363.00
- (c) ☐ 2006 ALTA® Loan Policy
  Proposed Insured:
  Proposed Policy Amount: $

3.The estate or interest in the Land described or referred to in this Commitment is Fee Simple.

4.The Title is, at the Commitment Date, vested in:
Homemakers Real Estate, LLC, a Florida limited liability company

5.The Land is described as follows:

**See Exhibit "A" attached hereto and made a part hereof**

Gilligan, Gooding, Franjola, & Batsel, P.A.

By: ______________________________
Authorized Signatory

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

48. Partial Release of Mortgage, releasing the land to be insured from encumbrance of the Mortgage from Canaveral Crossroads, LLC, a Florida limited liability company, WM Holdings Group LLC, a Florida limited liability company and FBC Holdings, LLC, a Florida limited liability company in favor of Jetton Investments, Inc., a Florida corp, recorded in Book 8829, Page 2586, As to ALL Buildings/Units shown in Schedule "A".

49. Partial Release of Mortgage, releasing the land to be insured from encumbrance of the Mortgage from Canaveral Crossroads, LLC, a Florida limited liability company in favor of FDRE Inc., recorded in Book 8418, Page 162, as Assigned in Book 9387, Page 665. As to Bldg 2/Units 101 & 102 & Bldg 7/Units 101 & 103.

50. Partial Release of Claim of Lien in favor of Accurate Building & Engineering Contractors, LLC, recorded in Book 9268, Page 2255, as to the property described in Schedule A hereof.

51. Partial Release from "Notice of Lis Pendens" recorded in Book 9411, Page 652, Case No. 05-2022-CA-______, styled Accurate Building & Engineering Contractors, LLC v. Canaveral Crossing Resorts, Inc. (as to the property to be insured herein).

52. Record Quit Claim Deed from Canaveral Crossroads, LLC, a Florida limited liability company to Homemakers Real Estate, LLC, a Florida limited liability company conveying the land described in Schedule "A" As Bldg 8/Unit 101.
NOTE: This deed is required due to Quit Claim Deed recorded in Book 9407, Page 1642.

53. Proof of payment of taxes and assessments for the year 2021, and prior years, plus any penalties and interest.

54. Note:This preliminary report/commitment was prepared based upon an application for a policy of title insurance that identified land by street address or assessor's parcel number only. It is the responsibility of the applicant to determine whether the land referred to herein is in fact the land that is to be described in the policy or policies to be issued.

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $4,153.00 for Tax Identification No. 3021448. (Condo)

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $4,153.00 for Tax Identification No. 3021449.

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $4,477.44 for Tax Identification No. 3021451.

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $3,957.10 for Tax Identification No. 3021452.

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $4,283.10 for Tax Identification No. 3021454.

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $4,283.10 for Tax Identification No. 3021455.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $4,283.10 for Tax Identification No. 3021456.

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $4,283.10 for Tax Identification No. 3021457.

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $4,087.19 for Tax Identification No. 3021459.

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $4,152.22 for Tax Identification No. 3021466.

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $4,152.22 for Tax Identification No. 3021473.

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $4,217.25 for Tax Identification No. 3021480. (Condo)

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $3,113.52 for Tax Identification No. 3022865. (Townhouse)

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $3,108.44 for Tax Identification No. 3022866.

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $4,523.63 for Tax Identification No. 3017192.

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $4,047.74 for Tax Identification No. 3017193.

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $4,528.71 for Tax Identification No. 3022871.

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $4,530.81 for Tax Identification No. 3022872.

Note: The following is for informational purposes only and is given without assurance or guarantee: 2021 taxes show **DUE**. The gross amount is $4,528.71 for Tax Identification No. 3017207. (Townhouse)

**The following note is incorporated herein for information purposes only and is not part of the exceptions from coverage (Schedule B-II of the commitment and Schedule B-I of the policy):**

The following instrument affecting said land is the last conveyancing instrument filed for record within 24 months of the effective date of this commitment:
QCD's 9407/1642, 9407/1650, 9407/1654, 9407/1657, 9407/1661, 9407/1665 filed 2/7/2022.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

assurances to the contrary in any Florida Endorsement Form 9-06 or Florida Endorsement Form 9.3-06, which may be attached to this Policy. (Affects any Loan Policy(s) issued pursuant to this Commitment)

**THE FOLLOWING EXCEPTIONS APPLY TO ALL CONDOMINIUM AND TOWNHOUSE UNITS:**

27. Declaration of Covenants, Conditions and Restrictions, which contains provisions for a private charge or assessments, recorded in Book 7626, Page 1609 and First Amendment recorded in Book 9407, Page 1645, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c).

28. Quit Claim Deed to Canaveral Crossroads, LLC, recorded in Book 9407, Page 1642.

29. Terms and conditions of any existing unrecorded lease(s), and all rights of lessee(s) and any parties claiming through the lessee(s) under the lease(s).

30. Any loss or damage arising from a lien for Homeowner's Association assessments recorded after the date of the Policy, resulting from the effect of Florida Statute 720.3085, notwithstanding any assurances to the contrary in any Florida Endorsement Form 9-06 or Florida Endorsement Form 9.3-06, which may be attached to this Policy. (Affects any Loan Policy(s) issued pursuant to this Commitment)

31. Riparian rights are not guaranteed or insured. Title to no portion of the herein described land lying below ordinary high water mark is hereby insured.

32. This Policy does not insure title to any part of the land lying below the ordinary high water mark of any abutting body of water.

33. The right, title or interest, if any, of the public to use as a public beach or recreation area any part of the Land lying between the water abutting the Land and the most inland of any of the following: (a) the natural line of vegetation; (b) the most extreme high water mark; (c) the bulkhead line, or (d) any other line which has been or which hereafter may be legally established as relating to such public use.

34. Rights of the United States Government to that part of the Land, if any, being artificially filled in land in what was formerly navigable waters arising by reason of the United States Government control over navigable waters in the interest of navigation and commerce.

**Note:** All of the recording information contained herein refers to the Public Records of BREVARD County, Florida, unless otherwise indicated. Any reference herein to a Book and Page or Instrument Number is a reference to the Official Record Books of said county, unless indicated to the contrary.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

# EXHIBIT 2

Transcript of Hearing, November 19, 2026
(Realtime Reporters, Inc., certified November 22, 2026)
In re Homemakers Real Estate, LLC, No. 6:25-bk-05570-GER (Bankr. M.D. Fla.)

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:25-bk-05570-GER

IN RE:

HOMEMAKERS REAL ESTATE, LLC,

DEBTOR.

______________________________/

HEARING

BEFORE: THE HONORABLE GRACE E. ROBSON

DATE: NOVEMBER 19, 2026

TIME: 9:30 a.m. - 9:34 a.m.

LOCATION: UNITED STATES BANKRUPTCY COURT
400 WEST WASHINGTON STREET
ORLANDO, FL 32801

A P P E A R A N C E S

APPEARING IN PERSON:

AUDREY ALESKOVSKY, ESQUIRE, on behalf of U.S. Trustee

FRANK AMODEO, Pro Se

JEFFREY AINSWORTH, ESQUIRE, on behalf of PEDIXON and ZPD

JUSTIN LUNA, ESQUIRE, on behalf of Mainstreet Community Bank

APPEARING VIA ZOOM:

RHYS LEONARD on behalf of Lara Fernandez, Chapter 11 Trustee

GERALD WASHINGTON, ESQUIRE, on behalf of Carton Family Trust and Tamamoi LLC

I N D E X

Mr. Amodeo regarding Third Amended Disclosure Statement .......................5

Ruling by the Court ............................5

Request for expedited ruling on the ability to object withdrawn by Mr. Amodeo ....................6

CERTIFICATE OF REPORTER .........................9

P R O C E E D I N G S

THE CLERK: All rise. The United States Bankruptcy Court for the Middle District of Florida is now in session, the Honorable Grace E. Robson presiding. God save the United States and this Honorable Court.

THE COURT: Good morning. Please be seated. We're here on Homemakers Real Estate LLC, Case Number 25-5570. Let's take appearances in the courtroom first. Ms. Aleskovsky.

MS. ALESKOVSKY: Good morning, Your Honor. Audrey Aleskovsky on behalf of the United States Trustee.

THE COURT: Okay. Mr. Luna.

MR. LUNA: Good morning, Your Honor. Justin Luna on behalf of Mainstreet Community Bank.

MR. AMODEO: Frank Amodeo, Pro Se, the plan proponent.

THE COURT: Okay. And then on Zoom, Mr. Leonard.

MR. LEONARD: Good morning, Your Honor. Rhys Leonard on behalf of Lara Fernandez, the Chapter 11 Trustee.

THE COURT: Okay. Good morning. And Mr. Washington.

MR. WASHINGTON: Good morning, Your Honor. Gerald Washington on behalf of Carton Family Trust and Tamamoi LLC.

THE COURT: All right. Thank you. Is there anyone that wanted to make an appearance that has not done so? No? Okay.

So, Mr. Amodeo, we're here on your Third Amended Disclosure Statement. I didn't see, at least as of yesterday, whether there were any responses or objections. But given the time frame slip, let's see first if you've received any comments?

MR. AMODEO: I have received none. I have talked to a variety of the creditors and I think most are ready for the 3rd, so...

THE COURT: Okay. Did anyone want to be heard in connection with the Third Amended Disclosure Statement as far as deficiency? Obviously confirmation is a separate issue, but any reason why we shouldn't allow the disclosure statement and plan to go out? No? Okay.

So then I've reviewed it. It's very thorough. And we'll go ahead and let that be circulated to the creditors for -- to solicit the votes. So, Mr. Amodeo, I guess you'll be taking

care of that?

MR. AMODEO: I will take care of that, Your Honor.

THE COURT: All right. In the meanwhile, what else do we need to -- I guess that kind of takes care of everything that's set for today. And I know -- part of your paper asked for an expedited ruling on the ability to object to --

MR. AMODEO: Yes.

THE COURT: So, I mean, it's not set separately, or anything like that. But why do you think it's necessary now? Or do you think it's --

MR. AMODEO: No, I still think it's necessary now because the creditors who may have objections will be voting on the Trustee's plan. But let me just -- I'll pull that back for the moment, Your Honor. I think I'll live on my plan and my evidence on the 3rd, so...

THE COURT: Okay. So if -- well --

MR. AMODEO: I'll withdraw it without prejudice. Let me do that.

THE COURT: Okay. All right. So then withdrawn without prejudice. And do you know the document number? I know it's like 400 and

something, but do you -- okay, I'll find it and we'll make a note of it.

MR. AMODEO: 467, I think, but I'll take a look at it when I get back to the office.

THE COURT: All right. Anything else we should discuss this morning? No? Okay. So then, I guess, Mr. Luna, we'll see you in a little bit as well, I guess, for the other cases.

Okay. So if there's nothing else, then I'll issue the order and then Mr. Amodeo can -- I guess -- do you get electronic notices in the case?

MR. AMODEO: No, with this case. But I'm monitoring Pacer continually. So I'll know when it comes out and I'll have everything ready to go in the mail this afternoon.

THE COURT: Okay. All right. Very good. So then -- oh, Mr. Ainsworth, did you want to make an appearance? We're almost done. We're basically done here.

MR. AINSWORTH: Just watching, Your Honor. But Jeffrey Ainsworth on behalf of PEDIXON.

THE COURT: Okay. So just to let you know, I approved Mr. Amodeo's Third Amended Disclosure Statement for solicitation. I don't know if you

had a position that you wanted to take on that.

MR. AINSWORTH: No position, Your Honor.

THE COURT: Okay. All right. Well, I appreciate you all coming here in this weather. It's quite something. So glad to see you're dry. He has a raincoat there.

All right. So then court is adjoined until 10:00.

(WHEREUPON, the proceeding was concluded at 9:34 a.m.)

CERTIFICATE OF REPORTER

STATE OF FLORIDA
COUNTY OF ORANGE

I, SANDRA A. BATTAGLIA, NOTARY PUBLIC, CERTIFY THAT I WAS AUTHORIZED TO AND MY OFFICE DID TRANSCRIBE, FROM DIGITAL RECORDING, THE FOREGOING PROCEEDINGS AND THAT THE TRANSCRIPT IS A TRUE RECORD.

I FURTHER CERTIFY THAT I AM NOT A RELATIVE, EMPLOYEE, ATTORNEY OF COUNSEL OF ANY OF THE PARTIES, NOR AM I FINANCIALLY INTERESTED IN THE ACTION.

DATED THIS 22ND DAY OF NOVEMBER 2026.

Sandra A. Battaglia

______________________________
SANDRA A. BATTAGLIA, RPR, FPR-C
NOTARY PUBLIC - STATE OF FLORIDA

**1**

10:00 [1] 8/8
11 [2] 2/9 4/23
19 [1] 1/13

**2**

2026 [2] 1/13 9/13
22ND [1] 9/13
25-5570 [1] 4/9

**3**

32801 [1] 1/16
3rd [2] 5/15 6/19

**4**

400 [2] 1/15 6/25
467 [1] 7/3

**5**

5570 [1] 4/9

**6**

6:25-bk-05570-GER [1] 1/4

**9**

9:30 [1] 1/14
9:34 [2] 1/14 8/10

**A**

a.m [3] 1/14 1/14 8/10
ability [2] 3/8 6/8
ACTION [1] 9/12
adjoined [1] 8/7
afternoon [1] 7/16
ahead [1] 5/23
AINSWORTH [3] 2/5 7/18 7/22
ALESKOVSKY [3] 2/3 4/10 4/12
all [9] 4/2 5/4 6/4 6/23 7/5 7/17 8/3 8/4 8/7
allow [1] 5/20
almost [1] 7/19
AM [2] 9/10 9/12
Amended [4] 3/3 5/8 5/17 7/24
AMODEO [7] 2/4 3/2 3/8 4/17 5/7 5/25 7/10
Amodeo's [1] 7/24
any [4] 5/9 5/12 5/20 9/11
anyone [2] 5/5 5/16
anything [2] 6/11 7/5
appearance [2] 5/5 7/19
appearances [1] 4/9
APPEARING [2] 2/2 2/8
appreciate [1] 8/4
approved [1] 7/24
are [1] 5/15
as [4] 5/9 5/18 5/18 7/8
asked [1] 6/7
at [3] 5/8 7/4 8/9
ATTORNEY [1] 9/11
AUDREY [2] 2/3 4/12
AUTHORIZED [1] 9/7

**B**

back [2] 6/17 7/4
Bank [2] 2/7 4/16
BANKRUPTCY [3] 1/2 1/15 4/3
basically [1] 7/20
BATTAGLIA [2] 9/6 9/19
be [5] 4/7 5/16 5/23 5/25 6/16
because [1] 6/15
BEFORE [1] 1/12
behalf [10]
bit [1] 7/8
bk [1] 1/4
but [8] 5/10 5/19 6/11 6/17 7/1 7/3 7/13 7/22

**C**

can [1] 7/10
care [3] 6/1 6/2 6/6
Carton [2] 2/10 5/2
case [4] 1/4 4/8 7/12 7/13
cases [1] 7/8
CERTIFICATE [2] 3/9 9/2
CERTIFY [2] 9/6 9/10
Chapter [2] 2/9 4/23
circulated [1] 5/24
comes [1] 7/15
coming [1] 8/4
comments [1] 5/12
Community [2] 2/7 4/16
concluded [1] 8/9
confirmation [1] 5/19
connection [1] 5/17
continually [1] 7/14
COUNSEL [1] 9/11
COUNTY [1] 9/4
court [6] 1/2 1/15 3/5 4/3 4/6 8/7
courtroom [1] 4/10
creditors [3] 5/14 5/24 6/15

**D**

DATE [1] 1/13
DATED [1] 9/13
DAY [1] 9/13
DEBTOR [1] 1/8
deficiency [1] 5/18
did [3] 5/16 7/18 9/7
didn't [1] 5/8
DIGITAL [1] 9/8
disclosure [5] 3/4 5/8 5/18 5/20 7/24
discuss [1] 7/6
DISTRICT [2] 1/2 4/3
DIVISION [1] 1/3
do [7] 6/5 6/11 6/12 6/22 6/24 7/1 7/11
document [1] 6/25
don't [1] 7/25
done [3] 5/6 7/19 7/20
dry [1] 8/5

**E**

electronic [1] 7/11
else [3] 6/5 7/5 7/9
EMPLOYEE [1] 9/11
ESQUIRE [4] 2/3 2/5 2/6 2/10
ESTATE [2] 1/7 4/8
everything [2] 6/6 7/15
evidence [1] 6/19
expedited [2] 3/6 6/8

**F**

Family [2] 2/10 5/2
far [1] 5/18
Fernandez [2] 2/9 4/22
FINANCIALLY [1] 9/12
find [1] 7/1
first [2] 4/10 5/11
FL [1] 1/16
FLORIDA [4] 1/2 4/4 9/3 9/20
FOREGOING [1] 9/8
FPR [1] 9/19
FPR-C [1] 9/19
frame [1] 5/11
FRANK [2] 2/4 4/17
FURTHER [1] 9/10

**G**

GER [1] 1/4
GERALD [2] 2/10 5/2
get [2] 7/4 7/11
given [1] 5/10
glad [1] 8/5
go [3] 5/21 5/23 7/15
God [1] 4/5
good [7] 4/7 4/11 4/15 4/21 4/24 5/1 7/17
GRACE [2] 1/12 4/5
guess [5] 5/25 6/5 7/7 7/8 7/11

**H**

had [1] 8/1
has [2] 5/5 8/6
have [4] 5/13 5/13 6/15 7/15
He [1] 8/6
heard [1] 5/17
HEARING [1] 1/11
here [4] 4/8 5/7 7/20 8/4
HOMEMAKERS [2] 1/7 4/8
Honor [8] 4/11 4/15 4/21 5/1 6/3 6/18 7/21 8/2
HONORABLE [3] 1/12 4/4 4/6

**I**

I'll [8] 6/17 6/18 6/21 7/1 7/3 7/9 7/14 7/15
I'm [1] 7/13
I've [1] 5/22
if [4] 5/11 6/20 7/9 7/25
in [11]
INTERESTED [1] 9/12
is [5] 4/4 5/4 5/19 8/7 9/9
issue [2] 5/19 7/10
it [6] 5/22 6/21 7/1 7/2 7/4 7/15
it's [7] 5/22 6/10 6/12 6/13 6/14 6/25 8/5

**J**

JEFFREY [2] 2/5 7/22
just [3] 6/17 7/21 7/23
JUSTIN [2] 2/6 4/15

**K**

kind [1] 6/5
know [6] 6/7 6/24 6/25 7/14 7/23 7/25

**L**

Lara [2] 2/9 4/22
least [1] 5/9
LEONARD [3] 2/9 4/20 4/22
let [4] 5/23 6/17 6/22 7/23
let's [2] 4/9 5/11
like [2] 6/11 6/25
little [1] 7/8
live [1] 6/18
LLC [4] 1/7 2/11 4/8 5/3
LOCATION [1] 1/15
look [1] 7/4
LUNA [4] 2/6 4/14 4/16 7/7

**M**

mail [1] 7/16
Mainstreet [2] 2/6 4/16
make [3] 5/5 7/2 7/19

**M**

may [1] 6/15
me [2] 6/17 6/22
mean [1] 6/10
meanwhile [1] 6/4
MIDDLE [2] 1/2 4/3
moment [1] 6/18
monitoring [1] 7/14
morning [7] 4/7 4/11 4/15 4/21 4/24 5/1 7/6
most [1] 5/15
Mr [9] 3/2 3/8 4/14 5/7 5/25 7/7 7/10 7/18 7/24
Mr. [2] 4/20 4/25
Mr. Leonard [1] 4/20
Mr. Washington [1] 4/25
Ms [1] 4/10
my [3] 6/18 6/19 9/7

**N**

necessary [2] 6/12 6/15
need [1] 6/5
NO [7] 1/4 5/6 5/21 6/14 7/6 7/13 8/2
none [1] 5/13
NOR [1] 9/12
not [3] 5/6 6/10 9/10
NOTARY [2] 9/6 9/20
note [1] 7/2
nothing [1] 7/9
notices [1] 7/11
NOVEMBER [2] 1/13 9/13
now [3] 4/4 6/12 6/15
number [2] 4/9 6/25

**O**

object [2] 3/8 6/8
objections [2] 5/10 6/16
Obviously [1] 5/19
office [2] 7/4 9/7
oh [1] 7/18
okay [14]
on [19]
or [3] 5/10 6/11 6/12
ORANGE [1] 9/4
order [1] 7/10
ORLANDO [2] 1/3 1/16
other [1] 7/8
out [2] 5/21 7/15

**P**

Pacer [1] 7/14
paper [1] 6/7
part [1] 6/7
PARTIES [1] 9/11
PEDIXON [2] 2/5 7/22
PERSON [1] 2/2
plan [4] 4/17 5/21 6/16 6/18
Please [1] 4/7
position [2] 8/1 8/2
prejudice [2] 6/22 6/24
presiding [1] 4/5
Pro [2] 2/4 4/17
proceeding [1] 8/9
PROCEEDINGS [1] 9/8
proponent [1] 4/18
PUBLIC [2] 9/6 9/20
pull [1] 6/17

**Q**

quite [1] 8/5

**R**

raincoat [1] 8/6
RE [1] 1/6
ready [2] 5/15 7/15
REAL [2] 1/7 4/8
reason [1] 5/20
received [2] 5/11 5/13
RECORD [1] 9/9
RECORDING [1] 9/8
regarding [1] 3/2
RELATIVE [1] 9/10
REPORTER [2] 3/9 9/2
Request [1] 3/6
responses [1] 5/10
reviewed [1] 5/22
RHYS [2] 2/9 4/22
right [7] 5/4 6/4 6/23 7/5 7/17 8/3 8/7
rise [1] 4/2
ROBSON [2] 1/12 4/5
RPR [1] 9/19
ruling [3] 3/5 3/6 6/8

**S**

SANDRA [2] 9/6 9/19
save [1] 4/5
Se [2] 2/4 4/17
seated [1] 4/7
see [4] 5/8 5/11 7/7 8/5
separate [1] 5/19
separately [1] 6/11
session [1] 4/4
set [2] 6/6 6/10
should [1] 7/6
shouldn't [1] 5/20
slip [1] 5/11
so [16]
solicit [1] 5/24
solicitation [1] 7/25
something [2] 7/1 8/5
STATE [2] 9/3 9/20
statement [5] 3/4 5/8 5/18 5/21 7/25
STATES [5] 1/2 1/15 4/2 4/6 4/12
still [1] 6/14
STREET [1] 1/15

**T**

take [4] 4/9 6/2 7/3 8/1
takes [1] 6/6
taking [1] 5/25
talked [1] 5/14
Tamamoi [2] 2/11 5/3
Thank [1] 5/4
that [14]
that's [1] 6/6
then [8] 4/19 5/22 6/23 7/7 7/9 7/10 7/18 8/7
there [3] 5/4 5/9 8/6
there's [1] 7/9
think [6] 5/14 6/12 6/12 6/14 6/18 7/3
Third [4] 3/2 5/7 5/17 7/24
this [6] 4/6 7/6 7/13 7/16 8/4 9/13
thorough [1] 5/23
time [2] 1/14 5/10
today [1] 6/6
TRANSCRIBE [1] 9/7
TRANSCRIPT [1] 9/9
TRUE [1] 9/9
Trust [2] 2/11 5/3
Trustee [4] 2/3 2/9 4/13 4/23
Trustee's [1] 6/16

**U**

U.S [1] 2/3
UNITED [5] 1/2 1/15 4/2 4/5 4/12
until [1] 8/7

**V**

variety [1] 5/14
very [2] 5/22 7/17
VIA [1] 2/8
votes [1] 5/25
voting [1] 6/16

**W**

want [2] 5/16 7/18
wanted [2] 5/5 8/1
was [2] 8/9 9/7
WASHINGTON [4] 1/15 2/10 4/25 5/2
watching [1] 7/21
we [3] 5/20 6/5 7/5
we'll [3] 5/23 7/2 7/7
we're [4] 4/8 5/7 7/19 7/19
weather [1] 8/4
well [3] 6/20 7/8 8/3
were [1] 5/9
WEST [1] 1/15
what [1] 6/5
when [2] 7/4 7/14
WHEREUPON [1] 8/9
whether [1] 5/9
who [1] 6/15
why [2] 5/20 6/11
will [2] 6/2 6/16
withdraw [1] 6/21
withdrawn [2] 3/8 6/24
without [2] 6/21 6/24

**Y**

Yes [1] 6/9
yesterday [1] 5/9
you [12]
you'll [1] 5/25
you're [1] 8/5
you've [1] 5/11
your [10]

**Z**

ZOOM [2] 2/8 4/19
ZPD [1] 2/5